Amy Jane Longo (SBN 198304)
Amy.Longo@ropesgray.com
ROPES & GRAY LLP
10250 Constellation Blvd.
Los Angeles, California 90067
Tel: 310-975-3000
Fax: 310-975-3400

David B. Hennes* (*pro hac vice* forthcoming)
Andrew S. Todres* (*pro hac vice* forthcoming)
David.Hennes@ropesgray.com
Andrew.Todres@ropesgray.com
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Tel: 212-596-9000
Fax: 212-596-9090

Isaac C.H. Sommers* (*pro hac vice* forthcoming)
Isaac.Sommers@ropesgray.com
ROPES & GRAY LLP
2099 Pennsylvania Ave NW
Washington, DC 20006
Tel: 202-508-4600
Fax: 202-508-4650

*Attorneys for Petitioner*
ZYGMUNT SOLORZ

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF ZYGMUNT SOLORZ FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Misc. Action No.: 2:25-mc-00112 <br><br> **DECLARATION OF SIMON OTT ESQ., IN SUPPORT OF APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782** |

I, Simon Ott, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America, that the following is true and correct:

1. I am a lawyer in Liechtenstein and a Partner at the law firm Schurti Partners Attorney at Law Ltd ("Schurti"). I have been practicing law for over ten years. I am a member of the Liechtenstein Bar Association and a Board Member of the Association of Criminal Defence Attorneys in Liechtenstein (VLS).

2. I submit this declaration in support of Petitioner Mr. Zygmunt Solorz's *Ex Parte* Application and Petition for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 (the "Petition").

3. Schurti represents Petitioner Mr. Zygmunt Solorz ("Mr. Solorz" or the "Petitioner") in certain legal proceedings currently pending in Liechtenstein concerning the governance of two Liechtenstein Foundations which hold interests in numerous media and telecommunication businesses founded by Mr. Solorz, including each of the three proceedings that are the subject of Mr. Solorz's Petition: (i) the proceeding captioned Case Number 06 HG.2025.22, pending (but currently stayed) in the Princely District Court of Vaduz, Liechtenstein (the "Solkomtel Application"); (ii) the proceeding captioned Case Number 06 HG.2024.133, pending in the Princely District Court of Vaduz, Liechtenstein (the "Grzesiak Dismissal Motion"); and (iii) a motion in the proceeding captioned Case Number 06 HG.2025.122, pending in the Princely District Court of Vaduz, Liechtenstein (the "Solorz Removal Application") (together, the "Foreign Proceedings").

4. I am personally familiar with the Foreign Proceedings, including the underlying factual background and applicable Liechtenstein law. I hereby affirm under oath that the statements made in this declaration concerning these matters are true and correct to the best of my knowledge, information, and belief.

5. The purpose of this declaration is to provide the Court with the factual background and procedural history of the Foreign Proceedings, and information

concerning Liechtenstein law and court procedures regarding evidentiary and discovery-related matters, including law applicable to petitions made in U.S. courts pursuant to 28 U.S.C. § 1782.

## RELEVANT INDIVIDUALS

6. **Mr. Solorz.** The Petitioner, Zygmunt Solorz, is a Polish entrepreneur who is known for establishing the first private television station in Poland and numerous other successful media and telecommunications business. He is one of the wealthiest individuals in Europe. Mr. Solorz contributed his core business assets—including the Polsat television station—to two Liechtenstein-based foundations (a foundation in Liechtenstein can be roughly compared to a trust in the U.S.) known as the "TiVi Foundation" and the "Solkomtel Foundation" (together, the "Foundations").[1] The Foundations are formed under Liechtenstein law and based in Vaduz, Liechtenstein. Mr. Solorz is the sole founder, sole primary beneficiary, and sole curator of the Foundations.

7. **Mr. Solorz's Children.** As far as I know, Mr. Solorz has three children: Piotr Żak, who resides in Poland; Tobias Solorz, who resides in Dubai; and Aleksandra Żak ("Ms. Żak"), who resides in Los Angeles, California. All of Mr. Solorz's children purport to be secondary beneficiaries of the Foundations.[2] His sons

---

[1] A Liechtenstein foundation is a legally and economically independent entity. A foundation does not have owners, shareholders, or members, and is established by the unilateral declaration of the founding party (the "founder"). The founder allocates assets to the foundation, defines its purpose, and designates its beneficiaries through the foundation's governing documents. Ownership of the foundation's assets is transferred to the foundation itself, and the foundation is governed by a board called a "council"—the foundation's main governing body—consistent with the foundation's governing documents.

