# **EXHIBIT A**

## AFFIDAVIT

I, the undersigned, ALEKSANDRA ŻAK, address 9950 Toluca Lake Ave, North Hollywood, CA 91602, USA, Polish passport no. ET 6563739, state under oath:

1. I make this affidavit to address matters concerning the legal changes made on 2 August 2024 by Zygmunt Solorz concerning:

    1.1. TIVI Foundation, a foundation established under Liechtenstein law and registered under the number FL-0002.394.367-5 at the Office of Justice, Commercial Register Division, in Vaduz ("TIVI");

    1.2. Solkomtel Foundation, a foundation established under Liechtenstein law and registered under the number FL-0002.419.785-2 at the Office of Justice, Commercial Register Division, in Vaduz ("Solkomtel"; Solkomtel and TIVI jointly referred to as the "Foundations").

2. I explain the background of those changes, including longstanding succession plans of Zygmunt Solorz, the reasons why those changes were implemented, and how they were implemented.

3. I am a secondary beneficiary and a holder of additional rights concerning the Foundations. Zygmunt Solorz is my father.

4. The contents of this affidavit are within my own knowledge, unless otherwise stated, and are true.

**1) THE CHANGES OF 2 AUGUST 2024 REFLECT MY FATHER'S LONG-STANDING WILL**

### a. Introduction

5. Zygmunt Solorz has built substantial businesses in Poland over the years, predominantly in media, telecommunications, real estate and energy sectors.

6. Since I was a child, my father wanted my brothers – Tobias Solorz and Piotr Żak – and me, to be his rightful heirs and business successors. In 2012 and 2013 he structured the core of his assets through Liechtenstein foundations – TIVI (2012) and Solkomtel (2013). He informed me around that time, that I will be one of the beneficiaries of the Foundations in case of his death. This assurance was repeated many times over the years and my father informed me on multiple occasions of changes in the corporate documents of the Foundations strengthening our position as the rightful heirs. At the same time, my father was training both my brothers within his companies, to be his business successors.

16

7.  In recent years, the physical and mental condition of my father has deteriorated, particularly after he had suffered from a long COVID infection with lasting physical and mental repercussions. This made my father consider accelerating his succession plans and passing the active control over the Foundations to myself and my brothers during his lifetime.

    **b.   Interrupted succession in 2023**

8.  In late 2022 my father informed me of the changes to the Statutes of TIVI, allowing for the succession to take place during his lifetime. On 24 November 2022, Article 13(2) of the Statute was incorporated by way of which my father could submit during his lifetime a declaration of intent, that the provisions in case of his death should apply from the moment indicated by him, during his lifetime ("Declaration of Succession").

9.  On 29 May 2023, my father decided to enact his succession and benefit from the mechanism of the Declaration of Succession. He executed the Declaration of Succession with the enforcement date of 15 December 2023. Within the declaration, he reserved the right to revoke it until it's effective date. If not revoked, on 15 December 2023 the succession would have become final and irrevocable, as intended.

10. My father suddenly revoked the Declaration of Succession on 17 August 2023. He had not consulted or informed this decision with me or my brothers in advance, nor provided explanation afterwards, which is not the way he acted in the past. With the benefit of hindsight, I am convinced that my father was misled by the woman who recently became his fourth wife, Justyna Kulka, who convinced him to revoke the declaration. I was told that she was present with Jerzy Modrzejewski when my father was revoking the declaration. She has been aggressively trying to take over my father's estate, and would have been in no position to do so had my father not revoked the Declaration of Succession (which from 15 December 2023 would have become irrevocable).

11. Back then, in August 2023, my father was also persuaded by Justyna Kulka and Jerzy Modrzejewski to change the Statutes of TIVI. The provisions allowing my brothers and me to take over the control in case of my father's incapacity to act were removed. Also, Article 13(2) was reconstructed permitting my father to revoke the Declaration of Succession even after it entered into force. This was contrary to my father's intent from when he incorporated it. The mechanism of the Declaration of Succession was originally designed by my father to transfer the control while having full capacity, and

not allowing it to be revoked in case his condition would have deteriorated in a way that
he could have acted under an undue influence.

