# EXHIBIT G

**MAG. ALEXANDER WINKLER**

PUBLIC NOTARY
1180 Vienna • Weimarer Straße 5
Telephone (01) 479 54 04
Fax (01) 479 69 74
E-mail: kanzlei@notar-winkler.at

| **Exhibit IX** |

File No.: 1559



# Notarial Deed

Before me, Magister Alexander Winkler, public notary with official seat in Vienna-Währing, Vienna, and office at 1180 Vienna, Weimarer Straße 5, there appeared today at 1010 Vienna, Schwarzenbergplatz 3—where I went at the express request of the party—the following person:

1.) Mr. **Zygmunt Józef Solorz,** born on 08/04/1956 (August fourth, nineteen fifty-six), Principality of Liechtenstein, 9495 Triesen, Meierhofstraße 8, identified by his Polish passport No. EK 7971729, issued on 12/22/2016 (December twenty-second, two thousand sixteen) by the Voivode of Mazovia.

Page One

134

The above-named individual delivered to me, the notary, the private instrument annexed hereto, consisting of four unstamped sheets, namely the Declaration and Resolution dated today, for the

**purpose of notarial**

**affirmation**

Accordingly, I have examined and signed the present private instrument in accordance with Section 54 of the current Notarial Code.

The party acknowledges before me, the notary, that the annexed private instrument was likewise personally signed by him.

Upon my inquiry, the party declares that he has been fully informed of the legal and tax consequences of this legal transaction by his legal and tax representatives, that he is aware of the consequences of the transaction, and that he does not wish to receive any further information from me, the notary.

The contracting party was advised of the company's obligation to disclose its beneficial owner pursuant to Section 5 of the Beneficial Owners Register Act. The contracting party declares that none of the natural persons involved in this transaction nor any of the beneficial owners of any legal entities involved in this transaction hold or have held any prominent public office, and that they are not related or otherwise closely connected to any person who holds or has held such an office. The contracting party further declares that he is not participating in this transaction in the name or on behalf of another person and that the funds used in this transaction do not originate from any act punishable by imprisonment of more than one year.

At the same time, he authorizes that certified copies of this notarial deed may, upon unilateral request and at the expense of the requesting party, be issued repeatedly to himself and his legal successors as well as to the TiVi Foundation.

135

**DECLARATION AND RESOLUTION**

I, Zygmunt Józef Solorz (hereinafter the "**Founder**"), am the sole Founder and Primary Beneficiary of the TiVi Foundation, with registered seat in Vaduz, Principality of Liechtenstein, registered in the Commercial Register of the Office of Justice of the Principality of Liechtenstein under number FL-0002.394.367-5 (hereinafter the "**Foundation**"), and I hereby, on the basis of Article 552 Section 30 of the Persons and Companies Act in conjunction with Article 13(2) point 1 of the Statutes of the Foundation, adopt the following resolution:

The Statutes of the Foundation dated November 29, 2023, are hereby confirmed, and Article 5 is supplemented by the insertion of a new paragraph (5), which shall read as follows:

> *"(5) Any person (other than the Founder) who*
>
> *(i) challenges, in whole or in part, before any domestic or foreign authority or court, the Foundation as such, its establishment or existence, its Statutes, By-Laws, regulations, financial affairs, decisions (whether of a fiduciary or business nature), or asset transfers (to whomever made), or who harms the Foundation financially or in its reputation; or*
>
> *(ii) challenges, in whole or in part, before any domestic or foreign authority or court, the Founder's legal acts, or who harms the Founder financially or in his reputation,*
>
> *forfeits his or her beneficiary rights. In such case, all benefits (or other rights) to which that beneficiary would have been entitled shall be allocated pro rata among the other beneficiaries of the Foundation, in accordance with their respective rights in the Foundation.*
>
> *The Curator may, at his sole discretion, reinstate such excluded persons, in whole or in part, with ex tunc or ex nunc effect, if that person definitively withdraws the challenge or ceases the harmful conduct."*

The newly restated Statutes of the Foundation, dated today, are set forth in Annex ./1, which forms an integral part of this declaration and which is likewise separately signed by me for confirmation.

For the avoidance of doubt, I note that the version of the Statutes shown in Annex ./1, except for the addition of the above-mentioned forfeiture clause, corresponds to the version which I most recently amended and brought into force by declaration dated November 29, 2023, authenticated under record number 8211/2023 before Notary Dariusz Wierzchucki.

Furthermore, as Founder I state that the introduction of this forfeiture clause is intended to protect the Foundation and its assets in the long term against unjustified attacks and damage.

All terms used in this deed are to be interpreted in accordance with the definitions in the Statutes of the Foundation.

Pursuant to Article 13(2) point 1, second and third sentences, of the Statutes of the Foundation, the secondary beneficiaries were notified in advance of the above amendment and the related clarification of the currently applicable provisions of the Statutes.

The costs of this instrument shall be borne by the Founder.

[h/w:] Solorz

**EXECUTED IN ACCORDANCE WITH**

**Section 54 of the Notarial Code**

[signature]

Public Notary

136

./1

**STATUTES**

**of the**

**TiVi Foundation, Vaduz**

Article 1

NAME, REGISTERED OFFICE, APPLICABLE LAW, AND JURISDICTION

Under the name

TiVi Foundation

there exists a family foundation with its registered office and place of jurisdiction in Vaduz.

All legal relationships arising from the establishment, administration, and existence of the Foundation are governed by Liechtenstein law.

The Foundation has its ordinary place of jurisdiction in Vaduz.

Article 2

DURATION

The duration of the Foundation is unlimited in time.

Article 3

FOUNDATION ASSETS

(1)  The initial capital of the Foundation amounts to CHF 30,000and is placed at the Foundation's free disposal.

(2)  (a) The assets of the Foundation consist of the shares and equity interests in the SPECIAL PURPOSE VEHICLES as defined in the By-Laws.

  (b)  The assets of the Foundation may also consist of shares or equity interests in other companies.

(c)  The assets of the Foundation may furthermore consist of cash, other movable and immovable property, and other rights that are required for the Foundation's activities and for fulfilling its purpose as set out in Article 4 of these Statutes.

137

(3)  Any disposal by the Foundation of its shares or equity interests in the SPECIAL PURPOSE VEHICLES specified in the By-Laws is impermissible. The Foundation Board is obliged to ensure that the constitutive documents (Articles of Association, Statutes) of all SPECIAL PURPOSE VEHICLES contain provisions granting the Foundation, as shareholder, inalienable personal rights to appoint the chairman of the management board and the chairman of the supervisory board of each SPECIAL PURPOSE VEHICLE.

(4)  The overriding interest of the Foundation, which the Foundation Board must protect, is the avoidance of any loss of control over the SPECIAL PURPOSE VEHICLES. "Loss of control" in this sense means that the number of votes held by the Foundation in any of the SPECIAL PURPOSE VEHICLES named in the By-Laws falls—taken as a whole, i.e., directly and indirectly (through entities/intermediaries dependent on the Foundation)—below 51% of the total number of votes.

(5)  1. The Foundation is obliged to reduce the debt ratio to a level not higher than 4.0 within the shortest time if the level of 4.0 is exceeded at the time of the Founder's death; it is further obliged to maintain the debt ratio at a level that never exceeds 4.0.

2.  With reference to point 5.1 above, the following definitions shall apply:

>    **Debt ratio** — the quotient of net financial debt and EBITDA for the relevant review period.

>    **EBITDA** — the Group's EBIT plus the amount of amortization of intangible assets (with the exception of amortization of software assets) and on the Group's tangible fixed assets (property, plant and equipment); the amount of impairment charges recognized on the Group's tangible fixed assets and intangible assets (excluding any reversals of such impairment charges recognized in the relevant period); and the amount of disposals of the Group's tangible fixed assets and intangible assets.

>    **EBIT** — operating profit before deduction of taxes and interest.

>    **Group** — the SPECIAL PURPOSE VEHICLE named under point C I. a. of the By-Laws and its direct or indirect dependent companies whose financial results are fully consolidated by that SPECIAL PURPOSE VEHICLE.

>    **Review period** — each twelve-month period ending on March 31, June 30, September 30, and December 31 of each year.

>    **Financial debt** — the Group's debt (as presented under IFRS in the annual financial statements) with respect to:

>    a.   loan or credit agreements (or other credit instruments) concluded with a bank or other financial institution;

>    b.   a negative balance on a current account, debts to a bank or other financial institution;

c.    bonds, bills of exchange (not issued or incurred as security for trade payables in the ordinary course) or other debt securities;

d.    lease liabilities;

e.    receivables sold or discounted (except receivables sold without recourse that meet IFRS derecognition criteria);

f.    any due payment obligation arising from recourse or indemnity in relation to any guarantee, suretyship, assumption of liability, trade letter of credit, or any similar instrument issued by a bank or financial institution with respect to obligations that qualify as financial debt under items a–e above or g–j below;

g.    amounts arising from the issuance of redeemable shares or equity interests (except shares/interests that the company is merely entitled to redeem) which, prior to redemption or otherwise under IFRS, are to be treated as borrowed funds;

h.    amounts of liabilities under purchase obligations or deferred-payment purchase agreements, provided that:

    1)    one of the fundamental purposes of entering into such contract is to obtain financing or to finance the acquisition or production of the assets or services that are the subject of the contract; or

    2)    the contract concerns the delivery of goods or provision of services and payment is due no later than 180 days after delivery/performance and is recognized in the purchaser's books (annual financial statements) as financial debt (borrowings), provided that:

        h.2)1 any amounts not yet paid or amounts retained by the asset/service purchaser to secure claims against the supplier (warranty, damages, and losses) are not deemed financial debt; and

        h.2)2 any liabilities arising from the UMTS (Universal Mobile Telecommunications System) license are not deemed financial debt;

139

    i.    any other transaction (including any repurchase or sale agreement of a temporary nature) whose economic substance constitutes a loan/credit, or which for other reasons is to be regarded as financial debt (borrowings) under IFRS;

    j.    any due liability arising from a guarantee or suretyship relating to any of the above liabilities; however, excluding in each case:

        j.1) debt owed to a Group member (intra-group debt);

        j.2) debt from derivative transactions;

        j.3) items affecting the balance-sheet valuation of financial debt.

**Net financial debt** — the amount of the Group's consolidated financial debt minus the value of the Group's unrestricted cash and equivalent short-term financial instruments (within the meaning of IFRS).

3.    The debt ratio referred to in point (5).1 above shall be reviewed annually. The review is based on the consolidated annual financial statements prepared by the management board and the supervisory board of the Special Purpose Vehicle named under point C) I.1. a) of the By-Laws. The first review of the debt ratio shall be carried out on the basis of the consolidated annual financial statements for the financial year 2021, which are prepared by the management board and the supervisory board of the Special Purpose Vehicle referred to under point C) I.1. a) of the By-Laws.

<u>Article 4</u>

<u>PURPOSE</u>

(1)   The purpose of the Foundation is the support, care, and promotion of the beneficiaries designated in the By-Laws; the payment of costs for education and for the development of special talents, as well as, in general, the material security and advancement of the beneficiaries, and their support in the event of marriage, pursuit of a profession, or establishment of a business.

(2)   The Foundation's purpose also covers benefits to natural or legal persons, institutions, and similar entities, insofar as such a benefit favors the beneficiaries referred to in the By-Laws.

(3)   The By-Laws may explicitly exclude certain persons or groups of persons from being beneficiaries of the Foundation. It is prohibited to advantage, directly or indirectly, in any manner whatsoever, any persons or groups of persons who have been expressly excluded as beneficiaries.

