# EXHIBIT H

[coat of arms]
MAG. ALEXANDER WINKLER
PUBLIC NOTARY
1180 Vienna | Weimarer Straße 5
Phone (01) 479 54 04
Fax (01) 479 69 74
Email: kanzlei@notar-winkler.at

<u>Business number:</u> 1562

<div style="border:1px solid black; display:inline-block; padding:8px;">Exhibit <em>1AA</em></div>

# Notarial deed

Before me, Magister Alexander Winkler, public notary with an official seat in Vienna-Währing, Vienna, and an official office in 1180 Vienna, Weimarer Straße 5, the following appeared today at 1010 Vienna, Schwarzenbergplatz 3, where I have gone at the express request of the party, namely:

1.)    Mr. **Zygmunt Jozef Solorz**, born on 08/04/1956 (fourth of August nineteen hundred and fifty-six), Principality of Liechtenstein, 9495 Triesen, Meierhofstrasse 8, identified by his passport of the Republic of Poland EK 7971729, issued on 12/22/2016 (twenty-second of December two thousand and sixteen) by Wojewoda Mazowiecki

Page One

172

The aforementioned person hands me the private deed attached to this file, consisting of four unstamped sheets, namely the declaration and resolution of today's date on the

### Purposes of the notarial confirmation

I have thus examined and signed the present private deed in accordance with § 54 (paragraph fifty-four) of the applicable Notarial Act.

The party acknowledges before me, the notary, that he has also signed the enclosed private deed in his own hand.

When questioned by me, the notary, the party declares that he has been fully informed of the legal and tax consequences of this legal transaction by his legal and tax representation, that he is aware of the consequences of the legal transaction and that he does not wish to receive any further information from me, the notary.

The contracting party was informed of the company's obligation to disclose the beneficial owner in accordance with Section 5 WIEREG (Paragraph five of the Austrian Beneficial Owners Register Act). The contracting party declares that none of the natural persons involved in this transaction or the beneficial owners of the legal entities involved in this transaction exercise or have exercised an important public office and are not in a family or other close relationship with a person who exercises or has exercised an important public office. The contracting party also declares that he is not participating in this transaction in the name or for the account of a third party and that the funds for this transaction do not originate from an offense punishable by more than one year's imprisonment.

At the same time, he authorizes that copies of this notarial deed may be issued to him and his legal successors as well as to the Solkomtel Foundation upon unilateral request, in each case at the requesting party's expense.

Page Two

173

DECLARATION AND RESOLUTION

I, Zygmunt Jozef Solorz (hereinafter: the "**Founder**"), am the sole Founder and primary beneficiary of the Solkomtel Foundation with its registered office in Vaduz, Principality of Liechtenstein, filed in the Commercial Register of the Office of Justice of the Principality of Liechtenstein under the number FL-0002.419.785-2 (hereinafter: the "**Foundation**") and hereby adopt the following resolution on the basis of Art. 552 § 30 PGR [Liechtenstein Person and Company Law] in conjunction with Art 13 para. 2 point 1. of the Foundation's Articles of Association:

The Articles of Association of the Foundation dated June 15, 2023 are confirmed and Art. 5 is amended to insert a new paragraph 5, which reads as follows:

> *"(5) Anyone (with the exception of the Founder) who*
>
> > *(i) challenges the Foundation as such, its establishment or existence, its statutes, by-laws, regulations, financial circumstances, decisions (whether of a fiduciary or managerial nature), or allocations of assets, to whomever they may have been made, in whole or in part before a domestic or foreign authority or court, or damages the Foundation financially or in its reputation, or*
> >
> > *(ii) challenges legal acts of the Founder, in whole or in part, before a domestic or foreign authority or court or damages the Founder financially or in his reputation,*
>
> *loses his beneficiary rights. In this case, all benefits (or other rights) to which the beneficiary would have been entitled shall be distributed pro rata among the other beneficiaries of the Foundation in accordance with their respective rights to the Foundation.*
>
> *The* curator *may, at his discretion, reinstate such excluded persons in whole or in part, with ex tunc or ex nunc effect, if this person definitely withdraws the application for avoidance or terminates the damage."*

The Foundation's Articles of Association, as amended as of today's date, now read as shown in Exhibit ./1, which form an integral part of this declaration and which exhibit is also signed separately by me for confirmation.

For the sake of clarification, I would like to point out that the version of the Articles of Association shown in Exhibit ./1 corresponds to the version dated June 15, 2023, with the exception of the addition of the aforementioned forfeiture clause.

As a Founder, I would also like to point out that the introduction of the forfeiture clause is intended to protect the Foundation and its assets from unjustified attacks and damage in the long term.

All terms used in this deed shall be interpreted in accordance with the definitions in the Foundation's Articles of Association.

The costs of this deed shall be borne by the Founder.

*[signature]*

DRAWN UP GEM

§54 NO [Austrian Notarial Act]

*[signature]*

174

ARTICLES OF ASSOCIATION

The

SOLKOMTEL FOUNDATION, Vaduz


Art. 1

NAME, REGISTERED OFFICE, APPLICABLE LAW AND JURISDICTION
Under the name

**SOLKOMTEL FOUNDATION**

a family Foundation exists with its registered office and place of jurisdiction in Vaduz.

All legal relationships arising from the establishment, administration and existence of the Foundation are subject to Liechtenstein law.

The Foundation has its ordinary place of jurisdiction in Vaduz.


Art. 2

DURATION
The duration of the Foundation is not limited in time.


Art. 3

FOUNDATION ASSETS

(1)     The Foundation capital amounts to CHF 30,000 and is made freely available to the Foundation.

(2)     The Foundation's assets may be increased at any time by donations from the Founder or third parties through inter vivos dispositions or testamentary dispositions. All undistributed income from the Foundation is allocated to the Foundation's assets.

(3)     The Foundation assets generally consist of shares in a "special purpose vehicle" (SPV), in a domestic or foreign legal entity that already exists or is established by the Foundation or a third party and which in turn invests or will invest in the shares of one or more other legal entities. The Foundation's assets may also consist of shares or participating interests in other companies.

(4)    In addition, the Foundation's assets may also consist of funds, other movable and immovable assets and other rights if this is permissible in accordance with the purpose of the Foundation, the Articles of Association and the statutory provisions.


<u>Art. 4</u>


<u>PURPOSE</u>

(1)    The purpose of the Foundation is to support, care for and promote the beneficiaries specified in the by-laws; to cover the costs of education and the promotion of special talents and generally to provide material security and support for the beneficiaries as well as to support them in the event of marriage, taking up a profession or starting a business.

(2)    The purpose of the Foundation also includes benefits to natural or legal persons, institutions and the like, insofar as the beneficiaries mentioned in the by-laws are favored by such a benefit.

(3)    The by-laws may explicitly exclude certain persons or groups of persons as beneficiaries of the Foundation. It is not permitted to directly or indirectly favor persons or groups of persons explicitly excluded as beneficiaries of the Foundation in any way whatsoever.

(4)    The Foundation is authorized to conclude all legal transactions that serve the pursuit and realization of its purpose.

(5)    The Foundation does not operate a commercial business.


<u>Art. 5</u>


<u>BY-LAWS AND REGULATIONS, BENEFICIARIES OF THE FOUNDATION, ENFORCEMENT PROVISIONS</u>


(1)    The Founder may issue by-laws and one or more regulations.

(2)     Irrespective of these Articles of Association, the Founder shall establish a by-law in which, among other things, specific beneficiaries of the Foundation or beneficiaries that can be individualized according to objective characteristics are defined.

(3)     In compliance with the external restrictions imposed by the purpose of the Foundation in accordance with Art. 4 of these Articles of Association, the beneficiaries, the extent of the beneficiary status and other amendments concerning the beneficiary status shall be determined in the by-laws, in the section on beneficiaries.

(4)     The Foundation's beneficiaries and the grants awarded but not yet paid out are strictly personal, inalienable, non-inheritable and non-encumberable. The creditors of beneficiaries may not withdraw the beneficiary entitlement or expectant entitlement obtained free of charge by beneficiaries, or individual claims arising therefrom, by way of security proceedings, foreclosure or bankruptcy.

(5)     Anyone (with the exception of the Founder) who

    (i)     challenges the Foundation as such, its establishment or existence, its statutes, by-laws, regulations, financial circumstances, decisions (whether of a fiduciary or managerial nature), or allocations of assets, to whomever they may have been made, in whole or in part before a domestic or foreign authority or court, or damages the Foundation financially or in its reputation, or

    (ii)    challenges legal acts of the Founder, in whole or in part, before a domestic or foreign authority or a court or damages the Founder financially or in his reputation,

loses his beneficiary rights. In this case, all benefits (or other rights) to which the beneficiary would have been entitled shall be distributed pro rata among the other beneficiaries of the Foundation in accordance with their respective rights to the Foundation.

