# EXHIBIT J

To the
Princely Court of Justice
9490 Vaduz

PLAINTIFF:

*[signature]*
[stamp: PRINCELY COURT OF JUSTICE VADUZ]
E 08.29.2024 15:58
Through messengers
Postal delivery:]
Zygmunt Józef Solorz
Meierhofstrasse 8
9495 Triesen

represented by:

## SCHURTI | PARTNERS

RECHTSANWÄLTE AG | ATTORNEYS AT LAW LTD

Zollstrasse 2 | 9490 Vaduz | Liechtenstein
Tel +41 44 244 2000 | mail@schurtipartners.com

(Appeal to the power of attorney granted pursuant to
Section 28 (2) ZPO [Code of Civil Procedure], Art. 8 (2)
RAG [Lawyers Act], Art 51 EO [Enforcement Code] in
conjunction with Section 28 (2) ZPO)

| [logo: Pitkowitz & Partners] | Signatories | Peter Machherndl |
| --- | --- | --- |
| | Date/Time-UC | 08-29-2024T15:31:41+02:00 |
| | Check information | Information on checking the electronic signature can be found at https://www.signaturpruefung.gv.at |
| Note | | This document with a qualified electronic signature has the same legal effect as a handwritten document in accordance with Article 25 (2) of Regulation (EU) No. 910/2014 of July 23, 2014 (EeIDAS-VO"). |

Pitkowitz & Partners Pitkowitz Foerster Rechtsanwälte
GmbH Schwarzenbergplatz 3, 1010 Vienna With
reference to the power of attorney granted pursuant to
Section 28 para. 2 ZPO

Schurti Partners Rechtsanwälte AG as authorized
representative pursuant to Art. 82 para. 1 RAG

DEFENDANTS:

1.  Solkomtel Foundation (FL-0002.419.785-2)
    c/o AF Fiduciary Establishment
    Kirchstrasse 12
    9490Vaduz

2.  Piotr Mateusz Żak
    ul. Ostrobramska 83 m. 1801A
    04-175 Warsaw
    Poland

3.  Aleksandra Jadwiga Żak
    9950 Toluca Lake Ave
    91602 North Hollywood, CA
    USA

4.  Tobias Markus Solorz
    Haldenweg 18
    9495 Triesen

WAY:

*Declaratory judgment, in the alternative, legal
structuring*

I. CLAIM
II. APPLICATION FOR AN OFFICIAL ORDER

5-fold
Exhibits according to list
Authorization to collect court fees from the deposit account 324

In the case referred to above, the plaintiff (hereinafter: "**Plaintiff**") has appointed and authorized Schurti Partners Rechtsanwälte AG, Zollstrasse 2, 9490 Vaduz, and Pitkowitz Foerster Rechtsanwälte GmbH, Schwarzenbergplatz 3, 1010 Vienna, to represent him. Schurti Partners Rechtsanwälte AG and Pitkowitz Foerster Rechtsanwälte GmbH refer to the power of attorney granted (Section 28 para. 2 ZPO; Art. 8 para. 2 RAG). Through his designated legal representatives, the Plaintiff raises the following

I. CLAIM

and explains as follows:

Executive Summary

- The Plaintiff is a successful entrepreneur who became known worldwide in the 1990s in particular through the establishment of the first private Polish television station ("**Polsat**") and the takeover of a mobile phone operator in 2011. He is one of the wealthiest people in Europe.

- The Plaintiff has structured the core of his assets – including the Polsat television station company – via the TiVi Foundation and the Solkomtel Foundation, two Liechtenstein foundations based in Vaduz. He is the sole founder and primary beneficiary of these foundations, while his three children are their secondary beneficiaries. At the time of the Plaintiff's death, they would enjoy significant control and beneficiary rights.

- In a long-planned "coup attempt", the children (the second, third and fourth Defendants) used the family gathering a few weeks ago on the occasion of the Plaintiff's 68th birthday and the short-term absence of his Attorney of Trust as an opportunity to induce the Plaintiff to sign several "declarations" on August 2, 2024 by fraudulent misrepresentation.

- Through these "declarations", the Plaintiff as founder would have himself legally "declared deceased" vis-à-vis his foundation, whereby the children could gain complete control over the foundation.

- This "self-exclusion of the founder" of August 2, 2024, which was obtained by the children through fraudulent misrepresentation, is null and void and legally ineffective.

- After these events, the founder exercised his right to amend the articles of association and issue a new declaration of death, returned to his former legal position and reinstated the previous articles of association (with one amendment).

2

- Nevertheless, the children continue to attempt to take control of the foundation on the basis of the articles of association in the ineffective version of August 2, 2024, in order to obtain its assets and exclude the Plaintiff as the sole founder from his statutory rights.

- It is therefore disputed between the parties which version of the articles of association is valid and upheld and which rights the Plaintiff is entitled to on the basis of the articles of association (and by-laws). The present proceedings are necessary to establish and finally settle this disputed legal relationship, as well as to secure the rights of the Plaintiff by means of a preliminary injunction, as otherwise there is a risk of the final and irretrievable loss of his legal position and the assets of the two foundations.

1.    Formalities

1.1.    Parties

1 The Plaintiff is the sole founder, sole trustee and primary beneficiary of the Solkomtel Foundation (hereinafter: **"Solkomtel"**, **"Foundation"**, or **"First Defendant"**).[1]

2 Solkomtel is a Liechtenstein foundation domiciled in Vaduz and filed with the Commercial Register of the Principality of Liechtenstein on March 12, 2013 under FL-0002.419.785-2. The members of the Foundation Board appointed in accordance with the confirmation of office dated August 22, 2024 are Philipp Ulrich Senn as Chairman of the Foundation Board (hereinafter: "**Chairman of the Foundation Board**"), and Jaroslaw Grzesiak, Katarzyna Tomczuk and Tomasz Szeląg as additional members of the Foundation Board. However, by resolution dated August 27, 2024, the founder dismissed the Chairman of the Foundation Board and Ms. Katarzyna Tomczuk and replaced them with other persons (see below).

3 The Plaintiff's children, Piotr Żak (hereinafter: "**Second Defendant**"), Aleksandra Żak (hereinafter: "**Third Defendant**") and Tobias Solorz (hereinafter: "**Fourth Defendant**") are secondary beneficiaries of the aforementioned foundations (all three in the following also: "**Secondary Beneficiaries**"). In addition to their position as mere beneficiaries, the Secondary Beneficiaries have further control and influence over the Foundation in the event of the Plaintiff's death.

    Evidence:

    −    Written statement of the Plaintiff
    -    Confirmations of office dated August 22, 2024 (Exhibit ./A)
    -    Articles of association of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./B)
    -    By-laws of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./C)
         Articles of association of the TiVi Foundation as amended on November 29, 2023 (Exhibit ./D)
    -    Bylaws of the TiVi Foundation as amended on November 29, 2023 (Exhibit ./E)

---

[1] He is also the founder of another foundation, the TiVi Foundation (hereinafter: "**TiVi**"), which, however, only plays a "secondary role" in the present proceedings (Solkomtel and TiVi are also referred to as **"foundations"** in the plural below).

3

### 1.2.    Objective of legal protection and interest in a declaratory judgment

4 The purpose of the present proceedings is to finally determine the (disputed) <u>legal bases of the First Defendant</u> (its articles of association) with binding and settling effect between all parties.

5 As a foundation, the First Defendant has a *"legal relationship"* within the meaning of section 234 of the ZPO with the Plaintiff as its founder, trustee and primary beneficiary, as well as with the Second, Third and Fourth Defendants as Secondary Beneficiaries.[2]

6 The objective of the main request for a declaratory judgment is the final clarification of the question as to which version of the Foundation's articles of association – and thus which legal relationship within the meaning of Section 234 ZPO between the parties to the dispute – is valid and legally effective.

7 The solution to this legal question will depend on whether i) the amendments to the articles of association fraudulently obtained by the Secondary Beneficiaries on August 2, 2024,[3] or ii) whether the (actually intended) second amendment to Solkomtel's articles of association by the Plaintiff on August 19, 2024 was effective in each case.[4] The same applies to whether the Plaintiff's later declaration of August 17, 2024 effectively replaced the declaration of death previously obtained by the Secondary Beneficiaries, so that (in any case) he is again entitled to the same rights as was the case before August 2, 2024.

8 The Persons and Companies Act (PGR) – just like the Austrian Private Foundation Act[5] – does not contain any provisions on how the invalidity of declarations of changes to a foundation and thus the (in)validity of a statute or by-laws of a foundation could be asserted. The Plaintiff also does not fail to recognize that casuistic decisions have been issued in the past (albeit in some cases a long time ago) in connection with the assertion of declaratory claims under foundation law[6], and that many "everyday disputes" are generally attributable to supervisory proceedings under foundation law.

9 However, the present case is not about an "everyday dispute" under supervisory law. Nor is this one of those cases in which a supervisory dispute was erroneously attempted to be settled in civil proceedings.[7]

---

[2] As the Supreme Court has already ruled on the assertion of the invalidity of statutes in contentious declaratory proceedings; see judgment of October 7, 2016, 08 CG.2009.407 (point 10.9.3.).
and, by legal necessity, the other declarations of the Plaintiff (obtained in this context).
[4] Cf. the leading decision of the Austrian Supreme Court of November 19, 2014, 3 Ob 120/14i on declaratory proceedings; this can be "adopted without hesitation" for Liechtenstein civil proceedings, according to Gasser in HB LieZPR marginal number 16.48.
[5] Cf. ÖOGH 3 Ob 120/14i, point 3.4.2. with reference *to Oberndorfer/Leitner*, ZfS 2010, 99 (101 ff).
[6] For the state of discussion, see for example Gasser in HB LieZPR marginal number 16.45.
[7] Such disputes therefore concerned the <u>decision-making of the Foundation Board</u> (see LES 2010, 359; 2012, 181., see Gasser, Liechtensteinisches Stiftungsrecht[2] Section 3 marginal number 10 with further examples), which is <u>not the subject of the proceedings here</u>. It is obvious that the supervisory requests cited there, with the legal protection objective sought in each case, regularly belonged in the non-contentious proceedings under foundation law, because the legal basis of the foundation (the validity of its articles of association) was/are completely clear in these cases.

4

10 Rather, the core of the present proceedings is the determination of the invalidity of the foundation statute in the version of August 2, 2024 (or, positively formulated: the validity of the version of August 19, 2024), i.e., the determination of the (disputed) legal relationship within the meaning of Section 234 ZPO, which all parties have in relation to the First Defendant.[8] Moreover, the Secondary Beneficiaries boast both to the Foundation and to the Plaintiff that they can exercise alleged "rights" on the basis of the legally invalid statute of 2 August 2024 (and that they are entitled to do so). August 2024 (and that the Plaintiff's rights have lapsed),[9] so that the Plaintiff's interest in a declaratory judgment (and thus necessarily the admissibility of the legal action in dispute) against the Second, Third and Fourth Defendants is also evident for this reason.[10]

11 The Austrian Supreme Court (ÖOGH) ruled in its leading decision of November 19, 2014 on GZ 3 Ob 120/14i that a current beneficiary (already) has a legal interest in establishing the legal invalidity of an additional foundation deed ("by-laws").[11] In this decision, the ÖOGH stated that there is a "legal relationship" between each current beneficiary and the private foundation that regulates the relationship between them (in the form of the by-laws). There is therefore no doubt whatsoever as to the interest in a declaratory judgment.[12] Nothing else can apply to the present proceedings:

12 The Liechtenstein Supreme Court also took up this decision – again in the context of the *contentious* civil proceedings in connection with the assertion of the invalidity of foundation documents – and referred to it several times in its reasoning, ultimately adopting its evaluations. The subject of this decision was (as in the present case) the underlying invalidity of the foundation deeds due to a root defect (in casu: Legal incapacity of the founder). Explicit reference is made to the legal relationship of the founder to the foundation and also of the beneficiaries to the private foundation, that they are *"in a legal relationship"* within the meaning of Section 234 ZPO [Code of Civil Procedure] and affirms the admissibility of the legal process.[14] The prevailing literature also agrees with this, according to which the evaluations of the Austrian leading decision on the required contentious declaratory process *"are to be adopted without hesitation"*.[15]

---

[8] As will be shown below, the version of the articles of association dated August 2, 2024 is legally invalid due to an evident root defect (error or fraudulent intent).

[9] See, for example, the legal letters from the Third and Fourth Defendants dated August 20, 2024 (Exhibits ./X and ./Y).

[10] A legal interest of the Plaintiff is (also) given if the claim of the opponent – as here – leads to a threat to his legal position (see ÖOGH 1 Ob 542/92; RS0038968 [T5]).

[11] 3 Ob 120/14i = RIS-Justiz RS0129909 (published SZ 2014/107).

[12] Confirming the literature, see Frauenberger-Pfeiler in Fasching/Konecny[3] III/1 Section 228 ZPO marginal number 99; GesRZ 2015, 138.

[13] Cf. judgment of the Supreme Court of October 7, 2016, 08 CG.2009.407 [point 10.9.3.]

[14] The only dispute was whether to formulate a request for the establishment of rights or a request for a declaratory judgment.

[15] Gasser in HB LieZPR marginal number 16.48.

5

13 In addition, in the present proceedings the Plaintiff is not ("merely") a beneficiary, but the founder of the First Defendant. The Second Defendants are also entitled to significant founder-like control rights (which come into force after the death of the founder) in accordance with the articles of association or by-laws. Section 234 ZPO regarding the First Defendant, there can therefore be no doubt. It would also not be sufficient to ("only") sue for injunctive relief, because a request for injunctive relief alone could never fully exhaust the Plaintiff's claim for a declaratory judgment and lead to the final satisfaction and settlement of the legal relationship in dispute.[17]

14 The present action for a declaratory judgment is therefore the only effective (and procedurally correct) means of creating final legal clarity and a binding settlement effect between the parties to the dispute on the issue at hand, as the Supreme Court has already ruled on the assertion of the invalidity of foundation deeds.[18]

1.3.    Responsibility

15 The First Defendant has its registered office (and thus its general place of jurisdiction anyway) in Liechtenstein (Sections 30, 36 JN).

16 Pursuant to Art. 15 of the First Defendant's articles of association, all disputes between the Foundation and its members (including in particular the beneficiaries) are finally settled by the competent ordinary courts of the Principality of Liechtenstein. There is therefore a jurisdiction agreement (Section 53 (1) JN).

17 Furthermore, the defendants are also *"in community in law"* within the meaning of Section 11 no. 1 ZPO with regard to the subject matter of the dispute (the request for a declaratory judgment and also the contingent request for the shaping of law), so that the place of jurisdiction of the co-dispute partners also applies (Section 46 para. 1 JN).[19]

18 Finally, the place of jurisdiction is also the location of the property (Section 50 JN), especially since actions for declaratory judgment and actions for the shaping of rights with regard to ("mere") rights also justify this and the right – derived from the First Defendant – or the legal relationship between the parties to the dispute is located in Austria due to the registered office of the foundation.[20] The Princely Court of Justice therefore has jurisdiction in any case pursuant to Sections 30, 36, 46 (1), 50 (1) and 53 (1) JN.

---

[16] Cf. only Art. 6 para. 3 let. a of the articles of association.

[17] cf Frauenberger-Pfeiler in Fasching/Konecny[3] III/1 Section 228 ZPO marginal number 111; in casu, a mere request for an injunction would – moreover – lead to an intolerable legal protection deficit, because the Plaintiff would be required to address all conceivable violations of the Secondary Beneficiaries under the statutes and by-laws by means of a prohibition request, which would be inconceivable due to the endless number of possible violations.

[18] Cf. judgment of the Supreme Court of October 7, 2016, 08 CG.2009.407 [point 10.9.3.]

[19] Legal community is synonymous with *"being in a legal relationship with each other"* (see for example Auer in Höllwerth/Ziehensack ZPO Section 11 marginal number 10), in this respect also affirmative judgment, 08 CG.2009.407 (point 10.9.3.).

[20] The scope of application of Section 50 JN is not limited to tangible property because "the subject matter of the dispute also includes rights." It can therefore also be used for declaratory judgment actions if – as in this case – the alleged right or legal relationship is located within the jurisdiction of the court seized. It does not matter who is in possession of the subject matter of the dispute, it could even be in the hands of third parties or the Plaintiff himself (Simotta in Fasching/Konecny[3] Section 99 JN marginal note 77; Braun in *Höllwerth/Ziehensack*, ZPO Section 99 JN marginal note 13).

Evidence:
- − Official confirmation dated August 22, 2024 (Exhibit ./A)
- − Articles of association of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./B)

2.    Facts of the case

2.1.    The statutory rights of the Plaintiff, which are at the heart of the present proceedings

19 For a better understanding of the events described below, it should be noted in advance that the Plaintiff is entitled to significant founder, trustee and (primary) beneficiary rights under Solkomtel's articles of association – which were last in force in the version dated June 15, 2023 prior to the period at issue here. To safeguard his position as sole founder, he has also reserved the right to amend the articles of association and by-laws.

20 The rights of the founder are reserved in the foundation deeds, including, for example:

- the right to issue a by-law or several regulations and to determine the beneficiaries (Art. 5 para. 1 and para. 2 of the articles of association);

- the right to appoint or dismiss members of the Foundation Board (Art. 6 para. 2 let. a of the articles of association);

- the right to be the sole trustee of the Foundation, in this function to supervise the Foundation Board members, to have his proposals implemented by them, to make all resolutions of the Foundation Board dependent on his approval as trustee and to inspect all foundation documents (see Art. 9. Para. 1 of the articles of association, item B.III. and item B.IV. sub 1) of the by-laws);

- the right to amend the declaration of foundation, the articles of association and the by-laws during his lifetime (Art. 13 para. 2 point 1. of the articles of association), etc.

21 According to the provisions of the articles of association, the Secondary Beneficiaries are to enjoy the control and beneficiary rights described in more detail there after the death of the founder.[21]

---

[21] Cf. for example Art. 6 para. 3 let. a of the articles of association and point II of the by-laws of the First Defendant.

22 Art. 13 para. 2 point 2. of the articles of association also provides for the possibility that the founder may make a declaration to the Foundation during his lifetime (which may be replaced at any time), as a result of which the provisions of the articles of association that would come into force on the date of his death (**"Declaration of Death"**) shall apply from a date chosen by him.

Evidence:
- Articles of association of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./B)
- By-laws of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./C)
- Articles of association of the TiVi Foundation as amended on November 29, 2023 (Exhibit ./D)
- Bylaws of the TiVi Foundation as amended on November 29, 2023 (Exhibit ./E)

23 In the recent past, the Secondary Beneficiaries have planned to disempower the Plaintiff as the sole founder and primary beneficiary, to gain control over the First Defendant and to attempt to deprive him of these rights.

2.2.    The attempt to disempower the Plaintiff by the Secondary Beneficiaries

24 At the end of July 2024, the Secondary Beneficiaries met the Plaintiff in Warsaw to celebrate his 68th birthday. On July 31, 2024, a meeting took place at the Raffles Hotel in Warsaw between the Plaintiff, his lawyer Jerzy Modrzejewski (hereinafter: **"Attorney of Trust"**) and the Secondary Beneficiaries. The subject of this discussion was the drawing up of the Plaintiff's will, whereby the Secondary Beneficiaries learned (among other things) on the basis of these discussions that they would receive the statutory inheritance quota and that the Plaintiff's wife – the stepmother of the Secondary Beneficiaries, whom they had treated with aversion and hostility all their lives – would be appointed as co-heiress, meaning that the Secondary Beneficiaries and the Plaintiff's wife would each be appointed as heirs in equal shares. The Secondary Beneficiaries also learned that the Attorney of Trust would be appointed as executor of the will. With regard to the last two points, the Plaintiff's children expressed their concerns and were very angry about this. In the end, the Plaintiff changed the person of the executor of the will, but his wife remained unchanged as an heir in the will.

25 This meeting at the Raffles Hotel focused almost exclusively on the Plaintiff's last will and testament. The Solkomtel and the Plaintiff's second foundation (the TiVi Foundation) were not the focus of attention, although the Secondary Beneficiaries also exerted pressure on the Plaintiff with regard to the assets of these foundations and the control rights to which the Plaintiff was entitled under the articles of association.

26 The Third and Fourth Defendants informed the Plaintiff in the trusting – albeit tense – family atmosphere that it was urgently necessary in the "interests of the family and the foundations" to make a number of (unspecified) "changes" to the foundations in order to "safeguard" the foundations in the event of the Plaintiff's death. Both emphasized and assured the Plaintiff that they would approach him with concrete text proposals so that they could then discuss them in peace. The Secondary Beneficiaries, in particular the Third Defendant, always expressly emphasized to the Plaintiff that this "protection" would respect his rights as founder and beneficiary and would of course not deprive him of them.

The Plaintiff had previously always made it clear to the Secondary Beneficiaries that he wished to retain control over all his companies (i.e., also with regard to the foundations) and did not wish to relinquish any rights. The specific changes that the Secondary Beneficiaries had in mind were not communicated by them in the days leading up to August 2, 2024. Rather, the Plaintiff's Attorney of Trust, the Plaintiff himself and the Secondary Beneficiaries agreed that any proposals still had to be examined and discussed in detail.

Evidence:
- Written statement of the Plaintiff
- Affidavit of the Plaintiff dated August 24, 2024 (Exhibit ./F)
- Affidavit of Jerzy Modrzejewski dated August 24, 2024 (Exhibit ./G)
- Affidavit of Justyna Kulka dated August 24, 2024 (Exhibit ./H)

27 The following day, on August 1, 2024, another meeting took place at the Plaintiff's offices, in which the Plaintiff's testamentary disposition was again the subject of discussion. Once again, there were no specific proposals by the Secondary Beneficiaries regarding the "changes" they wished to make to the foundations, including the First Defendant, which were allegedly in the "interests of the family and the foundations". The appointment was terminated because the Plaintiff (together with his children) left for a medical appointment immediately afterwards.

28 During this conversation, the Plaintiff's Attorney of Trust informed the Secondary Beneficiaries that he would be going on vacation the next day, August 2, 2024, but that he could stay on site to discuss the situation of the foundations. However, the Secondary Beneficiaries, including in particular the Third Defendant, informed him that this was not necessary, as they still had "plenty of time" for the necessary discussions and everything could be discussed after the return of the Attorney of Trust after August 17, 2024.

29 The Third Defendant also informed the Attorney of Trust that she would be in Warsaw between August 19 and 26, 2024 anyway and that this time was "completely sufficient" for discussions.

30 After this appointment, the Secondary Beneficiaries again assured the Plaintiff that they would send him a list of proposals relating to various property matters, including the foundations. The Plaintiff then wanted to pass this on to the Attorney of Trust so that he could seek advice. On the evening of August 1, 2024, the Secondary Beneficiaries gave the Plaintiff the impression – which later turned out to be deliberately incorrect – that there was no hurry, as all property matters would still be the subject of consultations and discussions.

Evidence:
- Written statement of the Plaintiff
- Affidavit of the Plaintiff dated August 24, 2024 (Exhibit ./F)
- Affidavit of Jerzy Modrzejewski dated August 24, 2024 (Exhibit ./G)
- Affidavit of Justyna Kulka dated August 24, 2024 (Exhibit ./H)

31 The next day, August 2, 2024, the Plaintiff arrived at the headquarters of his company (Telewizja Polsat) around noon. At around 2:15 p.m., the Plaintiff went to the office of his son, the Fourth Defendant in this case, where the Secondary Beneficiaries were surprisingly already waiting with the notary Dariusz Wierzchucki. It turned out that the Secondary Beneficiaries had already prepared declarations with regard to both of the Plaintiff's foundations (including the First Defendant). The Secondary Beneficiaries then put the Plaintiff under massive pressure and insistently demanded that he sign them immediately and without further consultation with his advisors.

32 The Secondary Beneficiaries deliberately and untruthfully claimed to the Plaintiff that he would "lose nothing" by signing the deeds, that "it was good for him and for both foundations" and that "the aim was to secure the existence of the foundations after his death". The Plaintiff had never seen the submitted declarations before. He also did not have the opportunity to read through them at his leisure, nor was he able to compare the proposed amendments to the articles of association of the two foundations with their previous content, as the articles of association were not available in their current version and were not made available to him.

33 The Plaintiff was not aware of the content of the provisions in the articles of association. The only provision that was quoted in the prepared amendment declarations according to the wording, namely Art. 13 (2) point 3), misleadingly mentioned precisely his founder's rights. As a result, the Secondary Beneficiaries, as the responsible drafters of the deed, deliberately gave the Plaintiff the incorrect impression that his rights would be "secured" – in particular due to their express untruthful assurances and assurances that he would not lose his rights. In fact, the opposite was the case.

34 Rather, the Secondary Beneficiaries used the absence of the Attorney of Trust and their untruthful statements to deliberately mislead the Plaintiff. They incorrectly claimed to the Plaintiff that these declarations were only "purely technical changes" to the functioning of the foundations in order to "secure" the existence of the foundations after his death. Under no circumstances did the Secondary Beneficiaries ever even mention that the Plaintiff's rights would be infringed during his lifetime or that his rights would even be extinguished now.

35 <u>However, the well-considered and legally crafted formulations were no mere coincidence: As the responsible drafters of the deed, the Secondary Beneficiaries had to know exactly which changes they had submitted to the Plaintiff and thus foisted on him. They deliberately gave the Plaintiff the incorrect impression and reinforced his misconception that he believed that he was merely making "technical changes" relating to the time after his death.</u>

10

217

36 The "declarations" contained in the deeds with reference to Art. 13 (2) 2 of the articles of association were presented to the Plaintiff in this context as part of the "package of measures" required to secure the foundations after his death. However, in the case of Solkomtel, it was precisely the submission of the declaration pursuant to Art. 13 (2) 2 of the articles of association that led to an immediate and significant reduction in the Plaintiff's rights. However, it was never even hinted to the Plaintiff that his rights could already be curtailed or interfered with. On the contrary, the Plaintiff has always clearly communicated to the Secondary Beneficiaries that he wishes to retain control over the foundations and does not wish to relinquish any rights.

37 After the Secondary Beneficiaries – contrary to their assurance – had not sent the proposals to the Plaintiff in advance, the latter attempted to obtain clarification in the pressure situation. He went with the notary to the back of the Fourth Defendant's office because it was obvious that the notary – without having the articles of association in front of him – could not understand what changes were to be made here and was therefore never able to inform the Plaintiff of the possible legal consequences (and therefore did not inform him).

38 The notary then called the Attorney of Trust via loudspeaker mode and informed the Attorney of Trust that he was calling on behalf of the Plaintiff who was present with him. When the notary began to read out the deed to the Attorney of Trust, the latter interrupted him and informed him, understandably, that he needed to have the entire articles of association in front of him in order to be able to compare the amendments. Suddenly, the Third Defendant appeared in the background and asked the Plaintiff and the notary to end the conversation immediately, as there was no time and no need to discuss the changes. The conversation was then broken off.

    Evidence:
-    -    Written statement of the Plaintiff
-    -    Affidavit of the Plaintiff dated August 24, 2024 (Exhibit ./F)
-    -    Affidavit of Jerzy Modrzejewski dated August 24, 2024 (Exhibit ./G)

39 Under (untruthful) assurances and promises (but without further explanations regarding the content and legal consequences of the prepared declarations), the Plaintiff was then induced by the Secondary Beneficiaries to sign the declarations. The Secondary Beneficiaries always asserted that the Plaintiff had "nothing to fear" and nothing to worry about, as his position in the foundations would not change and he would retain his rights as before. In fact, however, the Secondary Beneficiaries meticulously prepared the documents – probably with prior legal advice – that they needed for the incriminated takeover of control of the Foundation and to disempower the Plaintiff.

40 In the family-based trust in the accuracy of the information provided by the Secondary Beneficiaries and on the basis of the deceptive acts committed by them, according to which the appointment before the notary was allegedly merely a formally necessary "safeguarding" of the Foundation's interest after the Plaintiff's death, the Plaintiff finally made the following declarations:

- The declaration on the amendment of the articles of association of Solkomtel, under which the signatures were notarized by Dariusz Wierzchucki, notary public in Warsaw, on deed A no. 6219/2024 ("**Solkomtel Amendment Declaration**"). These amendments – without a comparative version of the articles of association – gave the Plaintiff the incorrect impression that they were aimed at "securing" certain rights of influence (to which the founder was already entitled as a trustee anyway) with regard to personnel decisions or encumbrances and disposals of foundation assets in favor of the founder.[22] In fact, these amendments were initially only intended to conceal the subsequent fraudulent declaration of the founder's death by giving the Plaintiff the (incorrect) impression that he would thereby secure his rights until his death. Ultimately, the purpose of this declaration of amendment was also to conceal the incriminated Declaration of Death of the Plaintiff, which was also fraudulent uno actu, with the appearance of an actual decision of the Plaintiff's will, which never existed.

- The declaration on the amendment of the articles of association of TiVi, under which the signatures were notarized by Dariusz Wierzchucki, notary public in Warsaw, on deed A no. 6223/2024 ("**TiVi Amendment Declaration**").

- The declaration "Resolution by circulation" pursuant to Article 7 of the articles of association of Solkomtel, under which the signatures were notarized by Dariusz Wierzchucki, notary public in Warsaw, on deed A no. 6227/2024 ("**Solkomtel Declaration of Trustees**"). This Solkomtel Declaration of Trustees was intended to give the Foundation Board "carte blanche" to implement the changes in Solkomtel, as resolutions of the Foundation Board made without the Plaintiff's consent are "invalid" according to point IV of the by-laws.

- The declaration "Resolution by circulation" pursuant to Article 7 of TiVi's articles of association, under which the signatures were notarized by Dariusz Wierzchucki, notary public in Warsaw, on deed A no. 6228/2024 ("**TiVi Declaration of Trustees**").

---

[22] Cf. the declaration of August 2, 2024 (Exhibit ./I), according to which point 3. was added to Art. 13 and the founder's consent to the points mentioned would be "mandatory"; in fact, this was already the case before (cf. point IV. of the by-laws regarding his rights of influence as a trustee).

- The declaration pursuant to Article 13 (2) 2 of the articles of association of Solkomtel, notarized by Dariusz Wierzchucki, notary public in Warsaw, under deed A no. 6229/2024 ("**Solkomtel Declaration of Death**"). This declaration was intended to put into effect a declaration of death – as is comparatively relevant here – with regard to Solkomtel, namely that those provisions of the articles of association should be applied which would otherwise only come into force from the date of the Plaintiff's death (cf. para. 22 above).

- The declaration pursuant to Article 13 (2) 2. (i) the articles of association of TiVi, notarized by Dariusz Wierzchucki, notary public in Warsaw, under deed A no. 6235/2024 ("**TiVi Declaration of Death**").

Evidence:
- Written statement of the Plaintiff
- Affidavit of the Plaintiff dated August 24, 2024 (Exhibit ./F)
- Affidavit of Jerzy Modrzejewski dated August 24, 2024 (Exhibit ./G)
- Solkomtel Declaration of Amendment dated August 2, 2024 (Exhibit ./I)
- TiVi Declaration of Amendment dated August 2, 2024 (Exhibit ./J)
- Solkomtel Declaration of Trustees dated August 2, 2024 (Exhibit ./K)
- TiVi Declaration of Trustees dated August 2, 2024 (Exhibit ./L)
- Solkomtel Declaration of Death dated August 2, 2024 (Exhibit ./M)
- TiVi Declaration of Death TiVi dated August 2, 2024 (Exhibit ./N)

2.3.    Overview of the Plaintiff's "self-exclusion" (fraudulently attempted by the Secondary Beneficiaries)

41  The Secondary Beneficiaries attempted to induce the Plaintiff to **"self-exclude from Solkomtel"** through the fraudulent declarations (although all these steps were <u>ineffective</u>):

1.  As a <u>first step</u>, the Plaintiff should have amended the articles of association of the First Defendant by means of the Solkomtel Declaration of Amendment to the effect that a new Art. 13 section (2) point 3 is added, which defines the legal consequences and the rights of the Plaintiff in the event of a declaration of death. The chosen wording incorrectly led him to believe that he was "securing" his rights (in fact, he was already entitled to these rights as a trustee).

2.  As a <u>second step</u>, the Plaintiff should have issued a "blank check" to the Foundation Board through the Solkomtel Declaration of Trustees to be able and allowed to implement the aforementioned amendments to the articles of association.

3.  As a <u>third step</u>, the Plaintiff would then have declared himself deceased – from a legal point of view – with his Solkomtel Declaration of Death vis-à-vis his own Foundation, so that those provisions of the articles of association would apply which would otherwise only come into force from the date of his death.

13

220

42 These declarations did not correspond to the true will of the Plaintiff and were fraudulently obtained by the Secondary Beneficiaries. The Plaintiff had neither the intention to bring about an amendment to the statutes of the respective foundation in this sense, nor to submit a declaration of death for one of the two foundations.

Evidence:
- Written statement of the Plaintiff
- Affidavit of the Plaintiff dated August 24, 2024 (Exhibit ./F)
- Affidavit of Jerzy Modrzejewski dated August 24, 2024 (Exhibit ./G)
- Affidavit of Justyna Kulka dated August 24, 2024 (Exhibit ./H)
- Solkomtel Declaration of Amendment dated August 2, 2024 (Exhibit ./I)
- Solkomtel Declaration of Death dated August 2, 2024 (Exhibit ./M)

2.4.    Standstill agreement and failed talks on an agreement

43 After receiving a copy of these declarations in the late evening of August 2, 2024, the Plaintiff discussed them and the extent of the changes made with the Attorney of Trust. This analysis showed that the Plaintiff had been deprived of a number of rights and that his legal position had deteriorated significantly – contrary to the assurances of the Secondary Beneficiaries that nothing would change.

44 On August 3, 2024, there was another meeting between the Plaintiff and the Secondary Beneficiaries and the Attorney of Trust, at which the Secondary Beneficiaries were not prepared to recognize the declarations of August 2, 2024 as invalid. However, the Plaintiff and the Secondary Beneficiaries concluded a (notarized) agreement according to which (i) the declarations of August 2, 2024 are suspended until August 16, 2024 and (ii) no actions may be taken on the basis of these declarations. Instead, an attempt should be made to find an amicable solution by August 16, 2024 (**"Standstill Agreement"**). However, the talks broke down on August 12, 2024.

Evidence:
- Written statement of the Plaintiff
- Affidavit of the Plaintiff dated August 24, 2024 (Exhibit ./F)
- Affidavit of Jerzy Modrzejewski dated August 24, 2024 (Exhibit ./G)
- Standstill Agreement dated August 3, 2024 (Exhibit ./O)

2.5.    Action for avoidance dated August 13, 2024

45 In view of the failed talks about an agreement with the Secondary Beneficiaries and out of fear of unlawful acts, the Plaintiff signed a declaration (in Polish and German) in Warsaw on August 13, 2024 that he was induced to make the incriminated declarations of August 2, 2024 by fraudulent misrepresentation and that they are therefore void, defective and in any case ineffective.