[2] The children were not identified as secondary beneficiaries in the Foundations' original governing documents, but those documents were later amended to add the children as secondary beneficiaries. Mr. Solorz is challenging the validity of those amendments—and the beneficiary status of his children—in separate declaratory proceedings in Liechtenstein.

have sought to be involved in and have held various positions at the businesses owned indirectly by the Foundations. By contrast, his daughter, Ms. Żak, left Poland several years ago and has resided in the United States since at least 2019, and has not been involved in the day-to-day operations of the businesses owned indirectly by the Foundations. According to publicly available information, she owns or operates an animal shelter in the Los Angeles, California area. *See* PROPUBLICA – NONPROFITS EXPLORER, Pawsitive Beginnings, *available at* https://projects.propublica.org/nonprofits/organizations/922127732.

8. Based on publicly available information and Ms. Żak's own testimony in certain proceedings related to the Foreign Proceedings that are the subject of this Petition, Ms. Żak resides at 9950 Toluca Lake Avenue, North Hollywood, CA, 91602. A true and correct copy of an affidavit by Ms. Żak stating that she resides at the address above, within the Central District of California, is attached as **Exhibit A**.

9. Ms. Zak is the person from whom discovery is sought in this Petition.

10. **Jaroslaw Grzesiak.** Jaroslaw Grzesiak is Mr. Solorz's former friend and confidante, and he had previously served as a legal advisor to various companies owned by the Foundations. As detailed herein, Mr. Grzesiak has both previously served on and is currently serving on the boards of the Foundations.

## FACTUAL BACKGROUND

11. The Foreign Proceedings, as well as a number of additional related proceedings that are not the subject of the Petition, arise out of efforts by Mr. Solorz's children and Mr. Grzesiak to oust Mr. Solorz from the highly successful business empire that he built.

12. In May 2023, Mr. Solorz executed several legal declarations with respect to the Foundations (the "2023 Declarations") which would have transferred certain control of the Foundations from Mr. Solorz to his children. However, he later exercised his right to revoke the 2023 Declarations in August 2023. Ms. Żak described this revocation in her affidavit as a "sudden[]" and inexplicable decision by Mr.

Solorz, expressed concern that his actions were taken at the urging of his wife, and stated her opinion that Mr. Solorz has made his children "his priority."

13. On August 2, 2024, Mr. Solorz's children (then named as secondary beneficiaries of the Foundations), with the assistance of Mr. Solorz's former friend and associate Mr. Grzesiak, caused Mr. Solorz to execute certain legal declarations with respect to the Foundations (the "Declarations"). While his children represented to him that the Declarations were intended to protect the Foundations and their family, the Declarations were actually designed to permanently strip Mr. Solorz of certain control over the Foundations (by removing his ability to revoke the Declarations, as he did with the 2023 Declarations) and to instead transfer such control to his children. A true and correct copy of the Declarations concerning each Foundation are attached as **Exhibits B and C**.

14. The efforts to induce Mr. Solorz to give up certain control over the Foundations were closely coordinated among Mr. Solorz's children and Mr. Grzesiak.

15. In late July 2024, during a family gathering, Mr. Solorz's children—including Ms. Żak—began having discussions with Mr. Solarz regarding testamentary matters, including in relation to Mr. Solorz's will.

16. On August 1, 2024, Mr. Solorz, his children, and Mr. Solorz's attorney, Jerzy Modrzejewski, met to follow up on the topics discussed during the gathering. The children also raised the possibility of potential changes to the Foundations' governing documents. At the end of the day's discussions, Mr. Modrzejewski informed Mr. Solorz and his children that he was planning to travel on vacation the next day, suggesting that he either postpone his travel plans or that the group postpone more detailed discussions regarding changes to the governing documents until such time as he was able to participate. However, Ms. Żak encouraged him to keep his travel plans, stated that his presence for any potential further discussions was not necessary, and stated that if any further discussions regarding changes to the

governing documents occurred without him during his vacation, Mr. Solorz and the children could update him on those discussions once he returned.

17. Then, on August 2, 2024, with Mr. Solorz's legal advisor on vacation, the children met with Mr. Solorz and advised him that they had drafted legal declarations intended to effect changes to the Foundations' governance.