**c.    Relationship between Zygmunt Solorz and Justyna Kulka**

12.    My father has always made it very clear that his children were his priority, and
everything he did was for them. This was well known through interviews, amongst all
his colleagues and friends, and throughout his companies. Despite me living in the
USA, I had maintained almost daily contact with my father, speaking to him extensively
over the phone. We also used to spend holidays and celebrate family occasions together.
It wasn't until his relationship with Mrs. Kulka, that he started calling me less
frequently (usually when his wife was out of the house), using his phone less, and
cancelling plans last minute when it came to spending time with me and his
grandchildren.

13.    Unlike his relations with the children, my father has never been stable in his
matrimonial relations. His first three marriages ended up in exceedingly long and
expensive divorces. In 2023, I was aware that he was seeing Justyna Kulka, but he
assured me that the relationship was not serious, and that he had no plan to marry her.

14.    However, after my father revoked the Declaration of Succession, it became apparent
that Justyna Kulka started to acquire influence over the companies controlled by the
Foundations. She also exploited the relationship with my father to her financial benefit.
For example:

14.1.    from December 2023 till the date of this affidavit, Justyna Kulka joined more than
30 Supervisory Boards of various companies controlled by the Foundations[1],
gaining hundreds of thousands of dollars in monthly remunerations;

14.2.    she has established competing business ventures with my father, including the
investment in PJ Investments sp. z o.o.;

14.3.    on 29 July 2024 my father included Justyna Kulka in his last will along me and
my brothers concerning his personal assets (and not the assets of the
Foundations). She also managed to persuade my father to include a provision in

---

[1]    Interphone Service Sp. z o.o., PAK- PCE Wiatr Sp. z o.o., Ze PAK S.A., CPE Sp. z o.o., CKS Ossa Sp. z
o.o., Polkomtel Sp. z o.o., "Pak Górnictwo" Sp. z o.o., Pak Kopalnia Węgla Brunatnego Konin S.A.,
Kalahari 2 Sp. z o.o., Cyfrowy Polsat S.A., Pak- Pce Człuchów Sp. z o.o., Pak-Polska Czysta Energia Sp. z
o.o., Pak- Pce Kazimierz Biskupi Sp. z o.o., Pak- Pce Dobra Sp. z o.o., Pak- Pce Przyrów Sp. z o.o., Pak-
Pce Polski Autobus Wodorowy Sp. z o.o., Pce-Oze 6 Sp. z o.o., Pce-Oze 4 Sp. z o.o., Pce-Oze 3 Sp. z o.o.,
Pce-Oze 2 Sp. z o.o., Przedsiębiorstwo Remontowe "Pak Serwis" Sp. z o.o., Pce-Oze 1 Sp. z o.o., "Pak- Pce
Fotowoltaika" Sp. z o.o., Pak- Pce Biopaliwa I Wodór Sp. z o.o., Pak- Pce Miłosław Sp. z o.o., Pak- Pce
Stacje H2 Sp. z o.o., Mobiem Sp. z o.o., Interia.Pl Sp. z o.o., "Eviva Drzeżewo" Sp. z o.o., Eviva Drzeżewo"
Sp. z o.o., Polsat Media Sp. z o.o., Tv Spektrum Sp. z o.o., Telewizja Polsat Sp. z o.o.

his last will stipulating that in case she could not or would not accept the inheritance then her son, Stanisław Kulka, not a relative of Zygmunt Solorz, would inherit her part.

15. Eventually, my father was persuaded to get married, in secret from us, on 22 March 2024. As the relationship with Justyna Kulka developed, it become more and more difficult to contact my father. Justyna Kulka persuaded him to replace his years-long private assistant, many of his trusted advisors, and made it very difficult for his children to keep close contact with their father. She repeatedly isolated my father and started speaking on his behalf during meetings and engagements. She also now organizes his calendar, deciding who and when he can meet. I have had dozens of people reaching out and asking why he no longer speaks for himself, and brings his wife to important meetings she has nothing to do with.

2)    THE CHANGES OF 2 AUGUST 2024 WERE VOLUNTARILY MADE BY ZYGMUNT SOLORZ

a.    Meeting on 31 July 2024

16. It is my understanding that my brothers and I are accused by the persons representing my father of using the family gathering on 31 July 2024 to implement the "long-planned coup attempt". This narrative could not be further from the truth.