(4)   The Foundation is authorized to conclude all legal transactions that serve the pursuit and realization of its purpose.

(5)   The Foundation does not operate a business conducted in a commercial manner.

<u>Article 5</u>

<u>BY-LAWS AND REGULATIONS; FOUNDATION BENEFITS; PROVISIONS ON ENFORCEMENT</u>

(1)  The Founder may issue By-Laws and one or more regulations.

(2)  Independently of these Statutes, the Founder shall establish By-Laws specifying, inter alia, the concrete or objectively determinable beneficiaries of the Foundation.

(3)  Subject to the external limits set by the Foundation's purpose pursuant to Article 4 of these Statutes, the By-Laws' section on benefits shall determine the beneficiaries, the extent of benefits, and further provisions concerning benefits.

(4)  Foundation benefits and any awarded but unpaid distributions are strictly personal, non-transferable, not inheritable, and not encumberable. Creditors of beneficiaries may not strip any gratuitously conferred entitlement or expectancy, or any individual claim arising therefrom, by way of provisional measures, enforcement, or bankruptcy.

(5)  Any person (other than the Founder) who

    (i)  challenges, in whole or in part, before any domestic or foreign authority or court, the Foundation as such, its establishment or existence, its Statutes, By-Laws, regulations, financial affairs, decisions (whether of a fiduciary or business nature), or asset transfers (to whomever made), or who harms the Foundation financially or in its reputation; or

    (ii)  challenges, in whole or in part, before any domestic or foreign authority or court, the Founder's legal acts, or who harms the Founder financially or in his reputation,

forfeits his or her beneficiary rights. In such case, all benefits (or other rights) to which that beneficiary would have been entitled shall be allocated pro rata among the other beneficiaries of the Foundation, in accordance with their respective rights in the Foundation.

The Curator may, at his sole discretion, reinstate such excluded persons, in whole or in part, with ex tunc or ex nunc effect, if that person definitively withdraws the challenge or ceases the harmful conduct.

<u>Article 6</u>

<u>FOUNDATION BOARD</u>

(1)  The supreme body of the Foundation is the Foundation Board. At least one member of the Foundation Board must be a natural person who meets the requirements of the applicable Article 180a of the Persons

and Companies Act. The members of the Foundation Board perform their functions personally and have no right to appoint a representative to exercise these functions on their behalf.

(2) (a) The Foundation Board shall consist of four members, including a Chairman of the Foundation Board. During the lifetime of the Founder, the Founder shall appoint and dismiss the members of the Foundation Board, including the Chairman of the Foundation Board. the dismissal of the Chairman of the Foundation Board by the Founder automatically results in the termination of the appointment of that Chairman's successor as referred to in Article 6(2)(b) below. The Founder shall appoint as Chairman of the Foundation Board a natural person who meets the requirements set forth in Article 180a of the Persons and Companies Act. Among the special duties of the Chairman of the Foundation Board is to ensure that the resolutions adopted by the Foundation Board comply with the law, these Statutes, the By-Laws, and any document containing the wishes of the Founder, if such a document has been prepared.

(b)  From the time of appointment, the Chairman of the Foundation Board shall have the duty to designate his successor in the event of death, resignation, or total and permanent incapacity. The designation of a successor shall meet the same validity and effectiveness requirements as the appointment of the Chairman of the Foundation Board. Subject to Article 6(3)(a) and (b) below, the successor shall assume the office of the previous Chairman of the Foundation Board upon the occurrence of any of the above events.

(c)  Only a natural person who meets the requirements of Article 180a of the Persons and Companies Act may become the successor of the Chairman of the Foundation Board.

(d)  Subject to the provisions of point (c) above, the Chairman of the Foundation Board may, during his lifetime, alter his designated succession.

(e)  The foregoing provisions shall also apply to any further successors of the Chairman of the Foundation Board.

(3)  (a) From the date of death of the Founder, as evidenced by an official document (death certificate), or from the date specified by the Founder in the declaration referred to in Article 13(2)(2) of these Statutes, each of the Secondary Beneficiaries named in the By-Laws shall acquire the right to occupy one—and only one—seat on the Foundation Board (excluding the office of the Chairman of the Foundation Board). First, a Secondary Beneficiary may dismiss one—and only one—member of the Foundation Board appointed by the Founder pursuant to Article 6(2)(a) above. A prerequisite for the validity and effectiveness of the dismissal made by a Secondary Beneficiary is the appointment by that Beneficiary of another member of the Foundation Board to replace the dismissed member, provided, however, that it is not permissible to appoint as a member of the Foundation Board any Secondary Beneficiary who is a "United States person" or any person or any "affiliated or subordinate" entity (within the meaning of those terms as defined in the U.S. Internal Revenue Code of 1968, as amended, and the tax regulations issued thereunder), in relation to any Secondary Beneficiary who is a United States person. Second, within the seat exclusively at his disposal, the Secondary Beneficiary may dismiss the member of the Foundation Board appointed by him as described above, provided that the validity and effectiveness of such dismissal by the Secondary

142

Beneficiary shall likewise be conditional upon the appointment by that Beneficiary of another member of the Foundation Board in place of the dismissed member, provided, however, that it shall not be permissible to appoint as a member of the Foundation Board any Secondary Beneficiary who is a "United States person," or any person or any "affiliated or subordinate" entity (within the meaning of those terms as defined in the U.S. Internal Revenue Code of 1968, as amended, and the tax regulations issued thereunder), in relation to the Secondary Beneficiary who is a United States person. This procedure shall also apply to all subsequent appointments and dismissals. Only persons of legal age may be appointed as members of the Foundation Board.

(b) Following the death of the Founder, or from the date specified by the Founder in a declaration pursuant to Article 13(2)(2) of these Statutes, three Foundation Board members (excluding the Chairman of the Foundation Board) shall have the right, acting unanimously, to dismiss the incumbent Chairman of the Foundation Board. The dismissal of the incumbent Chairman of the Foundation Board entails the obligation to appoint a new Chairman of the Foundation Board and extinguishes the duty to designate a successor pursuant to Article 6(2)(b) above. Simultaneously with the dismissal, the three members of the Foundation Board referred to in Article 6(3)(a) above shall be obliged to appoint a new Chairman of the Foundation Board, who must be a natural person meeting the requirements of Article 180a of the Persons and Companies Act. The appointment of the new Chairman of the Foundation Board shall constitute an essential condition for the valid and effective dismissal of the previous Chairman. The provisions of Article 6(2)(b), (c), (d), and (e) shall apply to the newly appointed Chairman of the Foundation Board.

(4)  Upon the death of a Secondary Beneficiary, as confirmed by an official document (death certificate), the Tertiary Beneficiaries, in accordance with the By-Laws, shall assume the rights of the deceased Secondary Beneficiary. If, on the date of the Secondary Beneficiary's death, any Tertiary Beneficiary is also deceased, the Quaternary Beneficiaries assuming the rights of the deceased Tertiary Beneficiary shall have the right to appoint one—and only one—member of the Foundation Board, whose seat had been at the exclusive disposal of the Secondary Beneficiary as their common representative. The appointment and dismissal of a member of the Foundation Board by the entitled Tertiary and, if applicable, Quaternary Beneficiaries shall be effected by absolute majority. The foregoing rules shall apply mutatis mutandis to the appointment and dismissal of one—and only one—member of the Foundation Board by the Beneficiaries of subsequent degrees.

Only persons of legal age may be appointed as members of the Foundation Board.

In every case of dismissal of a member of the Foundation Board under this paragraph (4), a necessary condition for the validity and effectiveness of the dismissal shall be the simultaneous appointment of another member of the Foundation Board in place of the dismissed member, subject to the restrictions provided in these Statutes.

(5)  In the event of the childless death of a Secondary Beneficiary named in the By-Laws, the seat on the Foundation Board allocated to that deceased Secondary Beneficiary shall, as of the date of such death, be filled by unanimous appointment or dismissal in accordance with paragraph (3)(a) above, by the "entitled

143

Beneficiaries." If unanimity cannot be achieved among those Beneficiaries, the relevant member of the Foundation Board shall be appointed or dismissed by the Chairman of the Foundation Board, whose decision shall be binding on the entitled Beneficiaries, who, however, have the right to file a unanimous objection against the decision immediately after it is made by the Chairman of the Foundation Board. In the event of an objection, Article 7(2)(d) shall apply mutatis mutandis.

(6) The appointment and dismissal of every member of the Foundation Board, including the Chairman of the Foundation Board and the successor to the Chairman of the Foundation Board, shall be made in written form (excluding electronic mail), with the requirement that the notice of appointment or dismissal be delivered to the Foundation's address and handed to the Chairman of the Foundation Board and the remaining members of the Foundation Board.

(7) Every change in the composition of the Foundation Board must be reported immediately, but no later than within 30 days, to the Office of Justice/Commercial Register (Article 552 Section 19 of the Persons and Companies Act). The Chairman of the Foundation Board shall be responsible for filing this notification.

<u>Article 7</u>

<u>RESOLUTIONS OF THE FOUNDATION BOARD</u>

(1) (a) The Foundation Board adopts all of its decisions in the form of resolutions.

b)    Resolutions may be passed at meetings of the Foundation Board or by circular procedure; resolutions passed by circular procedure require that the proposed measure be sent to all board members and that all members, including the Chairman, participate.

c)    Members of the Foundation Board may also participate in meetings of the Foundation Board by means of electronic communication.

(d) i. Meetings of the Foundation Board shall be held in Vaduz.

  ii.    Minutes of meetings of the Foundation Board shall be prepared in written or electronic form (audio-visual recording).

  iii.    The Chairman of the Foundation Board shall preside over the meeting of the Foundation Board.

(e) i. The Foundation Board shall convene upon invitation of the Chairman of the Foundation Board or of a member of the Foundation Board authorized by the Chairman of the Foundation Board. The Chairman of the Foundation Board shall convene the meeting either on his own initiative or upon request of a member of the Foundation Board. In every case, the meeting shall be convened with a notice period of 7 days prior to the meeting date.

  ii.    If the Chairman of the Foundation Board does not convene the meeting within the 7-day period from the date of receipt of the request to convene the meeting, the meeting of the Foundation Board shall then be convened by the applicant with a notice period of 7 days prior to the meeting date.

iii.   Invitations to meetings of the Foundation Board must be sent to each member of the Foundation Board to the email address provided and updated by each such member, and in addition—subject to the provision under item iv. below—by registered mail or courier service.

iv.   Confirmation of receipt of the invitation by a member of the Foundation Board by electronic mail releases the obligation to send the invitation by registered mail or courier service.

(2)  (a) Resolutions passed by circular procedure require unanimity and the signature of all members of the Foundation Board, including the Chairman.

b)   A resolution adopted at a meeting of the Foundation Board is deemed passed when all board members appointed by the entitled Beneficiaries have voted on it; if unanimity is not reached, the Chairman shall decide the matter himself, preferably during the same meeting, and, in justified exceptional cases, immediately after the meeting but no later than the next working day. The Chairman decides by choosing, at his discretion, among the motions submitted by the members. If the Chairman decides after the meeting, he must simultaneously and without delay inform all three members in writing of the decision, no later than the next working day.