The curator may, at his own discretion, reinstate such excluded persons in whole or in part, with ex tunc or ex nunc effect, if this person definitively withdraws the application for avoidance or terminates the damage.

<u>Art. 6</u>

<u>FOUNDATION BOARD</u>

(1)     The senior executive body of the Foundation is the Foundation Board. A member of the Foundation Board must always be a natural person who fulfills the requirements of the relevant Art. 180a PGR. The members of the Foundation Board exercise their functions personally, without the right to appoint a proxy to exercise these functions on their behalf.

(2) (a)   The Foundation Board consists of four members, including a Chairman of the Foundation Board. During the Founder's lifetime, he appoints and dismisses the members of the Foundation Board, including the Chairman of the Foundation Board. The dismissal of the Chairman of the Foundation Board by the Founder shall automatically terminate the appointment of his successor within the meaning of Art. 6 (2) b. below. The Founder appoints a natural person who fulfills the requirements set out in Art. 180 a PGR as Chairman of the Foundation Board. The special duties of the Chairman of the Foundation Board include checking that the resolutions passed by the Foundation Board comply with the law, the Articles of Association, the by-laws and the document containing the Founder's wishes, if such a document has been drawn up.

-3-

(b) From the time of his appointment, the Chairman of the Foundation Board has the duty to appoint his successor in the event of his death, resignation or complete and permanent incapacity to act. The appointment of a successor then fulfills the same condition of validity and legal effectiveness that applies to the appointment of the Chairman of the Foundation Board. Subject to Art. 6 (3) lit. a and b below, the successor shall assume the function of the previous Chairman of the Foundation Board upon the occurrence of any of the above-mentioned events.

(c) The Chairman of the Foundation Board may only be succeeded by a natural person who fulfills the requirements of the current Art. 180 a PGR.

(d) The Chairman of the Foundation Board may change his succession during his lifetime, subject to the provisions of point c) above.

(e) The above provisions shall also apply to the other successors to the Chairman of the Foundation Board.

(3) (a) From the date of death of the Founder, confirmed by an official document (death certificate), or in the event of his complete permanent incapacity to act, or from the date specified by the Founder in the declaration referred to in Art. 13 (2) 2 of the Articles of Association, each of the secondary beneficiaries named in the by-laws shall acquire the right to occupy one – and only one – seat on the Foundation Board (with the exception of the office of Chairman of the Foundation Board). Firstly, a secondary beneficiary may remove one and only one member of the Foundation Board who has been appointed by the Founder in accordance with point 6 (2) a) above. An indispensable prerequisite for the validity and legal effect of the removal initiated by the secondary beneficiary is the appointment by such beneficiary of another member of the Foundation Board in place of the removed member, provided, however, that the appointment of a secondary beneficiary who is a "U.S. person" or a person or entity that is "related or subordinate" (as those terms are defined in the United States Internal Revenue Code of 1986, as amended, and the U.S. Treasury Regulations promulgated thereunder) to a secondary beneficiary who is a "U.S. person" is not permitted. Secondly, the secondary beneficiary may, within the scope available to it, remove the member of the Foundation Board appointed by it, the indispensable condition for the validity and legal effect of the removal initiated by the secondary beneficiary being the appointment by such Beneficiary of another member of the Foundation Board in place of the removed member, provided however that the appointment of a secondary beneficiary who is a "U.S. person" or a person or entity that is "related or subordinate" to a secondary beneficiary who is a U.S. person (as such terms are defined in the United States Internal Revenue Code of 1986, as amended, and the U.S. Treasury Regulations promulgated thereunder) shall not be permitted. This procedure is also used for all further appointments. Only persons of legal age may be appointed to the Foundation Board.

- 4 -

(b) After the death of the Founder or in the event of his complete and permanent incapacity to act or from the date specified by the Founder in his declaration in accordance with Art. 13 (2) 2 of the Articles of Association, three members of the Foundation Board (with the exception of the Chairman of the Foundation Board) have the right to unanimously dismiss the incumbent Chairman of the Foundation Board. The dismissal of the incumbent Chairman of the Foundation Board entails the obligation to appoint a new Chairman of the Foundation Board and the obligation to appoint his successor in accordance with Art. 6 (2) b) above lapses. At the same time as the dismissal, three members of the Foundation Board are obliged pursuant to Art. 6 para. 3 lit. a) above to appoint a new Chairman of the Foundation Board, who can only be a natural person who fulfills the requirements of the applicable Art. 180a PGR. At the same time, the appointment of the new Chairman of the Foundation Board is an essential prerequisite for the valid and effective dismissal of the current Chairman of the Foundation Board. The provisions of Art. 6 para. (2) points b), c), d) and e) apply to the newly appointed Chairman of the Foundation Board.

(4)    After the date of death of the secondary beneficiary, which is confirmed by an official document (death certificate), the third beneficiaries shall succeed to the rights of the deceased secondary beneficiary in accordance with the by-laws and, if one of the third beneficiaries is also no longer alive on the date of death of the secondary beneficiary, the fourth beneficiaries succeeding to the rights of the deceased third beneficiary shall acquire the right to appoint one – and only one – member of the Foundation Board whose place was at the exclusive disposal of the secondary beneficiary as their joint representative. The appointment and dismissal of the member of the Foundation Board by the authorized third and, if applicable, fourth beneficiaries are carried out by an absolute majority. The above rules apply accordingly to the appointment and dismissal of one – and only one – member of the Foundation Board by the beneficiaries of the other degrees.

Only persons of legal age may be appointed to the Foundation Board.

In each individual case of the dismissal of a member of the Foundation Board on the basis of this paragraph (4), the simultaneous appointment of another member of the Foundation Board to replace the dismissed member of the Foundation Board shall be an indispensable condition for the validity and legal effectiveness of the dismissal.

(5)    In the event of the childless death of a secondary beneficiary named in the by-laws, the place on the Foundation Board that was intended for the disposal of the deceased secondary beneficiary shall be filled in accordance with paragraph (3) a) above by way of unanimous appointment or dismissal, as at the date of the childless death of the secondary beneficiary ("entitled beneficiaries"). If unanimity is not reached among the above-mentioned beneficiaries, the member of the Foundation Board concerned shall be appointed or dismissed by the Chairman of the Foundation Board, whose decision shall be binding on the entitled beneficiaries, who shall have the right to object to the decision unanimously and without delay after the Chairman of the Foundation Board has taken the decision. In the event of an objection, Art. 7 (2) d) shall apply accordingly.

-5-

179

(6)     The appointment and dismissal of each member of the Foundation Board, including the Chairman of the Foundation Board, and the appointment and dismissal of the successor to the Chairman of the Foundation Board shall be made in writing (with the exception of electronic mail), with the obligation to deliver the request for appointment or dismissal to the address of the Foundation and to hand it over to the Chairman of the Foundation Board and to the other members of the Foundation Board.

(7)     Any change in the Foundation Board must be reported to the Office of Justice/Commercial Register (Art. 552 § 19 PGR) without delay, but within 30 days at the latest. The notification is made by the Chairman of the Foundation Board.

<div align="center">

Art. 7

</div>

RESOLUTIONS OF THE FOUNDATION BOARD

(1)

   a) The Foundation Board makes all of its decisions in the form of resolutions.

   b) Resolutions may be passed at meetings of the Foundation Board or by circular letter, whereby resolutions passed by circular letter require the initiative covered by the resolution to be sent to all members of the Foundation Board and the participation of all members of the Foundation Board, including the Chairman of the Foundation Board.

   c) The members of the Foundation Board may also participate in meetings of the Foundation Board using electronic means of communication.

   d)
   - i.     The meetings of the Foundation Board take place in Vaduz.
   - ii.    Minutes of the meeting of the Foundation Board are recorded in writing or in electronic form (audio-visual recording).
   - iii.   The meeting of the Foundation Board is chaired by the Chairman of the Foundation Board.

   e)
   - i.     The Foundation Board meets at the invitation of the Chairman of the Foundation Board or a member of the Foundation Board authorized by the Chairman of the Foundation Board. The Chairman of the Foundation Board convenes the meeting on his own initiative or at the request of a member of the Foundation Board. In any case, the meeting shall be convened 7 days before the date of the meeting.
   - ii.    If the Chairman of the Foundation Board does not convene the meeting within the 7-day period from the date of delivery of the request to convene the meeting, the meeting of the Foundation Board shall then be convened by the applicant with 7 days' notice before the date of the meeting.

iii.      Invitations to meetings of the Foundation Board must be sent to each member of the Foundation Board at the e-mail address provided and updated by the respective member of the Foundation Board, and also, subject to the provision under point iv. below, by registered letter or courier post.

iv.      Confirmation of receipt of the invitation by the member of the Foundation Board by electronic mail exempts them from the need to send the invitation by registered letter or courier post.