46 The declaration dated August 13, 2024 was handed over in person on the same day to Tomasz Szeląg, member of the Foundation Board, who confirmed receipt of the declaration on August 13, 2024 in his own name and on behalf of the Foundation.

47 In addition, the declaration of August 13, 2024 was sent to the other members of the Foundation Board and the Secondary Beneficiaries on the same day (Philipp Senn was personally handed the declaration of August 13, 2024 by Tomasz Szeląg on August 14, 2024).

Evidence:
- Written statement of the Plaintiff
- Affidavit of the Plaintiff dated August 24, 2024 (Exhibit ./F)
- Affidavit of Jerzy Modrzejewski dated August 24, 2024 (Exhibit ./G)
- (Rescission) declaration of the Plaintiff dated August 13, 2024, including confirmation of receipt from Tomasz Szeląg (Exhibit ./P)

2.6.    Unlawful dismissal and appointment attempt by the Secondary Beneficiaries

48 Only one day later – thus as a direct reaction to the Plaintiff's declaration of avoidance of August 13, 2024 – the Second Defendant sent two e-mails dated August 14, 2024 to the Foundation's Foundation Board members Tomasz Szeląg and Jaroslaw Grzesiak (together with the Third Defendant). August 2024 to the Foundation Board members Tomasz Szeląg and Jaroslaw Grzesiak (together with the Third Defendant), the Second Defendant attempted to "dismiss" the two aforementioned Foundation Board members on the basis of the fraudulent (ineffective) declarations and instead appoint himself and a confidante of the Third Defendant, Zofia Jedrzejewska, as Foundation Board members.

49 On August 14, 2024, the Chairman of the Foundation Board, Philipp Senn, received declarations from the Second Defendant and the Third Defendant stating that they had made the following personnel changes to the Foundation Board (in violation of the Standstill Agreement of August 3, 2024 and the applicant's declaration of August 13, 2024):

(i) The Second Defendant removed Tomasz Szeląg as a member of the Foundation Board and appointed himself in his place.

(ii) The Third Defendant dismissed Jaroslaw Grzesiak as a member of the Foundation Board and appointed her confidante Zofia Jedrzejewska in his place.

Evidence:
- E-mails of the Second Defendant regarding the (ineffective) "dismissal" of Tomasz Szeląg and Jaroslaw Grzesiak dated August 14 and ineffective "appointment" and "acceptance declarations" of the Second Defendant and Zofia Jedrzejewska dated August 14, 2024 (Exhibit ./Q)

50 The Second and Third Defendants did not consult with the Plaintiff before taking these (ineffective) personnel measures, nor did the Plaintiff give his consent (as trustee). The dismissals and appointments were also communicated solely by e-mail, which violates Article 6 (6) of the articles of association, according to which dismissals or appointments of members of the Foundation Board must be made in writing and electronic mail is expressly prohibited.

Evidence:
- Written statement of the Plaintiff
- E-mails of the Second Defendant regarding the (ineffective) "dismissal" of Tomasz Szeląg and Jaroslaw Grzesiak dated August 14 and ineffective "appointment" and "acceptance declarations" of the Second Defendant and Zofia Jedrzejewska dated August 14, 2024 (Exhibit ./Q)

2.7.    New submission of the Solkomtel Declaration of Death on August 17, 2024

51 By declaration dated Saturday, August 17, 2024, the Plaintiff replaced his Solkomtel Declaration of Death to the First Defendant pursuant to Article 13 (2) 2 of the articles of association with a new declaration: (at the latest) this rendered the Solkomtel Declaration of Death dated August 2, 2024 irrelevant. In detail:

52 Article 13 (2) 2 of Solkomtel's articles of association contains a right to resubmit and replace a declaration in accordance with Article 13 (2) 2 at any time:

> *"During his lifetime, the founder has the right to decree, by submitting a declaration of intent in the form of a notarial deed, that from a date specified by him he rejects the application of the provisions of the articles of association and the by-laws as they are applied during his lifetime and that in their place provisions are to be applied which come into force from the date of his death or in the event of complete and permanent incapacity to act. The founder has the right to make the said declaration several times, whereby he is in no way bound by the content of his previous declarations when making a further declaration."*

Evidence:
  -    Articles of association of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./B)

53 Accordingly, the Plaintiff submitted the following declaration on August 17, 2024:

> *"Mr. Zygmunt Józef Solorz thus declares that he **replaces** his **previous declaration pursuant to Article 13 (2) 2 of the articles of association, made on August 2, 2024** and notarized by Dariusz Wierzchucki, notary public in Warsaw, under deed A No. 6229/2024 and No. 6230/2024, respectively, in accordance with Article 13 (2) 2 of the Foundation's articles of association **with the following new declaration pursuant to Article 13 (2) 2 of the articles of association:***
>
> ***The founder, Zygmunt Jozef Solorz, declares that, in accordance with Article 13 (2) 2 of the Foundation's articles of association, he waives the application of the provisions of the Foundation's articles of association and by-laws in force during his lifetime from January 1, 2035 (January 1, two thousand and thirty-five), and orders the application of the provisions in force at the time of the founder's death from January 1, 2035 (January 1, two thousand and thirty-five)."*** (emphasis added).

54 The Plaintiff has thus ensured that his founder rights are not curtailed now (as they should have been according to the Solkomtel Declaration of Death on August 2, 2024), but that the provisions of the articles of association that would come into force on the day of his death will only come into force from January 1, 2035.

55 In this context, the Plaintiff also stated that

- on August 2, 2024 in Warsaw, he was induced by the Secondary Beneficiaries of the Foundation through (among other things, fraudulent) deception to submit a declaration pursuant to Article 13 (2) 2 of the articles of association (Solkomtel Declaration of Death). Even if he considers this declaration to be ineffective and null and void, he would also like to take formal countermeasures to avoid misunderstandings; and

- he, as the founder, has the right pursuant to Article 13 (2) 2 of the Foundation's articles of association to submit a new declaration pursuant to Article 13 (2) 2 of the articles of association (Declaration of Death) at any time.

56 This declaration by the applicant dated August 17, 2024 was notarized by the Austrian notary Alexander Winkler under GZ 1558.

Evidence:
- Articles of association of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./B)
- Declaration of the Plaintiff regarding the resubmission of the Solkomtel Declaration of Death dated August 17, 2024 (Exhibit ./R)

2.8.    Warning letter to the Secondary Beneficiaries and members of the Foundation Board dated August 17, 2024

57 Likewise, on Saturday, August 17, 2024, a total of seven "warning letters" were sent to (i) the three Secondary Beneficiaries and (ii) the four members of the Foundation Board at the time (Philipp Senn, Jaroslaw Grzesiak, Katarzyna Tomczuk and Tomasz Szelag) of the First Defendant in order to safeguard the rights of the Plaintiff and to inform them of the true events and the new Declaration of Death.

58 The Plaintiff's letters of August 17, 2024 <u>to the members of the Foundation Board</u> contained a request to refrain from exercising the rights of the Foundation Board and/or from taking any action in the Foundation (unless this was absolutely necessary to fulfill legal obligations). In particular, the Foundation Board members were requested (i) to refrain from actions that would imply that the Plaintiff's statements of August 2, 2024 were legally effective and (ii) not to recognize the dismissal of existing Foundation Board members or the appointment of new Foundation Board members or to cooperate with allegedly newly appointed Foundation Board members.

59 The Plaintiff's letters of August 17, 2024 <u>to the Secondary Beneficiaries</u> contained

- a request not to exercise, claim or otherwise invoke any alleged (actually non-existent) rights in the capacity of secondary beneficiary that would (only) exist if the Plaintiff's declarations of August 2, 2024 were legally effective, and in particular not to declare the dismissal of existing Foundation Board members or the appointment of new Foundation Board members, and
-
- a notification of the planned amendment to TiVi's articles of association.

17

224

60 The letters first explained that on August 2, 2024, the Plaintiff was deliberately and intentionally induced by the three Secondary Beneficiaries (including fraudulently) to make the declarations of August 2, 2024 (these declarations were explained in more detail) and that these did not correspond to the true will of the Plaintiff. Furthermore, that the Plaintiff was not aware of the content of the declarations at the time he signed them and that he neither intended to bring about an amendment to the articles of association of the respective foundation nor to make a declaration pursuant to Article 13 (2) 2 of the articles of association of Solkomtel.

61 The letters also contained information about

- the Plaintiff's (avoidance) declaration of August 13, 2024 regarding the invalidity of the declarations of August 2, 2024 (this was also attached to the letters);

- the Second Defendant's e-mails of August 14, 2024, including a declaration that the dismissal of the Foundation Board members declared by the Second Defendant was legally invalid and that the two Foundation Board members are therefore (still) in office; and

- the resubmission of the declaration pursuant to Article 13 (2) 2 of the articles of association on August 17, 2024 (this new Declaration of Death was also attached to the letters).

62 In addition, the letters stated for information purposes that the Plaintiff

- for reasons of prudence, will make use of his (unlimited) right of amendment granted in the articles of association and reverse all amendments declared on August 2, 2024 (in the disputed event that these should have produced legal effects after all), so that the articles of association (again) read as they did before August 2, 2024;

- expressly refuses (also for the future) to consent to any legal acts or other dispositions or measures affecting the Foundation until an express declaration to the contrary has been made.

63 Finally, the Plaintiff stated in the letters that he has all (unlimited) founder rights (as granted to him in the articles of association and by-laws in the version prior to August 2, 2024).

Evidence:
- Volume of warning letters to the Secondary Beneficiaries and to the Foundation Board as well as to the Chairman of the Foundation Board dated August 17, 2024 (enclosure ./S)

2.9.  Reactions to the warning letters of August 17, 2024

64 The members of the Foundation Board Tomasz Szeląg (on August 18, 2024) and Jaroslaw Grzesiak (on August 20, 2024) confirmed receipt of the warning letters dated August 17, 2024 and that they will comply with the request to refrain from exercising the rights of the Foundation Board in the foundations.

<u>Evidence:</u>
- E-mail dated August 18, 2024 regarding the acknowledgment of receipt of the letter dated August 17, 2024 from Tomasz Szeląg (Exhibit ./T)
- Letter dated August 20, 2024 regarding the acknowledgment of receipt of the letter dated August 17, 2024 from Jaroslaw Grzesiak (Exhibit ./U)

65 At a meeting with the Plaintiff's legal representatives on August 20, 2024, the Chairman of the Foundation Board, Philipp Senn, claimed that he had not received the e-mail with the warning letter of August 17, 2024 (although an automatic confirmation of transmission to his e-mail address was available). For the sake of good order, the warning letter dated August 17, 2024 was sent to Philipp Senn again by e-mail on August 21, 2024; the information letter to the Secondary Beneficiaries dated August 18, 2024 (see point 2.10 below) was also attached to this letter. Philipp Senn has confirmed receipt of this message.

<u>Evidence:</u>
- E-mail to Philipp Senn dated August 21, 2024 including read receipt (Exhibit ./V)

66 Foundation Board member Katarzyna Tomczuk did not respond to the warning letter of August 17, 2024; however, an automatic confirmation of transmission to her e-mail address has been received.

<u>Evidence:</u>
- Volume of warning letters to the Secondary Beneficiaries and to the Foundation Board as well as to the Chairman of the Foundation Board dated August 17, 2024 (read confirmation from Katarzyna Tomczuk in enclosure ./S)

67 On August 18, 2024, the Plaintiff (or his legal representative) received an e-mail from the Fourth Defendant's Polish lawyer Paweł Rymarz (from the Polish law firm Rymarz Zdort Maruta) confirming receipt of the warning letter of August 17, 2024. Otherwise, the content of the warning letter dated August 17, 2024 was comprehensively disputed. On August 20, 2024, the Fourth Defendant (through his lawyer Paweł Rymarz) again disputed the Plaintiff's legal position (in particular, he disputed that the Plaintiff had a right to amend the articles of association).

<u>Evidence:</u>
- E-mail from attorney Paweł Rymarz dated August 18, 2024 (Exhibit ./W)
- Letter from attorney Paweł Rymarz and Krzysztof Sajchta dated August 20, 2024 (Exhibit ./X)

68 On August 20, 2024, the Plaintiff (or his legal representative) received a letter from the Third Defendant, from the Liechtenstein lawyer Bernhard Motal (from the Liechtenstein law firm Gasser Partner Rechtsanwälte), confirming receipt of the warning letter of August 17, 2024. Otherwise, the content of the warning letter dated August 17, 2024 was comprehensively disputed.

<u>Evidence:</u>
- Letter from attorney Bernhard Motal dated August 20, 2024 (Exhibit ./Y)

69 The Second Defendant did not respond to the letter of August 17, 2024; however, there is an automatic confirmation of transmission to his e-mail address.

<u>Evidence:</u>
- Volume of warning letters to the Secondary Beneficiaries and to the Foundation Board as well as to the Chairman of the Foundation Board dated August 17, 2024 (read confirmation of the Second Defendant in Exhibit ./S)

19

2.10.    Amendment of the articles of association

70 On Sunday, August 18, 2024, the Secondary Beneficiaries were informed in advance that the Plaintiff would make use of his (unlimited) right of amendment granted in the articles of association to protect the Foundation and would amend Article 5 of the articles of association by inserting a new paragraph 5 (**"forfeiture clause"**), which would read as follows:

> *"(5) Anyone (with the exception of the founder) who*
>
> *(i) challenges the Foundation as such, its establishment or existence, its statutes, by-laws, regulations, financial circumstances, decisions (whether of a fiduciary or managerial nature), or allocations of assets, to whomever they may have been made, in whole or in part before a domestic or foreign authority or court, or damages the Foundation financially or in its reputation, or*
>
> *(ii) challenges legal acts of the founder, in whole or in part, before a domestic or foreign authority or a court or damages the founder financially or in his reputation,*
>
> *loses his beneficiary rights. In this case, all benefits (or other rights) to which the beneficiary would have been entitled shall be distributed pro rata among the other beneficiaries of the Foundation in accordance with their respective rights to the Foundation.*
>
> *The trustee may, at his discretion, reinstate such excluded persons in whole or in part, with ex tunc or ex nunc effect, if this person definitely withdraws the application for avoidance or terminates the damage."*

71 The letter also contained an English translation of this Article 5 (5) of the articles of association.

   <u>Evidence:</u>
   - Letter to the Secondary Beneficiaries on the forthcoming (re)amendment of the articles of association and inclusion of a sunset clause dated August 18, 2024 (Exhibit ./Z)

72 On Monday, <u>August 19, 2024</u>, the Plaintiff <u>effectively brought</u> the <u>articles of association</u> in question <u>into force</u> on that date by means of notarial deeds.

73 This is because Article 13 (2) 1. of the articles of association contains a right to amend the articles of association as follows:

> *"During his lifetime, the founder has the right to amend the foundation declaration, the articles of association, the by-laws and any letter of wishes issued by the founder."*

   <u>Evidence:</u>
   - Articles of association of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./B)

74 The wording of this provision has also remained unchanged by the declarations of August 2, 2024.

20

227

75 By declaration and resolution dated 19 August 2024, the Plaintiff confirmed the articles of association in the version dated June 15, 2023 in accordance with Article 13 (2) 1 second sentence of the Foundation's articles of association and supplemented Article 5 by inserting a new paragraph 5 (forfeiture clause) as quoted above.

76 With the exception of the addition of the aforementioned forfeiture clause (Article 5 (5)), the current version of the Foundation's articles of association corresponds to the version last amended and brought into force by the Plaintiff with the declaration of June 15, 2023, certified by the court on June 20, 2023 at the Princely Court of Justice Vaduz by the notary Ms. Beatrix Maier. The forfeiture clause was introduced in order to protect the foundation and its assets from unjustified attacks and damage in the long term.

77 The amendment to the Foundation's articles of association dated August 19, 2024 was notarized by the Austrian notary Alexander Winkler under GZ 1562.

Evidence:
- Articles of association of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./B) Notarial deed dated August 19, 2024 on the amendment of the Articles of association of Solkomtel (GZ 1562) (Exhibit ./AA)

2.11.    The Chairman of the Foundation Board does not fulfill his duties and refuses to grant access

78 On August 20, 2024, a meeting took place between the legal representatives of the Plaintiff and the Chairman of the Foundation Board, Philipp Senn, at the latter's premises at Kirchstrasse 12. In his capacity as Chairman of the Foundation Board, he was personally presented with the originals of the notarial deed regarding the Plaintiff's declarations of August 19, 2024, which essentially reversed the amendments of August 2, 2024; the Chairman of the Foundation Board also received the original of the new Declaration of Death by the Plaintiff dated August 17, 2024 (notarial deed).

79 By August 20, 2024 at the latest, the Chairman of the Foundation Board would therefore have had the duty to inform the beneficiaries immediately of the changes in accordance with Article 13 (5) of the articles of association and to submit a written declaration confirming delivery of the request for change and acknowledgment of the content of the change. He has not yet fulfilled this obligation.

Evidence:
- Articles of association of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./B)
- Letter to Philipp Senn dated August 20, 2024 including acceptance confirmation (Exhibit ./BB)
- Confirmation of acceptance of the original documents from Philipp Senn dated August 20, 2024 (Exhibit ./CC)

80 The legal situation was discussed with the Chairman of the Foundation Board, as was the imminent danger that the Secondary Beneficiaries would unlawfully attempt to take control of the Foundation. At the meeting, Philipp Senn announced that he would not be taking any action on behalf of the foundations at present due to the contradictory statements currently available from various parties. He also stated that it was not clear to him who was currently on the Foundation Board. As it now turned out, this was an outright falsehood:

81 In an e-mail dated August 21, 2024 at 3:59 p.m., Philipp Senn was requested to grant the Plaintiff, as trustee, access to the Foundation documents and information.[23] The Chairman of the Foundation Board attempted to postpone this appointment until the following week with his reply email dated August 22, 2024, 8:02 a.m. The Plaintiff's representatives immediately replied that, due to the urgency of the matter, it would not be possible to wait until the coming week and that a meeting could be held on the same day or at the weekend. Alternatively, access to the foundation files could also be obtained together with Luca Castellazzi (hereinafter: "**Mr. Castellazzi**"), a member of the management of AF Trustees AG (Philipp Senn's employer), was proposed by the Plaintiff's representatives. Mr. Castellazzi agreed to this procedure; the inspection of the foundation files took place on 23 August 2024 at the premises of AF Trustees AG.

Evidence:
- E-mail correspondence between Philipp Senn and the Plaintiff's representatives dated August 21 and 22, 2024 (Exhibit ./DD)

82 At this meeting, the Plaintiff's representatives learned the following:

83 At this meeting, Mr. Castellazzi and another employee, Jacqueline Thoele (hereinafter referred to as Jacqueline Thoele), "**Mrs. Thoele**"), were present on behalf of AF Trustees AG The latter is responsible for handling the transactions and correspondence of the First Defendant on behalf of AF Trustees AG.

84 First of all, it was discussed with Mr. Castellazzi in what form the Foundation documents would be stored, especially as no physical documents other than a small folder were presented. Mr. Castellazzi then stated that the documents are usually scanned and stored electronically.

85 After a brief review of the few physically presented documents, the Plaintiff's representatives were also granted access to parts of the existing electronic data on a laptop. The inspection took place in such a way that the laptop was connected to a large screen and the electronically available media were searched in an overview. Mr. Castellazzi promised that the Plaintiff's representatives could receive an electronic copy of the data (which, due to technical difficulties, could not be done immediately on Friday afternoon during the inspection, but only on the following Monday).

---

[23] Article 9 (1) of TiVi's articles of association, see Exhibit ./B.

86 However, unusually, no e-mail traffic was evident in the entire electronic data. When asked by the Plaintiffs' representatives, Mr. Castellazzi stated that (foundation-related) e-mail traffic was not stored separately, but simply remained in the e-mail program.

87 Since this e-mail correspondence concerns documents relevant to the Foundation, which must (already) be submitted to the Plaintiff as trustee pursuant to Article 9 of the articles of association, Mr. Castellazzi initially agreed that it would also be possible to search for documents relevant to the Foundation in e-mail inboxes. However, the inbox of the Chairman of the Foundation Board, Philipp Senn, was not available to him and only Ms. Thoele's inbox could be inspected.

88 A cursory review of Ms. Thoele's e-mails revealed that she had created separate folder and subfolder structures for the Plaintiff's foundations. The subfolders were labeled "Amendment of the Articles of Association", "Changes to the members of the Foundation Board", "Powers of attorney" and "Walch", among others. With one exception, these e-mails were printed out and handed to the Plaintiff's representatives:

89 The exception concerned an apparently internal e-mail from the Chairman of the Foundation Board to the employees of AF Trustees AG, in which the Chairman of the Foundation Board stated that he would revoke the power of attorney on behalf of the TiVi Foundation vis-à-vis the Plaintiff's Attorney of Trust. This content was recognizable from the preview function activated during the inspection even without opening the e-mail. Mr. Castellazzi vehemently refused to open or hand over this e-mail, as he wanted to speak to the Chairman of the Foundation Board first.

90 When asked, Mr. Castellazzi stated that the reason for the refusal was that the e-mail message contained an (older) e-mail from the Second Defendant dated August 22, 2024 to Philipp Senn, in which the member of the Foundation Board, Ms. Katarzyna Tomczuk, had also been placed in "cc". Mr. Castellazzi did not want to disclose this e-mail without the prior consent of Philipp Senn. In view of the disclosed content of the (not fully disclosed) e-mail and the conduct of Mr. Castellazzi, it is clear that the Second Defendant previously contacted the Chairman of the Foundation Board directly by e-mail dated August 22, 2024 and requested the revocation of powers of attorney (to represent TiVi). It is thus evident that the Chairman of the Foundation Board, in breach of his fiduciary duties, takes the actions requested of him by the Second Defendant at the mere instigation of the Second Defendant.

Evidence:
- Articles of association of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./B)
- Affidavit of attorney Peter Machherndl dated August 25, 2024 (Exhibit ./EE)

23

230

91 To make matters worse, two days earlier, on August 20, 2024, the Second Defendant resigned his "function" (which was never effective anyway) as a supposed "member of the Foundation Board" vis-à-vis the First Defendant. Or, to put it another way: There was not the slightest reason and even less a legal basis for the Chairman of the Foundation Board to accept recommendations for action from the Second Defendant ex parte and bypassing the Plaintiff and to implement them immediately. <u>On the same day, August 22, 2024, the Chairman of the Foundation Board complied with the Second Defendant's request and revoked powers of attorney (to represent TiVi) vis-à-vis the Plaintiff's Attorney of Trust.</u>

<u>Evidence:</u>
- Resignation of the Second Defendant as a member of the Foundation Board including e-mail to Philipp Senn dated August 20, 2024 (Exhibit ./FF)
- Volume of proxy revocations including e-mails dated August 22, 2024 (Exhibit ./GG)

92 As if that were not enough, the Chairman of the Foundation Board also called the Office of Justice and obtained "legal information" as to whether the entry in the commercial register of recorded foundations had declarative or constitutive effect.

93 The broad assertions made by the Chairman of the Foundation Board on August 20, 2024, according to which it was "unclear" to him who was a member of the Foundation Board and that he would <u>not take any action</u> for the Foundation at present due to the contradictory statements currently available from various parties, were therefore outright falsehoods.

94 Not least for this reason, the Plaintiff's representatives insisted that they also be given access to foundation-related correspondence in the e-mail inbox of the Chairman of the Foundation Board. They informed Mr. Castellazzi that an employee would come by the office next Monday, August 26, 2024, to conduct this inspection. Mr. Castellazzi said that he would pass this on to Philipp Senn, the Chairman of the Foundation Board, and ask him about this.

95 In an e-mail dated <u>Friday, August 23, 2024, 5:14 p.m.</u>, the Chairman of the Foundation Board informed the Plaintiff's representative of the following:

> *"Dear Mr. Ott*
> *My email account is not available to the trustee. This means that you or your deputies can save yourself a visit on Monday morning. Starting next week, your inquiries will be answered by a lawyer.*
> *Kind regards,*
> *Philipp Senn"*

<u>Evidence:</u>
- E-mail from Philipp Senn dated August 23, 2024 (Exhibit ./HH)

24

96 This says everything about the "role" of the Chairman of the Foundation Board, Philipp Senn. Overall, by August 26, 2024, he had committed the <u>following (known) acts and violations</u> that demonstrate the concrete risk that he was involved in the plans of the Secondary Beneficiaries as a mere recipient and implementer of their will and thus violated his duties as Chairman of the Foundation Board and the articles of association (of TiVi, which are essentially the same as those of Solkomtel):

- Philipp Senn told the untruth during the meeting on August 20, 2024, according to which he would not "currently" take any action on behalf of the foundations; rather, only two days later, within a few hours, he took precisely those legal actions on behalf of the TiVi Foundation that the Second Defendant wanted, at the mere request of the Second Defendant (and contrary to the express statements of the founder, in particular the warning letter from his legal representatives of August 17, 2024).

- In violation of Article 13 (5) of the articles of association, Philipp Senn did not submit a written declaration confirming the service of the request for amendment and acknowledgment of the content of the Plaintiff's amendment dated August 19, 2024.

- Philipp Senn refuses to grant the trustee access to the foundation documents in violation of Article 9 (1) of the articles of association.

- Philipp Senn revoked (in the case of the TiVi Foundation) powers of attorney vis-à-vis the Attorney of Trust and vis-à-vis Tomasz Szeląg, the other member of the Foundation Board, in violation of Article 9 (1) of the articles of association in conjunction with Item IV. of the by-laws (in each case of the TiVi Foundation), although there can be <u>no effective resolution of the Foundation Board</u> for this (there was no meeting of the Foundation Board with a corresponding resolution, there was no unanimous resolution by circular letter and no consent was obtained from the Plaintiff in his function as a trustee).

<u>Evidence:</u>
- Written statement of the Plaintiff
- Articles of association of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./B)
- By-laws of the Solkomtel Foundation as amended on June 15, 2023 (Exhibit ./C)
- Articles of association of the TiVi Foundation as amended on November 29, 2023 (Exhibit ./D)
- By-laws of the TiVi Foundation as amended on November 29, 2023 (Exhibit ./E)
- Volume of proxy revocations including e-mails dated August 22, 2024 (Exhibit ./GG)
- Affidavit of Thomas Szeląg dated August 25, 2024 (Exhibit ./II)

2.12.    The recent events surrounding the (former) Chairman of the Foundation Board Philipp Senn make it all the more necessary to issue an official order immediately

97 Each of the reasons listed above with regard to the Chairman of the Foundation Board in itself makes it necessary to issue an official order as a matter of urgency. In addition, events involving the (previous) Chairman of the Foundation Board have come to a head in the recent past, so that the <u>urgency</u> of issuing an official order is all the more apparent for the following additional reasons (see point II below).

98 With regard to TiVi, the Plaintiff filed the action and an application for an official order on August 26, 2024, which is similar to the present action in terms of the legal protection objective sought. However, as the Plaintiff has now learned, the (previous) Chairman of the Foundation Board of the First Defendant, Mr. Philipp Senn, has in fact attempted to obtain <u>incorrect entries</u> from the Commercial Register Department of the Office of Justice:

99 In a letter dated **August 26, 2024** – i.e., long after the meeting on August 20, 2024 and thus <u>in full knowledge of the pending legal dispute</u> between the Plaintiff and the Secondary Beneficiaries – the Chairman of the Foundation Board submitted his notice of change dated August 14, 2024 to the Office of Justice, Commercial Register Department, for execution and requested the issuance of an "official confirmation pursuant to Art. 552 Section 20 para. 4 PGR". The Chairman of the Foundation Board, who shortly beforehand had declared at length that he did not want to take any action on behalf of the foundation because (for him) it was "unclear" who was entitled to which rights, has obviously taken sides with the interests of the Secondary Beneficiaries and is now apparently attempting together with them to obtain any entries in the commercial register on the basis of the <u>ineffective</u> "Declaration of Death".

100 The Chairman of the Foundation Board has thus also left any area of objective management – bound by the articles of association and the resolutions – with regard to the First Defendant in this case. To make matters worse, the (previous) Chairman of the Foundation Board had just been presented with the original documents of the founder dated August 19, 2024 a few days earlier, with which he i) initially replaced his (previously fraudulent) Declaration of Death with a new one, and ii) had just (provisionally) reappointed Jaroslaw Grzesiak as a member of the Foundation Board and confirmed him in his office.

101    <u>The Chairman of the Foundation Board is attempting to thwart this decision, which is undoubtedly effective, by creating a fait accompli, in that he wants to have the person expressly confirmed by the founder and effectively (re)appointed on August 19, 2024 deleted from the commercial register.</u>

102 It follows from this that the Chairman of the Foundation Board appears to be of the untenable opinion, also with regard to Solkomtel, that it is he who could assess the effectiveness of the articles of association and present the founder and plaintiff with a fait accompli.

103 In order to safeguard the welfare and interests of the First Defendant, the Plaintiff had to react to this and removed the Chairman of the Foundation Board from office with immediate effect by resolution of August 26, 2024, passed on the evening of that day.

<u>Evidence:</u>

- Notice of amendment by the (former) Chairman of the Foundation Board together with letter dated August 26, 2024 (Exhibit ./LL)
- Resolution of the Plaintiff on the dismissal of the Chairman of the Foundation Board and Ms. Tomczuk and the appointment of a new Chairman of the Foundation Board as well as a new member of the Foundation Board (Exhibit ./MM)

3.    Legal explanations

104 The core of the proceedings is the request for a declaratory judgment under point 1), which is aimed at the validity of the articles of association in the version dated August 19, 2024 and the continued existence of the Plaintiff's founder's rights as regulated in the articles of association (and by-laws). This is justified for the following two reasons:

105 Firstly, because the declarations of August 2, 2024, which were fraudulently made by the Secondary Beneficiaries and which, as is known, amounted to the amendment of the articles of association and the submission of the Declaration of Death, are legally invalid due to fraudulent intent and error (see point 3.2 in detail). In this case, the Plaintiff effectively exercised his right to amend the articles of association with the subsequent declaration of August 19, 2024 and the articles of association entered into force in this version[24]. If one therefore correctly affirms the invalidity of the Plaintiff's actions of August 2, 2024 due to fraudulent intent and error, the subsequent question of whether the subsequent declaration of amendment was effective or not does not arise, of course, because there was never such an effective declaration by the Plaintiff.

106 However, even if the fraudulent declarations were (initially) legally effective (quod non), the legal outcome of the effectiveness of the articles of association of August 19, 2024 does not change: By his declaration of August 17, 2024[25] to the Foundation, the Plaintiff "brought himself back to life" in that the provisions of the articles of association, which are only to apply after his death, from January 1, 2035 (and not already now). He has thus currently returned to the legal position he held before the incriminated statements of August 2, 2024.

107 On August 19, 2024 – i.e., even if the fraudulent declarations of August 2, 2024 had been effective (which is expressly disputed) – the Plaintiff exercised his right to submit a new Declaration of Death pursuant to Art. 13 para. 2 point 2. (thereby replacing the previous declaration of death dated August 2, 2024) – and then effectively exercised his right of amendment pursuant to Art. 13 para. 2 point 1 of the articles of association.

---

[24] Cf. enclosure ./AA (notarial deed dated August 19, 2024).
[25] Exhibit ./R Declaration of the Plaintiff regarding the resubmission of the Solkomtel Declaration of Death dated August 17, 2024.

27

3.1.    In any case, the new Declaration of Death was effective

108 According to Art. 13 para. 2 point 2, the founder has the right during his lifetime to decree, by submitting a declaration of intent in the form of a notarial deed, that from a date specified by him he rejects the application of the provisions of the articles of association and the by-laws as they are applied during his lifetime and that in their place provisions are to be applied which come into force from the date of his death or in the event of complete and permanent incapacity to act. The founder has the right to make the said declaration several times, whereby he is in no way bound by the content of his previous declarations when making a further declaration.

109 Foundation documents (articles of association, by-laws or regulations) are to be interpreted as unilateral declarations of intent that do not require receipt in accordance with the principle of intent. In accordance with the principle of Section 655 of the Austrian Civil Code (ABGB), which applies to all testamentary dispositions (corresponds to Section 655 of the Austrian Civil Code, which has since been repealed), this interpretation must first and foremost be based on the ordinary meaning of the words, whereby the entire content of the articles of association and by-laws must be considered in their overall context. In this respect, the wording of a testamentary disposition or, in the case to be judged by the Princely Supreme Court, the articles of association of the foundation complained of there, justifies conclusions that can be drawn from it even when interpreted according to the principle of intent.[26]

110 The wording of Art. 13 para. 2 point 2 already makes it clear that the founder wanted to reserve the right to make the Declaration of Death several times and not to be bound by the content of previous declarations when making a further declaration. This leads to the only permissible conclusion that the founder should be able to replace or amend his Declaration of Death in any direction, in particular by postponing the trigger date (as happened in this case to January 1, 2035).

111 A reading or interpretation according to which this right to make a further Declaration of Death should also expire with the declaration of death would run counter to the meaning and purpose of this right to make a new declaration, indeed would even reduce it to absurdity. It can therefore only be concluded from the overall context that the right to make a further Declaration of Death should not lapse as a result of an earlier Declaration of Death.

112 Against this background, there can be no doubt that the founder was able to submit the new Declaration of Death on August 17, 2024 with legal effect and that his rights, as defined in the articles of association and the by-laws, were in any case "revived" as a result.

---

[26] OGH 5.2.2010, 4 CG 2008.14 = LES 2010, 239.

28

113 It is therefore irrelevant whether the Plaintiff's declarations of August 2, 2024, which were previously obtained from the Secondary Beneficiaries, were absolutely null and void, "merely" contestable or at most – which is disputed – effective, because in any case the new submission of the Declaration of Death with postponement of the application of the death provisions (and subsequently also the entry into force of the articles of association of August 19, 2024) was legally effective.

114 No matter how you look at it: The articles of association entered into force in the version dated August 19, 2024, so that the main request for a declaratory judgment must be granted for this reason alone.

3.2.    The amendments to the articles of association dated August 2, 2024 are invalid

115 As will be shown below, the declarations made on August 2, 2024 are legally invalid. On the one hand, the Plaintiff was subject to an error when making these declarations; on the other hand, or in addition, this error was fraudulently induced by the Second to Fourth Defendants by deceiving the Plaintiff about the true content of the declarations of August 2, 2024, which were pre-formulated for him.