18. His children insisted that executing the Declarations was in his interests and those of the Foundations, and they further assured him that he would not lose any control over the Foundations by executing the Declarations. Mr. Solorz's notary then called Mr. Modrzejewski so that Mr. Solorz could speak with him about the Declarations being proposed by his children. But Ms. Żak stated that it was urgent that Mr. Solorz execute the Declarations and that there was no time for Mr. Solorz to consult with his counsel. The call with Mr. Modrzejewski was then terminated, and Mr. Solorz then executed the Declarations that day, as his children urged him to do.

19. While Mr. Solorz executed the Declarations on the basis of his children's representations to him that the Declarations were intended to protect the Foundations and their family, it would later become clear to Mr. Solorz that the Declarations were actually designed to permanently strip Mr. Solorz of certain control over the Foundations and to instead transfer such control to his children. Moreover, Mr. Solorz later learned that Ms. Żak had been in communication with Mr. Grzesiak—a long-time advisor to Mr. Solorz and his businesses—regarding potential changes of control over the Foundations. Specifically, Mr. Grzesiak has testified that Ms. Żak and her husband sought advice from him regarding a change of control of the Foundations and that Ms. Żak and her husband had asked Mr. Grzesiak to speak with their U.S. counsel regarding the U.S. tax implications if certain rights of control concerning the Foundations were to transfer to Ms. Żak.

20. True and correct copies of an affidavit by Ms. Żak and a witness statement by Mr. Grzesiak that have been submitted in the Foreign Proceedings and

which set out the facts detailed above in Paragraphs 13-19, are attached as **Exhibit A** and **Exhibit D**, respectively.

21. After discovering that he had been induced into executing these Declarations, which did not reflect his intended plans for the Foundations, Mr. Solorz undertook prompt actions beginning the very next day to revoke the Declarations, restore his control over the Foundations, and execute further amendments to the Foundations' governing documents (the "Corrective Actions"). True and correct copies of certain documents evidencing the Corrective Actions are attached as **Exhibit E**, **Exhibit F**, **Exhibit G**, and **Exhibit H**, respectively. His children have rejected the Corrective Actions as invalid under Liechtenstein law. Following Mr. Solorz's commencement of the various Corrective Actions, Ms. Żak and her brothers executed a "standstill agreement" on August 3, 2024, in which the children agreed that they would not execute any rights transferred to them through the Declarations until August 16, 2024. A true and correct copy of the standstill agreement is attached as **Exhibit I**.

## THE FOREIGN PROCEEDINGS

22. The core disagreement between Mr. Solorz and his children over the Foundations led to the initiation of dozens of legal proceedings by various parties in Liechtenstein and other foreign jurisdictions, which generally relate to the validity of the Declarations and his children's beneficiary status, the Corrective Actions, and the control and governance of the Foundations and the companies held by them.[3] Those proceedings are in various stages.

23. Relevant to the Petition here are three proceedings presently pending in Liechtenstein, detailed below: (i) the Solkomtel Application, in which Mr. Solorz seeks to invalidate the Declarations that purported to vest his children with certain control over the Solkomtel Foundation, (ii) the Grzesiak Dismissal Motion, in which

---

[3] The other foreign actions—proceedings in Cyprus and Poland—are generally proceedings that were brought in aid of underlying proceedings in Liechtenstein.

Mr. Solorz seeks the dismissal of Mr. Grzesiak from the board of the TiVi Foundation, and (iii) the <u>Solorz Removal Application</u>, in which Mr. Solorz seeks to invalidate resolutions that purported to remove him as the Chairman of the Supervisory Boards of certain Polish companies held by the TiVi Foundation.

      a.    **The Solkomtel Application**

24. On August 29, 2024, Mr. Solorz commenced a declaratory judgment application (Case Number 15 CG.2024.190, later transferred to a different set of proceedings and now captioned 06 HG.2025.22) in the Princely District Court of Vaduz, Liechtenstein against the Solkomtel Foundation and his children, seeking to invalidate the Declarations he was induced to execute on August 2, 2024 ceding certain control of the Solkomtel Foundation to his children, and to uphold the Corrective Actions undertaken by Mr. Solorz, including subsequent amendments to the Foundation's governing documents. A true and correct copy of the Application is attached as **Exhibit J.**

25. Mr. Solorz alleges that the Declarations he executed should be considered invalid on grounds of deceit and error, and that in all events, he retained the right to undertake the Corrective Actions, including issuing superseding declarations, to undo the Declarations. *See* **Ex. J** ¶¶ 122-39.