17. I visited Poland for the occasion of my father's birthday. Upon arrival to Warsaw, my father picked me up from the airport alongside my brother, Piotr Żak. I had no intention to discuss anything business related. To the contrary, it was my father who asked me and Piotr Żak to meet with his lawyer, Jerzy Modrzejewski. My father said there were documents he wanted to discuss, including the will he executed two days prior, and some others that had been signed in the months leading up to his birthday. We all drove to my hotel where we met to discuss the above.

18. During the meeting on 31 July 2024 my father also informed me and my brother Piotr Żak of his intention to split his assets between his heirs and enforce succession while he is alive in order to avoid potential disputes after his death and to avoid making decisions on his inheritance once his condition deteriorates. As a consequence, his last will would cover only residual assets, which had not been transferred to the heirs prior to his death.

19. I also want to state clearly that it is not true that either my brothers or I objected to Justyna Kulka joining the last will, which concerned other assets than those in the Foundations. My father repeatedly stated that Justyna Kulka would have no financial interest in the Foundations and that those, having been created over a decade ago, are for me and my brothers only as it is his life's work.

20. The discussion was not concluded that day and we continued that discussion on 1 August 2024. He invited my husband and I to spend the night at his house, which we accepted.

   **b.    Meeting on 1 August 2024**

21. I spent most of 1 August 2024 with my father. We started discussions in the morning at my father's office at Ostrobramska 77 in Warsaw, where he customarily spends his working hours. We paused the discussions for a medical visit with my father's doctor. The main conversation took place in the afternoon at his office. The discussion was attended by my father's trusted advisor who had worked with him for nearly 30 years – Dariusz Wierzchucki, who is also a Polish public notary and acted as a public notary upon many of the Foundations' documents in the past. Moreover, Jarosław Grzesiak was involved via telephone. For many years he was a managing partner of Warsaw office of an American law firm Greenberg Traurig. Over the years he advised my father and his companies and few years ago he joined my father as his trusted legal advisor. He replaced Jerzy Modrzejewski in the Board of Directors of the Foundations and was preparing our succession.

22. The mechanism of changing control over the Foundations was well-known to everyone in the room, as my father had incorporated that mechanism in 2022 and made use of it in 2023. Back then it was also Mr. Wierzchucki who attended the execution of the documents. The discussion was focused on making those changes irreversible, so that the change of control was definitive. It was in accordance with my father's clear and expressed will to effect the succession now and to protect the Foundations against the potential threats in the future or against his own decisions if his health and mental condition would deteriorate.

23. At the same time, my father communicated during that meeting, that he wanted to retain certain influence over the Foundations and its underlying businesses, including maintaining his corporate positions in various companies and being sole recipient of all dividends. Neither me nor my brothers objected. To the contrary, we were happy with our father's approach, and supported whatever he was comfortable with.

24. As the direction of the changes was agreed, and as the documents were not to be extensive, my father consented to the changes and instructed for the drafts to be prepared.

25. The drafts were prepared by my brother Piotr Żak, in cooperation with Dariusz Wierzchucki and Jarosław Grzesiak, both trusted advisors of my father.

### c.    Meeting on 2 August 2024

26.  On the following day, 2 August 2024, we met with my father to finalize those documents at his headquarters. It is entirely a false accusation that my brothers and I "ambushed" my father. The signing was planned the day before, and all activities were attended by a public notary and my father's trusted advisor, Dariusz Wierzchucki. Additionally, another public notary was present that day, Adrian Ziółkowski. He attended the meeting as a public notary for the execution of my father's last will concerning his personal assets.

27.  Furthermore, the signing took place over the span of many hours, with dozens of people coming in and out of the office and interacting with all of us and my father conducting his business affairs as usual. Even his fourth wife, Justyna Kulka, entered the room at one point, and after a brief private conversation, left with no concerns as to his wellbeing.

28.  Each of the documents signed that day was read-out and explained to my father. I have no doubts that my father understood perfectly the documents and their consequences but also Mr Wierzchucki put effort (as is also his legal duty as a public notary) in making sure that my father made an informed decision and knew its consequences.