The above procedure for adopting resolutions at a meeting also applies when the persons appointed by the Founder—whose removal has not occurred pursuant to Article 6(3)(a)—serve as members of the Foundation Board.

c)   The resolution adopted by the Chairman of the Foundation Board is binding on the members of the Foundation Board unless all three members of the Foundation Board appointed by the entitled Beneficiaries:

(i)   if the resolution of the Chairman of the Foundation Board was adopted during the same meeting, lodge an objection to the respective resolution during that same meeting;

(ii)   or if the resolution of the Chairman of the Foundation Board was adopted immediately after the meeting, lodge an objection to the respective resolution not later than within a period of 3 days after receipt by the members of the Foundation Board of the notification of the resolution of the Chairman of the Foundation Board.

d)   In the event of any of the above-mentioned objections, the matter under consideration shall be put to a vote again. If unanimity among all members of the Foundation Board appointed by the entitled Beneficiaries is again not achieved, the procedure provided under point (b) above shall be repeated, with the resolution of the Chairman of the Foundation Board referred to under point (c) above then being final and binding.

145

e)   The provisions of Article 7(2)(b)–(d) shall not apply to the appointments and dismissals of members of the Foundation Board carried out in accordance with the rules set out in Article 7(7).

(3)  The Foundation Board shall have all rights pursuant to the law, these Statutes, and the By-Laws.

(4)  The Foundation Board shall assume the administration of the Foundation, manage the assets and the income derived therefrom, make allocations (payments) to the Beneficiaries, and conduct the current business. The principles of due diligence shall apply to the formation and management of the assets of the Foundation.

(5)  The term of office of the Foundation Board is unlimited.

(6)  (a) Membership in the Foundation Board terminates upon death, resignation, dismissal, and, in the case of the Chairman of the Foundation Board, also upon complete incapacity to act.

(b)  A member of the Foundation Board shall submit his wish to resign from office in writing and hand it to the Chairman of the Foundation Board, simultaneously notifying the other members of the Foundation Board and the current Beneficiaries thereof.

c)   The Chairman of the Foundation Board shall submit his wish to resign from office in writing and hand it to a member of the Foundation Board, simultaneously notifying the other members of the Foundation Board and the current Beneficiaries thereof.

d)   The Beneficiaries who dismiss a member of the Foundation Board are obliged to notify the Chairman of the Foundation Board, the members of the Foundation Board, and the current Beneficiaries of the dismissal and of the new appointment immediately and in writing, enclosing proof of the dismissal.

e)   The members of the Foundation Board or the Beneficiaries are obliged to notify the Chairman of the Foundation Board in writing of the death of a member of the Foundation Board immediately after receiving information of the death.

f)   The Chairman of the Foundation Board is obliged to verify the information received without delay and, after verification, to inform the remaining members of the Foundation Board and the Beneficiaries of the death of the member of the Foundation Board without delay.

g)   The successor of the Chairman of the Foundation Board shall notify the other members of the Foundation Board and the current Beneficiaries of the death of the Chairman of the Foundation Board as well as of his complete and permanent incapacity to act.

(7)  (a) Upon receiving information of the death or resignation of a member of the Foundation Board, the Chairman of the Foundation Board shall immediately call upon the entitled Beneficiaries to appoint a new member of the Foundation Board, but not later than within a period of 7 days from the date of delivery of the request for appointment of the member of the Foundation Board. If the above period expires without effect, the Chairman of the Foundation Board must repeat his request, with a period of 3 days before execution.

146

b)   In the event that the entitled Beneficiaries fail to appoint a member of the Foundation Board within the above-mentioned deadlines, the member of the Foundation Board shall be selected and appointed in writing and unanimously by two serving members of the Foundation Board, excluding the Chairman of the Foundation Board, from among three candidates proposed by the Chairman of the Foundation Board, who must have documented appropriate qualifications and an impeccable reputation. If said members of the Foundation Board do not make this selection within 3 days of presentation of the candidates, the member of the Foundation Board shall be appointed in writing by the Chairman of the Foundation Board.

c)   The member of the Foundation Board appointed pursuant to the preceding paragraph (b) may be dismissed by absolute majority of the entitled Beneficiaries who are authorized to fill the vacancy on the Board resulting from the death, resignation, or dismissal of a member of the Foundation Board.

d)   The respective aforementioned requests shall be sent by the Chairman of the Foundation Board by registered mail, courier service, or by electronic mail to the email address provided by the respective Beneficiaries.

e)   For all of the above procedures, each Beneficiary is obliged to inform the Chairman of the Foundation Board of their current email address and to update it without delay in the event of any change.

Article 8

REPRESENTATION OF THE FOUNDATION

(1)   The Foundation shall be represented by the Chairman of the Foundation Board, acting jointly with one board member.

(2)   At the shareholders' meetings of the SPECIAL PURPOSE VEHICLES designated in the By-Laws, the Foundation shall be represented as shareholder by an agent appointed by resolution of the Foundation Board. The respective agent is authorized to cast votes in accordance with the instructions received in the form of a resolution of the Foundation Board. The participation of the Foundation in the meetings of the SPECIAL PURPOSE VEHICLES and the exercise of voting rights are mandatory. The Foundation Board is obliged to ensure that the representatives of companies directly or indirectly controlled by the Foundation, which are shareholders of the SPECIAL PURPOSE VEHICLES, vote at all meetings of the SPECIAL PURPOSE VEHICLES in accordance with the above-mentioned instructions.

Article 9

CURATOR

(1)   The Curator is an advisor to the Foundation Board. He is entitled to inspect all Foundation documents and to make copies thereof, to attend meetings of the Foundation Board, and to discuss the Foundation's affairs. The Curator also supervises the realization of the Foundation's purpose by the Foundation Board in accordance with the foundation documents (Statutes, By-Laws) and any letter of wishes issued by the Founder.

(2)  Further powers and responsibilities of the Curator are determined by the Founder in the By-Laws, in the section concerning the Curator's function and rights and duties. The By-Laws may explicitly provide that certain resolutions of the Foundation Board require the Curator's consent in order to be valid, and may thereby limit the Board's discretionary powers.

Article 10

AUDITOR

The Foundation Board may appoint an auditor to examine the accounts and determine its powers. In this case, the appointed auditor does not assume the function of a supervisory body. The auditor exists independently of any supervisory body and does not limit the information and disclosure rights of the Beneficiaries pursuant to Article 552 Sections 9 et seq. of the Persons and Companies Act.

Article 11

ANNUAL FINANCIAL STATEMENTS

The financial year begins on January 1 and ends on December 31 of the following year.

Article 12

ATTORNEYS AND ADVISORS

The Foundation Board may engage attorneys and other advisors for justified consultations in connection with the management and all other affairs of the Foundation.

Article 13

AMENDMENTS TO THE STATUTES AND REVOCABILITY OF THE FOUNDATION

AMENDMENTS TO THE STATUTES AND REVOCABILITY OF THE FOUNDATION

(1)  The Foundation is irrevocable.

(2)  1. The Founder shall have the right during his lifetime to amend the foundation deed, the Statutes, the By-Laws, and any letter of wishes issued by the Founder. All amendments to the Statutes or By-Laws must be communicated in advance to the Secondary Beneficiaries. Amendments made without prior notification to the Secondary Beneficiaries are invalid.

(2)  2.

(i)  The Founder has the right, during his lifetime, to issue by notarial deed a declaration providing that, from a date specified by him, he declines the application of the provisions of the Statutes and By-Laws as

148

applied during his lifetime and orders instead the application of those provisions that take effect upon his death ("Declaration").

(ii)  Notwithstanding such Declaration, the Founder retains the rights set forth in Article 13(2) point 3 of the Statutes of the Foundation, and Article 13(2) point 3 of the Statutes of the Foundation shall apply in full. These rights provided in Article 13(2) point 3 of the Statutes of the Foundation remain vested in the Founder without limitation in time, including after the date specified in the Declaration by the Founder, and are furthermore unconditional and irrevocable.

(iii)  The Founder has the right to revoke or amend this Declaration at any time, even after the date stated therein, without the need for justification. The Founder's authority to revoke or amend the Declaration is unconditional and irrevocable.

(iv)  The right of revocation or amendment pursuant to Article 13(2) point 2 (iii) of the Statutes is governed by Article 13(2) points 4 and 5 of the Statutes.

(2) 3. After the date specified in the Declaration, the following provisions apply, which cannot be amended by the Foundation Board under Article 13(3) of the Statutes:

(i)  For decisions concerning personnel matters (appointment, dismissal, suspension, remuneration) regarding the composition of the Foundation Board or the management and supervisory boards of companies whose shares or interests are held directly by the Foundation ("Companies"), a prior joint consultation with the Founder is mandatory.

(ii)  For decisions concerning any disposal or encumbrance, under any legal title, of the enterprise, an organized part of the enterprise, or assets representing a material portion of the business of the Foundation itself or of the Companies, prior written consent of the Founder is mandatory.

(iii)  The Founder retains the position of Chairman of the supervisory boards of the Companies belonging to the Founder's Group as of the date of amendment of the Statutes of August 10, 2023, but with the concurrent right, at the Founder's sole discretion, to resign from any such function.

(iv)  The provisions of A I and A II point 9 of the current By-Laws are irrevocable and may not be altered, repealed, or excluded in any way.

(v)  In the event of revocation of a Declaration under Article 13(2) point 2(iii) in conjunction with points 4 and 5 of the Foundation's Statutes, the Founder has the unconditional, irrevocable, and temporally unlimited right to: (i) amend the foundation deed, (ii) amend the Foundation's Statutes, and/or (iii) amend the By-Laws at his sole discretion.

(2) 4. In the event of revocation of a Declaration under Article 13(2) point 2(iii) of the Foundation's Statutes, the Founder has the right, at any time determined by him, to make a further Declaration or

further Declarations pursuant to Article 13(2) point 2 of the Foundation's Statutes; each further Declaration is subject to the right of revocation or amendment under the conditions of Article 13(2) point 2(iii) in conjunction with point 5 of the Foundation's Statutes.

(2) 5. The right to revoke or amend the Declaration pursuant to Article 13(2) point 2(iii) of the Foundation's Statutes may be effectively exercised by the Founder:

(i)   with respect to Declarations made after the amendment of the Foundation's Statutes of August 10, 2023; and

(ii)   with respect to Declarations already made prior to the amendment of the Foundation's Statutes of August 10, 2023, likewise with full and unconditional legal effect, irrespective of whether the right to revoke or amend the Declaration pursuant to Article 13(2) point 2(iii) of the Foundation's Statutes was exercised by the Founder before or after the date named by the Founder in the Declaration.

(3)   a. From the date of death of the Founder, as evidenced by an official document (death certificate), the Deed of Foundation, the Statutes, and the By-Laws may be amended by a unanimous resolution of the Foundation Board adopted by all members, including the Chairman of the Board, with the exception of Articles 6 and 7 of the Statutes of the Foundation and the provisions of A II of the By-Laws, to which paragraph (b) below of this Section (3) shall apply.

   b. Amendments to Articles 6 and 7 of the Statutes of the Foundation and the provisions of A II of the By-Laws may be made by unanimous resolution of all members of the Foundation Board, including the Chairman of the Board, only after prior written unanimous consent of all Beneficiaries.

(4)   After each amendment of the Statutes or the By-Laws, each member of the Foundation (including the Chairman of the Board) is obliged, within 7 days of delivery of the notice of amendment, to provide a written declaration confirming receipt of the notice and acknowledgment of the content of the amendments.

The Chairman of the Board shall immediately notify the Beneficiaries of each amendment of the Statutes or the By-Laws, but no later than within 7 days after the amendment is made. The provisions of Article 7(7)(d) and (e) shall apply accordingly.