(2)

a)      Resolutions passed by circular letter require unanimity and must be signed by all members of the Foundation Board, including the Chairman of the Foundation Board.

b)      The resolution is deemed to have been passed at the meeting of the Foundation Board if all members of the Foundation Board appointed by the entitled beneficiaries have voted in favor of the resolution. If not all the votes of the aforementioned members of the Foundation Board have voted "in favor" in the vote, the Chairman of the Foundation Board shall take the decision on the matter to be voted on himself, if possible at the same meeting, and in justified exceptional cases after the meeting, but no later than the next working day after the end of the meeting. The Chairman of the Foundation Board makes the decision by deciding at the meeting between the proposals submitted by the members of the Foundation Board at his own discretion. If the Chairman of the Foundation Board adopts the resolution after the meeting, he is obliged to inform all three members of the Foundation Board simultaneously and immediately in writing of the resolution adopted, but no later than the working day following the adoption of the resolution.

The above procedure for passing resolutions by the Foundation Board in a meeting also applies if the persons appointed by the Founder, whose dismissal was not effected by way of Art. 6 (3) lit. a, are a member of the Foundation Board or members of the Foundation Board.

c)      The decision of the Chairman of the Foundation Board shall be binding on the members of the Foundation Board, unless all three members of the Foundation Board appointed by the entitled beneficiaries agree otherwise:

(i)      would, if the resolution of the Chairman of the Foundation Board is passed at the same meeting, lodge an objection to the resolution in question at the same meeting;

(ii)      would, if the decision of the Chairman of the Foundation Board was made immediately after the meeting, but not later than within a period of 3 days after receipt of the notification of the decision of the Chairman of the Foundation Board by the members of the Foundation Board, lodge an objection to the decision in question.

-7-

181

d)      In the event of any of the above-mentioned objections, the matter to be voted on shall be put to the vote again. In the event of a renewed lack of unanimity among all members of the Foundation Board appointed by the entitled beneficiaries, the procedure described above under

The procedure set out in point b) above is repeated, whereby the decision of the Chairman of the Foundation Board referred to in point c) above is final and binding.

e)      The provisions of Art. 7 (2) lit. b)-d) do not apply to the appointment and dismissal of members of the Foundation Board in accordance with the rules set out in Art. 7 (7).

(3)     The Foundation Board is entitled to all rights in accordance with the law, these Articles of Association and the by-laws.

(4)     The Foundation Board is responsible for the administration of the Foundation, manages the assets and the income from these assets, makes donations (makes payments) to the beneficiaries and manages the day-to-day business. The principles of due diligence apply to the formation of the Foundation's assets and their management.

(5)     The term of office of the Foundation Board is unlimited.

(6)     a) Membership of the Foundation Board shall expire upon death, resignation, dismissal and, in the case of the Chairman of the Foundation Board, complete incapacity to act.

b) The member of the Foundation Board submits his wish to resign in writing and hands it to the Chairman of the Foundation Board, informing the other members of the Foundation Board and current beneficiaries at the same time.

c) The Chairman of the Foundation Board submits his wish to resign in writing and hands it to a member of the Foundation Board, informing the other members of the Foundation Board and current beneficiaries at the same time.

d) The beneficiaries dismissing a member of the Foundation Board are obliged to inform the Chairman of the Foundation Board, the members of the Foundation Board and the current beneficiaries immediately and in writing of the dismissal and reappointment by enclosing proof of the dismissal.

e) The members of the Foundation Board or the beneficiaries are obliged to notify the Chairman of the Foundation Board in writing of the death of a member of the Foundation Board immediately upon receipt of the information about his death.

-8-

182

f) The Chairman of the Foundation Board is obliged to check the information received without delay and, after checking it, to notify the remaining members of the Foundation Board and beneficiaries of the death of the member of the Foundation Board without delay.

g) The successor to the Chairman of the Foundation Board must inform the other members of the Foundation Board and the current beneficiaries of the death of the Chairman of the Foundation Board and of his complete and permanent incapacity to act.

(7)

a) Upon receipt of information about the death or resignation of a member of the Foundation Board, the Chairman of the Foundation Board shall immediately request the entitled beneficiaries to appoint a new member of the Foundation Board, but no later than within a period of 7 days from the date of delivery of the request to appoint the member of the Foundation Board. In the event that the above deadline expires without effect, the Chairman of the Foundation Board must repeat his request with a notice period of 3 days prior to execution.

b) In the event of non-appointment of the member of the Foundation Board by the entitled beneficiaries within the deadlines specified above, the member of the Foundation Board shall be selected and appointed in writing and unanimously by two acting members of the Foundation Board, with the exception of the Chairman of the Foundation Board, from three candidates proposed by the Chairman of the Foundation Board with documented appropriate qualifications and an impeccable reputation. If the aforementioned members of the Foundation Board do not make this choice within 3 days of the presentation of the candidates, the member of the Foundation Board is appointed in writing by the Chairman of the Foundation Board.

c) The member of the Foundation Board appointed in accordance with paragraph b) above may be dismissed by an absolute majority of the entitled beneficiaries who are entitled to fill the vacancy on the Board as a result of the death, resignation or dismissal of a member of the Foundation Board.

d) The relevant requests referred to above shall be sent by the Chairman of the Foundation Board by registered letter, courier mail or electronic mail to the e-mail address provided by the respective beneficiaries.

e) For the purpose of all the above-mentioned processes, each of the beneficiaries is obliged to inform the Chairman of the Foundation Board of their current e-mail address and to update it immediately in the event of a change.

<u>Art. 8</u>

<u>REPRESENTATION OF THE FOUNDATION</u>

(1)     The Foundation is represented by the Chairman of the Foundation Board, who acts jointly with a member of the Foundation Board.

(2)     At shareholders' meetings of companies whose shares have been contributed to the Foundation, the Foundation shall be represented by a proxy appointed by a resolution of the Foundation Board. The aforementioned proxy is obliged to vote in accordance with the instructions received in the form of a resolution of the Foundation Board. The participation of the Foundation in every meeting of the above-mentioned companies and the exercise of voting rights is mandatory

<div align="center">Art. 9</div>

CURATOR

(1)     The curator is an advisor to the Foundation Board. He is entitled to inspect and take copies of all Foundation documents, to attend meetings of the Foundation Board and to discuss the affairs of the Foundation. The curator also monitors the realization of the Foundation's purpose by the Foundation Board in accordance with the Foundation documents (Articles of Association, by-laws) and any letter of wishes issued by the Founder.

(2)     Further powers and competencies of the curator shall be defined by the Founder in the by-laws, in the section on the function, rights and duties of the curator. These by-laws may expressly provide that certain resolutions of the Foundation Board require the consent of the curators to be effective and, accordingly, these by-laws may limit the discretionary powers of the Foundation Board.

<div align="center">Art. 10</div>

STATUTORY AUDITOR

The Foundation Board may appoint an auditor to review the accounting system and define its powers. In this case, the appointed statutory auditor does not assume the function of a controlling body. It exists independently of any supervisory body and also does not lead to a restriction of the beneficiaries' rights to information and disclosure in accordance with the relevant Art. 552 §§ 9 ff. PGR.

<div align="center">Art. 11</div>

ANNUAL FINANCIAL STATEMENTS

The financial year begins on January 1 and ends on the following December 31.

<div align="center">-10-</div>

<u>Art. 12</u>

<u>LAWYERS AND CONSULTANTS</u>

The Foundation Board may appoint lawyers and other consultants for well-founded consultations in connection with the administration and all other business of the Foundation.

<u>Art. 13</u>

<u>AMENDMENT OF THE ARTICLES OF ASSOCIATION AND REVOCABILITY OF THE FOUNDATION</u>

(1)     The Foundation is irrevocable.

(2)     1. During his lifetime, the Founder has the right to amend the Foundation declaration, the Articles of Association, the by-laws and any letter of wishes issued by the Founder. 2. During his lifetime, the Founder has the right to decree, by submitting a declaration of intent in the form of a notarial deed, that from a date specified by him he will reject the application of the provisions of the Articles of Association and the by-laws as they are applied during his lifetime and that in their place provisions are to be applied which come into force from the date of his death or in the event of complete and permanent incapacity to act. The Founder has the right to make the said declaration several times, whereby he is in no way bound by the content of his previous declarations when making a further declaration.

(3)     The rights of the Founder pursuant to Art. 13 include the right, during the Founder's lifetime or as long as the Founder has not waived these rights and powers, to instruct the Foundation Board to pay any income of the Foundation to the Founder at the Founder's direction or instruction.

(4)
        a. From the date of death of the Founder, as confirmed by an official document (death certificate), the Foundation declaration, the Articles of Association and the by-laws may be amended by a resolution of the Foundation Board adopted unanimously by all members of the Council, including the President of the Council, with the exception of Articles 6 and 7 of the Articles of Association of the Foundation and the provisions of A II of the by-laws, to the amendment of which point b) of this section (3) below shall apply.
        b. Amendments to Art. 6 and 7 of the Foundation's Articles of Association and the provisions of A II of the by-laws may be made by a resolution of the Foundation Board adopted unanimously by all members of the Board, including the Chairman of the Board, following the prior unanimous written consent of all beneficiaries.