116 As the founder's declarations of August 2, 2024 are unilateral declarations without an actual counterparty (who could be responsible for an error or deception), Liechtenstein law applies the provisions on the avoidance of wills, which provide for extended rights of avoidance.[27]

3.2.1.    Action for avoidance due to error

117 The Plaintiff was subject to a material error of declaration when submitting the declarations on August 2, 2024: The true intention of the Plaintiff was to retain his control over Solkomtel and not to interfere with his current rights as founder. The content of the declarations of August 2, 2024 is in blatant contradiction with this intention, as they would ultimately significantly impair the Plaintiff's legal position or significantly restrict his rights in relation to the Foundation with immediate effect. The Second to Fourth defendants suggested to the Plaintiff that these changes were necessary to maintain and secure the foundations. In particular, the Solkomtel Declaration of Death was presented to the Plaintiff as part of the "package of measures" required to secure the foundations after his death. In reality, however, this has led to an immediate and significant reduction in the Plaintiff's rights.

---

[27] Heiss in Heiss/Lorenz/Schauer, Commentary on Liechtenstein Foundation Law, Art 552 Section 38 para. 48.

118 In addition, the submission of the declarations on August 2, 2024 with regard to the Solkomtel Foundation should not be viewed in isolation: On August 2, 2024, the Second to Fourth Defendants submitted the declarations relating to the Solkomtel Foundation together with further declarations (also relating to another foundation of the Plaintiff, the TiVi Foundation) (in total, these were at least 17 declarations, which can be seen from the consecutive numbers of the notarial file, see marginal number 40). The simultaneous submission of a large number of declarations was apparently intended to make it impossible or at least significantly more difficult for the Plaintiff to grasp the full scope of these declarations. In addition, it was also not possible for the Plaintiff to recognize the true meaning and consequences of the declarations made on the basis of the signed documents, because no (consolidated) version of the articles of association (including the newly adopted amendments) was attached and the Plaintiff did not receive any explanations in this regard. It is evident that the Plaintiff was (intentionally) misled by the misleading assurances of the Second to Fourth defendants and this mode of signing (see para. 24 et seq.).

119 The Plaintiff obviously had a concrete, substantially different idea of the content of his declarations and what legal consequences they would have. He was convinced (not least due to the assurances given by the Second to Fourth Defendants) that he would thus retain his rights as founder unchanged. This constitutes a classic declaratory error.

> Evidence:
> - Written statement of the Plaintiff
> - Affidavit of the Plaintiff dated August 24, 2024 (Exhibit ./F)
> - Affidavit of Jerzy Modrzejewski dated August 24, 2024 (Exhibit ./G)
> - Affidavit of Justyna Kulka dated August 24, 2024 (Exhibit ./H)

120 Declaratory error generally refers to a discrepancy between declaration and intention: The declarant objectively declares something other than what he intended to declare.[28] The objective meaning of the declaration does not correspond to the true intention of the declarant.[29]

---

[28] Pletzer in Kletečka/Schauer, ABGB-ON[1]-[03] Section 871 marginal number 7 with reference to Welser/Kletečka, Bürgerliches Recht I[15] marginal number 471; Riedler in Schwimann/Kodek Section 871 marginal number 8; Gschnitzer in Klang IV/1[2] 116; ÖOGH 3 Ob 564/94 = SZ 68/35; 4 Ob 107/99 k = ÖBA 1999/835

[29] Pletzer in Kletečka/Schauer, ABGB-ON[1]-[03] Section 871 marginal number 7 with reference to Rummel in Rummel/Lukas[4] Section 871 marginal number 7; Riedler in Schwimann/Kodek Section 871 marginal number 8; F. Bydlinski, FS Stoll 113 (118).

121 By signing a document, the text covered by the signature generally becomes the content of the declaration; this also applies if the signatory has not read the document or has not understood it.[30] If the content of the document differs from the signatory's idea, a distinction is made: If the signatory had a concrete, deviating idea of its content, e.g., if he assumed that the document contained what had been agreed orally (differently), this constitutes a declaratory error.[31]

122 Moreover, the error was <u>induced or adequately caused</u> by the Second to Fourth Defendants[32], in that they presented the prefabricated declarations to the Plaintiff and urged him to sign them. On this basis alone, it is clear that their reliance on the validity of the declaration is not worthy of protection

123 In addition, the Plaintiff's error should also have <u>been obvious to </u>the Second to Fourth Defendants, since they were fully aware of the content of the declarations and the deviation from the Plaintiff's stated intention would therefore have been easy for them to recognize.

124 Ultimately, the error can also be qualified as having been clarified in good time, as no legal or economic dispositions have yet been made in reliance on the declaration, particularly not at the level of Solkomtel (res integra).[34]

125 The Solkomtel Foundation Board members, above all Mr. Tomasz Szeląg, were informed of the Plaintiff's error in a letter dated August 13, 2024. Prior to that, to the Plaintiff's knowledge, the members of the Foundation Board did not make any relevant dispositions in reliance on the Plaintiff's statements of August 2, 2024. Moreover, the Foundation Board has not yet taken the further steps required for the technical implementation of the Plaintiff's (invalid) declarations of August 2, 2024.

---

[30] Pletzer in Kletečka/Schauer, ABGB-ON[1]-[03] Section 871 marginal number 10 with reference to RIS-Justiz RS0014893; RS0014753 and others from Austrian case law.

[31] Pletzer in Kletečka/Schauer, ABGB-ON[1]-[03] Section 871 marginal number 10 with reference to ÖOGH 1 Ob 857/53 JBl 1954, 335; 2 Ob 216/69 JBl 1970, 313; 7 Ob 639/85 = SZ 58/183; 1 Ob 551/94 JBl 1995, 48; 2 Ob 112/00 k = ÖBA 2002/1023 (Iro); 3 Ob 194/10s = Zak 2011/95; 10 Ob 35/17 w; RIS-Justiz RS0014753.

[32] OGH 10.02.2012, 01 CG.2009.62 = LES 2012, 76 Leitsatz 1b; see also Pletzer in Kletečka/Schauer, ABGB-ON[1]-[03] Section 871 marginal number 44 with additional evidence.

[33] Pletzer in Kletečka/Schauer, ABGB-ON[1]-[03] Section 871 marginal number 390 with reference to P. Bydlinski, Bürgerliches Recht AT[8] marginal number 8/17; Rummel in Rummel/Lukas[4] Section 871 marginal number 1; Gschnitzer in Klang IV/1[2] 128.

[34] Pletzer in Kletečka/Schauer, ABGB-ON[1]-[03] Section 871 marginal number 53 with reference to ÖOGH 2 Ob 216/69 = SZ 42/121; 8 Ob 158/70 = SZ 43/123 (no consequences yet); 7 Ob 246/74 = SZ 47/148; 7 Ob 682/86 = wbl 1987, 62; Gschnitzer in Klang IV/1[2] 133.

126 The Second to Fourth Defendants even concluded an agreement with the Plaintiff according to which the Plaintiff's declarations of August 2, 2024 are suspended until August 16, 2024 and no action will be taken on the basis of these declarations. The actions taken by the Second and Third Defendants in breach of this agreement (concerning the dismissal and reappointment of Foundation Board members) are therefore in no way worthy of protection. Moreover, these are invalid in any case because the written form required by the articles of association was not complied with (the relevant declarations were only sent to the Chairman of the Foundation Board by e-mail, which is expressly excluded by the articles of association in Article 6 para. 6). And even if one wanted to assume that the resolutions adopted by the Second and Third Defendants in the meantime were effective and opposed to this, it should be pointed out that very minor damage to confidence with regard to the existence of res integra must be disregarded.[35] Finally, no entries (worthy of protection) have yet been made in the commercial register (and in any case not executed). In addition, the Plaintiff is seeking compensation for this loss of trust (redintegration).[36]

127 Ultimately, the present error also proves to be material, since the Plaintiff would not have made the declarations in this way if he had known their actual meaning.[37]

128 The declarations of August 2, 2024 can and are therefore hereby contested due to a material error in the declaration.

3.2.2.  Action for avoidance due to fraudulent intent

129 In addition to the asserted error, the Plaintiff also bases his claim on fraudulent inducement of his error by the Second to Fourth Defendants.

130 The applicable avoidance provisions for wills allow for avoidance on the grounds of deception irrespective of who caused the deception (Section 565 ABGB).[38] The deception by the children is therefore suitable for contesting the declarations pursuant to Section 870 (1) ABGB.

---

[35] Pletzer in Kletečka/Schauer, ABGB-ON[1]-[03] Section 871 marginal number 53 with reference to F. Bydlinski, Privatautonomie und objektive Grundlagen des verpflichtenden Rechtsgeschäfts (1967) 180; Rummel in Rummel/Lukas[4] Section 871 marginal number 26; Riedler in Schwimann/Kodek[5] Section 871 marginal number 30.

[36] Welser, Erbrechts-Kommentar Section 570 ABGB marginal number 2; Pletzer in Kletečka/Schauer, ABGB-ON Section 871 marginal number 55; Heiss in Heiss/Lorenz/Schauer, Kommentar zum liechtensteinischem Stiftungsrecht, Art 552 Section 38 marginal number 48.

[37] Pletzer in Kletečka/Schauer, ABGB-ON[1]-[03] Section 871 marginal number 58 with reference to ÖOGH 1 Ob 27, 28/89 JBl 1990, 321; 2 Ob 642/90 = ecolex 1991, 318 (Wilhelm); 2 Ob 131/97x = RdW 1997, 715; 4 Ob 11/13 s EvBl 2013/133 (Brenn); 2 Ob 78/15 g.

[38] Heiss in Heiss/Lorenz/Schauer, Kommentar zum liechtensteinischem Stiftungsrecht, Art 552 Section 38 marginal number 48; Mondel/Knechtel in Kletečka/Schauer, ABGB-ON[1]-[05] Section 565 marginal number 11.

239

131 Cunning is unlawful, intentional deception.[9] Dolus eventualis is sufficient, i.e., that the deceiver seriously believes the error of the other party to be possible and accepts it.[40] Furthermore, the deceiver must have positive knowledge of the error of the other party and of the fact that the error has an influence on the formation of the other party's will, i.e., is causal.[41]

132 Fraudulent conduct within the meaning of Section 870 ABGB can even lie in a (non-)disclosure if one party is under a misapprehension and the other party would have been obliged to provide information, but instead deliberately exploits the misapprehension. Such a deception is relevant if it was causal for a legal transaction. An obligation to provide information does not have to be specifically standardized in a law. It is to be affirmed whether one party to the contract could expect a corresponding clarification according to the principles of fair dealing.[42]

133 This is the case here, as the Second to Fourth Defendants were aware of the content and scope of the declarations and also of the fact that the Plaintiff did not wish to lose his rights as founder. It was therefore clear to them that the Plaintiff was mistaken. By urging the Plaintiff to sign the declarations on August 2, 2024 by exploiting the family-based trust, they caused the Plaintiff to make this mistake and deliberately took advantage of it. To avoid repetition, reference is made to marginal numbers 117-118 above.

134 The declarations of August 2, 2024 can and are therefore hereby also contested on the grounds of fraudulent intent. The amendments to the articles of association adopted on this basis and the declaration of death are legally invalid.

---

[39] Pletzer in Kletečka/Schauer, ABGB-ON[1-03] Section 870 marginal number 7 with reference to öOGH 6 Ob 257/08z = ecolex 2009/106; 3 Ob 111/09h JBl 2010, 180; 9 Ob 89/09t EvBl 2011/17; 6 Ob 42/11m; 1 Ob 85/11y; 3 Ob 47/16g = EvBl 2017/37 (Brenn) = ÖBA 2016/2269 (Zöchling-Jud); 8 Ob 91/17s = JusGuide 2017/38/16094; 6 Ob 244/17a = ecolex 2018/229.

[40] Pletzer in Kletečka/Schauer, ABGB-ON[1-03] Section 870 marginal number 7 with reference to Riedler in Schwimann/Kodek Section 870 marginal number 3; Rummel in Rummel/Lukas[4] Section 870 marginal number 3; Bollenberger in KBB[4] Section 870 marginal number 1; Koziol-Welser/Kletečka, Bürgerliches Recht I[14] marginal number 523 in FN 168; Lukas, ecolex 2012, 548 with regard to the intention to mislead; ÖOGH 3 Ob 520/94 = RdW 1996, 59; 3 Ob 559/95 = SZ 68/152; 3 Ob 563/95 JBl 1996, 174; 1 Ob 617/95 ÖBA 1996/547; 10 Ob 2066/96p = immolex 1997/159; 4 Ob 113/01y; 10 Ob 74/05p = ÖBA 2006/1332; 3 Ob 20/07y; 7 Ob 70/12p; 2 Ob 161/17s; 5 Ob 70/16d = wobl 2017/9; 2 Ob 161/17s; 6 Ob 244/17 a ecolex 2018/229; RIS-Justiz RS0014837.

[41] Pletzer in Kletečka/Schauer, ABGB-ON[1-03] Section 870 marginal number 7 with reference to öOGH Ob 635/95 = HS XXVI/8; 1 Ob 617/95 = ÖBA 1996/547; 2 Ob 382/97h = EFSlg 87.272; 8 ObA 58/01i = ARD 5333/12/2002; 10 Ob 74/05p = ÖBA 2006/1332; 2 Ob 161/17 s; 7 Ob 119/17a; RIS-Justiz RS0014765; Gschnitzer in Klang IV/1[2] 110.

[42] OGH 02.05.2002, 01 CG.363/99-28 = LES 2003, 41-Leitsatz 1b, see also Pletzer in Kletečka/Schauer, ABGB-ON[1-03] Section 870 marginal number 5 with reference to ÖOGH 3 Ob 23/13 y = ecolex 2014/5 (List); RIS-Justiz RS0014795.

3.3.    The Plaintiff's right of amendment in Art. 13 is not affected by the Declaration of Death

135 However, even if one were to incorrectly assume – and there is not the slightest indication of this – that both a) the fraudulent declarations of August 2, 2024 were effective and b) the new submission of the Declaration of Death on August 17, 2024 was ineffective, this would not lead to a different result:

136 It is undisputed that the Plaintiff's right to amend the articles of association in Art. 13 para. 2 point 1. was not affected by the incriminated "declarations" of August 2, 2024. According to the wording of the provision alone, a change is possible as long as the founder is alive ("during his lifetime"). Unlike other provisions of the articles of association, this is not a provision that is to come into force "after the death" of the Plaintiff (cf. Art. 6 of the articles of association), which is, however, the aim of the Declaration of Death. Moreover, there is no provision to replace this provision (in the event of death), as is the case with other provisions (see Art. 6 para. 3 let. b of the articles of association). In addition, the articles of association make a meticulous distinction between i) rights that arise during lifetime and expire with the official declaration of death, i.e., the actual death of the Plaintiff, and ii) rights that the founder can (revocably) waive with the Declaration of Death. For example, Art. 6 of the articles of association expressly distinguishes between these two variants (see Art. 6 para. 3 let. a: "From the date of death *[…], or from the date specified by the founder in the declaration referred to in Art. 13 (2) 2 of the articles of association […]).* "During his lifetime" within the meaning of Art. 13 can therefore only be understood, if the statutes are interpreted in accordance with the system, as meaning that this right can only expire upon the actual death of the founder (and proof of this by means of an official document in the sense of a death certificate, cf. for example Art. 13 para. 4 let. a).

137 Finally, according to the express wording of the articles of association, the Declaration of Death was not intended to apply "forever" in any case, especially since the Plaintiff reserved the right to make a different declaration at any time.

138 If the wording is interpreted systematically and in accordance with the founder's intention, Art. 13 para. 2 point 1. in conjunction with the Declaration of Death can only be understood in such a way that the Plaintiff's right of amendment remains in force even if he sends a Declaration of Death to the Foundation.

139 Even in this case, the changes made by the Plaintiff on August 19, 2024 would therefore be effective and the main request for a declaratory judgment would be granted.

4.      Applications

For all these reasons, the following is therefore proposed

**JUDGMENT:**

1 It is established with effect between the parties that

    a.  the articles of association of Solkomtel Foundation, FL-0002.419.785-2, as amended by the notarial deed dated August 19, 2024, recorded and notarized by notary Mag. Alexander Winkler, notary public with his official seat in 1180 Vienna, Weimarer Straße 5, to GZ 1562, according to enclosure ./AA, which forms an integral part of this judgment, are upright and legally effective;

    b.  the Plaintiff vis-à-vis the First Defendant, all rights granted to him as founder, first beneficiary or trustee in the articles of association in the version of the notarial deed of August 19, 2024, recorded and notarized by Mag. Alexander Winkler, notary public with his office at 1180 Vienna, Weimarer Strasse 5, GZ 1562, as per enclosure ./AA, as well as the by-laws in the version dated June 15, 2023, certified on June 20, 2023 at the Princely District Court of Vaduz by the notary public Beatrix Maier, as per enclosure ./C, both of which form an integral part of this judgment, including <u>in particular</u>

        i.  the right to issue a by-law or several regulations and to determine the beneficiaries (Art. 5 para. 1 and para. 2 of the articles of association);

        ii.  the right to appoint or dismiss members of the Foundation Board and the Chairman of the Foundation Board (Art. 6 para. 2 let. a of the articles of association);

        iii.  the right to be the sole trustee of the Foundation and in this capacity to exercise the rights under the articles of association and by-laws, in particular to monitor the Foundation Board members, to have his proposals implemented by them, to make all resolutions of the Foundation Board dependent on his approval as trustee and to inspect all foundation documents (cf. Art. 9. Para. 1 of the articles of association, point B), in particular III. and point IV. sub 1) of the By-laws);

        iv.  the right to amend the declaration of foundation, the articles of association and the by-laws during his lifetime (Art. 13 para. 2 point 1. of the articles of association).

    *in the alternative*

35

242

The articles of association of the First Defendant, the Solkomtel Foundation, FL-0002.419.785-2, in the version dated August 2, 2024, which were not filed with the commercial register and which were amended by the Plaintiff's declarations

> on the amendment of the articles of association (notarized as deed A no. 6219/2024),
> on the "Resolution by circulation procedure" (notarized as deed A no. 6227/2024), and
> on the declaration pursuant to Article 13 (2) 2. of the articles of association (notarized as deed A no. 6229/2024),

notarized by Dariusz Wierzchucki, notary public in Warsaw, on this day, are declared invalid.

*in the alternative*

The Plaintiff's declarations, each dated August 2, 2024, to the First Defendant, Solkomtel Foundation, FL-0002.419.785-2, which have not been filed with the commercial register,

> on the amendment of the articles of association (notarized as deed A no. 6219/2024),
> on the "Resolution by circulation procedure" to deed A no. 6227/2024,
> and those pursuant to Article 13 (2) 2. of the articles of association (notarized as deed A no. 6229/2024),

each notarized by Dariusz Wierzchucki, notary public in Warsaw, on this day for the document number stated in each case, are declared legally invalid.

2 In any event, the defendants are jointly and severally liable to the Plaintiff to reimburse the costs of these proceedings within 14 days, failing which they shall be liable to costs.

## II.
### APPLICATION FOR AN OFFICIAL ORDER

140 The above submissions in the main proceedings are raised in full as the content of the provisional proceedings and the evidence cited therein (attached here) is offered as ready prima-facie evidence.

5.        Security claim / legal relationship to be secured

141 According to case law, it is also necessary in provisional proceedings for the issuance of an official order pursuant to Art. 276 para. 1 lit. b EO to assert and substantiate a specific claim or right that needs to be protected against adverse actual events and, in particular, against the conduct of the opposing party. Facts must therefore be presented in the provisional application which show the existence of a legal relationship between the parties from which the claim to be secured can arise.[43]

142 In the present case, the claim to be secured consists of the claim of the applicant for security to establish (i) the validity of the articles of association in the version dated August 19, 2024 (or in negative terms: the invalidity of the articles of association dated August 2, 2024) and (ii) the continued existence of all rights granted to the Plaintiff as founder, primary beneficiary or trustee in the articles of association or by-laws.

143 The invalidity of the versions dated August 2, 2024 results from the fact that these amendments were fraudulently obtained by the Secondary Beneficiaries (see point 3.2. above). In any case, however, the main claim to be determined also results from the fact that – even if the declarations of August 2, 2024 had been effective – the Plaintiff replaced his previously submitted Declaration of Death with legal effect with the declaration of August 17, 2024 and returned to the legal position that existed before the incriminated acts of August 2, 2024, so that he was subsequently able to effectively make the changes he declared in accordance with Art. 13 para. 2 point 1. of the articles of association. On the evident interest in a declaratory judgment, see above, point 4 et seq.

144 The entitlement to all rights granted to the Plaintiff as founder, primary beneficiary or trustee in the articles of association or by-laws results from the provisions of the articles of association or by-laws (as well as the current non-application of the provisions of the articles of association that are to apply after the founder's death, in accordance with the Declaration of Death dated August 17, 2024).

---

[43] Cf. OGH of June 10, 1999, 06 C 52/99, LES 1999, 348.

145 Even if a claim for a declaratory judgment (and possibly the aforementioned request for legal form) is
the subject of the civil proceedings, it is fully recognized that preliminary injunctions are also
possible for these if "the consequences of a declaration are at issue".[44] For example, the Austrian
Supreme Court has recognized the admissibility of a preliminary injunction in the context of
company law for an action for a declaration that a contract on the assignment of shares and certain
resolutions of the shareholders' meeting are invalid.[45] Even in the event that the shareholder of a
GmbH seeks a declaration of its legal status as a shareholder because this is disputed on the
grounds that it has lapsed ipso iure, the claim for a declaratory judgment is based on the
(safeguardable) request to tolerate the exercise of shareholder rights.[46] This is essentially the same
as the facts of the case in question, where the Plaintiff's status as a founder (which was upheld
during his lifetime) and the associated rights are being disputed. A strict standard is also not to be
applied in the case of claims for the legal structuring, so that the threat of irreparable damage can
be averted if necessary.[47] In this sense, Austrian case law has repeatedly emphasized, particularly
in connection with the exclusion of association members – i.e., in a dogmatically comparable
situation where the rights of the claimant seeking security are lost on the basis of invalid (or
ineffectively applied) articles of association – that the toleration of the exercise of membership
rights (as a claim for performance "behind" the claim for a declaration of invalidity of the exclusion)
is eligible for security.[48] In recent case law, the Liechtenstein Supreme Court has followed that of
the Austrian Supreme Court on the ability of claims for a declaratory judgment to be secured.[49]

146 The ability to secure the asserted claim for a declaratory judgment is also evident from a dogmatically
comparable approach to the case law in company law: In its decision of January 12, 2018, the
Princely Supreme Court stated – again referring to the case law of the Austrian Supreme Court –
that the claim asserted there to challenge various general meeting resolutions "undoubtedly"
qualifies as a security claim within the meaning of Art. 276 para. 1 lit. b EO.[50] Nothing else can
apply to a claim for a declaration that articles of association are invalid.[51]

147 It follows that the asserted request for a declaratory judgment naturally constitutes a suitable security
claim for the requested provisional measures.

---

[44] König, Restraining orders para. 2.34 and 2.37.
[45] Cf. König, EV marginal number 2.37 [FN 368].
[46] Cf. ÖOGH 2 Ob 138/08w; RIS-Justiz RS0011598 with additional evidence.
[47] Cf. RIS-Justiz RS0005153 [T5].
[48] RIS-Justiz RS0005153 [T10].
[49] Cf. OGH 03 CG.2020.45 LES 2020, 239.
[50] Cf. Supreme Court of January 12, 2018, 05 CG.2016.195, GE 2018, 280.
[51] Cf. again on company law OGH of June 11, 2010, 02 CG.2007.83, LES 2010, 319; OGH of September 7,
2006, 02 CG.2006.21, LES 2007, 289.

6.    Endangerment / regulatory interest

148 In addition to a right or legal relationship to be secured, the issuance of an official order pursuant to Art. 276 para. 1 lit. b EO requires an objective endangerment. According to case law, this is already assumed if the legal or factual circumstances are disputed, unclear or undefined. It is therefore sufficient if a legal relationship is either disputed by the opposing party or disturbed by an act of the opposing party. There is no need for further machinations or dispositions or actions by the opposing party that are contrary to the claim to be secured.[52] Accordingly, the Princely Supreme Court stated the following in the decision of January 12, 2018 cited above:

> *"For the provisional claim to be examined here, the decisive factor is that there is uncertainty about the question of the lawful exercise of rights at the General Meeting on May 18, 2017, which is to be settled for the duration of the main proceedings. For this reason alone, the requested provisional status regulation with the prohibition to the Office of Justice to make the changes decided on the occasion of the General Meeting of 05/18/2017, in particular to delete the registration of the current members of the Board of Directors and to register the allegedly newly elected members of the Board of Directors (third-party prohibition within the meaning of Art. 277 lit. g EO), is justified. Even the exercise of management by an unauthorized person constitutes an irretrievable disadvantage."*

149 Similarly, the Austrian Supreme Court has ruled that the disposal of shares or the exercise of shareholder rights (by an unauthorized person) regularly constitutes a threat with an irretrievable disadvantage for the company, so that for this reason alone no further certificate of risk is required.[53] In the case of the imminent (in this case already partially exercised) exercise of rights (by the second to fourth defendants), to which only the founder is correctly entitled, the risk required for the application for security is therefore obvious.

150 In the present case, however, there are further concrete circumstances that not only make it (objectively) likely that the claim is at risk, but that the Secondary Beneficiaries and the Chairman of the Foundation Board have already taken significant steps to try to thwart the claims and rights of the Plaintiff.

---

[52] Cf. OG of May 28, 2005, 10 HG.2004.55-102, Pool 2005, 123.
[53] Cf. ÖOGH 6 Ob 7/17y mwN.

151 In this context, it is particularly important that not only all legal acts taken by the executive body of the First Defendant – on which a third-party prohibition is to be imposed – without the consent of the Plaintiff, which must be obtained in accordance with Art. 9 of the articles of association in conjunction with point B) IV. of the by-laws, are irreversible. This in itself creates an evident risk of irreparable disadvantage for the Plaintiff, because his voting rights can no longer be "exercised retrospectively" and resolutions of the Foundation Board that are implemented without his consent can no longer be reversed.

152 The following circumstances also add to the risk to the Plaintiff's claims: The Second to Fourth Defendants (Secondary Beneficiaries) have concluded an agreement with the Plaintiff according to which the Plaintiff's declarations of August 2, 2024 are suspended until August 16, 2024 and no action will be taken on the basis of these declarations. Furthermore, the Plaintiff wrote to the Secondary Beneficiaries on August 13, 2024, informing them that he had been deceived by them and that his declarations were invalid.

153 On August 14, 2024, the Second Defendant – as a direct reaction to this and in breach of the Standstill Agreement – attempted to remove members of the Foundation Board and appoint himself and a compliant candidate close to him as members of the Foundation Board. Despite the Plaintiff's further notification that he had exercised his right to resubmit his Declaration of Death, the Secondary Beneficiaries took further action to attempt to thwart the Plaintiff's statutory rights.

154 In particular, the Second Defendant declared to the Chairman of the Foundation Board that he would resign as a member of the Foundation Board, but that he would appoint a successor within seven days. The Second Defendant has therefore already announced and claimed that he will continue to exercise the founder's rights (to which he is not entitled) to dismiss and reappoint Foundation Board members in the future.

155 In a letter dated August 20, 2024, the third-party defendant contacted the Plaintiff's representative through its legal counsel and expressly disputed the Plaintiff's rights. The Third Defendant also states her "opinion" to the effect that the Plaintiff's fraudulent declaration of death "*would first have to be removed by effective challenge*" and that "until then" it would apply.[54] The Third Defendant apparently believes that she can now do as she pleases until a judgment becomes final on the basis of non-existent alleged "rights".

156 Similarly, in a letter dated August 20, 2024, the Fourth Defendant contacted the Plaintiff's representatives and stated that the Plaintiff was not (or no longer) entitled to the rights in dispute.[55]

---

[54] Letter from the law firm Gasser Partner Rechtsanwälte AG dated August 20, 2024.

[55] Letter from attorney Paweł Rymarz dated August 20, 2024, which was preceded by the e-mail dated August 18, 2024.

157 The Secondary Beneficiaries must have been planning the incriminated plan for a long time around August 2, 2024, especially since a detailed critical review of the articles of association and by-laws and also detailed legal advice is required in order to be able to set up the "declarations" they drew up and later obtained.

158 <u>The "role" of the Chairman of the Foundation Board and his recent actions also clearly demonstrate that the risk of the Secondary Beneficiaries taking over illegal control of the foundation is not only imminent, but that this incriminated plan is already being implemented:</u>

159 First, the Chairman of the Foundation Board told the Plaintiff the untruth on August 20, 2024 that he would allegedly "not take any action" for the foundations as a result of the disputed legal circumstances. Only two days later, on August 22, 2024, he intervened immediately in the interests of the Second Defendant (and not those of the foundations) at the Second Defendant's request – at a time when the Second Defendant could no longer have been such a member as a result of his own resignation as a (supposed) member of the Foundation Board. The Chairman of the Foundation Board has revoked the TiVi Foundation's power of attorney to the Plaintiff's Attorney of Trust (without a resolution by the TiVi Foundation Board). As recently as June 2024, Mr. Senn (with the granting of powers of attorney) rightly considered it necessary to have corresponding (circular) resolutions passed.

Evidence:
- Circular resolution dated June 12, 2024 (Exhibit ./JJ)

160 The Chairman of the Foundation Board also terminated the power of attorney relationship with Tomasz Szeląg, the other member of the Foundation Board, with TiVi and thus with the very person who exercises executive functions and control in the subsidiaries of the TiVi Foundation. No effective resolutions of the Foundation Board exist for either of these legal acts, if only because the Plaintiff, as a trustee of TiVi, never approved them (which, however, would have been necessary for the effectiveness of such a resolution pursuant to Art. 9. of the articles of association and point B) IV. of the by-laws). The Chairman of the Foundation Board was fully aware of the requirement for the approval of all resolutions of the Foundation Board, not least because he always pointed this out internally (at AF Trustees AG) (including until August 20, 2024, immediately before his change of heart in favor of the Secondary Beneficiaries).

Evidence:
- E-mails from Philipp Senn to Ms. Thoele dated April 9, 2024 and August 20, 2024 (Exhibit ./KK)

161 It is therefore once again evident that the Chairman of the Foundation Board not only told an untruth, but also exceeded his powers in breach of his duties.

162 And finally, the Foundation Board, in full knowledge of the current legal dispute, again felt compelled to submit incorrect information to the commercial register for entry. <u>This latest action has hit the bottom of the barrel:</u>

41

248

- First, on August 20, 2024, the Chairman of the Foundation Board receives the original resolution of the Plaintiff as the sole founder dated August 19, 2024, in which he expressly (re)appoints Mr. Jaroslaw Grzesiak and confirms him in his office and, as a precautionary measure, dismisses the "appointed" Ms. Zofia Jedrzejewska.

- He also receives the Plaintiff's notarized declarations that he will revoke or replace the (fraudulent) declaration of death (with a declaration of death that will not come into effect until 2035) and that he will therefore undoubtedly be able to enjoy his full rights as founder again.

- The Chairman of the Foundation Board then untruthfully declared that he would not take any action on behalf of the First Defendant.

- And six days after this declared untruth, the Chairman of the Foundation Board took action by "surreptitiously" seeking to implement the very registrations with the commercial register that thwart the Plaintiff's resolution as founder of August 19, 2024.

163 In doing so, the Chairman of the Foundation Board has exceeded every limit of permissible action and in particular his powers, whereby there is a clear risk that he will take sides with the Secondary Beneficiaries and attempt to implement their will.

164 To make matters worse, the revocation of the power of attorney against Mr. Szeląg in the name of TiVi means that the continued existence of this foundation is at risk. Mr. Szeląg has significant expertise in the operating companies and was the link between them and the foundation as their owner.

165 It is obvious that this threat, which has already manifested itself at the level of the TiVi Foundation, also exists in mirror image for the Solkomtel Foundation and is impressively demonstrated by the recent actions of the Chairman of the Foundation Board. The imminent danger to be prevented by this official order has already partially materialized and is currently being implemented.

166 As stated above, the Chairman of the Foundation Board also unlawfully refuses to inspect documents relevant to the foundation, but has recently interposed his lawyer as a contact person. This means that direct communication with the highest controlling body of his foundation is no longer possible for the Plaintiff as founder. Rather, he is dependent on the willingness of the legal representation (which has not even been disclosed to date) to respond.

167 As a result, the Chairman of the Foundation Board not only committed a qualified (and probably also knowing) breach of his powers, but also persistently refused to comply with his duties as Chairman of the Foundation Board, for example with regard to the proper registrations with the commercial register and the notification of the beneficiaries, on the basis of the Plaintiff's resolutions (and not the ineffective resolutions of the beneficiaries).

168 It is thus evident and in any case attested that the Secondary Beneficiaries are attempting to implement their incriminated plan to exercise control over Solkomtel (and also the TiVi Foundation) on the basis of non-existent rights by all means. This is because, as has recently emerged from a file inspection that has now taken place, the Second Defendant, as the ineffectively appointed "member of the Foundation Board", together with his other person of trust, Ms. Zofia Jedrzejewska, who was ineffectively appointed as a "member of the Foundation Board", submitted corresponding model signing declarations to the Chairman of the Foundation Board in a letter dated August 14, 2024, so that this also results in the <u>most urgent need for action</u> and the objective endangerment of the Plaintiff's rights.

169 In the present case, with the submission of the "dismissals" to the Chairman of the Foundation Board by the Secondary Beneficiaries, an attempt has already been made to have the effective (and still valid) members of the Foundation Board Tomasz Szeląg and Jaroslaw Grzesiak deleted from the commercial register, although not only the amendment to the articles of association of August 2, 2024 is ineffective, but the one of August 19, 2024 is effective, but in particular, although the Plaintiff (re)appointed and confirmed the two aforementioned members of the Foundation Board as a precautionary measure with the declaration of August 19, 2024.

170 There is therefore no doubt that the Plaintiff's claims are objectively at risk in the light of the case law of the Princely Supreme Court just cited. If the official order requested in this case is not issued, there is a risk that the Secondary Beneficiaries (including the First Defendant, especially since the Secondary Beneficiaries attempt to exert a significant influence on their Foundation Board, which they are likely to succeed in doing from time to time according to the certified facts) will push for registration as new Foundation Board members in the commercial register and submit corresponding applications without being authorized to do so (since, as shown, their rights obviously do not exist).

7.    Fuse

171 As is well known, the provisions of Art 276 et seq. EO are also applied in non-contentious foundation supervisory proceedings to secure the claims asserted there.[56] The premise for the present request for security is therefore that those security measures that are issued in non-contentious foundation proceedings must also be issued in the case of contentious disputes under the ZPO.

---

[56] For many cf. 01 HG.2010.345 LES 2010, 358.