26. On April 10, 2025, the court notified the parties (a true and correct copy of which is attached as **Exhibit K**) that it was considering staying the Solkomtel Application pending the resolution of a related application initiated by Mr. Solorz to invalidate the Declarations he executed with respect to the TiVi Foundation (the "TiVi Application," Case No. 06 HG.2024.210).

27. On August 13, 2025, the Princely District Court issued an order which effectively stayed the Solkomtel Application until a decision has been made in the TiVi Application regarding the "facts essential to the decision." A true and correct copy of the August 13, 2025 decision is attached as **Exhibit L**.

28.     That stay remains in effect today because the TiVi Application is still being actively litigated in appellate proceedings, which followed an initial trial court-level decision that upheld the validity of the August 2, 2024 TiVi Foundation Declarations.

29.     Although the Solkomtel Application and the TiVi Application share some similarities, there are significant differences in the legal arguments and facts presented in those applications, particularly given that the Foundations' governing documents—which are at the heart of each Foundation-specific dispute—are not identical.  Thus, even if the decision to affirm the TiVi Foundation Declarations is upheld on appeal, such decision would not preclude Mr. Solorz from continuing to litigate the validity of Solkomtel Foundation Declarations when the stay of the Solkomtel Application is lifted, as a decision in the TiVi Application will not have a completely preclusive effect on the Solkomtel Application, particularly if new evidence becomes available concerning the Solkomtel Application.

30.     Given that the Solkomtel Application remains pending in the trial-level court in an early stage of the proceeding, Mr. Solorz will have the ability to introduce new evidence into that proceeding once the stay is lifted.

31.     Ms. Żak has documents and information directly relevant to the Solkomtel Application because, as demonstrated through evidence already submitted in those proceedings, including her own affidavit, the witness statement of Mr. Grzesiak, and certain other related actions in which she has been involved, she has personal knowledge regarding efforts by Ms. Żak and her brothers to induce Mr. Solorz into signing declarations ceding certain control of the Foundations to his children and the events that have resulted therefrom.  *See* **Ex. A**; **Ex. D** at 36-37.  The documents and information that Ms. Żak possesses are directly relevant to core issues in dispute in the Solkomtel Application, including the validity of the Declarations and Mr. Solorz's subsequent Corrective Actions to undo them.  *See* **Ex. A**; **Ex. D**.

        b.      **The Grzesiak Dismissal Motion**

32. On October 13, 2025, Mr. Solorz filed a motion, Docket Entry #60 (the "Grzesiak Dismissal Motion"), in Case Number 06 HG.2024.133 in the Princely District Court of Vaduz, Liechtenstein, seeking the dismissal of Mr. Grzesiak as a TiVi Foundation board member. A true and correct copy of the Grzesiak Dismissal Motion is attached as **Exhibit M**.

33. In the Grzesiak Dismissal Motion (which relies substantially on statements and testimony from Mr. Grzesiak himself, including Mr. Grzesiak's February 3, 2025 witness statement, *see* **Ex. D)**, Mr. Solorz argues that Mr. Grzesiak must be removed from the TiVi Foundation board because he is in breach of his legal obligations and duties to Mr. Solorz and to the TiVi Foundation, including due to the conflict of interest created by Mr. Grzesiak coordinating with Mr. Solorz's children to facilitate the execution of Declarations against Mr. Solorz's interest notwithstanding that Mr. Grzesiak has served as a long-time legal advisor to Mr. Solorz and his businesses. **Ex. M** ¶¶ 3, 8-12, 22, 28-29, 42-44, 60.

34. Although Ms. Żak is a party to the underlying proceedings where the Grzesiak Dismissal Motion was filed, she is not the subject of the Grzesiak Dismissal Motion.

35. Ms. Żak has documents and information directly relevant to the Grzesiak Dismissal Motion because, as demonstrated through evidence already submitted in those proceedings, including her own affidavit and the testimony of Mr. Grzesiak, and certain other related actions in which she has been involved, she has personal knowledge regarding the efforts by Ms. Żak and her brothers to induce Mr. Solorz into signing declarations ceding certain control of the Foundations to his children and the events that have resulted therefrom. She also has personal knowledge regarding Mr. Grzesiak's service on the TiVi Foundation board: the children appointed Mr. Grzesiak to that position in March 2025 (*see* affidavit of Tomasz Szelag, dated April 22, 2025, a true and correct copy of which is attached as **Exhibit N**). *See* **Ex. A**; **Ex. D** at 36-37; **Ex. N** at ¶ 13. The documents and information that Ms. Żak possesses are