29.  At one point during the meeting, J. Modrzejewski was called. I have often expressed distrust in this particular person. After a brief conversation, Mr. Wierzchucki hung up the phone at my father's explicit request. Additionally, my father chose to call and consult further details with Jarosław Grzesiak, a Foundation Board member and his trusted lawyer.

30.  My father confirmed his intention to us and his advisors to sign the declaration and make it irrevocable. He was fully aware of the legal consequences of those statements and signed them in the presence and under the guidance and legal protection of Dariusz Wierzchucki, acting as a public notary.

31.  I witnessed no signs of my father acting under anyone's undue influence. Nor did I witness anything that would suggest that the executed documents did not reflect the true will of Zygmunt Solorz.

### d.    Meeting on 3 August 2024

32.  On 3 August 2024 I met again with my father. This time he was accompanied by his fourth wife Justyna Kulka and Jerzy Modrzejewski. It was clear that since we concluded our meeting the day before, he had been wrongfully led to believe that the documents as

signed on 2 August 2024 deprived him of the entire control over the Foundations. Knowing it is a false perspective, and not wanting to escalate the situation or ruin my father's birthday celebrations, I had suggested to sign a standstill agreement by which we agreed not to take actions based on the documents as signed on 2 August 2024 until 16 August 2024. At that point, we were convinced that my father would speak with his strategic advisors and that he would maintain the decisions taken on 2 August 2024.

### 3)    THE ATTEMPTS TO REVOKE CHANGES OF 2 AUGUST 2024

33.    After the meeting on 3 August 2024, we departed on a family holiday to Italy with my father and his wife. My husband and children joined us that day, and my brothers joined with Tobias Solorz's children and his wife the next day.

34.    At that point in time, my father had not formed any accusations against me or my brothers. We had a fairly uneventful and pleasant family holiday, until close to the end where I decided to bring up next steps regarding the changes, as I wanted an opportunity to discuss in person before we all depart. The conversation quickly went sour as Justyna Kulka took charge and started accusing me and my brothers of manipulating my father. She also mentioned that she and my father had been planning to start buying assets out of the Foundations and putting them in her newly formed private Foundation.

35.    We ended the family vacation on 8 August 2024 (Thursday) convinced that we would all meet before 16 August 2024 in Poland to clarify any issues. My father confirmed he will see me in Poland and gave me a hug goodbye.

36.    To my dismay, on 12 August 2024 (Monday) I was informed of the proposed settlement, prepared on behalf of my father, based on which all changes from 2 August 2024 were to be reversed, and Justyna Kulka was to become the first curator of the Foundations entitled to block all resolutions of the Foundations Board of Directors.

37.    I did not agree to sign this settlement but was unfortunately not surprised to see Justyna Kulka trying to take over control over the Foundations. I wanted to speak to my father privately to put end to the family dispute. However, he did not respond to my calls, and had not responded to my messages. I tried to contact the crew of the yacht he was on, but I was told that Justyna Kulka had not only explicitly instructed the crew that they were not to speak to us, but they were also actually not to speak to my father without her present either.

38.    My father finally picked up my call on 12 September 2024. He said he was keen to meet in person to find a solution to this, but he threatened that if I do not agree to reverse the

22

changes made by him on 2 August 2024, he will exclude me from the beneficiaries and transfer out the underlying assets of the Foundations. He mentioned that everything was always for us, but he had no choice if we didn't sign the paperwork he wanted us to.

39. He was surprised when I told him that I tried to reach out to him many times. I explained to him that his fourth wife could have deleted my messages. I have tried to contact him every few days for the last two months. He claims he has no messages or missed calls from me. He has also not been seen at work in two months and has been kept isolated and constantly moving around on his yacht.

40. I asked my father for a meeting in Lichtenstein in order that he can get an independent legal advice from Lichtenstein lawyers and not Justyna Kulka or Jerzy Modrzejewski, My father consented to meet and was to confirm the exact date. He failed to do so, and he has not answered my calls or messages since.

41. Yesterday, on 19 September 2024 I received a notice from my father's lawyer stating that I have lost all beneficiary rights in both Foundations. Similar letters were received by my brothers. While this notice is ineffective, it demonstrates that within less than six months of my father's fourth marriage, his longstanding succession plans are at threat, and the future of the Foundations is endangered.

Toluca Lake, 20 September 2024

Aleksandra Żak

Aleksandra Żak