(5)   The rights of the Founder set forth in this Article 13 include the right, during his lifetime or as long as he has not waived his rights and entitlements, to instruct the Foundation Board to pay to him all income of the Foundation upon the Founder's request.

Article 14

REPRESENTATIVE

The Representative shall have the powers conferred upon him by law. Upon the establishment of the Foundation, he shall be appointed by the person signing these Statutes. Thereafter, the Foundation Board shall decide on his appointment and dismissal.

Article 15

JURISDICTION

All disputes between the Foundation and its members (in particular between the Beneficiaries, the members of the Foundation Board, the Curator, the supervisory body, and the auditors), as well as between the members of the Foundation arising from their mutual relationships, shall be finally decided by the competent ordinary courts of the Principality of Liechtenstein.

August 19, 2024

[signature]

Zygmunt Józef Solorz

**EXECUTED IN ACCORDANCE WITH**

**Section 54 of the Notarial Code**

[signature]

Public Notary

151

I, the undersigned Notary, have read aloud this notarial deed together with the private instrument annexed hereto to the appearing party in its entirety. The party acknowledged the recording to be accurate and in accordance with his will and signed the deed in my presence. Vienna, August 19, 2024 (August nineteenth, two thousand twenty-four)

[hw:] Zygmunt Solorz



[signature]

[seal: Mag. Alexander Winkler, Public Notary, Vienna-Währing, Vienna, Republic of Austria]

Public Notary

152



MAG. ALEXANDER WINKLER
ÖFFENTLICHER NOTAR
1180 Wien • Weimarer Straße 5
Telefon (01) 479 54 04
Fax (01) 479 69 74
E-mail: kanzlei@notar-winkler.at

Geschäftszahl: 1559

**Beilage** ./ X



# Notariatsakt

Vor mir, Magister Alexander Winkler, öffentlicher Notar mit dem Amtssitz in Wien-Währing, Wien, und der Amtskanzlei in 1180 Wien, Weimarer Straße 5, ist heute im Hause 1010 Wien, Schwarzenbergplatz 3, wohin ich mich über ausdrückliches Ersuchen der Partei begeben habe, erschienen die Partei, und zwar: ------------------------------------------------------------------

1.) Herr **Zygmunt Jozef Solorz**, geboren am 04.08.1956 (vierten August neunzehnhundertsechsundfünfzig), Fürstentum Liechtenstein, 9495 Triesen, Meierhofstraße 8, ausgewiesen durch dessen Reisepass der Republik Polen EK 7971729, ausgestellt am 22.12.2016 (zweiundzwanzigsten Dezember zweitausendsechzehn) von Wojewoda Mazowiecki -------------------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------------------

Seite Eins

153

Der Genannte übergibt mir Notar die diesem Akte beigeheftete, aus vier je ungestempelten Bögen bestehende Privaturkunde, nämlich die Erklärung und Beschluss vom heutigen Tage zum -- ------------------------------------------------------------------------------------------------------
--------------------------------**Z w e c k e   d e r   n o t a r i e l l e n**----------------------------
----------------------------------------**B e k r ä f t i g u n g .**-----------------------------------------
-------------------------------------------------------------------------------------------------------------

Ich habe sohin die vorliegende Privaturkunde im Sinne des § 54 (Paragraphen vierundfünf-zig) der geltenden Notariatsordnung geprüft und unterzeichnet. ----------------------------------
-------------------------------------------------------------------------------------------------------------

Die Partei anerkennt vor mir, Notar, die beigeschlossene Privaturkunde ebenfalls eigenhändig unterzeichnet zu haben. ----------------------------------------------------------------------------------
-------------------------------------------------------------------------------------------------------------

Über Befragen durch mich, Notar, erklärt die Partei, über die rechtlichen und steuerlichen Folgen dieses Rechtsgeschäfts durch ihre rechtliche und steuerliche Vertretung umfassend informiert worden zu sein, sich der Folgen des Rechtsgeschäftes bewusst zu sein und keine weiteren Informationen durch mich, Notar, zu wünschen. -------------------------------------------
-------------------------------------------------------------------------------------------------------------

Die Vertragspartei wurde auf die Verpflichtung der Gesellschaft zur Bekanntgabe des wirt-schaftlichen Eigentümers gemäß § 5 WiEReG (Paragraph fünf Wirtschaftliche Eigentümer-Registergesetz) hingewiesen. Die Vertragspartei erklärt, dass keine der an diesem Geschäft beteiligten natürlichen Personen oder die wirtschaftlichen Eigentümer der an diesem Ge-schäft beteiligten juristischen Personen ein wichtiges öffentliches Amt ausüben oder ausge-übt haben und nicht in einem familiären oder sonstigen Naheverhältnis zu einer Person zu stehen, welche ein wichtiges öffentliches Amt ausübt oder ausgeübt hat. Ebenso erklärt die Vertragspartei, dass sie nicht im fremden Namen oder auf fremde Rechnung an diesem Ge-schäft teilnimmt und dass die Mittel für dieses Geschäft nicht aus einer mit mehr als einjähri-ger Freiheitsstrafe bedrohten Handlung stammen. -----------------------------------------------------
-------------------------------------------------------------------------------------------------------------

Gleichzeitig bewilligt sie, dass von diesem Notariatsakte ihr und ihren Rechtsnachfolgern so-wie der TiVi Foundation auf einseitiges Verlangen auch wiederholt Ausfertigungen jeweils auf Kosten des Ersuchenden erteilt werden können. ----------------------------------------------------------
-------------------------------------------------------------------------------------------------------------

154

## ERKLÄRUNG UND BESCHLUSS

Ich, Zygmunt Józef Solorz (in der Folge: der "*Stifter*"), bin einziger Stifter und Erstbegünstigter der Stiftung TiVi Foundation mit Sitz in Vaduz, Fürstentum Liechtenstein, hinterlegt im Handelsregister des Amtes für Justiz des Fürstentums Liechtenstein unter der Nummer FL - 0002.394.367-5 (in der Folge: die " *Stiftung*") und fasse hiermit auf Grundlage des Art. 552 § 30 PGR iVm Art 13 Abs. 2 Punkt 1. der Statuten der Stiftung den folgenden Beschluss:

Die Statuten der Stiftung vom 29. November 2023 werden bestätigt und Art. 5 dahingehend ergänzt, dass ein neuer Absatz 5 eingefügt wird, der lautet wie folgt:

> *"(5) Jeder (mit Ausnahme des Stifters), der*
>
>> *(i) die Stiftung als solche, ihre Errichtung oder ihren Bestand, ihre Statuten, Beistatuten, Reglemente, finanziellen Verhältnisse, Entscheidungen (ob von treuhänderischer oder betriebswirtschaftlicher Natur), oder Vermögenszuwendungen, an wen auch immer diese erfolgt sind, ganz oder teilweise bei einer in- oder ausländischen Behörde oder einem Gericht anficht oder die Stiftung finanziell oder in ihrer Reputation schädigt, oder*
>>
>> *(ii) Rechtshandlungen des Stifters, ganz oder teilweise bei einer in- oder ausländischen Behörde oder einem Gericht anficht oder den Stifter finanziell oder in seiner Reputation schädigt,*
>
> *verliert seine Begünstigungsrechte. In diesem Fall sollen sämtliche Vorteile (oder andere Rechte), auf die der Begünstigte einen Anspruch gehabt hätte, pro-rata zwischen den übrigen Begünstigten der Stiftung im Einklang mit deren jeweiligen Rechten an der Stiftung, aufgeteilt werden.*
>
> *Der Kurator kann nach freiem Ermessen solche ausgeschlossenen Personen gänzlich oder teilweise, mit ex tunc- oder ex nunc-Wirkung, wiedereinsetzen, wenn diese Person das Anfechtungsbegehren definitiv zurückzieht oder die Schädigung beendet."*

Die mit heutigem Datum neu gefassten Statuten der Stiftung lauten nunmehr wie in Beilage ./1 ersichtlich, welche einen integrierenden Bestandteil dieser Erklärung bilden und welche Beilage zur Bekräftigung von mir ebenfalls gesondert unterfertigt wird.

Klarstellend halte ich fest, dass die in Beilage ./1 ersichtliche Fassung der Statuten mit Ausnahme der Ergänzung der vorzitierten Verwirkungsklausel jener Fassung entspricht, die ich zuletzt mit Erklärung vom 29. November 2023, beglaubigt zu Urkundenrolle Nummer 8211/2023 vor dem Notar Dariusz Wierzchucki, abgeändert und in Kraft gesetzt habe.

Weiter halte ich als Stifter fest, dass die Einführung der Verwirkungsklausel deshalb erfolgt, um die Stiftung und ihr Vermögen langfristig vor ungerechtfertigten Angriffen und Schäden zu schützen.

Alle in dieser Urkunde verwendeten Begriffe sind in Übereinstimmung mit den Definitionen in den Statuten der Stiftung auszulegen.

Gemäss Art 13 Abs 2 Punkt 1. zweiter und dritter Satz der Statuten der Stiftung wurden die Zweitbegünstigten durch vorherige Mitteilung über die oben angeführte Änderung und die damit einhergehende Klarstellung der aktuell geltenden Statutenbestimmungen informiert.

Die Kosten dieser Urkunde gehen zu Lasten des Stifters.

*[Unterschrift: Solorz]*

GEFERTIGT GEM
§54 NO

*[Unterschrift]*

öffentlicher Notar

*/1*

# STATUTEN

## der

## TiVi Foundation, Vaduz

### Art. 1

#### NAME, SITZ ANWENDBARES RECHT UND GERICHTSSTAND

Unter dem Namen

## TiVi Foundation

besteht eine Familienstiftung mit Sitz und Gerichtsstand in Vaduz.

Alle Rechtsverhältnisse, die durch die Errichtung, die Verwaltung und den Bestand der Stiftung begründet werden, unterliegen liechtensteinischem Recht.

Die Stiftung hat ihren ordentlichen Gerichtsstand in Vaduz.

### Art. 2

#### DAUER

Die Dauer der Stiftung ist zeitlich nicht begrenzt.

### Art. 3

#### STIFTUNGSVERMÖGEN

(1) Das Stiftungskapital beträgt CHF 30'000.- und wird der Stiftung zur freien Verfügung gestellt.

(2) (a) Das Vermögen der Stiftung besteht aus den Anteilen und Aktien an den "ZWECKGESELLSCHAFTEN., die im Beistatut definiert sind.

   (b) Das Vermögen der Stiftung kann auch aus Anteilen oder Aktien an anderen Gesellschaften bestehen.

(c) Das Vermögen der Stiftung kann darüber hinaus auch aus Geldmitteln, sonstigem beweglichem und unbeweglichem Vermögen sowie sonstigen Rechten bestehen, welche für die Tätigkeit der Stiftung und die Erfüllung ihres in Art. 4 der Statuten festgestellten Zweckes erforderlich sind.

(3) Eine Veräusserung durch die Stiftung ihrer Geschäftsanteile oder Aktien an den im Beistatut näher bezeichneten ZWECKGESELLSCHAFTEN ist unzulässig. Der Stiftungsrat ist verpflichtet, dafür zu sorgen, dass die Gründungsurkunde (Gesellschaftsvertrag, Statuten) aller ZWECKGESSELSCHAFTEN Bestimmungen

156

enthalten, die der Stiftung als Gesellschafterin/Aktionärin der ZWECKGESELLSCHAFT unveräusserliche persönliche Rechte zur Bestellung des Vorsitzenden des Verwaltungsrats und des Vorsitzenden des Aufsichtsrats einer jeden ZWECKGESELLSCHAFT zuerkennen.