(5)     After each amendment to the Articles of Association or the by-laws, each member of the Foundation (including the Chairman of the Board) is obliged to submit a written declaration within a period of 7 days from the date of delivery of the notification of amendment, confirming delivery of the request for amendment and acknowledgment of the content of the amendment.

The Chairman of the Board shall immediately notify the beneficiaries of any amendment to the Articles of Association or by-laws, but no later than [7] days after the amendment has been made. The provisions of Art. 7 para. 7 lit. d) and e) shall apply accordingly.

<div align="center">Art. 14</div>

REPRESENTATIVE

The representative has the powers granted to him by law. He is appointed by the person signing these Articles of Association when the Foundation is established. The Foundation Board then decides on his appointment and dismissal.

<div align="center">Art. 15</div>

LEGAL JURISDICTION

All disputes between the Foundation and its members (in particular between the beneficiaries, the members of the Foundation Board, the curator, the supervisory body and the auditors) and between the members of the Foundation arising from their relations with each other shall be finally settled by the competent ordinary courts of the Principality of Liechtenstein.

August 19, 2024
*[signature]*
Zygmunt Józef Solorz

<div align="center">DRAWN UP IN ACCORDANCE WITH

§54 NO [Austrian Notarial Act]

*[signature]*</div>

I have read this notarial deed, which I recorded, to the party verbatim, together with the private deed attached to it. He acknowledged the recording as correct and in accordance with his wishes and signed the deed in front of me with his own hand.

Vienna, August 19, 2024 (nineteenth day of August, two thousand and twenty-four)

*[signature]*

This second copy intended for **Mr. Zygmunt Jozef Solorz**, born on 08/04/1956 (fourth of August nineteen hundred and fifty-six) corresponds accurately with the original copy in my files under file number **1562**, consisting of four unstamped sheets.

Vienna, August 19, 2024 (nineteenth day of August, two thousand and twenty-four)

[stamp]
*[signature]*

[stamp]
*[signature]*

Page Three

187



**Mag. Alexander Winkler**
ÖFFENTLICHER NOTAR
1180 Wien • Weimarer Straße 5
Telefon (01) 479 54 04
Fax (01) 479 69 74
E-mail: kanzlei@notar-winkler.at



Beilage_____./AA_____

Geschäftszahl: 1562



# Notariatsakt

Vor mir, Magister Alexander Winkler, öffentlicher Notar mit dem Amtssitz in Wien-Währing,
Wien, und der Amtskanzlei in 1180 Wien, Weimarer Straße 5, ist heute im Hause 1010 Wien,
Schwarzenbergplatz 3, wohin ich mich über ausdrückliches Ersuchen der Partei begeben ha-
be, erschienen die Partei, und zwar: -----------------------------------------------------------------

1.) Herr **Zygmunt Jozef Solorz**, geboren am 04.08.1956 (vierten August neunzehnhun-
   dertsechsundfünfzig), Fürstentum Liechtenstein, 9495 Triesen, Meierhofstraße 8, ausge-
   wiesen durch dessen Reisepass der Republik Polen EK 7971729, ausgestellt am
   22.12.2016 (zweiundzwanzigsten Dezember zweitausendsechzehn) von Wojewoda Ma-
   zowiecki ----------------------------------------------------------------------------------------------

   ----------------------------------------------------------------------------------------------------

Seite Eins

188

Der Genannte übergibt mir Notar die diesem Akte beigeheftete, aus vier je ungestempelten Bögen bestehende Privaturkunde, nämlich die Erklärung und Beschluss vom heutigen Tage zum -- -------------------------------------------------------------------------------------------
----------------------------Z w e c k e   d e r   n o t a r i e l l e n----------------------------
-----------------------------------B e k r ä f t i g u n g .-------------------------------------
----------------------------------------------------------------------------------------------------

Ich habe sohin die vorliegende Privaturkunde im Sinne des § 54 (Paragraphen vierundfünfzig) der geltenden Notariatsordnung geprüft und unterzeichnet. -------------------------------
----------------------------------------------------------------------------------------------------

Die Partei anerkennt vor mir, Notar, die beigeschlossene Privaturkunde ebenfalls eigenhändig unterzeichnet zu haben. -----------------------------------------------------------------------

Über Befragen durch mich, Notar, erklärt die Partei, über die rechtlichen und steuerlichen Folgen dieses Rechtsgeschäfts durch ihre rechtliche und steuerliche Vertretung umfassend informiert worden zu sein, sich der Folgen des Rechtsgeschäftes bewusst zu sein und keine weiteren Informationen durch mich, Notar, zu wünschen. -------------------------------------
----------------------------------------------------------------------------------------------------

Die Vertragspartei wurde auf die Verpflichtung der Gesellschaft zur Bekanntgabe des wirtschaftlichen Eigentümers gemäß § 5 WiEReG (Paragraph fünf Wirtschaftliche Eigentümer-Registergesetz) hingewiesen. Die Vertragspartei erklärt, dass keine der an diesem Geschäft beteiligten natürlichen Personen oder die wirtschaftlichen Eigentümer der an diesem Geschäft beteiligten juristischen Personen ein wichtiges öffentliches Amt ausüben oder ausgeübt haben und nicht in einem familiären oder sonstigen Naheverhältnis zu einer Person zu stehen, welche ein wichtiges öffentliches Amt ausübt oder ausgeübt hat. Ebenso erklärt die Vertragspartei, dass sie nicht im fremden Namen oder auf fremde Rechnung an diesem Geschäft teilnimmt und dass die Mittel für dieses Geschäft nicht aus einer mit mehr als einjähriger Freiheitsstrafe bedrohten Handlung stammen. -------------------------------------------------
----------------------------------------------------------------------------------------------------

Gleichzeitig bewilligt sie, dass von diesem Notariatsakte ihr und ihren Rechtsnachfolgern sowie der Solkomtel Foundation auf einseitiges Verlangen auch wiederholt Ausfertigungen jeweils auf Kosten des Ersuchenden erteilt werden können. --------------------------------------
----------------------------------------------------------------------------------------------------

ERKLÄRUNG UND BESCHLUSS

Ich, Zygmunt Jozef Solorz (in der Folge: der "*Stifter*"), bin einziger Stifter und Erstbegünstigter der Stiftung Solkomtel Foundation mit Sitz in Vaduz, Fürstentum Liechtenstein, hinterlegt im Handelsregister des Amtes für Justiz des Fürstentums Liechtenstein unter der Nummer FL - 0002.419.785-2 (in der Folge: die " *Stiftung*") und fasse hiermit auf Grundlage des Art. 552 § 30 PGR iVm Art 13 Abs. 2 Punkt 1. der Statuten der Stiftung den folgenden Beschluss:

Die Statuten der Stiftung vom 15. Juni 2023 werden bestätigt und Art. 5 dahingehend ergänzt, dass ein neuer Absatz 5 eingefügt wird, der lautet wie folgt:

*"(5) Jeder (mit Ausnahme des Stifters), der*

*(i) die Stiftung als solche, ihre Errichtung oder ihren Bestand, ihre Statuten, Beistatuten, Reglemente, finanziellen Verhältnisse, Entscheidungen (ob von treuhänderischer oder betriebswirtschaftlicher Natur), oder Vermögenszuwendungen, an wen auch immer diese erfolgt sind, ganz oder teilweise bei einer in- oder ausländischen Behörde oder einem Gericht anficht oder die Stiftung finanziell oder in ihrer Reputation schädigt, oder*

*(ii) Rechtshandlungen des Stifters, ganz oder teilweise bei einer in oder ausländischen Behörde oder einem Gericht anficht oder den Stifter finanziell oder in seiner Reputation schädigt,*

*verliert seine Begünstigungsrechte. In diesem Fall sollen sämtliche Vorteile (oder andere Rechte), auf die der Begünstigte einen Anspruch gehabt hätte, pro-rata zwischen den übrigen Begünstigten der Stiftung im Einklang mit deren jeweiligen Rechten an der Stiftung, aufgeteilt werden.*

*Der Kurator kann nach freiem Ermessen solche ausgeschlossenen Personen gänzlich oder teilweise, mit ex tunc- oder ex nunc-Wirkung, wiedereinsetzen, wenn diese Person das Anfechtungsbegehren definitiv zurückzieht oder die Schädigung beendet."*

Die mit heutigem Datum neu gefassten Statuten der Stiftung lauten nunmehr wie in Beilage ./1 ersichtlich, welche einen integrierenden Bestandteil dieser Erklärung bilden und welche Beilage zur Bekräftigung von mir ebenfalls gesondert unterfertigt wird.

Klarstellend halte ich fest, dass die in Beilage ./1 ersichtliche Fassung der Statuten mit Ausnahme der Ergänzung der vorzitierten Verwirkungsklausel jener Fassung vom 15. Juni 2023 entspricht.