43

172 A suitable means of security in this case is, first of all, the prohibition on the Second, Third and Fourth Defendants from appointing or dismissing any Foundation Board members until the conclusion of the main proceedings. This prevents the Plaintiff's asserted rights under the effective articles of association of August 19, 2024 from being thwarted and the Secondary Beneficiaries from being able to take control of the foundation. This is also not an anticipation of the decision in the main proceedings, especially as only the status quo is being secured. Conversely, there would be an irretrievable loss of the Plaintiff's rights if the Secondary Beneficiaries were – mutatis mutandis – to be granted interim relief until the action was finally decided.

173 This prohibition must inevitably also be imposed on the First Defendant (with the same wording and for the same reasons), so that its executive bodies are bound by it. In addition, First Defendant (and thus the bodies acting on its behalf) must be prohibited from submitting corresponding applications to the commercial register in order not to frustrate the protective purpose of this official order.

174 For the same reasons, the third-party prohibition to comply with any requests by the Second, Third and Fourth Defendants to register or delete Foundation Board members must also be imposed on the Foundation Board members currently entered in the commercial register and on the Chairman of the Foundation Board.

175 Finally, a prohibition addressed to the Office of Justice, Commercial Register Division, prohibiting it for the time being from making any applications or entries concerning the First Defendant in the commercial register is also necessary, because the case would also have to be taken into account that, in the extreme, the official order issued would be violated and an application would be submitted to the commercial register despite this.

176 Only the combination of these measures prevents the Secondary Beneficiaries from being wrongly entered as such in the commercial register (because they are based on a void or no longer valid deed of foundation or declaration of death) and bona fide third parties from subsequently relying on such an incorrect entry.

8.    No prior hearing of the opposing party

177 In view of the foregoing, it is not possible in the present case to grant the opposing parties the right to be heard in advance with regard to the present application for protective measures without frustrating the purpose of the requested official order. If the opponents of the security were to be granted the right to be heard in advance, the Secondary Beneficiaries could take further actions as alleged "members of the Foundation Board" or authorized officers of the First Defendant, which would counteract the requested official order.

178 In addition, the Third Defendant resides in the USA, whereas the Second and Fourth Defendants would have to be served within the European Union. However, the Secondary Beneficiaries are in close contact with each other, as can be seen from the documents. The granting of a period for comment would therefore already have the result that the purpose of the requested official order and thus also the Plaintiff's claim for security would be thwarted, in that the Third Defendant could unduly delay the duration until a preliminary injunction is issued (by granting a prior period for comment). At the very most, the application in question would be deprived of its essential legal protection and security functions. For this reason, a prior hearing of the opposing party must be dispensed with in order not to frustrate the purpose of the requested official order.[57] The opposing party would not suffer any irretrievable disadvantages by not having a hearing.

9.    Security applications

For these reasons, it is proposed that the following

**OFFICIAL ORDER:**

In order to secure the above-mentioned claims of the Plaintiff for a declaratory judgment, until the judgment on the action becomes final

1 the Second, Third and Fourth Defendants are prohibited with immediate effect from appointing or dismissing members of the Foundation Board of the First Defendant;

2 the First Defendant is prohibited with immediate effect from accepting appointments and dismissals of the Second, Third or Fourth Defendant or from complying with such declarations of the aforementioned, and in particular the First Defendant is prohibited from making entries in the commercial register, whether deletions or entries of members of the Foundation Board or the Chairman of the Foundation Board, unless they have been previously expressly approved in writing by the Plaintiff;

3 The First Defendant is also prohibited with immediate effect from transferring assets by selling, assigning or otherwise transferring shares or other participations held by it, regardless of the type of holding, whether directly or indirectly via subsidiaries or sub-subsidiaries, or other dispositions of property rights of any kind whatsoever (such as, in particular, the exercise of voting rights at the level of subsidiaries and/or sub-subsidiaries or comparable [legal] acts that lead to an outflow of assets of the First Defendant), unless such dispositions have been expressly approved in writing by the Plaintiff in advance;

---

[57] Cf. Supreme Court of September 7, 2018, 01 CG.2018.91, LES 2018, 265.

*in the alternative*: in particular, it is also <u>prohibited</u> from shifting assets by selling, assigning or otherwise transferring shares or other participations held by it or other dispositions under property law (such as in particular the exercise of voting rights at the level of subsidiaries and/or sub-subsidiaries or comparable [legal] acts that lead to an outflow of assets of the First Defendant) in the

    i.    Company BITHELL HOLDINGS LIMITED with registered office in Agios Athanasios, Limassol (Cyprus), registered in the Cyprus Commercial Register under number HE 212923,

    ii.    KARSWELL LIMITED, with registered office in Agios Athanasios, Limassol (Cyprus), registered in the Cyprus Commercial Register under number HE 229808,

    iii.    STASALCO LTD, with registered office in Agios Athanasios, Limassol (Cyprus), registered in the Cyprus Commercial Register under number HE 372875,

    iv.    Company WBN HOLDING LIMITED with registered office in Agios Athanasios, Limassol (Cyprus), registered in the Cyprus Commercial Register under number HE 336956,

    v.    AVIAT INVESTMENTS LIMITED, with registered office in Agios Athanasios, Limassol (Cyprus), registered in the Cyprus Commercial Register under number HE 299788,

    vi.    Inwestycje Polskie spółka z ograniczoną odpowiedzialnością with its registered office in Warsaw (Poland), entered in the Polish Commercial Register under number KRS 751397

    vii.    Blue Jet Charters spółka z ograniczoną odpowiedzialnością with its registered office in Warsaw (Poland), entered in the Polish Commercial Register under number KRS 171414

    viii.    Company IB Towarzystwo Funduszy Inwestycyjnych Spółka Akcyjna with its registered office in Warsaw (Poland), entered in the Polish Commercial Register under number KRS 462391

    ix.    CPE spółka z ograniczoną odpowiedzialnością with its registered office in Warsaw (Poland), entered in the Polish Commercial Register under number KRS 626479

    x.    TFP" spółka z ograniczoną odpowiedzialnością with its registered office in Warsaw (Poland), entered in the Polish Commercial Register under number KRS 192808

    xi.    Jet Story spółka z ograniczoną odpowiedzialnością with its registered office in Warsaw (Poland), entered in the Polish Commercial Register under number KRS 187101

    xii.    or other shareholdings not specified here (such as in particular in sub-companies held by the aforementioned companies, etc.)

in whatever form they may be held, whether directly or indirectly via subsidiaries or sub-subsidiaries, unless the Plaintiff has given his express prior written consent;

4   the respective Foundation Board members entered in the commercial register and the respective registered chairman of the Foundation Board of the First Defendant, Mr. Philipp Senn, Mr. Tomasz Szeląg, Mr. Jaroslaw Grzesiak and Ms. Katarzyna Tomczuk, each pA Kirchstrasse 12, 9490 Vaduz, are <u>prohibited</u> with immediate effect <u>(third-party prohibition)</u>,

-   from complying with their obligations towards the First, Second, Third or Fourth Defendant to register appointments or dismissals of members of the Foundation Board in the commercial register, unless such appointments or dismissals have been previously expressly approved in writing by the Plaintiff;

-   from complying with their obligations towards the First, Second, Third or Fourth Defendant to pass resolutions of the Foundation Board, unless such resolutions have been expressly approved in writing by the Plaintiff in advance;

5   until four weeks after the legally binding conclusion of the main proceedings, from making any registrations in the Commercial Register with the Office of Justice, Commercial Register Division, regardless of whether deletions or entries of members of the Foundation Board or the Chairman of the Foundation Board, with regard to the First Defendant, unless they have been expressly approved in writing by the Plaintiff in advance.

Vaduz, August 29, 2024
SOT/AGO/vpa

Exhibits:

| | | |
|---|---|---|
| ./A | Confirmation of office dated August 22, 2024 | |
| ./B | Articles of association of the Solkomtel Foundation as amended on June 15, 2023 | |
| ./C | By-laws of the Solkomtel Foundation as amended on June 15, 2023 | |
| ./D | Articles of association of the TiVi Foundation as amended on November 29, 2023 | |
| ./E | By-laws of the TiVi Foundation as amended on November 29, 2023 | |
| ./F | Affidavit of the Plaintiff dated August 24, 2024 | |
| ./G | Affidavit of Jerzy Modrzejewski dated August 24, 2024 | |
| ./H | Affidavit of Justyna Kulka dated August 24, 2024 | |
| ./I | Declaration on the amendment of the articles of association of Solkomtel to deed A no. 6219/2024 ("Solkomtel Amendment Declaration") | |
| ./J | Declaration on the amendment of the Articles of association of TiVi to deed A no. 6223/2024 ("TiVi Amendment Declaration") | |
| ./K | Declaration "Resolution by circulation procedure" pursuant to Article 7 of the articles of association of Solkomtel to deed A no. 6227/2024 ("Solkomtel Declaration of Trustees") | |
| ./L | Declaration "Resolution by way of circulation" pursuant to Article 7 of TiVi's articles of association to deed A no. 6228/2024 ("TiVi Declaration of Trustees") | including translation |
| ./M | Declaration pursuant to Article 13 (2) 2 of the articles of association of Solkomtel to deed A no. 6229/2024 ("Solkomtel Declaration of Death") | including translation |
| ./N | Declaration pursuant to Article 13 (2) 2. (i) the articles of association of TiVi to deed A no. 6235/2024 ("TiVi Declaration of Death") | including translation |
| ./O | "Standstill" agreement between the parties dated August 3, 2024 | including translation |
| ./P | Plaintiff's action for avoidance dated August 13, 2024 including confirmation of receipt from Tomasz Szeląg | |
| ./Q | E-mails from the Second Defendant regarding the (ineffective) "dismissal" of Tomasz Szeląg and Jaroslaw Grzesiak as well as ineffective "appointment" and "acceptance" declarations from the Second Defendant and Zofia Jedrzeyewska dated August 14, 2024 | including translation |
| ./R | Declaration by the Plaintiff regarding the resubmission of the Solkomtel Declaration of Death dated August 17, 2024 | |
| ./S | Volume of warning letters to the Secondary Beneficiaries and to the Foundation Board as well as to the Chairman of the Foundation Board dated August 17, 2024 (incl. confirmations of transmission) | |
| ./T | E-mail dated August 18, 2024 regarding the acknowledgment of receipt of the letter dated August 17, 2024 from Tomasz Szeląg including translation | including translation |
| ./U | Letter dated August 20, 2024 regarding the acknowledgment of receipt of the letter dated August 17, 2024 from Jaroslaw Grzesiak | including translation |
| ./V | E-mail to Philipp Senn dated August 21, 2024 including read receipt | |

| ./W | E-mail from attorney Paweł Rymarz dated August 18, 2024 | including translation |
|---|---|---|
| ./X | Letter from attorney Paweł Rymarz and Krzysztof Sajchta dated August 20, 2024 | including translation |
| ./Y | Letter from attorney Bernhard Motal dated August 20, 2024 | |
| ./Z | Information letter to the Secondary Beneficiaries about the forthcoming (re)amendment of the articles of association and inclusion of a sunset clause dated August 18, 2024 | |
| ./AA | Notarial deed dated August 19, 2024 to the amendment of the articles of association of Solkomtel (GZ 1562) | |
| ./BB | Letter to Philipp Senn dated August 20, 2024 including acceptance confirmation | |
| ./CC | Confirmation of receipt of the original documents from the founder dated August 20, 2024 from the Chairman of the Foundation Board, Philipp Senn | |
| ./DD | E-mail correspondence dated August 21 and 22, 2024 between Simon Ott, Philipp Senn and Luca Castellazzi (request to inspect foundation documents) | |
| ./EE | Affidavit by attorney Peter Machherndl dated August 25, 2024 | |
| ./FF | Resignation of the Second Defendant as a member of the Foundation Board including e-mail to Philipp Senn dated August 20, 2024 | including translation |
| ./GG | Volume of proxy revocations by TiVi including e-mails dated August 22, 2024 | including translation |
| ./HH | E-mail from Philipp Senn dated August 23, 2024, 5:14 pm | |
| ./II | Affidavit by Thomas Szeląg dated August 25, 2024 | including translation |
| ./JJ | Circular resolution regarding the powers of attorney of Solkomtel dated June 12, 2024 | including translation |
| ./KK | E-mails from Philipp Senn to Ms. Thoele dated April 9, 2024 and August 20, 2024 | |
| ./LL | Notice of change from the (former) Chairman of the Foundation Board together with letter dated August 26, 2024 | |
| ./MM | Resolution of the Plaintiff on the dismissal of the Chairman of the Foundation Board and Ms. Tomczuk as well as the appointment of a new Chairman of the Foundation Board and a new member of the Foundation Board | |

49

An das
Fürstliche Landgericht
9490 Vaduz

KLAGENDE PARTEI:

Zygmunt Józef Solorz
Meierhofstrasse 8
9495 Triesen

vertreten durch:

**SCHURTI · PARTNERS**
RECHTSANWÄLTE AG | ATTORNEYS AT LAW LTD

Zollstrasse 2 | 9490 Vaduz | Liechtenstein
Tel +41 44 244 2000 | mail@schurtipartners.com

(Berufung auf die erteilte Vollmacht gemäss § 28 Abs. 2 ZPO,
Art. 8 Abs. 2 RAG, Art 51 EO iVm § 28 Abs. 2 ZPO)

Pitkowitz & Partners
Pitkowitz Foerster Rechtsanwälte GmbH
Schwarzenbergplatz 3, 1010 Wien
Unter Berufung auf die erteilte Vollmacht gemäss § 28
Abs. 2 ZPO

Schurti Partners Rechtsanwälte AG als
Zustellbevollmächtigter gemäss Art. 82 Abs. 1 RAG

| | Unterzeichner | Peter Machherndl |
|---|---|---|
| Pitkowitz & Partners | Datum/Zeit-UTC | 2024-08-29T15:31:41+02:00 |
| | Prüfinformation | Informationen zur Prüfung der elektronischen Signatur finden Sie unter: https://www.signaturpruefung.gv.at |
| Hinweis | Dieses mit einer qualifizierten elektronischen Signatur versehene Dokument hat gemäss Art. 25 Abs. 2 der Verordnung (EU) Nr. 910/2014 vom 23. Juli 2014 ("eIDAS-VO") die gleiche Rechtswirkung wie ein handschriftlich unterschriebenes Dokument. | |

BEKLAGTE PARTEIEN:

1. Solkomtel Foundation (FL-0002.419.785-2)
   c/o AF Fiduciary Establishment
   Kirchstrasse 12
   9490 Vaduz

2. Piotr Mateusz Żak
   ul. Ostrobramska 83 m. 1801A
   04-175 Warszawa
   Polen

3. Aleksandra Jadwiga Żak
   9950 Toluca Lake Ave
   91602 North Hollywood, CA
   USA

4. Tobias Markus Solorz
   Haldenweg 18
   9495 Triesen

WEGEN:

Feststellung, *in eventu* Rechtsgestaltung

## I. KLAGE
## II. ANTRAG AUF ERLASSUNG EINES AMTSBEFEHLS

5-fach
Beilagen lt. Verzeichnis
Bewilligung zum Einzug der Gerichtsgebühren vom Depotkonto 324

258

In umseits bezeichneter Rechtssache hat die klagende Partei (in der Folge: "**Kläger**") die Schurti Partners Rechtsanwälte AG, Zollstrasse 2, 9490 Vaduz, und die Pitkowitz Foerster Rechtsanwälte GmbH, Schwarzenbergplatz 3, 1010 Wien, mit der rechtsfreundlichen Vertretung beauftragt und bevollmächtigt. Die Schurti Partners Rechtsanwälte AG und die Pitkowitz Foerster Rechtsanwälte GmbH berufen sich auf die erteilte Vollmacht (§ 28 Abs. 2 ZPO; Art. 8 Abs. 2 RAG). Durch seine ausgewiesenen Rechtsvertreter erhebt der Kläger nachstehende

## I. KLAGE

und führt hierzu aus wie folgt:

Executive Summary

- Beim Kläger handelt es sich um einen erfolgreichen Unternehmer, der vor allem in den 1990er Jahren durch den Aufbau des ersten privaten polnischen Fernsehsenders ("**Polsat**") und die Übernahme eines Mobilfunkbetreibers im Jahr 2011 weltweit bekannt wurde. Er zählt zu einer der vermögendsten Personen in Europa.

- Den Kern seines Vermögens – unter anderem die Unternehmung des Fernsehsenders Polsat – hat der Kläger über die TiVi Foundation und die Solkomtel Foundation, zwei liechtensteinische Stiftungen mit Sitz in Vaduz, strukturiert. Er ist alleiniger Stifter und Erstbegünstigter dieser Stiftungen, während seine drei Kinder deren Zweitbegünstigten sind. Mit dem Zeitpunkt des Ablebens des Klägers würden diese in den Genuss massgeblicher Kontroll- und Begünstigtenrechte gelangen.

- In einem von langer Hand geplanten "Putschversuch" haben die Kinder (der Zweit-, die Dritt- und der Viertbeklagte) vor wenigen Wochen die familiäre Zusammenkunft aus Anlass des 68. Geburtstages des Klägers und die kurzfristige Abwesenheit seines Vertrauensanwalts als Gelegenheit dafür genutzt, um den Kläger am 2. August 2024 durch arglistige Täuschung zur Unterschrift hinsichtlich mehrerer "Erklärungen" zu verleiten.

- Durch diese "Erklärungen" würde sich der Kläger als Stifter gegenüber seiner Stiftung rechtlich für "verstorben erklären" lassen, wodurch die Kinder die vollständige Kontrolle über die Stiftung erlangen könnten.

- Diese von den Kindern durch arglistige Täuschung erschlichene "Selbstausschaltung des Stifters" vom 2. August 2024 ist nichtig und rechtsunwirksam.

- Nach diesen Ereignissen hat der Stifter von seinem Recht auf Änderung der Statuten und Abgabe einer neuen Ablebenserklärung Gebrauch gemacht, sich wieder in seine alte Rechtsposition zurückversetzt und die vorherigen Statuten (mit einer Änderung) wieder in Kraft gesetzt.

- Dennoch versuchen die Kinder weiter, auf Basis der Statuten in der unwirksamen Fassung vom 2. August 2024 die Kontrolle über die Stiftung zu übernehmen, um an deren Vermögen zu gelangen und den Kläger als alleinigen Stifter von seinen statutarischen Rechten auszuschliessen.

- Es ist zwischen den Parteien daher strittig, welche Statuten in welcher Fassung wirksam und aufrecht bestehen und welche Rechte dem Kläger aufgrund der Statuten (und Beistatuten) aufrecht zustehen. Das vorliegende Verfahren ist zur Feststellung und endgültigen Bereinigung dieses strittigen Rechtsverhältnisses erforderlich, wie auch zur Absicherung der Rechte des Klägers durch einstweilige Verfügung, da andernfalls der endgültige und unwiederbringliche Verlust seiner Rechtsposition und des Vermögens der beiden Stiftungen droht.

1.  Formelles

1.1.  Parteien

1   Der Kläger ist alleiniger Stifter, einziger Kurator und Erstbegünstigter der Solkomtel Foundation (in der Folge: "**Solkomtel**", "**Stiftung**", oder "**Erstbeklagte**").[1]

2   Bei der Solkomtel handelt es sich um eine liechtensteinische Stiftung mit Sitz in Vaduz, am 12. März 2013 hinterlegt beim Handelsregister des Fürstentums Liechtenstein unter FL-0002.419.785-2. Die  nach den Angaben der Amtsbestätigung vom 22. August 2024 bestellten Stiftungsräte sind einerseits Philipp Ulrich Senn als Stiftungsratspräsident (in der Folge: "**Stiftungsratspräsident**"), und andererseits Jaroslaw Grzesiak, Katarzyna Tomczuk und Tomasz Szelaz als jeweilige weitere Mitglieder des Stiftungsrates. Der Stifter hat jedoch mit Beschluss vom 27. August 2024 den Stiftungsratspräsidenten und Frau Katarzyna Tomczuk abberufen und durch andere Personen ersetzt (dazu noch unten).

3   Die Kinder des Klägers, Piotr Żak (in der Folge: "**Zweitbeklagter**"), Aleksandra Żak (in der Folge: "**Drittbeklagte**") und Tobias Solorz (in der Folge: "**Viertbeklagter**") sind Zweitbegünstigte der erwähnten Stiftungen (alle drei in der Folge auch: "**Zweitbegünstigte**"). Den Zweitbegünstigten kommen über ihre blosse Begünstigtenstellung hinaus weitere Kontroll- und Einflussmöglichkeiten auf die Stiftung im Ablebensfall des Klägers zu.

   Beweis:   - PV des Klägers
            - Amtsbestätigungen vom 22. August 2024 (Beilage ./A)
            - Statuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./B)
            - Beistatuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./C)
              Statuten der TiVi Foundation idF vom 29. November 2023 (Beilage ./D)
            - Beistatuten der TiVi Foundation idF vom 29. November 2023 (Beilage ./E)

---

[1] Darüber hinaus ist er auch Stifter einer weiteren Stiftung, der TiVi Foundation (in der Folge: "TiVi"), die jedoch für das vorliegende Verfahren nur eine "Nebenrolle" spielt (die Solkomtel und TiVi werden im Plural nachfolgend auch als "**Stiftungen**" bezeichnet).

3

## 1.2.  Rechtschutzziel und Feststellungsinteresse

4    Das vorliegende Verfahren zielt darauf ab, die (strittigen) <u>Rechtsgrundlagen der Erstbeklagten</u> (ihre Statuten) mit Bindungs- und Bereinigungswirkung zwischen allen Parteien endgültig festzustellen.

5    Die Erstbeklagte steht als Stiftung sowohl mit dem Kläger als ihrem Stifter, Kurator und Erstbegünstigten, als auch mit dem Zweit-, der Dritt- und dem Viertbeklagten als Zweitbegünstigte "*in Rechtsbeziehung*" im Sinne des § 234 ZPO.[2]

6    Das Ziel des Hauptfeststellungsbegehrens ist die endgültige und mit Bereinigungswirkung zwischen allen Parteien dieses Verfahrens erfolgende Klärung der Frage, welche Fassung der Statuten der Stiftung – und damit welches Rechtsverhältnis iSd § 234 ZPO zwischen den Streitteilen – aufrecht und rechtswirksam besteht.

7    Die Lösung dieser Rechtsfrage wird davon abhängen, ob i) die von den Zweitbegünstigten am 2. August 2024 erschlichenen Änderungen der Statuten,[3] oder ii) ob die (tatsächlich gewollte) zweite Änderung der Statuten der Solkomtel durch den Kläger vom 19. August 2024 jeweils wirksam waren.[4] Ebenso davon, ob der Kläger durch seine spätere Erklärung vom 17. August 2024 die zuvor von den Zweitbegünstigten erschlichene Ablebenserklärung wieder wirksam ersetzt hat, sodass ihm (jedenfalls) deshalb wieder jene Rechte zukommen, wie dies vor dem 2. August 2024 der Fall war.

8    Das Personen- und Gesellschaftsrecht (PGR) enthält – ebenso wie etwa das österreichische Privatstiftungsgesetz[5] – keine Bestimmungen darüber, wie die Unwirksamkeit von Stiftungsänderungserklärungen und damit die (Un-)Wirksamkeit eines Statuts oder Beistatuts einer Stiftung geltend zu machen wäre. Der Kläger verkennt auch nicht, dass in der (jedoch teils länger zurückliegenden) Vergangenheit kasuistische Entscheidungen im Zusammenhang mit der Geltendmachung von Feststellungsansprüchen im Stiftungsrecht ergangen sind,[6] und viele "Alltagsstreitigkeiten" – in der Regel – dem stiftungsrechtlichen Aufsichtsverfahren zuzuordnen sind.

9    Vorliegend dreht es sich allerdings nicht um eine aufsichtsrechtliche "Alltagsstreitigkeit". Es liegt auch nicht einer jener Fälle vor, bei denen – fälschlicherweise – im streitigen Zivilverfahren eine aufsichtsrechtliche Streitigkeit auszutragen versucht wurde.[7]

---

[2] Wie dies der Oberste Gerichtshof zur Geltendmachung der Unwirksamkeit von Statuten im streitigen Feststellungsprozess bereits ausgesprochen hat; siehe Urteil vom 7. Oktober 2016, 08 CG.2009.407 (Punkt 10.9.3.).

[3] Und rechtsnotwendigerweise die damit übrigen (in diesem Zusammenhang erschienenen) Erklärungen des Klägers.

[4] Vgl zum Feststellungsprozess die Leitentscheidung des öOGH vom 19. November 2014, 3 Ob 120/14i; Diese ist für das Liechtensteinische Zivilverfahren "bedenkenlos zu übernehmen", so *Gasser* in HB LieZPR Rz 16.48.

[5] Vgl öOGH 3 Ob 120/14i, Punkt 3.4.2. mwN zu *Oberndorfer/Leitner*, ZfS 2010, 99 (101 ff).

[6] Zum Diskussionsstand siehe etwa *Gasser* in HB LieZPR Rz 16.45.

[7] Solche Streitigkeiten also, die die <u>Willensbildung des Stiftungsrates</u> betrafen (vgl LES 2010, 359; 2012, 181., vgl *Gasser*, Liechtensteinisches Stiftungsrecht[2] § 3 Rn 10 mit weiteren Beispielen), was <u>hier nicht Gegenstand des Verfahrens</u> ist. Es liegt auf der Hand, dass die dort angeführten aufsichtsrechtlichen Begehren mit dem dort jeweils angestrebten Rechtsschutzziel regelmässig in das stiftungsrechtliche Aussenstreitverfahren gehörten, weil die Rechtsgrundlagen der Stiftung (die Wirksamkeit ihrer Statuten) in diesen Fällen an sich völlig klar war(en).

10    Vielmehr ist Kern des vorliegenden Verfahrens die Feststellung der Unwirksamkeit des Stiftungsstatuts in der Fassung vom 2. August 2024 (oder, positiv formuliert: die Wirksamkeit der Fassung vom 19. August 2024), sohin die <u>Feststellung jenes (strittigen) Rechtsverhältnisses</u> iSd § 234 ZPO, das <u>alle Parteien</u> im Verhältnis zur Erstbeklagten bekleidet.[8] Die Zweitbegünstigten berühmen sich überdies sowohl der Stiftung gegenüber, als auch gegenüber dem Kläger,[9] dass sie angebliche "Rechte" auf Basis des rechtsunwirksamen Statuts vom 2. August 2024 ausüben können (und die klägerischen Rechte erloschen seien), sodass auch aus diesem Grunde das Feststellungsinteresse des Klägers (und damit notwendigerweise die Zulässigkeit des streitigen Rechtsweges) gegenüber dem Zweit-, der Dritt-, und dem Viertbeklagten evident gegeben ist.[10]

11    Der österreichische Oberste Gerichtshof (öOGH) hat – bei dogmatisch vergleichbarer Ausgangslage – in der Leitentscheidung vom 19. November 2014 zur GZ 3 Ob 120/14i ausgesprochen, dass (bereits) einem aktuellen Begünstigten ein rechtliches Interesse an der Feststellung der Rechtsunwirksamkeit einer Stiftungszusatzurkunde ("Beistatut") zuzubilligen ist.[11] In dieser Entscheidung hielt der öOGH fest, dass zwischen jedem aktuellen Begünstigten und der Privatstiftung "ein Rechtsverhältnis" bestehe, das die Beziehungen zueinander (in Form der Statuten) regelt. Am Feststellungsinteresse bestehe daher keinerlei Zweifel.[12] Nichts anderes kann für das vorliegende Verfahren gelten:

12    Der Liechtensteinische Oberste Gerichtshof hat diese Entscheidung – wiederum im Rahmen des *streitigen* Zivilverfahrens im Zusammenhang mit der Geltendmachung der Unwirksamkeit von Stiftungsdokumenten – ebenso aufgegriffen, mehrfach in seiner Begründung auf diese Bezug genommen und im Ergebnis deren Wertungen übernommen. Gegenstand dieser Entscheidung war (wie auch vorliegend) die <u>Unwirksamkeit der Stiftungsurkunden</u> aufgrund eines Wurzelmangels (*in casu*: Geschäftsunfähigkeit des Stifters). Ausdrücklich wird auf das Rechtsverhältnis des Stifters zur Stiftung und auch der Begünstigten zu dieser Bezug genommen, dass diese "*in Rechtsbeziehung*" iSd § 234 ZPO zu dieser stehen[13] und die Zulässigkeit des Rechtsweges bejaht.[14] Dem schliesst sich auch die herrschende Literatur an, wonach die Wertungen der österreichischen Leitentscheidung zum gebotenen streitigen Feststellungsprozess "*bedenkenlos zu übernehmen*" sind.[15]

---

[8] Wie unten noch zu zeigen sein wird, ist die Fassung des Statuts vom 2. August 2024 infolge eines evidenten Wurzelmangels (Irrtum bzw. Arglist) rechtsunwirksam.

[9] Siehe etwa die anwaltlichen Schreiben der Dritt- und der Viertbeklagten jeweils vom 20. August 2024 (Beilage ./X und ./Y).

[10] Ein rechtliches Interesse des Klägers ist (auch) dann gegeben, wenn die Berühmung des Gegners – wie hier – zu einer Gefährdung seiner Rechtsstellung führt (vgl öOGH 1 Ob 542/92; RS0038968 [T5]).

[11] 3 Ob 120/14i = RIS-Justiz RS0129909 (veröff. SZ 2014/107).

[12] Von der Literatur bestätigend vgl *Frauenberger-Pfeiler* in *Fasching/Konecny*[3] III/1 § 228 ZPO Rz 99; GesRZ 2015, 138.

[13] Siehe Urteil des OGH vom 7. Oktober 2016, 08 CG.2009.407 [Punkt 10.9.3.].

[14] Strittig war bloss, ob ein Rechtgestaltungs- oder ein Feststellungsbegehren zu formulieren ist.

[15] *Gasser* in HB LieZPR Rz 16.48.

5

13    Hinzu kommt, dass im vorliegenden Verfahren der Kläger nicht ("bloss") Begünstigter, sondern Stifter der Erstbeklagten ist. Auch den Zweitbeklagten kommen (nach dem Ableben des Stifters in Kraft tretende) massgebliche stifterähnliche Kontrollrechte nach den Statuten bzw. Beistatuten zu.[16] Am Rechtsverhältnis der Parteien iSd. § 234 ZPO zur Erstbeklagten kann daher kein Zweifel bestehen. Es wäre auch nicht ausreichend, ("nur") auf Unterlassung zu klagen, weil ein Unterlassungsbegehren für sich allein niemals den Feststellungsanspruch des Klägers voll ausschöpfen und zur endgültigen Befriedigung und Bereinigung des strittigen Rechtsverhältnisses führen könnte.[17]

14    Der vorliegende Feststellungsklage ist daher das einzige wirksame (und prozessual richtige) Mittel, um zwischen den Streitteilen endgültige Rechtsklarheit und bindende Bereinigungswirkung über die vorliegende Streitfrage zu schaffen, wie dies auch der Oberste Gerichtshof zur Geltendmachung der Unwirksamkeit von Stiftungsurkunden bereits ausgesprochen hat.[18]

## 1.3.    Zuständigkeit

15    Die Erstbeklagte hat ihren Sitz (und damit ohnedies ihren allgemeinen Gerichtsstand) in Liechtenstein (§§ 30, 36 JN).

16    Gemäss Art. 15 der Statuten der Erstbeklagten werden überdies alle Streitigkeiten zwischen der Stiftung und ihren Mitgliedern (darunter insbesondere auch der Begünstigten) endgültig durch die zuständigen ordentlichen Gerichte des Fürstentums Liechtenstein entschieden. Es besteht somit eine Gerichtsstandsvereinbarung (§ 53 Abs. 1 JN).

17    Darüber hinaus stehen die Beklagten in Ansehung des Streitgegenstandes (des Feststellungs- und auch des eventualiter gestellten Rechtsgestaltungsbegehrens) ebenso "*in Rechtsgemeinschaft*" im Sinne des § 11 Z. 1 ZPO, sodass auch der Gerichtsstand der Streitgenossen vorliegt (§ 46 Abs. 1 JN).[19]

18    Schliesslich liegt auch der Gerichtsstand des belegenen Vermögens (§ 50 JN) vor, zumal auch Feststellungs- und Rechtsgestaltungsklagen hinsichtlich ("blosser") Rechte diesen begründen und das – von der Erstbeklagten abgeleitete – Recht bzw. das Rechtsverhältnis der Streitteile sich aufgrund des Sitzes der Stiftung im Inland befindet.[20] Das Fürstliche

---

[16] Vgl nur Art. 6 Abs. 3 Bst a der Statuten.

[17] Vgl *Frauenberger-Pfeiler* in *Fasching/Konecny*³ III/1 § 228 ZPO Rz 111; *in casu* würde ein blosses Unterlassungsbegehren – noch dazu – zu einem unerträglichen Rechtsschutzdefizit führen, weil der Kläger dazu angehalten wäre, sämtliche nach den Statuten und Beistatuten denkbaren Verstösse der Zweitbegünstigten mittels Verbotsbegehren aufzugreifen, was schon an der endlosen Zahl an möglichen Verstössen scheitern dürfte.

[18] Siehe Urteil des OGH vom 7. Oktober 2016, 08 CG.2009.407 [Punkt 10.9.3.].

[19] Rechtsgemeinschaft ist gleichbedeutend mit "*in Rechtsbeziehung zueinander*" stehend (siehe etwa *Auer* in *Höllwerth/Ziehensack* ZPO § 11 Rn 10), insoweit bejahend auch Urteil, 08 CG.2009.407 (Punkt 10.9.3.).

[20] Der Anwendungsbereich des § 50 JN beschränkt sich nicht auf körperliche Sachen, weil "*unter Streitgegenstand auch Rechte zu verstehen sind.*" Somit kann er auch für Feststellungsklagen in Anspruch genommen werden, sofern – wie hier – sich das behauptete Recht bzw Rechtsverhältnis im Sprengel des angerufenen Gerichts befindet. Es ist gleichgültig, wer sich im Besitz des Streitgegenstandes befindet, er könnte sogar in Händen Dritter oder des Klägers selbst sein (*Simotta* in *Fasching/Konecny*³ § 99 JN Rz 77; *Braun* in *Höllwerth/Ziehensack*, ZPO § 99 JN Rz 13).

Landgericht ist daher gemäss §§ 30, 36, 46 Abs 1, 50 Abs 1 und 53 Abs 1 JN jedenfalls zuständig.

Beweis:    -   Amtsbestätigung vom 22. August 2024 (Beilage ./A)
           -   Statuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./B)

## 2.    Sachverhalt

### 2.1.   Die statutarischen Rechte des Klägers, um die es im Kern im vorliegenden Verfahren geht

19    Für ein besseres Verständnis der nachfolgend angeführten Ereignisse ist vorauszuschicken, dass dem Kläger nach den Statuten der Solkomtel – die vor dem hier streitgegenständlichen Zeitraum zuletzt in der Fassung vom 15. Juni 2023 in Kraft waren – massgebliche Stifter-, Kuratoren und (Erst-)Begünstigtenrechte zukommen. Zur Absicherung seiner Stellung als alleiniger Stifter hat er sich überdies Änderungsrechte hinsichtlich der Statuten und Beistatuten vorbehalten.