directly relevant to core issues in dispute in the Grzesiak Dismissal Motion, including the propriety and legality of Mr. Grzesiak's actions as a TiVi Foundation board member and his potential conflict of interest (including whether he has violated his duty of confidentiality such as by sharing confidential information with the children). *See* **Ex. A**; **Ex. D**; and **Ex. N**.[4]

      c.  **The Solorz Removal Application**

36. On August 1, 2025, Mr. Solorz commenced an application (Case Number 06 HG.2025.122) in the Princely District Court against Dr. Peter Schierscher, Jaroslaw Grzesiak, and Tomasz Szelag (along with the TiVi Foundation itself named as an interested party), seeking, *inter alia*, a declaratory judgment that would declare invalid a resolution by the Foundation Council of July 21, 2025 to remove Mr. Solorz as the Chairman of the Supervisory Boards of certain Polish companies that he founded. Ms. Żak is not a party to the Solorz Removal Application. A true and correct copy of the Application is attached as **Exhibit P**.

37. Mr. Solorz alleges, among other things, that Mr. Grzesiak engaged in a breach of trust by coordinating with Mr. Solorz's children to facilitate the execution of Declarations against Mr. Solorz's interest notwithstanding that Mr. Grzesiak has served as a long-time legal advisor to Mr. Solorz and his businesses and, in furtherance of the children's efforts, unlawfully sought to procure Mr. Solorz's removal in

---

[4] Mr. Solorz's children have received confidential information concerning the Solkomtel Foundation that is supposed to be accessible only to Foundation board members, which the children are not. In particular, one of Mr. Solorz's children, Mr. Tobias Solorz, attached documents to an affidavit in a related foreign proceeding reflecting that he was in receipt of information regarding a distribution request made on July 30, 2025—information that he could have only obtained from a Foundation board member (a true and correct copy containing excerpts of that affidavit is attached as **Exhibit O**). Any discovery showing that Mr. Grzesiak has been providing confidential information to Mr. Solorz's children would further support the Dismissal Motion.

violation of the Foundation's governing documents, in order to further deprive Mr. Solorz of certain control over the Foundation.  See **Ex. P** ¶¶ 129; 138; 183-186.

38.  Ms. Żak has documents and information directly relevant to the Solorz Removal Application because, as demonstrated through evidence already submitted in those proceedings, including her own affidavit, the testimony of Mr. Grzesiak, and certain other related actions in which she has been involved (including the appointment of Mr. Grzesiak to the TiVi Foundation board), she has personal knowledge regarding Mr. Grzesiak's service on the TiVi Foundation board.  See **Ex. A**; **Ex. D**; and **Ex. N**.  The documents and information that Ms. Żak possesses are directly relevant to core issues in dispute in the Solorz Removal Application, including Mr. Grzesiak's actions as a TiVi Foundation board member, such as the issuance of the July 21, 2025 resolution.  See **Ex. A**; **Ex. D**; and **Ex. N**.

## **AVAILABILITY, USE, AND NATURE OF THE DISCOVERY SOUGHT**

39.  The discovery that Mr. Solorz seeks from Ms. Żak through this Petition cannot be obtained from Ms. Żak in the Foreign Proceedings pending in Liechtenstein; however, the Liechtenstein courts presiding over those proceedings are, in my opinion, amenable to receiving evidence obtained by parties through Section 1782 petitions such as the Petition, particularly where, as here, the evidence will assist the Liechtenstein courts in evaluating the claims and defenses at issue in the Foreign Proceedings.

40.  ***Unavailability of Discovery from Ms. Żak in Liechtenstein.***  The discovery sought through this Petition cannot be obtained directly from Ms. Żak in the Foreign Proceedings.

41.  Liechtenstein does not have "U.S.-style" discovery procedures.  In certain circumstances, a party to a civil proceeding can request the disclosure of certain, specific types of documents that bind the parties to the dispute (*e.g.*, legal

instruments signed by the parties to the dispute). However, Liechtenstein courts do not have procedures available for requesting communications or documents that are believed to exist regarding particular topics or subjects—the primary form of discovery that Mr. Solorz seeks from Ms. Żak through this Petition. Ms. Żak is also not a party to the Solorz Removal Application, and there is no procedural mechanism available in the Liechtenstein courts to compel a non-party to produce documents. And, in all events, Liechtenstein courts lack the authority to compel persons who reside in the United States—including Ms. Żak—to produce documents in proceedings pending in Liechtenstein.