(4) Als übergeordnetes Interesse der Stiftung, welches der Stiftungsrat zu schützen hat, gilt die Vermeidung des Kontrollverlustes über die ZWECKGESELLSCHAFTEN. Unter "Kontrollverlust" in vorstehendem Sinne, ist eine Abnahme der Anzahl der Stimmen der Stiftung bei jeder der im Beistatut genannten ZWECKGESELLSCHAFTEN zu verstehen, und zwar insgesamt, d.h. unmittelbar und mittelbar (d.h. unter Vermittlung der Gesellschaften/der von der Stiftung abhängigen Unternehmen) unter 51% im Verhältnis zur Gesamtanzahl der Stimmen.

(5) 1. Die Stiftung ist verpflichtet, den Verschuldungsgrad innerhalb kürzester Frist auf ein Niveau nicht höher als 4.0 zu bringen, falls das Niveau 4.0 zum Todeszeitpunkt des Stifters überschritten wird; ausserdem ist sie verpflichtet, den Verschuldungsgrad auf einem Niveau aufrechtzuerhalten, das zu keinem Zeitpunkt 4.0 überschreitet.

2. Bezugnehmend auf vorstehenden Punkt 5.1 – sollen folgende Definitionen gelten:

**Verschuldungsgrad** – ist der Quotient aus der finanziellen Nettoverschuldung und dem EBITDA für den jeweiligen Prüfungszeitraum;

**EBITDA** – darunter versteht man den EBIT des Konzerns zuzüglich des Wertes der Abschreibung auf immaterielle Vermögenswerte (mit Ausnahme der Abschreibung der software-Aktiva) und auf Sachanlagen des Konzerns, des Wertes der für die Wertverluste der Sachanlagen und der immateriellen Vermögenswerte ausweisenden Abschreibungen (ohne Berücksichtigung der Auflösung der für die Wertverluste ausweisenden Abschreibungen, die im jeweiligen Zeitraum vorgenommen wurden) und des Wertes der Liquidation der Anlagevermögen und der immateriellen Vermögenswerte des Konzerns;

**EBIT** – operativer Gewinn vor Abzug von Steuern und Zinsen:

**Konzern** – ist die ZWECKGESELLSCHAFT, die unter Punkt C I. a. des Beistatuts genannt ist, und die ihr unmittelbar oder mittelbar angehörenden abhängigen Gesellschaften, deren Finanzergebnisse die in Punkt C I. a. des Beistatuts genannte ZWECKGESELLSCHAFT in vollem Umfang konsolidiert;

**Prüfungszeitraum** – jeder 12-monatige Zeitraum, der am 31. März, 30. Juni, 30. September und 31. Dezember eines jeden Jahres endet;

**Finanzielle Verschuldung** – Verschuldung des Konzerns (die gemäss IFRS in den Jahresabschlüssen dargestellt wird), und zwar in Bezug auf:

a. Darlehens- oder Kreditverträge (oder andere Kreditinstrumente), die mit der Bank oder einem anderen Finanzinstitut abgeschlossen wurden;

b. einen negativen Saldo auf dem Kontokorrent, schulden bei einer Bank oder einem anderen Finanzinstitut;

157

c. Schuldverschreibungen, Wechsel (die nicht als Sicherheit für die kaufmännischen Verbindlichkeiten ausgestellt bzw. im Verlaufe der normalen Tätigkeit eingegangen wurden) oder andere schuldrechtliche Wertpapiere;

d. Leasingverbindlichkeiten;

e. veräusserte oder diskontierte Forderungen (mit Ausnahme der ohne Regressrecht veräusserten Forderungen, die die Voraussetzungen eines Ausschlusses aus den Geschäftsbüchern des Verkäufers gemäss IFRS erfüllen);

f. eine fällige Zahlungspflicht zur Bezahlung aller Beträge, die sich aus einer Regressforderung oder aus der Freistellung von der Haftung in Bezug auf eine jegliche Garantie, Bürgschaft, aus der Haftungsübernahme, einem Handelskreditbrief oder irgendeinem anderen ähnlichen, durch die Bank oder ein Finanzinstitut ausgestellten Instrument in Bezug auf die Verbindlichkeiten irgendeines Subjekts, die die Voraussetzungen für ihre Anerkennung als finanzielle Verschuldungen auf der Grundlage der anderen Bestimmungen unter lit. a-e oben oder lit. g-j nachstehend erfüllen, ergeben;

g. Beträge, die sich aus der Emission der einziehbaren Aktien oder Geschäftsanteile ergeben (mit Ausnahme der Aktien oder Geschäftsanteile, zu deren Einziehung die Gesellschaft berechtigt ist), die vor dem Tag des Rückkaufs oder aus anderen Gründen gemäss IFRS als geliehene Mittel anzusehen sind;

h. Beträge der Verbindlichkeiten aus zum Kauf verpflichtenden Verträgen oder aus Kaufverträgen mit gestundeter Zahlung des Preises, unter der Bedingung, dass:

   1) eines der grundlegenden Ziele des Abschlusses eine solchen Vertrages die Erlangung der Finanzierung oder die Finanzierung des Erwerbs oder der Erzeugung der Aktiva oder der Dienstleistung, die den Vertragsgegenstand bilden, ist, oder

   2) der Vertrag die Lieferung oder Erbringung von Dienstleistungen zum Gegenstand hat, und die Zahlung nicht später als 180 Tage nach der Lieferung oder Erbringung der Dienstleistung fällig ist und in den Geschäftsbüchern (Jahresabschlüssen) des die Aktiva oder die Dienstleistungen erwerbenden Unternehmens als finanzielle Verschuldung (borrowings) erfasst wird, wobei

      h.2)1 jedwede noch nicht bezahlte Beträge oder durch das die Aktiva oder Dienstleistungen erwerbende Subjekt zur Sicherung der Forderungen gegenüber dem die Aktiva oder Dienstleistungen liefernden Subjekt (im Bereich Gewährleistung, Schäden und Verluste), zurückbehaltene Beträge, und

      h.2)2 jedwede Verbindlichkeiten aus der UMTS-Konzession (Universal Mobile Telecommunications System), nicht als finanzielle Verschuldungen gelten;

158

i. irgendeine andere Tätigkeit (darunter jeglicher befristeter Kaufvertrag oder Verkaufsvertrag), deren wirtschaftliche Folge ein Kredit/Darlehen ist, oder die aus anderen Gründen als Ausnahme einer finanziellen Schuld (borrowings) gemäss IFRS anzusehen ist;

j. eine fällige, sich aus einer Garantie oder Bürgschaft ergebende Verbindlichkeit, die sich auf irgendeine der oben beschriebenen Verbindlichkeiten bezieht, allerdings jeweils mit Ausnahme von:

> j.1) einer Verschuldung, deren Gläubiger ein Konzernmitglied ist (interne Verschuldung innerhalb des Konzerns);

> j.2) einer Verschuldung aus derivativen Transaktionen;

> j.3) Posten mit Einfluss auf die Bilanzbewertungen der finanziellen Verschuldung;

**Finanzielle Nettoverschuldung** – Beträge der konsolidierten finanziellen Verschuldung des Konzerns, abzüglich des Wertes der freien Geldmittel und der ihnen gleichgestellten kurzfristigen Finanzinstrumente des Konzerns (im Sinne der IFRS).

3. Der unter vorstehendem Pkt. (5).1 genannte Verschuldungsgrad wird alljährlich überprüft. Grundlage der Überprüfung ist der konsolidierte Jahresabschluss, der durch den Verwaltungs- und den Aufsichtsrat der unter Punkt C) I.1. a) des Beistatuts genannten Zweckgesellschaft erstellt wurde. Die erste Überprüfung des Verschuldungsgrades erfolgt anhand des konsolidierten Jahresabschlusses für das Geschäftsjahr 2021, der durch den Verwaltungs- und den Aufsichtsrat der unter Punkt C) I.1. a) des Beistatuts genannten Zweckgesellschaft erstellt wurde.

Art. 4

<u>ZWECK</u>

(1) Zweck der Stiftung ist die Unterstützung, Fürsorge und Förderung der im Beistatut bezeichneten Begünstigten; die Bestreitung von Kosten der Ausbildung und der Förderung besonderer Begabungen sowie allgemein die materielle Sicherung und Förderung der Begünstigten wie auch deren Unterstützung im Falle der Eheschließung, Ergreifung eines Berufes oder der Gründung eines Unternehmens.

(2) Vom Stiftungszweck sind ebenso Leistungen an natürliche oder juristische Personen, Institutionen u.ä. erfasst, soweit die im Beistatut erwähnten Begünstigten durch solch eine Leistung bevorteilt werden.

(3) Im Beistatut können bestimmte Personen oder Personengruppen explizit als Begünstigte der Stiftung ausgeschlossen werden. Es ist unzulässig, als Begünstigte der Stiftung explizit ausgeschlossene Personen oder Personengruppen, direkt oder indirekt und auf welche Art auch immer aus der Stiftung zu bevorteilen.

(4) Die Stiftung ist befugt, alle Rechtsgeschäfte abzuschließen, die der Verfolgung und Verwirklichung ihres Zweckes dienen.

(5) Die Stiftung betreibt kein nach kaufmännischer Art geführtes Gewerbe.

159

Art.5

BEISTATUT UND REGLEMENTE; STIFTUNGSBEGÜNSTIGUNG, VOLLSTRECKUNGSRECHTLICHE BESTIMMUNGEN

(1) Der Stifter kann ein Beistatut sowie ein oder mehrere Reglement(e) erlassen

(2) Der Stifter errichtet unabhängig von diesen Statuten ein Beistatut, in dem u.a. konkrete oder nach objektiven Merkmalen individualisierbare Begünstigte der Stiftung festgelegt sind.

(3) Unter Beachtung der durch den Stiftungszweck gesetzten äußeren Beschränkungen gemäß Art. 4 dieser Statuten werden im Beistatut, im Teil über die Begünstigung, die Begünstigten, das Ausmaß der Begünstigung und weitere Ergänzungen über die Begünstigung bestimmt.

(4) Die Stiftungsbegünstigungen sowie die zugesprochenen, noch nicht ausgerichteten Zuwendungen sind streng persönlich, unveräußerlich, nicht vererblich und nicht belastbar. Die Gläubiger von Begünstigten dürfen die von Begünstigten unentgeltlich erlangte Begünstigungsberechtigung oder Anwartschaftsberechtigung bzw. einzelne Ansprüche daraus, auf dem Wege des Sicherungsverfahrens, der Zwangsvollstreckung oder des Konkurses nicht entziehen.

(5) Jeder (mit Ausnahme des Stifters), der

   (i) die Stiftung als solche, ihre Errichtung oder ihren Bestand, ihre Statuten, Beistatuten, Reglemente, finanziellen Verhältnisse, Entscheidungen (ob von treuhänderischer oder betriebswirtschaftlicher Natur), oder Vermögenszuwendungen, an wen auch immer diese erfolgt sind, ganz oder teilweise bei einer in- oder ausländischen Behörde oder einem Gericht anficht oder die Stiftung finanziell oder in ihrer Reputation schädigt, oder

   (ii) Rechtshandlungen des Stifters, ganz oder teilweise bei einer in- oder ausländischen Behörde oder einem Gericht anficht oder den Stifter finanziell oder in seiner Reputation schädigt,

verliert seine Begünstigungsrechte. In diesem Fall sollen sämtliche Vorteile (oder andere Rechte), auf die der Begünstigte einen Anspruch gehabt hätte, pro-rata zwischen den übrigen Begünstigten der Stiftung im Einklang mit deren jeweiligen Rechten an der Stiftung, aufgeteilt werden.