Weiter halte ich als Stifter fest, dass die Einführung der Verwirkungsklausel deshalb erfolgt, um die Stiftung und ihr Vermögen langfristig vor ungerechtfertigten Angriffen und Schäden zu schützen.

Alle in dieser Urkunde verwendeten Begriffe sind in Übereinstimmung mit den Definitionen in den Statuten der Stiftung auszulegen.

Die Kosten dieser Urkunde gehen zu Lasten des Stifters.

ÜEFERTIGT GEM
§54 NO

*o /1*

# S T A T U T E N

der

## SOLKOMTEL FOUNDATION, Vaduz

### Art. 1

NAME, SITZ, ANWENDBARES RECHT UND GERICHTSSTAND

Unter dem Namen

## SOLKOMTEL FOUNDATION

besteht eine Familienstiftung mit Sitz und Gerichtsstand in Vaduz.

Alle Rechtsverhältnisse, die durch die Errichtung, die Verwaltung und den Bestand der Stiftung begründet werden, unterliegen liechtensteinischem Recht.

Die Stiftung hat ihren ordentlichen Gerichtsstand in Vaduz.

### Art. 2

DAUER

Die Dauer der Stiftung ist zeitlich nicht begrenzt.

### Art.3

STIFTUNGSVERMÖGEN

(1)  Das Stiftungskapital beträgt CHF 30'000.— und wird der Stiftung zur freien Verfügung gestellt.

(2)  Das Stiftungsvermögen kann jederzeit durch Zuwendungen des Stifters oder Dritter durch Verfügung unter Lebenden oder durch letztwillige Verfügungen erhöht werden. Alle nicht ausgeschütteten Erträge der Stiftung fließen dem Stiftungsvermögen zu.

(3)  Das Stiftungsvermögen besteht in der Regel aus Anteilen an einer "Zweckgesellschaft" (Special Purpose Vehicle, SPV), an einer in- oder ausländischen juristischen Person, die bereits besteht oder von der Stiftung oder einem Dritten gegründet wird und die ihrerseits in die Anteile einer oder mehrerer anderer juristischer Personen investiert oder investieren wird. Das

Stiftungsvermögen kann auch aus Aktien oder Anteilen an anderen Unternehmen bestehen.

(4) Darüber hinaus kann das Stiftungsvermögen auch aus Geldmitteln, sonstigem beweglichem und unbeweglichem Vermögen sowie sonstigen Rechten bestehen, wenn dies nach dem Stiftungszweck, der Satzung und den gesetzlichen Bestimmungen zulässig ist.

## Art. 4

### ZWECK

(1) Zweck der Stiftung ist die Unterstützung, Fürsorge und Förderung der im Beistatut bezeichneten Begünstigten; die Bestreitung von Kosten der Ausbildung und der Förderung besonderer Begabungen sowie allgemein die materielle Sicherung und Förderung der Begünstigten wie auch deren Unterstützung im Falle der Eheschließung, Ergreifung eines Berufes oder der Gründung eines Unternehmens.

(2) Vom Stiftungszweck sind ebenso Leistungen an natürliche oder juristische Personen, Institutionen u. ä. erfasst, soweit die im Beistatut erwähnten Begünstigten durch solch eine Leistung bevorteilt werden.

(3) Im Beistatut können bestimmte Personen oder Personengruppen explizit als Begünstigte der Stiftung ausgeschlossen werden. Es ist unzulässig, als Begünstigte der Stiftung explizit ausgeschlossene Personen oder Personengruppen, direkt oder indirekt und auf welche Art auch immer aus der Stiftung zu bevorteilen.

(4) Die Stiftung ist befugt, alle Rechtsgeschäfte abzuschließen, die der Verfolgung und Verwirklichung ihres Zweckes dienen.

(5) Die Stiftung betreibt kein nach kaufmännischer Art geführtes Gewerbe.

## Art. 5

### BEISTATUT UND REGLEMENTE, STIFTUNGSBEGÜNSTIGUNG, VOLLSTRECKUNGSRECHILIGHE BESTIMMUNGEN

(1) Der Stifter kann ein Beistatut sowie ein oder mehrere Reglement(e) erlassen.

(2) Der Stifter errichtet unabhängig von diesen Statuten ein Beistatut, in dem u.a. konkrete oder nach objektiven Merkmalen individualisierbare Begünstigte der Stiftung festgelegt sind.

(3) Unter Beachtung der durch den Stiftungszweck gesetzten äußeren Beschränkungen gemäß Art. 4 dieser Statuten werden im Beistatut, im Teil über die Begünstigung, die Begünstigten, das Ausmaß der Begünstigung und weitere Ergänzungen über die Begünstigung bestimmt.

192



(4) Die Stiftungsbegünstigungen sowie die zugesprochenen, noch nicht ausgerichteten Zuwendungen sind streng persönlich, unveräußerlich, nicht vererblich und nicht belastbar. Die Gläubiger von Begünstigten dürfen die von Begünstigten unentgeltlich erlangte Begünstigungsberechtigung oder Anwartschaftsberechtigung, bzw. einzelne Ansprüche daraus, auf dem Wege des Sicherungsverfahrens, der Zwangsvollstreckung oder des Konkurses nicht entziehen.

(5) Jeder (mit Ausnahme des Stifters), der

    (i)    die Stiftung als solche, ihre Errichtung oder ihren Bestand, ihre Statuten, Beistatuten, Reglemente, finanziellen Verhältnisse, Entscheidungen (ob von treuhänderischer oder betriebswirtschaftlicher Natur), oder Vermögenszuwendungen, an wen auch immer diese erfolgt sind, ganz oder teilweise bei einer in- oder ausländischen Behörde oder einem Gericht anficht oder die Stiftung finanziell oder in ihrer Reputation schädigt, oder

    (ii)    Rechtshandlungen des Stifters, ganz oder teilweise bei einer in- oder ausländischen Behörde oder einem Gericht anficht oder den Stifter finanziell oder in seiner Reputation schädigt,

verliert seine Begünstigungsrechte. In diesem Fall sollen sämtliche Vorteile (oder andere Rechte), auf die der Begünstigte einen Anspruch gehabt hätte, pro-rata zwischen den übrigen Begünstigten der Stiftung im Einklang mit deren jeweiligen Rechten an der Stiftung, aufgeteilt werden.

Der Kurator kann nach freiem Ermessen solche ausgeschlossenen Personen gänzlich oder teilweise, mit ex tunc- oder ex nunc-Wirkung, wiedereinsetzen, wenn diese Person das Anfechtungsbegehren definitiv zurückzieht oder die Schädigung beendet.

<u>Art. 6</u>

<u>STIFTUNGSRAT</u>

(1) Oberstes Organ der Stiftung ist der Stiftungsrat. Ein Mitglied des Stiftungsrates muss dabei immer eine natürliche Person sein, welche die Anforderungen des einschlägigen Art. 180a PGR erfüllt. Die Stiftungsratsmitglieder üben ihre Funktionen persönlich aus, ohne das Recht auf Bestellung eines Bevollmächtigten zur Ausübung dieser Funktionen in ihrem Namen.

(2) (a) Der Stiftungsrat besteht aus vier Mitgliedern, darunter ein Stiftungsratspräsident. Zu Lebzeiten des Stifters bestellt und entlässt dieser die Stiftungsratsmitglieder, darunter den Stiftungsratspräsidenten. Die Abberufung des Stiftungsratspräsidenten durch den Stifter bewirkt von sich aus das Erlöschen der Bestellung dessen Nachfolgers im Sinne des nachstehendem Art. 6 (2) b. Der Stifter bestellt zum Stiftungsratspräsidenten eine natürliche Person, welche die in Art. 180 a PGR genannten Anforderungen erfüllt. Zu den besonderen Pflichten des Stiftungsratspräsidenten gehört die Kontrolle der Übereinstimmung der durch den Stiftungsrat gefassten Beschlüsse mit dem Recht, den

Statuten, dem Beistatut und mit dem die Wünsche des Stifters enthaltenden Schriftstück, sofern ein solches verfasst wurde.

(b) Der Stiftungsratspräsident hat ab dem Zeitpunkt seiner Bestellung die Pflicht, für den Fall seines Todes, der Amtsniederlegung oder einer vollständigen und dauerhaften Handlungsunfähigkeit seinen Nachfolger zu bestimmen. Die Bestimmung eines Nachfolgers erfüllt dann dieselbe Bedingung der Gültigkeit und Rechtswirksamkeit, wie sie für die Bestellung des Stiftungsratspräsidenten gilt. Vorbehaltlich nachstehendem Art. 6 (3) lit. a und b übernimmt der Nachfolger bei Eintritt eines beliebigen der oben genannten Ereignisse die Funktion des bisherigen Stiftungsratspräsidenten.

(c) Nachfolger des Stiftungsratspräsidenten kann nur eine natürliche Person werden, die die Anforderungen des geltenden Art. 180 a PGR erfüllt.