20    Die in den Stiftungsurkunden vorbehaltenen Rechte des Stifters sind unter anderem etwa

–   das Recht, ein Beistatut oder mehrere Reglemente zu erlassen und die Begünstigten zu bestimmen (Art. 5 Abs. 1 und Abs. 2 der Statuten);

–   das Recht, Mitglieder des Stiftungsrates zu bestellen oder abzuberufen (Art. 6 Abs. 2 Bst. a der Statuten);

–   das Recht, einziger Kurator der Stiftung zu sein, in dieser Funktion die Stiftungsräte zu überwachen, seine Vorschläge durch diese umsetzen zu lassen, sämtliche Beschlüsse des Stiftungsrates von seiner Zustimmung als Kurator abhängig zu machen und in alle Stiftungsdokumente Einsicht zu nehmen (vgl. Art. 9. Abs. 1 der Statuten, Punkt B.III. und Punkt B.IV. sub 1) der Beistatuten);

–   das Recht, die Stiftungserklärung, die Statuten und die Beistatuten zu seinen Lebzeiten zu ändern (Art. 13 Abs. 2 Punkt 1. der Statuten) udgl.

21    Die Zweitbegünstigten sollen nach den statutarisch verankerten Bestimmungen nach dem Ableben des Stifters in den Genuss der dort näher beschriebenen Kontroll- und Begünstigtenrechten kommen.[21]

---

[21] Vgl etwa Art. 6 Abs. 3 Bst a der Statuten und Punkt II. der Beistatuten der Erstbeklagten.

7

264

22    Die Statuten sehen in ihrem Art. 13 Abs. 2 Punkt 2. auch die Möglichkeit vor, dass der Stifter gegenüber der Stiftung zu seinen Lebzeiten eine (jederzeit ersetzbare) Erklärung abgeben kann, infolge derer ab einem von ihm gewählten Datum jene Bestimmungen der Statuten anzuwenden sind, die ab dem Tag seines Todes in Kraft treten würden ("**Ablebenserklärung**").

Beweis:    -    Statuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./B)
-    Beistatuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./C)
    Statuten der TiVi Foundation idF vom 29. November 2023 (Beilage ./D)
-    Beistatuten der TiVi Foundation idF vom 29. November 2023 (Beilage ./E)

23    Die Zweitbegünstigten haben in der jüngeren Vergangenheit den Plan gefasst, den Kläger als alleinigen Stifter und Erstbegünstigten zu entmachten, die Kontrolle über die Erstbeklagte zu erlangen und ihm diese Rechte zu entziehen zu versuchen.

## 2.2.    Der Versuch der Entmachtung des Klägers durch die Zweitbegünstigten

24    Ende Juli 2024 haben die Zweitbegünstigten den Kläger anlässlich der Feier seines 68. Geburtstages in Warschau getroffen. Am 31. Juli 2024 kam es im Hotel Raffles in Warschau zu einer Besprechung zwischen dem Kläger, seinem Vertrauensanwalt Jerzy Modrzejewski (in der Folge: "**Vertrauensanwalt**") und den Zweitbegünstigten. Gegenstand dieser Besprechung war die Testamentserrichtung des Klägers, wobei die Zweitbegünstigten (unter anderem) aufgrund dieser Gespräche erfuhren, dass sie die gesetzliche Erbquote erhalten und die Ehefrau des Klägers – die Stiefmutter der Zweitbegünstigten, der sie zeitlebens mit Abneigung und Feinseligkeit begegneten – als Miterbin eingesetzt werden würde, sohin die Zweitbegünstigten und die Ehefrau des Klägers je zu einem Viertel als Erben eingesetzt würden. Ebenso haben die Zweitbegünstigten dabei erfahren, dass der Vertrauensanwalt als Testamentsvollstrecker eingesetzt werden würde. Hinsichtlich der beiden letzten Punkte haben die Kinder des Klägers ihre Bedenken angemerkt und waren darüber sehr verärgert. Am Ende änderte der Kläger die Person des Testamentsvollstreckers, seine Ehefrau blieb aber unverändert als Erbin im Testament.

25    Diese Besprechung im Hotel Raffles drehte sich nahezu ausschliesslich um die letztwillige Verfügung des Klägers. Die Solkomtel und die zweite Stiftung des Klägers (die TiVi Foundation) standen dabei nicht im Fokus, wenngleich die Zweitbegünstigten auch hinsichtlich der Vermögenswerte dieser Stiftungen bzw. der dem Kläger statutarisch zukommenden Kontrollrechte Druck auf ihn ausübten.

26    Der Dritt- und die Viertbeklagte teilten dem Kläger in der vertrauensvollen familiären – wenngleich auch angespannten – Gesprächsatmosphäre mit, dass es im "Interesse der Familie und der Stiftungen" dringend notwendig sei, eine Reihe von (nicht näher erläuterten) "Änderungen" in den Stiftungen vorzunehmen, um die Stiftungen für den Ablebensfall des Klägers "abzusichern". Beide betonten und sicherten dem Kläger dafür zu, mit konkreten Textvorschlägen an ihn herantreten zu wollen, um diese sodann in Ruhe besprechen zu können. Die Zweitbegünstigten, insbesondere die Drittbeklagte, haben gegenüber dem Kläger dabei stets ausdrücklich betont, dass bei dieser "Absicherung" seine Rechte als Stifter

8

und Begünstigter respektiert und ihm selbstverständlich nicht entzogen werden würden. Der Kläger hatte zuvor gegenüber den Zweitbegünstigten stets unmissverständlich zum Ausdruck gebracht, dass er weiterhin die Kontrolle über alle seine Gesellschaften (dh auch hinsichtlich der Stiftungen) behalten und keine Rechte abgeben möchte. Welche konkreten Änderungen den Zweitbegünstigten nun vorschwebten, wurde von diesen in den Tagen vor dem 2. August 2024 nicht kommuniziert. Der anwesende Vertrauensanwalt des Klägers, der Kläger selbst und die Zweitbegünstigten kamen vielmehr überein, dass allfällige Vorschläge noch eingehend geprüft und erörtert werden müssen.

Beweis:   -   PV des Klägers
           -   Eidesstättige Erklärung des Klägers vom 24. August 2024 (Beilage ./F)
           -   Eidesstättige Erklärung des Jerzy Modrzejewski vom 24. August 2024 (Beilage ./G)
           -   Eidesstättige Erklärung von Justyna Kulka vom 24. August 2024 (Beilage ./H)

27    Tags darauf, am 1. August 2024, fand eine weitere Besprechung in den Büroräumlichkeiten des Klägers statt, in der wiederum die letztwillige Verfügung des Klägers Gegenstand der Diskussion war. Ein weiteres Mal gab es keine konkreten Vorschläge durch die Zweitbegünstigten hinsichtlich der von ihnen gewünschten "Änderungen" der Stiftungen, darunter der Erstbeklagten, die angeblich im "Interesse der Familie und der Stiftungen" gelegen sein sollen. Der Termin wurde beendet, weil der Kläger (gemeinsam mit seinen Kindern) zu einem unmittelbar darauffolgenden ärztlichen Termin aufbrach.

28    Der Vertrauensanwalt des Klägers teilte den Zweitbegünstigten in diesem Gespräch mit, dass er am nächsten Tag, den 2. August 2024, in die Ferien fahren würde, er aber vor Ort bleiben könne, um die Situation der Stiftungen zu diskutieren. Die Zweitbegünstigten, darunter insbesondere die Drittbeklagte, teilten ihm jedoch mit, dass dies nicht nötig sei, da sie noch "viel Zeit" für die dafür notwendigen Besprechungen hätten und alles nach der Rückkehr des Vertrauensanwalts nach dem 17. August 2024 diskutiert werden könnte.

29    Die Drittbeklagte teilte dem Vertrauensanwalt weiters mit, dass sie zwischen dem 19. und dem 26. August 2024 ohnedies in Warschau sein werde und diese Zeit für Gespräche "völlig ausreichend" sei.

30    Nach diesem Termin haben die Zweitbegünstigten dem Kläger wiederum zugesichert, dass sie ihm eine Liste mit Vorschlägen in Bezug auf verschiedene Vermögensangelegenheiten, einschliesslich der Stiftungen, übermitteln würden. Der Kläger wollte diese sodann dem Vertrauensanwalt weiterleiten, um sich beratschlagen zu können. Die Zweitbegünstigten erweckten beim Kläger am Abend des 1. August 2024 den – wie sich später herausstellte: bewusst unrichtigen – Eindruck, dass es keine Eile gebe, da sämtliche Vermögens-angelegenheiten noch Gegenstand von Beratungen und Besprechungen werden würden.

Beweis:   -   PV des Klägers
           -   Eidesstättige Erklärung des Klägers vom 24. August 2024 (Beilage ./F)
           -   Eidesstättige Erklärung des Jerzy Modrzejewski vom 24. August 2024 (Beilage ./G)
           -   Eidesstättige Erklärung von Justyna Kulka vom 24. August 2024 (Beilage ./H)

31      Am nächsten Tag, den 2. August 2024, traf der Kläger gegen Mittag am Hauptsitz seines Unternehmens (Telewizja Polsat) ein. Gegen 14:15 Uhr hat sich der Kläger zum Büro seines Sohnes begeben, dem hier Viertbeklagten, in welchem Büro die Zweitbegünstigten überraschenderweise bereits mit dem Notar Dariusz Wierzchucki warteten. Es stellte sich heraus, dass die Zweitbegünstigten hinsichtlich beider Stiftungen des Klägers (darunter die Erstbeklagte) bereits Erklärungen vorbereitet hatten. Die Zweitbegünstigten setzten den Kläger daraufhin massiv unter Druck und verlangten eindringlich, dass er diese sofort und ohne weitergehende Konsultationen mit seinen Beratern unterfertigen solle.

32      Die Zweitbegünstigten behaupteten dem Kläger gegenüber bewusst wahrheitswidrig, dass er durch die Unterfertigung der Urkunden an Rechten "nichts verliere", dass "es gut für ihn und für beide Stiftungen" sei und "dass es darum gehe, die Existenz der Stiftungen nach seinem Tod zu sichern". Die vorgelegten Erklärungen hatte der Kläger niemals zuvor gesehen. Er hatte auch keine Gelegenheit, sie in Ruhe durchzulesen und ebensowenig war er in der Lage, die vorgeschlagenen Änderungen an den Statuten der beiden Stiftungen mit ihrem bisherigen Inhalt zu vergleichen, da die Statuten in ihrer aktuellen Fassung nicht vorlagen und ihm auch nicht zur Verfügung gestellt wurden.

33      Der Kläger kannte den Inhalt der Bestimmungen in den Statuten nicht. Die einzige Bestimmung, die in den vorbereiteten Änderungserklärungen dem Wortlaut nach zitiert wurde, nämlich Art. 13 Abs (2) Punkt 3), erwähnte — irreführenderweise — gerade seine Stifterrechte. Dadurch wurde von den Zweitbegünstigten als verantwortliche Urkundenverfasser beim Kläger — insbesondere aufgrund ihrer ausdrücklichen wahrheitswidrigen Zusicherungen und Beteuerungen, dass er seine Reche nicht verliere — bewusst der unrichtige Eindruck vermittelt, dass seine Rechte "abgesichert" werden würden. Tatsächlich war das Gegenteil der Fall.

34      Die Zweitbegünstigten haben vielmehr die Abwesenheit des Vertrauensanwalts und ihre wahrheitswidrigen Angaben dafür genützt, um den Kläger bewusst in die Irre zu führen. Sie behaupteten dem Kläger gegenüber unrichtigerweise, dass es sich bei diesen Erklärungen nur um "rein technische Änderungen" bei der Funktionsweise der Stiftungen handeln würde, um die Existenz der Stiftungen nach seinem Tod "zu sichern". Keinesfalls haben die Zweitbegünstigten jemals auch nur erwähnt, dass schon jetzt — zu seinen Lebzeiten — Eingriffe in die Rechte des Klägers vorgenommen oder sogar seine Rechte bereits jetzt erlöschen werden würden.

35      Die wohlüberlegten und juristisch abgehaltenen Formulierungen waren aber kein kautelarjuristischer Zufall: Die Zweitbegünstigten mussten als verantwortliche Urkundenverfasser ganz genau wissen, welche Änderungen sie hier dem Kläger vorgelegt und damit untergeschoben haben. Ganz bewusst haben sie beim Kläger den unrichtigen Eindruck erweckt und seinen Irrtum verstärkt, dass er glaubte, bloss "technische Änderungen" vorzunehmen, die die Zeit nach seinem Ableben betreffen.

36    Die in den Urkunden enthaltenen "Erklärungen" unter Bezugnahme auf Art. 13 (2) 2 der Statuten wurden dem Kläger gegenüber in diesem Zusammenhang als Teil des "Massnahmenpakets" dargestellt, das zur Absicherung der Stiftungen nach seinem Tod erforderlich sei. Gerade die Abgabe der Erklärung nach Art. 13 (2) 2 der Statuten hat aber im Fall der Solkomtel zu einer sofortigen und signifikanten Reduzierung der Rechte des Klägers geführt. Niemals wurde gegenüber dem Kläger aber auch nur angedeutet, dass bereits jetzt seine Rechte beschnitten oder in diese eingegriffen werden könnte. Der Kläger hat – ganz im Gegenteil – zuvor gegenüber den Zweitbegünstigten immer klar kommuniziert, dass er jedenfalls weiterhin die Kontrolle über die Stiftungen behalten und keinesfalls Rechte abgeben möchte.

37    Nachdem die Zweitbegünstigten – entgegen ihrer Zusicherung – die Vorschläge nicht vorab dem Kläger übermittelt hatten, hat dieser versucht, in der Drucksituation Aufklärung zu erhalten. Er ging mit dem Notar in den hinteren Teil des Büros des Viertbeklagten, weil offenkundig auch der Notar – ohne die Statuten vor sich habend – nicht nachvollziehen konnte, welche Änderungen nun hier vorgenommen werden sollten und er den Kläger daher auch niemals über die allfälligen Rechtsfolgen aufklären konnte (und sohin auch nicht aufgeklärt hat).

38    Der Notar rief daraufhin mittels Lautsprechermodus den Vertrauensanwalt an und teilte dem Vertrauensanwalt mit, dass er im Auftrag des bei ihm anwesenden Klägers anrief. Als der Notar gegenüber dem Vertrauensanwalt die Urkunde vorzulesen begann, unterbrach dieser ihn und teilte – nachvollziehbarerweise – mit, dass er, um die Änderungen vergleichen zu können, die gesamten Statuten vor sich haben müsse. Plötzlich erschien im Hintergrund die Drittbeklagte und forderte den Kläger und den Notar auf, das Gespräch sofort zu beenden, da keine Zeit und keine Notwendigkeit bestehe, sich über die Änderungen zu beraten. Das Gespräch wurde daraufhin abgebrochen.

Beweis:    -    PV des Klägers
           -    Eidesstättige Erklärung des Klägers vom 24. August 2024 (Beilage ./F)
           -    Eidesstättige Erklärung des Jerzy Modrzejewski vom 24. August 2024 (Beilage ./G)

39    Unter (wahrheitswidrigen) Zusicherungen und Versprechen (jedoch ohne weitere Erläuterungen zum Inhalt und den Rechtsfolgen der vorbereiteten Erklärungen) wurde der Kläger sodann von den Zweitbegünstigten dazu verleitet, die Erklärungen zu unterfertigen. Die Zweitbegünstigten beteuerten dabei stets, dass der Kläger "nichts zu befürchten" und keine Sorge zu haben brauche, da sich seine Stellung in den Stiftungen nicht ändern und er seine Rechte wie bisher behalten würde. Tatsächlich wurden von den Zweitbegünstigten aber solche Dokumente – wohl unter vorheriger juristischer Beratung – penibel vorbereitet, die sie für die inkriminierte Kontrollübernahme der Stiftung und zur Entmachtung des Klägers benötigten.

11

268

40    Im familiären Vertrauen auf die Richtigkeit der Angaben der Zweitbegünstigten und aufgrund der von diesen gesetzten Täuschungshandlungen, wonach es sich beim Termin vor dem Notar angeblich bloss um eine formal erforderliche "Absicherung" des Interesses der Stiftung nach dem Ableben des Klägers handle, hat der Kläger schliesslich die nachfolgenden Erklärungen abgegeben:

– Die Erklärung über die Änderung der Statuten der Solkomtel, unter der die Unterschriften durch Dariusz Wierzchucki, Notar in Warschau, zu Urkunde A Nr. 6219/2024, beglaubigt wurden ("**Änderungserklärung Solkomtel**"). Diese Änderungen – ohne Vergleichsfassung der Statuten – erweckten beim Kläger den unrichtigen Eindruck, als ob sie darauf abzielten, gewisse (dem Stifter ohnedies bereits als Kurator zukommende) Einflussrechte hinsichtlich etwa Personalentscheidungen oder Belastungen und Veräusserungen von Stiftungsvermögen zugunsten des Stifters "abzusichern".[22] Tatsächlich bezweckten diese Änderungen vorderhand nur, die nachfolgend erschlichene Ablebenserklärung des Stifters zu verschleiern, indem beim Kläger der (unrichtige) Eindruck erweckt wurde, er würde seine Rechte bis zum Ableben dadurch absichern. Schliesslich war auch Zweck dieser Änderungserklärung, die *uno actu* ebenso erschlichene inkriminierte Ablebenserklärung des Klägers mit dem Anschein eines tatsächlichen Willensentschlusses des Klägers zu bekleiden, der nie vorlag.

– Die Erklärung über die Änderung der Statuten der TiVi, unter der die Unterschriften durch Dariusz Wierzchucki, Notar in Warschau, zu Urkunde A Nr. 6223/2024, notariell beglaubigt wurden ("**Änderungserklärung TiVi**").

– Die Erklärung "Beschluss im Umlaufverfahren" gemäss Artikel 7 der Statuten der Solkomtel, unter der die Unterschriften durch Dariusz Wierzchucki, Notar in Warschau, zu Urkunde A Nr. 6227/2024, notariell beglaubigt wurden ("**Kuratorenerklärung Solkomtel**"). Mit dieser Kuratorenerklärung Solkomtel sollte der Stiftungsrat den "Freibrief" erhalten, die Änderungen in der Solkomtel auch umzusetzen, da Beschlüsse des Stiftungsrates, die ohne Zustimmung des Klägers erfolgen, gemäss Punkt IV. der Beistatuten "ungültig" sind.

– Die Erklärung "Beschluss im Umlaufverfahren" gemäss Artikel 7 der Statuten der TiVi, unter der die Unterschriften durch Dariusz Wierzchucki, Notar in Warschau, zu Urkunde A Nr. 6228/2024, beglaubigt wurden ("**Kuratorenerklärung TiVi**").

---

[22] Vgl die Erklärung vom 2. August 2024 (Beilage ./I), wonach in Art. 13 ein Punkt 3. angefügt wurde und Zustimmungen des Stifters zu den erwähnten Punkten "obligatorisch" wären; tatsächlich war das bereits zuvor der Fall (vgl Punkt IV. der Beistatuten hinsichtlich seiner Einflussrechte als Kurator).

–  Die Erklärung gemäss Artikel 13 (2) 2 der Statuten der Solkomtel, notariell beurkundet durch Dariusz Wierzchucki, Notar in Warschau, zu Urkunde A Nr. 6229/2024 (**"Ablebenserklärung Solkomtel"**). Mit dieser Erklärung sollte eine – wie hier vergleichsweise gegenständliche – Ablebenserklärung hinsichtlich der Solkomtel in Kraft gesetzt werden, nämlich, dass jene Bestimmungen der Statuten anzuwenden sein sollen, die ansonsten erst ab dem Tag des Todes des Klägers in Kraft treten würden (vgl oben, Rn 22).

–  Die Erklärung gemäss Artikel 13 (2) 2. (i) der Satzung der TiVi, notariell beurkundet durch Dariusz Wierzchucki, Notar in Warschau, zu Urkunde A Nr. 6235/2024 (**"Ablebenserklärung TiVi"**).

Beweis:   -   PV des Klägers
-   Eidesstättige Erklärung des Klägers vom 24. August 2024 (Beilage ./F)
-   Eidesstättige Erklärung des de Jerzy Modrzejewski vom 24. August 2024 (Beilage ./G)
-   Änderungserklärung Solkomtel vom 2. August 2024 (Beilage ./I)
-   Änderungserklärung TiVi vom 2. August 2024 (Beilage ./J)
-   Kuratorenerklärung Solkomtel vom 2. August 2024 (Beilage ./K)
-   Kuratorenerklärung TiVi vom 2. August 2024 (Beilage ./L)
-   Ablebenserklärung Solkomtel vom 2. August 2024 (Beilage ./M)
-   Ablebenserklärung TiVI vom 2. August 2024 (Beilage ./N)

## 2.3.  Die (von den Zweitbegünstigten arglistig versuchte) "Selbstausschaltung" des Klägers im Überblick

41    Die Zweitbegünstigten haben den Kläger durch die erschlichenen Erklärungen zur **"Selbstausschaltung gegenüber der Solkomtel"** zu verleiten versucht (wenngleich all diese Schritte <u>nicht wirksam</u> waren):

1.  Als <u>ersten Schritt</u> hätte der Kläger durch die Änderungserklärung Solkomtel die Statuten der Erstbeklagten dahingehend ändern sollen, dass ein neuer Art. 13 Abschnitt (2) Punkt 3 hinzugefügt wird, welcher die Rechtsfolgen bzw. die Rechte des Klägers im Falle der Abgabe einer Ablebenserklärung definiert. Durch die gewählte Textierung wurde ihm unrichtigerweise vorgegaukelt, dass er eine "Absicherung" seiner Rechte vornähme (tatsächlich kamen ihm diese Rechte bereits als Kurator zu).

2.  Als <u>zweiten Schritt</u> hätte der Kläger den Stiftungsräten durch die Kuratorenerklärung Solkomtel einen "Blankoscheck" ausstellen sollen, die zuvor erwähnten Änderungen der Statuten auch umsetzen zu können und zu dürfen.

3.  Als <u>dritten Schritt</u> hätte der Kläger sich sodann mit seiner Ablebenserklärung Solkomtel gegenüber seiner eigenen Stiftung – in rechtlicher Sicht – für sinngemäss verstorben erklärt, sodass jene Bestimmungen der Statuten anzuwenden seien, die ansonsten erst ab dem Tag seines Todes in Kraft treten würden.

13

*42*     Diese Erklärungen entsprachen nicht dem wahren Willen des Klägers und wurden von den
         Zweitbegünstigten arglistig erschlichen. Weder hatte der Kläger die Absicht, eine Änderung
         der Statuten der jeweiligen Stiftung in diesem Sinne herbeizuführen, noch eine
         Ablebenserklärung für eine der beiden Stiftungen abzugeben.

    Beweis:    -  PV des Klägers
               -  Eidesstättige Erklärung des Klägers vom 24. August 2024 (Beilage ./F)
               -  Eidesstättige Erklärung des Jerzy Modrzejewski vom 24. August 2024 (Beilage ./G)
               -  Eidesstättige Erklärung von Justyna Kulka vom 24. August 2024 (Beilage ./H)
               -  Änderungserklärung Solkomtel vom 2. August 2024 (Beilage ./I)
               -  Ablebenserklärung Solkomtel vom 2. August 2024 (Beilage ./M)

## 2.4.    Stand-Still-Vereinbarung und gescheiterte Gespräche über eine Einigung

*43*     Nach Erhalt einer Kopie dieser Erklärungen am späten Abend des 2. August 2024 besprach
         der Kläger diese und das Ausmass der vorgenommenen Änderungen mit dem
         Vertrauensanwalt. Aus dieser Analyse ging hervor, dass dem Kläger eine Reihe von Rechten
         entzogen worden waren und sich seine Rechtsposition – entgegen den Beteuerungen der
         Zweitbegünstigten, es würde sich nichts ändern – wesentlich verschlechtert hatte.

*44*     Am 3. August 2024 gab es ein weiteres Treffen zwischen dem Kläger und den
         Zweitbegünstigten sowie dem Vertrauensanwalt, bei dem die Zweitbegünstigten jedoch nicht
         bereit waren, die Erklärungen vom 2. August 2024 als unwirksam anzuerkennen. Der Kläger
         und die Zweitbegünstigten schlossen aber eine (notariell beurkundete) Vereinbarung ab,
         wonach (i) die Erklärungen vom 2. August 2024 bis zum 16. August 2024 ausgesetzt sind
         und (ii) auf Basis dieser Erklärungen keine Handlungen gesetzt werden dürfen. Stattdessen
         sollte bis zum 16. August 2024 versucht werden, eine einvernehmliche Lösung zu finden
         ("**Stand-Still-Vereinbarung**"). Die Gespräche scheiterten jedoch bereits am 12. August
         2024.

    Beweis:    -  PV des Klägers
               -  Eidesstättige Erklärung des Klägers vom 24. August 2024 (Beilage ./F)
               -  Eidesstättige Erklärung des Jerzy Modrzejewski vom 24. August 2024 (Beilage ./G)
               -  Stand-Still-Vereinbarung vom 3. August 2024 (Beilage ./O)

## 2.5.    Anfechtungserklärung vom 13. August 2024

*45*     Der Kläger hat im Hinblick auf die gescheiterten Gespräche über eine Einigung mit den
         Zweitbegünstigten und aus Furcht vor unrechtmässigen Handlungen am 13. August 2024 in
         Warschau eine Erklärung (auf Polnisch und Deutsch) unterzeichnet, dass er zur Abgabe der
         inkriminierten Erklärungen vom 2. August 2024 durch arglistige Täuschung verleitet wurde
         und diese daher nichtig, mangelhaft und jedenfalls unwirksam sind.

*46*     Die Erklärung vom 13. August 2024 wurde noch am selben Tag persönlich an das
         Stiftungsratsmitglied Tomasz Szeląg übergeben, welcher den Erhalt der Erklärung am
         13. August 2024 in seinem eigenen Namen, sowie namens der Stiftung, bestätigt hat.

47  Zudem wurde die Erklärung vom 13. August 2024 noch am selben Tag an die übrigen Stiftungsratsmitglieder und die Zweitbegünstigten versendet (Philipp Senn wurde die Erklärung vom 13. August 2024 persönlich von Tomasz Szeląg am 14. August 2024 ausgehändigt).

Beweis:    -    PV des Klägers
           -    Eidesstättige Erklärung des Klägers vom 24. August 2024 (Beilage ./F)
           -    Eidesstättige Erklärung des Jerzy Modrzejewski vom 24. August 2024 (Beilage ./G)
           -    (Anfechtungs-)Erklärung des Klägers vom 13. August 2024 samt Empfangsbestätigung von Tomasz Szeląg (Beilage ./P)

## 2.6.    Rechtswidriger Abberufungs- und Bestellungsversuch durch die Zweitbegünstigten

48  Nur einen Tag später – somit als unmittelbare Reaktion auf die Anfechtungserklärung des Klägers vom 13. August 2024 – hat der Zweitbeklagte mit zwei E-Mails vom 14. August 2024 an die Stiftungsräte der Stiftung Tomasz Szeląg und Jaroslaw Grzesiak (gemeinsam mit der Drittbeklagten) versucht, auf Basis der erschlichenen (unwirksamen) Erklärungen die beiden eben genannten Stiftungsräte "abzuberufen" und stattdessen sich selbst und eine Vertraute der Drittbeklagten, Zofia Jedrzeyewska, als Stiftungsratsmitglied zu bestellen.

49  Dem Stiftungsratspräsidenten Philipp Senn wurden dazu am 14. August 2024 Erklärungen des Zweitbeklagten und der Drittbeklagten übermittelt, wonach diese (unter Missachtung der Stand-Still-Vereinbarung vom 3. August 2024 und der Erklärung des Antragstellers vom 13. August 2024) folgende personelle Änderungen im Stiftungsrat vorgenommen haben:

(i) Der Zweitbeklagte hat Tomasz Szeląg als Stiftungsratsmitglied abberufen und an dessen Stelle sich selbst bestellt.

(ii) Die Drittbeklagte hat Jaroslaw Grzesiak als Stiftungsratsmitglied abberufen und an dessen Stelle ihre Vertraute Zofia Jedrzeyewska bestellt.

Beweis:    -    E-Mails des Zweitbeklagten zur (unwirksamen) "Abberufung" des Tomasz Szelag und Jaroslaw Grzesiak vom 14. August und Unwirksame "Bestellungs-" und "Annahmeerklärungen" des Zweitbeklagten und der Zofia Jedrzeyewska vom 14. August 2024 (Beilage ./Q)

50  Der Zweit- und die Drittbeklagte haben sich vor der Vornahme dieser (unwirksamen) personellen Massnahmen weder mit dem Kläger beraten, noch hat der Kläger hierzu seine Zustimmung (als Kurator) erteilt. Die Abberufungen- und Bestellungen wurden zudem bloss per E-Mail kommuniziert, was gegen Artikel 6 (6) der Statuten verstösst, wonach Abberufungen oder Bestellungen von Stiftungsräten in Schriftform erfolgen müssen und elektronische Post ausdrücklich unzulässig ist.

Beweis:    -    PV des Klägers

                E-Mails des Zweitbeklagten zur (unwirksamen) "Abberufung" des Tomasz Szelag und Jaroslaw Grzesiak vom 14. August und Unwirksame "Bestellungs-" und "Annahmeerklärungen" des Zweitbeklagten und der Zofia Jedrzeyewska vom 14. August 2024 (Beilage ./Q)

15

272

## 2.7.    Neuabgabe der Ablebenserklärung Solkomtel am 17. August 2024

51    Mit Erklärung vom Samstag, 17. August 2024, hat der Kläger seine <u>Ablebenserklärung Solkomtel</u> gegenüber der Erstbeklagten gemäss Artikel 13 (2) 2 der Statuten <u>durch eine neue Erklärung ersetzt</u>; (spätestens) dadurch wurde die Ablebenserklärung Solkomtel vom 2. August 2024 unbeachtlich. Dazu im Detail:

52    Artikel 13 (2) 2 der Statuten der Solkomtel enthält ein <u>Recht auf jederzeitige Neuabgabe und Ersetzen</u> einer Erklärung nach Artikel 13 (2) 2:

> "*Der Stifter hat zu seinen Lebzeiten das Recht, durch Abgabe einer Willenserklärung in Form einer notariellen Urkunde zu verfügen, dass er ab einem von ihm genannten Datum die Anwendung der Bestimmungen der Statuten und des Beistatuts, wie sie zu seinen Lebzeiten angewendet werden, ablehnt und dass an ihrer Stelle Bestimmungen anzuwenden sind, die ab dem Tag seines Todes oder im Falle einer vollständigen und dauerhaften Handlungsunfähigkeit in Kraft treten. <u>Der Stifter hat das Recht, die besagte Erklärung mehrfach abzugeben, wobei er bei der Abgabe einer weiteren Erklärung auf keine Weise an den Inhalt seiner früheren Erklärungen gebunden ist.</u>*"

> <u>Beweis:</u>    -    Statuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./B)

53    Der Kläger hat dementsprechend am 17. August 2024 folgende Erklärung abgegeben:

> "*Herr Zygmunt Józef Solorz erklärt somit, dass er seine **frühere Erklärung gemäß Artikel 13 (2) 2 der Statuten, abgegeben am 2. August 2024** und notariell beurkundet durch Dariusz Wierzchucki, Notar in Warschau, zu Urkunde A Nr. 6229/2024 bzw. Nr. 6230/2024, in Übereinstimmung mit Artikel 13 (2) 2 der Satzung der Stiftung **durch folgende neue Erklärung gemäß Artikel 13 (2) 2 der Statuten ersetzt***:

> ***Der Stifter Zygmunt Jozef Solorz erklärt, dass er in Übereinstimmung mit Artikel 13 (2) 2 der Satzung der Stiftung ab dem 1. Jänner 2035 (ersten Jänner zweitausendfünfunddreißig) auf die Anwendung der zu seinen Lebzeiten geltenden Bestimmungen der Statuten und der Beistatuten der Stiftung verzichtet und er ab dem 1. Jänner 2035 (ersten Jänner zweitausendfünfunddreißig) die Anwendung jener Best-immungen anordnet, die zum Zeitpunkt des Todes des Stifters in Kraft treten.*" (Hervorhebungen hinzugefügt).

54    Damit hat der Kläger sichergestellt, dass nicht jetzt schon seine Stifterrechte beschnitten werden (wie dies nach der Ablebenserklärung Solkomtel vom 2. August 2024 sein hätte sollen), sondern die Statutenbestimmungen, die ab dem Tag seines Todes in Kraft treten würden, erst ab dem 1. Jänner 2035 angewendet werden sollen.

55    In diesem Zusammenhang erklärte der Kläger auch, dass

–    er am 2. August 2024 in Warschau von den Zweitbegünstigten der Stiftung durch (unter anderem arglistige) Täuschung dazu veranlasst wurde, eine Erklärung gemäss Artikel 13 (2) 2 der Statuten (Ablebenserklärung Solkomtel) abzugeben. Auch wenn er diese Erklärung als unwirksam und nichtig ansehe, möchte u zur Vermeidung von Missverständnissen auch förmliche Gegenmassnahmen setzen; und

–    er als Stifter gemäss Artikel 13 (2) 2 der Statuten der Stiftung das Recht habe, jederzeit eine neue Erklärung gemäss Artikel 13 (2) 2 der Statuten (Able-benserklärung) abzugeben.

56    Diese Erklärung des Antragstellers vom 17. August 2024 wurde vom österreichischen Notar Alexander Winkler zu GZ 1558 notariell beglaubigt.

Beweis:    -    Statuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./B)
          -    Erklärung des Klägers betreffend die Neuabgabe der Ablebenserklärung Solkomtel vom 17. August 2024 (Beilage ./R)

## 2.8.    Warnschreiben an die Zweitbegünstigten und Stiftungsratsmitglieder vom 17. August 2024

57    Ebenso wurden am Samstag, 17. August 2024, insgesamt sieben "Warnschreiben" an (i) die drei Zweitbegünstigten und (ii) die vier damaligen Stiftungsratsmitglieder (Philipp Senn, Jaroslaw Grzesiak, Katarzyna Tomczuk und Tomasz Szeląg) der Erstbeklagten übermittelt, um die Rechte des Klägers abzusichern und sie in Kenntnis über die wahren Geschehnisse und die erfolgte Neuabgabe der Ablebenserklärung zu setzen.