42. ***Use of Section 1782 Discovery in Liechtenstein***. While Liechtenstein courts do not have "U.S.-style" discovery, they are amenable to receiving evidence obtained by parties through Section 1782 petitions. The Foreign Proceedings here are particularly well-suited for and amenable to such discovery.

43. As a general rule, Liechtenstein has permissive procedures concerning the introduction of evidence in civil proceedings, as courts allow generally allow factual submissions and evidence to be presented at any time during the pendency of a proceeding of first instance (in accordance with Liechtenstein procedural rules).[5]

44. Liechtenstein courts do prohibit the introduction of certain evidence if it is obtained through unlawful means (*e.g.*, through the use of torture or dangerous threats). However, there is no prohibition on obtaining discovery through lawful procedures in other jurisdictions, such as through Section 1782 petitions.

---

[5] Liechtenstein courts retain discretion to decline evidence that was submitted late as a result of a party's gross negligence in obtaining the evidence sooner and/or if the submission of new evidence would materially delay the conclusion of the proceeding. Liechtenstein courts also retain discretion to admit new evidence at any point before the case is decided or a written judgment is entered, and even evidence obtained at a later date may be admitted in support of applications for post-judgment relief, including a motion for retrial or modification of the judgment.

45. Any discovery obtained from Ms. Żak pursuant to Section 1782 would be capable of being admitted for use in the Foreign Proceedings.

46. Accordingly, I am not aware of any reason that Liechtenstein courts will not be receptive to the judicial assistance requested in the Petition.

47. Nor am I aware of any way in which the discovery requested from Respondent would circumvent proof-gathering restrictions in Liechtenstein, or other policies of Liechtenstein courts.

48. To the contrary, it is my understanding that Liechtenstein courts are receptive to discovery obtained from U.S. courts through Section 1782 applications. I also note that Liechtenstein courts have themselves made use of 28 U.S.C. § 1782 to obtain discovery for use in Liechtenstein courts. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 2025 WL 764608, at *2 (11th Cir. Mar. 11, 2025) (Liechtenstein court initiated discovery request in aid of criminal proceedings pursuant to 28 U.S.C. § 1782); *In re Letter of Request from Liechtenstein*, Docket No. 1:03-cv-21637 (S.D. Fla. Jun 17, 2003), ECF No. 1 (28 U.S.C. § 1782 discovery requested by the High Court of Liechtenstein in aid of criminal proceedings).

49. Indeed, discovery obtained from U.S. courts through a Section 1782 application is admissible in civil proceedings in Liechtenstein, as demonstrated by a decision of the Liechtenstein Constitutional Court, StGH 1987/003 (LES 1988, 49) (a true and correct copy of which is attached as **Exhibit Q**). In this decision concerning a criminal proceeding, the Liechtenstein Constitutional Court recognized that "reciprocity" exists between Liechtenstein and the United States with respect to Section 1782 and sharing discovery as a form of judicial legal assistance, that Section 1782 "enables the US to provide legal assistance to the same extent as Liechtenstein is able to provide to the US," and that Section 1782 applies to both civil and criminal matters. **Ex. Q** ¶¶ 15-16.

50. Thus, it is my opinion that courts of Liechtenstein are likely to accept evidence obtained through Section 1782 applications.

51. ***Nature of the Discovery Sought.*** The discovery sought by Mr. Solorz's Petition will aid Liechtenstein courts in evaluating applications and defenses in each of the Foreign Proceedings.

52. As set forth above, all of the matters at issue in the Foreign Proceedings arise out of a common nucleus of operative fact—namely, the actions and events giving rise to the Declarations signed on August 2, 2024—and Ms. Żak unquestionably has information and documents in her possession, custody, and control relating to the execution of those Declarations, the circumstances surrounding the execution of those Declarations, and subsequent events arising out of and relating to the execution of those Declarations. That evidence will therefore bear directly on the claims and defenses in the Foreign Proceedings.

53. The Subpoena that Mr. Solorz seeks to serve on Ms. Żak is narrowly drafted to focus specifically on the relevant documents and correspondence in Ms. Żak's possession, custody, and control during the relevant time period, and will not be unduly burdensome.

54. A true and correct copy of the certifications of English translation for Exhibits B-Q is attached as **Exhibit R**.

I declare under the penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 28 day of October 2025 in Vaduz, Liechtenstein.

_____
Simon Ott, Esq.