Der Kurator kann nach freiem Ermessen solche ausgeschlossenen Personen gänzlich oder teilweise, mit ex tunc- oder ex nunc-Wirkung, wiedereinsetzen, wenn diese Person das Anfechtungsbegehren definitiv zurückzieht oder die Schädigung beendet

Art.6

STIFTUNGSRAT

(1) Oberstes Organ der Stiftung ist der Stiftungsrat. Ein Mitglied des Stiftungsrates muss dabei immer eine natürliche Person sein, welche die Anforderungen des einschlägigen Art. 180a PGR erfüllt. Die

Stiftungsratsmitglieder üben ihre Funktion persönlich aus, ohne das Recht auf Bestellung eines Bevollmächtigten zur Ausübung dieser Funktionen in ihrem Namen.

(2) (a) Der Stiftungsrat besteht aus vier Mitgliedern, darunter ein Stiftungsratspräsident. Zu Lebzeiten des Stifters bestellt und entlässt dieser die Stiftungsratsmitglieder, darunter den Stiftungsratspräsidenten. Die Abberufung des Stiftungsratspräsidenten durch den Stifter bewirkt von sich aus das Erlöschen der Bestellung dessen Nachfolgers im Sinne des nachstehendem Art. 6 (2) b. Der Stifter bestellt zum Stiftungsratspräsidenten eine natürliche Person, welche die in Art. 180 a PGR genannten Anforderungen erfüllt. Zu den besonderen Pflichten des Stiftungsratspräsidenten gehört die Kontrolle der Übereinstimmung der durch den Stiftungsrat gefassten Beschlüsse mit dem Recht, den Statuten, dem Beistatut und mit dem die Wünsche des Stifters enthaltenden Schriftstück, sofern ein solches verfasst wurde.

(b) Der Stiftungsratspräsident hat ab dem Zeitpunkt seiner Bestellung die Pflicht, für den Fall seines Todes, der Amtsniederlegung oder einer vollständigen und dauerhaften Handlungsunfähigkeit seinen Nachfolger zu bestimmen. Die Bestimmung eines Nachfolgers erfüllt dann dieselbe Bedingung der Gültigkeit und Rechtswirksamkeit, wie sie für die Bestellung des Stiftungsratspräsidenten gilt. Vorbehaltlich nachstehendem Art. 6 (3) lit. a und b übernimmt der Nachfolger bei Eintritt eines beliebigen der oben genannten Ereignisse die Funktion des bisherigen Stiftungsratspräsidenten.

(c) Nachfolger des Stiftungsratspräsidenten kann nur eine natürliche Person werden, die die Anforderungen des geltenden Art. 180 a PGR erfüllt.

(d) Der Stiftungsratspräsident kann – vorbehaltlich der Bestimmungen in vorstehendem Pkt. C) – zu seinen Lebzeiten seine Nachfolge ändern.

(e) Die obigen Bestimmungen finden auch auf die weiteren Nachfolger des Stiftungsratspräsidenten Anwendung.

(3) (a) Ab dem Todestag des Stifters, der anhand eines amtlichen Dokuments (Sterbeurkunde) bestätigt wird, oder ab dem durch den Stifter in der in Art. 13 (2) 2 der Statuten genannten Erklärung festgelegten Datum erlangt jeder der im Beistatut genannten Zweitbegünstigten das Recht auf Besetzung eines – und nur eines – Platzes im Stiftungsrat (mit Ausnahme des Amts des Stiftungsratspräsidenten). Erstens kann ein Zweitbegünstigter ein – und nur ein – Sitzungsratsmitglied abberufen, welches durch den Stifter gemäss vorstehendem Art. 6 (2) a) bestellt wurde. Unerlässliche Bedingung für die Gültigkeit und Rechtswirksamkeit der durch den Zweitbegünstigten veranlassten Abberufung ist die Bestellung durch diesen Begünstigten eines anderen Stiftungsratsmitglieds anstelle des abberufenen Mitglieds, jedoch unter der Bedingung, dass es nicht zulässig ist, einen Zweitbegünstigten zu bestellen, der "eine Person aus den Vereinigten Staaten" oder irgendeine Person oder irgendein "verbundener oder untergeordneter" Rechtsträger ist (gemäß der Definition dieser Begriffe aus dem Internal Revenue Code der USA aus 1968 mit nachträglichen Änderungen sowie aus den auf dessen Grundlage erlassenen Steuervorschriften der USA), und zwar im Verhältnis zu dem Zweitbegünstigten, der eine Person aus den Vereinigten Staaten ist. Zweitens kann der Zweitbegünstigte im Rahmen des zu seiner ausschliesslichen Verfügung stehenden Platzes das durch ihn wie vorstehend bestellte Stiftungsratsmitglied abberufen, jedoch ist die unerlässliche Bedingung für die Gültigkeit und Rechtswirksamkeit der betreffenden, vom Zweitbegünstigten veranlassten

161

Abberufung die Bestellung durch diesen Begünstigten eines anderen Stiftungsratsmitglieds anstelle des abberufenen Mitglieds, jedoch unter der Bedingung, dass es nicht zulässig ist, einen Zweitbegünstigten zu bestellen, der "eine Person aus den Vereinigten Staaten" oder irgendeine Person oder irgendein "verbundener oder untergeordneter" Rechtsträger ist (gemäß der Definition dieser Begriffe aus dem Internal Revenue Code der USA aus 1968 mit nachträglichen Änderungen sowie aus den auf dessen Grundlage erlassenen Steuervorschriften der USA), und zwar im Verhältnis zu dem Zweitbegünstigten, der eine Person aus den Vereinigten Staaten ist. Dieses Verfahren kommt auch bei allen weiteren Bestellungen und Abberufungen zur Anwendung. Zum Stiftungsratsmitglied dürfen nur volljährige Personen bestellt werden.

(b) Nach dem Tod des Stifters oder ab dem durch den Stifter in einer Erklärung im Sinne von Art. 13 (2) 2 der Statuten genannten Tag haben drei Stiftungsmitglieder (mit Ausnahme des Stiftungsratspräsidenten) das Recht, den amtierenden Stiftungsratspräsidenten einstimmig abzuberufen. Die Abberufung des amtierenden Stiftungsratspräsidenten bedingt die Pflicht zur Bestellung eines neuen Stiftungsratspräsidenten und erlischt die Pflicht zur Bestellung-seines Nachfolgers gemäss vorstehendem Art. 6 (2) b). Zugleich mit der Abberufung sind drei Mitglieder des Stiftungsrates gemäss vorstehendem Art. 6 (3) a) verpflichtet, einen neuen Stiftungsratspräsidenten zu ernennen, der nur eine natürliche Person sein kann, die die Anforderungen des geltenden Art. 180a PGR erfüllt. Gleichzeitig stellt die Berufung des neuen Stiftungsratspräsidenten eine unerlässliche Voraussetzung für die gültige und wirksame Abberufung des bisherigen Stiftungsratspräsidenten dar. Bei dem neu bestellten Stiftungsratspräsidenten kommen die Bestimmungen von Art. 6 (2) b), c), d) und e) zur Anwendung.

(4) Nach dem Todestag des Zweitbegünstigten, der durch ein amtliches Dokument (Sterbeurkunde) bestätigt wird, treten die Drittbegünstigten gemäss dem Beistatut in die Rechte des verstorbenen Zweitbegünstigten ein, und, falls am Todestag des Zweitbegünstigten einer der Drittbegünstigten ebenfalls nicht mehr am Leben ist, erlangen die in die Rechte des verstorbenen Drittbegünstigten eintretenden Viertbegünstigten das Recht, ein – und nur ein – Stiftungsratsmitglied zu bestellen, dessen Platz sich in der ausschliesslichen Verfügung des Zweitbegünstigten als ihrem gemeinsamen Vertreter befand. Die Bestellung und Abberufung des Stiftungsratsmitglieds durch die berechtigten Dritt- und gegebenenfalls Viertbegünstigten erfolgt mit absoluter Mehrheit. Die obigen Regeln kommen entsprechend bei der Bestellung und Abberufung eines – und nur eines – Stiftungsratsmitglieds durch die Begünstigten der weiteren Grade zur Anwendung.

Zum Stiftungsratsmitglied dürfen nur volljährige Personen bestellt werden.

In jedem einzelnen Fall der Abberufung eines Stiftungsratsmitglieds auf der Grundlage dieses Abs. (4) gilt als unerlässliche Bedingung für die Gültigkeit und Rechtswirksamkeit der Abberufung die zeitgleiche Bestellung eines anderen Stiftungsratsmitglieds anstelle des abberufenen Stiftungsratsmitglied, vorbehaltlich der in den vorliegenden Statuten vorgesehenen Beschränkungen.

(5) Im Falle des kinderlosen Ablebens eines im Beistatut genannten Zweitbegünstigten wird der Platz im Stiftungsrat, der zur Verfügung des verstorbenen Zweitbegünstigten vorgesehen war, gemäss vorstehendem Abs. (3) a) auf dem Wege von einstimmigen Bestellungen oder Abberufungen besetzt, und zwar mit Stand zum Tag des kinderlosen Ablebens des Zweitbegünstigten ("berechtigte Begünstigte"). Falls keine Einstimmigkeit bei den vorstehend genannten Begünstigten erreicht wird, wird das betreffende

Stiftungsratsmitglied durch den Stiftungsratspräsidenten bestellt bzw. abberufen, dessen Beschluss für die berechtigten Begünstigten verbindlich ist, die das Recht haben, einstimmig Widerspruch gegen den Beschluss einzulegen, und zwar unverzüglich nach Beschlussfassung durch den Stiftungsratspräsidenten. Im Falle eines Widerspruchs findet Art. 7 (2) d) entsprechend Anwendung.

(6) Die Bestellung und Abberufung eines jeden Stiftungsratsmitglieds, darunter des Stiftungsratspräsidenten, und die Bestellung und Abberufung des Nachfolgers des Stiftungsratspräsidenten erfolgt in Schriftform (mit Ausnahme der elektronischen Post), mit der Pflicht der Zustellung des Berufungs- oder Abberufungsbegehrens an die Adresse der Stiftung und ihrer Aushändigung an den Stiftungsratspräsidenten und an die restlichen Stiftungsratsmitglieder.

(7) Jede Änderung im Stiftungsrat muss unverzüglich, spätestens aber innerhalb von 30 Tagen, beim Amt für Justiz/Handelsregister (Art. 552 § 19 PGR) angezeigt werden. Die Meldung nimmt der Stiftungsratspräsident vor.