(d) Der Stiftungsratspräsident kann – vorbehaltlich der Bestimmungen in vorstehendem Pkt. c) – zu seinen Lebzeiten seine Nachfolge ändern.

(e) Die obigen Bestimmungen finden auch auf die weiteren Nachfolger des Stiftungsratspräsidenten Anwendung.

(3) (a) Ab dem Todestag des Stifters, der anhand eines amtlichen Dokuments (Sterbeurkunde) bestätigt wird, oder im Falle seiner vollständigen dauerhaften Handlungsunfähigkeit oder ab dem durch den Stifter in der in Art. 13 (2) 2 der Statuten genannten Erklärung festgelegten Datum erlangt jeder der im Beistatut genannten Zweitbegünstigten das Recht auf Besetzung eines – und nur eines – Platzes im Stiftungsrat (mit Ausnahme des Amts des Stiftungsratspräsidenten). Erstens kann ein Zweitbegünstigter ein – und nur ein – Stiftungsratsmitglied abberufen, welches durch den Stifter gemäß vorstehendem Punkt 6 (2) a) bestellt wurde. Eine unabdingbare Voraussetzung für die Gültigkeit und Rechtswirksamkeit der vom Zweitbegünstigten veranlassten Abberufung ist die Ernennung eines anderen Mitglieds des Stiftungsrats anstelle des abberufenen Mitglieds durch diesen Begünstigten, wobei jedoch die Ernennung eines Zweitbegünstigten, der eine "US-Person" ist, oder einer Person oder Einrichtung, die mit einem Zweitbegünstigten, der eine US-Person ist, "verbunden oder ihm untergeordnet" ist (gemäß der Definition dieser Begriffe im United States Internal Revenue Code von 1986 in seiner geänderten Fassung und den auf dieser Grundlage erlassenen Vorschriften des US-Finanzministeriums), nicht zulässig ist. Zweitens kann der Zweitbegünstigte im Rahmen des ihm zur Verfügung stehenden Raums das von ihm ernannte Mitglied des Stiftungsrats abberufen, wobei die unabdingbare Voraussetzung für die Gültigkeit und Rechtswirkung der vom Zweitbegünstigten veranlassten Abberufung die Ernennung eines anderen Mitglieds des Stiftungsrats anstelle des abberufenen Mitglieds durch diesen Begünstigten ist, jedoch mit der Maßgabe, dass die Ernennung eines Zweitbegünstigten, der eine "US-Person" ist, oder einer Person oder Einrichtung, die mit einem Zweitbegünstigten, der eine US-Person ist, "verbunden oder ihm untergeordnet" ist (gemäß der Definition dieser Begriffe im United States Internal Revenue Code von 1986 in seiner geänderten Fassung und den in diesem Rahmen erlassenen Vorschriften des US-Finanzministeriums), nicht zulässig ist. Dieses Verfahren kommt auch bei allen weiteren Bestellungen und Abberufungen

- 4 -

194



zur Anwendung. Zum Stiftungsratsmitglied dürfen nur volljährige Personen bestellt werden.

(b) Nach dem Tod des Stifters oder im Falle seiner vollständigen und dauerhaften Handlungsunfähigkeit oder ab dem durch den Stifter in seiner Erklärung im Sinne von Art. 13 (2) 2 der Statuten genannten Tag haben drei Stiftungsratsmitglieder (mit Ausnahme des Stiftungsratspräsidenten) das Recht, den amtierenden Stiftungsratspräsidenten einstimmig abzuberufen. Die Abberufung des amtierenden Stiftungsratspräsidenten bedingt die Pflicht zur Bestellung eines neuen Stiftungsratspräsidenten und es erlischt die Pflicht zur Bestellung seines Nachfolgers gemäss vorstehendem Art. 6 (2) b). Zugleich mit der Abberufung sind drei Mitglieder des Stiftungsrates gemäss vorstehendem Art. 6 Abs. 3 lit. a) verpflichtet, einen neuen Stiftungsratspräsidenten zu ernennen, der nur eine natürliche Person sein kann, die die Anforderungen des geltenden Art. 180a PGR erfüllt. Gleichzeitig stellt die Berufung des neuen Stiftungsratspräsidenten eine unerlässliche Voraussetzung für die gültige und wirksame Abberufung des bisherigen Stiftungsratspräsidenten dar. Bei dem neu bestellten Stiftungsratspräsidenten kommen die Bestimmungen von Art. 6 Abs. (2) Punkte b), c), d) und e) zur Anwendung.

(4) Nach dem Todestag des Zweitbegünstigten, der durch ein amtliches Dokument (Sterbeurkunde) bestätigt wird, treten die Drittbegünstigten gemäss dem Beistatut in die Rechte des verstorbenen Zweitbegünstigten ein, und, falls am Todestag des Zweitbegünstigten einer der Drittbegünstigten ebenfalls nicht mehr am Leben ist, erlangen die in die Rechte des verstorbenen Drittbegünstigten eintretenden Viertbegünstigten das Recht, ein – und nur ein – Stiftungsratsmitglied zu bestellen, dessen Platz sich in der ausschliesslichen Verfügung des Zweitbegünstigten als ihrem gemeinsamen Vertreter befand. Die Bestellung und Abberufung des Stiftungsratsmitglieds durch die berechtigten Dritt- und gegebenenfalls Viertbegünstigten erfolgt mit absoluter Mehrheit. Die obigen Regeln kommen entsprechend bei der Bestellung und Abberufung eines – und nur eines – Stiftungsratsmitglieds durch die Begünstigten der weiteren Grade zur Anwendung.

Zum Stiftungsratsmitglied dürfen nur volljährige Personen bestellt werden.

In jedem einzelnen Fall der Abberufung eines Stiftungsratsmitglieds auf der Grundlage dieses Abs. (4) gilt als unerlässliche Bedingung für die Gültigkeit und Rechtswirksamkeit der Abberufung die zeitgleiche Bestellung eines anderen Stiftungsratsmitglieds anstelle des abberufenen Stiftungsratsmitglied.

(5) Im Falle des kinderlosen Ablebens eines im Beistatut genannten Zweitbegünstigten wird der Platz im Stiftungsrat, der zur Verfügung des verstorbenen Zweitbegünstigten vorgesehen war, gemäss vorstehendem Abs. (3) a) auf dem Wege von einstimmigen Bestellungen oder Abberufungen besetzt, und zwar mit Stand zum Tag des kinderlosen Ablebens des Zweitbegünstigten („berechtigte Begünstigte"). Falls keine Einstimmigkeit bei den vorstehend genannten Begünstigten erreicht wird, wird das betreffende Stiftungsratsmitglied durch den Stiftungsratspräsidenten bestellt bzw. abberufen, dessen Beschluss für die berechtigten Begünstigten verbindlich ist, die das Recht haben, einstimmig Widerspruch gegen den Beschluss einzulegen, und zwar unverzüglich nach

Beschlussfassung durch den Stiftungsratspräsidenten. Im Falle eines Widerspruchs findet Art. 7 (2) d) entsprechend Anwendung.

(6) Die Bestellung und Abberufung eines jeden Stiftungsratsmitglieds, darunter des Stiftungsratspräsidenten, und die Bestellung und Abberufung des Nachfolgers des Stiftungsratspräsidenten erfolgt in Schriftform (mit Ausnahme der elektronischen Post), mit der Pflicht der Zustellung des Berufungs- oder Abberufungsbegehrens an die Adresse der Stiftung und ihrer Aushändigung an den Stiftungsratspräsidenten und an die restlichen Stiftungsratsmitglieder.

(7) Jede Änderung im Stiftungsrat muss unverzüglich, spätestens aber innerhalb von 30 Tagen, beim Amt für Justiz/Handelsregister (Art. 552 § 19 PGR) angezeigt werden. Die Meldung nimmt der Stiftungsratspräsident vor.