58    Die Schreiben des Klägers vom 17. August 2024 an die Stiftungsratsmitglieder enthielten eine Aufforderung zur Unterlassung der Ausübung von Stiftungsratsrechten und/oder der Setzung von Handlungen in der Stiftung (es sei denn, dies wäre zur Erfüllung gesetzlicher Verpflichtungen zwingend erforderlich). Insbesondere wurden die Stiftungsratsmitglieder aufgefordert, (i) Handlungen zu unterlassen, die voraussetzen würden, dass die Erklärungen des Klägers vom 2. August 2024 rechtswirksam wären und (ii) weder die Abberufung bestehender Stiftungsräte anzuerkennen oder mit angeblich neu bestellten Stiftungsräten zusammenzuwirken.

59    Die Schreiben des Klägers vom 17. August 2024 an die Zweitbegünstigten enthielten

–    eine Aufforderung, keine angeblichen (tatsächlich nicht bestehenden) Rechte in der Eigenschaft als Zweitbegünstigte auszuüben, einzufordern oder sich sonst darauf zu berufen, die (nur) bestehen würden, wenn die Erklärungen des Klägers vom 2. August 2024 rechtswirksam wären, und insbesondere weder die Abberufung bestehender Stiftungsräte, noch die Besetzung neuer Stiftungsräte zu erklären, sowie

–    eine Mitteilung der geplanten Änderung der Statuten der TiVi.

17

274

60    In den Schreiben wurde zunächst erläutert, dass der Kläger – unter bewusstem und gewolltem Zusammenwirken der drei Zweitbegünstigen – am 2. August 2024 (unter anderem arglistig) dazu verleitet wurde, die Erklärungen vom 2. August 2024 abzugeben (diese Erklärungen wurden näher erläutert), und diese nicht dem wahren Willen des Klägers entsprachen. Weiters, dass dem Kläger zum Zeitpunkt der Unterfertigung der Erklärungen deren Inhalt nicht bewusst war und er weder die Absicht hatte, eine Änderung der Statuten der jeweiligen Stiftung herbeizuführen, noch eine Erklärung gemäss Artikel 13 (2) 2 der Statuten der Solkomtel, abzugeben.

61    Die Schreiben enthielten zudem Informationen über

–    die (Anfechtungs-)Erklärung des Klägers vom 13. August 2024 betreffend die Unwirksamerklärung der Erklärungen vom 2. August 2024 (diese war den Schreiben auch angehängt);

–    die E-Mails des Zweitbeklagten vom 14. August 2024 samt Erklärung, dass die vom Zweitbeklagten erklärte Abberufung der Stiftungsräte rechtsunwirksam war und die beiden Stiftungsräte daher (nach wie vor) im Amt sind; und

–    die Neuabgabe der Erklärung gemäss Artikel 13 (2) 2 der Statuten am 17. August 2024 (diese neue Ablebenserklärung war den Schreiben auch angehängt).

62    Zudem wurde in den Schreiben informationshalber mitgeteilt, dass der Kläger

–    aus Gründen der Vorsicht von seinem in den Statuten eingeräumten (unbeschränkten) Änderungsrecht Gebrauch machen und sämtliche am 2. August 2024 erklärten Änderungen (für den bestrittenen Fall, dass diese doch Rechtswirkungen erzeugt haben sollten) rückgängig machen wird, sodass die Statuten (wieder) wie in der Fassung wie vor dem 2. August 2024 lauten;

–    bis zu einer allfälligen ausdrücklichen gegenteiligen Erklärung seine Zustimmung zu jeglichen Rechtshandlungen oder sonstigen Verfügungen oder Massnahmen, die die Stiftung betreffen, ausdrücklich (auch für die Zukunft) verweigert.

63    Abschliessend hat der Kläger in den Schreiben mitgeteilt, dass er über sämtliche (unbeschränkte) Stifterrechte verfügt (wie ihm in den Statuten und Beistatuten in der Fassung vor dem 2. August 2024 eingeräumt).

Beweis:    -    Konvolut an Warnschreiben an die Zweitbegünstigten und an den Stiftungsrat sowie an den Stiftungsratspräsidenten vom 17. August 2024 (Beilage ./S)

## 2.9.    Reaktionen auf die Warnschreiben vom 17. August 2024

64    Die Stiftungsratsmitglieder Tomasz Szeląg (am 18. August 2024) und Jaroslaw Grzesiak (am 20. August 2024) haben den Erhalt der Warnschreiben vom 17. August 2024, sowie dass sie der darin genannten Aufforderung, von der Ausübung der Rechte des Stiftungsrates in den Stiftungen abzusehen nachkommen werden, bestätigt.

18

275

Beweis:    -   E-Mail vom 18. August 2024 betreffend die Empfangsbestätigung des Schreibens vom
              17. August 2024 von Tomasz Szelag (Beilage ./T)

           -   Schreiben vom 20. August 2024 betreffend die Empfangsbestätigung des Schreibens
              vom 17. August 2024 von Jaroslaw Grzesiak (Beilage ./U)

*65*    Der Stiftungsratspräsident Philipp Senn behauptete bei einem Treffen mit den
       Rechtsvertretern des Klägers am 20. August 2024, er habe die E-Mail mit dem
       Warnschreiben vom 17. August 2024 nicht erhalten (obwohl eine automatische
       Sendebestätigung an seine Mail-Adresse vorliegt). Der guten Ordnung halber wurde
       Philipp Senn das Warnschreiben vom 17. August 2024 am 21. August 2024 neuerlich per E-
       Mail zugesendet; diesem war auch das Informationsschreiben an die Zweitbegünstigten vom
       18. August 2024 (siehe dazu Punkt 0 unten) beigefügt. Philipp Senn hat den Erhalt dieser
       Nachricht bestätigt.

       Beweis:    -   E-Mail an Philipp Senn vom 21. August 2024 samt Lesebestätigung (Beilage ./V)

*66*    Das Stiftungsratsmitglied Katarzyna Tomczuk hat auf das Warnschreiben vom 17. August
       2024 nicht reagiert; es liegt jedoch eine automatische Sendebestätigung an ihre Mail-
       Adresse vor.

       Beweis:    -   Konvolut an Warnschreiben an die Zweitbegünstigten und an den Stiftungsrat sowie
                      an den Stiftungsratspräsidenten vom 17. August 2024 2024 (Lesebestätigung der
                      Katarzyna Tomczuk in Beilage ./S)

*67*    Vom Viertbeklagten erhielt der Kläger (bzw. dessen Rechtsvertreter) am 18. August 2024 ein
       E-Mail von dessen polnischen Rechtsanwalt Paweł Rymarz (von der polnischen
       Anwaltskanzlei Rymarz Zdort Maruta), in dem der Erhalt des Warnschreibens vom
       17. August 2024 bestätigt wurde. Ansonsten wurde der Inhalt des Warnschreibens vom
       17. August 2024 umfassend bestritten. Am 20. August 2024 bestritt der Viertbeklagte (durch
       seinen Rechtsanwalt Paweł Rymarz) erneut die Rechtsposition des Klägers (insbesondere
       wurde bestritten, dass der Kläger ein Recht habe, die Statuten zu ändern).

       Beweis:    -   E-Mail von RA Paweł Rymarz vom 18. August 2024 (Beilage ./W)

                  -   Schreiben von RA Paweł Rymarz und Krzysztof Sajchta vom 20. August 2024
                      (Beilage ./X)

*68*    Von der Drittbeklagten erhielt der Kläger (bzw. dessen Rechtsvertreter) am 20. August 2024
       ein Schreiben vom liechtensteinischen Rechtsanwalt Bernhard Motal (von der
       liechtensteinischen Anwaltskanzlei Gasser Partner Rechtsanwälte), in dem der Erhalt des
       Warnschreibens vom 17. August 2024 bestätigt wurde. Ansonsten wurde der Inhalt des
       Warnschreibens vom 17. August 2024 umfassend bestritten.

       Beweis:    -   Schreiben von RA Bernhard Motal vom 20. August 2024 (Beilage ./Y)

*69*    Der Zweitbeklagte hat auf das Schreiben vom 17. August 2024 nicht reagiert; es liegt jedoch
       eine automatische Sendebestätigung an seine Mail-Adresse vor.

       Beweis:    -   Konvolut an Warnschreiben an die Zweitbegünstigten und an den Stiftungsrat sowie
                      an den Stiftungsratspräsidenten vom 17. August 2024 (Lesebestätigung der
                      Zweitbeklagten in Beilage ./S)

2.10. Änderung der Statuten

70   Am Sonntag, dem 18. August 2024, wurden die Zweitbegünstigten vorherig darüber informiert, dass der Kläger zum Schutz der Stiftung von seinem in den Statuten eingeräumten (unbeschränkten) Änderungsrecht Gebrauch machen und Artikel 5 der Statuten dahingehend ergänzen wird, dass ein neuer Absatz 5 eingefügt wird (**"Verwirkungsklausel"**), der wie folgt lauten wird:

"*(5) Jeder (mit Ausnahme des Stifters), der*

*(i) die Stiftung als solche, ihre Errichtung oder ihren Bestand, ihre Statuten, Beistatuten, Reglemente, finanziellen Verhältnisse, Entscheidungen (ob von treuhänderischer oder betriebswirtschaftlicher Natur), oder Vermögenszuwendungen, an wen auch immer diese erfolgt sind, ganz oder teilweise bei einer in- oder ausländischen Behörde oder einem Gericht anficht oder die Stiftung finanziell oder in ihrer Reputation schädigt, oder*

*(ii) Rechtshandlungen des Stifters, ganz oder teilweise bei einer in- oder ausländischen Behörde oder einem Gericht anficht oder den Stifter finanziell oder in seiner Reputation schädigt,*

*verliert seine Begünstigungsrechte. In diesem Fall sollen sämtliche Vorteile (oder andere Rechte), auf die der Begünstigte einen Anspruch gehabt hätte, pro-rata zwischen den übrigen Begünstigten der Stiftung im Einklang mit deren jeweiligen Rechten an der Stiftung, aufgeteilt werden.*

*Der Kurator kann nach freiem Ermessen solche ausgeschlossenen Personen gänzlich oder teilweise, mit ex tunc- oder ex nunc-Wirkung, wiedereinsetzen, wenn diese Person das Anfechtungsbegehren definitiv zurückzieht oder die Schädigung beendet.*"

71   Das Schreiben enthielt zudem eine englische Übersetzung dieses Artikel 5 (5) der Statuten.

Beweis:   -   Schreiben an die Zweitbegünstigten über die bevorstehende (Rück-)Änderung der Statuten und Aufnahme einer Verfallsklausel vom 18. August 2024 (Beilage ./Z)

72   Am Montag, den 19. August 2024, wurden mittels Notariatsakten die klagsgegenständlichen Statuten von diesem Tage durch den Kläger wirksam in Kraft gesetzt.

73   Denn Artikel 13 (2) 1. der Statuten enthält ein Recht auf Änderung der Statuten wie folgt:

"*Der Stifter hat zu seinen Lebzeiten das Recht zur Änderung der Stiftungserklärung, der Statuten, des Beistatuts und eines allenfalls erlassenen Wunschschreibens („Letter of Wishes") des Stifters.*

Beweis:   -   Statuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./B)

74   Diese Bestimmung ist auch durch die Erklärungen vom 2. August 2024 in ihrem Wortlaut unverändert geblieben.

75   Der Kläger hat mit Erklärung und Beschluss vom 19. August 2024 gemäss Artikel 13 (2) 1 zweiter Satz der Statuten der Stiftung die Statuten in der Fassung vom 15. Juni 2023 bestätigt und Artikel 5 dahingehend ergänzt, dass wie oben zitiert ein neuer Absatz 5 (Verwirkungsklausel) eingefügt wurde.

76   Die sohin gültige Fassung der Statuten der Stiftung entspricht – mit Ausnahme der Ergänzung der vorzitierten Verwirkungsklausel (Artikel 5 (5)) – jener Fassung, die zuletzt mit Erklärung vom 15. Juni 2023, gerichtlich beglaubigt am 20. Juni 2023 am Fürstlichen Landgericht Vaduz durch die Urkundsperson Frau Beatrix Maier, vom Kläger abgeändert und in Kraft gesetzt wurde. Die Einführung der Verwirkungsklausel erfolgte, um die Stiftung und ihr Vermögen langfristig vor ungerechtfertigten Angriffen und Schäden zu schützen.

77   Die Änderung der Statuten der Stiftung vom 19. August 2024 wurde vom österreichischen Notar Alexander Winkler zu GZ 1562 notariell beglaubigt.

Beweis:   -   Statuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./B)

Notariatsakt vom 19. August 2024 über die Änderung der Statuten der Solkomtel (GZ 1562) (Beilage ./AA)

## 2.11.  Der Stiftungsratspräsident kommt seinen Pflichten nicht nach und verweigert die Einsichtnahme

78   Am 20. August 2024 kam es zu einem Treffen zwischen den Rechtsvertretern des Klägers und des Stiftungsratspräsidenten Philipp Senn in dessen Räumlichkeiten in der Kirchstrasse 12. Es wurden ihm persönlich in seiner Funktion als Stiftungsratspräsident die Originale der Notariatsakte hinsichtlich der Erklärungen des Klägers vom 19. August 2024, mit denen im Wesentlichen die Änderungen vom 2. August 2024 rückgängig gemacht wurden, überreicht; zudem erhielt der Stiftungsratspräsident die neue Ablebenserklärung durch den Kläger vom 17. August 2024 im Original (Notariatsakt).

79   Spätestens am 20. August 2024 hätte der Stiftungsratspräsident daher die Pflicht gehabt, gemäss Artikel 13 (5) der Statuten die Begünstigten unverzüglich über die Änderungen zu informieren sowie die schriftliche Erklärung abzugeben, mit der die Zustellung des Änderungsbegehrens und die Kenntnisnahme des Inhalts der Änderung bestätigt wird. Dieser Pflicht ist er bis dato nicht nachgekommen.

Beweis:   -   Statuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./B)

-   Schreiben an Philipp Senn vom 20. August 2024 samt Übernahmebestätigung (Beilage ./BB)

-   Übernahmebestätigung der Originaldokumente von Philipp Senn vom 20. August 2024 (Beilage ./CC)

80    Mit dem Stiftungsratspräsidenten wurde die Rechtslage sowie die drohende Gefahr erörtert, dass die Zweitbegünstigten rechtswidrig versuchen, die Kontrolle über die Stiftung zu übernehmen. Anlässlich der Besprechung teilte Philipp Senn mit, dass er aufgrund der derzeit vorliegenden widersprechenden Erklärungen von verschiedenen Parteien derzeit keine Handlungen für die Stiftungen setzen werde. Weiter teilte er mit, dass ihm auch nicht klar sei, wer derzeit eigentlich Stiftungsrat sei. Wie sich nunmehr herausstellte, war dies die glatte Unwahrheit:

81    Mit E-Mail vom 21. August 2024 um 15:59 Uhr wurde Philipp Senn aufgefordert, dem Kläger als Kurator Einsicht in die Stiftungsdokumente und Informationen zu gewähren.[23] Diesen Termin versuchte der Stiftungsratspräsident mit seinem Antwort-E-Mail vom 22. August 2024, 8:02 Uhr Früh, auf die nachfolgende Woche zu verschieben. Die Vertreter des Klägers antworteten umgehend darauf, dass aufgrund der Dringlichkeit der Angelegenheit ein Zuwarten bis kommende Woche nicht möglich sei und man sich noch am gleichen Tag oder am Wochenende treffen könne. Alternativ könnte die Einsicht in die Stiftungsakten auch zusammen mit Luca Castellazzi (in der weiteren Folge: "**Herr Castellazzi**"), Mitglied der Geschäftsleitung der AF Trustees AG (die Arbeitgeberin von Philipp Senn), stattfinden, so der Vorschlag der Vertreter des Klägers. Herr Castellazzi stimmte diesem Vorgehen zu; am 23. August 2024 fand in den Räumlichkeiten der AF Trustees AG die Einsicht in die Stiftungsakten statt.

    Beweis:    -    E-Mail-Korrespondenz zwischen Philipp Senn und den Vertretern des Klägers vom 21. und 22. August 2024 (Beilage ./DD)

82    Anlässlich dieses Treffens haben die Vertreter des Klägers Folgendes in Erfahrung bringen müssen:

83    Bei diesem Treffen war Seitens der AF Trustees AG Herr Castellazzi und eine weitere Mitarbeiterin, Jacqueline Thoele (in der Folge: "**Frau Thoele**"), anwesend. Letztere ist verantwortliche Sachbearbeiterin für die Abwicklung der Geschäfte und Korrespondenz der Erstbeklagten Seitens der AF Trustees AG.

84    Zunächst wurde mit Herrn Castellazzi erörtert, in welcher Form die Stiftungsdokumente verwahrt werden, zumal ausser einer kleinen Mappe keinerlei physische Dokumente vorgelegt wurden. Herr Castellazzi teilte daraufhin mit, dass die Dokumente in der Regel gescannt und <u>elektronisch</u> aufbewahrt werden.

85    Nach kurzer Durchsicht der wenigen physisch vorgelegten Dokumente wurde den Vertretern des Klägers auch in Teile der vorhandenen elektronischen Daten auf einem Laptop Einsichtnahme gewährt. Die Einsichtnahme erfolgte dergestalt, dass der Laptop an einen grossen Bildschirm angeschlossen und die elektronisch vorhandenen Medien überblicksmässig durchsucht wurden. Herr Castellazzi sagte dabei zu, dass die Vertreter des Klägers eine elektronische Kopie der Daten erhalten können (was infolge technischer Schwierigkeiten aber nicht sofort am Freitagnachmittag während der Einsichtnahme, sondern erst am darauffolgenden Montag erfolgen könne).

---

[23] Artikel 9 Abs 1 der Statuten der TiVi, vgl Beilage ./B.

22

86    In den gesamten elektronischen Daten war jedoch – ungewöhnlicherweise – keinerlei E-Mail-Verkehr ersichtlich. Auf entsprechende Nachfrage der Vertreter der Kläger teilte Herr Castellazzi mit, dass (stiftungsrelevanter) E-Mail-Verkehr nicht gesondert abgelegt, sondern bloss im E-Mail-Programm verbleiben würde.

87    Nachdem es sich bei diesem E-Mail-Verkehr um stiftungsrelevante Dokumente handelt, die (schon) gemäss Artikel 9 der Statuten dem Kläger als Kurator vorzulegen sind, hat Herr Castellazzi zunächst zugesagt, dass auch in E-Mail-Postfächern nach stiftungs-relevanten Dokumenten gesucht werden kann. Allerdings sei das Postfach des Stiftungsratspräsidenten Philipp Senn für ihn nicht verfügbar, und man könne nur in jenes der Frau Thoele Einsicht nehmen.

88    Bei kursorischer Durchsicht der E-Mails der Frau Thoele war ersichtlich, dass diese separate Ordner- und Unterordnerstrukturen für die Stiftungen des Klägers angelegt hatte. Die Unterordner waren unter anderem mit "Änderung der Statuten", "Änderungen der Stiftungsratsmitglieder", "Vollmachten" und "Walch" bezeichnet. Mit einer Ausnahme wurden diese E-Mails ausgedruckt und den Vertretern des Klägers überreicht:

89    Die Ausnahme betraf ein offenbar internes E-Mail des Stiftungsratspräsidenten an die Mitarbeiter der AF Trustees AG, in der der Stiftungsratspräsident mitteilte, dass er den Widerruf der Vollmacht namens der TiVi Foundation gegenüber dem Vertrauensanwalt des Klägers vornehmen werde. Dieser Inhalt war aus der bei der Einsicht aktivierten Vorschaufunktion auch ohne Öffnen des E-Mails erkennbar. Herr Castellazzi weigerte sich mit Vehemenz, dieses E-Mail zu öffnen oder herauszugeben, da er zuvor mit dem Stiftungsratspräsidenten sprechen wolle.

90    Auf Nachfrage gab Herr Castellazzi als Grund der Weigerung an, dass sich im Verlauf der E-Mail-Nachricht ein (älteres) E-Mail vom Zweitbeklagten vom 22. August 2024 an Philipp Senn befinde, wo auch die Stiftungsrätin Frau Katarzyna Tomczuk in "cc" gesetzt worden sei. Dieses E-Mail wollte Herr Castellazzi nicht ohne vorheriges Einverständnis von Philipp Senn offenlegen. In Zusammenschau aus dem offenbaren Inhalt des (nicht vollständig offengelegten) E-Mails sowie dem Verhalten von Herrn Castellazzi ergibt sich klar, dass der Zweitbeklagte sich zuvor mit E-Mail vom 22. August 2024 direkt an den Stif-tungsratspräsidenten wandte und um den Widerruf von Vollmachten (zur Vertretung der TiVi) ersuchte. Damit ist evident, dass der Stiftungsratspräsident auf blossen Zuruf des Zweitbeklagten unter Verstoss gegen seine Treuepflichten jene Handlungen setzt, die an ihn vom Zweitbeklagten herangetragen wurden.

Beweis:    -    Statuten der Solkomtel Foundation idF vom 15. Juni 2023 (Beilage ./B)
            -    Eidesstättige Erklärung von RA Peter Machherndl vom 25. August 2024 (Beilage ./EE)

91    Erschwerend kommt hinzu, dass der Zweitbeklagte zwei Tage zuvor, am 20. August 2024, seine (ohnedies niemals wirksame) "Funktion" als vermeintliches "Stiftungsratsmitglied" gegenüber der Erstbeklagten zurückgelegt hat. Oder, anders gesagt: Es gab nicht den geringsten Grund und noch weniger eine Rechtsgrundlage dafür, dass der Stiftungsratspräsident *ex parte* und unter Umgehung des Klägers Handlungsempfehlungen des Zweitbeklagten entgegennimmt und diese umgehend in die Tat umsetzt. <u>Denn noch am selben Tag, dem 22. August 2024, hat der Stiftungsratspräsident dem Wunsch des Zweitbeklagten entsprochen und gegenüber dem Vertrauensanwalt des Klägers Vollmachten (zur Vertretung der TiVi) widerrufen.</u>

    Beweis:    -    Rücktritt des Zweitbeklagten als Stiftungsratsmitglied samt E-Mail an Philipp Senn vom 20. August 2024 (Beilage ./FF)

                -    Konvolut der Vollmachtswiderrufe samt E-Mails vom 22. August 2024 (Beilage ./GG)

92    Dem nicht genug, hat der Stiftungsratspräsident überdies beim Amt für Justiz angerufen und "Rechtsauskünfte" eingeholt, ob die Eintragung im Handelsregister von hinterlegten Stiftungen nun deklarative oder konstitutive Wirkung habe.

93    Die vom Stiftungsratspräsidenten am 20. August 2024 breit angeführten Behauptungen, wonach für ihn "unklar" sei, wer Stiftungsrat sei und dass er aufgrund der derzeit vorliegenden widersprechenden Erklärungen von verschiedenen Parteien <u>derzeit keine Handlungen</u> für die Stiftung setzten werde, waren damit die glatte Unwahrheit.

94    Die Vertreter des Klägers insistierten nicht zuletzt deshalb, dass sie Einsicht auch in stiftungsrelevante Korrespondenz im E-Mail-Postfach des Stiftungsratspräsidenten bekommen. Sie teilten Herrn Castellazzi mit, dass am kommenden Montag, dem 26. August 2024, ein Mitarbeiter vor Ort vorbeikommen würde, um diese Einsicht durchzuführen. Herr Castellazzi teilte mit, dass er dies Philipp Senn, dem Stiftungsratspräsidenten, so weiterleiten und ihn diesbezüglich fragen werde.

95    Mit E-Mail von <u>Freitag, 23. August 2024, 17:14 Uhr</u>, teilte der Stiftungsratspräsident dem Vertreter des Klägers nachfolgendes mit:

    *"Sehr geehrter Herr Ott*

    *Mein email Account steht dem Kurator nicht zur Verfügung. Somit können Sie sich bzw Ihre Stellvertreter den Besuch am Montag Vormittag sparen.*

    *Ab nächster Woche werden Ihre Anfragen von einem Anwalt beantwortet.*

    *Freundliche Grüße*

    *Philipp Senn"*

    Beweis:    -    E-Mail von Philipp Senn vom 23. August 2024 (Beilage ./HH)

24

281

96  Damit ist zur "Rolle" des Stiftungsratspräsidenten Philipp Senn alles gesagt. Insgesamt hat dieser bis zum 26. August 2024 die nachfolgenden (bekannten) Handlungen und Verstösse gesetzt, die die konkrete Gefahr belegen, dass er als blosser Willensempfänger und -umsetzer der Zweitbegünstigten in deren Vorhaben miteingebunden wurde und damit gegen seine Pflichten als Stiftungsratspräsident und gegen die Statuten (der TiVi, welche im Wesentlichen gleich wie die der Solkomtel lauten) verstossen hat:

– Philipp Senn hat im Rahmen der Besprechung am 20. August 2024 die Unwahrheit gesagt, wonach er "derzeit" keine Handlungen für die Stiftungen setzen werde; vielmehr hat er nur zwei Tage später binnen weniger Stunden auf blossen Zuruf des Zweitbeklagten (und entgegen den ausdrücklichen Erklärungen des Stifters, insbesondere dem Warnschreiben seiner Rechtsvertreter vom 17. August 2024) genau jene Rechtshandlungen namens der TiVi Foundation gesetzt, die der Zweitbeklagte wünschte.

– Philipp Senn hat unter Verstoss gegen den Artikel 13 (5) der Statuten keine schriftliche Erklärung abgegeben, mit der die Zustellung des Änderungsbegehrens und die Kenntnisnahme des Inhalts der Änderung des Klägers vom 19. August 2024 bestätigt wird.

– Philipp Senn weigert sich unter Verstoss gegen Artikel 9 (1) der Statuten, dem Kurator Einsicht in die Stiftungsunterlagen zu gewähren.

– Philipp Senn hat (im Fall der TiVi Foundation) unter Verstoss gegen Artikel 9 (1) der Statuten iVm Punkt IV. der Beistatuten (jeweils der TiVi Foundation) Vollmachten gegenüber dem Vertrauensanwalt und gegenüber Tomasz Szelag, dem weiteren Stiftungsratsmitglied, widerrufen, obwohl es dafür keinen wirksamen Stiftungsratsbeschluss geben kann (es gab keine Stiftungsratssitzung mit entsprechender Beschlussfassung, es gab keinen einstimmigen Beschluss im Zirkularweg und es wurde keine Zustimmung des Klägers in seiner Funktion als Kurator eingeholt).

Beweis:  -  PV des Klägers

-  Statuten der Solkomtel Foundation idF vom 15 Juni 2023 (Beilage ./B)

-  Beistatuten der Solkomtel Foundation idF vom 15 Juni 2023 (Beilage ./C)

-  Statuten der TiVi Foundation idF vom 29. November 2023 (Beilage ./D)

-  Beistatuten der TiVi Foundation idF vom 29. November 2023 (Beilage ./E)

-  Konvolut der Vollmachtswiderrufe samt E-Mails vom 22. August 2024 (Beilage ./GG)

-  Eidesstättige Erklärung von Thomas Szelag vom 25. August 2024 (Beilage ./II)

2.12.  Die jüngsten Ereignisse rund um den (ehemaligen) Stiftungsratspräsidenten Philipp Senn machen den sofortigen Erlass eines Amtsbefehls umso mehr erforderlich

97    Bereits jeder der oben ausgeführten Gründe hinsichtlich des Stiftungsratspräsidenten für sich allein genommen machen den Erlass eines Amtsbefehls dringlich erforderlich. Darüber hinaus haben sich in der jüngsten Vergangenheit die Ereignisse mit dem (bisherigen) Stiftungsratspräsidenten überschlagen, sodass auch aus den nachfolgenden weiteren Gründen – unter anderem – umso mehr die Dringlichkeit des Erlasses eines Amtsbefehls erhellt (dazu unten, Punkt II.).

98    Der Kläger hat mit Blick auf die TiVi am 26. August 2024 die Klage und einen Antrag auf Erlass eines Amtsbefehls eingebracht, die im Sinne des angestrebten Rechtsschutzziels der vorliegenden Klage ähnelt. Wie der Kläger aber nun in Erfahrung bringen musste, hat der (bisherige) Stiftungsratspräsident der Erstbeklagten, Herr Philipp Senn, tatsächlich beim Amt für Justiz, Abteilung Handelsregister, versucht, unrichtige Eintragungen zu erwirken:

99    Mit Schreiben datiert vom **26. August 2024** – also lange nach dem Gespräch vom 20. August 2024 und damit in bester Kenntnis über die anhängige rechtliche Auseinandersetzung zwischen dem Kläger und den Zweitbegünstigten – hat der Stiftungsratspräsident dem Amt für Justiz, Abteilung Handelsregister, seine Änderungsanzeige vom 14. August 2024 zum Vollzug vorgelegt und die Ausstellung einer "Amtsbestätigung laut Art. 552 § 20 Abs. 4 PGR" verlangt. Der Stiftungsratspräsident, der kurz zuvor noch weitwendig erklärte, keinerlei Handlungen für die Stiftung setzen zu wollen, weil (für ihn) sinngemäss "unklar" sei, wem welche Rechte nun zukämen, hat offenkundig für die Interessen der Zweitbegünstigten Partei ergriffen und versucht mit diesen offenbar nunmehr gemeinsam, auf Basis der unwirksamen "Ablebenserklärung" irgendwelche Einträge beim Handelsregister zu erwirken.

100    Damit hat der Stiftungsratspräsident auch im Hinblick auf die hier Erstbeklagte jeden Bereich einer sachlichen – an die Statuten und die Beschlusslage gebundenen – Amtsführung verlassen. Besonders erschwerend kommt hinzu, dass dem (bisherigen) Stiftungsratspräsidenten gerade wenige Tage zuvor die Originaldokumente des Stifters vom 19. August 2024 vorgelegt wurden, mit denen er i) zunächst seine (zuvor erschlichene) Ablebenserklärung durch eine neue ersetzt hat, und ii) gerade Jaroslaw Grzesiak als Stiftungsratsmitglied (vorsichtsweise) wiederbestellt und in seinem Amt bekräftigt.

101    Justament diesen – ohne jeden Zweifel wirksamen – Beschluss versucht der Stiftungsratspräsident durch Schaffung von vollendeten Tatsachen zu konterkarieren, indem er die vom Stifter ausdrücklich bekräftigte und mit 19. August 2024 wirksam (wieder-bestellte) Person im Handelsregister löschen lassen will.

102    Daraus ergibt sich, dass der Stiftungsratspräsident auch im Hinblick auf die Solkomtel der unhaltbaren Auffassung zu sein scheint, *er* sei es, der die Wirksamkeit von Statuten beurteilen und den Stifter und Kläger vor vollende Tatsachen stellen könnte.

103    Zur Sicherung des Wohles und der Interessen der Erstbeklagten hat der Kläger daraufhin reagieren müssen und den Stiftungsratspräsidenten mit Beschluss vom 26. August 2024, gefasst noch am Abend dieses Tages, mit sofortiger Wirkung seines Amtes enthoben.

<u>Beweis:</u> - Änderungsanzeige des (ehemaligen) Stiftungsratspräsidenten mitsamt Schreiben vom 26. August 2024 (Beilage ./LL)

- Beschluss des Klägers über die Abberufung des Stiftungsratspräsidenten und der Frau Tomczuk sowie Bestellung eines neuen Stiftungsratspräsidenten wie auch eines neuen Mitglieds des Stiftungsrates (Beilage ./MM)

## 3.   Rechtsausführungen

*104*   Kern des Verfahrens ist das zu Punkt 1.) gestellte Feststellungsbegehren, das auf die Wirksamkeit der Statuten in der Fassung vom 19. August 2024 sowie das aufrechte Bestehen der Stifterrechte des Klägers wie in den Statuten (und Beistatuten) geregelt abzielt. Dieses besteht schon aus nachfolgenden zwei Gründen zu Recht:

*105*   Erstens, weil die von den Zweitbegünstigten erschlichenen Erklärungen vom 2. August 2024, die bekanntlich auf die Änderung der Statuten und die Abgabe der Ablebenserklärung hinausliefen, wegen Arglist und Irrtums rechtsunwirksam sind (dazu im Detail Punkt 3.2). Diesfalls hat der Kläger sein Änderungsrecht der Statuten durch die nachfolgende Erklärung vom 19. August 2024 jedenfalls wirksam ausgeübt und die Statuten sind in dieser Fassung[24] in Kraft getreten. Bejaht man also – richtigerweise – bereits die Unwirksamkeit der klägerischen Handlungen vom 2. August 2024 wegen Arglist und Irrtums, stellt sich die Folgefrage, ob die nachfolgende Änderungserklärung wirksam war oder nicht, freilich nicht, weil es dann niemals eine solche wirksame Erklärung des Klägers gab.

*106*   Selbst wenn aber die erschlichenen Erklärungen (zunächst) rechtswirksam gewesen sein sollten (*quod non*), ändert sich am rechtlichen Ergebnis der Wirksamkeit der Stauten vom 19. August 2024 wiederum nichts: Der Kläger hat sich durch seine Erklärung vom 17. August 2024[25] gegenüber der Stiftung – sinngemäss – wieder "zum Leben erweckt" indem die Statutenbestimmungen, die nach seinem Tod gelten sollen, erst ab dem 1. Jänner 2035 angewendet werden sollen (und nicht schon jetzt). Damit hat er sich aktuell wieder in die Rechtsposition versetzt, die er vor den inkriminierten Erklärungen vom 2. August 2024 innehatte.

*107*   Der Kläger hat am 19. August 2024 also auch dann, wenn die erschlichenen Erklärungen vom 2. August 2024 wirksam gewesen sein sollten (was ausdrücklich bestritten wird), sein Recht auf neuerliche Abgabe der Ablebenserklärung gemäss Art. 13 Abs. 2 Punkt 2. (wodurch die vorhergehende Ablebenserklärung vom 2. August 2024 ersetzt wurde) – und anschliessend sein Änderungsrecht gemäss Art 13 Abs. 2 Punkt 1 der Statuten wirksam ausgeübt.

---

[24] Siehe dazu Beilage ./AA (Notariatsakt vom 19. August 2024).

[25] Beilage ./R Erklärung des Klägers betreffend die Neuabgabe der Ablebenserklärung Solkomtel vom 17. August 2024.

### 3.1.    Die Neuabgabe der Ablebenserklärung war jedenfalls wirksam

108    Nach Art. 13 Abs. 2 Punkt 2 hat der Stifter zu seinen Lebzeiten das Recht, durch Abgabe einer Willenserklärung in Form einer notariellen Urkunde zu verfügen, dass er ab einem von ihm genannten Datum die Anwendung der Bestimmungen der Statuten und des Beistatuts, wie sie zu seinen Lebzeiten angewendet werden, ablehnt und dass an ihrer Stelle Bestimmungen anzuwenden sind, die ab dem Tag seines Todes oder im Falle einer vollständigen und dauerhaften Handlungsunfähigkeit in Kraft treten. <u>Der Stifter hat das Recht, die besagte Erklärung mehrfach abzugeben, wobei er bei der Abgabe einer weiteren Erklärung auf keine Weise an den Inhalt seiner früheren Erklärungen gebunden ist</u>.