<u>Art. 7</u>

<u>BESCHLÜSSE DES STIFTUNGSRATES</u>

(1) a) Der Stiftungsrat trifft sämtliche seiner Entscheidungen in Form von Beschlüssen.

b) Die Beschlüsse können an den Sitzungen des Stiftungsrates oder auf dem Zirkularweg gefasst werden, wobei die auf dem Zirkularweg gefassten Beschlüsse die Zustellung des von dem Beschluss erfassten Vorhabens an alle Mitglieder des Stiftungsrates und eine Beteiligung aller Stiftungsratsmitglieder, darunter der des Stiftungsratspräsidenten, erfordern.

c) Die Stiftungsratsmitglieder können auch unter Einsatz von elektronischen Kommunikationsmitteln an den Sitzungen des Stiftungsrates teilnehmen.

d.) i. Die Sitzungen des Stiftungsrates finden in Vaduz statt.

ii. Von der Sitzung des Stiftungsrates wird ein Protokoll in Schriftform oder in elektronischer Form erstellt (Ton-Bild-Aufzeichnung).

iii. Bei der Sitzung des Stiftungsrates hat der Stiftungsratspräsident den Vorsitz.

e) i. Der Stiftungsrat tritt auf Einladung des Stiftungsratspräsident oder eines durch den Stiftungsratspräsident ermächtigten Stiftungsratsmitglieds zur Sitzung zusammen. Der Stiftungsratspräsident beruft die Sitzung aus eigner Initiative oder auf Antrag eines Stiftungsratsmitglieds ein. In jedem Fall wird die Sitzung mit einer Frist von 7 Tagen vor dem Sitzungstermin einberufen.

ii. Beruft der Stiftungsratspräsident die Sitzung nicht innerhalb der 7-tägigen Frist ab dem Datum der Zustellung des Begehrens auf Einberufung der Sitzung ein, wird die Stiftungsratssitzung dann vom Antragsteller mit einer Frist von 7 Tagen vor dem Sitzungstermin einberufen.

iii. Die Einladungen zur Stiftungsratssitzung müssen an jedes Stiftungsratsmitglied, und zwar an die vom jeweiligen Stiftungsratsmitglied angegebene und aktualisierte E-Mail-Adresse, verschickt werden, und ausserdem, vorbehaltlich der Bestimmung unter nachstehendem Pkt. iv., per eingeschriebenem Brief oder Kurierpost.

iv. Die Bestätigung des Erhalts der Einladung durch das Stiftungsratsmitglied mittels elektronischer Post befreit von der Notwendigkeit, die Einladung per eingeschriebenem Brief oder Kurierpost zu verschicken.

(2) a) Die Beschlussfassung auf dem Zirkularweg erfordert Einstimmigkeit und erfordert durch Unterzeichnung des Beschlusses durch alle Stiftungsratsmitglieder, darunter auch durch den Stiftungsratspräsidenten.

b) Die Beschlussfassung an der Stiftungsratssitzung gilt als erfolgt, wenn für den Beschluss alle Stiftungsratsmitglieder abgestimmt haben, die durch die berechtigten Begünstigten bestellt wurden. wenn bei der Abstimmung nicht alle stimmen der besagten Stiftungsratsmitglieder "dafür" gestimmt haben, fasst der Stiftungsratspräsident den Beschluss in der abzustimmenden Sache selbst, und zwar möglichst noch in derselben Sitzung, und in begründeten Ausnahmefällen nach der Sitzung, jedoch nicht später als am nächsten Werktag nach Beendigung der Sitzung. Der Stiftungsratspräsident fasst den Beschluss, indem er sich in der Sitzung zwischen den durch die Stiftungsratsmitglieder vorgelegten Anträgen nach eigenem Ermessen entscheidet. Wenn der Stiftungsratspräsident den Beschluss nach der Sitzung fasst, ist er verpflichtet, gleichzeitig und unverzüglich alle drei Stiftungsratsmitglieder in Schriftform über den gefassten Beschluss in Kenntnis zu setzen, jedoch, nicht später als am Werktag nach der Beschlussfassung.

Das obige verfahren der Beschlussfassung durch den Stiftungsrat in der Sitzung kommt auch dann zur Anwendung, wenn die durch den Sitfter bestellten Personen, deren Abberufung nicht auf dem Wege von Art. 6 (3) lit. a erfolgte, Stiftungsratsmitglied bzw Stiftungsratsmitglieder sind.

c) Der Beschluss des Stiftungsratspräsidenten ist für die Stiftungsratsmitglieder bindend, es sei denn alle dreidurch die berechtigten Begünstigten bestellten Stiftungsratsmitglieder:

(i) würden, wenn der Beschluss des Stiftungsratspräsidenten noch in derselben Sitzung gefasst wird, noch in dieser Sitzung Widerspruch gegen den betreffenden Beschluss einlegen;

(ii) würden, wenn der Beschluss des Stiftungsratspräsidenten unverzüglich nach der Sitzung erfolgte, jedoch nicht später als innerhalb einer Frist von 3 Tagen nach Erhalt der Mitteilung über den Beschluss des Stiftungsratspräsidenten durch die Stiftungsratsmitglieder, Widerspruch gegen den betreffenden Beschluss einlegen.

d) Im Falle eines der vorstehend erwähnten Widerspruchs, wird die abzustimmende Sache erneut zur Abstimmung gebracht. Im Falle eines erneuten Mangels der Einstimmigkeit unter allen durch die berechtigten Begünstigten berufenen Stiftungsratsmitglieder wird das vorstehend unter Punkt b) vorgesehene Verfahren wiederholt, wobei der unter vorstehendem Punkt c) genannte Beschluss des Stiftungsratspräsidenten endgültigen und bindenden Charakter hat.

e) Die Bestimmungen von Art. 7 (2) b)-d) finden nicht auf die Bestellungen und Abberufungen von Stiftungsratsmitgliedern nach den in Art. 7 (7) genannten Regeln Anwendung.

(3) Dem Stiftungsrat stehen alle Rechte gemäss dem Gesetz, diesen Statuten und dem Beistatut zu.

(4) Der Stiftungsrat übernimmt die Verwaltung der Stiftung, er verwaltet das Vermögen und die Erträge aus diesem Vermögen, macht Zuwendungen (tätigt Zahlungen) an die Begünstigten und führt die laufenden Geschäfte. In Bezug auf die Bildung des Vermögens der Stiftung und seine Verwaltung gelten die Grundsätze der Sorgfaltspflicht.

(5) Die Amtszeit des Stiftungsrates ist zeitlich unbegrenzt.

(6) a) Die Mitgliedschaft im Stiftungsrat erlischt mit dem Tod, der Amtsniederlegung, der Abberufung, und im Falle des Stiftungsratspräsidenten erlischt sie auch infolge der vollständigen Handlungsunfähigkeit.

b) Das Stiftungsratsmitglied reicht seinen Wunsch, das Amt niederzulegen, schriftlich ein und händigt ihn dem Stiftungsratspräsidenten aus, indem er darüber gleichzeitig die anderen Stiftungsratsmitglieder und aktuellen Begünstigten in Kenntnis setzt.

c) Der Stiftungsratspräsident reicht seinen Wunsch, das Amt niederzulegen, schriftlich ein und händigt ihn einem Stiftungsratsmitglied aus, indem er darüber gleichzeitig die anderen Stiftungsratsmitglieder und aktuellen Begünstigten in Kenntnis setzt.

d) Die ein Stiftungsratsmitglied abberufenden Begünstigten sind verpflichtet, über die Abberufung und eine erneute Bestellung unverzüglich und in Schriftform den Stiftungsratspräsidenten, die Stiftungsratsmitglieder und die aktuellen Begünstigten in Kenntnis zu setzen, indem sie einen Nachweis über die erfolgte Abberufung beifügen.

e) Die Stiftungsratsmitglieder oder die Begünstigten sind zur schriftlichen Benachrichtigung des Stiftungsratspräsidenten über den Tod eines Stiftungsratsmitglieds unverzüglich nach Erhalt der Information über dessen Tod verpflichtet.

f) Der Stiftungsratspräsident ist zur unverzüglichen Überprüfung der erhaltenen Information und nach ihrer Überprüfung zur unverzüglichen Benachrichtigung der restlichen Stiftungsratsmitglieder und Begünstigten über den Tod des Stiftungsratsmitglieds verpflichtet.

g) Über den Tod des Stiftungsratspräsidenten sowie über dessen vollständige und dauerhafte Handlungsunfähigkeit hat der Nachfolger des Stiftungsratspräsidenten die anderen Stiftungsratsmitglieder und die aktuellen Begünstigten in Kenntnis zu setzen.

(7) a) Der Stiftungsratspräsident wird nach Erhalt der Information über den Tod oder die Amtsniederlegung eines Stiftungsratsmitglieds die berechtigten Begünstigten unverzüglich zur Bestellung eines neuen Stiftungsratsmitglieds auffordern, jedoch nicht später als innerhalb einer Frist von 7 Tagen ab dem Tag der Zustellung der Aufforderung zur Bestellung des Stiftungsratsmitglieds. Im Falle des wirkungslosen Ablaufs der obigen Frist muss der Stiftungsratspräsident seine Aufforderung wiederholen, und zwar mit einer Frist von 3 Tagen vor der Ausführung.

b) Im Falle der Nichtbestellung des Stiftungsratsmitglieds innerhalb der oben angegebenen Fristen durch die berechtigten Begünstigten wird das Stiftungsratsmitglied aus 3 durch den Stiftungsratspräsidenten vorgeschlagenen Kandidaten mit dokumentierten entsprechenden Qualifikationen und tadellosem Ruf schriftlich und einstimmig durch zwei amtierende Stiftungsratsmitglieder, mit Ausnahme des Stiftungsratspräsidenten, ausgewählt und bestellt. Wenn die besagten Stiftungsratsmitglieder diese Wahl nicht innerhalb von 3 Tagen nach Vorstellung der Kandidaten treffen, wird das Stiftungsratsmitglied schriftlich durch den Stiftungsratspräsidenten bestellt.

c) Das nach vorstehendem Abs. b) berufene Stiftungsratsmitglied kann mit absoluter Mehrheit von den berechtigten Begünstigten, die zur Besetzung des im Rat infolge des Todes oder einer Amtsniederlegung oder Abberufung eines Stiftungsratsmitglieds frei gewordenen Platzes berechtigt sind, abberufen werden.

d) Die betreffenden, vorstehend erwähnten Aufforderungen werden vom Stiftungsratspräsidenten per eingeschriebenem Brief, per Kurierpost oder auf dem Wege der elektronischen Post an die durch die jeweiligen Begünstigten angegebene E-Mail Adresse verschickt.

e) Zum Zwecke aller oben genannten Vorgänge ist jeder der Begünstigten verpflichtet, den Stiftungsratspräsidenten über die aktuelle E-Mail-Adresse zu informieren und diese im Falle ihrer Änderung unverzüglich zu aktualisieren.

Art.8

VERTRETUNG DER STIFTUNG

(1) Die Stiftung wird durch den Stiftungsratspräsidenten, der gemeinsam mit einem Ratsmitglied handelt, vertreten.

(2) An den Gesellschafterversammlungen der Beistatut bezeichneten ZVECKGESELLSCHAFTEN wird die Stiftung als Gesellschafterin durch Beschluss des Stiftungsrates bestellten Bevollmächtigten vertreten. Der betreffende Bevollmächtigte ist zur Stimmabgabe gemäss den in Form eines Beschlusses des Stiftungsrates erhaltenen Anordnungen. Die Teilnahme der Stiftung an Versammlung der ZWECKGESELLSCHAFTEN und die Ausübung des Stimmrechts sind obligatorisch. Der Stiftungsrat ist verpflichtet, dafür zu sorgen, dass die Vertreter der unmittelbar oder mittelbar von der Stiftung abhängigen Gesellschaften, die Gesellschafter der ZWECKGESELLSCHAFTEN sind, an allen Versammlungen der ZWECKGESELLSCHAFTEN gemäss den oben genannten Anordnungen abstimmen.

Art.9

KURATOR

(1) Der Kurator ist Berater des Stiftungsrates. Er ist berechtigt, alle Stiftungsdokumente einzusehen und Kopien davon zu nehmen, an den Sitzungen des Stiftungsrates teilzunehmen und die Angelegenheiten der Stiftung zu besprechen. Der Kurator überwacht des Weiteren die Verwirklichung des Stiftungszwecks durch den Stiftungsrat gemäß den Stiftungsdokumenten (Statuten, Beistatut) und eines allenfalls erlassenen Wunschschreibens ("Letter of Wishes") des Stifters.