### Art. 7

### BESCHLÜSSE DES STIFTUNGSRATES

(1)

a) Der Stiftungsrat trifft sämtliche seiner Entscheidungen in Form von Beschlüssen.

b) Die Beschlüsse können an den Sitzungen des Stiftungsrates oder auf dem Zirkularweg gefasst werden, wobei die auf dem Zirkularweg gefassten Beschlüsse die Zustellung des von dem Beschluss erfassten Vorhabens an alle Mitglieder des Stiftungsrates und eine Beteiligung aller Stiftungsratsmitglieder, darunter der des Stiftungsratspräsidenten, erfordern.

c) Die Stiftungsratsmitglieder können auch unter Einsatz von elektronischen Kommunikationsmitteln an den Sitzungen des Stiftungsrates teilnehmen.

d)

   i. Die Sitzungen des Stiftungsrates finden in Vaduz statt.

   ii. Von der Sitzung des Stiftungsrates wird ein Protokoll in Schriftform oder in elektronischer Form erstellt (Ton-Bild-Aufzeichnung).

   iii. Bei der Sitzung des Stiftungsrates hat der Stiftungsratspräsident den Vorsitz.

e)

   i. Der Stiftungsrat tritt auf Einladung des Stiftungsratspräsident oder eines durch den Stiftungsratspräsidenten ermächtigten Stiftungsratsmitglieds zur Sitzung zusammen. Der Stiftungsratspräsident beruft die Sitzung aus eigener Initiative oder auf Antrag eines Stiftungsratsmitglieds ein. In jedem Fall wird die Sitzung mit einer Frist von 7 Tagen vor dem Sitzungstermin einberufen.

   ii. Beruft der Stiftungsratspräsident die Sitzung nicht innerhalb der 7tägigen Frist ab dem Datum der Zustellung des Begehrens auf Einberufung der Sitzung ein, wird die Stiftungsratssitzung dann



    vom Antragsteller mit einer Frist von 7 Tagen vor dem Sitzungstermin einberufen.

iii. Die Einladungen zur Stiftungsratssitzung müssen an jedes Stiftungsratsmitglied, und zwar an die vom jeweiligen Stiftungsratsmitglied angegebene und aktualisierte E-Mail-Adresse, verschickt werden, und ausserdem, vorbehaltlich der Bestimmung unter nachstehendem Pkt. iv., per eingeschriebenem Brief oder Kurierpost.

iv. Die Bestätigung des Erhalts der Einladung durch das Stiftungsratsmitglied mittels elektronischer Post befreit von der Notwendigkeit, die Einladung per eingeschriebenem Brief oder Kurierpost zu verschicken.

(2)

a) Die Beschlussfassung auf dem Zirkularweg erfordert Einstimmigkeit und erfolgt durch Unterzeichnung des Beschlusses durch alle Stiftungsratsmitglieder, darunter auch durch den Stiftungsratspräsiden.

b) Die Beschlussfassung an der Stiftungsratssitzung gilt als erfolgt, wenn für den Beschluss alle Stiftungsratsmitglieder abgestimmt haben, die durch die berechtigten Begünstigten bestellt wurden. Wenn bei der Abstimmung nicht alle Stimmen der besagten Stiftungsratsmitglieder "dafür" gestimmt haben, fasst der Stiftungsratspräsident den Beschluss in der abzustimmenden Sache selbst, und zwar möglichst noch in derselben Sitzung, und in begründeten Ausnahmefällen nach der Sitzung, jedoch nicht später als am nächsten Werktag nach Beendigung der Sitzung. Der Stiftungsratspräsident fasst den Beschluss, indem er sich in der Sitzung zwischen den durch die Stiftungsratsmitglieder vorgelegten Anträgen nach eigenem Ermessen entscheidet. Wenn der Stiftungsratspräsident den Beschluss nach der Sitzung fasst, ist er verpflichtet, gleichzeitig und unverzüglich alle drei Stiftungsratsmitglieder in Schriftform über den gefassten Beschluss in Kenntnis zu setzen, jedoch nicht später als am Werktag nach der Beschlussfassung.

Das obige Verfahren der Beschlussfassung durch den Stiftungsrat in der Sitzung kommt auch dann zur Anwendung, wenn die durch den Stifter bestellten Personen, deren Abberufung nicht auf dem Wege von Art. 6 (3) lit. a erfolgte, Stiftungsratsmitglied bzw. Stiftungsratsmitglieder sind.

c) Der Beschluss des Stiftungsratspräsidenten ist für die Stiftungsratsmitglieder bindend, es sei denn alle drei durch die berechtigten Begünstigten bestellten Stiftungsratsmitglieder:

    (i) würden, wenn der Beschluss des Stiftungsratspräsidenten noch in derselben Sitzung gefasst wird, noch in dieser Sitzung Widerspruch gegen den betreffenden Beschluss einlegen;

    (ii) würden, wenn der Beschluss des Stiftungsratspräsidenten unverzüglich nach der Sitzung erfolgte, jedoch nicht später als innerhalb einer Frist von 3 Tagen nach Erhalt der Mitteilung über den Beschluss des Stiftungsratspräsidenten durch die

Stiftungsratmitglieder, Widerspruch gegen den betreffenden Beschluss einlegen.

    d) Im Falle eines der vorstehend erwähnten Widerspruchs, wird die abzustimmende Sache erneut zur Abstimmung gebracht. Im Falle eines erneuten Mangels der Einstimmigkeit unter allen durch die berechtigten Begünstigten berufenen Stiftungsratmitglieder wird das vorstehend unter
Punkt b) vorgesehene Verfahren wiederholt, wobei der unter vorstehendem Punkt c) genannte Beschluss des Stiftungsratspräsidenten endgültigen und bindenden Charakter hat.

    e) Die Bestimmungen von Art. 7 Abs. (2) lit. b)-d) finden nicht auf die Bestellungen und Abberufungen von Stiftungsratmitgliedern nach den in Art. 7 (7) genannten Regeln Anwendung.

(3) Dem Stiftungsrat stehen alle Rechte gemäss dem Gesetz, diesen Statuten und dem Beistatut zu.

(4) Der Stiftungsrat übernimmt die Verwaltung der Stiftung, er verwaltet das Vermögen und die Erträge aus diesem Vermögen, macht Zuwendungen (tätigt Zahlungen) an die Begünstigten und führt die laufenden Geschäfte. In Bezug auf die Bildung des Vermögens der Stiftung und seine Verwaltung gelten die Grundsätze der Sorgfaltspflicht.

(5) Die Amtszeit des Stiftungsrates ist zeitlich unbegrenzt.

(6)

    a) Die Mitgliedschaft im Stiftungsrat erlischt mit dem Tod, der Amtsniederlegung, der Abberufung, und im Falle des Stiftungsratspräsidenten erlischt sie auch infolge der vollständigen Handlungsunfähigkeit.

    b) Das Stiftungsratmitglied reicht seinen Wunsch, das Amt niederzulegen, schriftlich ein und händigt ihn dem Stiftungsratspräsidenten aus, indem er darüber gleichzeitig die anderen Stiftungsratmitglieder und aktuellen Begünstigten in Kenntnis setzt.

    c) Der Stiftungsratspräsident reicht seinen Wunsch, das Amt niederzulegen, schriftlich ein und händigt ihn einem Stiftungsratmitglied aus, indem er darüber gleichzeitig die anderen Stiftungsratmitglieder und aktuellen Begünstigten in Kenntnis setzt.

    d) Die ein Stiftungsratmitglied abberufenden Begünstigten sind verpflichtet,

über die Abberufung und eine erneute Bestellung unverzüglich und in Schriftform den Stiftungsratspräsidenten, die Stiftungsratmitglieder und die aktuellen Begünstigten in Kenntnis zu setzen, indem sie einen Nachweis über die erfolgte Abberufung beifügen.

    e) Die Stiftungsratmitglieder oder die Begünstigten sind zur schriftlichen Benachrichtigung des Stiftungsratspräsidenten über den Tod eines Stiftungsratmitglieds unverzüglich nach Erhalt der Information über dessen Tod verpflichtet.

f) Der Stiftungsratspräsident ist zur unverzüglichen Überprüfung der erhaltenen Information und nach ihrer Überprüfung zur unverzüglichen Benachrichtigung der restlichen Stiftungsratsmitglieder und Begünstigten über den Tod des Stiftungsratsmitglieds verpflichtet.

g) Über den Tod des Stiftungsratspräsidenten sowie über dessen vollständige und dauerhafte Handlungsunfähigkeit hat der Nachfolger des Stiftungsratspräsidenten die anderen Stiftungsratsmitglieder und die aktuellen Begünstigten in Kenntnis zu setzen.

(7)

a) Der Stiftungsratspräsident wird nach Erhalt der Information über den Tod oder die Amtsniederlegung eines Stiftungsratsmitglieds die berechtigten Begünstigten unverzüglich zur Bestellung eines neuen Stiftungsratsmitglieds auffordern, jedoch nicht später als innerhalb einer Frist von 7 Tagen ab dem Tag der Zustellung der Aufforderung zur Bestellung des Stiftungsratsmitglieds. Im Falle des wirkungslosen Ablaufs der obigen Frist muss der Stiftungsratspräsident seine Aufforderung wiederholen, und zwar mit einer Frist von 3 Tagen vor der Ausführung.

b) Im Falle der Nichtbestellung des Stiftungsratsmitglieds innerhalb der oben angegebenen Fristen durch die berechtigten Begünstigten wird das Stiftungsratsmitglied aus 3 durch den Stiftungsratspräsidenten vorgeschlagenen Kandidaten mit dokumentierten entsprechenden Qualifikationen und tadellosem Ruf schriftlich und einstimmig durch zwei amtierende Stiftungsratsmitglieder, mit Ausnahme des Stiftungsratspräsidenten, ausgewählt und bestellt. Wenn die besagten Stiftungsratsmitglieder diese Wahl nicht innerhalb von 3 Tagen nach Vorstellung der Kandidaten treffen, wird das Stiftungsratsmitglied schriftlich durch den Stiftungsratspräsidenten bestellt.

c) Das nach vorstehendem Abs. b) berufene Stiftungsratsmitglied kann mit absoluter Mehrheit von den berechtigten Begünstigten, die zur Besetzung des im Rat infolge des Todes oder einer Amtsniederlegung oder Abberufung eines Stiftungsratsmitglieds frei gewordenen Platzes berechtigt sind, abberufen werden.

d) Die betreffenden, vorstehend erwähnten Aufforderungen werden vom Stiftungsratspräsidenten per eingeschriebenem Brief, per Kurierpost oder auf dem Wege der elektronischen Post an die durch die jeweiligen Begünstigten angegebene E-Mail Adresse verschickt.

e) Zum Zwecke aller oben genannten Vorgänge ist jeder der Begünstigten verpflichtet, den Stiftungsratspräsidenten über die aktuelle E-Mail-Adresse zu informieren und diese im Falle ihrer Änderung unverzüglich zu aktualisieren.