109    Stiftungsurkunden (Statuten, Beistatuten bzw Reglemente) sind als einseitige nicht empfangsbedürftige Willenserklärungen nach dem Willensprinzip auszulegen. Auch bei dieser Auslegung ist aber schon gemäss dem für alle <u>letztwilligen Verfügungen geltenden Grundsatz des § 655 ABGB</u> (entspricht dem mittlerweile aufgehobenen § 655 öABGB) zunächst und primär von der <u>gewöhnlichen Bedeutung der Worte</u> auszugehen, wobei der gesamte Inhalt der Statuten und Beistatuten in deren <u>Gesamtzusammenhang</u> zu betrachten ist. Solchermassen rechtfertigt der Wortlaut einer letztwilligen Verfügung bzw. – im vom Fürstlichen Obersten Gerichtshof zu beurteilenden Fall – der Statuten der dort beklagten Stiftung auch bei Auslegung nach dem Willensprinzip durchaus Schlussfolgerungen, die aus ihm gezogen werden können.[26]

110    Bereits auf Basis des Wortlauts von Art. 13 Abs. 2 Punkt 2 wird deutlich, dass sich der Stifter das Recht vorbehalten wollte, die Ablebenserklärung mehrfach abzugeben und bei der Abgabe einer weiteren Erklärung auf keinen Fall an den Inhalt von früheren Erklärungen gebunden zu sein. Dies lässt den einzig zulässigen Schluss zu, dass der Stifter seine Ablebenserklärung in jede beliebige Richtung ersetzen bzw. abändern können soll, insbesondere in dem er das Auslösungsdatum nach hinten hinausschiebt (wie gegenständlich geschehen zum 1. Jänner 2035).

111    Eine Lesart bzw. Interpretation, wonach auch dieses Recht, eine weitere Ablebenserklärung abzugeben, ebenso mit der Ablebenserklärung untergehen solle, würde dem Sinn und Zweck dieses Rechts zur Neuabgabe zuwiderlaufen, ja ihn geradezu *ad absurdum* führen. Aus dem Gesamtzusammenhang kann daher nur der Schluss gezogen werden, dass das Recht zur Abgabe einer weiteren Ablebenserklärung gerade nicht durch eine frühere Ablebenserklärung dahinfallen soll.

112    Vor diesem Hintergrund kann kein Zweifel daran bestehen, dass der Stifter die neue Ablebenserklärung am 17. August 2024 rechtswirksam abgeben konnte und seine Rechte, so wie sie nach den Statuten und den Beistatuten bestimmt sind, infolgedessen jedenfalls "wiederaufgelebt" sind.

---

[26] OGH 5.2.2010, 4 CG 2008.14 = LES 2010, 239.

113    Es kommt daher zur Stattgabe des Hauptfeststellungsbegehrens gar nicht darauf an, ob die zuvor von den Zweitbegünstigten erschlichenen Erklärungen des Klägers vom 2. August 2024 absolut nichtig, "bloss" anfechtbar oder äusserstenfalls – was bestritten wird – wirksam waren, weil in jedem Fall die Neuabgabe der Ablebenserklärung mit Hinausschieben der Anwendung der Ablebensbestimmungen (und anschliessend auch das in Kraft setzen der Statuten vom 19. August 2024) rechtswirksam erfolgte.

114    Wie man es auch dreht und wendet: Die Statuten sind in der Fassung vom 19. August 2024 in Kraft getreten, sodass schon deshalb dem Hauptfeststellungsbegehren stattzugeben ist.

## 3.2.    Die Änderungen der Statuten vom 2. August 2024 sind unwirksam

115    Wie im Folgenden gezeigt werden wird, sind die am 2. August 2024 vorgenommenen Erklärungen rechtsunwirksam. Einerseits unterlag der Kläger bei Abgabe dieser Erklärungen einem Irrtum, andererseits bzw. zusätzlich wurde dieser Irrtum durch die Zweit- bis Viertbeklagten arglistig herbeigeführt, indem diese den Kläger über den wahren Inhalt seiner für ihn vorformulierten Erklärungen vom 2. August 2024 täuschten.

116    Da es sich bei den Erklärungen des Stifters vom 2. August 2024 um einseitige Erklärungen ohne eigentliche Gegenpartei (die für einen Irrtum oder eine Täuschung verantwortlich sein könnte) handelt, wendet die liechtensteinische Rechtslehre die Bestimmungen über die Anfechtung von Testamenten an, die erweiterte Anfechtungsrechte vorsehen.[27]

### 3.2.1.  Anfechtung wegen Irrtums

117    Der Kläger unterlag bei Abgabe der Erklärungen am 2. August 2024 einem beachtlichen Erklärungsirrtum: Die wahre Absicht des Klägers war es, seine Kontrolle über die Solkomtel zu behalten und nicht in seine aktuellen Rechte als Stifter einschränkend einzugreifen. Der Inhalt der Erklärungen vom 2. August 2024 steht mit dieser Absicht in eklatantem Widerspruch, da sie schliesslich die Rechtsposition des Klägers erheblich beeinträchtigen bzw. seine Rechte in Bezug auf die Stiftung mit sofortiger Wirkung erheblich einschränken würden. Dabei wurde dem Kläger seitens der Zweit- bis Viertbeklagten suggeriert, dass diese Änderungen zur Aufrechterhaltung und Absicherung der Stiftungen notwendig seien. Insbesondere wurde dabei dem Kläger die Ablebenserklärung Solkomtel als Teil des "Massnahmenpakets" dargestellt, das zur Absicherung der Stiftungen nach seinem Tod erforderlich sei. In Wahrheit hat diese aber zu einer sofortigen und signifikanten Reduktion der Rechte des Klägers geführt.

---

[27] *Heiss in Heiss/Lorenz/Schauer*, Kommentar zum liechtensteinischem Stiftungsrecht[2], Art 552 § 38 Rz 48.

118    Dazukommt, dass die Abgabe der Erklärungen am 2. August 2024 mit Bezug auf die Solkomtel Foundation nicht isoliert zu betrachten ist: Die Zweit- bis Viertbeklagten haben diesem am 2. August 2024 die Erklärungen in Bezug auf die Solkomtel Foundation gemeinsam mit weiteren Erklärungen (auch in Bezug auf eine andere Stiftung des Klägers, die TiVi Foundation) vorgelegt (insgesamt waren dies zumindest 17 Erklärungen, was sich aus den fortlaufenden Nummern der Notariatsakte ergibt, siehe hierzu Rn 40). Durch gleichzeitige Vorlage einer Vielzahl an Erklärungen sollte es dem Kläger offenbar unmöglich gemacht bzw. zumindest deutlich erschwert werden, die volle Reichweite dieser Erklärungen zu erfassen. Zudem war es dem Kläger auch nicht möglich, den wahren Bedeutungsgehalt und die Folgen der vorgenommenen Erklärungen auf Basis der unterfertigten Dokumente zu erkennen, weil keine (konsolidierte) Fassung der Statuten (samt den eben neu beschlossenen Änderungen) angeschlossen war und der Kläger dahingehend auch keinerlei Erläuterungen erhielt. Dass der Kläger durch die irreführenden Zusicherungen der Zweit- bis Viertbeklagten und diesen Modus der Unterzeichnung (s. Rn 24 ff) insgesamt (vorsätzlich) in die Irre geführt wurde, ist evident.

119    Der Kläger hatte offensichtlich eine konkrete, wesentlich abweichende Vorstellung davon, welchen Inhalt seine Erklärungen haben und welche Rechtsfolgen damit in Gang gesetzt werden würden. Er war der Überzeugung (nicht zuletzt aufgrund der Zusicherungen durch die Zweit- bis Viertbeklagten), dass er damit seine Rechte als Stifter unverändert beibehalten werde. Es liegt damit ein klassischer Erklärungsirrtum vor.

   Beweis:    -    PV des Klägers
            -    Eidesstättige Erklärung des Klägers vom 24. August 2024 (Beilage ./F)
            -    Eidesstättige Erklärung des Jerzy Modrzejewski vom 24. August 2024 (Beilage ./G)
            -    Eidesstättige Erklärung von Justyna Kulka vom 24. August 2024 (Beilage ./H)

120    Erklärungsirrtum bezeichnet ganz allgemein eine Diskrepanz zwischen Erklärung und Willen: Der Erklärende erklärt – objektiv betrachtet – etwas anderes, als er erklären wollte.[28] Die objektive Erklärungsbedeutung entspricht nicht dem wahren Willen des Erklärenden.[29]

---

[28] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1 03] § 871 **Rz** 7 mit Verweis auf *Welser/Kletečka*, Bürgerliches Recht I[15] Rz 471; *Riedler* in *Schwimann/Kodek*[4] § 871 Rz 8; *Gschnitzer* in *Klang* IV/1[2] 116; öOGH 3 Ob 564/94 = SZ 68/35; 4 Ob 107/99 k = ÖBA 1999/835.

[29] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1 03] § 871 Rz 7 mit Verweis auf Rummel in Rummel/Lukas4 § 871 Rz 7; *Riedler* in *Schwimann/Kodek*[4] § 871 Rz 8; *F. Bydlinski*, FS Stoll 113 (118).

121    Durch Unterfertigen einer Urkunde wird grundsätzlich der durch die Unterschrift gedeckte Text Inhalt der Erklärung; dies gilt auch dann, wenn der Unterzeichner die Urkunde nicht gelesen oder nicht verstanden hat.[30] Weicht der Inhalt der Urkunde von der Vorstellung des Unterfertigenden ab, wird unterschieden: Hatte der Unterschreibende eine konkrete, abweichende Vorstellung von ihrem Inhalt, nahm er zB an, in der Urkunde stehe das mündlich (anders) Vereinbarte, liegt Erklärungsirrtum vor.[31]

122    Zudem wurde der Irrtum durch die Zweit- bis Viertbeklagten veranlasst bzw. adäquat verursacht[32], in dem sie dem Kläger die vorgefertigten Erklärungen vorlegten und diesen zur Unterfertigung derselben drängten. Bereits auf dieser Grundlage wird klar, dass ihr Vertrauen auf die Gültigkeit der Erklärung nicht schutzwürdig ist.[33]

123    Obendrein hätte der Irrtum des Klägers den Zweit- bis Viertbeklagten auch offenbar auffallen müssen, da diese in voller Kenntnis des Inhalts der Erklärungen waren und die Abweichung vom erklärten Willen des Klägers für diese daher einfach zu erkennen gewesen wäre.

124    Letztlich kann der Irrtum auch als rechtzeitig aufgeklärt qualifiziert werden, da noch keine – insbesondere nicht auf Ebene der Solkomtel – rechtlichen oder wirtschaftlichen Dispositionen im Vertrauen auf die Erklärung getroffen wurden (*res integra*).[34]

125    Den Stiftungsräten der Solkomtel, allen voran Herrn Tomasz Szelag, wurde der Irrtum des Klägers mit Schreiben vom 13. August 2024 mitgeteilt. Davor haben die Stiftungsräte nach Kenntnis des Klägers keine relevanten Verfügungen im Vertrauen auf die Erklärungen des Klägers vom 2. August 2024 getroffen. Im Übrigen wurden vom Stiftungsrat auch noch nicht die weiteren erforderlichen Schritte zur technischen Umsetzung der (unwirksamen) Erklärungen des Klägers vom 2. August 2024 gesetzt.

---

[30] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 871 Rz 10 mit Verweis auf RIS-Justiz RS0014893; RS0014753 uwN aus der öJudikatur.

[31] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 871 Rz 10 mit Verweis auf öOGH 1 Ob 857/53 = JBl 1954, 335; 2 Ob 216/69 = JBl 1970, 313; 7 Ob 639/85 = SZ 58/183; 1 Ob 551/94 = JBl 1995, 48; 2 Ob 112/00 k = ÖBA 2002/1023 (Iro); 3 Ob 194/10s = Zak 2011/95; 10 Ob 35/17 w; RIS-Justiz RS0014753.

[32] GH 10.02.2012, 01 CG.2009.62 = LES 2012, 76 - Leitsatz 1b; siehe auch *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 871 Rz 44 mwN.

[33] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 871 Rz 390 mit Verweis auf *P. Bydlinski*, Bürgerliches Recht AT[8] Rz 8/17; *Rummel* in *Rummel/Lukas*[4] § 871 Rz 1; *Gschnitzer* in *Klang* IV/1[2] 128.

[34] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 871 Rz 53 mit Verweis auf öOGH 2 Ob 216/69 = SZ 42/121; 8 Ob 158/70 = SZ 43/123 (noch keine Konsequenzen); 7 Ob 246/74 = SZ 47/148; 7 Ob 682/86 = wbl 1987, 62; *Gschnitzer* in *Klang* IV/1[2] 133.

126    Die Zweit- bis Viertbeklagten haben mit dem Kläger sogar eine Vereinbarung geschlossen, wonach die Erklärungen des Klägers vom 2. August 2024 bis zum 16. August 2024 ausgesetzt sind und auf Basis dieser Erklärungen keine Handlungen gesetzt werden. Die – unter Verletzung dieser Vereinbarung – gesetzten Handlungen der Zweit- und der Drittbeklagten (betreffend Abberufung und Neubestellung von Stiftungsräten) sind daher keinesfalls schutzwürdig. Zudem sind diese ohnehin unwirksam, weil die in den Statuten dafür verlangte Schriftform nicht eingehalten wurde (die entsprechenden Erklärungen wurden nur per E-Mail an den Stiftungsratspräsidenten übermittelt, was von den Statuten in Artikel 6 Abs 6 ausdrücklich ausgeschlossen wird). Und selbst wenn man davon ausgehen wollte, dass die zwischenzeitlichen Beschlussfassungen des Zweit- und der Drittbeklagten wirksam wären und dem entgegenstehen, ist darauf hinzuweisen, dass ganz geringfügige Vertrauensschäden im Hinblick auf das Vorliegen einer *res integra* ausser Betracht zu bleiben haben.[35] (Schutzwürdige) Eintragungen im Handelsregister wurden schliesslich noch keine vorgenommen (und jedenfalls auch nicht vollzogen). Im Übrigen stellt der Kläger in den Raum, diese Vertrauensschäden zu kompensieren (Redintegration).[36]

127    Letztlich erweist sich der vorliegende Irrtum auch als wesentlich, da der Kläger die Erklärungen bei Kenntnis ihrer tatsächlichen Bedeutung so nicht abgegeben hätte.[37]

128    Die Erklärungen vom 2. August 2024 können und werden daher hiermit wegen beachtlichen Erklärungsirrtums angefochten.

3.2.2.    Anfechtung wegen Arglist

129    Zusätzlich zum geltend gemachten Irrtum, stützt der Kläger sein Klagebegehren auch auf arglistige Herbeiführung seines Irrtums durch die Zweit- bis Viertbeklagten.

130    Die geltenden Anfechtungsbestimmungen für Testamente ermöglichen die Anfechtung wegen Täuschung unabhängig davon, wer die Täuschung veranlasst hat (§ 565 ABGB).[38] Die Täuschung durch die Kinder ist daher geeignet, die Erklärungen nach § 870 Abs 1 ABGB anzufechten.

---

[35] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 871 Rz 53 mit Verweis auf *F. Bydlinski*, Privatautonomie und objektive Grundlagen des verpflichtenden Rechtsgeschäfts (1967) 180; *Rummel* in *Rummel/Lukas*[4] § 871 Rz 26; *Riedler* in *Schwimann/Kodek*[4] § 871 Rz 30.

[36] *Welser*, Erbrechts-Kommentar § 570 ABGB Rz 2; *Pletzer* in *Kletečka/Schauer*, ABGB-ON § 871 Rz 55; *Heiss* in *Heiss/Lorenz/Schauer*, Kommentar zum liechtensteinischen Stiftungsrecht, Art 552 § 38 Rz 48.

[37] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 871 Rz 58 mit Verweis auf öOGH 1 Ob27, 28/89 = JBl 1990, 321; 2 Ob 642/90 = ecolex 1991, 318 (Wilhelm); 2 Ob 131/97x = RdW 1997, 715; 4 Ob 11/13 s = EvBl 2013/133 (Brenn); 2 Ob 78/15 g.

[38] *Heiss* in *Heiss/Lorenz/Schauer*, Kommentar zum liechtensteinischem Stiftungsrecht[2], Art 552 § 38 Rz 48; *Mondel/Knechtel* in *Kletečka/Schauer*, ABGB-ON[1.05] § 565 Rz 11.

131    List ist rechtswidrige, vorsätzliche Täuschung.[39] Es reicht *dolus eventualis*, also dass der Täuschende den Irrtum des anderen Teils ernstlich für möglich hält und sich damit abfindet.[40] Im Weiteren muss der Täuschende positive Kenntnis vom Irrtum seines Gegenübers sowie davon haben, dass der Irrtum Einfluss auf die Willensbildung des anderen hat, dh kausal ist.[41]

132    Ein arglistiges Verhalten iSd § 870 ABGB kann sogar in einem (Ver-)Schweigen liegen, wenn ein Teil in einem Irrtum befangen ist und der andere Teil zur Aufklärung verpflichtet gewesen wäre, stattdessen aber den Irrtum bewusst ausnützt. Eine solche Täuschung ist beachtlich, wenn sie für eine rechtsgeschäftliche Verfügung kausal war. Eine Aufklärungspflicht muss nicht eigens in einem Gesetz normiert sein. Sie ist dann zu bejahen, wenn ein Vertragsteil nach den Grundsätzen des redlichen Verkehrs eine entsprechende Aufklärung erwarten durfte.[42]

133    Dies ist gegenständlich der Fall, da die Zweit- bis Viertbeklagten in Kenntnis des Inhalts und der Tragweite der Erklärungen und weiters über die Tatsache waren, dass der Kläger seiner Rechte als Stifter nicht verlustig gehen wollte. Es war für sie somit erkennbar, dass der Kläger einem Irrtum unterlag. Indem sie den Kläger durch Ausnutzung des familiären Vertrauens zur Unterfertigung der Erklärungen am 2. August 2024 gedrängt haben, haben sie diesen Irrtum beim Kläger veranlasst und diesen bewusst ausgenutzt. Zur Vermeidung von Wiederholungen wird auf Randnummer 117 118 obenverwiesen.

134    Die Erklärungen vom 2. August 2024 können und werden daher hiermit auch wegen Arglist angefochten. Die auf dieser Basis beschlossenen Statutenänderungen und die Ablebenserklärung sind rechtsunwirksam.

---

[39] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 870 Rz 7 mit Verweis auf öOGH 6 Ob 257/08z = ecolex 2009/106; 3 Ob 111/09h = JBl 2010, 180; 9 Ob 89/09t = EvBl 2011/17; 6 Ob 42/11m; 1 Ob 85/11y; 3 Ob 47/16g = EvBl 2017/37 (Brenn) = ÖBA 2016/2269 (*Zöchling-Jud*); 8 Ob 91/17s = JusGuide 2017/38/16094; 6 Ob 244/17a = ecolex 2018/229.

[40] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 870 Rz 7 mit Verweis auf *Riedler* in *Schwimann/Kodek*[4] § 870 Rz 3; *Rummel* in *Rummel/Lukas*[4] § 870 Rz 3; *Bollenberger* in KBB[4] § 870 Rz 1; *Koziol – Welser/Kletečka*, Bürgerliches Recht I[14] Rz 523 in FN 168; *Lukas*, ecolex 2012, 548 in Bezug auf den Willen zur Irreführung; öOGH 3 Ob 520/94 = RdW 1996, 59; 3 Ob 559/95 = SZ 68/152; 3 Ob 563/95 = JBl 1996, 174; 1 Ob 617/95 = ÖBA 1996/547; 10 Ob 2066/96p = immolex 1997/159; 4 Ob 113/01y; 10 Ob 74/05p = ÖBA 2006/1332; 3 Ob 20/07y; 7 Ob 70/12p; 2 Ob 161/17s; 5 Ob 70/16d = wobl 2017/9; 2 Ob 161/17s; 6 Ob 244/17 a = ecolex 2018/229; RIS-Justiz RS0014837.

[41] *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 870 Rz 7 mit Verweis auf öOGH  Ob 635/95 = HS XXVI/8; 1 Ob 617/95 = ÖBA 1996/547; 2 Ob 382/97h = EFSlg 87.272; 8 ObA 58/01i = ARD 5333/12/2002; 10 Ob 74/05p = ÖBA 2006/1332; 2 Ob 161/17 s; 7 Ob 119/17a; RIS-Justiz RS0014765; *Gschnitzer* in *Klang* IV/1[2] 110.

[42] OGH 02.05.2002, 01 CG.363/99-28 = LES 2003, 41 - Leitsatz 1b; siehe auch *Pletzer* in *Kletečka/Schauer*, ABGB-ON[1.03] § 870 Rz 5 mit Verweis auf öOGH 3 Ob 23/13 y = ecolex 2014/5 (List); RIS-Justiz RS0014795.

### 3.3. Das Änderungsrecht des Klägers in Art. 13 ist von der Ablebenserklärung nicht betroffen

135    Selbst wenn man aber – unrichtigerweise und wofür es nicht den geringsten Anhaltspunkt gibt – davon ausgehen wollen würde, dass sowohl a) die erschlichenen Erklärungen vom 2. August 2024 wirksam, als auch b) die Neuabgabe der Ablebenserklärung am 17. August 2024 unwirksam wären, führte dies zu keinem anderen Ergebnis:

136    Unstrittigerweise war das in den Statuten in Art. 13 Abs 2 Punkt 1. verankerte Änderungsrecht des Klägers von den inkriminierten "Erklärungen" vom 2. August 2024 nicht betroffen. Schon nach dem Wortlaut der Bestimmung ist eine Änderung solange möglich, als der Stifter am Leben ist ("zu seinen Lebzeiten"). Anders als andere Bestimmungen der Statuten handelt es sich <u>nicht</u> um eine solche, die "nach dem Tod" des Klägers in Kraft treten soll (vgl. Art. 6 der Statuten), worauf die Ablebenserklärung aber abzielt. Überdies gibt es zu dieser Bestimmung gerade keine solche, die an ihrer Stelle (im Ablebensfall) in Kraft treten soll, wie das wiederum bei anderen Bestimmungen der Fall ist (vgl. Art. 6 Abs. 3 Bst b der Statuten). Darüber hinaus unterscheiden die Statuten penibel genau zwischen i) Rechten, die zu Lebzeiten entstehen und mit amtlicher Todeserklärung erlöschen, also dem tatsächlichen Ableben des Klägers, und solchen ii) Rechten, auf die der Stifter bereits mit Ablebenserklärung (widerrufbar) verzichten kann. So unterscheidet etwa Art. 6 der Statuten ausdrücklich zwischen diesen beiden Varianten (vgl Art. 6 Abs. 3 Bst. a: "*Ab dem Todestag […], oder ab dem durch den Stifter in der in Art. 13 (2) 2 der Statuten genannten Erklärung festgelegten Datum […]*). "*Zu seinen Lebzeiten*" im Sinne des Art. 13 kann daher bei systemkonformer Interpretation der Statuten nur so verstanden werden, dass dieses Recht erst mit dem tatsächlichen Ableben (und dem Nachweis desselben mittels eines amtlichen Dokuments im Sinne einer Sterbeurkunde, vgl etwa Art. 13 Abs.4 Bst. a) des Stifters erlöschen kann.

137    Schliesslich war nach dem ausdrücklichen Wortlaut der Statuten die Ablebenserklärung nicht darauf gerichtet, in jedem Fall "für immer" zu gelten, zumal sich der Kläger die jederzeitige Abgabe einer anderen Erklärung vorbehalten hat.

138    Bei wortlautgetreuer, systematischer und nach dem Willen des Stifters orientierter Auslegung kann Art. 13 Abs. 2 Punkt 1. in Verbindung mit der Ablebenserklärung nur so verstanden werden, dass das klägerische Änderungsrecht auch dann aufrecht bleibt, wenn er eine Ablebenserklärung an die Stiftung richtet.

139    Selbst in diesem Fall wären daher die vom Kläger am 19. August 2024 vorgenommenen Änderungen wirksam und dem Hauptfeststellungsbegehren stattzugeben.

4.    Anträge

Aus all diesen Gründen wird daher beantragt zu fällen nachstehendes

## URTEIL:

1    Es wird mit Wirkung zwischen den Parteien festgestellt, dass

a.    die Statuten der beim Handelsregister nicht hinterlegten Solkomtel Foundation, FL-0002.419.785-2, in der Fassung des Notariatsaktes vom 19. August 2024, aufgenommen und beurkundet von Notar Mag. Alexander Winkler, öffentlicher Notar mit dem Amtssitz in 1180 Wien, Weimarer Straße 5, zu GZ 1562, gemäss Beilage ./AA, welche einen integrierenden Bestandteil dieses Urteils bildet, aufrecht und rechtswirksam sind;

b.    dem Kläger gegenüber der Erstbeklagten sämtliche Rechte, die ihm als Stifter, Erstbegünstigter oder Kurator in den Statuten in der Fassung des Notariatsaktes vom 19. August 2024, aufgenommen und beurkundet von Mag. Alexander Winkler, öffentlicher Notar mit dem Amtssitz in 1180 Wien, Weimarer Strasse 5, zur GZ 1562, gemäss Beilage ./AA, sowie der Beistatuten in der Fassung vom 15. Juni 2023, gerichtlich beglaubigt am 20. Juni 2023 am Fürstlichen Landgericht Vaduz durch die Urkundsperson Beatrix Maier, gemäss Beilage ./C, welche beide einen integrierenden Bestandteil dieses Urteils bilden, eingeräumt sind, aufrecht zustehen, darunter insbesondere

i.    das Recht, ein Beistatut oder mehrere Reglemente zu erlassen und die Begünstigten zu bestimmen (Art. 5 Abs. 1 und Abs. 2 der Statuten);

ii.    das Recht, Mitglieder des Stiftungsrates und den Stiftungsratspräsidenten zu bestellen oder abzuberufen (Art. 6 Abs. 2 Bst. a der Statuten);

iii.    das Recht, einziger Kurator der Stiftung zu sein und in dieser Funktion die Rechte gemäss den Statuten und Beistatuten auszuüben, insbesondere die Stiftungsräte zu überwachen, seine Vorschläge durch diese umsetzen zu lassen, sämtliche Beschlüsse des Stiftungsrates von seiner Zustimmung als Kurator abhängig zu machen und in alle Stiftungsdokumente Einsicht zu nehmen (vgl Art. 9. Abs. 1 der Statuten, Punkt B), insbesondere III. und Punkt IV. sub 1) der Beistatuten);

iv.    das Recht, die Stiftungserklärung, die Statuten und die Beistatuten zu seinen Lebzeiten zu ändern (Art. 13 Abs. 2 Punkt 1. der Statuten).

*in eventu*

292

Die Statuten der beim Handelsregister nicht hinterlegten Erstbeklagten, der Solkomtel Foundation, FL-0002.419.785-2, in der Fassung vom 2. August 2024, die durch die Erklärungen des Klägers

> über die Änderung der Statuten (beglaubigt zu Urkunde A Nr. 6219/2024),
>
> über den "Beschluss im Umlaufverfahren" (beglaubigt zu Urkunde A Nr. 6227/2024),
>
> und über die Erklärung gemäss Artikel 13 (2) 2. der Statuten (beglaubigt zu Urkunde A Nr. 6229/2024),

beglaubigt zur jeweils zuvor angeführten Urkundennummer durch Dariusz Wierzchucki, Notar in Warschau, an diesem Tage abgeändert wurden, werden für rechtsunwirksam erklärt.

*in eventu*

Die Erklärungen des Klägers jeweils vom 2. August 2024 gegenüber der beim Handelsregister nicht hinterlegten Erstbeklagten, der Solkomtel Foundation, FL-0002.419.785-2,

> über die Änderung der Statuten (beglaubigt zu Urkunde A Nr. 6219/2024),
>
> über den "Beschluss im Umlaufverfahren" zu Urkunde A Nr. 6227/2024,
>
> und jene gemäss Artikel 13 (2) 2. der Statuten (beglaubigt zu Urkunde A Nr. 6229/2024),

jeweils an diesem Tage zur jeweils angeführten Urkundennummer notariell beglaubigt durch Dariusz Wierzchucki, Notar in Warschau, werden für rechtsunwirksam erklärt.

2    Jedenfalls sind die Beklagten gegenüber dem Kläger zur ungeteilten Hand schuldig, die Kosten dieses Verfahrens binnen 14 Tagen bei sonstiger Zwangsfolge zu ersetzen.

293

## II.
## ANTRAG AUF ERLASSUNG EINES AMTSBEFEHLS

*140*    Das obige Klagsvorbringen im Hauptverfahren wird vollinhaltlich zum Inhalt des Provisorialverfahrens erhoben und die dort angeführten (hier beigelegten) Beweise als parate Bescheinigungsmittel angeboten.

5.    Sicherungsanspruch/ zu sicherndes Rechtsverhältnis

*141*    Auch im Provisorialverfahren zum Erlass eines Amtsbefehls nach Art. 276 Abs. 1 lit. b EO ist es nach der Rechtsprechung notwendig, einen konkreten Anspruch bzw. ein Recht zu behaupten und glaubhaft zu machen, den bzw. das es gegen beeinträchtigende tatsächliche Ereignisse und insbesondere gegen ein Verhalten des Sicherungsgegners abzusichern gilt. Es müssen im Provisorialantrag also Tatsachen vorgetragen werden, aus denen sich das Vorliegen eines Rechtsverhältnisses zwischen den Parteien ergibt, aus dem der zu sichernde Anspruch erwachsen kann.[43]

*142*    Der zu sichernde Anspruch besteht vorliegend im Anspruch des Sicherungswerbers auf Feststellung (i) der Wirksamkeit der Statuten in der Fassung vom 19. August 2024 (bzw. negativ formuliert: der Unwirksamkeit der Statuten vom 2. August 2024) sowie (ii) des aufrechten Zustehens sämtlicher Rechte, die dem Kläger als Stifter, Erstbegünstigter oder Kurator in den Statuten oder Beistatuten eingeräumt sind.

*143*    Die Unwirksamkeit der Fassungen vom 2. August 2024 ergibt sich daraus, dass diese Änderungen von den Zweitbegünstigten arglistig erschlichen wurden (siehe dazu oben, Punkt 3.2.). Jedenfalls aber ergibt sich das festzustellende Hauptbegehren auch daraus, dass – selbst wenn die Erklärungen vom 2. August 2024 wirksam gewesen wären – der Kläger mit Erklärung vom 17. August 2024 seine zuvor abgegebene Ablebenserklärung rechtswirksam ersetzt und sich in jene Rechtsposition zurückversetzt hat, die vor den inkriminierten Handlungen vom 2. August 2024 vorlag, sodass er anschliessend gemäss Art. 13 Abs 2 Punkt 1. der Statuten die von ihm erklärten Änderungen wirksam vornehmen konnte. Zum evidenten Feststellungsinteresse siehe bereits oben, Punkt 4 ff.

*144*    Das Zustehen sämtlicher Rechte, die dem Kläger als Stifter, Erstbegünstigter oder Kurator in den Statuten oder Beistatuten eingeräumt sind, ergibt sich aus den Bestimmungen der Statuten bzw. Beistatuten (sowie der derzeitigen Nichtanwendung der Statuten-bestimmungen, die nach dem Tod des Stifters zur Anwendung kommen sollen, gemäss der Ablebenserklärung vom 17. August 2024).

---

[43] Vgl. OGH vom 10. Juni 1999, 06 C 52/99, LES 1999, 348.

145    Auch wenn vorliegend vorderhand ein Feststellungsanspruch (und eventualiter das angeführte Rechtsgestaltungsbegehren) Gegenstand des Zivilverfahrens ist, ist es völlig anerkannt, dass auch dann einstweilige Verfügungen für diese möglich sind, wenn es "um die Folgewirkungen einer Feststellung geht".[44] So hat der österreichische Oberste Gerichtshof im Rahmen des Gesellschaftsrechts zur Klage auf Feststellung, dass ein Vertrag über die Abtretung von Geschäftsanteilen sowie bestimmte Beschlüsse der Gesellschafterversammlung unwirksam ist, die Zulässigkeit einer einstweiligen Verfügung anerkannt.[45] Auch in dem Fall, dass der Gesellschafter einer GmbH die Feststellung seiner Rechtsstellung als Gesellschafter begehrt, weil ihm diese mit der Begründung, diese sei *ipso iure* erloschen, streitig gemacht wird, steckt hinter dem Feststellungsanspruch das (sicherbare) Begehren auf Duldung der Ausübung der Gesellschafterrechte.[46] Dies deckt sich im Wesentlichen mit dem gegenständlichen Sachverhalt, wo dem Kläger im Ergebnis seiner (zu Lebzeiten aufrechte) Stifterstellung und die damit verbundenen Rechte streitig gemacht werden. Auch bei Rechtsgestaltungsansprüchen ist kein strenger Massstab anzulegen, damit drohende unwiederbringliche Schädigungen nötigenfalls hintangehalten werden können.[47] In diesem Sinne wurde in der österreichischen Rechtsprechung insbesondere im Zusammenhang mit dem Ausschluss von Verbandsmitgliedern – also bei dogmatisch vergleichbarer Ausgangslage, dass auf Basis unwirksamer (bzw unwirksam angewandter) Statuten Rechte des Sicherungswerbers verloren gehen – mehrfach betont, dass die Duldung der Ausübung von Mitgliedschaftsrechten (als hinter dem Anspruch auf Feststellung der Unwirksamkeit des Ausschlusses „steckender" Leistungsanspruch) sicherungsfähig ist.[48] Der Liechtensteinische Oberste Gerichtshof ist in jüngerer Judikatur jener des österreichischen Obersten Gerichtshofes zur Sicherungsfähigkeit von Feststellungsansprüchen gefolgt.[49]

146    Die Sicherungsfähigkeit des geltend gemachten Feststellungsanspruchs ergibt sich auch bei einem dogmatisch vergleichbaren Ansatz zur Judikatur im Gesellschaftsrecht: So sprach der Fürstliche Oberste Gerichtshof in der Entscheidung vom 12. Januar 2018 – wiederum unter Verweis auf Rechtsprechung des österreichischen Höchstgerichts – aus, dass der dort geltend gemachte Anspruch auf Anfechtung verschiedener Generalversammlungsbeschlüsse "*zweifelsohne*" als Sicherungsanspruch im Sinne von Art. 276 Abs. 1 lit. b EO zu qualifizieren sei.[50] Nichts anderes kann dann für einen Anspruch auf Feststellung der Unwirksamkeit von Statuten gelten.[51]

147    Daraus folgt, dass das geltend gemachte Feststellungsbegehren selbstverständlich einen tauglichen Sicherungsanspruch für die begehrten Provisorialmassnahmen darstellt.