(2) Weitere Befugnisse und Kompetenzen des Kurators werden durch den Stifter im Beistatut, im Teil über die Funktion sowie über die Rechte und Pflichten des Kurators, festgelegt. Dieses Beistatut kann ausdrücklich vorsehen, dass bestimmte Beschlüsse des Stiftungsrates für ihre Wirksamkeit die Zustimmung des Kurators erfordern, und dementsprechend kann dieses Beistatut die Ermessensbefugnisse des Stiftungsrates einschränken.

Art. 10

REVISIONSSTELLE

Der Stiftungsrat kann zur Überprüfung des Rechnungswesens eine Revisionsstelle einsetzen und deren Befugnisse festlegen. Die eingesetzte Revisionsstelle übernimmt in diesem Fall nicht die Funktion eines Kontrollorgans. Sie besteht unabhängig von einem allfälligen Kontrollorgan und führt auch nicht zu einer Einschränkung der Informations- und Auskunftsrechte der Begünstigten gemäß dem einschlägigen Art. 552 §§ 9 ff. PGR.

Art. 11

JAHRESABSCHLUSS

Das Rechnungsjahr beginnt jeweils am 1. Januar und endet am darauffolgenden 31. Dezember.

Art. 12

RECHTSANWÄLTE UND BERATER

Der Stiftungsrat kann Rechtsanwälte und andere Berater für begründete Konsultationen im Zusammenhang mit der Verwaltung und allen anderen Geschäften der Stiftung einsetzen.

Art 13

ÄNDERUNGEN DER STATUTEN UND WIDERRUFBARKEIT DER STIFTUNG

ÄNDERUNGEN DER STATUTEN UND WIDERRUFBARKEIT DER STIFTUNG

(1) Die Stiftung ist unwiderruflich.

(2) 1. Der Stifter hat zu seinen Lebzeiten das Recht zur Änderung der Stiftungserklärung, der Statuten, des Beistatuts und eines allenfalls erlassenen Wunschschreibens ("Letter of Wishes") des Stifters. Sämtliche Änderungen der Statuten der Stiftung und Änderungen des Beistatuts der Stiftung bedürfen der vorherigen Mitteilung an die Zweitbegünstigten. Änderungen der Statuten der Stiftung und Änderungen des Beistatuts der Stiftung ohne vorherige Mitteilung an die Zweitbegünstigten sind ungültig.

(2) 2.

(i) Der Stifter hat zu seinen Lebzeiten das Recht, durch Abgabe einer Willenserklärung in Form einer notariellen Urkunde zu verfügen, dass er ab einem von ihm genannten Datum die Anwendung der

167

Bestimmungen der Statuten und des Beistatuts, wie sie zu seinen Lebzeiten angewendet werden, ablehnt und dass an ihrer Stelle Bestimmungen anzuwenden sind, die ab dem Tag seines Todes in Kraft treten ("Erklärung").

(ii) Trotz Abgabe der Erklärung stehen dem Stifter die in Art. 13 Abs. (2) Punkt 3. der Statuten der Stiftung vorgesehenen Rechte zu und Art. 13 Abs. (2) Punkt 3. der Statuten der Stiftung gilt vollumfänglich. Diese in Art. 13 Abs (2) Punkt 3. der Statuten der Stiftung vorgesehenen Rechte stehen dem Stifter zeitlich unbegrenzt, auch nach dem in der Erklärung vom dem Stifter genannten Datum zu und sind darüber hinaus unbedingt und unwiderruflich.

(iii) Der Stifter hat das Recht, die Erklärung jederzeit, auch nach dem in der Erklärung von dem Stifter angegebenen Datum, ohne Erfordernis einer Begründung, zu widerrufen bzw. zu ändern. Die Berechtigung zum Widerruf bzw. zur Änderung der Erklärung steht dem Stifter bedingungslos zu und ist unwiderruflich.

(iv) Auf die dem Stifter gemäss Art. 13 Abs (2) Punkt 2. (iii) der Statuten der Stiftung zustehende Berechtigung zum Widerruf bzw. zur Änderung der Erklärung finden Art. 13. Abs. (2) Punkt 4. und Punkt 5. der Statuten der Stiftung Anwendung.

(2) 3. Nach dem in der Erklärung vom Stifter angegebenen Datum gelten die folgenden Bestimmungen, die auch vom Stiftungsrat nicht gemäss Art. 13 Abs. (3) der Statuten der Stiftung abgeändert werden kann:

(i) Bei Entscheidungen in Personalangelegenheiten (Bestellung, Abberufung, Suspendierung, Höhe der Vergütung) über die Zusammensetzung des Stiftungsrates der Stiftung und der Vorstände und Aufsichtsräte von Gesellschaften, deren Aktien oder Anteile die Stiftung direkt hält ("Gesellschaften"), ist eine vorherige gemeinsame Beratung mit dem Stifter obligatorisch erforderlich.

(ii) Bei Entscheidungen über Verfügungen bzw. Belastungen aus irgendeinem Rechtstitel in Bezug auf das Unternehmen, den organisierten Teil des Unternehmens oder Vermögenswerte, die einen wesentlichen Teil des Unternehmens der Stiftung selbst oder der Gesellschaften darstellen, ist eine vorherige schriftliche Zustimmung des Stifters obligatorisch erforderlich.

(iii) der Stifter behält die Funktion des Vorsitzenden der Aufsichtsräte von den Gesellschaften aus der Gruppe des Stifters nach dem Zustand zum Zeitpunkt der Änderung der Statuten der Stiftung vom 10. August 2023, allerdings mit dem gleichzeitigen Recht, nach alleinigem Ermessen des Stifters von einer Funktion zurückzutreten.

(iv) Die Bestimmungen von A I und A II Punkt 9 des aktuellen Beistatuts sind unabänderbar, d.h. sie dürfen in keiner Art und Weise abgeändert, aufgehoben oder ausgeschlossen werden.

(v) Im Fall eines Widerrufs einer Erklärung gemäß Art. 13 Abs. (2) Punkt 2. (iii) in Verbindung mit den Punkten 4. und 5. der Statuten der Stiftung hat der Stifter das unbedingte, unwiderrufliche und zeitlich unbegrenzte Recht : (i) die Stiftungserklärung, (ii) die Statuten der Stiftung, und/oder (iii) das Beistatut nach seinem alleinigen Ermessen zu ändern.

(2) 4. Im Fall eines Widerrufs einer Erklärung gemäß Art. 13 Abs. (2) Punkt 2. (iii) der Statuten der Stiftung hat der Stifter das Recht, zu jedem von ihm bestimmten Zeitpunkt eine weitere Erklärung oder weitere

168

Erklärungen gemäß Art. 13 Abs. (2) Punkt 2. der Statuten der Stiftung abzugeben, wobei auf jede weitere Erklärung das Recht zum Widerruf oder zur Änderung gemäß den Bedingungen aus Art. 13 Abs. (2) Punkt 2. (iii) in Verbindung mit Punkt 5. der Statuten der Stiftung zur Anwendung gelangt.

(2) 5. Das Recht, die Erklärung gemäss obigem Art. 13 Abs. (2) Punkt 2. (iii) der Statuten der Stiftung zu widerrufen bzw. zu ändern, kann der Stifter wirksam durchführen:

(i) in Bezug auf Erklärungen, die nach der Änderung der Statuten der Stiftung vom 10. August 2023 abgegeben wurden; sowie

(ii) in Bezug auf Erklärungen, die bereits vor der Änderung der Statuten der Stiftung vom 10. August 2023 abgegeben wurden, wobei auch in diesem Fall mit voller und unbedingter Rechtswirkung, unabhängig davon, ob das Recht auf Widerruf bzw. Änderung der Erklärung gemäß Art. 13 Abs. (2) Punkt 2. (iii) der Statuten der Stiftung vom Stifter vor oder nach dem in der Erklärung vom Stifter genannten Datum ausgeübt wurde.

(3) a. Ab dem Todestag des Stifters, der durch ein amtliches Dokument bestätigt wird (Sterbeurkunde), können die Stiftungserklärung, die Statuten und das Beistatut durch einen einstimmig durch alle Ratsmitglieder, einschliesslich des Ratspräsidenten, gefassten Beschluss des Stiftungsrates geändert werden, mit Ausnahme von Art. 6 und 7 der Statuten der Stiftung und der Bestimmungen von A II des Beistatuts, auf deren Änderung der nachstehende Punkt b) dieses Abschnitts (3) Anwendung findet.

   b. Änderungen von Art. .6 und 7 der Statuten der Stiftung und der Bestimmungen von A II des Beistatuts können durch einen einstimmig durch alle Ratsmitglieder, einschliesslich des Ratspräsidenten, gefassten Beschluss des Stiftungsrates nach vorheriger schriftlicher einstimmiger Zustimmung aller Begünstigten vorgenommen werden.

(4) Nach jeder Änderung der Statuten oder des Beistatuts ist jedes Stiftungsmitglied (darunter der Ratspräsident) innerhalb einer Frist von 7 Tagen ab dem Tag der Zustellung der Änderungsanzeige zur Abgabe einer schriftlichen Erklärung verpflichtet, mit der die Zustellung des Änderungsbegehrens und die Kenntnisnahme des Inhalts der Änderungen bestätigt wird.

Über jede Änderung der Statuten oder des Beistatuts benachrichtigt der Ratspräsident unverzüglich die Begünstigten, jedoch nicht später als innerhalb einer Frist von [7] Tagen nach Vornahme der Änderung. Die Bestimmungen von Art. 7 (7) d) und e) kommen entsprechend zur Anwendung.

(5) Die im vorliegenden Art. 13 bestimmten Berechtigungen des Stifters beinhalten das Recht, zu Lebzeiten des Stifters oder solange er auf seine Berechtigungen und Rechte nicht verzichtet hat, den Stiftungsrat anzuweisen, sämtliche Erträge der Stiftung, auf Auftrag des Stifters hin, an ihn auszuzahlen.

**Art. 14**

**REPRÄSENTANT**

Der Repräsentant hat die ihm gemäß Gesetz zukommenden Befugnisse. Anlässlich der Gründung der Stiftung wird er von der diese Statuten unterzeichnenden Person bestellt. Anschließend beschließt der Stiftungsrat über seine Ernennung und Abberufung.

**Art. 15**

**GERICHTSSTAND**

Alle Streitigkeiten zwischen der Stiftung und ihren Mitgliedern (insbesondere zwischen den Begünstigten, den Stiftungsratsmitgliedern, dem Kurator, dem Kontrollorgan und den Auditoren) sowie zwischen den Stiftungsmitgliedern aus den Beziehungen untereinander werden endgültig durch die zuständigen ordentlichen Gerichte des Fürstentums Liechtenstein entschieden.

19. August 2024

Zygmunt Józef Solorz

GEFERTIGT GEM
§54 NO

öffentlicher Notar

170

Diesen von mir aufgenommenen Notariatsakt habe ich samt der demselben beigehefteten Privaturkunde der Partei wörtlich vorgelesen. Diese anerkannte die Aufnahme als richtig und ihrem Willen gemäß an und unterfertigte den Akt eigenhändig vor mir. ---------------------------- Wien, am 19.08.2024 (neunzehnten August zweitausendvierundzwanzig) ----------------------------



Seite Drei

171