Art. 8

VERTRETUNG DER STIFTUNG

(1) Die Stiftung wird durch den Stiftungsratspräsidenten, der gemeinsam mit einem Ratsmitglied handelt, vertreten.

199

(2) Bei Aktionärsversammlungen von Unternehmen, deren Aktien in die Stiftung eingebracht wurden, wird die Stiftung durch einen Bevollmächtigten vertreten, der durch einen Beschluss des Stiftungsrates bestellt wird. Der vorgenannte Bevollmächtigte ist verpflichtet, gemäß den in Form eines Beschlusses des Stiftungsrates erhaltenen Anweisungen abzustimmen. Die Teilnahme der Stiftung an jeder Versammlung der oben genannten Unternehmen und die Ausübung der Stimmrechte ist obligatorisch

## Art. 9

### KURATOR

(1) Der Kurator ist Berater des Stiftungsrates. Er ist berechtigt, alle Stiftungsdokumente einzusehen und Kopien davon zu nehmen, an den Sitzungen des Stiftungsrates teilzunehmen und die Angelegenheiten der Stiftung zu besprechen. Der Kurator überwacht des Weiteren die Verwirklichung des Stiftungszwecks durch den Stiftungsrat gemäß den Stiftungsdokumenten (Statuten, Beistatut) und eines allenfalls erlassenen Wunschschreibens („Letter of Wishes") des Stifters.

(2) Weitere Befugnisse und Kompetenzen des Kurators werden durch den Stifter im Beistatut, im Teil über die Funktion sowie über die Rechte und Pflichten des Kurators, festgelegt. Dieses Beistatut kann ausdrücklich vorsehen, dass bestimmte Beschlüsse des Stiftungsrates für ihre Wirksamkeit die Zustimmung des Kurators erfordern, und dementsprechend kann dieses Beistatut die Ermessensbefugnisse des Stiftungsrates einschränken.

## Art. 10

### REVISIONSSTELLE

Der Stiftungsrat kann zur Überprüfung des Rechnungswesens eine Revisionsstelle einsetzen und deren Befugnisse festlegen. Die eingesetzte Revisionsstelle übernimmt in diesem Fall nicht die Funktion eines Kontrollorgans. Sie besteht unabhängig von einem allfälligen Kontrollorgan und führt auch nicht zu einer Einschränkung der Informations- und Auskunftsrechte der Begünstigten gemäß dem einschlägigen Art. 552 §§ 9 ff. PGR.

## Art. 11

### JAHRESABSCHLUSS

Das Rechnungsjahr beginnt jeweils am 1. Januar und endet am darauffolgenden 31. Dezember.

200

Art. 12

RECHTSANWÄLTE UND BERATER

Der Stiftungsrat kann Rechtsanwälte und andere Berater für begründete Konsultationen im Zusammenhang mit der Verwaltung und allen anderen Geschäften der Stiftung einsetzen.

Art. 13

ÄNDERUNG DER STATUTEN UND WIDERRUFBARKEIT DER STIFTUNG

(1) Die Stiftung ist unwiderruflich.
(2) 1. Der Stifter hat zu seinen Lebzeiten das Recht zur Änderung der Stiftungserklärung, der Statuten, des Beistatuts und eines allenfalls erlassenen Wunschschreibens („Letter of Wishes") des Stifters.
2. Der Stifter hat zu seinen Lebzeiten das Recht, durch Abgabe einer Willenserklärung in Form einer notariellen Urkunde zu verfügen, dass er ab einem von ihm genannten Datum die Anwendung der Bestimmungen der Statuten und des Beistatuts, wie sie zu seinen Lebzeiten angewendet werden, ablehnt und dass an ihrer Stelle Bestimmungen anzuwenden sind, die ab dem Tag seines Todes oder im Falle einer vollständigen und dauerhaften Handlungsunfähigkeit in Kraft treten. Der Stifter hat das Recht, die besagte Erklärung mehrfach abzugeben, wobei er bei der Abgabe einer weiteren Erklärung auf keine Weise an den Inhalt seiner früheren Erklärungen gebunden ist.
(3) Die Rechte des Stifters, gemäss Art. 13 beinhalten das Recht, zu Lebzeiten des Stifters oder solange der Stifter nicht auf diese Rechte und Befugnisse verzichtet hat, den Stiftungsrat anzuweisen, jegliches Einkommen der Stiftung an den Stifter auf dessen Anordnung oder Anweisung auszuzahlen.
(4)
a. Ab dem Todestag des Stifters, der durch ein amtliches Dokument bestätigt wird (Sterbeurkunde), können die Stiftungserklärung, die Statuten und das Beistatut durch einen einstimmig durch alle Ratsmitglieder, einschliesslich des Ratspräsidenten, gefassten Beschluss des Stiftungsrates geändert werden, mit Ausnahme von Art. 6 und 7 der Statuten der Stiftung und der Bestimmungen von A II des Beistatuts, auf deren Änderung der nachstehende Punkt b) dieses Abschnitts (3) Anwendung findet.
b. Änderungen von Art. 6 und 7 der Statuten der Stiftung und der Bestimmungen von A II des Beistatuts können durch einen einstimmig durch alle Ratsmitglieder, einschliesslich des Ratspräsidenten, gefassten Beschluss des Stiftungsrates nach vorheriger schriftlicher einstimmiger Zustimmung aller Begünstigten vorgenommen werden.

(5) Nach jeder Änderung der Statuten oder des Beistatuts ist jedes Stiftungsmitglied (darunter der Ratspräsident) innerhalb einer Frist von 7

- 11 -

201

Tagen ab dem Tag der Zustellung der Änderungsanzeige zur Abgabe einer schriftlichen Erklärung verpflichtet, mit der die Zustellung des Änderungsbegehrens und die Kenntnisnahme des Inhalts der Änderung bestätigt wird.

Über jede Änderung der Statuten oder des Beistatuts benachrichtigt der Ratspräsident unverzüglich die Begünstigten, jedoch nicht später als innerhalb einer Frist von [7] Tagen nach Vornahme der Änderung. Die Bestimmungen von Art. 7 Abs. 7 lit. d) und e) kommen entsprechend zur Anwendung.

## Art. 14

### REPRÄSENTANT

Der Repräsentant hat die ihm gemäß Gesetz zukommenden Befugnisse. Anlässlich der Gründung der Stiftung wird er von der diese Statuten unterzeichnenden Person bestellt. Anschließend beschließt der Stiftungsrat über seine Ernennung und Abberufung.

## Art. 15

### GERICHTSSTAND

Alle Streitigkeiten zwischen der Stiftung und ihren Mitgliedern (insbesondere zwischen den Begünstigten, den Stiftungsratsmitgliedern, dem Kurator, dem Kontrollorgan und den Auditoren) sowie zwischen den Stiftungsmitgliedern aus den Beziehungen untereinander werden endgültig durch die zuständigen ordentlichen Gerichte des Fürstentums Liechtenstein entschieden.

19. August 2024

Zygmunt Józef Solorz

CEFÉRTIQT GEM
§§4 ND

- 12 -

202

Diesen von mir aufgenommenen Notariatsakt habe ich samt der demselben beigehefteten Privaturkunde der Partei wörtlich vorgelesen. Diese anerkannte die Aufnahme als richtig und ihrem Willen gemäß an und unterfertigte den Akt eigenhändig vor mir. ------------------------
Wien, am 19.08.2024 (neunzehnten August zweitausendvierundzwanzig) ------------------------

*Zygmunt Solon*

Diese für Herrn **Zygmunt Jozef Solorz**, geboren am 04.08.1956 (vierten August neunzehn-hundertsechsundfünfzig) bestimmte zweite Ausfertigung stimmt mit der in meinen Akten zur Geschäftszahl **1562** erliegenden, aus vier je ungestempelten Bögen bestehenden Urschrift vollkommen überein. ------------------------------------------------------------------------------
Wien, am 19.08.2024 (neunzehnten August zweitausendvierundzwanzig) ------------------------

Seite Drei

203