---

[44] *König,* Einstweilige Verfügungen Rn 2.34 und 2.37.

[45] Vgl *König,* EV Rn 2.37 [FN 368].

[46] Vgl öOGH 2 Ob 138/08w; RIS-Justiz RS0011598 mwN.

[47] Vgl RIS-Justiz RS0005153 [T5].

[48] RIS-Justiz RS0005153 [T10].

[49] Vgl OGH 03 CG.2020.45 LES 2020, 239.

[50] Vgl. OGH vom 12. Januar 2018, 05 CG.2016.195, GE 2018, 280.

[51] Vgl. wiederum zum Gesellschaftsrecht OGH vom 11. Juni 2010, 02 CG.2007.83, LES 2010, 319; OGH vom 7. September 2006, 02 CG.2006.21, LES 2007, 289.

6.    Gefährdung / Regelungsinteresse

148    Nebst einem zu sichernden Recht oder Rechtsverhältnis setzt die Erlassung eines
Amtsbefehls nach Art. 276 Abs. 1 lit. b EO eine objektive Gefährdung voraus. Eine solche
wird nach der Rechtsprechung bereits angenommen, wenn die rechtlichen oder faktischen
Verhältnisse strittig, unklar oder unbestimmt sind. Es genügt also, wenn ein Rechtsverhältnis
entweder vom Sicherungsgegner bestritten oder durch eine Handlung des Siche-
rungsgegners gestört wird. Darüberhinausgehender Machenschaften oder dem zu
sichernden Anspruch zuwiderlaufender Verfügungen oder Handlungen des Siche-
rungsgegners bedarf es nicht.[52] Entsprechend hielt der Fürstliche Oberste Gerichtshof in der
oben zitierten Entscheidung vom 12. Januar 2018 das Folgende fest:

> "Für den hier zu prüfenden Provisorialanspruch ist massgebend, dass über die Frage
> der rechtmässigen Rechtsausübung anlässlich der Generalversammlung vom
> 18.05.2017 Unklarheit herrscht, die für die Dauer des Hauptverfahrens geschlichtet
> werden soll. Allein deshalb ist die beantragte einstweilige Zustandsregelung mit dem
> Verbot an das Amt für Justiz, die anlässlich der Generalversammlung vom
> 18.05.2017 beschlossenen Änderungen vorzunehmen, insbesondere die Eintragung
> der derzeitigen Verwaltungsräte zu löschen und die angeblich neu gewählten
> Verwaltungsräte einzutragen (Drittverbot im Sinne des Art. 277 lit. g EO),
> gerechtfertigt. Schon die Ausübung der Geschäftsführung durch einen Unbefugten
> stellt nämlich einen unwiederbringlichen Nachteil dar."

149    Ähnlich judiziert der österreichische Oberste Gerichtshof, dass in der Verfügung über
Geschäftsanteile bzw die Ausübung von Gesellschafterrechten (durch einen Unberechtigten)
regelmässig eine Bedrohung mit einem unwiederbringlichen Nachteil für die Gesellschaft
liegt, sodass insoweit schon deshalb keine weitere Gefahrenbescheinigung erforderlich ist.[53]
Bei drohender (hier zum Teil ja sogar bereits geschehener) Ausübung von Rechten (durch
die Zweit- bis Viertbeklagten), die richtigerweise nur dem Stifter zustehen, liegt demnach die
für den Sicherungsantrag notwendige Gefährdung auf der Hand.

150    Im vorliegenden Fall liegen aber ohnedies weitere konkrete Umstände vor, die eine
Gefährdung des Anspruchs nicht nur (objektiv) wahrscheinlich machen, sondern es wurden
von den Zweitbegünstigten und vom Stiftungsratspräsidenten bereits massgebliche
Handlungen gesetzt, um die Ansprüche und Rechte des Klägers zu konterkarieren zu
versuchen.

---

[52] Vgl. OG vom 28. Mai 2005, 10 HG.2004.55-102, Pool 2005, 123.
[53] Vgl öOGH 6 Ob 7/17y mwN.

151    Dabei fällt besonders ins Gewicht, dass nicht nur sämtliche Rechtshandlungen, die vom Organ der Erstbeklagten – denen ein Drittverbot auferlegt werden soll – ohne Zustimmung des Klägers, die nach Art. 9 der Statuten iVm Punkt B) IV. der Beistatuten obligatorisch einzuholen ist, gesetzt werden, irreversibel sind. Bereits das bewirkt eine evidente Gefahr eines unwiederbringlichen Nachteils für den Kläger, weil sein Stimmrecht nicht mehr "nachträglich ausgeübt" und Stiftungsratsbeschlüsse, die ohne seine Zustimmung vollzogen werden, nicht mehr rückgängig gemacht werden können.

152    Zur Gefährdung der Ansprüche des Klägers kommen auch noch nachfolgende Umstände hinzu: Die Zweit- bis Viertbeklagten (Zweitbegünstigten) haben mit dem Kläger eine Vereinbarung geschlossen, wonach die Erklärungen des Klägers vom 2. August 2024 bis zum 16. August 2024 ausgesetzt sind und auf Basis dieser Erklärungen keine Handlungen gesetzt werden. Weiters hat der Kläger sich mit Schreiben vom 13. August 2024 an die Zweitbegünstigten gewandt und diesen mitgeteilt, dass er von ihnen getäuscht wurde und seine Erklärungen unwirksam sind.

153    Am 14. August 2024 hat der Zweitbeklagte – als unmittelbare Reaktion darauf und unter Verletzung der Stillhaltevereinbarung – versucht, Stiftungsräte abzubestellen und sich selbst sowie eine willfährige ihm nahestehende Kandidatin als Stiftungsrat zu bestellen. Trotz der weiteren Mitteilung des Klägers, dass er von seinem Recht auf Neuabgabe seiner Ablebenserklärung Gebrauch gemacht hat, haben die Zweitbegünstigten weitere Handlungen gesetzt, um die statutarisch festgeschriebenen Rechte des Klägers zu konterkarieren zu versuchen.

154    Insbesondere hat der Zweitbeklagte gegenüber dem Stiftungsratspräsidenten erklärt, als Stiftungsrat zurückzutreten, jedoch binnen sieben Tagen einen Nachfolger zu benennen. Der Zweitbeklagte hat daher bereits angekündigt und für sich in Anspruch genommen, auch in Zukunft (ihm nicht zustehende) Stifterrechte zur Abberufung und Neubestellung von Stiftungsräten in Anspruch zu nehmen.

155    Mit Schreiben vom 20. August 2024 hat sich die Drittbeklagte durch ihre anwaltliche Vertretung an jene Vertretung des Klägers gewandt, und die Rechte des Klägers ausdrücklich bestritten. Die Drittbeklagte führt noch dazu ihre "Auffassung" dahingehend an, dass die erschlichene Ablebenserklärung des Klägers "*erst durch wirksame Anfechtung beseitigt werden*" müsste und "bis dahin" diese gelten würde.[54] Offenbar glaubt die Drittbeklagte, sie könne nun bis zur Rechtskraft eines Urteils auf Basis inexistenter angeblicher "Rechte" schalten und walten, wie es ihr beliebt.

156    Ebenso mit Schreiben vom 20. August 2024 hat sich der Viertbeklagte an die Vertreter des Klägers gewandt und im Ergebnis mitgeteilt, dass dem Kläger die streitgegenständlichen Rechte nicht (mehr) zukämen.[55]

---

[54] Schreiben der Kanzlei Gasser Partner Rechtsanwälte AG vom 20. August 2024.

[55] Schreiben von RA Paweł Rymarz vom 20. August 2024, dem das E-Mail vom 18. August 2024 vorangegangen war.

157     Die Zweitbegünstigten müssen das inkriminierte Vorhaben rund um den 2. August 2024 seit langem geplant haben, zumal es einer genauen kritischen Durchsicht der Statuten und Beistatuten und auch detaillierter juristischer Beratung bedarf, um die von ihnen aufgesetzten und später erschlichenen "Erklärungen" überhaupt errichten zu können.

158     Auch die "Rolle" des Stiftungsratspräsidenten und seine jüngsten Handlungen belegen eindeutig, dass die Gefahr, dass die Zweitbegünstigten die rechtswidrige Kontrolle über die Stiftung übernehmen, nicht nur droht, sondern sich dieses inkriminierte Vorhaben bereits in Umsetzung befindet:

159     Zunächst hat der Stiftungsratspräsident gegenüber dem Kläger am 20. August 2024 die Unwahrheit gesagt, dass er infolge der strittigen rechtlichen Verhältnisse angeblich "keinerlei Handlungen" für die Stiftungen setzen werde. Dabei ist er nur zwei Tage später, am 22. August 2024, auf Zuruf des Zweitbeklagten – und zwar zu einem Zeitpunkt, als dieser infolge seines eigenen Rücktritts als (vermeintliches) Stiftungsratsmitglied jedenfalls nicht mehr ein solches Mitglied gewesen sein konnte – unverzüglich im Interesse des Zweitbeklagten (und nicht jenem der Stiftungen) eingeschritten. Der Stiftungsratspräsident hat justament (ohne Beschluss des Stiftungsrats der TiVi) das Vollmachtsverhältnis der TiVi Foundation zum Vertrauensanwalt des Klägers widerrufen. Noch im Juni 2024 sah es Herr Senn (bei Einräumung von Vollmachten) – zutreffend – für notwendig an, ent- sprechende (Umlauf-)Beschlüsse fassen zu lassen.

        Beweis:    -    Umlaufbeschluss vom 12. Juni 2024 (Beilage ./JJ)

160     Ebenso hat der Stiftungsratspräsident gegenüber Tomasz Szelag, dem weiteren Stiftungsratsmitglied, das Vollmachtsverhältnis mit der TiVi aufgelöst und damit justament gegenüber jener Person, die in den Tochtergesellschaften der TiVi Foundation organschaftliche Funktionen und Kontrolle ausübt. Für beide diese Rechtshandlungen existieren keinerlei wirksame Beschlüsse des Stiftungsrats, schon deshalb nicht, weil der Kläger als Kurator der TiVi diesen niemals zugestimmt hat (was jedoch nach Art 9. der Statuten und Punkt B) IV. der Beistatuten für die Wirksamkeit eines solchen Beschlusses erforderlich gewesen wäre). Das Zustimmungserfordernis des Kurators zu allen Beschlüssen des Stiftungsrats war nicht zuletzt dem Stiftungsratspräsidenten voll bewusst, weil er intern (bei der AF Trustees AG) stets darauf hingewiesen hat (so auch noch bis zum 20. August 2024, unmittelbar vor seinem Gesinnungswandel zugunsten der Zweitbegünstigten).

        Beweis:    -    Emails von Philipp Senn an Frau Thoele vom 9. April 2024 und vom 20. August 2024 (Beilage ./KK)

161     Damit ist wiederum evident, dass der Stiftungsratspräsident nicht nur die Unwahrheit gesagt, sondern pflichtwidrig seine Befugnisse überschritten hat.

162     Und schliesslich hat der Stiftungsrat – in bester Kenntnis über die derzeit rechtlich ausgetragene Auseinandersetzung – sich wiederum dazu veranlasst gesehen, unrichtige Angaben beim Handelsregister zur Eintragung anzumelden. Dieses jüngste zu Tage getretene Handeln schlägt dem Fass den Boden aus:

- Zunächst erhält der Stiftungsratspräsident am 20. August 2024 den Beschluss des Klägers als alleinigen Stifter vom 19. August 2024 im Original, mit dem dieser Herrn Jaroslaw Grzesiak ausdrücklich (wieder-)bestellt und in seinem Amt bekräftigt, und höchstvorsorglich die "bestellte" Frau Zofia Jedrzeyewska abberuft.

- Ebenso erhält er die notariell beurkundeten Erklärungen des Klägers, dass dieser die (erschlichenen) Ablebenserklärungen widerruft bzw. ersetzt (durch eine Ablebenserklärung, die erst 2035 zur Anwendung kommt) und er damit zweifellos wieder in den Genuss seiner vollen Rechte als Stifter kommt.

- Anschliessend erklärt der Stiftungsratspräsident unwahr, er werde keine Handlungen für die Erstbeklagte setzen.

- Und sechs Tage nach dieser erklärten Unwahrheit schreitet der Stiftungsratspräsident zur Tat, indem er "hinterrücks" gerade jene Anmeldungen beim Handelsregister in Vollzug setzen will, die den Beschluss des Klägers als Stifter vom 19. August 2024 konterkarieren.

163  Dadurch hat der Stiftungsratspräsident jede Grenze des zulässigen Handelns und insbesondere seine Befugnisse überschritten, wobei daraus sich klar die Gefahr ergibt, dass er für die Zweitbegünstigten Partei ergreift und deren Willen umzusetzen versucht.

164  Erschwerend kommt hinzu, dass der Namens der TiVi erklärte Widerruf der Vollmacht gegenüber Herrn Szelag dazu führt dazu, dass diese Stiftung im Fortbestand ihrer Existenz gefährdet ist. Herr Szelag hat das massgebliche Know-how der operativen Gesellschaften und war das Bindeglied zwischen diesen und der Stiftung als deren Eigentümerin.

165  Dass diese sich auf Ebene der TiVi Foundation bereits manifestierte Gefährdung auch spiegelbildlich für die Solkomtel Foundation besteht, liegt auf der Hand und ist durch das jüngste Handeln des Stiftungsratspräsidenten eindrücklich belegt. Die durch den vorliegenden Amtsbefehl zu verhindernde drohende Gefahr hat sich teilweise bereits verwirklicht und befindet sich in Umsetzung.

166  Der Stiftungsratspräsident verweigert ebenso – wie ausgeführt – rechtswidrigerweise die Einsichtnahme in stiftungsrelevante Urkunden, sondern hat jüngst seinen Rechtsanwalt als Kontaktperson zwischengeschaltet. Damit ist für den Kläger als Stifter eine direkte Kommunikation mit dem höchsten Kontrollorgan seiner Stiftung nicht mehr möglich. Er ist vielmehr auf die Antwortbereitschaft der (bis dato noch nicht einmal bekanntgegebenen) anwaltlichen Vertretung angewiesen.

167  Der Stiftungsratspräsident hat daher im Ergebnis nicht nur qualifiziert (und wohl auch wissentlich) seine Befugnisse verletzt, sondern weigert sich beharrlich, seinen Pflichten als Stiftungsratspräsident nachzukommen, etwa hinsichtlich der ordnungsgemässen Anmeldungen beim Handelsregister und der Benachrichtigung der Begünstigten, und zwar auf Basis der Beschlüsse des Klägers (und nicht der unwirksamen Beschlüsse der Begünstigten).

168    Damit ist evident und jedenfalls bescheinigt, dass die Zweitbegünstigten ihr inkriminiertes Vorhaben, die Kontrolle über die Solkomtel (und auch die TiVi Foundation) auf Basis nicht bestehender Rechte auszuüben, mit allen Mitteln in die Tat umzusetzen versuchen. Denn wie sich bei einer nunmehr erfolgten Akteneinsicht jüngst herausgestellt hat, hat der Zweitbeklagte als unwirksam bestellter "Stiftungsrat" mitsamt seiner weiteren als "Stiftungsrat" unwirksam bestellten" Vertrauensperson, Frau Zofia Jedrzejewska, mit Schreiben datiert vom 14. August 2024 gerichtet an den Stiftungsratspräsidenten, diesem entsprechende Musterzeichnungserklärungen überreicht, sodass sich auch daraus der <u>dringendst gebotene Handlungsbedarf</u> und die objektive Gefährdung der Rechte des Klägers ergibt.

169    Vorliegend wurde mit der Einreichung der "Abberufungen" beim Stiftungsratspräsident durch die Zweitbegünstigten bereits versucht, die wirksam (und nach wie vor aufrechten) Stiftungsratsmitglieder Tomasz Szelag und Jaroslaw Grzesiak dem Handelsregister löschen zu lassen, obwohl nicht nur die Änderung der Statuten vom 2. August 2024 unwirksam, sondern jene vom 19. August 2024 wirksam ist, sondern insbesondere, obwohl der Kläger mit Erklärung vom 19. August 2024 die beiden erwähnten Stiftungsräte vorsorglich (wieder-)bestellt und bestätigt hat.

170    Damit liegt ohne jeden Zweifel eine objektive Gefährdung der Ansprüche des Klägers im Lichte der soeben zitierten Rechtsprechung des Fürstlichen Obersten Gerichtshofs vor. Wird der gegenständlich beantragte Amtsbefehl nicht erlassen, so besteht die Gefahr, dass die Zweitbegünstigten (darunter auch die Erstbeklagte, zumal die Zweitbegünstigten versuchen, auf diese ihren Stiftungsrat massgeblichen Einfluss zu nehmen, was ihnen nach der bescheinigten Sachlage wohl auch bisweilen zu gelingen vermag) auf die Eintragung als neue Stiftungsratsmitglieder im Handelsregister Handlungen drängen und entsprechende Anträge dafür stellen, ohne dazu befugt zu sein (da deren Rechte, wie gezeigt, offensichtlich nicht bestehen).

## 7.    Sicherungsmittel

171    Bekanntlich werden auch im ausserstreitigen Stiftungsaufsichtsverfahren die Bestimmungen der Art 276 ff EO zur Sicherung der dort geltend gemachten Ansprüche angewandt.[56] Für das vorliegende Sicherungsbegehren gilt daher vorweg als Prämisse, dass jene Sicherungsmittel, die im stiftungsrechtlichen Ausserstreitverfahren erlassen werden, ebenso im Falle der streitigen Auseinandersetzung nach der ZPO erlassen werden müssen.

---

[56] Für viele vgl 01 HG.2010.345 LES 2010, 358.

172    Geeignetes Sicherungsmittel ist gegenständlich zunächst das Verbot an den Zweit-, die Dritt- und den Viertbeklagten, bis zum Abschluss des Hauptverfahrens keinerlei Stiftungsräte zu bestellen oder abzuberufen. Damit wird verhindert, dass die geltend gemachten Rechte des Klägers nach den wirksamen Statuten vom 19. August 2024 konterkariert und die Zweitbegünstigten die Kontrolle über die Stiftung übernehmen können. Es liegt darin auch ein Vorgriff auf die Entscheidung in der Hauptsache, zumal lediglich der Status Quo gesichert wird. Umgekehrt läge vielmehr ein unwiederbringlicher Verlust der Rechte des Klägers vor, würde man die Zweitbegünstigten – sinngemäss – einstweilen gewähren lassen, bis über die Klage rechtskräftig entschieden würde.

173    Dieses Verbot muss zwangsläufig auch (im Ergebnis gleichlautend und aus denselben Erwägungen) gegenüber der Erstbeklagten ausgesprochen werden, sodass deren Organe an dieses gebunden sind. Darüber hinaus muss dieser (und damit der für sie handelnden Organe) verboten werden, entsprechende Anmeldungen beim Handelsregister einzureichen, um den Sicherungszweck dieses Amtsbefehls nicht zu vereiteln.

174    Aus den gleichen Erwägungen hat gegenüber den namentlich anzuführenden derzeit im Handelsregister eingetragenen Stiftungsräten und gegenüber dem Stiftungsratspräsidenten auch das Drittverbot zu ergehen, allfälligen Aufforderungen der Zweit-, Dritt- und Viertbeklagten auf Anmeldung oder Löschung von Stiftungsratsmitgliedern nachzukommen.

175    Schliesslich ist ein an das Amt für Justiz, Abteilung Handelsregister, gerichtetes Verbot, mit welchem diesem einstweilen untersagt wird, allfällige Anmeldungen oder Eintragungen betreffend die Erstbeklagte im Handelsregister vorzunehmen, ebenso erforderlich, weil auch der Fall berücksichtigt werden müsste, dass äusserstenfalls gegen den erlassenen Amtsbefehl verstossen und trotz diesem eine Anmeldung beim Handelsregister eingereicht werden würde.

176    Erst durch die Kombination dieser Massnahmen wird verhindert, dass die Zweitbegünstigten zu Unrecht (weil gestützt auf eine nichtige bzw. nicht mehr in Kraft bestehende Stiftungsurkunde bzw. Ablebenserklärung) als solche im Handelsregister Eintragungen vornehmen werden und sich gutgläubige Dritte in der Folge auf eine solche unrichtige Eintragung verlassen würden.

8.    Keine vorherige Anhörung der Sicherungsgegner

177    Angesichts des Vorgesagten ist es vorliegend nicht möglich, den Sicherungsgegnern vorgängig das rechtliche Gehör in Bezug auf den gegenständlichen Sicherungsantrag einzuräumen, ohne den Zweck des beantragten Amtsbefehls zu vereiteln. Wollte man den Sicherungsgegnern vorgängig das rechtliche Gehör gewähren, so könnten die Zweitbegünstigten weitere Handlungen als angebliche "Stiftungsräte" bzw Kontrollberechtigte der Erstbeklagten setzen, die gerade den beantragten Amtsbefehl konterkarieren würden.

178    Hinzu kommt, dass die Drittbeklagte in den USA wohnhaft ist, während dem Zweit- und dem Viertbeklagten innerhalb der Europäischen Union zugestellt werden müsste. Die Zweit-begünstigten stehen jedoch untereinander – wie sich schon ob der Urkunden ergibt – in engem Kontakt. Bereits die Gewährung einer Äusserungsfrist hätte daher zum Ergebnis, dass der Zweck des beantragten Amtsbefehls und damit auch der Sicherungsanspruch des Klägers vereitelt werden würde, indem die Drittbeklagte die Dauer bis zum Erlass einer Einstweiligen Verfügung (durch Gewährung einer vorherigen Äusserungsfrist) ungebührlich lange hinausschieben könnte. Der gegenständliche Antrag würde äusserstenfalls seiner massgeblichen Rechtschutz- und Sicherungsfunktionen beraubt werden. Aus diesem Grund ist vorliegend auf eine vorgängige Anhörung der Sicherungsgegner zu verzichten, um nicht den Zweck des beantragten Amtsbefehls zu vereiteln.[57] Es würden den Sicherungsgegnern durch Entfall einer Anhörung auch keine unwiederbringlichen Nachteile erwachsen.

9.    Sicherungsanträge

Aus diesen Gründen wird beantragt zu erlassen nachstehenden

AMTSBEFEHL:

Zur Sicherung der oben angeführten Feststellungsansprüche des Klägers wird bis zur Rechtskraft des über die Klage ergehenden Urteils

1    dem Zweit-, der Dritt- und dem Viertbeklagten es ab sofort verboten, Stiftungsräte der Erstbeklagten zu bestellen oder abzuberufen;

2    der Erstbeklagten es ab sofort verboten, Bestellungen und Abberufungen des Zweit-, der Dritt- oder des Viertbeklagten entgegenzunehmen oder solchen Erklärungen der Erwähnten zu entsprechen, insbesondere wird es der Erstbeklagten verboten, Anmeldungen im Handelsregister, gleichgültig ob Löschungen oder Eintragungen von Stiftungsratsmitgliedern oder des Stiftungsratspräsidenten, vorzunehmen, sofern sie nicht zuvor ausdrücklich und schriftlich vom Kläger genehmigt wurden;

3    der Erstbeklagten wird es ab sofort auch verboten, Vermögensverschiebungen durch Veräusserung, Abtretung oder sonstiger Übertragung von ihr gehaltenen Geschäftsanteilen oder sonstigen Beteiligungen, gleich in welcher Art immer diese gehalten werden mögen, sei es unmittelbar oder mittelbar über Tochter- oder Enkelgesellschaften, vorzunehmen, oder sonstige vermögensrechtlichen Verfügungen welcher Art auch immer (wie insbesondere Stimmrechtsausübungen auf Ebene von Tochter- und/oder Enkelgesellschaften oder vergleichbare [Rechts-]Handlungen, die zu einem Vermögensabfluss der Erstbeklagten führen), sofern solche nicht zuvor ausdrücklich und schriftlich vom Kläger genehmigt wurden;

---

[57] Vgl. OGH vom 7. September 2018, 01 CG.2018.91, LES 2018, 265.

*in eventu*: insbesondere wird ihr auch verboten, Vermögensverschiebungen durch Veräusserung, Abtretung oder sonstiger Übertragung von ihr gehaltenen Geschäftsanteilen oder sonstigen Beteiligungen oder sonstige vermögensrechtlichen Verfügungen (wie insbesondere Stimmrechtsausübungen auf Ebene von Tochter- und/oder Enkelgesellschaften oder vergleichbare [Rechts-]Handlungen, die zu einem Vermögensabfluss der Erstbeklagten führen) an der

    i.    Gesellschaft BITHELL HOLDINGS LIMITED mit Sitz in Agios Athanasios, Limassol (Zypern), eingetragen im Handelsregister Zypern, unter der Nummer HE 212923,

    ii.    Gesellschaft KARSWELL LIMITED mit Sitz in Agios Athanasios, Limassol (Zypern), eingetragen im Handelsregister Zypern, unter der Nummer HE 229808,

    iii.    Gesellschaft STASALCO LTD mit Sitz in Agios Athanasios, Limassol (Zypern), eingetragen im Handelsregister Zypern, unter der Nummer HE 372875,

    iv.    Gesellschaft WBN HOLDING LIMITED mit Sitz in Agios Athanasios, Limassol (Zypern), eingetragen im Handelsregister Zypern, unter der Nummer HE 336956,

    v.    Gesellschaft AVIAT INVESTMENTS LIMITED mit Sitz in Agios Athanasios, Limassol (Zypern), eingetragen im Handelsregister Zypern, unter der Nummer HE 299788,

    vi.    Gesellschaft Inwestycje Polskie spółka z ograniczoną odpowiedzialnością mit Sitz in Warschau (Polen), eingetragen im Handelsregister Polen, unter der Nummer KRS 751397

    vii.    Gesellschaft Blue Jet Charters spółka z ograniczoną odpowiedzialnością mit Sitz in Warschau (Polen), eingetragen im Handelsregister Polen, unter der Nummer KRS 171414

    viii.    Gesellschaft IB Towarzystwo Funduszy Inwestycyjnych Spółka Akcyjna mit Sitz in Warschau (Polen), eingetragen im Handelsregister Polen, unter der Nummer KRS 462391

    ix.    Gesellschaft CPE spółka z ograniczoną odpowiedzialnością mit Sitz in Warschau (Polen), eingetragen im Handelsregister Polen, unter der Nummer KRS 626479

    x.    Gesellschaft „TFP" spółka z ograniczoną odpowiedzialnością mit Sitz in Warschau (Polen), eingetragen im Handelsregister Polen, unter der Nummer KRS 192808

    xi.    Gesellschaft Jet Story spółka z ograniczoną odpowiedzialnością mit Sitz in Warschau (Polen), eingetragen im Handelsregister Polen, unter der Nummer KRS 187101

    xii.    oder sonstiger, hier nicht nähere genannter Beteiligungen (wie insbesondere an von den genannten Gesellschaften weiter gehaltene Untergesellschaften usw)

gleich in welcher Art immer diese gehalten werden mögen, sei es unmittelbar oder mittelbar über Tochter- oder Enkelgesellschaften, vorzunehmen, sofern solche nicht zuvor ausdrücklich und schriftlich vom Kläger genehmigt wurden;

4    den jeweiligen im Handelsregister eingetragenen Stiftungsräten und dem dort jeweiligen eingetragenen Stiftungsratspräsidenten der Erstbeklagten, Herrn Philipp Senn, Herrn Tomasz Szelag, Herrn Jaroslaw Grzesiak und Frau Katarzyna Tomczuk, jeweils pA Kirchstrasse 12, 9490 Vaduz, wird es ab sofort <u>verboten</u> (<u>Drittverbot</u>),

    – ihren Pflichten gegenüber der Erst-, dem Zweit-, der Dritt- oder dem Viertbeklagten auf Anmeldung von Bestellungen oder Abberufungen von Stiftungsratsmitgliedern im Handelsregister nachzukommen, sofern solche nicht zuvor ausdrücklich und schriftlich vom Kläger genehmigt wurden;

    – ihren Pflichten gegenüber der Erst-, dem Zweit-, der Dritt- oder dem Viertbeklagten zur Fassung von Stiftungsratsbeschlüssen nachzukommen, sofern solche Beschlüsse nicht zuvor ausdrücklich und schriftlich vom Kläger genehmigt wurden;

5    dem Amt für Justiz, Abteilung Handelsregister, bis vier Wochen nach dem rechtskräftigen Abschluss des Hauptverfahrens untersagt, Anmeldungen im Handelsregister, gleichgültig ob Löschungen oder Eintragungen von Stiftungsratsmitgliedern oder des Stiftungsrats-präsidenten, hinsichtlich der Erstbeklagten vorzunehmen, sofern sie nicht zuvor ausdrücklich und schriftlich vom Kläger genehmigt wurden.

Vaduz, 29. August 2024
SOT/AGO/vpa

304

Beilagen:

| | | |
|---|---|---|
| ./A | Amtsbestätigung vom 22. August 2024 | |
| ./B | Statuten der Solkomtel Foundation idF vom 15. Juni 2023 | |
| ./C | Beistatuten der Solkomtel Foundation idF vom 15. Juni 2023 | |
| ./D | Statuten der TiVi Foundation idF vom 29. November 2023 | |
| ./E | Beistatuten der TiVi Foundation idF vom 29. November 2023 | |
| ./F | Eidesstättige Erklärung des Klägers vom 24. August 2024 | |
| ./G | Eidesstättige Erklärung des Jerzy Modrzejewski vom 24. August 2024 | |
| ./H | Eidesstättige Erklärung der Justyna Kulka vom 24. August 2024 | |
| ./I | Erklärung über die Änderung der Statuten der Solkomtel zu Urkunde A Nr. 6219/2024 ("Änderungserklärung Solkomtel") | |
| ./J | Erklärung über die Änderung der Statuten der TiVi zu Urkunde A Nr. 6223/2024 ("Änderungserklärung TiVi") | |
| ./K | Erklärung "Beschluss im Umlaufverfahren" gemäss Artikel 7 der Statuten der Solkomtel zu Urkunde A Nr. 6227/2024 ("Kuratorenerklärung Solkomtel") | |
| ./L | Erklärung "Beschluss im Umlaufverfahren" gemäss Artikel 7 der Statuten der TiVi zu Urkunde A Nr. 6228/2024 ("Kuratorenerklärung TiVi") | samt Übersetzung |
| ./M | Erklärung gemäss Artikel 13 (2) 2 der Statuten der Solkomtel zu Urkunde A Nr. 6229/2024 ("Ablebenserklärung Solkomtel") | samt Übersetzung |
| ./N | Erklärung gemäss Artikel 13 (2) 2. (i) der Satzung der TiVi zu Urkunde A Nr. 6235/2024 ("Ablebenserklärung TiVi") | samt Übersetzung |
| ./O | "Stand-Still" Vereinbarung der Parteien vom 3. August 2024 | samt Übersetzung |
| ./P | Anfechtungserklärung des Klägers vom 13. August 2024 samt Empfangsbestätigung von Tomasz Szelag | |
| ./Q | E-Mails des Zweitbeklagten zur (unwirksamen) "Abberufung" des Tomasz Szelag und Jaroslaw Grzesiak sowie unwirksame "Bestellungs-" und "Annahmeerklärungen" des Zweitbeklagten und der Zofia Jedrzeywska vom 14. August 2024 | samt Übersetzung |
| ./R | Erklärung des Klägers betreffend die Neuabgabe der Ablebenserklärung Solkomtel vom 17. August 2024 | |
| ./S | Konvolut an Warnschreiben an die Zweitbegünstigten und an den Stiftungsrat sowie an den Stiftungsratspräsidenten vom 17. August 2024 (inkl Sendebestätigungen) | |
| ./T | E-Mail vom 18. August 2024 betreffend die Empfangsbestätigung des Schreibens vom 17. August 2024 von Tomasz Szelag | samt Übersetzung |
| ./U | Schreiben vom 20. August 2024 betreffend die Empfangsbestätigung des Schreibens vom 17. August 2024 von Jaroslaw Grzesiak | samt Übersetzung |
| ./V | E-Mail an Philipp Senn vom 21. August 2024 samt Lesebestätigung | |

305

| ./W | E-Mail von RA Paweł Rymarz vom 18. August 2024 | samt Übersetzung |
|---|---|---|
| ./X | Schreiben von RA Paweł Rymarz und Krzysztof Sajchta vom 20. August 2024 | samt Übersetzung |
| ./Y | Schreiben von RA Bernhard Motal vom 20. August 2024 | |
| ./Z | Informationsschreiben an die Zweitbegünstigten über die bevorstehende (Rück-)Änderung der Statuten und Aufnahme einer Verfallsklausel vom 18. August 2024 | |
| ./AA | Notariatsakt vom 19. August 2024 über die Änderung der Statuten der Solkomtel (GZ 1562) | |
| ./BB | Schreiben an Philipp Senn vom 20. August 2024 samt Übernahmebestätigung | |
| ./CC | Übernahmebestätigung des Stiftungsratspräsidenten Philipp Senn über den Erhalt der Originaldokumente des Stifters vom 20. August 2024 | |
| ./DD | E-Mail Korrespondenz vom 21. und 22. August 2024 zwischen Simon Ott, Philipp Senn und Luca Castellazzi (Aufforderung zur Einsichtnahme in Stiftungsdokumente) | |
| ./EE | Eidesstättige Erklärung von RA Peter Machherndl vom 25. August 2024 | |
| ./FF | Rücktritt des Zweitbeklagten als Stiftungsratsmitglied samt E-Mail an Philipp Senn vom 20. August 2024 | samt Übersetzung |
| ./GG | Konvolut der Vollmachtswiderrufe durch die TiVi samt E-Mails vom 22. August 2024 | samt Übersetzung |
| ./HH | E-Mail von Philipp Senn vom 23. August 2024, 17:14 Uhr | |
| ./II | Eidesstättige Erklärung von Thomas Szelag vom 25. August 2024 | samt Übersetzung |
| ./JJ | Umlaufbeschluss betreffend die Vollmachten der Solkomtel vom 12. Juni 2024 | samt Übersetzung |
| ./KK | Emails von Philipp Senn an Frau Thoele vom 9. April 2024 und vom 20. August 2024 | |
| ./LL | Änderungsanzeige des (ehemaligen) Stiftungsratspräsidenten mitsamt Schreiben vom 26. August 2024 | |
| ./MM | Beschluss des Klägers über die Abberufung des Stiftungsratspräsidenten und der Frau Tomczuk sowie Bestellung eines neuen Stiftungsratspräsidenten wie auch eines neuen Mitglieds des Stiftungsrates | |

306