# EXHIBIT N

<div style="border:1px solid">Exhibit ./AN _____</div>

**AFFIDAVIT OF TOMASZ SZELAG**

**22 April 2025**

**I.      Introduction**

1    I was requested by Mr. Solorz to provide a written statement on the events before and after the meetings of the foundation councils of TiVi Foundation and Solkomtel Foundation of 10 April 2025.

2    My name is Tomasz Szelag and I was born on 13th of January 1977 in Lubin, Poland with the current working address being 3 Krinou Street, The Oval, floor 5, Apartment/Office 503, Agios Athanasios, 4103, Limassol.

3    I was appointed by Mr. Zygmunt Solorz in his capacity as founder and Curator to serve as a Member of the Foundation Council of both TiVi Foundation and the Solkomtel Foundation, both based in Vaduz, Liechtenstein.

4    I hereby declare the following:

5    All statements in this Affidavit are based on my personal knowledge of the facts and my experience as described in the following paragraphs.

**II.     Role and Responsibilities**

6    I have been working for Mr. Solorz since May 2009. At the moment I am employed to act as the Chief Financial Officer (CFO) in app. 200 companies in 13 countries, all of which are integral companies to Mr. Solorz's holdings.

7    I am member of the foundation council of TiVi Foundation and the Solkomtel Foundation since 2022.

8    TiVi Foundation and the Solkomtel Foundation directly hold shares in the following Cyprus companies:

     a.    Reddev Investments Limited

     b.    Stasalco Limited

     c.    Karswell Limited

     d.    WBN Holdings Limited

(hereinafter "Cyprus Holdings")

9    The Cyprus Holdings in turn directly and indirectly hold shares in approximately 150 companies mostly from media, telecomunication, IT and energy.

10   I have also run the investment management and wealth management ("Family Office") of Mr. Solorz and his family since 2016.

1

[signature]

### III.    Recent Developments in Foundation Council

11   By its court order (*Amtsbefehl*) dated 26 October 2024, the Princely District Court, inter alia, appointed Mr. Peter Schierscher, attorney at law in Vaduz, as an administrator of both TiVi Foundation and Solkomtel Foundations. Accordingly, from this moment onwards, the foundations councils of both Foundations consisted of Mr. Schierscher as administrator as well as Ms. Katarzyna Tomczuk and me as regular members. Further the court ordered that the Children and Secondary Beneficiaries would be entitled to nominate a successor of Ms. Katarzyna Tomczuk in case of her resignation.

12   With written declaration dated 3 March 2025, Ms. Tomczuk resigned from office as member of the foundations councils of TiVi Foundation and Solkomtel Foundation.

13   Following Ms. Tomczuk's resignation, Ms. Aleksandra Zak, Mr. Piotr Zak and Mr. Tobias Solorz as Secondary Beneficiaries of TiVi Foundation and Solkomtel Foundation based on the court order of 26 October 2024 nominated Mr. Jarosław Grzesiak as member of the foundation councils of both.

### IV.    Preparations Foundation Council meeting of 10 April 2025

14   By email addressed to Mr. Schierscher and me dated 2 April 2025, Mr. Grzesiak proposed to add the following items to the agenda of the next foundation council meetings:

15   For TiVi Foundation:

- Decision on appointment by TiVi Foundation as the sole member (sole shareholder) of Reddev Investments Limited, a Cypriot limited liability company registered under number HE 330471 ("Reddev"), two additional directors of the company, namely a Mr. George Sphiktos and a Ms. Maria Kannava;

16   For Solkomtel Foundation:

- Decision on appointment by Solkomtel Foundation as the sole member (sole shareholder) of Stasalco Limited, a Cypriot limited liability company registered under number HE 372875 ("Stasalco"), two additional directors of the company: Mr. Sphiktos and Ms. Kannava;

- Decision on appointment by Solkomtel Foundation as the sole member (sole shareholder) of Karswell Limited , a Cypriot limited liability company registered under number HE 229808 ("Karswell"), two additional directors of the company: Mr. Sphiktos and Ms. Kannava;

- Decision on amending the Articles of Association of WBN Holdings Limited, a Cypriot limited liability Company registered under number HE 336956 ("WBN") regarding the Regulation 83 and the Regulation 99;

- Decision on appointment by Solkomtel Foundation as the sole member (sole shareholder) of WBN two additional directors of the company: Mr. Sphiktos and Ms. Kannava;

2

[signature]

17   The email of Mr. Grzesiak of 2 April 2025 also included the following draft documents:

- Draft resolution of foundation council of TiVi Foundation regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors of Reddev;

- Draft resolution of TiVi Foundation as sole shareholder of Reddev regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors;

- Draft resolution of the foundation council of Solkomtel Foundation regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors of Stasalco;

- Draft resolution of Solkomtel Foundation as sole shareholder of Stasalco regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors;

- Draft resolution of foundation council of Solkomtel Foundation regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors of Karswell;

- Draft resolution of Solkomtel Foundation as sole shareholder of Karswell regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors;

- Draft resolution of the foundation council of Solkomtel Foundation regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors of WBN;

- Draft resolution of Solkomtel Foundation as sole shareholder of WBN regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors;

- Draft resolution of the foundation council of Solkomtel Foundation regarding amendment of Articles of Association of WBN;

- Draft resolution of Solkomtel Foundation as sole shareholder of WBN regarding amendment of Articles of Association of WBN;

- CV of Mr. Sphiktos;

- CV of Ms. Kannava;

18   As regards the injunctions rendered by the District Court Limassol on 10 or 11 October 2024 in cases no. 31/2024 (TiVi Foundation) and no. 32/2024 (Sokomtel Foundation) ("Cypriot Injunctions"), Mr. Grzesiak considered as follows:

> *"Given the existence of the freezing injunctions imposed by the Cyprus court, the Secondary Beneficiaries as the applicants, have agreed to grant consents for the contemplated changes and to waive the right to treat such corporate changes as in breach of the injunction orders. The waivers will be provided to our attention ahead of the board meeting."*

19   This email and its attachments is provided as Exhibit 1 of this affidavit.

20   I forwarded this email to my lawyers for information. By email dated 3 April 2025, to Mr. Schierscher (with Mr. Grzesiak in cc) my Attorney Dr. Matthias Niedermüller expressed his understanding that

3

[signature]

this topic raised by Mr. Greziak would be put on the agenda for the next meeting of the foundation council which was yet to be scheduled and would be discussed comprehensively before any decision would be taken. This email is shown in <u>Exhibit 1,</u> too.

21  By email dated 4 April 2025, Peter Schierscher confirmed that there always would be sufficient time to review the topics to ensure that they can be discussed thoroughly during the meeting and to make a well independent decision. This email is shown in <u>Exhibit 1,</u> too.

22  Also on Friday 4 April 2025, Peter Schierscher invited to the Foundation Council meeting of TiVi Foundation and Solkomtel Foundation for Thursday 10 April 2024, 10.00 a.m. with the following Agenda:

23  For TiVi Foundation:

   1. *Welcome*

   2. *Appointment of the Chairman and the Secretary*

   3. *Approval of the minutes dated 4 December 2024*

   4. *Discussion and resolution on the appointment by the Foundation as the Sole Member of Reddev Investments Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 330471 (the "Reddev"), of two additional directors of Reddev:*

      (i)  *George Sphiktos and*

      (ii) *Maria Kannava.*

      *CVs and acceptance letters from both candidates and a draft of a foundation board resolution are attached.*

   5. *Discussion and resolution on about the planned Netia S.A. infostructure spin off transaction*

   6. *Delivery address for Peter Schierscher in Poland*

      *Peter Schierscher suggests as delivery address Baker McKenzie Krzyżowski I Wspólnicy sp.k.*

   7. *Discussing and passing resolutions on the invoices from AF Trustees*

   8. *Varia*

24  For Solkomtel Foundation

   1. *Welcome*

   2. *Appointment of the Chairman  and the Secretary*

   3. *Approval of the minutes dated 4 December 2024*

   4. *Discussion and resolution on    the appointment by the Foundation as the Sole Member of Stasalco Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 372875 (the "Stasalco"), of two additional directors of the Company:*

4

[signature]

366

     *(i)  George Sphiktos and*

     *(ii)  Maria Kannava.*

*CVs and acceptance letters from both candidates and a draft of a foundation board resolution are attached.*

5.   *Discussion and resolution on the appointment by the Foundation as the Sole Member of Karswell Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 229808 (the "Karswell"), of two additional directors of the Company:*

     *(i)  George Sphiktos and*

     *(ii)  Maria Kannava.*

*CVs and acceptance letters from both candidates and a draft of a foundation board resolution are attached.*

6.   *Discussion and resolution on amending the Articles of Association of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 ("WBN") regarding the Regulation 83 and the Regulation 99.*

*A draft of a foundation board resolution on amending the Articles of Association of WBN is attached.*

7.   *Discussion and resolution on the appointment by the Foundation as the Sole Member of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 (the "WBN"), of two additional directors of the Company:*

     *(i)  George Sphiktos and*

     *(ii)  Maria Kannava*

8.   *Delivery address for Peter Schierscher in Poland*

*Peter Schierscher suggests as delivery address Baker McKenzie Krzyżowski i Wspólnicy sp.k.*

9.   *Discussing and passing resolutions on the invoices from AF Trustees*

10. *Varia*

25  The invitations are attached as <u>Exhibits 2a and 2b</u>.

26  On 07 April 2025, Mr. Solorz in his capacity as Curator of TiVi Foundation and Solkomtel Foundation sent to Mr. Schierscher an undated letter in which he expressed his strong concerns about the appointment of Mr. Grzesiakas member of the foundation councils of TiVi Foundation and Solkomtel Foundation as well as the proposed appointment of additional directors in Cypriot subsidiaries of TiVi Foundation and Solkomtel Foundation. I attach this letter as <u>Exhibit 3</u>.

27  On 5 April 2025 Andew Demetriou, attorney at law and partner of the Cypriot law firm of Ioannides Demetriou LLC, issued a written legal opinion in which he pointed out that the appointment of additional directors in Cypriot subsidiaries as proposed by Mr. Grzesiak would constitute a breach of

<div align="center">5</div>

[signature]

<div align="right">367</div>

the Cypriot Injunctions. Such breach would constitute a criminal contempt of court. I attach this letter as Exhibit 4.

28    By email dated 7 April 2025, 10.03 p.m., Mr. Schierscher forwarded said legal opinion to Mr. George Z. Georgiou, partner and attorney at law at the law firm of George Z. Georgiou & Associates LLC, which was mandated to provide advice and act on behalf of TiVi Foundation and Solkomtel Foundation. I was copied into this Mail.

29    By email dated 8 April 2025, 9:02 a.m., Mr. Grzesiak provided Mr. Schierscher and Mr. Georgiou with the announced waivers issued by the Secondary Beneficiaries. I again was in cc in this correspondence. I attach this correspondence as Exhibit 5.

30    By email dated 8 April 2025, 10:53 p.m., Mr. Georgiou provided to Mr. Schierscher and Mr. Grzesiak (with me in cc) his advice and outlined that the legal assessment of Andew Demetriou dated 5 April 2025 was accurate. He agreed with Mr. Demetriou that the resolutions proposed by Mr. Grzesiak constitute a violation of the Cypriot Injunction, if passed and that the proposed changes require a variation of the Cypriot Injunctions by court with notice to both sides, explaining clearly the rationale for doing so. This correspondence is shown in Exhibit 5, too.

31    On 9 April 2025, Mr. Schierscher during the court hearing that was conducted that day announced orally to me and my attorney Mr. Niedermüller and reportedly also to the lawyers of Mr. Solorz that he will vote against Mr. Grzesiak's proposal of appointment of additional directors in Cypriot subsidiaries in the meeting of the foundation councils scheduled for the following day.

32    As regards the agenda for these meetings of the foundation councils of TiVi and Solkomtel Foundation, no additional items were scheduled or proposed by any member of the foundation councils.

V.    Foundation Council Meetings 10 April 2025

33    After consideration on the legal opinion of Mr. Georgiou in the meeting of the foundation council of TiVi Foundation on 10 April 2025, the members of the foundation council unanimously decided to dismiss the application made by Mr. Grzesiakand not to appoint Mr. George Sphiktos and Ms. Maria Kannava as additional directors of Reddev.

34    However, Mr. Grzesiak raised a new topic in the course of the Foundation Council meeting and proposed that TiVi Foundation shall apply to the Court in Cyprus for a variation of the Cypriot Injunction which would then allow the additional appointment of Directors of Reddev. Mr. Schierscher and Mr. Grzesiak voted in favor of an instruction to the Cypriot lawyers of TiVi Foundation to apply to the Court for a variation of the Cypriot Injunction to enable the appointment of additional directors in the company. I strongly protested and voted against such resolution and instruction.

6

[signature]

35   After consideration on the legal opinion of Mr. Georgiou in the meeting of the foundation council of Solkomtel Foundation on 10 April 2025, the members of the foundation council unanimously decided to dismiss the application made by Mr. Grzesiak and not to appoint addition directors of Stasalco, Karswell and WBN and to not amend the Articles of Association of WBN.

36   However, Mr. Grzesiak raised a new topic in the course of the Foundation Council meeting and proposed that Solkomtel Foundation shall apply to the Court in Cyprus for a variation of the Cypriot Injunction which would then allow the additional appointment of Directors of Stasalco, Karswell and WBN and to not amend the Articles of Association of WBN. Mr. Schierscher and Mr. Grzesiak voted in favor of an instruction to the Cypriot lawyers of TiVi Foundation to apply to the Court for a variation of the Cypriot Injunction to enable the appointment of additional directors in the said companies as well as the amendment of the Articles of Association of WBN. I strongly protested and voted against such resolution and instruction.

37   The Agenda of the meetings of TiVi Foundation and Solkomtel Foundation did not contain the item to instruct the Cypriot Attorney to make an application for variation of the Cyprus Injunction. This was only raised at the meeting of the Foundation Council after the application of Mr. Grzesiak has been dismissed unanimously. Therefore, I was not given the opportunity to carefully consider such proposal.

38   In the course of the meeting of the Foundation Council there was no discussion on and assessment of the persons that were proposed for appointment. Also there was no discussion on the potential negative effects and consequences of such application for TiVi Foundation and Solkomtel Foundation and also not, whether and to which extent the foundations would be dependent on a consent of the applicants and secondary beneficiaries at a later stage.

39   Except for the decision of the two other members of the foundation councils to instruct the Cypriot lawyers, no further details were discussed, in particular no time frame was set. In particular I assumed (the same as in other previous issues/topics) that I would be informed and copied into any instructions to the Cyprus counsel of the Foundation and the entire process before any filing would be conducted. I attach the minutes of the 10 April 2025 meetings as Exhibits 6a and 6b.

**VI.   Actions after Foundation Council meeting 10 April 2025**

40   After the meetings of the foundation councils had ended, I received no further correspondence from Mr. Schierscher and Mr. Grzesiak regarding the status and progress of the application to alter the Cyprus Injunction. Particularly, as opposed to the days before the meeting of the Foundation Council of 10 April 2025, I was not copied into any correspondence with the Cypriot lawyer of the Foundation.

41   On 14 April 2025 I had a short call with Mr. Schierscher on another item and also at this occasion he did not mention that a draft application had been prepared and would be filed the day after. He mentioned he would be in Cyprus the next day, but because I was in Poland, I didn't ask further questions.

7

[signature]

42  I thus assumed at this point that there had been no progress on the preparation of the application.

43  On 14 and 15 April 2025 Mr. Schierscher forwarded several emails to Mr. Grzesiak and me in which he informed us on the progress of pending Liechtenstein court proceedings in which TiVi Foundation and Solkomtel Foundation are currently involved. Again also at this occasion there was no mentioning on the instructions given to the Cypriot lawyers and that the applications already had been prepared and filed on 16 April 2025.

44  I only learned on 17 April 2025 (thus one day before the Easter break) when I was served with the applications of TiVi and Solkomtel Foundation as one of the respondents in the proceeding, that the applications comprising 245 and 104 pages respectively had already been filed on 16 April 2025 without me being informed or involved in the entire drafting and filing process.

45  I also only learned on 17 April 2025 that Mr. Schierscher and Mr. Grzesiak in their capacities as members of the foundation councils of TiVi Foundation and Solkomtel Foundation had travelled to Cyprus on or around 14 and 15 April 2025 to prepare the filing of the applications and also to produce and swear Affidavits which were attached to the application for variations of the Cypriot Injunctions (see also Para 41).

46  I was entirely surprised to learn that Mr. Schierscher and Mr. Grzesiak had prepared and filed the entire applications of TiVi Foundation and Solkomtel Foundation as further respondents in the Cyprus proceeding to vary the injunction comprising over 200 and 100 pages respectively and containing several affidavits within only 3 working days after the Meeting of the Foundation Council of 10 April 2025, without me being informed on the instructions, status and progress of such application.

47  After having learned about these events my lawyer Mr. Niedermüller on 17 April 2025 sent an email to Mr. Schierscher (with Mr. Grzesiak in cc) to emphasize that such conduct was not in line with the requirements of a proper conduct of a Foundation Council and that I unlawfully had been excluded from the entire process following the meeting of the Foundation Council of 10 April 2025. In addition, he made a formal request for information to be provided with the entire communication and documentation related to the steps which led to the applications for variations of the Cypriot Instructions.

48  The same day, thus on 17 April 2025, I followed up with an additional E-Mail wherein I clarified that at the meeting of the Foundation Council of 10 April 2025 it had not been discussed what the next steps and timeline should be and that I had expected to be involved in the entire further communication and next steps before any filing.

49  I attach the emails of 17 April 2025 as <u>Exhibit 7</u>.

50  To date, I have not received a response to these emails from Mr. Schierscher or Mr. Grzesiak.

**VII.  Correctness and Language of Witness Statement**

51  I hereby confirm that the information contained in this witness statement is truthful, accurate and complete, to the best of my knowledge.

[signature]

52  This witness statement was originally drawn up in English with the support of my lawyer, Dr. Matthias Niedermüller and is based on my personal description of events.

53  Should I be called to be interrogated, I intend to give my witness testimony in Polish.

54  I reserve the right to supplement this witness statement should additional information become available or if further issues need to be addressed.

Limassol, 22.04.2025

Place, Date

[signature]

Tomasz Szelag

[signature]

371

*[Translator's note: There now follows the German version of the above affidavit]*

**EIDESSTATTLICHE ERKLÄRUNG VON TOMASZ SZELAG**

**22. April 2025**

**I.        Einführung**

1    Ich wurde von Herrn Solorz gebeten, eine schriftliche Stellungnahme zu den Ereignissen vor und nach den Sitzungen der Stiftungsräte der TiVi Foundation und der Solkomtel Foundation vom 10. April 2025 abzugeben.

2    Mein Name ist Tomasz Szelag und ich wurde am 13. Januar 1977 in Lubin, Polen, geboren. Meine aktuelle Büroadresse lautet 3 Krinou Street, The Oval, floor 5, Apartment/Büro 503, Agios Athanasios, 4103, Limassol.

3    Ich wurde von Herrn Zygmunt Solorz in seiner Eigenschaft als Gründer und Kurator zum Mitglied des Stiftungsrates der TiVi Foundation und der Solkomtel Foundation, beide mit Sitz in Vaduz, Liechtenstein, ernannt.

4    Ich erkläre hiermit Folgendes:

5    Alle Angaben in dieser eidesstattlichen Erklärung beruhen auf meiner persönlichen Kenntnis der Tatsachen und meiner Erfahrung wie sie in den folgenden Abschnitten beschrieben sind.

**II.        Funktion und Zuständigkeiten**

6    Ich bin seit Mai 2009 für Herrn Solorz tätig. Zurzeit bin ich bei Herrn Zygmunt Solorz als Chief Financial Officer (CFO) in ca. 200 Unternehmen in 13 Ländern, die alle zu den Holdings von Herrn Solorz gehören.

7    Seit 2022 bin ich Mitglied des Stiftungsrats der TiVi Foundation und der Solkomtel Foundation.

8    Die TiVi Foundation und die Solkomtel Foundation halten direkt Anteile an den folgenden zypriotischen Unternehmen:

   a.   Reddev Investments Limited

   b.   Stasalco Limited

   c.   Karswell Limited

   d.   WBN Holdings Limited

   (im Folgenden "zypriotische Holdings")

9    Die zypriotischen Holdings halten ihrerseits direkt und indirekt Anteile an rund 150 Unternehmen, vor allem aus den Bereichen Medien, Telekommunikation, IT und Energie.

10   Seit 2016 leite ich auch das Investment Management sowie die Vermögensverwaltung ("Family Office") von Herrn Solorz und seiner Familie.

1

### III.    Jüngste Entwicklungen im Stiftungsrat

11  Mit Amtsbefehl vom 26. Oktober 2024 hat das Fürstliche Landgericht u.a. Herrn Peter Schierscher, Rechtsanwalt in Vaduz, zum Beistand der TiVi Foundation und der Solkomtel Foundation bestellt. Dementsprechend setzten sich die Stiftungsräte beider Stiftungen ab diesem Zeitpunkt aus Herrn Schierscher als Beistand sowie Frau Katarzyna Tomczuk und mir als ordentliche Mitglieder zusammen. Ferner ordnete das Gericht an, dass die Kinder und die Zweitbegünstigten das Recht haben, einen Nachfolger für Frau Katarzyna Tomczuk zu benennen, falls diese zurücktritt.

12  Mit schriftlicher Erklärung vom 3. März 2025 hat Frau Tomczuk ihr Amt als Mitglied der Stiftungsrätin der TiVi Foundation und der Solkomtel Foundation niedergelegt.

13  Nach dem Rücktritt von Frau Tomczuk haben Frau Aleksandra Zak, Herr Pjotr Zak und Herr Tobias Solorz als Zweitbegünstigte der TiVi Foundation und der Solkomtel Foundation aufgrund des Amtsbefehls vom 26. Oktober 2024 Herrn Jarosław Grzesiak als Mitglied der Stiftungsräte beider Stiftungen nominiert.

### IV.    Vorbereitung der Stiftungsratssitzung vom 10. April 2025

14  In einer an Herrn Schierscher und mich gerichteten E-Mail vom 2. April 2025 schlug Herr Grzesiak vor, die folgenden Punkte auf die Tagesordnung der nächsten Stiftungsratssitzungen zu setzen:

15  Für die TiVi Foundation:

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Reddev Investments Limited, einer zypriotischen Gesellschaft mit beschränkter Haftung, die unter der Nummer HE 330471 ("Reddev") registriert ist, durch die TiVi Foundation als deren alleinige Gesellschafterin, nämlich Herrn George Sphiktos und Frau Maria Kannava;

16  Für die Solkomtel-Stiftung:

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Stasalco Limited, einer unter der Nummer HE 372875 eingetragenen zypriotischen Gesellschaft mit beschränkter Haftung ("Stasalco"), durch die Solkomtel-Foundation als deren alleinige Gesellschafterin: Herr Sphiktos und Frau Kannava;

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Karswell Limited, einer zypriotischen Gesellschaft mit beschränkter Haftung, die unter der Nummer HE 229808 ("Karswell") eingetragen ist, durch die Solkomtel Foundation als deren alleinige Gesellschafterin: Herr Sphiktos und Frau Kannava;

- Beschluss über die Änderung der Satzung der WBN Holdings Limited, einer unter der Nummer HE 336956 eingetragenen zypriotischen Gesellschaft mit beschränkter Haftung ("WBN") in Bezug auf die Verordnung 83 und die Verordnung 99;

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren des Unternehmens durch die Solkomtel Foundation als alleinige Gesellschafterin der WBN: Herr Sphiktos und Frau Kannava;

17  Die E-Mail von Herrn Grzesiak vom 2. April 2025 enthielt auch die folgenden Entwürfe von Dokumenten:

- Entwurf eines Beschlusses des Stiftungsrates der TiVi Foundation bezüglich der Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren der Reddev;

- Entwurf eines Beschlusses der TiVi Foundation als alleinige Gesellschafterin der Reddev bezüglich der Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren;

- Entwurf eines Beschlusses des Stiftungsrats der Solkomtel Foundation über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren der Stasalco;

- Entwurf eines Beschlusses der Solkomtel Foundation als alleinige Gesellschafterin der Stasalco über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren;

- Entwurf eines Beschlusses des Stiftungsrates der Solkomtel Foundation über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren der Karswell;

- Entwurf eines Beschlusses der Solkomtel Foundation als alleinige Gesellschafterin der Karswell über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren;

- Entwurf eines Beschlusses des Stiftungsrates der Solkomtel Foundation über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren der WBN;

- Entwurf eines Beschlusses der Solkomtel Foundation als alleinige Gesellschafterin der WBN über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren;

- Entwurf eines Beschlusses des Stiftungsrates der Solkomtel Foundation zur Änderung der Satzung der WBN;

- Entwurf eines Beschlusses der Solkomtel Foundation als alleiniger Anteilseigner des WBN zur Änderung der Satzung der WBN;

- Lebenslauf von Herrn Sphiktos;

- Lebenslauf von Frau Kannava;

18  Hinsichtlich der einstweiligen Verfügungen des Bezirksgerichts Limassol vom 10. oder 11. Oktober 2024 in den Rechtssachen Nr. 31/2024 (TiVi Foundation) und Nr. 32/2024 (Solkomtel Foundation) ("zypriotische einstweilige Verfügungen") vertritt Herr Grzesiak folgende Auffassung:

> *"In Anbetracht der vom zypriotischen Gericht verhängten Einstweiligen Verfügungen haben sich die Zweitbegünstigten als Antragsteller bereit erklärt, ihre Zustimmung zu den geplanten Änderungen zu erteilen und auf das Recht zu verzichten, diese Unternehmensänderungen als Verstoss gegen die Verfügungen zu behandeln. Die Verzichtserklärungen werden uns noch vor der Verwaltungsratssitzung zur Kenntnis gebracht.*

19  Diese E-Mail und ihre Anhänge sind als Beilage 1 dieser eidesstattlichen Erklärung beigefügt.

20  Ich habe diese E-Mail zur Information an meine Anwälte weitergeleitet. Mit E-Mail vom 3. April 2025 an Herrn Schierscher (mit Herrn Grzesiak in cc) brachte mein Rechtsanwalt Dr. Matthias Niedermüller sein Verständnis dafür zum Ausdruck, dass dieses von Herrn Greziak angesprochene Thema auf die Tagesordnung der nächsten, noch anberaumten Sitzung des Stiftungsrats gesetzt und vor einer Entscheidung umfassend erörtert werden würde. Diese E-Mail ist ebenso in <u>Beilage 1</u> enthalten.

21  Mit E-Mail vom 4. April 2025 bestätigte Peter Schierscher, dass immer genügend Zeit zur Verfügung stehe, um die Themen zu überprüfen, damit sie in der Sitzung gründlich diskutiert werden können und eine unabhängige Entscheidung getroffen werden kann. Diese E-Mail ist ebenso in <u>Beilage 1</u> enthalten.

22  Ebenfalls am Freitag, 4. April 2025, lud Peter Schierscher zur Stiftungsratssitzung der TiVi Foundation und der Solkomtel Foundation für Donnerstag, 10. April 2024, 10.00 Uhr, mit folgender Tagesordnung ein:

23  Für die TiVi Foundation:

    *1.*    *Begrüssung*

    *2.*    *Ernennung des Vorsitzenden und des Sekretärs*

    *3.*    *Genehmigung des Protokolls vom 4. Dezember 2024*

    *4.*    *Diskussion und Beschlussfassung über die Ernennung von zwei weiteren Direktoren von Reddev durch die Stiftung als alleinige Gesellschafterin der Reddev Investments Limited, einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter der Nummer HE 330471 („Reddev") eingetragen ist:*

        *(i)*    *George Sphiktos und*

        *(ii)*    *Maria Kannava.*

    *Lebensläufe und Annahmeschreiben der beiden Kandidaten sowie ein Entwurf eines Beschlusses des Stiftungsrats sind beigefügt.*

    *5.*    *Diskussion und Beschlussfassung über die geplante Netia S.A. Ausgliederungstransaktion im Bereich Infrastruktur*

    *6.*    *Lieferadresse für Peter Schierscher in Polen*

    *Peter Schierscher schlägt als Lieferadresse Baker McKenzie Krzyżowski i Wspólnicy sp.k. vor.*

    *7.*    *Erörterung und Beschlussfassung über die Rechnungen der AF Trustees*

    *8.*    *Varia*

24  Für die Solkomtel Foundation

    *1.*    *Begrüssung*

    *2.*    *Ernennung des Vorsitzenden und des Sekretärs*

    *3.*    *Genehmigung des Protokolls vom 4. Dezember 2024*

4.     *Diskussion und Beschlussfassung über die Ernennung von zwei weiteren Direktoren der Stasalco Limited, einer im Handelsregister der Republik Zypern unter der Nummer HE 372875 eingetragenen Gesellschaft mit beschränkter Haftung (die "Stasalco"), durch die Stiftung als deren alleinige Gesellschafterin:*

    *(i)   George Sphiktos und*

    *(ii)  Maria Kannava*

    *Lebensläufe und Annahmeschreiben der beiden Kandidaten sowie ein Entwurf eines Beschlusses des Stiftungsrats sind beigefügt.*

5.     *Diskussion und Beschlussfassung über die Ernennung von zwei weiteren Direktoren der Karswell Limited, einer im Handelsregister der Republik Zypern unter der Nummer HE 229808 eingetragenen Gesellschaft mit beschränkter Haftung (die "Karswell"), durch die Stiftung als deren alleinige Gesellschafterin:*

    *(i)   George Sphiktos und*

    *(ii)  Maria Kannava.*

    *Lebensläufe und Annahmeschreiben der beiden Kandidaten sowie ein Entwurf für einen Beschluss des Stiftungsrats sind beigefügt.*

6.     *Diskussion und Beschlussfassung über die Änderung der Satzung der WBN Holdings Limited, einer Gesellschaft mit beschränkter Haftung, die im Handelsregister der Republik Zypern unter der Nummer HE 336956 ("WBN") eingetragen ist, im Hinblick auf die Verordnung 83 und die Verordnung 99.*

    *Der Entwurf eines Stiftungsratsbeschlusses zur Änderung der Satzung von WBN ist beigefügt.*

7.     *Diskussion und Beschlussfassung über die Ernennung von zwei weiteren Direktoren der WBN Holdings Limited, einer Gesellschaft mit beschränkter Haftung, die im Handelsregister der RepublikZypern unter der Nummer HE 336956 eingetragen ist (die "WBN"), durch die Stiftung deren alleinige Gesellschafterin:*

    *(i)   George Sphiktos und*

    *(ii)  Maria Kannava*

8.     *Lieferadresse für Peter Schierscher in Polen*

    *Peter Schierscher schlägt als Lieferadresse Baker McKenzie Krzyżowski i Wspólnicy sp.k. vor.*

9.     *Erörterung und Beschlussfassung über die Rechnungen der AF Trustees*

10.    *Varia*

25  Die Einladungen sind als <u>Beilagen 2a und 2b</u> beigefügt.

26  Am 07. April 2025 sandte Herr Solorz in seiner Eigenschaft als Kurator der TiVi Foundation und der Solkomtel Foundation ein undatiertes Schreiben an Herrn Schierscher, in dem er seine starken Bedenken gegen die Ernennung von Herrn Grzesiak zum Mitglied der Stiftungsräte der TiVi

<div align="center">5</div>

Foundation und der Solkomtel Foundation sowie gegen die vorgeschlagene Ernennung weiterer Direktoren in den zypriotischen Tochtergesellschaften der TiVi Foundation und der Solkomtel Foundation zum Ausdruck brachte. Ich füge dieses Schreiben als <u>Beilage 3</u> bei.

27   Am 5. April 2025 gab Andew Demetriou, Rechtsanwalt und Partner der zypriotischen Anwaltskanzlei Ioannides Demetriou LLC, ein schriftliches Rechtsgutachten ab, in dem er darauf hinwies, dass die von Herrn Grzesiak vorgeschlagene Ernennung zusätzlicher Direktoren in zypriotischen Tochtergesellschaften einen Verstoss gegen die zypriotischen Unterlassungsverfügungen darstellen würde. Ein solcher Verstoss würde eine strafbare Missachtung des Gerichts darstellen. Ich füge dieses Schreiben als <u>Beilage 4</u> bei.

28   Mit E-Mail vom 7. April 2025, 22:03 Uhr, leitete Herr Schierscher dieses Rechtsgutachten an Herrn George Z. Georgiou, Partner und Rechtsanwalt in der Anwaltskanzlei George Z. Georgiou & Associates LLC, weiter, der mit der Beratung und dem Handeln im Namen der TiVi Foundation und der Solkomtel Foundation beauftragt war. Ich wurde in dieser Mail in CC gesetzt.

29   Mit E-Mail vom 8. April 2025, 9:02 Uhr, übermittelte Herr Grzesiak Herrn Schierscher und Herrn Georgiou die angekündigten Verzichtserklärungen der Sekundärbegünstigten. Auch bei dieser Korrespondenz war ich in CC gesetzt. Ich füge diese Korrespondenz als <u>Beilage 5</u> bei.

30   Mit E-Mail vom 8. April 2025, 22:53 Uhr, übermittelte Herr Georgiou Herrn Schierscher und Herrn Grzesiak (mit mir in CC) seinen Rat und erklärte, dass die rechtliche Einschätzung von Andew Demetriou vom 5. April 2025 korrekt sei. Er stimmte mit Herrn Demetriou darin überein, dass die von Herrn Grzesiak vorgeschlagenen Beschlüsse im Falle ihrer Verabschiedung einen Verstoss gegen die zypriotische einstweilige Verfügung darstellen und dass die vorgeschlagenen Änderungen eine gerichtliche Abänderung der zypriotischen einstweilige Verfügung unter Benachrichtigung beider Seiten und unter klarer Darlegung der Gründe für diese Abänderung erfordern. Diese Korrespondenz ist ebenso in <u>Beilage 5</u> enthalten.

31   Am 9. April 2025 teilte Herr Schierscher während der an diesem Tag durchgeführten Gerichtsverhandlung mir und meinem Anwalt Herrn Niedermüller und Berichten zufolge auch den Anwälten von Herrn Solorz mündlich mit, dass er in der für den folgenden Tag anberaumten Sitzung der Stiftungsräte gegen den Vorschlag von Herrn Grzesiak zur Ernennung weiterer Direktoren in zypriotischen Tochtergesellschaften stimmen werde.

32   Was die Tagesordnung für diese Sitzungen der Stiftungsräte der TiVi Foundation und der Solkomtel Foundation betrifft, so wurden keine zusätzlichen Punkte geplant oder von einem Mitglied der Stiftungsräte vorgeschlagen.

### V.    Stiftungsratssitzungen 10. April 2025

33   Nach Prüfung des Rechtsgutachtens von Herrn Georgiou in der Sitzung des Stiftungsrates der TiVi Foundation am 10. April 2025 haben die Mitglieder des Stiftungsrates einstimmig beschlossen, den Antrag von Herrn Grzesiak abzulehnen und keine weiteren Direktoren für die Reddev zu bestellen.

34  Herr Grzesiak warf jedoch im Verlauf der Stiftungsratssitzung ein neues Thema auf und schlug vor, dass die TiVi Foundation beim Gericht in Zypern eine Änderung der zypriotischen einstweiligen Verfügung beantragen solle, die dann die zusätzliche Bestellung von Direktoren für die Reddev ermöglichen würde. Herr Schierscher und Herr Grzesiak stimmten für eine Anweisung an die zypriotischen Anwälte der TiVi Foundation, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren im Unternehmen zu ermöglichen. Ich habe nachdrücklich protestiert und gegen diese Entschliessung und Anweisung gestimmt.

35  Nach Prüfung des Rechtsgutachtens von Herrn Georgiou in der Sitzung des Stiftungsrats der Solkomtel Foundation am 10. April 2025 beschlossen die Mitglieder des Stiftungsrats einstimmig, den Antrag von Herrn Grzesiak abzulehnen und keine zusätzlichen Direktoren von Stasalco, Karswell und WBN zu ernennen und die Satzung von WBN nicht zu ändern.

36  Herr Grzesiak warf jedoch im Verlauf der Stiftungsratssitzung ein neues Thema auf und schlug vor, dass die Solkomtel Foundation beim Gericht in Zypern eine Änderung der zypriotischen einstweiligen Verfügung beantragen solle, die dann die Ernennung weiterer Direktoren der Stasalco, Karswell und WBN ermöglichen würde, ohne die Satzung der WBN zu ändern. Herr Schierscher und Herr Grzesiak stimmten für eine Anweisung an die zypriotischen Anwälte der TiVi Foundation, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren in den genannten Unternehmen sowie die Änderung der Satzung der WBN zu ermöglichen. Ich habe gegen diesen Beschluss und diese Anweisung entschieden protestiert und dagegen gestimmt.

37  Die Tagesordnungen der Sitzungen der TiVi Foundation und der Solkomtel Foundation enthielten nicht den Punkt, den zypriotischen Rechtsanwalt zu beauftragen, einen Antrag auf Änderung der zypriotischen einstweiligen Verfügung zu stellen. Dies wurde erst in der Sitzung des Stiftungsrats angesprochen, nachdem der Antrag von Herrn Grzesiak einstimmig abgelehnt worden war. Daher hatte ich nicht die Möglichkeit, diesen Vorschlag sorgfältig zu prüfen.

38  Im Rahmen der Stiftungsratssitzung fand keine Diskussion und Bewertung der zur Bestellung vorgeschlagenen Personen statt. Es gab auch keine Diskussion über die möglichen negativen Auswirkungen und Folgen einer solchen Bewerbung für die TiVi Foundation und die Solkomtel Foundation und auch nicht, ob und inwieweit die Stiftungen auf eine spätere Zustimmung der Antragsteller und Zweitbegünstigten angewiesen wären.

39  Ausser der Entscheidung der beiden anderen Mitglieder der Stiftungsräte, die zypriotischen Anwälte zu beauftragen, wurden keine weiteren Einzelheiten besprochen, insbesondere wurde kein Zeitrahmen festgelegt. Insbesondere bin ich davon ausgegangen (wie auch bei anderen früheren Angelegenheiten/Themen), dass ich über alle Anweisungen an den zyprischen Anwalt der Stiftung und über den gesamten Prozess vor Einreichung eines Antrags informiert und in Kopie gesetzt werde. Ich füge die Protokolle der Sitzungen vom 10. April 2025 als <u>Beilagen 6a und 67b</u> bei.

**VI.  Massnahmen nach der Sitzung des Stiftungsrats am 10. April 2025**

40  Nach dem Ende der Stiftungsratssitzungen erhielt ich keine weitere Korrespondenz von Herrn Schierscher und Herrn Grzesiak über den Stand und die Fortschritte des Antrags auf Änderung der

zypriotischen einstweiligen Verfügung. Insbesondere wurde ich, im Gegensatz zu den Tagen vor der Sitzung des Stiftungsrats vom 10. April 2025, nicht in den Schriftverkehr mit dem zypriotischen Anwalt der Stiftung einbezogen

41    Am 14. April 2025 hatte ich ein kurzes Gespräch mit Herrn Schierscher zu einem anderen Thema, und auch bei dieser Gelegenheit erwähnte er nicht, dass ein Antragsentwurf vorbereitet worden war und am nächsten Tag eingereicht werden würde. Er erwähnte, dass er am nächsten Tag in Zypern sein würde, aber da ich in Polen war, habe ich keine weiteren Fragen gestellt.

42    Ich bin also zu diesem Zeitpunkt davon ausgegangen, dass es keine Fortschritte bei der Vorbereitung des Antrags gegeben hat.

43    Am 14. und 15. April 2025 leitete Herr Schierscher mehrere EMails an Herrn Grzesiak und mich weiter, in denen er uns über den Stand der anhängigen liechtensteinischen Gerichtsverfahren informierte, an denen die TiVi Foundation und die Solkomtel Foundation derzeit beteiligt sind. Auch bei dieser Gelegenheit wurde nicht erwähnt, dass die zypriotischen Anwälte beauftragt wurden und dass die Anträge bereits vorbereitet und am 16. April 2025 eingereicht worden waren.

44    Erst am 17. April 2025 (also einen Tag vor der Osterpause), als mir die Anträge der TiVi Foundation und der Solkomtel Foundation als einer der Antragsgegner im Verfahren zugestellt wurden, erfuhr ich, dass die 245 bzw. 104 Seiten umfassenden Anträge bereits am 16. April 2025 eingereicht worden waren, ohne dass ich darüber informiert oder in den gesamten Abfassungsund Einreichungsprozess einbezogen worden war.

45    Ausserdem erfuhr ich erst am 17. April 2025, dass Herr Schierscher und Herr Grzesiak in ihrer Eigenschaft als Mitglieder der Stiftungsräte der TiVi Foundation und der Solkomtel Foundation am oder um den 14. und 15. April 2025 nach Zypern gereist waren, um die Einreichung der Anträge vorzubereiten und auch die eidesstattlichen Erklärungen vorzulegen und zu beglaubigen, die den Anträgen auf Änderung der zypriotischen einstweilige Verfügungen beigefügt waren (siehe auch Randnummer 41).

46    Ich war völlig überrascht, als ich erfuhr, dass Herr Schierscher und Herr Grzesiak die gesamten Anträge der TiVi Foundation und Solkomtel Foundation auf Änderung der einstweiligen Verfügung, die über 245 bzw. 104 Seiten umfassen und mehrere eidesstattliche Erklärungen enthalten, innerhalb von nur drei Arbeitstagen nach der Sitzung des Stiftungsrats vom 10. April 2025 vorbereitet und eingereicht hatten, ohne dass ich über die Anweisungen, den Status und den Fortschritt dieses Antrags informiert wurde.

47    Nachdem ich von diesen Ereignissen erfahren hatte, schickte mein Anwalt, Herr Niedermüller, am 17. April 2025 eine E-Mail an Herrn Schierscher (mit Herrn Grzesiak in CC), um zu betonen, dass ein solches Verhalten nicht den Anforderungen an ein ordnungsgemässes Verhalten eines Stiftungsrates entspreche und dass ich nach der Sitzung des Stiftungsrates vom 10. April 2025 unrechtmässig von dem gesamten Prozess ausgeschlossen worden sei. Darüber hinaus forderte er förmlich die Übermittlung der gesamten Kommunikation und Dokumentation im Zusammenhang mit den Schritten, die zu den Anträgen auf Änderung der zypriotischen einstweiligen Verfügungen führten.

48   Noch am selben Tag, also am 17. April 2025, folgte eine weitere E-Mail, in der ich klarstellte, dass in der Sitzung des Stiftungsrats vom 10. April 2025 nicht besprochen worden war, wie die nächsten Schritte und der Zeitplan aussehen sollten, und dass ich erwartet hatte, in die gesamte weitere Kommunikation und die nächsten Schritte vor einer Einreichung einbezogen zu werden

49   Ich füge die E-Mails vom 17. April 2025 als Beilage 7 bei.

50   Bis heute habe ich weder von Herrn Schierscher noch von Herrn Grzesiak eine Antwort auf diese E-Mails erhalten.

**VII.      Richtigkeit und Sprache der Zeugenaussage**

51   Ich bestätige hiermit, dass die in dieser Zeugenaussage enthaltenen Angaben nach meinem besten Wissen und Gewissen wahrheitsgemäss, genau und vollständig sind.

52   Diese Zeugenaussage wurde ursprünglich in englischer Sprache mit Unterstützung meines Anwalts, Dr. Matthias Niedermüller, verfasst und basiert auf meiner persönlichen Schilderung der Ereignisse.

53   Sollte ich zu einem Verhör geladen werden, beabsichtige ich, meine Zeugenaussage auf Polnisch zu machen.

54   Ich behalte mir das Recht vor, diese Zeugenaussage zu ergänzen, falls zusätzliche Informationen verfügbar werden oder weitere Fragen behandelt werden müssen.

*Unterschriftsseite folgt*

_____

Ort, Datum

_____

Tomasz Szelag

Exhibit - 1

## Gorton Anton Ferdinand

| | |
|---|---|
| **From:** | Fabian Rischka |
| **Sent:** | Tuesday, April 22, 2025 2:29 PM |
| **To:** | Jakob Braun |
| **Subject:** | Re: TiVi/Solkomtel - appointment of the new directors |

**From:** Peter Schierscher <peter.schierscher@ritterschierscher.li>
**Sent:** Friday, April 4, 2025 3:05 PM
**To:** Matthias Niedermüller <mn@niedermueller.law>
**Cc:** 'Tomasz Szelag' <tomasz.szelag@arcesius.com.cy>: 'jpgrzesiak@gmail.com' <jpgrzesiak@gmail.com>
**Subject:** Re: TiVi/Solkomtel - appointment of the new directors

Dear Matthias

Yes, that is correct.

There has always been, and will continue to be, sufficient time provided to review the topics and ensure that they can be discussed thoroughly during the meeting in order to make well-informed decisions.

Kind regards,

Peter

**From:** Matthias Niedermüller <mn@niedermueller.law>
**Sent:** Thursday, April 3, 2025 10:23 PM
**To:** Peter Schierscher <peter.schierscher@ritterschierscher.li>
**Cc:** 'Tomasz Szelag' <tomasz.szelag@arcesius.com.cy>; 'jpgrzesiak@gmail.com' <jpgrzesiak@gmail.com>
**Subject:** Re: TiVi/Solkomtel - appointment of the new directors

Dear Peter

I refer to the below correspondence in which Mr. Grzesiak applied to put on vote several topics mentioned in the Mail.

I understand from our call that the topics mentioned below will be put on the agenda for the next meeting of the Foundation Council of TiVi and Solkomtel together with several other items in order to ensure that the topics may be discussed comprehensively at the meeting before any decision would be taken.

To my understanding the date and time of the next meeting of the Foundation Council is yet to be defined and the meeting would be scheduled in a manner that would allow sufficient time to review and consider all proposals on the agenda.

For your confirmation of the above understanding I thank you in advance.

Kind regards

Matthias

**Dr. Matthias Niedermüller, M.B.L-HSG, TEP**
**Managing Partner | Attorney at Law | Notary Public**

Werdenbergerweg 11 | 9490 Vaduz, Liechtenstein | T: +423 222 0750 | F: +423 222 0751

Mail: mn@niedermueller.law







Important notice:

This email may contain trade or business secrets, information protected by attorney–client privilege, or other confidential information and is protected by law. If you have received this email in error, you are expressly prohibited from reviewing, reproducing, or forwarding this email or any of its attachments. Please notify us at the address above and delete the received email and any attachments from your computer or network. Thank you.

Important notice:

This e-mail may contain trade secrets or privileged, undisclosed or otherwise confidential information and is legally privileged. If you have received this e-mail by mistake you are hereby notified that any review, copying or distribution of the e-mail and its attachments is strictly prohibited. Please inform us at the above mentioned address and delete the e-mail and any attachments from your system. Thank you for your co-operation.

Beginning of the forwarded message:

**From:** Jarosław Grzesiak <jpgrzesiak@gmail.com>

**Date:** April 2, 2025 at 11:50:44 CEST

**To:** Peter Schierscher <peter.schierscher@ritterschierscher.li>, Tomasz Szelag <tomasz.szelag@arcesius.com.cy>

**Subject: PD: TiVi/Solkomtel - appointment of the new directors**

Dear Peter,

In reference to our discussion about the asset protection in Cyprus, I kindly request that we consider and put on vote the appointment of the additional directors in Cyprus based companies which are fully owned by either TiVi or Solkomtel.

**1. Agenda:**

I propose to add to the agenda of the next foundation board meeting of TiVi Foundation:

-    decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of Reddev Investments Limited , a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 330471 (the "Reddev"), two additional directors of Reddev: (i) George Sphiktos and (ii) Maria Kannava.

I propose to add to the agenda of the next foundation board meeting of Solkomtel Foundation:

- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of Stasalco Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 372875 (the "Stasalco"), two additional directors of the Company: (i) George Sphiktos and (ii) Maria Kannava;

- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of Karswell Limited , a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 229808 (the "Karswell"), two additional directors of the Company(i) George Sphiktos and (ii) Maria Kannava;

- decision on amending the Articles of Association of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 ("WBN") regarding the Regulation 83 and the Regulation 99;

- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of WBN two additional directors of the Company: (i) George Sphiktos and (ii) Maria Kannava.

**2.  Directors:**

Upon consultations with the Secondary Beneficiaries, I provide for nominations: (i) George Sphiktos and (ii) Maria Kannava. Please see attached their respective CVs. Both candidates are experienced individuals and I trust they can bring professionalism and sound judgement to the board of directors.

**3.  Compliance with the freezing orders issued in Cyprus:**

Given the existence of the freezing injunctions imposed by the Cyprus court, the Secondary Beneficiaries as the applicants, have agreed to grant consents for the contemplated changes and to waive the right to treat such corporate changes as in breach of the injunction orders. The waivers will be provided to our attention ahead of the board meeting.

**4.  Instructions:**

- First step: taking the resolutions by the foundation boards - please see attached draft resolutions for your consideration. In all companies except for WBN there are empty vacancies in the Cyprus boards that the foundation can fill in at its discretion. In case of WBN we need to amend the AoAs to create new vacancies. With respect to the WBN first the amendment of the Articles of Association needs to be officially registered at the Companies Register. Only once the AoAs are amended Solkomtel Foundation may proceed with the appointment of the new directors.

- Second step: taking the resolutions of each respective Cyprus company. As the foundations hold 100 shares in Cyprus companies (they are sole members/sole shareholders), there is no need to call formal shareholders meeting. We can sign the resolutions during our foundation meeting (except for WBN in case of which we can only sign the resolution on changing the AoAs. Once this change is registered we will be in position to sign the resolution on appointing the new directors).

- Third step: the resolutions on the appointment of new directors, together with the acceptance letters, shall be delivered to the Secretary of each of the Cypriot companies at the registered office of the company by hand, via courier and/or by email, if available.

**5.  Documents:**

Please consider the following documents. I have marked the ones which will be provided at a later stage (before our next board meeting).

   1.

        a. Reddev:

                    i.  "1. Reddev - draft resolution of the foundation
             board"

                    ii. "2. Reddev - acceptance letter - G Sphiktos" - to
             be provided

                    iii. "3. Reddev - acceptance letter - M Kannava" – to
             be provided

                    iv. "4. Reddev - draft resolution of the foundation as
             shareholder"

   1.

        b.   Stasalco:

                    i.  "5. Stasalco - draft resolution of the foundation
             board"

                    ii. "6. Stasalco - acceptance letter - G Sphiktos "- to be
             provided

                    iii. "7. Stasalco - acceptance letter - M Kannava "- to be
             provided

              iv. "8. Stasalco - draft resolution of the foundation as shareholder"

1.

   c. <u>Karswell:</u>

        i. "9. Karswell - draft resolution of the foundation board"

        ii. "10. Karswell - acceptance letter - G Sphiktos "<u>-to be provided</u>

        iii. "11. Karswell - acceptance letter - M Kannava "<u>-to be provided</u>

        iv. "12. Karswell - draft resolution of the foundation as shareholder"

1.

   d. <u>WBN</u>

        i. "13. WBN - draft resolution of the foundation board - amendment of AoA"

        ii. "14. WBN - draft resolution of the foundation board as shareholder - amendment of AoA"

        iii. "15. WBN - draft resolution of the foundation board"

        iv. "16. WBN - acceptance letter - G Sphiktos " <u>– to be provided</u>

        v. "17. WBN - acceptance letter - M Kannava " <u>- to be provided</u>

        vi. "18. WBN - draft resolution of the foundation as shareholder"

1.

   e. <u>Directors:</u>

        i. "19. CV-G Sphiktos"
        ii. "20. CV - M Kannava"

1.

   f. <u>Waiver letters:</u>

        i. "21. Waiver letter to TiVi Foundation" <u>– to be provided</u>

        ii. "22. Waiver letter to Solkomtel Foundation<u>" – to be provided</u>

Please do let me know if you have any questions.

Best regards,
Jarek

---------

Dear Peter,

4

Referring to our discussion on protecting the assets in Cyprus, please consider and put to the vote the appointment of additional directors of the Cyprus-based companies that are wholly owned by TiVi or Solkomtel.

1.    Agenda:

I propose the following additions to the agenda of the next meeting of the board of the TiVi Foundation:

-    **Decision on the appointment by the Foundation as sole member (sole shareholder)** of Reddev Investments Limited, a Cypriot limited liability company registered under the number HE 330471 ("Reddev"), two additional directors of the company: (i) George Sphiktos and (ii) Maria Kannava.

I propose the following additions to the agenda of the next meeting of the board of Solkomtel Foundation:

-    **Decision on the appointment by the Foundation as sole member (sole shareholder)** of Stasalco Limited, a Cypriot limited liability company registered under the number HE 372875 ("Stasalco"), two additional directors of the company: (i) George Sphiktos and (ii) Maria Kannava;

-    **Decision on the appointment by the Foundation as sole member (sole shareholder)** of Karswell Limited, a Cypriot limited liability company registered under the number HE 229808 ("Karswell"), two additional directors of the company: (i) George Sphiktos and (ii) Maria Kannava;

-    **Decision on amending the Articles of Association of WBN Holdings Limited**, a Cypriot limited liability company registered under the number HE 336956 ("WBN") regarding Regulation 83 and Regulation 99;

-    **Decision on the appointment by the Foundation as sole member (sole shareholder)** of WBN, two additional directors of the company: (i) George Sphiktos and (ii) Maria Kannava.

2.    Directors:

Following consultations with the Secondary Beneficiaries, I nominate: (i) George Sphiktos and (ii) Maria Kannava. I enclose their CV's. Both candidates are experienced and I am confident that they will contribute professionalism and sound judgment to the board.

3.    Compliance with the injunctions issued in Cyprus:

Given the injunctions imposed by the Cyprus court, the Secondary Beneficiaries, as the applicants, have agreed to grant their consent to the contemplated changes and to waive the right to treat such corporate changes as in breach of the injunctions. The waivers will be provided to our attention ahead of the board meeting.

4.    Instructions:

-    **First step**: The adoption of resolutions by the boards of the Foundations – please examine the enclosed draft resolutions. All companies except WBN have vacancies in the Cypriot boards which the Foundation may fill at its discretion. In the case of WBN, in order to create new vacancies we must amend the AoA. Regarding WBN, first we must officially register the amendment of the AoA in the Register of Companies. Only when the AoA has been amended can the Solkomtel Foundation proceed to nominate the directors.

-    **Second step**: The adoption of resolutions by each Cypriot company. Because the Foundations hold 100 shares in the Cypriot companies (they are sole members/ sole shareholders), there is no need to convene a formal Shareholders' Meeting. We can sign the resolutions at the next board meeting (except in the case of WBN, where we can only sign the resolutions on an amendment to the AoA. When this amendment has been registered, we will be able to sign the resolution on the appointment of new directors).

-    **Third step**: The resolutions on the appointment of the new directors, together with the acceptance letters, should be delivered to the secretaries of each of the Cypriot companies personally at their registered office, by courier and/or by email, if available.

5.    Documents:

Please consider the following documents. I have marked ones that will be provided at a later date (before the next board meeting).

Reddev:

Foundation"

i.    "1. Reddev – draft resolution by the board of the

ii.    "2. Reddev – acceptance letter - G Sphiktos" - to be provided

iii.    "3. Reddev – acceptance letter - M Kannava" – to be provided

iv.    "4. Reddev – draft resolution of the Foundation as shareholder" Stasalco:

i.    "5. Stasalco – Draft resolution by the board of the Foundation"

ii.    "6. Stasalco - acceptance letter - G Sphiktos to be provided

iii.    "7. Stasalco - acceptance letter - M Kannava to be provided

iv.    "8. Stasalco – draft resolution by the Foundation as shareholder " Karswell:

i.    "9. Karswell – draft resolution by the board of the Foundation"

ii.    "10. Karswell – acceptance letter - G Sphiktos" – to be provided

iii.    "11. Karswell – acceptance letter - M Kannava to be provided

iv.    "12. Karswell – draft resolution by the Foundation as shareholder" WBN

i.    "13. WBN – draft resolution by the board of the Foundation – amendment to AoA"

ii.    "14. WBN – draft resolution by the board of the Foundation as shareholder – amendment to AoA"

iii.    "15. WBN – draft resolution by the board of the Foundation"

iv.    "16. WBN – acceptance letter - G Sphiktos " – to be provided

v. "17. WBN – acceptance letter - M Kannava " – to be delivered

vi.    "18. WBN – Draft resolution by the Foundation as shareholder" Directors:

i.    "19. CV - G Sphiktos"

ii.    "20. CV-M Kannava"

Waiver letters:

i.    "21. Waiver letter to TiVi Foundation" – to be provided.

ii.    "22. Waiver letter to the Solkomel Foundation" – to be provided

Should you have any questions, please get in touch.

Best regards,

Jarek

6

[h/w:] Working session

*[Translator's note: There now follows the German version of the previous English email thread]*

**From:** Peter <peter.schierscher@ritterschierscher.li>
**Sent:** Friday, April 4, 2025 3:05 PM
**To:** Matthias <mn@niedermueller.law>
**Cc:** "Tomasz Szelag"<tomasz.szelag@arcesius.com.cy >; "<jpgrzesiak@gmail.com>"
**Subject:** AW: TiVi/Solkomtel - Ernennung der neuen Geschäftsführer

Lieber Matthias

Ja, das ist richtig.

Es wurde und wird auch weiterhin ausreichend Zeit zur Verfügung gestellt, um die Themen zu prüfen und sicherzustellen, dass sie während der Sitzung gründlich diskutiert werden können, um fundierte Entscheidungen zu treffen.

Mit

freundlichen

Grüßen, Peter

**Von:** Matthias <mn@niedermueller.law>
**Gesendet:** Donnerstag, 3. April 2025 22:23
**An:** Peter <peter.schierscher@ritterschierscher.li>
**Cc:** "Tomasz Szelag"<tomasz.szelag@arcesius.com.cy >; "<jpgrzesiak@gmail.com>"
**Betreff:** AW: TiVi/Solkomtel - Ernennung der neuen Geschäftsführer

Lieber Peter

Ich beziehe mich auf den nachstehenden Schriftwechsel, in dem Herr Grzesiak beantragt hat, mehrere in der Mail genannte Themen zur Abstimmung zu stellen.

Unserem Telefonat entnehme ich, dass die nachstehend genannten Themen zusammen mit mehreren anderen Punkten auf die Tagesordnung der nächsten Sitzung des Stiftungsrats von TiVi und Solkomtel gesetzt werden, um sicherzustellen, dass die Themen auf der Sitzung umfassend erörtert werden können, bevor eine Entscheidung getroffen wird.

Soweit ich weiß, müssen Datum und Uhrzeit der nächsten Sitzung des Stiftungsrates noch festgelegt werden, und die Sitzung soll so angesetzt werden, dass genügend Zeit für die Prüfung und Berücksichtigung aller Vorschläge auf der Tagesordnung bleibt.

Für Ihre Bestätigung des obigen Verständnisses danke ich Ihnen im Voraus. Mit

freundlichen Grüßen

Matthias

1

388

**Dr. Matthias Niedermüller, M.B.L-HSG, TEP**
**Geschäftsführender Gesellschafter| Rechtsanwalt|**
**Notar**
Werdenbergerweg 11| 9490 Vaduz, Liechtenstein| T:+423 222 0750 | F:+423 222 0751 Mail:
mn@niedermueller.law

    

Wichtiger Hinweis:
Diese E-Mail kann Betriebs- oder Geschäftsgeheimnisse, dem Anwaltsgeheimnis unterliegende oder sonstige vertrauliche Informationen enthalten und ist von Gesetzes wegen geschützt. Falls Sie diese E-Mail irrtümlich erhalten haben, ist Ihnen eine Kenntnisnahme des Inhalts, eine Vervielfältigung oder Weitergabe dieser E-Mails sowie eventueller Anhänge ausdrücklich untersagt. Bitte benachrigtigen Sie uns unter obgenannter Adresse und löschen Sie die empfangene E-Mail sowie allfällige Anhänge auf Ihrem Computer oder Netzwerk. Vielen Dank.
Wichtiger Hinweis:
Diese E-Mail kann Geschäftsgeheimnisse oder privilegierte, nicht offengelegte oder anderweitig vertrauliche Informationen enthalten und ist rechtlich privilegiert. Sollten Sie diese E-Mail irrtümlich erhalten haben, werden Sie hiermit darauf hingewiesen, dass jegliche Einsichtnahme, Vervielfältigung oder Verbreitung der E-Mail und ihrer Anhänge strengstens untersagt ist. Bitte informieren Sie uns unter der oben genannten Adresse und löschen Sie die E-Mail und ihre Anhänge aus Ihrem System. Wir danken Ihnen für Ihre Mitarbeit.

Początek przekazywanej wiadomości:

**Od:** Jarosław <jpgrzesiak(S)gmail.com>
**Daten:** 2 kwietnia 2025 o 11:50:44 CEST
**Do:** Peter Schierseher<peter.schierscher@ritterschierscher.li>, Tomasz <tomasz.szelag@arcesius.com.cy>
**Temat: PD: TiVi/Solkomtel - Ernennung der neuen Direktoren**

Lieber Peter,
In Bezug auf unsere Diskussion über den Vermögensschutz in Zypern bitte ich darum, dass wir die Ernennung zusätzlicher Direktoren in zypriotischen Unternehmen, die sich vollständig im Besitz von TiVi oder Solkomtel befinden, prüfen und zur Abstimmung stellen.

**1.  Tagesordnung:**
Ich schlage vor, die Tagesordnung der nächsten Stiftungsratssitzung der TiVi Foundation zu ergänzen:
- Beschluss über die Ernennung von zwei zusätzlichen Direktoren von Reddev durch die Stiftung als einziges Mitglied (einziger Anteilseigner) von Reddev Investments Limited , einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter der Nummer HE 330471 (Reddev") eingetragen ist: (i) George Sphiktos und (ii) Maria Kannava.

Ich schlage vor, die Tagesordnung der nächsten Stiftungsratssitzung der Solkomtel-Stiftung zu ergänzen:
- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Stasalco Limited, einer Gesellschaft mit beschränkter Haftung, die im Republik Zypern unter der Nummer HE 372875 (die "Stasalco") eingetragen ist, durch die Stiftung als einziges Mitglied (einziger Anteilseigner): (i) George Sphiktos und (ii) Maria Kannava;
- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Gesellschaft (i) George Sphiktos und (ii) Maria Kannava durch die Stiftung als einziges Mitglied (einziger Anteilseigner) der Karswell Limited, einer Gesellschaft mit beschränkter Haftung, die der Republik Zypern unter der Nummer HE 229808 (die "Karswell") eingetragen ist;
- Beschluss über die Änderung der Satzung der WBN Holdings Limited, einer im Handelsregister der Republik Zypern unter der Nummer HE 336956 eingetragenen Gesellschaft mit beschränkter Haftung ("WBN"), in Bezug auf die Verordnung 83 und die Verordnung 99;

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Gesellschaft durch die Stiftung als einziges Mitglied (einziger Anteilseigner) von WBN: (i) George Sphiktos und (ii) Maria Kannava.

**2.  Direktoren:**
Nach Rücksprache mit den Zweitbegünstigten schlage ich folgende Personen vor: (i) George Sphiktos und (ii) Maria Kannava. Bitte sehen Sie sich die beigefügten Lebensläufe der beiden an. Beide Kandidaten sind erfahrene Persönlichkeiten und ich bin zuversichtlich, dass sie Professionalität und gesundes Urteilsvermögen in den einbringen können.

**3.  Befolgung der in Zypern erlassenen Sicherstellungsentscheidungen:**
In Anbetracht der vom zypriotischen Gericht verhängten einstweiligen Verfügungen haben die Zweitbegünstigten als Antragsteller zugestimmt, ihre Zustimmung zu den geplanten Änderungen zu erteilen und auf das Recht zu verzichten, diese Unternehmensänderungen als Verstoß gegen die einstweiligen zu behandeln. Die Verzichtserklärungen werden uns vor der Verwaltungsratssitzung zur Kenntnis gebracht.

**4.  Anweisungen:**
- <u>Erster Schritt:</u> Beschlussfassung in den Stiftungsräten - siehe beigefügte Beschlussvorlagen zu Ihrer Kenntnisnahme. In allen Unternehmen mit Ausnahme von WBN gibt es in den zypriotischen Vorständen leere Stellen, die die Stiftung nach eigenem Ermessen besetzen kann. Im Falle der WBN müssen wir die Satzung ändern, um neue Stellen zu schaffen. Im Falle des WBN muss die Satzungsänderung zunächst offiziell im Handelsregister eingetragen werden. Erst wenn die Satzung geändert ist, kann die Solkomtel-Stiftung mit der Ernennung der neuen Direktoren fortfahren.
- <u>Zweiter Schritt:</u> Fassung der Beschlüsse der jeweiligen zyprischen Gesellschaft. Da die Stiftungen 100 Anteile an den zyprischen Unternehmen halten (sie sind alleinige Mitglieder/Alleinaktionäre), ist die Einberufung einer formellen Aktionärsversammlung nicht erforderlich. Wir können die Beschlüsse auf unserer Stiftungsversammlung unterzeichnen (mit Ausnahme WBN, bei dem wir nur den Beschluss über die Änderung der Satzung unterzeichnen können). Sobald diese Änderung eingetragen ist, können wir den Beschluss über die Ernennung der neuen Direktoren unterzeichnen).
- <u>Dritter Schritt:</u> Die Beschlüsse über die Ernennung neuer Direktoren werden zusammen mit den Annahmeschreiben dem Sekretär jeder zyprischen Gesellschaft am eingetragenen Sitz der Gesellschaft persönlich, per Kurierdienst und/oder per E-Mail, sofern verfügbar, zugestellt.

**5.  Dokumente:**
Bitte beachten Sie die folgenden Dokumente. Ich habe die Dokumente markiert, die zu einem späteren Zeitpunkt (vor unserer nächsten Verwaltungsratssitzung) vorgelegt werden.

1.
　　a. <u>Reddev:</u>

　　　　Brett"

　　　　<u>an</u> Anteilseigner

　　　　<u>an zur Verfügung</u>

　　　　als gestellt

　　　　<u>werden</u>"

|   |   |
|---|---|
| i. | "1. Reddev - Resolutionsentwurf der Stiftung |
| ii. | "2. reddev - Annahmeschreiben - G Sphiktos" <u>-</u> |
| iii. | "3. Reddev - Annahmeschreiben - M Kannava<u>"-</u> |
| iv. | "4. Reddev - Resolutionsentwurf der Stiftung |

1.
　　b. <u>Stasalco:</u>

　　　　Stiftung Brett"

|   |   |
|---|---|
| i. | "5) Stasalco - Entwurf eines Beschlusses der |

<div style="margin-left:2em">

    an Anteilseigner

    an zur Verfügung

    Stiftung als gestellt

    werden"

</div>

ii.  "6. stasalco - Annahmeschreiben - G Sphiktos" -

iii.  "7. Stasalco - Annahmeschreiben - M Kannava

iv.  "8. stasalco - Entwurf eines Beschlusses der

1.

    c.  Karswell:

       Stiftung Brett"

       Sphiktos als Aktionär zur

       Kannava Verfügung zu

       Stiftung stellen"

i.  "9. karswell - Entwurf einer Entschließung der

ii.  "10. Karswell - Annahmeschreiben - G

iii.  "11. Karswell - Annahmeschreiben - M

iv.  "12. Karswell - Resolutionsentwurf der

1.

    d.  WBN

       Stiftungsrates - Änderung der Satzung"

       Gesellschaftsvertrages"

       Brett"

       " - an Anteilseigner

       " - an zur Verfügung

       als gestellt

       werden"

i.  "13. WBN - Beschlussvorschlag des

ii.  "14. WBN - Beschlussvorschlag des Stiftungsrates als Gesellschafter - Änderung des

iii.  "15. WBN - Resolutionsentwurf der Stiftung

iv.  "16. WBN - Annahmeschreiben - G Sphiktos

v.  "17. WBN - Annahmeschreiben - M Kannava

vi.  "18. WBN - Resolutionsentwurf der Stiftung

1.

    e.  Direktoren:

i.  "19. CV-G Sphiktos"
ii.  "20. Lebenslauf - M Kannava"

1.

    f.  Verzichtserklärungen:

       Foundation" - zu erstellen bereitgestell

       Stiftung" - an t werden

i.  "21. Verzichtserklärung an die TiVi

ii.  "22. Verzichtserklärung an die Solkomtel-

Bitte lassen Sie mich wissen, wenn Sie irgendwelche Fragen haben.

Mit freundlichen
Grüßen, Jarek

------------------

Dear Peter,

Referring to our discussion on protecting the assets in Cyprus, please consider and put to the vote the appointment of additional directors of the Cyprus-based companies that are wholly owned by TiVi or Solkomtel.

1.  Agenda:

I propose the following additions to the agenda of the next meeting of the board of the TiVi Foundation:

-   Decision on the appointment by the Foundation as sole member (sole shareholder) of Reddev Investments Limited, a Cypriot limited liability company registered under the number HE 330471 ("Reddev"), two additional directors of the company: (i) George Sphiktos and (ii) Maria Kannava.

I propose the following additions to the agenda of the next meeting of the board of Solkomtel Foundation:

-   Decision on the appointment by the Foundation as sole member (sole shareholder) of Stasalco Limited, a Cypriot limited liability company registered under the number HE 372875 ("Stasalco"), two additional directors of the company: (i) George Sphiktos and (ii) Maria Kannava;

-   Decision on the appointment by the Foundation as sole member (sole shareholder) of Karswell Limited, a Cypriot limited liability company registered under the number HE 229808 ("Karswell"), two additional directors of the company: (i) George Sphiktos and (ii) Maria Kannava;

-   Decision on amending the Articles of Association of WBN Holdings Limited, a Cypriot limited liability company registered under the number HE 336956 ("WBN") regarding Regulation 83 and Regulation 99;

-   Decision on the appointment by the Foundation as sole member (sole shareholder) of WBN, two additional directors of the company: (i) George Sphiktos and (ii) Maria Kannava.

2.  Directors:

Following consultations with the Secondary Beneficiaries, I nominate: (i) George Sphiktos and (ii) Maria Kannava. I enclose their CV's. Both candidates are experienced and I am confident that they will contribute professionalism and sound judgment to the board.

3.  Compliance with the injunctions issued in Cyprus:

Given the injunctions imposed by the Cyprus court, the Secondary Beneficiaries, as the applicants, have agreed to grant their consent to the contemplated changes and to waive the right to treat such corporate changes as in breach of the injunctions. The waivers will be provided to our attention ahead of the board meeting.

4.  Instructions:

-   First step: The adoption of resolutions by the boards of the Foundations – please examine the enclosed draft resolutions. All companies except WBN have vacancies in the Cypriot boards which the Foundation may fill at its discretion. In the case of WBN, in order to create new vacancies we must amend the AoA. Regarding WBN, first we must officially register the amendment of the AoA in the Register of Companies. Only when the AoA has been amended can the Solkomtel Foundation proceed to nominate the directors.

-   Second step: The adoption of resolutions by each Cypriot company. Because the Foundations hold 100 shares in the Cypriot companies (they are sole members/ sole shareholders), there is no need to convene a formal Shareholders' Meeting. We can sign the resolutions at the next board meeting (except in the case of WBN, where we can only sign the resolutions on an amendment to the AoA. When this amendment has been registered, we will be able to sign the resolution on the appointment of new directors).

-   Third step: The resolutions on the appointment of the new directors, together with the acceptance letters, should be delivered to the secretaries of each of the Cypriot companies personally at their registered office, by courier and/or by email, if available.

5.  Documents:

5

Please consider the following documents. I have marked the ones that will be provided at a later date (before the next board meeting).

Reddev:

i.   "1. Reddev – draft resolution by the board of the Foundation"

ii.  "2. Reddev – acceptance letter - G Sphiktos" - to be provided

iii. "3. Reddev – acceptance letter - M Kannava" – to be provided

iv.  "4. Reddev – draft resolution of the Foundation as shareholder" Stasalco:

i.   "5. Stasalco – Draft resolution by the board of the Foundation"

ii.  "6. Stasalco - acceptance letter - G Sphiktos to be provided

iii. "7. Stasalco - acceptance letter - M Kannava to be provided

iv.  "8. Stasalco – draft resolution by the Foundation as shareholder " Karswell:

i.   "9. Karswell – draft resolution by the board of the Foundation"

ii.  "10. Karswell – acceptance letter - G Sphiktos" – to be provided

iii. "11. Karswell – acceptance letter - M Kannava to be provided

iv.  "12. Karswell – draft resolution by the Foundation as shareholder" WBN

i.   "13. WBN – draft resolution by the board of the Foundation – amendment to AoA"

ii.  "14. WBN – draft resolution by the board of the Foundation as shareholder – amendment to AoA"

iii. "15. WBN – draft resolution by the board of the Foundation"

iv.  "16. WBN – acceptance letter - G Sphiktos " – to be provided

v.   "17. WBN – acceptance letter - M Kannava " – to be delivered

vi.  "18. WBN – Draft resolution by the Foundation as shareholder" Directors:

i.   "19. CV - G Sphiktos"

ii.  "20. CV-M Kannava"

Waiver letters:

i.   "21. Waiver letter to TiVi Foundation" – to be provided.

ii.  "22. Waiver letter to the Solkomel Foundation" – to be provided Should you have any questions, please get in touch.

Best regards,

Jarek

Exhibit 2a

*[Translator's note: The following two invitations are bilingual]*

An den Stiftungsrat der
**TiVi Foundation**

To the Foundation Board of
**TiVi Foundation**

Vaduz, 04 April 2025

# Einladung / Invitation

zur Stiftungsratssitzung auf den 10 April 2025, um 10:00 Uhr in den Räumlichkeiten von Ritter Schierscher Rechtsanwälte AG, Gewerbeweg 5, FL-9490 Vaduz,

to attend to the Foundation Board meeting on 10 April 2025 at 10:00 a.m. in the law office of Ritter Schierscher Attorneys-at-law, Gewerbeweg 5, FL-9490 Vaduz,

an die Mitglieder des Stiftungsrates /
to the members of the Foundation Board:

Peter Schierscher
Tomasz Szelag
Jaroslaw Grzesiak

**Traktanden / Agenda:**

1. Begrüssung/
   Welcome;

2. Bestellung des Vorsitzenden und des Sekretärs /
   Appointment of the Chairman and the Secretary

3. Genehmigung des Protokolls der Stiftungsratssitzung vom 04.12.2024 /
   Approval of the minutes dated 4 December 2024;

4. Diskussion und Beschlussfassung über die Ernennung durch die Stiftung als Alleingesellschafter von Reddev Investments Limited, einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter der Nummer HE 330471 eingetragen ist (die "Reddev"), von zwei zusätzlichen Direktoren für Reddev:

   (i)  George Sphiktos und
   (ii) Maria Kannava.

   Lebensläufe und Annahmeerklärungen der beiden Kandidaten sowie der Entwurf eines Stiftungsratsbeschlusses sind beigefügt. /

   Discussion and resolution on the appointment by the Foundation as the Sole Member of Reddev Investments Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 330471 (the "Reddev"), of two additional directors of Reddev:

   (i)  George Sphiktos and
   (ii) Maria Kannava.;

   CVs and acceptance letters from both candidates and a draft of a foundation board resolution are attached.

5.    Diskussion und Beschlussfassung über die geplante Infrastruktur Abspaltungstransaktion der Netia S.A.
       Discussion and resolution on about the planned Netia S.A. infastructure spin off transaction

6.    Zustelladresse für Peter Schierscher in Polen /
       Delivery address for Peter Schierscher in Poland

       Peter Schierscher schlägt als Zustelladresse Baker McKenzie Krzyżowski i Wspólnicy sp. k. vor.
       Peter Schierscher suggests as delivery address Baker McKenzie Krzyżowski i Wspólnicy sp. k.

7.    Diskussion und Beschlussfassung über die Rechnungen AF Trustees /
       Discussing and passing resolutions on the invoices from AF Trustees

8.    Verschiedenes /
       Varia

                                             Im Auftrage des Stiftungsrates /
                                             On behalf of the Foundation Board


                                             Petra Rohrer

2b

An den Stiftungsrat der
**Solkomtel Foundation**

To the Foundation Board of
**Solkomtel Foundation**

Vaduz, 04 April 2025

# Einladung / Invitation

zur Stiftungsratssitzung auf den 10 April 2025, um 11:00 Uhr in den Räumlichkeiten von Ritter Schierscher Rechtsanwälte AG, Gewerbeweg 5, FL-9490 Vaduz,

to attend to the Foundation Board meeting on 10 April 2025 at 11:00 a.m. in the law office of Ritter Schierscher Attorneys-at-law, Gewerbeweg 5, FL-9490 Vaduz,

an die Mitglieder des Stiftungsrates **/**
to the members of the Foundation Board:

Peter Schierscher
Tomasz Szelag
Jaroslaw Grzesiak

**Traktanden / Agenda:**

1. Begrüssung/
Welcome;

2. Bestellung des Vorsitzenden und des Sekretärs /
Appointment of the Chairman and the Secretary

3. Genehmigung des Protokolls der Stiftungsratssitzung vom 04.12.2024 /
Approval of the minutes dated 4 December 2024;

4. Diskussion und Beschlussfassung über die Ernennung durch die Stiftung als Alleingesellschafter von Stasalco Limited, einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter der Nummer HE 372875 (die "Stasalco"), von zwei zusätzlichen Direktoren für Stasalco:

   (i)   George Sphiktos und
   (ii)  Maria Kannava.

   Lebensläufe und Annahmeerklärungen der beiden Kandidaten sowie der Entwurf eines Stiftungsratsbeschlusses sind beigefügt. /

   Discussion and resolution on the appointment by the Foundation as the Sole Member of of Stasalco Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 372875 (the "Stasalco"), of two additional directors of the Company:

   (i)   George Sphiktos and
   (ii)  Maria Kannava.;

   CVs and acceptance letters from both candidates and a draft of a foundation board resolution are attached.

5.  Diskussion und Beschlussfassung über die Ernennung durch die Stiftung als Alleingesellschafter von Karswell Limited, einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter der Nummer HE 229808 (die "Karswell"), von zwei zusätzlichen Direktoren für Karswell:

(i)    George Sphiktos und
(ii)   Maria Kannava.

Lebensläufe und Annahmeerklärungen der beiden Kandidaten sowie der Entwurf eines Stiftungsratsbeschlusses sind beigefügt. /

Discussion and resolution on the appointment by the Foundation as the Sole Member of of Karswell Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 229808 (the "Karswell"), of two additional directors of the Company:

(i)    George Sphiktos and
(ii)   Maria Kannava.;

CVs and acceptance letters from both candidates and a draft of a foundation board resolution are attached.

6.  Diskussion und Beschlussfassung über die Anpassung der Statuten der WBN Holdings Limited durch die Stiftung als Alleingesellschafter von WBN Holdings Limited, einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter der Nummer HE 336956 (die "WBN").

Der Entwurf eines Stiftungsratsbeschlusses für die Anpassung der Statuten der WBN ist beigefügt. /

Discussion and resolution on amending the Articles of Association of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 ("WBN") regarding the Regulation 83 and the Regulation 99.

A draft of a foundation board resolution on amending the Articles of Association of WBN is attached.

7.  Diskussion und Beschlussfassung über die Ernennung durch die Stiftung als Alleingesellschafter von WBN Holdings Limited, einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter der Nummer HE 336956 (die "WBN"), von zwei zusätzlichen Direktoren für WBN:

(i)    George Sphiktos und
(ii)   Maria Kannava.

Lebensläufe und Annahmeerklärungen der beiden Kandidaten sowie der Entwurf eines Stiftungsratsbeschlusses sind beigefügt. /

Discussion and resolution on the appointment by the Foundation as the Sole Member of of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 (the "WBN"), of two additional directors of the Company:

(i)    George Sphiktos and
(ii)   Maria Kannava.;

CVs and acceptance letters from both candidates and a draft of a foundation board resolution are attached.

8.    Zustelladresse für Peter Schierscher in Polen /
      Delivery address for Peter Schierscher in Poland

      Peter Schierscher schlägt als Zustelladresse Baker McKenzie Krzyżowski i Wspólnicy sp. k. vor.
      Peter Schierscher suggests as delivery address Baker McKenzie Krzyżowski i Wspólnicy sp. k.

9.    Diskussion und Beschlussfassung über die Rechnungen AF Trustees /
      Discussing and passing resolutions on the invoices from AF Trustees

10.   Verschiedenes/
      Varia

                                              Im Auftrage des Stiftungsrates /
                                              On behalf of the Foundation Board

                                              Petra Rohrer

3

To:

Attorney-at-Law Dr. Peter Schierscher

as court-appointed Guardian of the

TiVi Foundation and Solkomtel Foundation

By e-mail: peter.schierscher@ritterschierscher.li

**Subject: TiVi Foundation/ Solkomtel Foundation – Attempts to newly appoint, replace, or further reappoint the operative management at subsidiaries and sub-subsidiaries of the foundations, initiated by Jarosław Grzesiak**

Dear Dr. Schierscher,

First of all, I would like to sincerely thank you for your visit to Poland and for taking the time to get to know me better. I was very pleased that you made time for me and were able to gain a personal impression of my enterprises. I hope you enjoyed your stay.

Unfortunately, the reason I must write to you now is not a pleasant one. In my capacity as Curator of both the TiVi Foundation and the Solkomtel Foundation, the recent developments brought to my attention have caused me great concern and dismay.

There is an urgent need for the Foundation Board to act immediately in order to protect the foundations from irreparable harm and to safeguard their interests.

As you know, my children recently attempted to appoint my former confidant and long-time advisor, Jarosław Grzesiak, as (supposed) "successor" to Katarzyna Tomczuk on the Foundation Board. Mr. Grzesiak—among numerous other serious transgressions—openly and quite unashamedly expressed his personal animosity toward me during the last oral hearing. It also became unmistakably clear that, in the present dispute, he sees himself as serving only the interests of the children, whose character traits he went out of his way to praise at the end of his examination—without even being asked to do so.

Since, according to the minutes, you were personally present at that hearing, you were able to form your own impression of this (including the aggressive tone of his testimony).

The invalidity of this "replacement" and Mr. Grzesiak's improper personal attacks against me are not the subject of this letter. Rather, it concerns the directly associated attempts by my children to replace or fill the operational management of the corporate group with their own confidants— even though my children have never once complained about the current managers (and in fact

1/4

399

have no reason whatsoever to do so). The subsidiaries concerned are key companies that are essential to the group's day-to-day business operations.

It is now apparent that what my children failed to achieve through the "settlement talks" they are now trying to push through by other means: the takeover of control of my corporate group at the operational management level and the installation of a blocking position through their trusted representatives. This plan must, in the objective interest of the foundations and of the corporate group as a whole, be prevented at all costs.

It is, in a sense, an ironic twist of history that my children have, at every opportunity, argued that maintaining the "status quo" until the conclusion of the foundation proceedings was in the interest of the foundations and themselves. As you know, this was also one of the central grounds cited by the Princely Court of Justice in its orders that ultimately led to your appointment as Guardian.

In line with this "status quo" argument, my children also obtained several interim injunctions in Cyprus against me and against the foundations, prohibiting the foundations from taking any decisions or signing any documents that might in any way alter the existing management structure of the numerous companies listed therein. According to the wording and purpose of those injunctions, the "status quo" was to be preserved until the proceedings in Liechtenstein reached final conclusion.

Now—after three-quarters of a year—my children, with the assistance of their "advisor" Jarosław Grzesiak, are attempting to "ram through" a complete 180-degree reversal: the judicially secured "status quo" is to be cast aside by installing, precisely in those subsidiaries that are explicitly covered by the Cypriot injunctions and that, as mentioned, are vital to the group, the confidants of my children and Mr. Grzesiak. I would also emphasize that the measures proposed by Mr. Grzesiak would result in changes to the powers of representation in those subsidiaries in favor of my children.

If the children's objective is to seize control of the corporate group and create blocking mechanisms at the operational level to exert pressure on me and the group, then they are plainly prepared to ignore binding court injunctions and to incite the foundations to commit punishable acts. This would pre-empt the decision of the Princely Court of Justice, undermine your role as court-appointed Guardian, and confront me, as a party to the proceedings, with a fait accompli.

2/4

Moreover, the course of action chosen by Mr. Grzesiak violates Cypriot law, among other things, and may lead to severe penalties for those involved. It would not be permissible, nor sufficient for exculpation, that the children "consent" to the appointment of their confidants. The Cypriot interim injunction remains binding once issued, and any breach would only escape criminal liability if done with the consent of all parties—including myself. That I do not consent to my children's plan goes without saying. I will provide you next week with a Cypriot legal opinion from my counsel in Cyprus, which will set out these points in detail.

As for my children's purportedly "objective" justifications for appointing these individuals, none of them are true: there is no operational need whatsoever to expand or replace the management of the companies in question. Mr. Grzesiak, unsurprisingly, has failed to show any such reasons. The currently appointed Foundation Board is fully performing its supervisory and management duties. Through Tomasz Szelag, direct information flow between the Foundation Board and the underlying companies is ensured. There is not a single (let alone substantiated) indication that would cast doubt on the Foundation Board's continued confidence in Tomasz Szelag.

On the contrary, if the children were allowed to proceed, precisely what they have repeatedly and wrongly accused me and the Foundation Board of would occur: the clear danger that foundation assets could be lost or that irreversible actions could be taken at the level of the operating companies by the children's compliant confidants.

If the children truly cared about "asset protection" in the sense of preserving the foundations' core assets, there would be not the slightest reason to violate the existing Cypriot injunctions, depart from the secured "status quo," or—especially now, shortly before the expected conclusion of the first-instance proceedings—make any changes to operational management.

In truth, their plan exposes their real motive: what they failed to achieve as a precondition for settlement negotiations—namely, replacing the management—they now seek to impose unlawfully in order to exert maximum pressure on me and the corporate group. They already attempted to put this plan into effect once before, when, through the machinations of my children and Mr. Grzesiak, existing financing agreements of subsidiaries nearly collapsed—a crisis averted only through extraordinary effort. To grant the children new power positions through compliant confidants so they could continue this course would be to lead the foundations and their assets straight into danger.

In my continuing capacity as Curator, and therefore as an advisory organ of the Foundation Board, I urgently request that you protect the interests of the foundations, do not be misled by my children's false narratives, and above all make no replacements, reappointments, or

additions at the level of subsidiaries or sub-subsidiaries, and exercise your voting rights within
the Foundation Board accordingly.

Sincerely,

[signature]

Zygmunt Solorz



The City House, 17-19 Themistocli Dervi Street, 1066 Nicosia.
P. O. Box 20106, 1601 Nicosia, Cyprus.
Tel. +357 22022999, Fax. +357 22022900
a.demetriou@idlaw.com.cy
www.idlaw.com.cy

5th April 2025

ID/S16303

Attn:

Zygmunt J. Solorz

Meierhofstrasse 8,

FL-9495 Triesen,

Liechtenstein

Dear Mr. Solorz,

**TiVi Foundation and Solkomtel Foundation - Boards of Directors of Operating Subsidiary Companies - Notice of Proposal for Agenda Item to Appoint Additional Directors made by Foundation Council Member Jaroslaw Grzesiak ("Mr. Grzesiak") on 2nd April 2025 in breach of the Express Prohibitions contained in the Cyprus Interim Orders**

This legal opinion is given without prejudice to the jurisdictional objections filed by the Respondents in Applications 31/2024 and 32/2024 filed in the District Court of Limassol Cyprus, and to any objection that may be filed against the Interim Orders issued on 11/10/2024 and 14/10/2024 - the TiVi and Solokomtel Interim Orders as described below.

This legal opinion is provided as per your request to outline the legal implications of the above Proposal by Mr. Grzesiak in the context of:





IOANNIDES DEMETRIOU LLC is a legal practice incorporated with limited liability in Cyprus under registration no. HE 250276, pursuant to the Advocates' Law.
Registered Office: The City House, 17-19 Themistocli Dervi Street, 1066 Nicosia, Cyprus.



(i)     the Interim Order issued by the District Court of Nicosia in Application 31/2024 on 11/10/2024 ("the TiVi Interim Order") in respect of the TiVi Foundation,

(ii)    the Interim Order issued by the District Court of Nicosia in Application 32/2024 on 14/10/2024 ("the Solkomtel Interim Order")

(both interim orders being collectively referred to as "Cyprus Interim Orders")

(iii)   The law relating to the issue and enforcement of Interim Orders in Cyprus

(iv)    Cypriot Corporate Law in relation to the functioning of the boards of directors of the companies in which the changes are sought.

**The TiVi and Solkomtel Interim Orders**

Both the TiVi and Solkomtel Interim Orders issued as stated above were issued as a result of identical applications (save as to the Respondents) made on 8/8/2024 ("the Applications") by Piotr Mateusz Zak, Aleksandra Jadwiga Zak and Tobias Markus Solorz ("the Applicants").

It is important to note that the Applications sought the following extremely wide ranging orders:

The above Applicants requested from the Court the following:

*"1. Until further order by the Court and/or until the final hearing and issue and execution of a final decision in the Counterclaim, which the Applicants intend to file in the context of the civil process with number 06.CG.2024.184 pending before the Princely District Court of the Principality of Liechtenstein, an interim order of the Court forbidding Respondents 1-6 and/or their representatives and/or directors and/or agents and/or employees and/or officers from:*

*(a) Selling, alienating, transferring, gifting, disposing of, charging, mortgaging, pledging, creating any right or interest on the movable and unmovable assets of [2 and 6 in the TiVi Interim Order] / [2 and 6-12 in the Solkomtel Interim Order], whether these are situated in Cyprus or abroad, whether such assets are directly or indirectly owned by Respondents [2 and 6 in the TiVi Interim Order]/[2 and 6-12 in the Solkomtel Application], including (but not limited to), the shares that*

**!Invalid Character Setting**

404



*Respondent 6 owns in the companies, the names of which are included in ANNEX A which is attached hereto.*

(b) *Selling, alienating, transferring, gifting, disposing of, charging, mortgaging, pledging, creating any interest or right on the movable and immovable assets of the subsidiaries of Respondent [6 in the TiVi Interim Order] /[6-12 in the Solkomtel Interim Order], the names of which are included in ANNEX A which is attached hereto.*

(c) *Making any decision or signing any documents altering and/or amending and/or changing or affecting in any way, directly or indirectly, the share structure and/or the management structure and/or the corporate structure and/or the Memorandum and/or the Articles of Association and/or the charters and/or the constituent documents of Respondent [6 in the TiVi Interim Order] / [6-12 in the Solkomtel Interim Order] and the direct or indirect subsidiaries of Respondent [6 in the TiVi Interim Order] / [6-12 in the Solkomtel Interim Order] , the names of which are included in ANNEX A attached hereto.*

2. *Interim Order of the Court determining that paragraph (1) above applies to all the assets of Respondents, whether or not they are registered in their own name, and whether they are held exclusively by Respondents or together with other persons and include any assets over which they have power, either directly or indirectly, to dispose and/or act in connection therewith as if they were their own, including, but not limited to, the shareholdings that Respondent [6 in the TiVi Interim Order - Reddev Investments Limited ("Reddev")] 6-12 in the Solkomtel Interim Order - 6. Stasalco Limited ("Sasalco"), 7. WBN Holdings Limited ("WBN"), 8. Karswell Limited ("Karswell") 9. Bithell Holdings Limited ("Bithell"), 10. Perspesento Limited ("Perspesento"), 11. Juvel Limited ("Juvel"), Argumenol Investment Company Limited ("Argumenol") directly or indirectly holds in the companies, whose names appear in ANNEX A attached hereto.*

!Invalid Character Setting



3. *Interim order of the Court determining that, for the purposes of paragraph (2) above, Respondents [1-6 in the TiVi Interim Order] /[1-12 in the Solkomtel Interim Order] shall be deemed to have the power, either directly or indirectly, to dispose of and/or act in respect of any property, in the event that a third party owns or controls the property, in accordance with their instructions or indirect instructions.*

4. *Interim order of the Court determining that paragraph (1) above includes (but is not limited to) any shares that Respondents [2 and 6 in the TiVi Interim Order]/[2 and 6-12 in the Solkomtel Interim Order] directly or indirectly own in the companies included in ANNEX A which is attached this order.*

5. *Order or instructions of the Court, that the Order referred to in paragraph (1) above, shall be subject to the limitations set forth in ANNEX 1 hereto, and shall be interpreted in accordance with the provisions contained in ANNEX 2 attached hereto.*

6. *Interim order of the Court suspending and/or interrupting the power and the enforceability of any power of attorney or proxy that Respondent [6 in the TiVi Interim Order] /[6-12 in the Solkomtel Interim Order] has issued and/or granted to any person, including, inter alia, (but without any limitation) the powers of attorney or proxies issued or granted by Respondent [6 in the TiVi Interim Order] /[8 in the Solkomtel Interim Order] to Mr.. Jerzy Modrzejewski and/or*

7. *Order of the Court ordering Respondent [6 in the Tivi Interim Order]/[6-12 in the Solkomtel Interim Order] and/or its directors and/or officers and/or employees, to:*

   7.1. *Immediately revoke and cancel any power of attorney and/or proxy and/or proxies granted by Respondent [6 in the TiVi Interim Order] / [6-12 in the Solkomtel Interim Order] to any person.*

   7.2. *File with the Court, within five (5) days from the date of service of this order, an affidavit to be sworn by one of its directors, disclosing the powers of attorney or proxies granted by [6 in the TiVi Interim Order] / [ 6-12 in the Solkomtel Interim Order] to any person and attaching copies thereof, as well as confirming that all such powers of attorney or proxies have been revoked*

!Invalid Character Setting



*and/or annulled in compliance with this court order; and attaching copies of such revocations, together with documentary evidence of dispatch such revocations to persons holding such powers of attorney or proxies.*

*8. Any other interim order or remedy or instructions that the Honourable Court deems fair and appropriate."*

It is also very significant to note that the justification for the Application as stated by the Applicants in the Application for applying for the interim order on an ex parte basis, i.e without notice to the Respondents, was the following:

*"This Application is submitted without notice because:*

*1. There is a serious risk of dispersion of assets held and controlled directly or indirectly by the [TIVI Foundation / Solkomtel Foundation], long before a decision is issued and executed in the Counterclaims submitted by the Applicants.*

*2. The Applicants believe that the Respondents, upon being informed of this Application and its contents, will disperse further assets or take other measures to prevent the Counterclaims, as well as the enforcement of any judgment rendered in favor of the Applicants. In this case, the Applicants will suffer irreparable harm, as this will prevent their ability to execute a possible decision in their favor in their Counterclaims."*

Despite the above and despite the above quoted purported basis for the Application the Interim Order as granted by the Court **was significantly less draconian** than the Interim Order that was applied for by the Applicants.

In fact, the Court limited itself to ordering as follows:

!Invalid Character Setting



*"1. Until further order by the Court and/or until the final hearing and issue and execution of a final decision in the Counterclaim, which the Applicants intend to file in the context of the civil process with number 06.CG.2024.184 pending before the Princely District Court of the Principality of Liechtenstein, an interim order of the Court be issued and is hereby issued, forbidding Respondents [1-6 in the TiVi Interim Order]/[1-12 in the Solkomtel Interim Order] and/or their representatives and/or directors and/or agents and/or employees and/or officers from:*

*(a) Selling, alienating, transferring, gifting, disposing of, charging, mortgaging and pledging the shares Respondents [1-6 in the TiVi Interim Order] / [1-12 in the Solkomtel Interim Order] own in the companies the names of which are included in ANNEX A attached hereto or create any interest or right on the said shares.*

*(c) Making any decision or signing any documents altering and/or amending and/or changing or affecting in any way, directly or indirectly, the share structure and/or the management structure and/or the corporate structure and/or the Memorandum and/or the Articles of Association and/or the charters and/or the constituent documents of Respondent 6 and the direct or indirect subsidiaries of Respondent 6, the names of which are included in ANNEX A attached on this order.*

*2. Be issued and is hereby issued, an interim order of the Court determining that paragraph (1) above includes (but is not limited to) any shares that Respondents [2 and 6 in the Tivi Interim Order] / [2 and 6-12 in the Solkomtel Interim Order] directly or indirectly own only in the companies included in ANNEX A which is attached this order.*

*3. Be issued and is hereby issued, an interim order of the Court suspending and/or interrupting the power and the enforceability of any power of attorney or proxy that Respondent [6 in the Tivi Interim Order] /[6-12 in the Solkomtel Interim Order] has issued and/or granted to any person, including, inter alia, (but without any limitation) the powers of attorney or proxies issued or granted by Respondent [6 in the Tivi Interim Order] [8 in the Solkomtel Interim Order] to Mr.. Jerzy Modrzejewski.*

!Invalid Character Setting



**4. The issued orders are returnable on 23/10/2024 and at 9:30am. The remaining orders are also set on the same date and time for service."**

From the above it follows that the purported basis of the ex parte Application which was allegedly the protection of all assets including moveable and immoveable property of the Foundation and its subsidiaries from dissipation **was not accepted by the Cyprus Court.**

The **only** "status quo" that the Cyprus court wished to maintain, albeit on an interim basis, in relation to the subsidiary companies of the TiVi Foundation at the interim stage was the following:

The Respondents, including the Foundations were restricted from:

(i)      transferring or mortgaging etc any shares in the Foundations subsidiary and subsubsidiary companies;

(ii)     amending the share structure, management structure (boards of directors) Memorandum and/or the Articles of Association and/or the charters and/or the constituent documents of Respondent 6 in the TiVi Interim Order and Respondents 6-12 in the Solkomtel Interim Order and the direct or indirect subsidiaries of the above, the names of which are included in ANNEX A of each Interim Order;

(iii)    The suspension of all powers of attorney issued by Respondent 6 in the TiVi Interim Order and Respondent 8 in the Solkomtel Interim order.

Having in mind the above, it is our interpretation that the Cyprus court was of the compelling and, in our view, logical opinion that the Foundations and its subsidiaries as listed in ANNEX A of the Cyprus Interim Orders shall remain free to carry out their day to day operations through their already appointed Boards of Directors who would not be subject to change and in accordance with the already existing corporate statutes and regulations which would also not be subject to any change pending further order of the Court.

**!Invalid Character Setting**

409

IOANNIDES
DEMETRIOU

**The Status Quo in Respect of the Board of Directors of the Subsidiaries of the TiVi and Solkomtel Foundations as Established by the Cyprus Interim Orders Order**

The status quo that has been established by the Cyprus Court at the time of issue of the Cyprus Interim Orders takes account of the following:

(i)     The current relationship between the Foundations and their immediate subsidiaries and sub-subsidiaries as set out in ANNEX A of each Interim Order;

(ii)    The current boards of directors of the subsidiaries and sub-subsidiaries of the Foundations; and quoting from the Cyprus Interim Orders themselves - see above:

(iii)   *"the share structure and/or the management structure and/or the corporate structure and/or the Memorandum and/or the Articles of Association and/or the charters and/or the constituent documents".*

Accordingly, the Cyprus Interim Orders both expressly prohibit any changes in the above and binds the parties to the Cyprus proceedings to maintaining the status quo established by the Cyprus Interim Orders.

**The Proposals of 2/4/2025 as made by Mr. Grzesiak**

The proposals made by Mr. Grzesiak in respect of the **TiVi Foundation and the Solkomtel Foundation** is the following (quotes taken from his email to the Court appointed Curator of the Foundations dated 2/4/2025):

**TiVi Foundation:**

*"I propose to add to the agenda of the next foundation board meeting of TiVi Foundation:*

**!Invalid Character Setting**



*- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of Reddev Investments Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 330471 (the "Reddev"), two additional directors of Reddev: (i) George Sphiktos and (ii) Maria Kannava."*

**Soklomtel Foundation:**

*"I propose to add to the agenda of the next foundation board meeting of <u>Solkomtel Foundation</u>:*
*-    decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of Stasalco Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE <u>372875</u> (the "Stasalco"), two additional directors of the Company: (i) George Sphiktos and (ii) Maria Kannava;*
*-    decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of Karswell Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 229808 (the "Karswell"), two additional directors of the Company(i) George Sphiktos and (ii) Maria Kannava;*
*-    decision on amending the Articles of Association of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE <u>336956</u> ("WBN") regarding the Regulation 83 and the Regulation 99; - decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of WBN two additional directors of the Company: (i) George Sphiktos and (ii) Maria Kannava.*
*"*

**There can be no doubt whatsoever and/or howsoever arising that the above proposals if carried out as proposed by Mr. Grzesiak would constitute a breach of the Cyprus Interim Orders.**

The current boards of directors of the Respondents in the TiVi and Solkomtel Interim Orders which Mr. Grzesiak is seeking to change are comprised of the following directors:

**TiVi Interim Order**

**Reddev – Respondent 6**

!Invalid Character Setting



Joanna Elia of Cyprus – appointed on 1/7/2029

Antonia Fella of Cyprus – appointed on 1/7/2019

and Natalia Elia of Cyprus (as alternate director for Antonia Fella) - appointed on 16/10/2023.

**Solkomtel Interim Order**

**Stasalco – Respondent 6**

Athinoulla Loizou of Cyprus – appointed on 29/8/2018

Myria Elia of Cyprus – appointed on 21/10/2022

**WBN**

Georgia Siakou of Cyprus – appointed on 24/3/2020

Natali Elia of Cyprus – appointed on 29/12/2022

**Karswell**

Natali Elia of Cyprus – appointed on 21/2/2024

All the above directors are duly appointed and the boards of all the above companies are duly constituted.

**The Cyprus Interim Orders, as shown above, expressly prohibit any changes in the constitution of the boards of directors of the above companies.**

**The Cyprus Interim Orders also prohibit any changes in the Memoranda and Articles of Association of the above companies as is being proposed by Mr. Grzesiak in the case of WBN.**

!Invalid Character Setting



**The Legal Status of the Cyprus Interim Orders**

The jurisprudence of Cyprus attaches great importance and significance to any court order that is issued. Any breach of an Order of the Court, especially an Interim Order constitutes **a contempt of court.**

A recent Cyprus Court of Appeal decision in case E113/2023 issued on 25/2/2025 stated the following (in translation from the Greek text of the judgment) made reference to previous consistent case law:

The Court referred to *Mavronikola v. Xanthou* (2011) 1 A.A.D. 293, where the following were emphasized in relation to the procedural requirements that must be observed under Order 42A of the then-applicable Civil Procedure Rules:

*"By the very nature of the contempt of court proceedings as quasi-criminal (see Halin v. Timur (2005) 1(A) A.A.D. 424), the need arises for a complete and effective determination of the existence of the following prerequisites, under penalty of nullity of the proceedings (Makridis (1991) 1 A.A.D. 401):*

*a.   Existence of a court order.*

*b.   Existence of the necessary endorsement.*

*c.   Personal service of the court order.*

*d.   Personal service of the contempt application."*

The Court of Appeal also went on to add:

*"In Michaelides v. Poliakova (No. 2) (2011) 1 A.A.D. 1007, the following were emphasized:*

*"…… The case law has clearly, consistently, and exhaustively established that contempt of court orders undermines the very foundation of the legal system and the proper and unhindered operation and administration of justice itself. It erodes the authority of the Court, and for that reason, the appropriate punishment, as a rule, is that of imprisonment."*

**!Invalid Character Setting**

IOANNIDES
DEMETRIOU

It is therefore evident in case law that a case of contempt is treated very seriously by the Courts of Cyprus.

**The Penal Endorsement on the Cyprus Interim Orders and Additional Endorsements made by the Court**

It should be noted that the penal endorsement on the Cyprus Interim Injunction orders states as follows: *"If you the above named Respondents [names of Defendants] and/or your representatives and/or servants and/or officers neglect to comply with the stated order, you will be immediately liable to arrest and your property [will be liable to] confiscation."*

Additionally in **ANNEX A of both Cyprus Injunctions Appendix 2** under the Title **"Interpretation of the Injunction"** the Court has stated the following:

*"The Defendants who are ordered not to do an act must not do it themselves or in any other way. They must not do it through others who act on their instructions or with their encouragement"*

Additionally, and in the same Appendix 2 under the title **"Parties Other than the Applicants and the Respondents"** the Court has stated the following:

*"It constitutes a contempt of court for any person who has been advised of this present Order to assist, or to willingly allow a breach of this Order. Any person acting as above may be imprisoned of fined or his assets may be confiscated."*

From the above it is clear that not only the Respondents but also third parties who have knowledge of the Cyprus Interim Orders may be found guilty of contempt if they act in breach of the Cyprus Interim Orders or they encourage or willingly allow a breach of the Cyprus Interim Orders.

It is our view that Foundation Council members, the proposed additional directors they accept to be appointed and indeed any Respondents existing directors who assist or willingly allow a breach of the Cyprus Injunctions will be guilty of contempt of court.

!Invalid Character Setting



Quite apart from the above, it is well established under Common Law that an applicant and even a third party who has knowledge of the Injunction may be found guilty of contempt in the event of participation, willful allowance or encouragement of a breach of the Cyprus Interim Orders.

**The Common Law Position**

As is well known, the Common Law forms an integral part of the Cypriot Legal System. Accordingly Common Law principles are applicable and Common Law precedent is cited before and relied upon by Cyprus courts.

A person to whom a court order is addressed is guilty of a contempt of court if they breach the court order, in accordance with principles which are clearly summarized by Christopher Clarke J in *Masri v Consolidated Contractors Inti Co SAL & Ors [2011] EWHC 1024 (Comm)* at [144]-[147].

Accordingly third parties who have notice of a court order may also be guilty of contempt if they do something which is a willful interference with the administration of justice: *Seaward v Paterson [1897] 1 Ch 545,* 555-6, *Attorney-General v Times Newspapers Ltd [1992] 1 AC 191,* 218-9. The former is often described as a civil contempt and the latter, which is viewed more seriously is a criminal contempt.

Criminal contempt is committed if the third party aids and abets a breach of the court order. It provides the mechanism whereby, for example, freezing orders are made effective against foreign defendants with money in English bank accounts: notice to the bank puts the bank at risk of committing a criminal contempt if it facilitates transfer of the funds, and so the account is effectively frozen.

The principal difference between civil and criminal contempt in the present context is the mental element involved in establishing the contempt, as Lord Oliver explained in *Attorney General v Times Newspapers* at pp. 217-218. For a civil contempt the position was accurately summarized by Briggs J in *Sectorguard Plc v Dienne Plc [2009] EWHC 2693 (Ch)* at [32]: *"The*

!Invalid Character Setting

I O A N N I D E S
D E M E T R I O U

*mental element required of a contemnor is not that he either intends to breach or knows that he is breaching the court order or undertaking, but only that he intended the act or omission in question, and knew the facts which made it a breach of the order." By contrast, for a criminal contempt by a third party what is required is a willful interference in the administration of justice, which in the case of a court order requires an intention that it be breached."*

In the same case the position of Directors and officers of a Company were considered. The Court stated that:

*"Directors and Officers of a Corporation have been treated as a special category where the order is made against the corporation. At least since 1860 and at least until 2020\* they could be treated as responsible as civil contemnors for breach of an order made against the corporation where they were culpably responsible for the corporation's failure to comply with the order in accordance with principles laid down in Attorney General of Tuvalu v Philatelic Distribution Corp Ltd [1990] 1 WLR 926 and Dar Al Arkan v Refai.*
(\* The limitation is not applicable to Cyprus as no equivalent legislation exists.)
The same principles would clearly apply to the Foundation Council members, and indeed the Foundations themselves if they cause the Foundation to act in a manner which breaches the Cyprus Injunctions.

In the light of the above, and having in mind that is patently clear that there would be a breach of the Cyprus Injunctions if the "proposals" of Mr. Grzesiak are carried out the Foundations and indeed the Foundation Council members would be exposed to both civil contempt and indeed Criminal contempt (see below).

Further, and in addition to the Foundations and the Foundation Council Members it is pertinent to note that Cyprus Respondent companies and any director of the said companies who is in any involved or facilitates a breach of the Cyprus Injunctions would face similar exposure and liability.

**!Invalid Character Setting**



**Foundations' Position Before the Cyprus Court**

Whilst we do not presume to suggest to the Foundations or the Foundations Councils how they should act, it is pertinent to point out that any act that would result in a breach of the Cyprus Interim Orders would place the Foundations and the Foundations Council members who may take into consideration to approve the "proposals" of Mr. Grzesiak in an extremely precarious position vis a vis the Cyprus court.

The position that has been maintained by the Foundations who have appeared before the Cyprus Court is one of "neutrality" and preservation of the status quo as created by the Cyprus Interim Orders for so long as they are in place. The above position of the Foundations culminating in the decision of the Foundations not to intervene in the Cyprus Interim Order Applications has been communicated to the Court by the Foundations' Cyprus counsel and it has been noted by the Court.

Additionally it is known as a fact by both the Applicants and the Respondents that upon his appointment the Court appointed Curator visited Cyprus, inspected the administration set up for the Foundations and did not make any requests for changes and has not since felt the need to do so, presumably because not only has there not been a breach of the Interim Orders but also there has been no dissipation of assets in a manner that is prejudicial to the interests of either Foundations.

Under the above circumstances it would, in our humble opinion, be inconceivable for the Foundations to change position and to support and implement the drastic, one sided and in our view illegal "proposals" by Mr. Grzesiak.

**Contempt by Non - Parties under Common Law**

The above position is re-enforced if one takes into account the Common Law position relating to Contempt by Non - Parties which can be summarized as follows:

In the case of _Integral Petroleum SA v Petrogat FZE [2020] EWHC 558 (Comm)_ the English High Court summarized the applicable legal principles so far as an application for committal for

**!Invalid Character Setting**

417



breach of an order by a non - party can be found liable for contempt in relation to a breach of a court order. It stated the following: *"This is a species of criminal contempt, in contrast to the position of the respondent to the order (and those within the Body Corporate Provision) which involves a civil contempt (Arlidge, Eady & Smith on Contempt (5th), [3-130]). It is necessary in a non-party case to meet the more onerous test in Z Ltd v AZ and AA-LL [1982] 1 WLR 558, 580, Eveleigh LJ explained: "A third party with notice of the terms of an injunction should only be liable when he knows that what he is doing is a breach of the terms of the injunction." These cases speak in terms of the acts of the third party, and in Seaward itself it is clear that mere presence as a spectator at a boxing match held on premises in breach of an injunction would not have been enough, as opposed to the positive acts of the master of ceremonies, who was "actively assisting" the breach. ... For my part, I am unpersuaded that a mere failure to cause a respondent to comply with an order is sufficient to amount to contempt under the Seaward principle (in contrast to the Body Corporate Provision.) However, a purposive and functional interpretation of the concept of "directors or other officers" in the Body Corporate Provision should ensure that in the vast majority of cases, individuals in control of bodies corporate will fall on the right side of the civil/criminal contempt divide." - Olympic Council of Asia v Novans Jets LLP & Ors [2023] EWHC 276 (Comm).*

Further in the case **Create Financial Management LLP v Roger Lee, Karen Scott** Case No: QB 2020 002046 High Court of Justice Queen's Bench Division [2020] EWHC 2046 (QB), 2020 WL 04349912, Mr. Justice Morris stated that: *"As a matter of law, a third party can be in contempt of court in respect of an injunction in two circumstances (see Gee on Commercial Injunctions (6th edn) at §19-003):*

> *(1) where the third party knowingly aids and abets a breach of the injunction; in that situation there has to have been a breach of the injunction by the defendant; or*
> *(2) where the third party with knowledge of the order does "something which disables the court from conducting the case in the intended manner" and thereby interferes with the due administration of justice. That can arise independently of whether there has been any breach of the injunction. This is the principle set out in Attorney- General v Punch Ltd [2003] 1 AC 1046 per Lord Nicholls at §§4, 39-40 and 47."*

!Invalid Character Setting

418



In the above context the persons proposed as additional directors by Mr. Grzesiak clearly fit into the category of non-parties. It is clear that by accepting their proposed appointments to the boards of directors of the Respondent companies that they would be actively aiding and abetting the breach of the injunctions and the resulting contempt of court. This would expose them to contempt proceedings as described herein.

**Consent of the Applicants Does Note Cure the Contempt**

It is clear that Mr. Grzesiak believes, or has been advised, that the Applicants in the Cyprus Interim Order Applications have the right to waive compliance with the Cyprus Interim Orders. **This is not the case.**

It is clear from the very fact that Mr. Grzesiak has mentioned the fact that the Applicants would be providing waivers that it is in the contemplation of all the potential participants that if the proposals made by Mr. Grzesiak are implemented a breach of the Cyprus Injunctions will occur. Under these circumstances procuring a waiver by the Applicant's will not cure the contempt.

This is not the situation of an agreed "carve out" that may be agreed between an applicant and the respondent to an interim order. In the current situation the Applicants, Mr. Grzesiak and all potential participants in any implementation of the "proposals" of Mr. Grzesiak are fully aware not only that the status quo that has been established by the Cyprus court as between the Applicants and the Respondents at this interim stage in the proceedings will be eradicated but also that the Applicants would be actively undermining the Cyprus Interim Orders issued by the Court as a result of their Application.

We are of the firm opinion that the Cyprus Court, which under Common Law has the right to act ex proprio motu (of its own volition) to examine a breach of its own Orders, and which will in any event be moved by yourself and others to examine a breach of the Cyprus Injunctions will take a very dim view of any party trying (as Mr. Grzesiak is clearly trying to do) to procure a breach of the Cyprus Interim Orders in order to effectively secure for the benefit of the Applicants a position that they requested from the Court but which the Court refused to give them.

**!Invalid Character Setting**



That is to say for the Applicants to have the ability to effectively curtail, via a deadlock situation, the day to day operation of the subsidiaries and sub-subsidiaries of the TiVi and Solkomtel Foundations by way of acts that the Cyprus Interim Orders expressly forbid, namely, the changing of the constitution of the board of directors of the Respondent companies and, additionally, in the case of WBN the amendment of Articles of Association of the company, another act that is expressly forbidden by the Cyprus Interim Orders.

This, in order to create an equality of voting rights on their boards between the duly appointed directors, all of whom, as can be seen above, were appointed prior to the dispute that is before the Courts of Cyprus and Liechtenstein and to add to the boards of directors of the Respondent companies appointees who have, by Mr. Grzesiak own admission, been chosen by Mr. Grzesiak following discussion with the Secondary Beneficiaries.

**Undermining / Breach of the Applicants Equitable "Clean Hands" Obligation**

Such a development would apart from constituting a contempt of court would also constitute a breach of the equitable obligations that the Applicants have towards the Court that issued the Cyprus Interim Orders.

Given that the granting of an interim injunction is an equitable remedy it is incumbent upon the Applicants to approach and always present themselves before the Court "with clean hands". The Applicants would clearly be in breach the above obligation if they were to act in any manner that would breach the Cyprus Interim Orders.

If Mr. Grzesiak believes that his proposal is a valid and justifiable one, the most appropriate steps for him to take is not the proposed one which commits a contempt of court and places the Foundations and the directors of the Respondent companies who will also breach the Cyprus Interim Orders at risk of punishment for contempt of court.

**!Invalid Character Setting**



Instead of acting as he proposes to do Mr. Grzesiak should seek to persuade the Cyprus Court either through the Foundation Council or through his appointors, the Applicants to vary the Cyprus Interim Orders so as allow the changes to the boards of directors of the above named companies, and indeed in the case of WBN the also prohibited amendment of the Articles of Association of that company.

We are of the firm view that in the light of all that is stated above that it would be highly unlikely for the Cyprus court to grant such an application and it is not unlikely that such an application would lead to the dismissal of the Cyprus Interim Orders in total by the Court as the true motives of the Applicants would be clearly revealed.

**Public or Private Criminal Prosecution**

Having established as set out above:

(i)    The certainty that the implementation of Mr. Grzesiak's proposal will result in a breach of the Cyprus Injunctions, and that

(ii)   That a breach of the Cyprus Injunctions by the Respondents (including the Foundations and Foundation Council members voting in favor of steps that would constitute or facilitate a breach of the Cyprus Injunctions) or a third party would constitute a criminal contempt,

It is our view that a criminal offence to be tried by the criminal court will have been committed. The prosecution of such an offence may be undertaken by the Attorney General of Cyprus upon a complaint being filed to him or the police, or by private prosecution instigated by any private person negatively affected by the acts of Mr. Grzesiak.

!Invalid Character Setting



The Defendants in any criminal prosecution would be the Applicants, Mr. Grzesiak and any member of the Foundation Council who votes in favor of or allows the proposal of Mr. Grzesiak to be implemented through or by way of any act or sufferance on the part of the Respondents to the Cyprus Interim Orders.

We are at your disposal for any clarifications.

Yours faithfully,

[signature]

Andrew Demetriou

Ioannides Demetriou L.L.C

(email: a.demetriou@idlaw.com.cy)

**!Invalid Character Setting**



Das Stadthaus, 17-19 Themistocli Dervi Street, 1066 Nikosia.
P. O. Box 20106, 1601 Nikosia, Zypern. Tel. +357 22022999, Fax. +357 22022900
a.demetriou@idlaw.com.cy www.idlaw.com.cy

*[Translator's note: There now follows the German version of the above legal opinion]*

5th April 2025

ID/S16303

Zu Händen:

Zygmunt J. Solorz

Meierhofstrasse 8,

FL-9495 Triesen,

Liechtenstein Sehr

geehrter Herr Solorz,

**TiVi Foundation und Solkomtel Foundation - Verwaltungsräte der operativen Tochtergesellschaften - Bekanntmachung des Vorschlags des Stiftungsratsmitglieds Jarosław Grzesiak ("Herr Grzesiak") vom 2-April 2025 für einen Tagesordnungspunkt zur Ernennung zusätzlicher Verwaltungsratsmitglieder unter Verstoß gegen die ausdrücklichen Verbote der zyprischen Einstweiligen Verfügungen**

Dieses Rechtsgutachten wird unbeschadet der von den Beklagten in den Anträgen 31/2024 und 32/2024 beim Bezirksgericht Limassol (Zypern) erhobenen Einsprüche gegen die Zuständigkeit sowie etwaiger Einsprüche gegen die am 11.10.2024 und 14.10.2024 erlassenen Einstweiligen Verfügungen - die TiVi- und Solokomtel-Einstweiligen Verfügungen, wie unten beschrieben - abgegeben.

Dieses Rechtsgutachten wird auf Ihr Ersuchen hin erstellt, um die rechtlichen Auswirkungen oben genannten Vorschlags von Herrn Grzesiak im Zusammenhang mit folgenden Aspekten darzulegen




IOANNIDES DEMETRIOU LLC ist eine in Zypern unter der Nr. HE 262276 eingetragene Rechtsanwaltskanzlei mit beschränkter Haftung gemäß dem Anwaltsgesetz.
Eingetragener Sitz: The City House, 17-19 Themistocli Dervi Street, 1066 Nikosia, Zypern



(i)     die einstweilige Verfügung des Bezirksgerichts Nikosia in der Sache 31/2024 vom 11.10.2024 ("die TiVi-Einstweilige Verfügung") in Bezug auf die TiVi-Stiftung,

(ii)    die einstweilige Verfügung des Bezirksgerichts Nikosia in der Sache 32/2024 vom 14.10.2024 ("die einstweilige Verfügung von Solkomtel")

        (beide einstweiligen Verfügungen werden zusammen als "zyprische einstweilige Verfügungen" bezeichnet)

(iii)   Das Recht für den Erlass und die Vollstreckung von einstweiligen Verfügungen in Zypern

(iv)    zypriotisches Gesellschaftsrecht in Bezug auf die Arbeitsweise der Vorstände der Unternehmen, in denen die Änderungen angestrebt werden.

**Die einstweiligen Verfügungen von TiVi und Solkomtel**

Die beiden oben genannten einstweiligen Verfügungen von TiVi und Solkomtel wurden aufgrund identischer Anträge (mit Ausnahme der Antragsgegner) erlassen, die am 8.8.2024 von Piotr Mateusz Zak, Aleksandra Jadwiga Zak und Tobias Markus Solorz (die Antragsteller") gestellt wurden.

Es ist wichtig, darauf hinzuweisen, dass in den Anträgen die folgenden äußerst weitreichenden Anordnungen beantragt wurden:

Die oben genannten Antragsteller haben beim Gericht beantragt:

*"1. bis zu einer weiteren Anordnung des Gerichts und/oder bis zur endgültigen Anhörung und dem Erlass und der Vollstreckung einer endgültigen Entscheidung in Widerklage, die die Kläger im Rahmen des vor dem Fürstlichen Bezirksgericht des Fürstentums Liechtenstein anhängigen Zivilprozesses mit der Nummer 06.CG.2024.184 einzureichen , eine einstweilige Anordnung des Gerichts, die es den Beklagten 1-6 und/oder ihren Vertretern und/oder Direktoren und/oder Bevollmächtigten und/oder Angestellten und/oder leitenden Angestellten untersagt,:*

*(a) den Verkauf, die, die Übertragung, die Schenkung, die Verfügung, die Belastung, die Verpfändung, die Verpfändung, die Begründung von Rechten oder Ansprüchen an den beweglichen und unbeweglichen Vermögenswerten von [2 und 6 in der einstweiligen Verfügung TiVi]/[2 und 6-12 in der einstweiligen Verfügung Solkomtel], unabhängig davon, ob sich diese in Zypern oder im Ausland befinden, unabhängig davon, ob diese Vermögenswerte direkt oder indirekt im Eigentum der Beklagten [2 und 6 in einstweiligen Verfügung TiVi] / [2 und 6-12 in der einstweiligen Solkomtel] stehen, einschließlich (aber nicht beschränkt auf) die Anteile, die der Beklagte 6 an*

**!Invalid Character Setting**

424



*den Gesellschaften besitzt, deren Namen in ANHANG A aufgeführt sind, der dieser Entscheidung beigefügt ist.*

*(b) den Verkauf, die , die Übertragung, die Schenkung, die , die Belastung, die Verpfändung, die Verpfändung, die Begründung von Rechten an den beweglichen und unbeweglichen Vermögenswerten der Tochtergesellschaften der Antragsgegnerin [6 in der TiVi-Zwischenverfügung] / [6-12 in der Solkomtel-Zwischenverfügung], deren Namen in der beigefügten ANLAGE A aufgeführt sind.*

*(c) Entscheidungen zu treffen oder Dokumente zu unterzeichnen, die direkt oder indirekt die Aktienstruktur und/oder die Managementstruktur und/oder die Unternehmensstruktur und/oder den Gesellschaftsvertrag und/oder die Satzung und/oder die Gründungsdokumente der Antragsgegnerin [6 in der einstweiligen Verfügung TiVi] / [6-12 in der einstweiligen Verfügung Solkomtel] und der direkten oder indirekten Tochtergesellschaften der Antragsgegnerin [6 in der einstweiligen TiVi] / [6-12 in einstweiligen Verfügung Solkomtel], deren Namen in ANHANG A in der Anlage aufgeführt sind.*

*2. Einstweilige Verfügung des Gerichts, mit der festgestellt wird, dass Absatz (1) auf alle Vermögenswerte der Beklagten Anwendung findet, unabhängig davon, ob sie auf ihren eigenen Namen eingetragen sind oder nicht, und unabhängig davon, ob sie ausschließlich von den Beklagten oder gemeinsam mit anderen Personen gehalten werden, und alle Vermögenswerte einschließt, über die sie entweder direkt oder indirekt verfügen und/oder in Verbindung damit handeln können, als ob es ihre wären, einschließlich, aber nicht beschränkt auf die Beteiligungen, die die Beklagte [6 in der TiVi-Einstweiligen Verfügung - Reddev Investments Limited ("Reddev")] 6-12 in der Solkomtel-Einstweiligen Verfügung - 6. Stasalco Limited ("Sasalco"), 7. WBN Holdings Limited ("WBN"), 8. Karswell Limited ("Karswell") 9. Bithell Holdings Limited ("Bithell"), 10. Perspesento Limited ("Perspesento"), 11. Juvel Limited ("Juvel"), Argumenol Investment Company Limited ("Argumenol") hält direkt oder indirekt Anteile an den Gesellschaften, deren Namen in ANHANG A in der Anlage aufgeführt sind.*

!Invalid Character Setting



3. *Einstweilige Verfügung des Gerichts, mit der festgestellt wird, dass für die Zwecke von Absatz (2) oben die Beklagten [1-6 in TiVi-Zwischenverfügung] / [1-12 in der Solkomtel-Zwischenverfügung] als unmittelbar oder mittelbar befugt angesehen werden, gemäß ihren Weisungen oder mittelbaren Weisungen über Eigentum zu verfügen und/oder in Bezug auf Eigentum zu handeln, wenn ein Dritter Eigentümer des Eigentums ist oder dieses kontrolliert.*

4. *Einstweilige Verfügung des Gerichts, mit der festgestellt wird, dass Absatz (1) oben alle Aktien einschließt (aber nicht sie beschränkt ist), die die Beklagten [2 und 6 in der TiVi-Zwischenverfügung] / [2 und 6-12 in der Solkomtel-Zwischenverfügung] direkt oder indirekt an den Gesellschaften besitzen, die in ANHANG A aufgeführt sind, der dieser Verfügung beigefügt ist.*

5. *Der in Absatz (1) genannte Beschluss unterliegt den in ANHANG 1 aufgeführten Beschränkungen und ist gemäß den Bestimmungen in ANHANG 2 auszulegen, der diesem Beschluss beigefügt ist.*

6. *Einstweilige Verfügung des Gerichts zur Aussetzung und/oder Unterbrechung der Befugnis und der Vollstreckbarkeit aller Vollmachten oder Vollmacht, die der Beklagte [6 in der TiVi- Einstweiligen Verfügung] / [6-12 in der Solkomtel-Einstweiligen Verfügung] einer Person erteilt und/oder gewährt hat, einschließlich unter anderem (aber ohne Einschränkung) der vom Beklagten [6 in der TiVi-Einstweiligen Verfügung] erteilten oder gewährten Vollmachten oder Vollmacht*
*/[8 in der Solkomtel-Zwischenverfügung] an Herrn Jerzy Modrzejewski und/oder*

7. *Beschluss des Gerichts, mit dem dem Antragsgegner [6 in der Tivi-Zwischenverfügung] / [6-12 in der Solkomtel-Zwischenverfügung] und/oder seinen Direktoren und/oder leitenden Angestellten und/oder Mitarbeitern aufgegeben wird,:*

    7.1. *unverzüglich alle Vollmachten und/oder Bevollmächtigungen, die der Antragsgegner [6 in der einstweiligen Verfügung TiVi] / [ 6-12 in der einstweiligen Verfügung Solkomtel] einer beliebigen Person erteilt hat, zu widerrufen und zu annullieren.*

    7.2. *dem Gericht innerhalb von fünf (5) Tagen nach Zustellung dieses Beschlusses eine eidesstattliche Erklärung eines seiner Direktoren vorzulegen, in der die*

!Invalid Character Setting



*Befugnisse der 6 der TiVi-Zwischenverfügung] / [ 6-12 der Solkomtel-Zwischenverfügung] erteilten Vollmachten und fügen Kopien davon bei, die Bestätigung, dass alle diese Vollmachten und Bevollmächtigungen in Übereinstimmung mit dieser gerichtlichen Entscheidung widerrufen und/oder für ungültig erklärt wurden, und fügen Kopien dieser Widerrufe zusammen mit Belegen für den Versand dieser Widerrufe an Personen, die solche Vollmachten oder Bevollmächtigungen besitzen, bei.*

8.   *Jede andere einstweilige Anordnung oder Abhilfe oder Weisung, die das für gerecht und angemessen hält."*

Von großer Bedeutung ist auch, dass die Antragsteller in ihrem Antrag auf Erlass einer einstweiligen Anordnung ex parte, . h. ohne vorherige Benachrichtigung der Antragsgegner, Folgendes als Begründung für ihren Antrag anführten

*"Dieser Antrag wird ohne Vorankündigung eingereicht, weil:*

1.   *Es besteht die ernste Gefahr, dass Vermögenswerte, die direkt oder indirekt von der [TIVI-Stiftung / Solkomtel-Stiftung] gehalten und kontrolliert werden, zerstreut werden, lange bevor eine Entscheidung über die von den Antragstellern eingereichten Widerklagen ergeht und vollstreckt wird.*

2.   *Die Antragsteller gehen davon aus, dass die Antragsgegner, nachdem sie von diesem Antrag und seinem Inhalt erfahren haben, weitere Vermögenswerte veräußern oder andere Maßnahmen ergreifen werden, um die Widerklagen sowie die Vollstreckung eines zugunsten der Antragsteller ergangenen Urteils zu verhindern. In diesem Fall würden die Antragsteller einen nicht wiedergutzumachenden Schaden erleiden, da dies ihre Fähigkeit, eine mögliche Entscheidung zu ihren Gunsten in ihren Widerklagen zu vollstrecken, verhindern würde.*

Trotzdem und trotz der oben zitierten angeblichen Grundlage für den Antrag **war** die vom Gericht erlassene einstweilige Verfügung **deutlich weniger drakonisch** als die von den Antragstellern beantragte einstweilige Verfügung.

Der Gerichtshof beschränkte sich darauf, wie folgt zu entscheiden:

!Invalid Character Setting



*"(1) Bis zu einer weiteren Anordnung des Gerichts und/oder bis zur abschließenden Verhandlung und dem Erlass und der Vollstreckung einer abschließenden Entscheidung in Widerklage, die die Antragsteller im Rahmen des beim Fürstlichen Landgericht des Fürstentums Liechtenstein anhängigen Zivilprozesses mit der Nummer 06.CG.2024.184 einzureichen , wird eine einstweilige Anordnung des Gerichts erlassen, es den Antragsgegnern [1-6 in der TiVi-Zwischenverfügung] / [1-12 in der Solkomtel-Zwischenverfügung] und/oder ihren Vertretern und/oder Direktoren und/oder Bevollmächtigten und/oder Angestellten und/oder leitenden Angestellten untersagt,:*

> *(a) den Verkauf, die Veräußerung, die Übertragung, die Schenkung, die Verfügung, die Belastung, die Verpfändung und die Verpfändung der Aktien, die die Beklagten [1-6 in der TiVi-Interimsverfügung] / [1-12 in der Solkomtel-Interimsverfügung] an den Gesellschaften besitzen, deren Namen in ANHANG A in der Anlage aufgeführt sind, oder die Begründung von Zinsen oder Rechten an den genannten Aktien.*

> *(c) Entscheidungen zu treffen oder Dokumente zu unterzeichnen, die die Aktien struktur und/oder die Managementstruktur und/oder die Unternehmensstruktur und/oder den Gesellschaftsvertrag und/oder die Satzung und/oder die Gründungsdokumente der Beklagten 6 und der direkten oder indirekten Tochtergesellschaften der Beklagten 6, deren Namen in ANHANG A zu dieser Anordnung aufgeführt sind, verändern und/oder ergänzen und/oder ändern oder in irgendeiner Weise direkt oder indirekt beeinflussen.*

*2. Es wird eine einstweilige Verfügung des Gerichts erlassen, in der festgestellt wird, dass Absatz (1) alle Aktien einschließt (aber nicht auf diese beschränkt ist), die die Beklagten [2 und 6 in der Tivi-Zwischenverfügung] / [2 und 6-12 in der Solkomtel-Zwischenverfügung] direkt oder indirekt nur an den in ANHANG A, der dieser Verfügung beigefügt ist, aufgeführten Unternehmen besitzen.*

*3. Es wird eine einstweilige Verfügung des Gerichts erlassen, mit der die Befugnis und die Vollstreckbarkeit aller Vollmachten oder Bevollmächtigungen, die der Antragsgegner [6 in der Tivi-Zwischenverfügung] / [6-12 in der Solkomtel-Zwischenverfügung] einer Person erteilt hat, ausgesetzt und/oder unterbrochen wird, einschließlich unter anderem (aber nicht nur) Einschränkung) die von der Beklagten [6 in der Tivi-Zwischenverfügung] [8 in*

**!Invalid Character Setting**



*der Solkomtel- Zwischenverfügung] an Herrn Jerzy Modrzejewski erteilten Vollmachten oder Bevollmächtigungen.*

4. *Die erteilten Aufträge können am 23.10.2024 um 9:30 Uhr zurückgegeben werden. Die übrigen Aufträge werden ebenfalls am selben Tag und zur selben Uhrzeit zugestellt.*

Daraus ergibt sich, dass die angebliche Grundlage des Ex-parte-Antrags, nämlich der Schutz des gesamten Vermögens, einschließlich des beweglichen und unbeweglichen Vermögens der Stiftung und ihrer Tochtergesellschaften, vor Verschwendung, **vom zypriotischen Gericht nicht akzeptiert wurde.**

**Der einzige** "Status quo", den das zyprische Gericht, wenn auch nur vorläufig, in Bezug auf die Tochtergesellschaften der TiVi-Stiftung aufrechterhalten wollte, war der folgende:

Den Beklagten, einschließlich der Stiftungen, wurden Beschränkungen auferlegt:

(i)     die Übertragung oder Verpfändung usw. von Anteilen an den Tochter- und Untertochtergesellschaften der Stiftung;

(ii)    die Änderung der Aktienstruktur, der Managementstruktur (Vorstände), des Gesellschaftsvertrags und/oder der Satzung und/oder der Gründungsdokumente des Antragsgegners 6 der einstweiligen Verfügung TiVi und der Antragsgegner 6-12 der einstweiligen Verfügung Solkomtel sowie der direkten oder indirekten Tochtergesellschaften der oben genannten, deren Namen in ANHANG A der jeweiligen einstweiligen Verfügung aufgeführt sind;

(iii)   Das Ruhen aller Vollmachten, die von der Beklagten 6 in der TiVi Zwischenverfügung und von der Beklagten 8 in der Solkomtel Zwischenverfügung erteilt wurden.

In Anbetracht der obigen Ausführungen sind wir der Auffassung, dass das zypriotische Gericht die zwingende und unserer Ansicht nach logische Meinung vertrat, dass die Stiftungen und ihre Tochtergesellschaften, wie sie in ANHANG A der zypriotischen Interimsverordnungen aufgeführt sind, weiterhin ihre Geschäfte durch ihre bereits ernannten Verwaltungsräte, die nicht geändert werden können, und in Übereinstimmung mit den bereits bestehenden Statuten und der Satzung der Gesellschaft führen können.

!Invalid Character Setting



Verordnungen, die bis zu einer weiteren Entscheidung des Gerichtshofs ebenfalls nicht geändert werden können.

**Der durch die zyprische Einstweilige Verfügung festgestellte Status Quo in Bezug auf die Verwaltungsräte der Tochtergesellschaften der TiVi- und Solkomtel-Stiftungen**

Der vom zypriotischen Gericht zum Zeitpunkt des Erlasses der zypriotischen einstweiligen Verfügungen festgestellte Status quo berücksichtigt Folgendes:

    (i)      Die derzeitigen Beziehungen zwischen den Stiftungen und ihren unmittelbaren Tochter- und Enkelgesellschaften, wie sie in ANHANG A der jeweiligen Zwischenverfügung dargelegt sind;

    (ii)     Die derzeitigen Verwaltungsräte der Tochter- und Enkelgesellschaften der Stiftungen; und zitiert aus den zypriotischen Interimsverordnungen selbst - siehe oben:

    (iii)   *"die Aktienstruktur und/oder die Verwaltungsstruktur und/oder die Unternehmensstruktur und/oder den Gesellschaftsvertrag und/oder die Satzung und/oder die Gründungsurkunden".*

Dementsprechend verbieten die zypriotischen Interimsverfügungen ausdrücklich jede Änderung des Vorstehenden und verpflichten die Parteien des zypriotischen Verfahrens, den durch die zypriotischen Interimsverfügungen geschaffenen Status quo beizubehalten.

**Die Vorschläge vom 2/4/2025 von Herrn Grzesiak**

Die Vorschläge von Herrn Grzesiak in Bezug auf die **TiVi-Stiftung und die Solkomtel-Stiftung** lauten wie folgt (Zitate aus seiner E-Mail an den gerichtlich bestellten Kurator der Stiftungen vom 2.4.2025):

**TiVi-Stiftung:**

*"ich schlage vor, die Tagesordnung der nächsten Stiftungsratssitzung der* TiVi Foundation *zu ergänzen:*

**!Invalid Character Setting**



*- Beschluss über die Ernennung von zwei zusätzlichen Direktoren von Reddev, (i) George Sphiktos und (ii) Maria Kannava, durch die Stiftung als einziges Mitglied (einziger Anteilseigner) von Reddev Investments Limited, einer Gesellschaft mit beschränkter Haftung, die beim der Republik Zypern unter der Nummer HE 330471 (Reddev") eingetragen ist. "*

**Soklomtel-Stiftung:**

*"Ich schlage vor, die Tagesordnung der nächsten Stiftungsratssitzung der <u>Solkomtel-Stiftung</u> zu ergänzen:*
*- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Stasalco Limited, einer Gesellschaft mit beschränkter Haftung, die im Handelsregister der Republik Zypern unter der Nummer HE <u>372875</u> (die "Stasalco") eingetragen ist, durch die Stiftung als einziges Mitglied (einziger Anteilseigner): (i) George Sphiktos und (ii) Maria Kannava;*
*- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Gesellschaft (i) George Sphiktos und (ii) Maria Kannava durch die Stiftung als einziges Mitglied (einziger Anteilseigner) der Karswell Limited, einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter der Nummer HE 229808 (die "Karswell") eingetragen ist;*
*- Beschluss über die Änderung der Satzung der WBN Holdings Limited, einer im Handelsregister der Republik Zypern unter der Nummer HE <u>336956</u> eingetragenen Gesellschaft mit beschränkter Haftung ("WBN"), in Bezug auf Verordnung 83 und Verordnung 99;*
*- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Gesellschaft durch die Stiftung als alleiniger Gesellschafter von WBN: (i) George Sphiktos und (ii) Maria Kannava. "*
**Es kann kein Zweifel daran bestehen, dass die oben genannten Vorschläge, wenn sie in der von Herrn Grzesiak vorgeschlagenen Form umgesetzt werden, einen Verstoß gegen die zypriotischen Interimsverordnungen darstellen würden.**

Die derzeitigen Vorstände der Antragsgegner der einstweiligen Verfügungen von TiVi und Solkomtel, die Herr Grzesiak ändern möchte, setzen sich aus den folgenden Vorständen zusammen:

**TiVi Zwischenverfügung**

**Reddev - Beklagter 6**

!Invalid Character Setting

431



Joanna Elia aus Zypern - ernannt am 1/7/2029 Antonia Fella

aus Zypern - ernannt am 1/7/2019

und Natalia Elia aus Zypern (als stellvertretendes Mitglied des Verwaltungsrats für Antonia Fella) - bestellt am 16/10/2023.

**Solkomtel**

**Zwischenverfügung**

**Stasalco - Antragsgegner 6**

Athinoulla Loizou aus Zypern - bestellt am 29.8.2018 Myria

Elia aus Zypern - bestellt am 21.10.2022

**WBN**

Georgia Siakou aus Zypern - ernannt am 24/3/2020 Natali

Elia aus Zypern - ernannt am 29/12/2022

**Karswell**

Natali Elia aus Zypern - ernannt am 21/2/2024

Alle oben genannten Direktoren sind ordnungsgemäß ernannt und die Vorstände aller oben genannten Unternehmen sind ordnungsgemäß konstituiert.

**Die zypriotischen Interimsverordnungen verbieten, wie oben dargelegt, ausdrücklich jede Änderung in Zusammensetzung der Verwaltungsräte der oben genannten Unternehmen.**

**Die zyprischen Interimsverordnungen verbieten auch jegliche Änderung der Gesellschaftsverträge und Satzungen der oben genannten Unternehmen, wie sie von Herrn Grzesiak im Fall von WBN vorgeschlagen wird.**

!Invalid Character Setting



**Der rechtliche Status der zyprischen Interimsverordnungen**

Die zypriotische Rechtsprechung misst jeder gerichtlichen Anordnung große Bedeutung bei. Jeder Verstoß gegen eine gerichtliche Anordnung, insbesondere gegen eine einstweilige Anordnung, **stellt eine Missachtung des Gerichts dar.**

In einer kürzlich ergangenen Entscheidung des zyprischen Berufungsgerichts in der Rechtssache E113/2023 vom 25.2.2025 heißt es (in Übersetzung aus dem griechischen Text des Urteils) unter Bezugnahme auf die frühere ständige Rechtsprechung Folgendes

Das Gericht bezog sich auf *Mavronikola gegen Xanthou* (2011) 1 A.A.D. 293, in dem in Bezug auf die verfahrensrechtlichen Anforderungen, die gemäß Order 42A der damals geltenden Zivilprozessordnung zu beachten sind, Folgendes hervorgehoben wurde

*"Da es sich bei dem Verfahren wegen Missachtung des Gerichts um ein quasi strafrechtliches Verfahren handelt (siehe Halin gegen Timur (2005) 1(A) A.A.D. 424), muss das Vorliegen der folgenden Voraussetzungen unter Androhung der Nichtigkeit des Verfahrens vollständig und wirksam festgestellt werden (Makridis (1991) 1 A.A.D. 401):*

*a.    Vorliegen Gerichtsbeschlusses.*

*b.    Vorhandensein des erforderlichen Vermerks.*

*c.    Persönliche Zustellung des Gerichtsbeschlusses.*

*d.    Persönliche Zustellung des Antrags auf Missachtung".*

Das Berufungsgericht fügte noch hinzu:

*"In der Rechtssache Michaelides gegen Poliakova (Nr. 2) (2011) 1 A.A.D. 1007 wurde Folgendes hervorgehoben:*

*"…… Die Rechtsprechung hat eindeutig, einheitlich und erschöpfend festgestellt, dass die Missachtung gerichtlicher Anordnungen die Grundlagen des Rechtssystems und das ordnungsgemäße und ungehinderte Funktionieren und die Verwaltung der Justiz selbst untergräbt. Sie untergräbt die Autorität des Gerichts, und aus diesem Grund ist die angemessene Strafe in der Regel eine Freiheitsstrafe."*

**!Invalid Character Setting**

433



Aus der Rechtsprechung geht daher hervor, dass ein Fall von Missachtung von den Gerichten Zyperns sehr ernst genommen wird.

**Der strafrechtliche Vermerk auf der zyprischen Einstweiligen Verfügung und die zusätzlichen Vermerke des Gerichtshofs**

Es sei darauf hingewiesen, dass der Strafvermerk auf den zyprischen einstweiligen Verfügungen wie folgt lautet: *"Wenn Sie, die oben genannten Beklagten [Namen der Beklagten] und/oder Ihre Vertreter und/oder Bediensteten und/oder Offiziere es versäumen, der genannten Anordnung nachzukommen, Sie sofort verhaftet und Ihr Eigentum [wird] beschlagnahmt."*

Außerdem ist in **ANHANG A der beiden zypriotischen Unterlassungsklagen Anhang 2** unter dem Titel **"Auslegung der Unterlassungsverfügung"** hat der Gerichtshof festgestellt:

*"Die Beklagten, denen eine Handlung untersagt wird, dürfen diese weder selbst noch auf andere vornehmen. Sie dürfen es nicht durch andere tun, die auf ihre Anweisung oder mit ihrer Ermutigung handeln.*

Darüber hinaus hat das Gericht in Anhang 2 unter dem Titel **"Andere Parteien als Antragsteller und die Antragsgegner"** Folgendes festgestellt:

*"Es stellt eine Missachtung des Gerichts dar, wenn eine Person, die von dieser Anordnung unterrichtet wurde, einen Verstoß gegen diese Anordnung unterstützt oder vorsätzlich zulässt. Jede Person, die in Weise handelt, kann zu einer Freiheits- oder Geldstrafe verurteilt oder ihr Vermögen eingezogen werden."*

Aus den obigen Ausführungen geht hervor, dass nicht nur die Beklagten, sondern auch Dritte, die Kenntnis von den zypriotischen Einstweiligen Verfügungen haben, der Missachtung schuldig befunden werden können, wenn sie gegen die zypriotischen Einstweiligen Verfügungen verstoßen oder einen Verstoß gegen zypriotischen Einstweiligen Verfügungen fördern oder absichtlich zulassen.

Wir sind der Ansicht, dass sich die Mitglieder des Stiftungsrats, die vorgeschlagenen zusätzlichen Direktoren, deren Ernennung sie akzeptieren, und alle bestehenden Direktoren der Beklagten, die einen Verstoß gegen die zypriotischen Unterlassungsauflagen unterstützen oder absichtlich zulassen, der Missachtung des Gerichts schuldig machen.

!Invalid Character Setting



Abgesehen davon ist es nach dem Common Law wohlbekannt, dass ein Antragsteller und sogar ein Dritter, der Kenntnis von der einstweiligen Verfügung hat, der Missachtung schuldig befunden werden kann, wenn er sich an einem Verstoß gegen die zypriotische einstweilige Verfügung beteiligt, ihn vorsätzlich zulässt oder dazu ermutigt.

**Der Common Law Standpunkt**

Bekanntlich ist das Common Law ein integraler Bestandteil des zyprischen Rechtssystems. Dementsprechend sind die Grundsätze des Common Law anwendbar, und die zyprischen Gerichte berufen sich auf Präzedenzfälle des Common Law.

Eine Person, an die eine gerichtliche Anordnung gerichtet ist, macht sich der Missachtung des Gerichts schuldig, wenn sie gegen die gerichtliche Anordnung verstößt. Dies entspricht den Grundsätzen, die Christopher Clarke J. in *Masri gegen Consolidated Contractors Inti Co SAL & Ors [2011] EWHC 1024 (Comm)* unter [144]-[147] klar zusammengefasst hat.

Dementsprechend können sich auch Dritte, die von einer gerichtlichen Anordnung Kenntnis haben, der Missachtung schuldig machen, wenn sie etwas tun, das einen vorsätzlichen Eingriff in die Rechtspflege darstellt: *Seaward gegen Paterson [1897] 1 Ch 545,* 555-6, *Attorney-General gegen Times Newspapers Ltd [1992] 1 AC 191,* 218-9. Erstere wird häufig als zivilrechtliche Missachtung bezeichnet, während letztere, die als ernster angesehen wird, eine strafrechtliche Missachtung darstellt.

Eine strafrechtliche Missachtung liegt vor, wenn der Dritte einen Verstoß gegen die gerichtliche Anordnung unterstützt und begünstigt. Auf diese Weise können beispielsweise Sicherstellungsanordnungen gegen ausländische Angeklagte mit Geld auf englischen Bankkonten wirksam gemacht werden: Durch die Benachrichtigung der Bank läuft diese Gefahr, eine strafrechtliche Missachtung zu begehen, wenn sie die Überweisung des Geldes erleichtert, so dass das Konto tatsächlich eingefroren wird.

Der Hauptunterschied zwischen zivilrechtlicher und strafrechtlicher Missachtung besteht im vorliegenden Zusammenhang in dem geistigen Element, das für die Feststellung der Missachtung erforderlich ist, wie Lord Oliver in der Rechtssache *Attorney General gegen Times Newspapers* auf S. 217-218 erläuterte. Bei einer zivilrechtlichen Missachtung war die Lage genau zusammengefasst von Briggs J in der Rechtssache *Sectorguard Plc gegen Dienne Plc [2009] EWHC 2693 (Ch)* bei

!Invalid Character Setting

435

IOANNIDES
DEMETRIOU

[32]: *"Das mentale Element, das von einem Contemnor verlangt wird, ist nicht, dass er entweder beabsichtigt, gegen die gerichtliche Anordnung oder Verpflichtung zu verstoßen, oder dass er weiß, dass er dagegen verstößt, sondern nur, dass er die betreffende Handlung oder Unterlassung beabsichtigt und die Tatsachen kennt, die sie zu einem Verstoß gegen Anordnung machen." Im Gegensatz dazu ist für eine strafrechtliche Missachtung durch einen Dritten ein vorsätzlicher Eingriff in die Rechtspflege erforderlich, der im Falle einer gerichtlichen Anordnung die Absicht voraussetzt, diese zu verletzen".*

In der gleichen Rechtssache ging es um die Stellung der Direktoren und leitenden Angestellten einer Gesellschaft. Der Gerichtshof stellte Folgendes fest:

*"Direktoren und leitende Angestellte einer Gesellschaft wurden als eine besondere Kategorie behandelt, wenn sich die Anordnung gegen die Gesellschaft richtete. Mindestens seit 1860 und mindestens bis 2020\* konnten sie als zivilrechtlich Verantwortliche für den Verstoß gegen eine gegen die Gesellschaft erlassene Anordnung behandelt werden, wenn sie schuldhaft für die der Anordnung durch die Gesellschaft verantwortlich waren, gemäß den Grundsätzen, die in den Urteilen Attorney General of Tuvalu gegen Philatelie Distribution Corp Ltd [1990] 1 WLR 926 und Dar Al Arkan gegen Refai festgelegt wurden.*
(\* Die Einschränkung gilt nicht für Zypern, da es keine gleichwertigen Rechtsvorschriften gibt). Dieselben Grundsätze würden eindeutig für die Mitglieder des Stiftungsrats und die Stiftungen selbst gelten, wenn sie die Stiftung dazu veranlassen, in einer Weise zu handeln, die gegen die zyprischen Unterlassungsklagen verstößt.

In Anbetracht der obigen Ausführungen und der Tatsache, dass es offensichtlich ist, dass ein Verstoß gegen die zypriotischen Unterlassungsklagen vorliegt, wenn die "Vorschläge" von Herrn Grzesiak umgesetzt werden, würden die Stiftungen und die Mitglieder des Stiftungsrats sowohl wegen zivilrechtlicher als auch strafrechtlicher Missachtung belangt werden (siehe unten).

Zusätzlich zu den Stiftungen und den Mitgliedern des Stiftungsrats ist zu beachten, dass die beklagten zypriotischen Unternehmen und jeder Direktor dieser Unternehmen, der in irgendeiner Weise an einem Verstoß gegen die zypriotischen Unterlassungsklagen beteiligt ist oder diesen erleichtert, einem ähnlichen Risiko und einer ähnlichen Haftung ausgesetzt wären.

**!Invalid Character Setting**

IOANNIDES
DEMETRIOU

**Die Position der Stiftungen vor dem zypriotischen Gerichtshof**

Wir maßen uns zwar nicht an, den Stiftungen oder den Stiftungsräten vorzuschlagen, wie sie sich verhalten sollen, aber es ist angebracht, darauf hinzuweisen, dass jede Handlung, die zu einem Verstoß gegen die zypriotischen Interimsverordnungen führen würde, die Stiftungen und die Mitglieder des Stiftungsrats, die in Erwägung ziehen könnten, die "Vorschläge" von Herrn Grzesiak zu genehmigen, in eine äußerst prekäre Lage gegenüber dem zypriotischen Gericht bringen würde.

Die Stiftungen, die vor zypriotischen Gericht auftraten, vertraten den Standpunkt der "Neutralität" und der Aufrechterhaltung des durch die zypriotischen einstweilen Verfügungen geschaffenen Status quo, solange diese in Kraft sind. Die oben genannte Position der Stiftungen, die in der Entscheidung der Stiftungen gipfelte, Anträgen auf Erlass einer einstweiligen Verfügung in Zypern nicht beizutreten, wurde dem Gericht von den zypriotischen Anwälten der Stiftungen mitgeteilt und vom Gericht zur Kenntnis genommen.

Darüber hinaus ist sowohl den Antragstellern als auch den Antragsgegnern bekannt, dass der vom Gericht ernannte Kurator bei seiner Ernennung Zypern besuchte, die für die Stiftungen eingerichtete Verwaltung inspizierte und keine Änderungswünsche äußerte und auch seither nicht für notwendig erachtet hat, vermutlich weil nicht nur kein Verstoß gegen die einstweiligen Verfügungen vorlag, sondern auch kein Vermögen in einer Weise verschwendet wurde, die den Interessen der beiden Stiftungen schadet.

Unter diesen Umständen wäre es unserer bescheidenen Meinung nach undenkbar, dass die Stiftungen ihren Standpunkt ändern und die drastischen, einseitigen und unserer Meinung nach illegalen "Vorschläge" von Herrn Grzesiak unterstützen und umsetzen.

**Missachtung durch Nicht-Parteien nach Common Law**

Die obige Position wird noch verstärkt, wenn man die Position des Common Law in Bezug auf die Missachtung durch Nicht-Parteien berücksichtigt, die sich wie folgt zusammenfassen lässt:

In der Rechtssache *Integral Petroleum SA gegen Petrogat FZE [2020] EWHC 558 (Comm)* hat der englische High Court die anwendbaren Rechtsgrundsätze zusammengefasst, soweit es um einen Antrag auf

!Invalid Character Setting



Eine Nichtpartei kann wegen Missachtung einer gerichtlichen Anordnung verurteilt werden. Es wurde Folgendes festgestellt: *"Dies ist eine Art von strafrechtlicher Missachtung, im Gegensatz zur Position des Antragsgegners der Anordnung (und derjenigen innerhalb der Body Corporate Provision), die eine zivilrechtliche Missachtung beinhaltet (Arlidge, Eady & Smith on Contempt (5th), [3-1301). In einem Fall, in dem es sich nicht um eine Partei handelt, ist es notwendig, den schwierigeren Test in Seaward gegen Paterson [1897] 1 Ch 545, 551 zu erfüllen: "dass eine Person wissentlich einen anderen, der durch eine Unterlassungsverfügung zurückgehalten wird, bei Handlungen unterstützt, die gegen die Unterlassungsverfügung verstoßen". In Z Ltd gegen AZ und AA-LL [1982] 1 WLR 558, 580, erklärte Eveleigh LJ: "Ein Dritter, der von den Bedingungen einer Unterlassungsverfügung Kenntnis hat, sollte nur dann haften, wenn er weiß, dass das, was er tut, einen Verstoß gegen die Bedingungen der Unterlassungsverfügung darstellt." In diesen Rechtssachen geht es um die Handlungen des Dritten, und in der Seaward ist klar, dass die bloße Anwesenheit als Zuschauer bei einem Boxkampf, der in Räumlichkeiten stattfand, die gegen eine Unterlassungsverfügung verstießen, nicht ausgereicht hätte, im Gegensatz zu den positiven Handlungen des Zeremonienmeisters, der den Verstoß "aktiv unterstützte".*

*Für Ich für meinen Teil bin nicht davon überzeugt, dass das bloße Versäumnis, einen Beklagten zur Befolgung einer Anordnung zu veranlassen, ausreicht, um eine Missachtung nach dem Seaward-Prinzip zu begründen (im Gegensatz zur Body Corporate Provision). Eine zweckmäßige und funktionale Auslegung des Begriffs "Direktoren oder andere leitende Angestellte" in der Body Corporate Provision sollte jedoch sicherstellen, dass in den allermeisten Fällen Einzelpersonen, die die Kontrolle über juristische Personen ausüben, auf der richtigen Seite der Kluft zwischen zivil- und strafrechtlicher Missachtung liegen. - Olympic Council of Asia gegen Novans Jets LLP & Ors [2023] EWHC 276 (Comm).*

In der Rechtssache **Create Financial Management LLP gegen Roger Lee, Karen Scott** Case No: QB 2020 002046 High Court of Justice Queen's Bench Division [2020] EWHC 2046 (QB), 2020 WL 04349912, erklärte Herr Richter Morris, dass: *"Von Rechts wegen kann eine dritte Partei in Bezug auf eine einstweilige Verfügung unter zwei Umständen das Gericht missachten (siehe Gee on Commercial Injunctions (6th edn) at §19-003):*

> *(1) wenn der Dritte wissentlich einen Verstoß gegen die Unterlassungsverfügung unterstützt: in diesem Fall muss ein Verstoß gegen die Unterlassungsverfügung durch den Beklagten vorliegen; oder*
> *(2) wenn der Dritte, der von der Anordnung Kenntnis hat, "etwas tut, was das Gericht an der beabsichtigten Prozessführung hindert" und dadurch die ordnungsgemäße Rechtspflege beeinträchtigt. Das kann unabhängig davon entstehen ob ein Verstoß gegen die*

**!Invalid Character Setting**



*Unterlassungsanordnung vorliegt. Dies ist der dargelegte Grundsatz in <u>Attorney General gegen Punch Ltd [2003] 1 AC 1046</u> von Lord Nicholls in den §§ 4, 39-40 und 47."*

In diesem Zusammenhang fallen die von Herrn Grzesiak vorgeschlagenen Personen eindeutig in die Kategorie der Unbeteiligten. Es ist klar, dass sie durch die Annahme der von ihnen vorgeschlagenen Ernennungen in die Vorstände der beklagten Unternehmen aktiv Beihilfe zur Verletzung der Verfügungen und der daraus resultierenden Missachtung des Gerichts leisten würden. Dies würde sie dem hier beschriebenen Verfahren wegen Missachtung des Gerichts aussetzen.

**Zustimmung der Antragsteller heilt die Missachtung nicht**

Es ist klar, dass Herr Grzesiak glaubt, dass die Antragsteller in den Anträgen auf Erlass einer einstweiligen Verfügung in Zypern das Recht haben, auf die Befolgung der einstweiligen Verfügungen in Zypern zu verzichten, oder dass er darüber informiert wurde. **Dies ist nicht der Fall.**

Allein die Tatsache, dass Herr Grzesiak die Tatsache erwähnt hat, dass die Antragsteller Verzichtserklärungen abgeben würden, macht deutlich, dass alle potenziellen Teilnehmer davon ausgehen, dass es zu einem Verstoß gegen die zypriotischen Unterlassungsverfügungen kommen wird, wenn die Vorschläge von Herrn Grzesiak umgesetzt werden. Unter diesen Umständen wird die Beschaffung einer Verzichtserklärung durch die Antragsteller die Missachtung nicht heilen.

Dies ist nicht die Situation einer vereinbarten "Ausgliederung", die zwischen einem Antragsteller und dem Antragsgegner einer einstweiligen Verfügung vereinbart werden kann. In der gegenwärtigen Situation sind sich die Antragsteller, Herr Grzesiak und alle potenziellen Teilnehmer an der Umsetzung der "Vorschläge" von Herrn Grzesiak nicht nur darüber im Klaren, dass der vom zypriotischen Gericht zwischen den Antragstellern und den Antragsgegnern in diesem vorläufigen Stadium des Verfahrens festgestellte Status quo beseitigt wird, sondern auch darüber, dass die Antragsteller die vom Gericht aufgrund ihres Antrags erlassenen einstweiligen Verfügungen aktiv untergraben würden.

Wir sind der festen Überzeugung, dass das zypriotische Gericht, das nach dem Common Law das Recht hat, ex proprio motu (aus eigenem Antrieb) zu handeln, um einen Verstoß gegen seine eigenen Anordnungen zu prüfen, und das auf jeden Fall von Ihnen und anderen aufgefordert werden wird, einen Verstoß gegen die zypriotischen Unterlassungsklagen zu prüfen, eine sehr düstere Sichtweise auf jede Partei haben wird, die versucht (wie Herr Grzesiak offensichtlich versucht einen Verstoß gegen die zypriotischen einstweiligen Anordnungen herbeizuführen, um den Klägern

**!Invalid Character Setting**

IOANNIDES
DEMETRIOU

tatsächlich eine Position zu sichern, die sie beim Gericht beantragt hatten, die das Gericht ihnen aber verweigerte.

Das heißt, dass die Antragstellerinnen in der Lage sind, den laufenden Betrieb der Tochter- und Enkelgesellschaften der TiVi- und Solkomtel-Stiftungen durch Handlungen, die die zyprischen Einstweiligen Verfügungen ausdrücklich verbieten, nämlich die Änderung der Zusammensetzung des Verwaltungsrats der beklagten Gesellschaften und im Fall von WBN zusätzlich die Änderung der der Gesellschaft, eine weitere Handlung, die die zyprischen Einstweiligen Verfügungen ausdrücklich verbieten, wirksam zu behindern, indem sie sich in einer Sackgasse befinden.

Dies, um eine Gleichheit der Stimmrechte in den Verwaltungsräten zwischen den ordnungsgemäß ernannten Verwaltungsratsmitgliedern zu schaffen, alle, wie oben zu sehen ist, vor dem Rechtsstreit, der vor den Gerichten Zyperns und Liechtensteins anhängig ist, ernannt wurden, und um den Verwaltungsräten der beklagten Gesellschaften Personen hinzuzufügen, die, Herr Grzesiak selbst zugibt, von Herrn Grzesiak nach Absprache mit den Zweitbegünstigten ausgewählt wurden.

**Untergrabung/Verletzung der "Clean Hands"-Verpflichtung des Antragstellers aus Billigkeitsgründen**

Eine solche Entwicklung würde nicht nur eine Missachtung des Gerichts darstellen, sondern auch einen Verstoß gegen die Billigkeitsverpflichtungen der Antragsteller gegenüber dem Gericht, das die zypriotischen einstweiligen Verfügungen erlassen hat.

Da der Erlass einer einstweiligen Verfügung ein Rechtsbehelf nach billigem Ermessen ist, obliegt es den Antragstellern, sich dem Gericht "mit sauberen Händen" zu nähern und sich dort stets zu präsentieren. Die Antragsteller würden eindeutig gegen die oben genannte Verpflichtung verstoßen, wenn sie in einer Weise handeln würden, die gegen die zypriotischen einstweiligen Verfügungen verstößt.

Wenn Herr Grzesiak der Meinung ist, dass sein Vorschlag gültig und vertretbar ist, sollte er nicht die vorgeschlagenen Schritte unternehmen, die eine Missachtung des Gerichts darstellen und die Stiftungen und die Direktoren der beklagten Unternehmen, die ebenfalls gegen die zypriotischen Einstweiligen Verfügungen verstoßen werden, der Gefahr einer Bestrafung wegen Missachtung des Gerichts aussetzen.

!Invalid Character Setting



Anstatt so zu handeln, wie er es vorschlägt, sollte Herr Grzesiak versuchen, das zypriotische Gericht entweder über den Stiftungsrat oder über seine Bevollmächtigten, die Antragsteller, davon zu überzeugen, die zypriotischen einstweiligen Verfügungen so zu ändern, dass die Änderungen in den Vorständen der oben genannten Unternehmen und im Falle von WBN auch die verbotene Änderung der Satzung dieses Unternehmens zulässig sind.

Wir sind der festen Überzeugung, dass es in Anbetracht der obigen Ausführungen höchst unwahrscheinlich wäre, dass das zypriotische Gericht einem solchen Antrag stattgibt, und es ist nicht unwahrscheinlich, dass ein solcher Antrag zur vollständigen Aufhebung der zypriotischen einstweiligen Verfügungen durch das Gericht führen würde, da die wahren Motive der Antragsteller eindeutig offengelegt würden.

**Öffentliche oder private Strafverfolgung**

Nach den oben dargelegten Feststellungen:

(i)     Die Gewissheit, dass die Umsetzung des Vorschlags von Herrn Grzesiak zu Verstoß gegen die zyprischen Unterlassungsklagen führen wird, und dass

(ii)    dass ein Verstoß gegen die zypriotischen Unterlassungsklagen durch die Beklagten (einschließlich der Stiftungen und der Mitglieder des Stiftungsrats, die für Maßnahmen stimmen, die einen Verstoß gegen die zypriotischen Unterlassungsklagen darstellen oder erleichtern würden) oder durch eine strafbare Missachtung darstellen würde,

Wir sind der Ansicht, dass eine Straftat begangen wurde, die vor einem Strafgericht zu verhandeln ist. Die Verfolgung einer solchen Straftat kann durch den Generalstaatsanwalt Zyperns auf eine bei ihm oder der Polizei eingereichte Anzeige hin oder durch eine Privatklage erfolgen, die von einer durch die Handlungen von Herrn Grzesiak geschädigten Privatperson angestrengt wird.

**!Invalid Character Setting**



Die Beklagten in einem etwaigen Strafverfahren wären die Klägerinnen, Herr Grzesiak und jedes
Mitglied des Stiftungsrats, das für den Vorschlag von Herrn Grzesiak stimmt oder ihn zulässt.
Grzesiak durch eine Handlung oder Duldung Antragsgegner der zypriotischen einstweiligen
Anordnungen umgesetzt werden soll.

Wir stehen Ihnen gerne für weitere Auskünfte zur Verfügung.

Mit freundlichen Grüßen,

[signature]

Andrew Demetriou

Ioannides Demetriou L.L.C.

(E-Mail: a.demetriou@idiaw.com.cy)

**!Invalid Character Setting**

442

5

Gorton Anton Ferdinand

| | |
|---|---|
| From: | Fabian Rischka |
| Sent: | Tuesday, April 22, 2025 2:30 PM |
| To: | Jakob Braun |
| Subject: | FW: Confidential - Not for Distribution: Legal Opinion - LEGALLY PRIVILEGED AND CONFIDENTIAL COMMUNICATION |

**From:** "George Z. Georgiou" <george@gzg.com.cy>
**Date:** 8 kwietnia 2025 o 22:53:30 CEST
**To:** Peter Schierscher <peter.schierscher@ritterschierscher.li>, Jarosław Grzesiak <jpgrzesiak@gmail.com>
**CC:** Tomasz Szelag <tomasz.szelag@arcesius.com.cy>, Christian Ritter <christian.ritter@ritterschierscher.li>, Romanos Loizides <romanos.loizides@gzg.com.cy>. Panayiotis Katsaprokkis <panayiotis.katsaprokkis@gzg.com.cy>
**Subject: RE: RE: Re: Confidential - Not for Distribution: Legal Opinion - LEGALLY PRIVILEGED AND CONFIDENTIAL COMMUNICATION**


Dear Peter,

1. I refer to our recent correspondence, our call today and your request to provide our high level comments on the contents of the legal opinion ("LO") of ID law dated 5th April 2025.
2. The LO of ID law was provided for the benefit of Mr. Zygmunt J. Solorz and opines on the lawfulness of the proposed appointment of two additional directors by the TIVI and Solkomtel Foundations on the Boards of Directors of the operating subsidiary companies as well as the amendment of the AoA of WBN.
3. The LO analyses why - in the opinion of ID Law - such an appointment, even with a waiver by the Applicants, would be unlawful and constitute contempt of Court. Moreover, it concludes that such an appointment could only be lawfully carried out by the Foundation, or the Applicants applying to the Cypriot Court to vary the issued orders (p.19 of the LO).
4. Having reviewed the LO carefully - focusing solely on the legal position as summarized above, and without expressing an opinion as the various other factual statements or conclusions included therein - we are off the opinion that the LO is correct. Once a Court issues an order, that order is binding on all persons affected by it, and it is not up to the Applicants to waive compliance with the order. The situation may be different where all parties consent, or for small derogations of everyday operational matters regulated by the order, but this is not the case here.
5. We also agree with ID Law that if the Foundations wish to proceed with the proposed changes the only way to do so is to apply to Court to vary the issued orders with notice to both sides, explaining clearly the rationale for doing so.

We remain at your disposal for any clarifications.

Best regards
George


**George Z. Georgiou** | Managing Partner
george@gzg.com.cy | DL. +357 22 763347 | M. +35799626186

443



George Z. Georgiou & Associates LLC
1 Iras Street, 1060 Nicosia
T.   +357 22 763340 | F. +357 22 763343 | info@gzg.com.cy



The preceding e-mail message (including any attachments) contains information that may be confidential, be protected by the lawyer-client or other applicable privileges, or constitute non-public It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from

Find out more about our regulatory information here | Locations

Please consider the environment before printing this email.

**From:** Peter Schierscher <peter.schierscher@ritterschierscher.li>
**Sent:** 08 April 2025 12:06
**To:** 'Jarosław Grzesiak' <jpgrzesiak@gmail.com>: George Z. Georgiou <george@gzg.com.cy>
**Cc:** Szelag Tomasz <tomasz.szelag@arcesius.com.cy>: Christian Ritter <christian.ritter@ritterschierscher.li>
**Subject:** RE: RE: Re: Confidential - Not for Distribution: Legal Opinion

Dear George, Jarek and Tomek

We should join the call at 4pm to discuss the LO.

Peter

**From:** Jarosław Grzesiak <jpgrzesiak@gmail.com>
**Sent:** Tuesday, April 8, 2025 9:02 AM
**To:** Peter Schierscher <peter.schierscher@ritterschierscher.li>; George Z. Georgiou <george@gzg.com.cy>
**Cc:** Szelag Tomasz <tomasz.szelag@arcesius.com.cy>: Christian Ritter <christian.ritter@ritterschierscher.li>
**Subject:** PD: RE: Re: Confidential - Not for Distribution: Legal Opinion

Dear Peter, George,
In reference to the below matter, when proposing to add two additional directors I have made the following comment on the freezing order which has been consulted with a Cyprus lawyer:

444

*"Given the existence of the freezing injunctions imposed by the Cyprus court, the Secondary Beneficiaries as the applicants, have agreed to grant consents for the contemplated changes and to waive the right to treat such corporate changes as in breach of the injunction orders. The waivers will be provided to our attention ahead of the board meeting."*

I have now received the said waivers - please see them attached. Considering that we plan to vote on the appointment of two additional directors in Cyprus companies on Thursday, 10 April, I would be grateful for George's views as soon as practicable. If anything is needed from my end, I would be happy to assist and/or join the call with George.

Kind regards,
Jarosław Grzesiak

---

From: george@gzg.com.cy
Sent: 7 kwietnia 2025 21:47
To: peter.schierscher@ritterschierscher.li
CC: tomasz.szelag@arcesius.com.cy; jpgrzesiak@gmail.com; christian.ritter@ritterschierscher.li
Subject: Re: Confidential - Not for Distribution: Legal Opinion

Dear Peter,

Thank you for your email.

I have gone through this quickly this evening, but to be able to provide you with a considered opinion we will need to also review the various emails/documents referred to in the LO and the email chain below. Could you please forward them to us?

Best regards
George

**George Z. Georgiou** | Managing Partner
george@gzg.com.cy | DL. +357 22 763347 | M. +35799626186
George Z. Georgiou & Associates LLC
1 Iras Street, 1060 Nicosia
T. +357 22 763340 | F. +357 22 763343 | info@gzg.com.cy

gzg.com.cy

The preceding e-mail message (including any attachments) contains information that may be confidential, be protected by the lawyer-client or other applicable privileges, or constitute non-public information.
It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.

Find out more about our regulatory information here | Locations
− Please consider the environment before printing this email.

On 7 Apr 2025, at 22:03, Peter Schierscher <peter.schierscher@ritterschierscher.li> wrote:

Dear George,

Today, I received the below email together with the attached LO.

Can you please advise me if the LO is correct. I'm available for a call tomorrow.

Kind regards,

Peter


Dr. Peter Schierscher LL.M.
Partner Notary

Gewerbeweg 5
P.O. Box 1622
FL-9490 Vaduz
Tel. 00423 265 33 44
Fax 00423 265 33 40
info@ritterschiersher.li
www.ritterschiersher.li

You can find our privacy policy at www.ritterschiersher.li.




**From:** Ott Simon <simon.ott@schurtipartners.com>
**Sent:** Monday, April 7, 2025 5:03 PM
**To:** Peter Schierscher <peter.schierscher@ritterschiersher.li>
**Cc:** 'Nikolaus Pitkowitz' <N.Pitkowitz@pitkowitz.com>: 'Peter Machherndl' <P.Machherndl@pitkowitz.com>
**Subject:** Confidential - Not for Distribution: Legal Opinion

Dear Peter,

I am writing further to our client's email to you and attach hereto a legal opinion requested from Ioannides Demetriou LLC of Nicosia, Cyprus, who represent our client in Cyprus. This legal opinion is covered by legal professional privilege which is not waived. Therefore this legal opinion should not be distributed by you to any third party other than George Z. Georgiou law firm who advise you in connection with the Cyprus proceedings.

Best,

Simon


Thinking Business. Knowing Law.

Simon Ott | Partner
Zollstrasse 2 | 9490 Vaduz | Liechtenstein
T: +41 44 244 2000 | M: +41 79 152 48 07
E: simon.ott@schurtipartners.com
www.schurtipartners.com

Liechtenstein Commercial Register | register number: FL-0002.490.382-4

This email and any attachments are confidential and may also be privileged. If you are not the named recipient, please do not disclose the contents to another person, do not use this email for any purpose or store or copy the information in any medium. Instead, please notify the sender by return email and delete this email (including any attachments) from your system. All incoming emails will automatically be scanned by us and by our Internet provider to eliminate spam emails. This could result in deletion of a legitimate email before it is read by its intended recipient at our firm. Emails may be intercepted, altered or read by unauthorized persons. If you send us messages by email, we take this as your acknowledgment of the aforementioned risks and your authorization to correspond with you by email.

Diese E-Mail und alle Anhänge sind vertraulich und können auch rechtlich geschützt sein. Wenn Sie nicht der namentlich genannte Empfänger sind, geben Sie den Inhalt bitte nicht an eine andere Person weiter, speichern und kopieren Sie den Inhalt auf keinem Medium oder verwenden Sie diese E-Mail für keinerlei Zwecke. Stattdessen ersuchen wir Sie, den Absender zu informieren und das E-Mail (einschließlich sämtlicher Anhänge) aus Ihrem System zu löschen. Alle eingehenden E-Mails werden von uns und unserem Internet-Provider automatisch gefiltert, um Spam-E-Mails zu löschen. Dies kann dazu führen, dass auch erwünschte E-Mails gelöscht werden, bevor der beabsichtigte Empfänger sie gelesen hat. E-Mails können von Unbefugten abgefangen, verändert oder gelesen werden. Wenn Sie uns Nachrichten per E-Mail senden, betrachten wir dies als Ihre ausdrückliche Kenntnisnahme der oben genannten Risiken sowie als Ihre Einwilligung, mit Ihnen per E-Mail zu korrespondieren.

447

*[Translator's note: There now follows the German version of the above email thread]*

**Od:** "George Z. Georgiou" <george@gzg.com.cy>
**Daten:** 8 kwietnia 2025 o 22:53:30 CEST
**Do:** Peter Schierscher <peter.schierscher@ritterschierscher.li>, Jarosław Grzesiak <jpgrzesiak@gmail.com>
**Dw:** Tomasz Szelag <tomasz.szelag@arcesius.com.cy>, Christian Ritter <christian.ritter@ritterschierscher.li>, Romanos Loizides <romanos.loizides@gzg.com.cy>. Panayiotis Katsaprokkis <panayiotis.katsaprokkis@gzg.com.cy>
**Temat: RE: RE: Re: Vertraulich - nicht zur Verbreitung: Rechtsgutachten - RECHTLICH GESCHÜTZTE UND VERTRAULICHE KOMMUNIKATION**

Lieber Peter,

1. Ich beziehe mich auf unsere jüngste Korrespondenz, unser heutiges Telefonat und Ihr Ersuchen, unsere hochrangigen Kommentare zum Inhalt des Rechtsgutachtens ("LO") von ID law vom 5th April 2025 abzugeben.

2. Die LO des ID-Gesetzes wurde Herrn Zygmunt J. Solorz zur Verfügung gestellt und äußert sich zur Rechtmäßigkeit der vorgeschlagenen Ernennung von zwei zusätzlichen Direktoren durch die TIVI- und Solkomtel-Stiftungen in den Verwaltungsräten der operativen Tochtergesellschaften sowie zur Änderung des Gesellschaftsvertrags von WBN.

3. Das LO analysiert, warum - nach Ansicht von ID Law - eine solche Ernennung, selbst bei einem Verzicht der Antragsteller, rechtswidrig wäre und eine Missachtung des Gerichts darstellen würde. Darüber hinaus kommt es zu dem Schluss, dass eine solche Ernennung nur durch die Stiftung oder durch die Antragsteller, die beim zypriotischen Gericht eine Änderung der erlassenen Anordnungen beantragen, rechtmäßig durchgeführt werden könnte (S.19 des LO).

4. Nach sorgfältiger Prüfung der LO - wobei wir uns ausschließlich auf die oben zusammengefasste Rechtslage konzentrieren, ohne uns zu den verschiedenen anderen darin enthaltenen Tatsachenbehauptungen oder Schlussfolgerungen zu äußern - sind wir der Meinung, dass die LO korrekt ist. Sobald ein Gericht einen Beschluss erlässt, ist dieser Beschluss für alle davon betroffenen Personen verbindlich, und es steht den Antragstellern nicht zu, auf die Einhaltung des Beschlusses zu verzichten. Die Situation mag anders sein, wenn alle Parteien zustimmen, oder bei geringfügigen Ausnahmen von alltäglichen betrieblichen Angelegenheiten, die in der Anordnung geregelt sind, aber das ist hier nicht der Fall.

5. Wir stimmen auch mit ID Law darin überein, dass, wenn die Stiftungen mit den vorgeschlagenen Änderungen fortfahren wollen, die einzige Möglichkeit darin besteht, bei Gericht eine Änderung der erlassenen Anordnungen zu beantragen, wobei beide Seiten zu benachrichtigen sind und die Gründe für die Änderung klar darzulegen sind.

Wir stehen Ihnen für weitere Auskünfte gerne zur

Verfügung. Mit freundlichen Grüßen
George

**George Z. Georgiou** | Geschäftsführender Gesellschafter
george@gzg.com.cy|DL. +357 22 763347| M. +35799626186



George Z. Georgiou & Associates LLC

Iras-Straße 1, 1060 Nicosia

T.   +357 22 763340 | F. +357 22 763343 | info@gzg.com.cy

    

Die vorstehende E-Mail-Nachricht (einschließlich aller Anhänge) enthält Informationen, die möglicherweise vertraulich sind, dem Anwaltsgeheimnis oder anderen geltenden Privilegien geschützt sind oder nicht-öffentliche Informationen darstellen. Sie ist nur für der/die angegebenen Empfänger bestimmt. Wenn Sie nicht zu den vorgesehenen Empfängern dieser Nachricht gehören, benachrichtigen Sie bitte den Absender, indem Sie auf diese Nachricht antworten, und löschen Sie sie dann aus Ihrem Computer.

Weitere Informationen über unsere Rechtsvorschriften finden Sie hier! Standorte

Bitte denken Sie an die Umwelt, bevor Sie diese E-Mail ausdrucken.

**Von:** Peter <peter.schierscher@ritterschierscher.li>
**Gesendet:** 08 April 2025 12:06
**An:** 'Jarosław Grzesiak' <jpgrzesiak@gmail.com>: George Z. <george@gzg.com.cy>
**Cc:** Szelag Tomasz <tomasz.szelag@arcesius.com.cy>: Christian Ritter <christian.ritter@ritterschierscher.li>
**Betreff:** AW: RE: Re: Vertraulich - nicht zur Verbreitung: Rechtsgutachten

Lieber George, Jarek und Tomek

Wir sollten uns um 16.00 Uhr der Telefonkonferenz

anschließen, um den LO zu diskutieren. Peter

**Von:** Jarosław <jpgrzesiak@gmail.com>
**Gesendet:** Dienstag, 8. April 2025 09:02
**An:** Peter Schierscher <peter.schierscher@ritterschierscher.li>; George Z. Georgiou <george@gzg.com.cy>
**Cc:** Szelag Tomasz <tomasz.szelag@arcesius.com.cy>: Christian Ritter <christian.ritter@ritterschierscher.li>
**Betreff:** PD: RE: Re: Confidential - Not for Distribution: Legal Opinion

Lieber Peter, George,
In Bezug auf die nachstehende Angelegenheit habe ich, als ich vorschlug, zwei zusätzliche Direktoren hinzuzufügen, die folgende Bemerkung zur Sicherstellungsanordnung gemacht, die mit einem zypriotischen Anwalt abgesprochen wurde:

449

*"In Anbetracht der vom zypriotischen Gericht verhängten Einstweiligen Verfügungen haben die Zweitbegünstigten als Antragsteller zugestimmt, ihre Zustimmung zu den geplanten Änderungen zu erteilen und auf das Recht zu verzichten, diese Unternehmensänderungen als Verstoß gegen die Verfügungen behandeln. Die Verzichtserklärungen werden uns noch vor der Verwaltungsratssitzung zur Kenntnis gebracht.*

Ich habe nun die besagten Verzichtserklärungen erhalten - bitte sehen Sie sie im Anhang. In Anbetracht der Tatsache, dass wir am Donnerstag, den 10. April, über die Ernennung von zwei zusätzlichen Direktoren in zypriotischen Unternehmen abstimmen wollen, wäre ich dankbar für Georges Meinung, sobald dies praktikabel ist. Sollte von meiner Seite etwas benötigt werden, bin ich gerne bereit, George zu unterstützen und/oder an dem Gespräch teilzunehmen.

Mit freundlichen
Grüßen, Jarosław
Grzesiak

---

**Od:** ggeorge@gzg.com.cy **Wysłano:**
7 kwietnia 2025 21:47
**Machen:** peter.schierscher@ritterschierscher.li
**DW:** tomasz.szelag@arcesius.com.cy;pgrzesiak@gmail.com;christian.ritter@ritterschierscher.li
**Temat:** Re: Vertraulich - Nicht zur Verbreitung: Rechtsgutachten

Lieber Peter,

Vielen Dank für Ihre E-Mail.

Ich das heute Abend schnell durchge, aber um Ihnen eine fundierte Stellungnahme geben zu können, müssen wir auch die verschiedenen E-Mails/Dokumente prüfen, auf die in der LO und in der E-Mail-Kette unten Bezug genommen wird. Könnten Sie diese bitte an uns weiterleiten?

Mit freundlichen
Grüßen George

**George Z. Georgiou** | Geschäftsführender Gesellschafter
george@gzg.com.cy|DL. +357 22 763347| M. +35799626186
George Z. Georgiou & Associates LLC
Iras-Straße 1, 1060 Nicosia
T. +357 22 763340 | F. +357 22 763343 | info@gzg.com.cy

gzg.com.cy

Die vorstehende E-Mail-Nachricht (einschließlich aller Anhänge) enthält Informationen, die möglicherweise vertraulich sind, dem Anwaltsgeheimnis oder anderen geltenden Privilegien unterliegen oder nichtöffentliche Informationen darstellen.
It is intended solely for the named recipient(s). Wenn Sie nicht zu den vorgesehenen Empfängern dieser Nachricht gehören, benachrichtigen Sie bitte den Absender, indem Sie auf diese Nachricht antworten, und löschen Sie sie dann aus Ihrem System.
Further information about our legal notices can be found here! Locations
– Bitte denken Sie an die Umwelt, bevor Sie diese E-Mail ausdrucken.

Am 7. April 2025, um 22:03 Uhr, schrieb Peter Schierscher
<peter.schierscher@ritterschierscher.li>

Lieber George,

Heute erhielt ich die nachstehende E-Mail zusammen mit dem beigefügten LO.

Können Sie mir bitte mitteilen, ob der LO korrekt ist. Ich bin morgen für einen Anruf

verfügbar. Mit freundlichen Grüßen,

Peter

Dr. Peter Schierscher LL.M. Partner
Notar

Gewerbeweg 5
P.O. Box 1622
FL-9490 Vaduz
Tel. 00423 265 33 44
Fax 00423 265 33 40
info@ritterschierscher.li
www.ritterschierscher.li

Sie finden unsere Datenschutzbestimmungen unter www.ritterschierscher.li.

**Von:** Ott <simon.ott@schurtipartners.com>
**Gesendet:** Montag, 7. April 2025 17:03
**An:** Peter <peter.schierscher@ritterschierscher.li>
**Cc:** "Nikolaus Pitkowitz"<N.Pitkowitz@pitkowitz.com >; "Peter Machherndl
<P.Machherndl@pitkowitz.com>
**Betreff:** Vertraulich - Nicht zur Verbreitung: Rechtsgutachten

Dear Peter,

Ich schreibe Ihnen im Anschluss an die E-Mail unserer Mandantin und füge ein Rechtsgutachten bei, das
von Ioannides Demetriou LLC aus Nikosia, Zypern, angefordert wurde, die unsere Mandantin in Zypern
vertritt. Dieses Rechtsgutachten unterliegt dem Anwaltsgeheimnis, auf das nicht verzichtet werden kann.
Daher sollte dieses Rechtsgutachten von Ihnen nicht an Dritte weitergegeben werden, außer an die
Anwaltskanzlei George Z. Georgiou, die Sie im Zusammenhang mit dem Verfahren in Zypern berät.

Bester

,

Simon

Wirtschaftlich denken. Knowing Law.

Simon Ott | Partner
Zollstrasse 2 | 9490 Vaduz | Liechtenstein T: +41
44 244 2000 | M: +41 79 152 48 07
E: simon.ott@schurtipartners.com
www.schurtipartners.com

Handelsregister Liechtenstein| Registernummer: FL-0002.490.382-4

Diese E-Mail und alle Anhänge sind vertraulich und können auch vertraulich sein Wenn Sie nicht der genannte Empfänger sind, geben Sie den Inhalt bitte
nicht an andere Personen weiter, verwenden Sie diese E-Mail nicht für andere Zwecke und speichern oder kopieren Sie die Informationen auf keinem
Medium Bitte benachrichtigen Sie stattdessen den Absender per E-Mail und löschen Sie diese E-Mail (einschließlich aller Anhänge) von Ihrem System Alle
eingehenden E-Mails werden von uns und unserem Internet-Provider automatisch gescannt, um Spam-E-Mails auszuschließen Dies kann zur Folge haben,
dass eine legitime E-Mail gelöscht wird, bevor sie von ihrem Empfänger in unserem Hause gelesen wird.

Firma E-Mails können von unbefugten Personen abgefangen, verändert oder gelesen werden Wenn Sie uns Nachrichten per E-Mail senden, betrachten wir dies als Ihre Anerkennung der oben genannten Risiken und Ihre Erlaubnis, mit Ihnen per E-Mail zu korrespondieren.

Diese E-Mail und alle Anhänge sind vertraulich und können auch rechtlich geschützt sein Wenn Sie nicht der namentlich genannte Empfänger sind, geben Sie den Inhalt bitte nicht an eine andere Person weiter, speichern und kopieren Sie den Inhalt auf keinem Medium oder verwenden Sie diese E- Mail für keinerlei Zwecke. Stattdessen ersuchen wir Sie den Absender zu informieren und das E-Mail (einschliesslich sämtlicher Anhänge) aus Ihrem System zu löschen. Alle eingehenden E-Mails werden von uns und unserem Internet-Provider automatisch gefiltert, um Spam E-Mails zu löschen Dies kann dazu führen, dass auch erwünschte E-Mails gelöscht werden, bevor der beabsichtigte Empfänger sie gelesen hat. E-Mails können von Unbefugten abgefangen, verändert oder gelesen werden Wenn Sie uns Nachrichten per E-Mail senden, betrachten wir dies als Ihre ausdrückliche Kenntnisnahme der oben genannten Risiken sowie als Ihre Einwilligung, mit Ihnen per E-Mail zu korrespondieren

6a

# MINUTES

of the meeting of the board of *TiVi Foundation*
on 10 April 2025 at 10.20 am at the office of
Ritter Schierscher Rechtsanwälte AG, Gewerbeweg 5, 9490 Vaduz

---

<u>Participants:</u>

**Jarosław Grzesiak**
Tomasz Szelag
Dr. Peter Schierscher

Zygmunt Solorz was invited to participate via video-call. He does not join the meeting.

1)  <u>Appointment of Chairman and Secretary</u>

Peter Schierscher is elected as chairman and Petra Rohrer as secretary.

2)  <u>Approval of the minutes dated December 4, 2024</u>

The chairman states that the approval of the minutes from December 4, 2024, is no longer necessary, as the foundation board members unanimously resolved to approve these minutes during the last board meeting.

3)  <u>Discussion and resolution on the appointment by the Foundation as the Sole Member of Reddev Investments Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 330471 (the "Reddev"), of two additional directors of Reddev</u>

Peter Schierscher points out that the appointment of two additional directors of Reddev by the Foundation would violate the Cyprus Interim Order currently in place, as confirmed by the Foundation's Cyprus legal counsel. The lawyer advised that such an appointment would only be permissible if the Interim Order was formally varied by the court.

453

2

Furthermore, Mr. Schierscher reminds the Foundation board that it had unanimously resolved on December 4, 2024, to appoint legal counsel for the ongoing proceedings in Cyprus. The appointed counsel was instructed to act in a neutral and passive capacity while remaining obligated to protect the rights of the Foundation and its subsidiaries.

Mr. Schierscher reiterates the fiduciary duty of the Foundation board to act prudently and ensure that Reddev and other underlying entities are not exposed to risk. He warns that the board could face personal liability should any damage occur because of disregarding the concerns raised by the all the beneficiaries.

Mr. Grzesiak adds that it is the board's obligation to protect the Foundation and its subsidiaries from harm, including the dispersion of assets. He notes that the existing injunction could be easily circumvented, thereby posing a risk. Consequently, he proposes instructing the Cyprus lawyer to apply for a variation of the injunction to enable the appointment of additional directors at Reddev. These directors would be tasked with monitoring the situation and preventing the dissipation of assets in circumvention of the Cyprus Interim Order.

Mr. Szelag, however, argues that neither the Foundation nor its subsidiaries have suffered any harm to date and the foundation should stay neutral in Cyprus. He opposes the proposal to instruct the Cyprus lawyer to seek a variation of the injunction. He strongly objects to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Reddev.

Mr. Schierscher adds that the Foundation remains neutral in the proceedings in Cyprus. He emphasizes that the Foundation Board is fulfilling its obligations by acting prudently and in good faith to prevent any potential harm to Reddev, especially in light of the concerns that have been raised. The board's actions are not a deviation from its neutral stance, but rather a reflection of its duty to protect the interests of Reddev and the Foundation's subsidiaries.

After deliberation, the board unanimously decides not to appoint two additional directors of Reddev at this stage, to remain in compliance with the Cyprus Interim Order.

2

[Signature]

454

3

To proceed in alignment with the legal framework, the members of the board resolve by majority vote—with Mr. Grzesiak and Mr. Schierscher in favor, and Mr. Szelag opposed—to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Reddev.

4)  Discussion and resolution on the planned Netia S.A. infrastructure spin off transaction

Tomasz Szelag presents the Netia S.A. infrastructure spin off transaction. He explains that TiVi Foundation will be the sole shareholder of Netia S.A. II. Furthermore, he explains that the economic benefits of the planned transaction. The Foundation's right in the new company will be the same as in Netia S.A. A shareholder's agreement is going to be signed between the Foundation and Cyfrowy Polsat in order that the Foundation has the same rights as it has now.

Mr. Grzesiak asks for more information and Mr. Szelag promises to give detailed information to Mr. Grzesiak.

The Foundation Board decides to postpone the resolution regarding the spin-off to the next meeting.

5)  Delivery address for Peter Schierscher in Poland

Peter Schierscher points out the there is no agreement by Mr. Solorz and the second beneficiaries as who should be acting as agent for delivering

Since there is no agreement between Mr. Solorz and the second beneficiaries Peter Schierscher decides to appoint Baker McKenzie **Krzyżowski i Wspólnicy sp. k. as delivery address.**

6)  Discussing and passing resolutions on the invoices from AF Trustees

Regarding the invoices of AF Trustees decided not to pay for the work they did with regards to the legal dispute as there was no board resolution for this.

3

[Signature]

4

The members of the board decide unanimously to postpone the resolution on this item.

7) <u>Varia</u>

    a) Mr. Szelag informs the foundation board about the economic background of the planned PAK PCE transaction.

    b) Mr. Szelag asks for the UBO statement for Netia S.A. Mr. Schierscher prepares a draft UBO statement and circulates them among the board members.

    c) Mr. Grzesiak asks for the UBO statement for TV Polsat. Mr. Schierscher prepares a draft UBO statement and circulates them among the board members.

    d) Mr. Szelag asks for a new commercial register extract of the foundation and asks for a letter explaining that Mr. Grzesiak was appointed as board member of the foundation.

    e) The foundation board resolves that all payments are prepared by the foundation board member Peter Schierscher.

    f) Mr. Szelag informs about PILLAR II.

As there are no other items on the agenda, the meeting is closed at 11.35 am.

Vaduz, 10 April 2025

[Signature]_____    [Signature]_____
Peter Schierscher                 Petra Rohrer
(Chairman)                     (Secretary)

[Signature]

Working session

*[Translator's note: There now follows the German version of the above minutes]*

**MINUTES**

der Sitzung des Vorstands der TiVi Stiftung am 10.
April 2025 um 10.20 Uhr im Büro der
Ritter Schierscher Rechtsanwälte AG, Gewerbeweg 5, 9490 Vaduz

---

Teilnehmer:

**Jaroslaw Grzesiak Tomasz
Szelag
Dr. Peter Schierscher**

Zygmunt Solorz wurde zur Teilnahme per Videoanruf eingeladen. Er nimmt nicht an der Sitzung teil.

**1)      Ernennung des Vorsitzenden und des Sekretärs**

Peter Schierscher wird zum Vorsitzenden und Petra Rohrer zur Schriftführerin gewählt.

**2)      Genehmigung des Protokolls vom 4. Dezember 2024**

Der Vorsitzende stellt fest, dass die Genehmigung des Protokolls vom 4. Dezember 2024 nicht mehr erforderlich ist, da die Mitglieder des Stiftungsrates in der letzten Sitzung einstimmig beschlossen haben, dieses Protokoll zu genehmigen.

3)      <u>Diskussion und Beschlussfassung über die Ernennung von zwei zusätzlichen Direktoren von Reddev durch die Stiftung als einziges Mitglied von Reddev Investments Limited, einer Gesellschaft mit beschränkter Haftung, die beim Re istrar of Companies of the Reuplcib of Cyprus unter der Nummer HE 330471 bthe "Reddev" registriert ist.</u>

Peter Schierscher weist darauf hin, dass die Ernennung von zwei zusätzlichen Direktoren von Reddev durch die Stiftung gegen die derzeit geltende zypriotische Einstweilige Verfügung verstoßen würde, wie der zypriotische Rechtsbeistand der Stiftung bestätigt. Der Anwalt wies darauf hin, dass eine solche Ernennung nur zulässig wäre, wenn die einstweilige Verfügung vom Gericht formell geändert würde.

[Signature]

2

Darüber hinaus erinnert Herr Schierscher den Stiftungsrat daran, dass dieser am 4. Dezember 2024 einstimmig beschlossen hat, einen Rechtsbeistand für das laufende Verfahren in Zypern zu bestellen. Der beauftragte Anwalt wurde angewiesen, sich neutral und passiv zu verhalten, ist aber verpflichtet, die Rechte der Stiftung und ihrer Tochtergesellschaften zu wahren.

*Herr* Schierscher bekräftigt die treuhänderische Pflicht des Stiftungsrats, umsichtig zu handeln und sicherzustellen, dass Reddev und andere zugrunde liegende Einrichtungen keinen Risiken ausgesetzt werden. Er warnt davor, dass der Vorstand persönlich haftbar gemacht werden könnte, wenn ein Schaden entsteht, weil er die Bedenken aller Begünstigten missachtet.

Herr Grzesiak fügt hinzu, dass es die Pflicht des Vorstands ist, die Stiftung und ihre Tochtergesellschaften vor Schaden zu bewahren, einschließlich der Streuung von As- ten. Er stellt fest, dass die bestehende Unterlassungsverfügung leicht umgangen werden könnte und somit ein Risiko darstellt. Daher schlägt er vor, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei Reddev zu ermöglichen. Diese Direktoren hätten die Aufgabe, die Situation zu überwachen und zu verhindern, dass Vermögenswerte unter Umgehung der zyprischen einstweiligen Verfügung veräußert werden.

Herr Szelag argumentiert jedoch, dass weder die Stiftung noch ihre Tochtergesellschaften bisher irgendeinen Schaden erlitten haben und die Stiftung in Zypern neutral bleiben sollte. Er spricht sich gegen den Vorschlag aus, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen. Er spricht sich nachdrücklich dagegen aus, den zypriotischen Anwalt der Stiftung zu beauftragen, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren für Reddev zu ermöglichen.

Herr Schierscher fügt hinzu, dass die Stiftung bei den Vorgängen in Zypern neutral bleibt. Er betont, dass der Stiftungsrat seinen Verpflichtungen nachkommt, indem er umsichtig und in gutem Glauben handelt, um möglichen Schaden von Reddev abzuwenden, insbesondere im Hinblick auf die geäußerten Bedenken. Das Vorgehen des Stiftungsrats ist keine Abweichung von seiner neutralen Haltung, sondern vielmehr Ausdruck seiner Pflicht, die Interessen von Reddev und den Tochtergesellschaften der Stiftung zu schützen.

Nach Beratungen beschließt der Verwaltungsrat einstimmig, zum jetzigen keine zwei zusätzlichen Direktoren von Reddev zu ernennen, um der zypriotischen Interimsverordnung zu entsprechen.

[Signature]

458

3

Um den rechtlichen gerecht zu werden, beschließen die Mitglieder des Vorstands mehrheitlich - mit den Stimmen von Pm. Grzesiak und Herr Schierscher dafür und Herr Szelag dagegen - den Anwalt der Stiftung in Zypern zu beauftragen, bei Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei Reddev zu ermöglichen.

4)    Diskussion und Beschlussfassung über die geplante Netia S.A. infrastrukturelle Ausgliederungstransaktion

Tomasz Szelag stellt die Netia S.A.-Infrastruktur-Abspaltung vor. Er erklärt, dass die TiVi Stiftung alleinige Aktionärin von Netia S.A. II sein wird. Des Weiteren erklärt er, dass die wirtschaftlichen Vorteile der geplanten Transaktion. Die Stiftung wird in der neuen Gesellschaft die gleichen Rechte haben wie in der Netia S.A. wird ein Aktionärsvertrag zwischen der Stiftung und Cyfrowy Polsat unterzeichnet, so dass die Stiftung die gleichen Rechte hat wie jetzt.

Herr Grzesiak bittet um weitere Informationen und Herr Szelag verspricht, Plr. Grzesiak zu geben.

Der Stiftungsrat beschließt, die Beschlussfassung über die Ausgliederung auf die nächste Sitzung zu verschieben.

5)    Lieferadresse für Peter Schierscher in Polen

Peter Schierscher weist darauf hin, dass zwischen PMr. Solorz und den Zweitbegünstigten keine Einigung darüber besteht, wer als Zustellungsbevollmächtigter fungieren soll.

Da es keine Vereinbarung zwischen Herrn Solorz und den Zweitbegünstigten gibt, beschließt Peter Schierscher, Baker McKenzie Krzyżowski i Wspólnicy sp. k. als Zustelladresse zu benennen.

6)    Erörterung und Beschlussfassung über die Rechnungen der AF Trustees

Bezüglich der Rechnungen von AF beschlossen die Treuhänder die Arbeit die sie im Zusammenhang mit dem Rechtsstreit geleistet haben nieht zu bezahlen, da es dafür keinen Vorstandsbeschluss gab.

[Signature]

459

4

Die Mitglieder des Verwaltungsrats beschließen einstimmig, Beschlussfassung über diesen Punkt zu vertagen.

7)  <u>Varia</u>

    a) Herr Szelag informiert den Stiftungsrat über die wirtschaftlichen Hintergründe der geplanten PAK PCE Transaktion.

    b) Herr Szelag bittet um die UBO-Erklärung für Netia S.A. Herr Schierscher bereitet einen Entwurf der UBO-Erklärung vor und verteilt sie unter den Vorstandsmitgliedern.

    c) Herr Grzesiak fragt nach der UBO-Erklärung für TV Polsat. Herr Schierscher bereitet einen Entwurf der UBO-Erklärung vor und verteilt sie an die Vorstandsmitglieder.

    d) *Herr* Szelag bittet um einen neuen Handelsregisterauszug der foun- und bittet um ein Schreiben, in dem erklärt wird, dass Herr Grzesiak als Vorstandsmitglied der Stiftung angefragt wurde.

    e) Der Stiftungsrat beschließt, dass alle Zahlungen durch das Stiftungsratsmitglied Peter Schierscher vorbereitet werden.

    f) Herr Szelag informiert über PILLAR II.

Da keine weiteren Punkte auf der Tagesordnung stehen, wird die Sitzung um 11.35 Uhr geschlossen.

Vaduz, 10. April 2025

[Signature]_____          [Signature]_____
Peter Schierscher                                   Petra Rohrer
(Vorsitzender)                                        (Sekretärin)

4

[Signature]

6b

MINUTES
of the meeting of the board of Solkomtel Foundation
on 10 April 2025 at 12.05 pm at the office of Ritter Schierscher
Rechtsanwälte AG, Gewerbeweg 5, 9490 Vaduz

---

Participants:

Jaroslaw Grzesiak
Tomasz Szelag
Dr. Peter Schierscher

Zygmunt Solorz was invited to participate via video-call. He does not join the meeting.

1)  Appointment of Chairman and Secretary

Peter Schierscher is elected as chairman and Petra Rohrer as secretary.

2)  Approval of the minutes dated 4 December 2024

The chairman states that the approval of the minutes from December 4, 2024, is no longer necessary, as the foundation board members unanimously resolved to approve these minutes during the last board meeting.

3)  Discussion and resolution on the appointment by the Foundation as the Sole Member of Stasalco Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 372875 (the "Stasalco"), of two additional directors of the Company

Peter Schierscher points out that the appointment of two additional directors of Stasalco by the Foundation would violate the Cyprus Interim Order currently in place, as confirmed by the Foundation's Cyprus legal counsel. The lawyer advised that such an appointment would only be permissible if the Interim Order was formally varied by the court.

[Signature]
461

2

Furthermore, Mr. Schierscher reminds the Foundation board that it had unanimously resolved on December 4, 2024, to appoint legal counsel for the ongoing proceedings in Cyprus. The appointed counsel was instructed to act in a neutral and passive capacity while remaining obligated to protect the rights of the Foundation and its subsidiaries.

Mr. Schierscher reiterates the fiduciary duty of the Foundation board to act prudently and ensure that Stasalco and other underlying entities are not exposed to risk. He warns that the board could face personal liability should any damage occur because of disregarding the concerns raised by all the beneficiaries.

Mr. Grzesiak adds that it is the board's obligation to protect the Foundation and its subsidiaries from harm, including the dispersion of assets. He notes that the existing injunction could be easily circumvented, thereby posing a risk. Consequently, he proposes instructing the Cyprus lawyer to apply for a variation of the injunction to enable the appointment of additional directors at Stasalco. These directors would be tasked with monitoring the situation and preventing the dissipation of assets in circumvention of the Cyprus Interim Order.

Mr. Szelag, however, argues that neither the Foundation nor its subsidiaries have suffered any harm to date and the foundation should stay neutral in Cyprus. He opposes the proposal to instruct the Cyprus lawyer to seek a variation of the injunction. He strongly objects to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Stasalco.

Mr. Schierscher adds that the Foundation remains neutral in the proceedings in Cyprus. He emphasizes that the Foundation Board is fulfilling its obligations by acting prudently and in good faith to prevent any potential harm to Stasalco, especially in light of the concerns that have been raised. The board's actions are not a deviation from its neutral stance, but rather a reflection of its duty to protect the interests of Stasalco and the Foundation's subsidiaries.

After deliberation, the board unanimously decides not to appoint two additional directors of Stasalco at this stage, in order to remain in compliance with the Cyprus Interim Order.

2

[Signature]

462

3

To proceed in alignment with the legal framework, the members of the board resolve by majority vote—with Mr. Grzesiak and Mr. Schierscher in favor, and Mr. Szelag opposed—to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Stasalco.

4)  <u>Discussion and resolution on the appointment by the Foundation as the Sole Member of Karswell Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 229808 (the "Karswell"), of two additional directors of the Company</u>

Peter Schierscher points out that the appointment of two additional directors of Karswell by the Foundation would violate the Cyprus Interim Order currently in place, as confirmed by the Foundation's Cyprus legal counsel. The lawyer advised that such an appointment would only be permissible if the Interim Order was formally varied by the court.

Furthermore, Mr. Schierscher reminds the Foundation board that it had unanimously resolved on December 4, 2024, to appoint legal counsel for the ongoing proceedings in Cyprus. The appointed counsel was instructed to act in a neutral and passive capacity while remaining obligated to protect the rights of the Foundation and its subsidiaries.

Mr. Schierscher reiterates the fiduciary duty of the Foundation board to act prudently and ensure that Karswell and other underlying entities are not exposed to risk. He warns that the board could face personal liability should any damage occur because of disregarding the concerns raised by all the beneficiaries.

Mr. Grzesiak adds that it is the board's obligation to protect the Foundation and its subsidiaries from harm, including the dispersion of assets. He notes that the existing injunction could be easily circumvented, thereby posing a risk. Consequently, he proposes instructing the Cyprus lawyer to apply for a variation of the injunction to enable the appointment of additional directors at Karswell. These directors would be tasked with monitoring the situation and preventing the dissipation of assets in circumvention of the Cyprus Interim Order.

3

[Signature]

4

Mr. Szelag, however, argues that neither the Foundation nor its subsidiaries have suffered any harm to date and the foundation should stay neutral in Cyprus. He opposes the proposal to instruct the Cyprus lawyer to seek a variation of the injunction. He strongly objects to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Karswell.

Mr. Schierscher adds that the Foundation remains neutral in the proceedings in Cyprus. He emphasizes that the Foundation Board is fulfilling its obligations by acting prudently and in good faith to prevent any potential harm to Karswell, especially in light of the concerns that have been raised. The board's actions are not a deviation from its neutral stance, but rather a reflection of its duty to protect the interests of Karswell and the Foundation's subsidiaries.

After deliberation, the board unanimously decides not to appoint two additional directors of Karswell at this stage, in order to remain in compliance with the Cyprus Interim Order.

To proceed in alignment with the legal framework, the members of the board resolve by majority vote—with Mr. Grzesiak and Mr. Schierscher in favor, and Mr. Szelag opposed—to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Karswell.

5) <u>Discussion and resolution on amending the Articles of Association of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 ("WBN") regarding the Regulation 83 and the Regulation 99</u>

Peter Schierscher points out that amending the Articles of Association of WBN Holdings Limited by the Foundation would violate the Cyprus Interim Order currently in place, as confirmed by the Foundation's Cyprus legal counsel. The lawyer advised that such amendment would only be permissible if the Interim Order was formally varied by the court.

Furthermore, Mr. Schierscher reminds the Foundation board that it had unanimously resolved on December 4, 2024, to appoint

4

[Signature]

464

5

legal counsel for the ongoing proceedings in Cyprus. The appointed counsel was instructed to act in a neutral and passive capacity while remaining obligated to protect the rights of the Foundation and its subsidiaries.

Mr. Schierscher reiterates the fiduciary duty of the Foundation board to act prudently and ensure that WBN and other underlying entities are not exposed to risk. He warns that the board could face personal liability should any damage occur because of disregarding the concerns raised by the second beneficiaries.

Mr. Grzesiak adds that it is the board's obligation to protect the Foundation and its subsidiaries from harm, including the dispersion of assets. He notes that the existing injunction could be easily circumvented, thereby posing a risk. Consequently, he proposes instructing the Cyprus lawyer to apply for a variation of the injunction to enable amending the Articles of Association of WBN in order to appoint additional directors. These directors would be tasked with monitoring the situation and preventing the dissipation of assets in circumvention of the Cyprus Interim Order.

Mr. Szelag, however, argues that neither the Foundation nor its subsidiaries have suffered any harm to date and the foundation should stay neutral in Cyprus. He opposes the proposal to instruct the Cyprus lawyer to seek a variation of the injunction. He strongly objects to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to WBN.

Mr. Schierscher adds that the Foundation remains neutral in the proceedings in Cyprus. He emphasizes that the Foundation Board is fulfilling its obligations by acting prudently and in good faith to prevent any potential harm to WBN, especially in light of the concerns that have been raised. The board's actions are not a deviation from its neutral stance, but rather a reflection of its duty to protect the interests of WBN and the Foundation's subsidiaries.

After deliberation, the board unanimously decides not to amending the Articles of Association of WBN at this stage, to remain in compliance with the Cyprus Interim Order.

To proceed in alignment with the legal framework, the members of the board resolve by majority vote—with Mr. Grzesiak and

5

[Signature]

465

6

Mr. Schierscher in favor, and Mr. Szelag opposed—to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable amending the Articles of Association of WBN.

6) <u>Discussion and resolution on the appointment by the Foundation as the Sole Member of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 (the "WBN"), of two additional directors of the Company</u>

Peter Schierscher points out that the appointment of two additional directors of WBN by the Foundation would violate the Cyprus Interim Order currently in place, as confirmed by the Foundation's Cyprus legal counsel. The lawyer advised that such an appointment would only be permissible if the Interim Order was formally varied by the court.

Furthermore, Mr. Schierscher reminds the Foundation board that it had unanimously resolved on December 4, 2024, to appoint legal counsel for the ongoing proceedings in Cyprus. The appointed counsel was instructed to act in a neutral and passive capacity while remaining obligated to protect the rights of the Foundation and its subsidiaries.

Mr. Schierscher reiterates the fiduciary duty of the Foundation board to act prudently and ensure that WBN and other underlying entities are not exposed to risk. He warns that the board could face personal liability should any damage occur because of disregarding the concerns raised by all the beneficiaries.

Mr. Grzesiak adds that it is the board's obligation to protect the Foundation and its subsidiaries from harm, including the dispersion of assets. He notes that the existing injunction could be easily circumvented, thereby posing a risk. Consequently, he proposes instructing the Cyprus lawyer to apply for a variation of the injunction to enable the appointment of additional directors at WBN. These directors would be tasked with monitoring the situation and preventing the dissipation of assets in circumvention of the Cyprus Interim Order.

Mr. Szelag, however, argues that neither the Foundation nor its subsidiaries have suffered any harm to date and the foundation should stay neutral in Cyprus. He opposes the proposal to

6

[Signature]

466

7

instruct the Cyprus lawyer to seek a variation of the injunction. He strongly objects to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to WBN.

Mr. Schierscher adds that the Foundation remains neutral in the proceedings in Cyprus. He emphasizes that the Foundation Board is fulfilling its obligations by acting prudently and in good faith to prevent any potential harm to WBN, especially in light of the concerns that have been raised. The board's actions are not a deviation from its neutral stance, but rather a reflection of its duty to protect the interests of WBN and the Foundation's subsidiaries.

After deliberation, the board unanimously decides not to appoint two additional directors of WBN at this stage, to remain in compliance with the Cyprus Interim Order.

To proceed in alignment with the legal framework, the members of the board resolve by majority vote—with Mr. Grzesiak and Mr. Schierscher in favor, and Mr. Szelag opposed—to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to WBN.

7)    <u>Delivery address for Peter Schierscher in Poland</u>

Peter Schierscher points out the there is no agreement by Mr. Solorz and the second beneficiaries as who should be acting as agent for delivering

Since there is no agreement between Mr. Solorz and the second beneficiaries Peter Schierscher decides to appoint Baker McKenzie **Krzyżowski i Wspólnicy sp. k. as delivery address.**

8)    <u>Discussing and passing resolutions on the invoices from AF Trustees</u>

Regarding the invoices of AF Trustees decided not to pay for the work they did with regards to the legal dispute as there was no board resolution for this.

7

[Signature]

467

8

The members of the board decide unanimously to postpone the resolution on this item.

9)  <u>Varia</u>

   a)  Mr. Szelag asks for a support letter for Stasalco as attached to these minutes. The foundation board decides to execute the attached letter.
   b)  Mr. Szelag asks for a new commercial register extract of the foundation and asks for a letter explaining that Mr. Grzesiak was appointed as board member of the foundation.
   c)  The foundation board resolves that all payments are prepared by the foundation board member Peter Schierscher.
   d)  Mr. Szelag informs about PILLAR. II.

As there are no other items on the agenda, the meeting is closed at 12.45 pm.

Vaduz, 10 April 2025

[Signature]_____          [Signature]_____
Peter Schierscher                     Petra Rohrer
(Chairman)                            (Secretary)

[Signature]

Working session

*[Translator's note: There now follows the German version of the above minutes]*

MINUTES
der Sitzung des Vorstands der Solkomtel-Stiftung am 10.
April 2025 um 12.05 Uhr im Büro der
Ritter Schierscher Rechtsanwälte AG, Gewerbeweg 5, 9490 Vaduz

---

<u>Teilnehmer</u>

Jarosław Grzesiak Tomasz
Szelag
Dr. Peter Schierscher

Zygmunt Solorz wurde zur Teilnahme per Videoanruf eingeladen. Er nimmt nicht an der Sitzung teil.


I)   <u>Ernennung des Vorsitzenden und des Sekretärs</u>

Peter Schierscher wird zum Vorsitzenden und Petra Rohrer zur Schriftführerin gewählt.


2)   <u>Billigung des Protokolls vom 4. Dezember 2024</u>
Der Vorsitzende stellt fest, dass die Genehmigung des Protokolls vom 4. Dezember 2024 nicht mehr notwendig ist, da die Stiftungsratsmitglieder in der letzten Sitzung einstimmig beschlossen haben, dieses Protokoll zu genehmigen.


3)   <u>Diskussion und Beschlussfassung über die Bestellung von zwei zusätzlichen Direktoren der Stasalco Limited, einer Gesellschaft mit beschränkter Haftung, die beim Registrar of Companies der Republik Cvorus unter der Nummer HE 372875 als "Stasalcp" eingetragen ist, durch den Vorstand.</u>

Peter Schierscher weist darauf hin, dass die Ernennung von zwei zusätzlichen Direktoren von Stasalco durch die Stiftung gegen die derzeit geltende zypriotische Einstweilige Verfügung verstoßen würde, was vom zypriotischen Rechtsbeistand der Stiftung bestätigt wurde. Der Anwalt wies darauf hin, dass eine solche Ernennung nur zulässig wäre, wenn die einstweilige Verfügung vom Gericht formell geändert würde.

y varied by

_____

[Signature]

Darüber hinaus erinnert Herr Schierscher den Stiftungsrat daran, dass dieser am 4. Dezember 2024 einstimmig beschlossen hat, einen Rechtsbeistand für das laufende Verfahren in Zypern zu bestellen. Der beauftragte Anwalt wurde angewiesen, sich neutral und passiv zu verhalten, ist aber verpflichtet, die Rechte der Stiftung und ihrer Tochtergesellschaften zu wahren.

Herr Schierscher bekräftigt die treuhänderische Pflicht des Stiftungsrats, umsichtig zu handeln und sicherzustellen, dass Stasalco und andere zugrunde liegende Anlagen keinem Risiko ausgesetzt werden. Er warnt davor, dass der Stiftungsrat persönlich haftbar gemacht werden könnte, wenn ein Schaden eintritt, weil er die von allen Begünstigten geäußerten Bedenken nicht beachtet hat.

Herr Grzesiak fügt hinzu, dass es die Pflicht des Vorstands ist, die Stiftung und ihre Tochtergesellschaften vor Schaden zu bewahren, einschließlich der Streuung von As- ten. Er stellt fest, dass die bestehende Unterlassungsverfügung leicht umgangen werden könnte und somit ein Risiko darstellt. Daher schlägt er vor, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei Stasalco zu ermöglichen. Diese Direktoren hätten die Aufgabe, die Situation zu überwachen und zu verhindern, dass Vermögenswerte unter Umgehung der zyprischen einstweiligen Verfügung veräußert werden.

Herr Szelag argumentiert jedoch, dass weder die Stiftung noch ihre Tochtergesellschaften bisher irgendeinen Schaden erlitten haben und die Stiftung in Zypern neutral bleiben sollte. Er spricht sich gegen den Vorschlag aus, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen. Er spricht nachdrücklich dagegen aus, den zypriotischen Anwalt der Stiftung anzuweisen, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren für Stasalco zu ermöglichen.

Herr Schierscher fügt hinzu, dass die Stiftung bei den Vorgängen in Zypern neutral bleibt. Er betont, dass der Stiftungsrat seinen Verpflichtungen nachkommt, indem er umsichtig und in gutem Glauben handelt, um jeglichen potenziellen Schaden für Stasalco zu verhindern, insbesondere im Hinblick auf die geäußerten Bedenken. Das Vorgehen des Stiftungsrates ist keine Abweichung von seiner neutralen Haltung, sondern vielmehr Ausdruck seiner Pflicht, die Interessen von Stasalco und den Tochtergesellschaften der Stiftung zu schützen.

Nach Beratungen beschließt der Verwaltungsrat einstimmig, zum jetzigen Zeitpunkt keine zwei zusätzlichen Direktoren von Stasalco zu ernennen, um der zypriotischen Interimsverordnung zu entsprechen.

2

[Signature]

470

Um den rechtlichen Rahmenbedingungen gerecht zu werden, beschließen die Vorstandsmitglieder mehrheitlich - Herr Grzesiak und Herr Schierscher dafür, Herr Szelag dagegen - den Anwalt der Stiftung auf Zypern zu beauftragen, eine Änderung der zypriotischen Einstweiligen Verfügung zu beantragen. Schierscher dafür und Herr Szelag dagegen - den zypriotischen Anwalt der Stiftung zu beauftragen, bei Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Bestellung zusätzlicher Direktoren bei Stasalco zu ermöglichen.

4) <u>Erörterung und Stellungnahme zur Ernennung von zwei zusätzlichen Direktoren der durch die Stiftung als einziges Mitglied der Karswell Limited, einer Gesellschaft mit beschränkter Haftung, die beim Reoistrar of Companies of the ReDublic of Cyprus unter der Nummer HE 229808 (die "Karswell") eingetragen ist.</u>

Peter Schierscher weist darauf hin, dass die Ernennung zweier zusätzlicher Direktoren von Karswell durch die Stiftung gegen die derzeit zypriotische Einstweilige Verfügung verstoßen würde, wie der zypriotische Rechtsbeistand der Stiftung bestätigt. Der Anwalt wies darauf hin, dass eine solche Ernennung nur zulässig wäre, wenn die einstweilige Verfügung vom Gericht formell geändert würde.

Außerdem erinnert Plr. Schierscher erinnert den Stiftungsrat daran, dass er am 4. Dezember 2024 einstimmig beschlossen hatte, einen Rechtsbeistand für das laufende Verfahren in Zypern zu bestellen. Der bestellte Rechtsbeistand wurde angewiesen, neutral und passiv zu agieren, wobei er verpflichtet bleibt, die Rechte der Stiftung und ihrer Tochtergesellschaften zu wahren.

Herr Schierscher bekräftigt die treuhänderische Pflicht des Stiftungsrats, umsichtig zu handeln und sicherzustellen, dass Karswell und andere zugrunde liegende keinem Risiko ausgesetzt werden. Er warnt davor, dass der Vorstand per- sonal haftbar gemacht werden könnte, falls ein Schaden eintritt, weil er die von allen Begünstigten geäußerten Bedenken außer Acht lässt.

Herr Grzesiak fügt hinzu, dass es die Pflicht des Vorstands ist, die Stiftung und ihre Tochtergesellschaften vor Schaden zu bewahren, einschließlich der Streuung von As- ten. Er stellt fest, dass die bestehende Unterlassungsverfügung leicht umgangen werden könnte und somit ein Risiko darstellt. Daher schlägt er vor, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei Karswell zu ermoglichen. Diese Direktoren hätten die Aufgabe, die Situation zu überwachen und zu verhindern, dass Vermögenswerte unter Umgehung der zyprischer einstweiligen Verfügung veräußert werden.

3

[Signature]

Herr Szelag argumentiert jedoch, dass weder die Stiftung noch ihre Tochtergesellschaften bisher irgendeinen Schaden erlitten haben und die Stiftung in Zypern neutral bleiben sollte. Er spricht sich gegen den Vorschlag aus, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen. Er spricht sich nachdrücklich dagegen aus, den zypriotischen Anwalt der Stiftung anzuweisen, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren für Karswell zu ermöglichen.

Plr. Schierscher fügt hinzu, dass die Stiftung bei den Vorgängen in Zypern neutral bleibt. Er betont, dass der Stiftungsrat seinen Verpflichtungen nachkommt, indem er umsichtig und in gutem Glauben handelt, um jeglichen potenziellen Schaden von Karswell abzuwenden, insbesondere im Hinblick auf die geäußerten Bedenken. Das Vorgehen des Stiftungsrates ist keine Abweichung von seiner neutralen Haltung, sondern vielmehr Ausdruck seiner Pflicht, die Interessen von Karswell und den Tochtergesellschaften der Stiftung zu schützen.

Nach eingehender Beratung beschließt der Verwaltungsrat einstimmig, zum jetzigen Zeitpunkt keine zwei zusätzlichen Direktoren von Karswell zu ernennen, um der zyprischen Interimsverordnung zu entsprechen.

Um den rechtlichen Rahmenbedingungen gerecht zu werden, beschließen die Mitglieder Vorstands mehrheitlich - mit den Stimmen von Herrn Grzesiak und Herrn Qtr. Schierscher dafür und Herr Szelag dagegen - den zypriotischen Anwalt der Stiftung zu beauftragen, bei Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei Karswell zu ermöglichen.

[illegible-text] 5) Erörterung und Lösung der mend in die Artikel f Ass WBNLHoldin s Limited eine GBsOllfctaft mit beschränkter Haftung ociation of mit dem Registrar f C anies der Re lic y Company oder n HE 33695 "WBN" re in Re ulation pub of Cyprus, die Re umb 6 ( ) q g g 83 and qulation 99 Peter Schierscher weist darauf hin, dass eine Änderung der Satzung der WBN Holdings Limited durch die Stiftung gegen die derzeit geltende zypriotische Einstweilige Verfügung verstoßen würde, was vom zypriotischen Rechtsbeistand der Stiftung bestätigt wurde. Der Anwalt wies darauf hin, dass eine solche Änderung nur zulässig wäre, wenn die einstweilige Verfügung vom Gericht förmlich geändert würde.

Darüber hinaus erinnert Herr Schierscher den Stiftungsrat daran, dass er am 4. Dezember 2024 einstimmig beschlossen hat, einen Rechtsanwalt zu bestellen.

4

[Signature]

472

Rechtsbeistand für das laufende Verfahren in Zypern. Der beauftragte Anwalt wurde angewiesen, neutral und passiv zu handeln und gleichzeitig die Rechte der Stiftung und ihrer Tochtergesellschaften zu wahren.

Herr Schierscher bekräftigt die treuhänderische Pflicht des Stiftungsrates, umsichtig zu handeln und sicherzustellen, dass WBN und andere zugrunde liegende Einrichtungen keinem Risiko ausgesetzt werden. Er warnt davor, dass der Stiftungsrat persönlich haftbar gemacht werden könnte, wenn aufgrund der Missachtung der von den Zweitbegünstigten vorgebrachten Bedenken ein Schaden entsteht.

Herr Grzesiak fügt hinzu, dass es die Pflicht des Vorstands ist, die Stiftung und ihre Tochtergesellschaften vor Schaden zu bewahren, einschließlich der Streuung von As- ten. Er stellt fest, dass die bestehende Unterlassungsverfügung leicht umgangen werden könnte und somit ein Risiko darstellt. Daher schlägt er vor, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen, um die von WBN zu ändern und zusätzliche Direktoren zu bestellen. Diese Direktoren hätten die Aufgabe, die Situation zu überwachen und zu verhindern, dass Vermögenswerte unter Umgehung der zypriotischen einstweiligen Verfügung veruntreut werden.

Herr Szelag argumentiert jedoch, dass weder die Stiftung noch ihre Tochtergesellschaften bisher irgendeinen Schaden erlitten haben und die Stiftung in Zypern neutral bleiben sollte. Er spricht sich gegen den Vorschlag aus, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen. Er spricht sich nachdrücklich dagegen aus, den zypriotischen Anwalt der Stiftung zu beauftragen, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren für WBN zu ermöglichen.

Herr Schierscher fügt hinzu, dass die Stiftung bei den Vorgängen in Zypern neutral bleibt. Er betont, dass der Stiftungsrat seinen Verpflichtungen nachkommt, indem er umsichtig und nach Treu und Glauben handelt, um jeglichen potenziellen Schaden für WBN zu verhindern, insbesondere im Hinblick auf die geäußerten Bedenken. Das Vorgehen des Stiftungsrats ist keine Abweichung von seiner neutralen Haltung, sondern vielmehr Ausdruck seiner Pflicht, die Interessen von WBN und der Tochtergesellschaften der Stiftung zu schützen.

Nach eingehender Beratung beschließt der Verwaltungsrat einstimmig, die Satzung von WBN zum jetzigen Zeitpunkt nicht zu ändern, um der zypriotischen Interimsverordnung zu genügen.

Um den rechtlichen gerecht zu werden, beschließen die Mitglieder des Verwaltungsrats mehrheitlich - mit Herrn Grzesiak und Herrn Plr.

5

[Signature]

Schierscher dafür und Herr Szelag dagegen, den zypriotischen Anwalt der Stiftung zu beauftragen, bei Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Änderung der Satzung von WBN zu ermöglichen.

6) <u>Erörterung und Beschlussfassung über die Ernennung von zwei zusätzlichen der WBN Holdings Limited, einer im Handelsregister der Republik Zypern unter der Nummer HE 336956 eingetragenen mit beschränkter Haftung (die "WBN"), durch die Stiftung als einziges Mitglied der Gesellschaft</u>

Peter Schierscher weist darauf hin, dass die Ernennung von zwei zusätzlichen Direktoren von WBN durch die Stiftung gegen die derzeit zypriotische Einstweilige Verfügung verstoßen würde, was vom zypriotischen der Stiftung bestätigt wurde. Der Anwalt wies darauf hin, dass eine solche Ernennung nur zulässig wäre, wenn die einstweilige Verfügung vom formell geändert würde.

Darüber hinaus erinnert Herr Schierscher den Stiftungsrat daran, dass dieser am 4. Dezember 2024 einstimmig beschlossen hat, einen Rechtsbeistand für das laufende Verfahren in Zypern zu bestellen. Der beauftragte Anwalt wurde angewiesen, sich neutral und passiv zu verhalten, ist aber verpflichtet, die Rechte der Stiftung und ihrer Tochtergesellschaften zu wahren.

Herr Schierscher bekräftigt die treuhänderische Pflicht des Stiftungsrates, umsichtig zu handeln und sicherzustellen, dass der WBN und andere zugrunde liegende Einrichtungen keinem Risiko ausgesetzt werden. Er warnt davor, dass der Vorstand persönlich haftbar gemacht werden könnte, wenn ein Schaden entsteht, weil er die von allen Begünstigten geäußerten Bedenken missachtet.

Herr Grzesiak fügt hinzu, dass es die Pflicht des Vorstands ist, die Stiftung und ihre Tochtergesellschaften vor Schaden zu bewahren, einschließlich der Streuung von As- ten. Er stellt fest, dass die bestehende Unterlassungsverfügung leicht umgangen werden könnte und somit ein Risiko darstellt. Daher schlägt er vor, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei WBN zu ermöglichen. Diese Direktoren hätten die Aufgabe, die Situation zu überwachen und zu verhindern, dass Vermögenswerte unter Umgehung der zypriotischen einstweiligen Verfügung veruntreut werden.

Qtr. Szelag argumentiert jedoch, dass weder die Stiftung noch ihre Tochtergesellschaften bisher einen Schaden erlitten haben und die Stiftung [illegible-text]  in Zypern neutral zu bleiben. Er lehnt den Vorschlag ab, die Kommission zuz ypern [illegible text]

6

[Signature]

474

Anwalt, eine Änderung der einstweiligen Verfügung zu beantragen. Er spricht sich nachdrücklich dagegen aus, den zypriotischen Anwalt der Stiftung anzuweisen, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren für WBN zu ermöglichen.

Herr Schierscher fügt hinzu, dass die Stiftung bei den Vorgängen in Zypern neutral bleibt. Er betont, dass der Stiftungsrats seinen Verpflichtungen nachkommt, indem er umsichtig und nach Treu und Glauben handelt, um jeglichen potenziellen Schaden für WBN zu verhindern, insbesondere im Hinblick auf die geäußerten Bedenken. Das Vorgehen des Stiftungsrats ist keine Abweichung von seiner neutralen Haltung, sondern vielmehr Ausdruck seiner Pflicht, die Interessen von WBN und den Tochtergesellschaften der Stiftung zu schützen.

Nach Beratungen beschließt der Verwaltungsrat einstimmig, zum jetzigen Zeitpunkt keine zwei zusätzlichen Direktoren von WBN zu ernennen, um der zypriotischen Interimsverordnung zu entsprechen.

Um rechtlichen Rahmenbedingungen gerecht zu werden, beschließen die Vorstandsmitglieder mehrheitlich - mit den Stimmen von Herrn Grzesiak und Herrn Schierscher und der Gegenstimme von Herrn Szelag - den zypriotischen Anwalt der Stiftung zu beauftragen, bei Gericht eine Änderung der zypriotischen Einstweiligen Verfügung zu beantragen, um die Bestellung zusätzlicher Direktoren für WBN zu ermöglichen.


7)  <u>Lieferadresse für Peter Schierscher in Polen</u>

Peter Schierscher weist darauf hin, dass es keine Einigung zwischen Herrn Solorz und den Zweitbegünstigten darüber gibt, wer als Zustellungsbevollmächtigter fungieren soll.

Da es keine Vereinbarung zwischen Herrn Solorz und den Zweitbegünstigten gibt, beschließt Peter Schierscher, Baker McKenzie Krzyżowski i Wspólnicy sp. k. als Zustelladresse zu benennen.


8)  <u>Erörterung und Beschlussfassung über die Rechnungen der AF Trustees</u>

Bezüglich der Rechnungen von AF beschlossen die Treuhänder, die Arbeit, die sie im Zusammenhang mit dem Rechtsstreit geleistet haben, nicht zu bezahlen, da es dafür keinen Vorstandsbeschluss gab.

7

[Signature]

475

Die Mitglieder des Verwaltungsrats beschließen einstimmig, die Beschlussfassung über diesen Punkt zu vertagen.

9)    <u>Varia</u>

    a) Herr Szelag bittet um ein Unterstützungsschreiben für Stasalco, das diesem Protokoll beigefügt ist. Der Stiftungsrat beschließt, das beigefügte Schreiben zu unterzeichnen.

    b) Herr Szelag bittet um einen neuen Handelsregisterauszug der Stiftung und bittet um ein Schreiben, in dem erklärt wird, dass Herr Grzesiak zum Vorstandsmitglied der Stiftung ernannt wurde.

    c) Der Stiftungsrat beschließt, dass alle Zahlungen durch das Stiftungsratsmitglied Peter Schierscher vorbereitet werden.

    d) Herr Szelag informiert über PILLAR II.

Da keine weiteren Punkte auf der Tagesordnung stehen, wird die Sitzung um 12.45 Uhr geschlossen. P

Vaduz, 10. April 2025

[Signature]_____    [Signature]_____
Peter Schierscher                                Peta Roher
(Vorsitzender)                                      (Sekretärin)

8

[Signature]

476

**Gorton Anton Ferdinand**

| | |
|---|---|
| **From:** | Tomasz Szelag <tomasz.szelag@arcesius.com.cy> |
| **Sent:** | Thursday, April 17, 2025 9:42 PM |
| **To:** | Matthias Niedermüller |
| **Cc:** | Peter Schierscher; Jarosław Grzesiak; Christian Ritter; Fabian Rischka |
| **Subject:** | Re: TiVi Foundation; Solkomtel Foundation; Cyprus Proceeding |
| | |
| **Priority:** | High |

Dear All,

Sorry for late reply. Today my parents came to Cyprus for Easter Holiday and I was taking care of them.

I was in touch with Matthias today and we discussed his below email while I was driving with my parents from the airport.

To be 100% precise in this sensitive matter, I've read Matthias's email carefully and please find my thoughts / comments below:

1.   During the Foundation Council Meeting on 10th of April it was a resolution for filling application in Cypriot court. I was strongly against but resolution was made (2 votes against 1).

2.   We haven't discussed any details what will be the next steps. As I remember Matthias was in touch with Peter on it and I also assumed that as in previous projects (for instance: memos prepared on Asseco, Modivo and Netia spin off) I'll participate in all next steps of such court filling.

3. I saw CVs of the proposed 2 additional directors but I've never met them.

4. I spoke to Peter on Monday evening and we discussed different operational issues (Netia spin-off, UBO statements, Foundation Council Meeting etc.). Peter also mentioned he will be in Cyprus next day (Tuesday). I planned to be in Poland on Tuesday so I didn't ask additional questions.

5. I don't know who prepared all docs that were filled in Cyprus court and I haven't received any correspondence in this matter (I checked also my spam messages).

6. I haven't read docs that were filled (received from my Cypriot lawyer) but will try to do it asap (taking into consideration that I have my parents visiting me at the moment please give me more time).

7. I would be grateful for sending me as much info as possible about steps that were taken after 10th of April (after the resolution) to understand the whole process.

Please let me know if you require more info in connection with above points.

Looking forward to hearing from you.

Happy Easter Holiday.

Tomasz


Message written by Matthias Niedermüller <mn@niedermueller.law> on April 17, 2025, at 3:10 p.m:

Dear Peter

I already tried to call you in person but received no response or callback.

I make reference to the meeting of the Foundation Council of TIVI and Solkomtel (Foundations) of last Thursday 10 April 2025.

I received the minutes of the meetings from Tomek in which a majority resolution was passed that an application to the Cyprus Court shall be prepared by George (GZG) in which an amendment/alteration of the Cyprus injunction shall be applied for by the Foundations. This resolution was passed against the strong opposition and vote of Tomek.

To date neither Tomek nor I have received any update from you or Mr. Grzesiak on the next steps or further action on this point and it thus was our clear understanding that there has been no further development on this item since the Council Meetings of 10 April.

It was clearly understood from the previous interactions I had with you and also from the discussions you had with Tomek at the Foundation Council meeting of 10 April that the next steps should be as follows to ensure a proper involvement of all members of the Foundation Council and due process:

1.  The Cyprus Counsel of TiVi and Solkomtel (George Georgiou) would draft an application.

2.  The draft application would be circulated to all members of the Foundation Council for commenting and discussion. This in particular as there was no discussion in the Foundation Council on 1) what exactly should be applied for 2) what the actual reasons for the application are, what necessity there is for the application, how the application should be reasoned, 3) what possible relations the persons proposed have to the Children or other members of the Foundation council (in particular there was no conflict check or interview conducted on the proposed persons), 4) what the consequences and possible risk of damage and harm such application could cause to the foundation assets, etc.

3.  The Foundation Council would pass a resolution in which a decision would be taken on what instructions shall be given to the Cyprus Counsel (GZG) on how to proceed with the draft (file or not file). This resolution in particular also would have to include all the above considerations as to why the application shall be made and what consequences the successful application would have on the subsidiaries and the Foundation assets.

It therefore came as an extreme surprise to us, when we were informed today by the Cyprus Counsel of Tomek, that the Cyprus Counsel of the Foundations (GZG) already filed the application for amendment/alteration with the Cyprus court on Wednesday 16 April and that application already was served to Tomek and also the other parties of the Cyprus proceeding.

I have to emphasize that neither I nor Tomek have ever seen a draft of the application filed and also were in no way involved or copied in into any instructions given by the Foundation (represented by you or Mr. Grzesiak) to the Cyprus Counsel (GZG) or any further communication after 10 April 2025 on this item. Thus the entire instructions given to the Cyprus Counsel (GZG), drafting and commenting of affidavits and application drafts and approval and instruction for filing was done without the involvement or information of Tomek. Rather Tomek was entirely circumvented in this process.

The fact that you and Mr. Grzesiak conducted the entire drafting process and approval for filing of an application in the Cyprus proceeding including the swearing of Affidavits containing statements which are to an important extent inaccurate, to say the least, including also a trip to Cyprus, without ever involving or informing Tomek as third member of the Foundation Council and without any resolution or approval of the Foundation Council in relation to the instructions and the filing is highly concerning and constitutes a severe violation of the rules for a proper conduct and decision-making in the Foundation Council and representing the Foundation. The same also holds true in relation to the selection and proposal for appointment for two persons as directors as stated in the application in Cyprus. It was in particular also never discussed or resolved in the Foundation Council to appoint these two individuals, but merely to prepare a draft application which was to be discussed among the Council Members.

Also the actions entirely contradict your previous repeated promises and assurances that all matters and actions of the Foundation Council are going to be played completely transparent and by the book and no member of the

2

Foundation Council would be excluded in any way from any communication or decision. Before the meeting of 10 April even the most basic communication was circulated among all members.

The information received today rather now shows the opposite. You and Mr. Grzesiak excluded Tomek from the entire decision making and drafting process that lead to this application and thus circumvented him in major items relating to the Foundations.

We therefore ask you to immediately disclose <u>all</u> communication and documentation relating to the application filed in Cyprus, in particular all and any communication between you and Mr. Grzesiak and the Cyprus Counsel (GZG) and provide full and transparent disclosure of all activities taken. This not only regarding the time after the meeting of the Foundation Council of 10 April but in particular also for the time before that meeting.

We expect your response until 22 April, 17:00 at the latest.

Kind regards

Matthias


**Dr. Matthias Niedermüller, M.B.L-HSG, TEP**
**Managing Partner | Attorney at Law | Notary Public**
Werdenbergerweg 11 | 9490 Vaduz, Liechtenstein | T: +423 222 0750 | F: +423 222 0751
Mail: <u>mn@niedermueller.law</u>

<image001.png>
<image002.jpg><image003.jpg><image004.jpg><image005.jpg><image006.jpg><image007.png><image008.pn

Important notice:
This email may contain trade or business secrets, information protected by attorney–client privilege, or other confidential information and is protected by law. If you have received this email in error, you are expressly prohibited from reviewing, reproducing, or forwarding this email or any of its attachments. Please notify us at the address above and delete the received email and any attachments from your computer or network. Thank you.
Important notice:
This e-mail may contain trade secrets or privileged, undisclosed or otherwise confidential information and is legally privileged. If you have received this e-mail by mist are you hereby notified that any review, copying or distribution of the e-mail and its attachments is strictly prohibited. Please inform us at the above mentioned address delete the e-mail and any attachments from your system. Thank you for your co-operation.

Working session

*[Translator's note: There now follows the German version of the above email thread]*

| | |
|---|---|
| **Von:** | Tomasz <tomasz.szelag@arcesius.com.cy> |
| **Gesendet:** | Donnerstag, 17. April 2025 21:42 |
| **An:** | Matthias Niedermüller |
| **Cc:** | Peter Schierscher; Jarosław Grzesiak; Christian Ritter; Fabian Rischka |
| **Betreff:** | Re: TiVi-Stiftung; Solkomtel-Stiftung; Zypern-Verfahren |
| | |
| **Priorität:** | Hoch |

Sehr geehrte Damen und Herren,

Entschuldigung für die späte Antwort. Heute kamen meine Eltern in den Osterferien nach Zypern und ich habe mich um sie gekümmert.

Ich habe heute mit Matthias gesprochen und wir haben seine unten stehende E-Mail besprochen, während ich mit Eltern vom Flughafen gefahren bin.

Um in dieser heiklen Angelegenheit 100%ig präzise zu sein, habe ich die E-Mail von Matthias sorgfältig gelesen, und Sie finden meine Gedanken/Kommentare unten:

1.  Auf der Sitzung des Stiftungsrats am 10. April wurde ein Beschluss über die Einreichung eines Antrags bei einem zypriotischen Gericht gefasst. Ich war strikt dagegen, aber der Beschluss wurde gefasst (2 Stimmen gegen 1).

2.  Wir haben noch keine Einzelheiten über die nächsten Schritte besprochen. Soweit ich mich erinnere, stand Matthias mit Peter in Kontakt, und ich bin auch davon ausgegangen, dass ich wie bei früheren Projekten (z. B. bei den Memos zu Asseco, Modivo und der Abspaltung von Netia) an allen weiteren Schritten einer solchen Gerichtsbesetzung beteiligt sein werde.

3.  Ich habe die Lebensläufe der vorgeschlagenen 2 zusätzlichen Direktoren gesehen, aber ich habe sie nie getroffen.

4.  Ich habe am Montagabend mit Peter gesprochen, und wir haben verschiedene operative Fragen besprochen (Ausgliederung von Netia, Erklärungen der UBO, Sitzung des Stiftungsrats usw.). Peter erwähnte auch, dass er am nächsten Tag (Dienstag) in Zypern sein wird. Da ich am Dienstag in Polen sein wollte, habe ich keine weiteren Fragen gestellt.

5.  Ich weiß nicht, wer die Unterlagen für das zyprische Gericht vorbereitet hat, und ich habe in dieser Angelegenheit Korrespondenz erhalten (ich habe auch meine Spam-Nachrichten überprüft).

6.  Ich habe die ausgefüllten Dokumente (die ich von meinem zypriotischen Anwalt erhalten habe) noch nicht gelesen, werde aber versuchen, dies so schnell wie möglich nachzuholen (da ich derzeit Besuch von meinen Eltern habe, bitte ich um mehr Zeit).

7.  Ich wäre Ihnen dankbar, wenn Sie mir so viele Informationen wie möglich über die nach dem 10. April (nach der Entschließung) unternommenen Schritte zukommen lassen würden, um den gesamten Prozess zu verstehen.

Bitte lassen Sie mich wissen, wenn Sie weitere Informationen zu den oben genannten

Punkten benötigen. Ich freue mich darauf, von Ihnen zu hören.

Frohe Osterfeiertage.

1

480

Tomasz

Wiadomość napisana przez Matthias Niedermüller <mn@niedermueller.law > w dniu 17.04.2025, o godz. 15:10:

Lieber Peter

Ich habe bereits versucht, Sie persönlich anzurufen, habe aber keine Antwort oder einen Rückruf erhalten.

Ich beziehe mich auf die Sitzung des Stiftungsrates von TIVI und Solkomtel (Stiftungen) vom vergangenen Donnerstag, 10. April 2025.

Ich habe von Tomek das Sitzungsprotokoll erhalten, in dem mehrheitlich beschlossen wurde, dass George (GZG) einen Antrag an das zypriotische Gericht vorbereiten soll, in dem eine Änderung der zypriotischen Unterlassungsverfügung durch die Stiftungen beantragt werden soll. Dieser Beschluss wurde gegen den starken Widerstand und die Stimme von Tomek gefasst.

Bis heute haben weder Tomek noch ich von Ihnen oder Herrn Grzesiak ein Update über die nächsten Schritte oder das weitere Vorgehen in dieser Angelegenheit erhalten, so dass wir davon ausgingen, dass es seit der Ratstagung vom 10. April keine weiteren Entwicklungen in dieser Angelegenheit gegeben hat.

Aus den vorangegangenen Gesprächen, die ich mit Ihnen geführt habe, und auch aus den Diskussionen, die Sie mit Tomek auf der Sitzung des Stiftungsrats am 10. April geführt haben, ging klar hervor, dass die nächsten Schritte wie folgt aussehen sollten, um eine angemessene Beteiligung aller Mitglieder des Stiftungsrats und ein ordnungsgemäßes Verfahren zu gewährleisten:

1.  Der zypriotische Rechtsberater von TiVi und Solkomtel (George Georgiou) würde einen Antrag verfassen.
2.  Der Antragsentwurf wird an alle Mitglieder des Stiftungsrates zur Kommentierung und Diskussion weitergeleitet. Dies insbesondere, da es im Stiftungsrat keine Diskussion darüber gab, 1) was genau beantragt werden sollte, 2) was die tatsächlichen Gründe für Antrag sind, welche Notwendigkeit für Antrag besteht, wie der Antrag begründet werden sollte, 3) welche möglichen Beziehungen die vorgeschlagenen Personen zu den Kindern oder anderen Mitgliedern des Stiftungsrats haben (insbesondere wurde keine Konfliktprüfung oder Befragung der vorgeschlagenen Personen durchgeführt), 4) welche Folgen und welches mögliche Risiko von Schäden und Nachteilen ein solcher Antrag für das Stiftungsvermögen haben könnte, usw.
3.  Der Stiftungsrat würde einen Beschluss fassen, in dem entschieden wird, welche Weisung an den zypriotischen Anwalt (GZG) gegeben werden soll, wie mit Entwurf zu verfahren ist (einreichen oder nicht einreichen). Dieser Beschluss müsste insbesondere auch alle oben genannten Überlegungen enthalten, warum der Antrag gestellt werden soll und welche Folgen ein erfolgreicher Antrag für die Tochtergesellschaften und das Stiftungsvermögen haben würde.

Wir waren daher sehr überrascht, als uns der zypriotische Anwalt von Tomek heute mitteilte, dass der zypriotische Anwalt der Stiftungen (GZG) bereits am Mittwoch, den 16. April, den Antrag auf Änderung beim zypriotischen Gericht eingereicht hat und dass dieser Antrag Tomek und den anderen Parteien des zypriotischen Verfahrens bereits zugestellt wurde.

Ich muss betonen, dass weder ich noch Tomek jemals einen Entwurf des eingereichten Antrags gesehen haben und auch in keiner Weise an Anweisungen beteiligt waren, die die Stiftung (vertreten durch Sie oder Herrn Gzesiak) dem zypriotischen Anwalt (GZG) erteilt hat, oder an einer weiteren Mitteilung nach dem 10. April 2025 zu diesem Thema. Die gesamten Anweisungen an den zyprischen Anwalt (GZG), die Abfassung und Kommentierung der eidesstattlichen Erklärungen und Antragsentwürfe sowie die Genehmigung und Anweisung zur Einreichung erfolgten also ohne Beteiligung oder Information von Tomek. Vielmehr wurde Tomek in diesem Prozess vollständig umgangen.

Die Tatsache, dass Sie und Herr Grzesiak den gesamten Prozess der Ausarbeitung und Genehmigung der Einreichung eines Antrags in dem Verfahren in Zypern durchgeführt haben, einschließlich der Vereidigung von eidesstattlichen Erklärungen, die Aussagen enthalten, die in erheblichem Maße unrichtig sind, um es vorsichtig auszudrücken, einschließlich einer Reise nach Zypern, ohne jemals Tomek als drittes Mitglied des Stiftungsrats einzubeziehen oder zu informieren und ohne irgendeinen Beschluss oder eine Genehmigung des Stiftungsrats in Bezug auf die Anweisungen und die Einreichung ist

2

höchst bedenklich und stellt einen schwerwiegenden Verstoß gegen die Regeln für eine ordnungsgemäße Führung und Entscheidungsfindung im Stiftungsrat und die Vertretung der Stiftung dar. Das Gleiche gilt für die Auswahl und den Vorschlag zur Ernennung von zwei Personen als Direktoren, wie im Antrag in Zypern angegeben. Insbesondere wurde im Stiftungsrat auch nie die Ernennung dieser beiden Personen diskutiert oder beschlossen, sondern lediglich ein Antragsentwurf erstellt, der unter den Ratsmitgliedern diskutiert werden sollte.

Auch widersprechen die Maßnahmen völlig Ihren früheren wiederholten Versprechungen und Zusicherungen, dass alle Angelegenheiten und Handlungen des Stiftungsrats völlig transparent und nach den Regeln ablaufen und kein Mitglied des Stiftungsrats in irgendeiner Weise von einer Mitteilung oder Entscheidung ausgeschlossen würde. Vor der Sitzung vom 10. April wurde sogar die grundlegendste Mitteilung an alle Mitglieder verteilt.

Die heute erhaltenen Informationen zeigen eher das Gegenteil. Sie und Herr Grzesiak haben Tomek von dem gesamten Entscheidungs- und Erarbeitungsprozess, der zu diesem Antrag geführt hat, ausgeschlossen und ihn somit in wichtigen Punkten, die die Stiftungen betreffen, umgangen.

Wir fordern Sie daher auf, unverzüglich <u>sämtliche</u> Kommunikation und Unterlagen im Zusammenhang mit dem in Zypern eingereichten Antrag offenzulegen, insbesondere die gesamte Kommunikation zwischen Ihnen und Herrn Grzesiak und dem zypriotischen Anwalt (GZG), und alle Aktivitäten vollständig und transparent offenzulegen. Dies gilt nicht nur für die Zeit nach der Sitzung des Stiftungsrats vom 10. April, sondern insbesondere auch für die Zeit vor dieser Sitzung.

Wir erwarten Ihre Antwort bis spätestens 22. April, 17:00 Uhr. Mit

freundlichen Grüßen

Matthias

**Dr. Matthias Niedermüller, M.B.L-HSG, TEP**
**Geschäftsführender Gesellschafter| Rechtsanwalt| Notar**
Werdenbergerweg 11] 9490 Vaduz, Liechtenstein| T: +423 222 0750 | F: +423 222 0751 Mail:
mn@niedermueller.law

<image001.png>
<Bild002.jpg><Bild003.jpg><Bild004.jpg><Bild005.jpg><Bild006.jpg><Bild007.png><Bild008.png>

Wichtiger Hinweis:
Diese E-Mail kann Betriebs- oder Geschäftsgeheimnisse, dem Anwaltsgeheimnis unterliegende oder sonstige vertrauliche Informationen enthalten und ist von Gesetzes weger geschützt. Falls Sie diese E-Mail irrtümlich erhalten haben, ist Ihnen eine Kenntnisnahme des Inhalts, eine Vervielfältigung oder Weitergabe dieser E-Mails sowie eventueller Anhänge ausdrücklich untersagt. Bitte benachrichtigen Sie uns unter obgenannter Adresse und löschen Sie die empfangene E-Mail sowie allfällige Anhänge au Ihrem Computer oder Netzwerk Vielen Dank.

Wichtiger Hinweis:
Diese E-Mail kann Geschäftsgeheimnisse oder privilegierte, nicht offengelegte oder anderweitig vertrauliche Informationen enthalten und ist rechtlich privilegiert. Sollten Sie diese E-Mail irrtümlich erhalten haben, werden Sie hiermit darauf hingewiesen, dass jegliche Einsichtnahme, Vervielfältigung oder Verbreitung der E-Mail und ihrer Anhänge strengsten: untersagt ist. Bitte informieren Sie uns unter der oben genannten Adresse und löschen Sie die E-Mail und alle Anhänge von Ihrem System. Wir danken Ihnen für Ihre Mitarbeit.

482

Beilage _: / AN

### AFFIDAVIT OF TOMASZ SZELAG

**22 April 2025**

**I.    Introduction**

1   I was requested by Mr. Solorz to provide a written statement on the events before and after the meetings of the foundation councils of TiVi Foundation and Solkomtel Foundation of 10 April 2025.

2   My name is Tomasz Szelag and I was born on 13th of January 1977 in Lubin, Poland with the current working address being 3 Krinou Street, The Oval, floor 5, Apartment/Office 503, Agios Athanasios, 4103, Limassol.

3   I was appointed by Mr. Zygmunt Solorz in his capacity as founder and Curator to serve as a Member of the Foundation Council of both TiVi Foundation and the Solkomtel Foundation, both based in Vaduz, Liechtenstein.

4   I hereby declare the following:

5   All statements in this Affidavit are based on my personal knowledge of the facts and my experience as described in the following paragraphs.

**II.    Role and Responsibilities**

6   I have been working for Mr. Solorz since May 2009. At the moment I am employed to act as the Chief Financial Officer (CFO) in app. 200 companies in 13 countries, all of which are integral companies to Mr. Solorz's holdings.

7   I am member of the foundation council of TiVi Foundation and the Solkomtel Foundation since 2022.

8   TiVi Foundation and the Solkomtel Foundation directly hold shares in the following Cyprus companies:

   a.  Reddev Investments Limited

   b.  Stasalco Limited

   c.  Karswell Limited

   d.  WBN Holdings Limited

(hereinafter "Cyprus Holdings")

9   The Cyprus Holdings in turn directly and indirectly hold shares in approximately 150 companies mostly from media, telecomunication, IT and energy.

10  I have also run the investment management and wealth management ("Family Office") of Mr. Solorz and his family since 2016.



1

483

### III.   Recent Developments in Foundation Council

11   By its court order (*Amtsbefehl*) dated 26 October 2024, the Princely District Court, inter alia, appointed Mr. Peter Schierscher, attorney at law in Vaduz, as an administrator of both TiVi Foundation and Solkomtel Foundations. Accordingly, from this moment onwards, the foundations councils of both Foundations consisted of Mr. Schierscher as administrator as well as Ms. Katarzyna Tomczuk and me as regular members. Further the court ordered that the Children and Secondary Beneficiaries would be entitled to nominate a successor of Ms. Katarzyna Tomczuk in case of her resignation.

12   With written declaration dated 3 March 2025, Ms. Tomczuk resigned from office as member of the foundations councils of TiVi Foundation and Solkomtel Foundation.

13   Following Ms. Tomczuk's resignation, Ms. Aleksandra Zak, Mr. Piotr Zak and Mr. Tobias Solorz as Secondary Beneficiaries of TiVi Foundation and Solkomtel Foundation based on the court order of 26 October 2024 nominated Mr. Jaroslaw Grzesiak as member of the foundation councils of both foundations.

### IV.   Preparations Foundation Council meeting of 10 April 2025

14   By email addressed to Mr. Schierscher and me dated 2 April 2025, Mr. Grzesiak proposed to add the following items to the agenda of the next foundation council meetings:

15   For TiVi Foundation:

- Decision on appointment by TiVi Foundation as the sole member (sole shareholder) of Reddev Investments Limited, a Cypriot limited liability company registered under number HE 330471 ("Reddev"), two additional directors of the company, namely a Mr. George Sphiktos and a Ms. Maria Kannava;

16   For Solkomtel Foundation:

- Decision on appointment by Solkomtel Foundation as the sole member (sole shareholder) of Stasalco Limited, a Cypriot limited liability company registered under number HE 372875 ("Stasalco"), two additional directors of the company: Mr. Sphiktos and Ms. Kannava;

- Decision on appointment by Solkomtel Foundation as the sole member (sole shareholder) of Karswell Limited , a Cypriot limited liability company registered under number HE 229808 ("Karswell"), two additional directors of the company: Mr. Sphiktos and Ms. Kannava;

- Decision on amending the Articles of Association of WBN Holdings Limited, a Cypriot limited liability Company registered under number HE 336956 ("WBN") regarding the Regulation 83 and the Regulation 99;

- Decision on appointment by Solkomtel Foundation as the sole member (sole shareholder) of WBN two additional directors of the company: Mr. Sphiktos and Ms. Kannava;

2



484

17    The email of Mr. Grzesiak of 2 April 2025 also included the following draft documents:

- Draft resolution of foundation council of TiVi Foundation regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors of Reddev;

- Draft resolution of TiVi Foundation as sole shareholder of Reddev regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors;

- Draft resolution of the foundation council of Solkomtel Foundation regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors of Stasalco;

- Draft resolution of Solkomtel Foundation as sole shareholder of Stasalco regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors;

- Draft resolution of foundation council of Solkomtel Foundation regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors of Karswell;

- Draft resolution of Solkomtel Foundation as sole shareholder of Karswell regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors;

- Draft resolution of the foundation council of Solkomtel Foundation regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors of WBN;

- Draft resolution of Solkomtel Foundation as sole shareholder of WBN regarding the appointments of Mr. Sphiktos and Ms. Kannava as additional directors;

- Draft resolution of the foundation council of Solkomtel Foundation regarding amendment of Articles of Association of WBN;

- Draft resolution of Solkomtel Foundation as sole shareholder of WBN regarding amendment of Articles of Association of WBN;

- CV of Mr. Sphiktos;

- CV of Ms. Kannava;

18    As regards the injunctions rendered by the District Court Limassol on 10 or 11 October 2024 in cases no. 31/2024 (TiVi Foundation) and no. 32/2024 (Sokomtel Foundation) ("Cypriot Injunctions"), Mr. Grzesiak considered as follows:

> "Given the existence of the freezing injunctions imposed by the Cyprus court, the Secondary Beneficiaries as the applicants, have agreed to grant consents for the contemplated changes and to waive the right to treat such corporate changes as in breach of the injunction orders. The waivers will be provided to our attention ahead of the board meeting."

19    This email and its attachments is provided as Exhibit 1 of this affidavit.

20    I forwarded this email to my lawyers for information. By email dated 3 April 2025, to Mr. Schierscher (with Mr. Grzesiak in cc) my Attorney Dr. Matthias Niedermüller expressed his

3

understanding that this topic raised by Mr. Greziak would be put on the agenda for the next meeting of the foundation council which was yet to be scheduled and would be discussed comprehensively before any decision would be taken. This email is shown in Exhibit 1, too.

21    By email dated 4 April 2025, Peter Schierscher confirmed that there always would be sufficient time to review the topics to ensure that they can be discussed thoroughly during the meeting and to make a well independent decision. This email is shown in Exhibit 1, too.

22    Also on Friday 4 April 2025, Peter Schierscher invited to the Foundation Council meeting of TiVi Foundation and Solkomtel Foundation for Thursday 10 April 2024, 10.00 a.m. with the following Agenda:

23    For TiVi Foundation:

   1.    *Welcome*

   2.    *Appointment of the Chairman and the Secretary*

   3.    *Approval of the minutes dated 4 December 2024*

   4.    *Discussion and resolution on the appointment by the Foundation as the Sole Member of Reddev Investments Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 330471 (the "Reddev"), of two additional directors of Reddev:*

      (i)    *George Sphiktos and*

      (ii)   *Maria Kannava.*

      *CVs and acceptance letters from both candidates and a draft of a foundation board resolution are attached.*

   5.    *Discussion and resolution on about the planned Netia S.A. infastructure spin off transaction*

   6.    *Delivery address for Peter Schierscher in Poland*

      *Peter Schierscher suggests as delivery address Baker McKenzie Krzyżowski i Wspólnicy sp.k.*

   7.    *Discussing and passing resolutions on the invoices from AF Trustees*

   8.    *Varia*

24    For Solkomtel Foundation

   1.    *Welcome*

   2.    *Appointment of the Chairman and the Secretary*

   3.    *Approval of the minutes dated 4 December 2024*

   4.    *Discussion and resolution on the appointment by the Foundation as the Sole Member of of Stasalco Limited, a limited liability Company registered with the Registrar of Compa-nies of the Republic of Cyprus, under number HE 372875 (the "Stasalco"), of two additi-onal directors of the Company:*

4

486

*(i) George Sphiktos and*

*(ii) Maria Kannava.*

*CVs and acceptance letters from both candidates and a draft of a foundation board resolution are attached.*

5. *Discussion and resolution on the appointment by the Foundation as the Sole Member of of Karswell Limited, a limited liability Company registered with the Registrar of Compa-nies of the Republic of Cyprus, under number HE 229808 (the "Karswell"), of two additi-onal directors of the Company:*

    *(i)George Sphiktos and*

    *(ii) Maria Kannava.*

*CVs and acceptance letters from both candidates and a draft of a foundation board re-solution are attached.*

6. *Discussion and resolution on amending the Articles of Association of WBN Holdings Li-mited, a limited liability Company registered with the Registrar of Companies of the Re-public of Cyprus, under number HE 336956 ("WBN") regarding the Regulation 83 and the Regulation 99.*

*A draft of a foundation board resolution on amending the Articles of Association of WBN is attached.*

7. *Discussion and resolution on the appointment by the Foundation as the Sole Member of of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 (the "WBN"), of two additional directors of the Company:*

    *(i)    George Sphiktos and*

    *(ii)   Maria Kannava*

8. *Delivery address for Peter Schierscher in Poland*

*Peter Schierscher suggests as delivery address Baker McKenzie Krzyżowski i Wspólnicy sp.k.*

*9. Discussing and passing resolutions on the invoices from AF Trustees*

*10. Varia*

25    The invitations are attached as <u>Exhibits 2a and 2b</u>.

26    On 07 April 2025, Mr. Solorz in his capacity as Curator of TiVi Foundation and Solkomtel Foundation sent to Mr. Schierscher an undated letter in which he expressed his strong concerns about the appointment of Mr. Grzesiak as member of the foundation councils of TiVi Foundation and Solkomtel Foundation as well as the proposed appointment of additional directors in Cypriot subsidiaries of TiVi Foundation and Solkomtel Foundation. I attach this letter as <u>Exhibit 3</u>.

27    On 5 April 2025 Andew Demetriou, attorney at law and partner of the Cypriot law firm of Ioannides Demetriou LLC, issued a written legal opinion in which he pointed out that the appointment of additional directors in Cypriot subsidiaries as proposed by Mr. Grzesiak would

<div align="center">5</div>

constitute a breach of the Cypriot Injunctions. Such breach would constitute a criminal contempt of court. I attach this letter as <u>Exhibit 4.</u>

28    By email dated 7 April 2025, 10.03 p.m., Mr. Schierscher forwarded said legal opinion to Mr. George Z. Georgiou, partner and attorney at law at the law firm of George Z. Georgiou & Associates LLC, which was mandated to provide advice and act on behalf of TiVi Foundation and Solkomtel Foundation. I was copied into this Mail.

29    By email dated 8 April 2025, 9:02 a.m., Mr. Grzesiak provided Mr. Schierscher and Mr. Georgiou with the announced waivers issued by the Secondary Beneficiaries. I again was in cc in this correspondence. I attach this correspondence as <u>Exhibit 5.</u>

30    By email dated 8 April 2025, 10:53 p.m., Mr. Georgiou provided to Mr. Schierscher and Mr. Grzesiak (with me in cc) his advice and outlined that the legal assessment of Andew Demetriou dated 5 April 2025 was accurate. He agreed with Mr. Demetriou that the resolutions proposed by Mr. Grzesiak constitute a violation of the Cypriot Injunction, if passed and that the proposed changes require a variation of the Cypriot Injunctions by court with notice to both sides, explaining clearly the rationale for doing so. This correspondence is shown in <u>Exhibit 5</u>, too.

31    On 9 April 2025, Mr. Schierscher during the court hearing that was conducted that day announced orally to me and my attorney Mr. Niedermüller and reportedly also to the lawyers of Mr. Solorz that he will vote against Mr. Grzesiak's proposal of appointment of additional directors in Cypriot subsidiaries in the meeting of the foundation councils scheduled for the following day.

32    As regards the agenda for these meetings of the foundation councils of TiVi and Solkomtel Foundation, no additional items were scheduled or proposed by any member of the foundation councils.

### V.    Foundation Council Meetings 10 April 2025

33    After consideration on the legal opinion of Mr. Georgiou in the meeting of the foundation council of TiVi Foundation on 10 April 2025, the members of the foundation council unanimously decided to dismiss the application made by Mr. Grzesiak and not to appoint Mr. George Sphiktos and Ms. Maria Kannava as additional directors of Reddev.

34    However, Mr. Grzesiak raised a new topic in the course of the Foundation Council meeting and proposed that TiVi Foundation shall apply to the Court in Cyprus for a variation of the Cypriot Injunction which would then allow the additional appointment of Directors of Reddev. Mr. Schierscher and Mr. Grzesiak voted in favour of an instruction to the Cypriot lawyers of TiVi Foundation to apply to the Court for a variation of the Cypriot Injunction to enable the appointment of additional directors in the company. I strongly protested and voted against such resolution and instruction.

35   After consideration on the legal opinion of Mr. Georgiou in the meeting of the foundation council of Solkomtel Foundation on 10 April 2025, the members of the foundation council unanimously decided to dismiss the application made by Mr. Grzesiak and not to appoint addition directors of Stasalco, Karswell and WBN and to not amend the Articles of Association of WBN.

36   However, Mr. Grzesiak raised a new topic in the course of the Foundation Council meeting and proposed that Solkomtel Foundation shall apply to the Court in Cyprus for a variation of the Cypriot Injunction which would then allow the additional appointment of Directors of Stasalco, Karswell and WBN and to not amend the Articles of Association of WBN. Mr. Schierscher and Mr. Grzesiak voted in favour of an instruction to the Cypriot lawyers of TiVi Foundation to apply to the Court for a variation of the Cypriot Injunction to enable the appointment of additional directors in the said companies as well as the amendment of the Articles of Association of WBN. I strongly protested and voted against such resolution and instruction.

37   The Agenda of the meetings of TiVi Foundation and Solkomtel Foundation did not contain the item to instruct the Cypriot Attorney to make an application for variation of the Cyprus Injunction. This was only raised at the meeting of the Foundation Council after the application of Mr. Grzesiak has been dismissed unanimously. Therefore, I was not given the opportunity to carefully consider such proposal.

38   In the course of the meeting of the Foundation Council there was no discussion on and assessment of the persons that were proposed for appointment. Also there was no discussion on the potential negative effects and consequences of such application for TiVi Foundation and Solkomtel Foundation and also not, whether and to which extent the foundations would be dependent on a consent of the applicants and secondary beneficiaries at a later stage.

39   Except for the decision of the two other members of the foundation councils to instruct the Cypriot lawyers, no further details were discussed, in particular no time frame was set. In particular I assumed (the same as in other previous issues/topics) that I would be informed and copied into any instructions to the Cyprus counsel of the Foundation and the entire process before any filing would be conducted. I attach the minutes of the 10 April 2025 meetings as Exhibits 6a and 6b.

### VI.   Actions after Foundation Council meeting 10 April 2025

40   After the meetings of the foundation councils had ended, I received no further correspondence from Mr. Schierscher and Mr. Grzesiak regarding the status and progress of the application to alter the Cyprus Injunction. Particularly, as opposed to the days before the meeting of the Foundation Council of 10 April 2025, I was not copied into any correspondence with the Cypriot lawyer of the Foundation.

41   On 14 April 2025 I had a short call with Mr. Schierscher on another item and also at this occasion he did not mention that a draft application had been prepared and would be filed the day after. He mentioned he would be in Cyprus the next day, but because I was in Poland, I didn't ask further questions.

7

489

42   I thus assumed at this point that there had been no progress on the preparation of the application.

43   On 14 and 15 April 2025 Mr. Schierscher forwarded several emails to Mr. Grzesiak and me in which he informed us on the progress of pending Liechtenstein court proceedings in which TiVi Foundation and Solkomtel Foundation are currently involved. Again also at this occasion there was no mentioning on the instructions given to the Cypriot lawyers and that the applications already had been prepared and filed on 16 April 2025.

44   I only learned on 17 April 2025 (thus one day before the Easter break) when I was served with the applications of TiVi and Solkomtel Foundation as one of the respondents in the proceeding, that the applications comprising 245 and 104 pages respectively had already been filed on 16 April 2025 without me being informed or involved in the entire drafting and filing process.

45   I also only learned on 17 April 2025 that Mr. Schierscher and Mr. Grzesiak in their capacities as members of the foundation councils of TiVi Foundation and Solkomtel Foundation had travelled to Cyprus on or around 14 and 15 April 2025 to prepare the filing of the applications and also to produce and swear Affidavits which were attached to the applications for variations of the Cypriot Injunctions (see also Para 41).

46   I was entirely surprised to learn that Mr. Schierscher and Mr. Grzesiak had prepared and filed the entire applications of TiVi Foundation and Solkomtel Foundation as further respondents in the Cyprus proceeding to vary the injunction comprising over 200 and 100 pages respectively and containing several affidavits within only 3 working days after the Meeting of the Foundation Council of 10 April 2025, without me being informed on the instructions, status and progress of such application.

47   After having learned about these events my lawyer Mr. Niedermüller on 17 April 2025 sent an email to Mr. Schierscher (with Mr. Grzesiak in cc) to emphasize that such conduct was not in line with the requirements of a proper conduct of a Foundation Council and that I unlawfully had been excluded from the entire process following the meeting of the Foundation Council of 10 April 2025. In addition, he made a formal request for information to be provided with the entire communication and documentation related to the steps which led to the applications for variations of the Cypriot Instructions.

48   The same day, thus on 17 April 2025, I followed up with an additional E-Mail wherein I clarified that at the meeting of the Foundation Council of 10 April 2025 it had not been discussed what the next steps and timeline should be and that I had expected to be involved in the entire further communication and next steps before any filing.

49   I attach the emails of 17 April 2025 as Exhibit 7.

50   To date, I have not received a response to these emails from Mr. Schierscher or Mr. Grzesiak.

**VII.   Correctness and Language of Witness Statement**

51   I hereby confirm that the information contained in this witness statement is truthful, accurate and complete, to the best of my knowledge.

8

490

52    This witness statement was originally drawn up in English with the support of my lawyer, Dr. Matthias Niedermüller and is based on my personal description of events.

53    Should I be called to be interrogated, I intend to give my witness testimony in Polish.

54    I reserve the right to supplement this witness statement should additional information become available or if further issues need to be addressed.

_Limassol, 22.04.2025_

Place, Date

_T. Sz_

Tomasz Szelag

491

EIDESSTATTLICHE ERKLÄRUNG VON TOMASZ SZELAG

22. April 2025

**I.    Einführung**

1   Ich wurde von Herrn Solorz gebeten, eine schriftliche Stellungnahme zu den Ereignissen vor und nach den Sitzungen der Stiftungsräte der TiVi Foundation und der Solkomtel Foundation vom 10. April 2025 abzugeben.

2   Mein Name ist Tomasz Szelag und ich wurde am 13. Januar 1977 in Lubin, Polen, geboren. Meine aktuelle Büroadresse lautet 3 Krinou Street, The Oval, floor 5, Apartment/Büro 503, Agios Athanasios, 4103, Limassol.

3   Ich wurde von Herrn Zygmunt Solorz in seiner Eigenschaft als Gründer und Kurator zum Mitglied des Stiftungsrates der TiVi Foundation und der Solkomtel Foundation, beide mit Sitz in Vaduz, Liechtenstein, ernannt.

4   Ich erkläre hiermit Folgendes:

5   Alle Angaben in dieser eidesstattlichen Erklärung beruhen auf meiner persönlichen Kenntnis der Tatsachen und meiner Erfahrung wie sie in den folgenden Abschnitten beschrieben sind.

**II.    Funktion und Zuständigkeiten**

6   Ich bin seit Mai 2009 für Herrn Solorz tätig. Zurzeit bin ich bei Herrn Zygmunt Solorz als Chief Financial Officer (CFO) in ca. 200 Unternehmen in 13 Ländern, die alle zu den Holdings von Herrn Solorz gehören.

7   Seit 2022 bin ich Mitglied des Stiftungsrats der TiVi Foundation und der Solkomtel Foundation.

8   Die TiVi Foundation und die Solkomtel Foundation halten direkt Anteile an den folgenden zypriotischen Unternehmen:

   a.   Reddev Investments Limited

   b.   Stasalco Limited

   c.   Karswell Limited

   d.   WBN Holdings Limited

   (im Folgenden "zypriotische Holdings")

9   Die zypriotischen Holdings halten ihrerseits direkt und indirekt Anteile an rund 150 Unternehmen, vor allem aus den Bereichen Medien, Telekommunikation, IT und Energie.

10  Seit 2016 leite ich auch das Investment Management sowie die Vermögensverwaltung ("Family Office") von Herrn Solorz und seiner Familie.

1

### III. Jüngste Entwicklungen im Stiftungsrat

11 Mit Amtsbefehl vom 26. Oktober 2024 hat das Fürstliche Landgericht u.a. Herrn Peter Schierscher, Rechtsanwalt in Vaduz, zum Beistand der TiVi Foundation und der Solkomtel Foundation bestellt. Dementsprechend setzten sich die Stiftungsräte beider Stiftungen ab diesem Zeitpunkt aus Herrn Schierscher als Beistand sowie Frau Katarzyna Tomczuk und mir als ordentliche Mitglieder zusammen. Ferner ordnete das Gericht an, dass die Kinder und die Zweitbegünstigten das Recht haben, einen Nachfolger für Frau Katarzyna Tomczuk zu benennen, falls diese zurücktritt.

12 Mit schriftlicher Erklärung vom 3. März 2025 hat Frau Tomczuk ihr Amt als Mitglied der Stiftungsrätin der TiVi Foundation und der Solkomtel Foundation niedergelegt.

13 Nach dem Rücktritt von Frau Tomczuk haben Frau Aleksandra Zak, Herr Pjotr Zak und Herr Tobias Solorz als Zweitbegünstigte der TiVi Foundation und der Solkomtel Foundation aufgrund des Amtsbefehls vom 26. Oktober 2024 Herrn Jaroslaw Grzesiak als Mitglied der Stiftungsräte beider Stiftungen nominiert.

### IV. Vorbereitung der Stiftungsratssitzung vom 10. April 2025

14 In einer an Herrn Schierscher und mich gerichteten E-Mail vom 2. April 2025 schlug Herr Grzesiak vor, die folgenden Punkte auf die Tagesordnung der nächsten Stiftungsratssitzungen zu setzen:

15 Für die TiVi Foundation:

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Reddev Investments Limited, einer zypriotischen Gesellschaft mit beschränkter Haftung, die unter der Nummer HE 330471 ("Reddev") registriert ist, durch die TiVi Foundation als deren alleinige Gesellschafterin, nämlich Herrn George Sphiktos und Frau Maria Kannava;

16 Für die Solkomtel-Stiftung:

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Stasalco Limited, einer unter der Nummer HE 372875 eingetragenen zypriotischen Gesellschaft mit beschränkter Haftung ("Stasalco"), durch die Solkomtel-Foundation als deren alleinige Gesellschafterin: Herr Sphiktos und Frau Kannava;

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Karswell Limited, einer zypriotischen Gesellschaft mit beschränkter Haftung, die unter der Nummer HE 229808 ("Karswell") eingetragen ist, durch die Solkomtel Foundation als deren alleinige Gesellschafterin: Herr Sphiktos und Frau Kannava;

- Beschluss über die Änderung der Satzung der WBN Holdings Limited, einer unter der Nummer HE 336956 eingetragenen zypriotischen Gesellschaft mit beschränkter Haftung ("WBN") in Bezug auf die Verordnung 83 und die Verordnung 99;

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren des Unternehmens durch die Solkomtel Foundation als alleinige Gesellschafterin der WBN: Herr Sphiktos und Frau Kannava;

2

17   Die E-Mail von Herrn Grzesiak vom 2. April 2025 enthielt auch die folgenden Entwürfe von Dokumenten:

- Entwurf eines Beschlusses des Stiftungsrates der TiVi Foundation bezüglich der Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren der Reddev;

- Entwurf eines Beschlusses der TiVi Foundation als alleinige Gesellschafterin der Reddev bezüglich der Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren;

- Entwurf eines Beschlusses des Stiftungsrats der Solkomtel Foundation über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren der Stasalco;

- Entwurf eines Beschlusses der Solkomtel Foundation als alleinige Gesellschafterin der Stasalco über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren;

- Entwurf eines Beschlusses des Stiftungsrates der Solkomtel Foundation über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren der Karswell;

- Entwurf eines Beschlusses der Solkomtel Foundation als alleinige Gesellschafterin der Karswell über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren;

- Entwurf eines Beschlusses des Stiftungsrates der Solkomtel Foundation über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren der WBN;

- Entwurf eines Beschlusses der Solkomtel Foundation als alleinige Gesellschafterin der WBN über die Ernennung von Herrn Sphiktos und Frau Kannava zu weiteren Direktoren;

- Entwurf eines Beschlusses des Stiftungsrates der Solkomtel Foundation zur Änderung der Satzung der WBN;

- Entwurf eines Beschlusses der Solkomtel Foundation als alleiniger Anteilseigner des WBN zur Änderung der Satzung der WBN;

- Lebenslauf von Herrn Sphiktos;

- Lebenslauf von Frau Kannava;

18   Hinsichtlich der einstweiligen Verfügungen des Bezirksgerichts Limassol vom 10. oder 11. Oktober 2024 in den Rechtssachen Nr. 31/2024 (TiVi Foundation) und Nr. 32/2024 (Solkomtel Foundation) ("zypriotische einstweilige Verfügungen") vertritt Herr Grzesiak folgende Auffassung:

*"In Anbetracht der vom zypriotischen Gericht verhängten Einstweiligen Verfügungen haben sich die Zweitbegünstigten als Antragsteller bereit erklärt, ihre Zustimmung zu den geplanten Änderungen zu erteilen und auf das Recht zu verzichten, diese Unternehmensänderungen als Verstoss gegen die Verfügungen zu behandeln. Die Verzichtserklärungen werden uns noch vor der Verwaltungsratssitzung zur Kenntnis gebracht.*

19   Diese E-Mail und ihre Anhänge sind als <u>Beilage 1</u> dieser eidesstattlichen Erklärung beigefügt.

3

494

20   Ich habe diese E-Mail zur Information an meine Anwälte weitergeleitet. Mit E-Mail vom 3. April 2025 an Herrn Schierscher (mit Herrn Grzesiak in cc) brachte mein Rechtsanwalt Dr. Matthias Niedermüller sein Verständnis dafür zum Ausdruck, dass dieses von Herrn Greziak angesprochene Thema auf die Tagesordnung der nächsten, noch anberaumten Sitzung des Stiftungsrats gesetzt und vor einer Entscheidung umfassend erörtert werden würde. Diese E-Mail ist ebenso in Beilage 1 enthalten.

21   Mit E-Mail vom 4. April 2025 bestätigte Peter Schierscher, dass immer genügend Zeit zur Verfügung stehe, um die Themen zu überprüfen, damit sie in der Sitzung gründlich diskutiert werden können und eine unabhängige Entscheidung getroffen werden kann. Diese E-Mail ist ebenso in Beilage 1 enthalten.

22   Ebenfalls am Freitag, 4. April 2025, lud Peter Schierscher zur Stiftungsratssitzung der TiVi Foundation und der Solkomtel Foundation für Donnerstag, 10. April 2024, 10.00 Uhr, mit folgender Tagesordnung ein:

23   Für die TiVi Foundation:

     1.   *Begrüssung*

     2.   *Ernennung des Vorsitzenden und des Sekretärs*

     3.   *Genehmigung des Protokolls vom 4. Dezember 2024*

     4.   *Diskussion und Beschlussfassung über die Ernennung von zwei weiteren Direktoren von Reddev durch die Stiftung als alleinige Gesellschafterin der Reddev Investments Limited, einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter der Nummer HE 330471 („Reddev") eingetragen ist:*

        (i)   *George Sphiktos und*

        (ii)   *Maria Kannava.*

        *Lebensläufe und Annahmeschreiben der beiden Kandidaten sowie ein Entwurf eines Beschlusses des Stiftungsrats sind beigefügt.*

     5.   *Diskussion und Beschlussfassung über die geplante Netia S.A. Ausgliederungstransaktion im Bereich Infrastruktur*

     6.   *Lieferadresse für Peter Schierscher in Polen*

        *Peter Schierscher schlägt als Lieferadresse Baker McKenzie Krzyżowski i Wspólnicy sp.k. vor.*

     7.   *Erörterung und Beschlussfassung über die Rechnungen der AF Trustees*

     8.   *Varia*

24   Für die Solkomtel Foundation

     1.   *Begrüssung*

     2.   *Ernennung des Vorsitzenden und des Sekretärs*

     3.   *Genehmigung des Protokolls vom 4. Dezember 2024*

4.  Diskussion und Beschlussfassung über die Ernennung von zwei weiteren Direktoren der Stasalco Limited, einer im Handelsregister der Republik Zypern unter der Nummer HE 372875 eingetragenen Gesellschaft mit beschränkter Haftung (die "Stasalco"), durch die Stiftung als deren alleinige Gesellschafterin:

    (i)  George Sphiktos und

    (ii)  Maria Kannava

    Lebensläufe und Annahmeschreiben der beiden Kandidaten sowie ein Entwurf eines Beschlusses des Stiftungsrats sind beigefügt.

5.  Diskussion und Beschlussfassung über die Ernennung von zwei weiteren Direktoren der Karswell Limited, einer im Handelsregister der Republik Zypern unter der Nummer HE 229808 eingetragenen Gesellschaft mit beschränkter Haftung (die "Karswell"), durch die Stiftung als deren alleinige Gesellschafterin:

    (i)  George Sphiktos und

    (ii)  Maria Kannava.

    Lebensläufe und Annahmeschreiben der beiden Kandidaten sowie ein Entwurf für einen Beschluss des Stiftungsrats sind beigefügt.

6.  Diskussion und Beschlussfassung über die Änderung der Satzung der WBN Holdings Limited, einer Gesellschaft mit beschränkter Haftung, die im Handelsregister der Republik Zypern unter der Nummer HE 336956 ("WBN") eingetragen ist, im Hinblick auf die Verordnung 83 und die Verordnung 99.

    Der Entwurf eines Stiftungsratsbeschlusses zur Änderung der Satzung von WBN ist beigefügt.

7.  Diskussion und Beschlussfassung über die Ernennung von zwei weiteren Direktoren der WBN Holdings Limited, einer Gesellschaft mit beschränkter Haftung, die im Handelsregister der Republik Zypern unter der Nummer HE 336956 eingetragen ist (die "WBN"), durch die Stiftung deren alleinige Gesellschafterin:

    (i)  George Sphiktos und

    (ii)  Maria Kannava

8.  Lieferadresse für Peter Schierscher in Polen

    Peter Schierscher schlägt als Lieferadresse Baker McKenzie Krzyżowski i Wspólnicy sp.k. vor.

9.  Erörterung und Beschlussfassung über die Rechnungen der AF Trustees

10.  Varia

25  Die Einladungen sind als <u>Beilagen 2a und 2b</u> beigefügt.

26  Am 07. April 2025 sandte Herr Solorz in seiner Eigenschaft als Kurator der TiVi Foundation und der Solkomtel Foundation ein undatiertes Schreiben an Herrn Schierscher, in dem er seine starken Bedenken gegen die Ernennung von Herrn Grzesiak zum Mitglied der Stiftungsräte der

TiVi Foundation und der Solkomtel Foundation sowie gegen die vorgeschlagene Ernennung weiterer Direktoren in den zypriotischen Tochtergesellschaften der TiVi Foundation und der Solkomtel Foundation zum Ausdruck brachte. Ich füge dieses Schreiben als Beilage 3 bei.

27    Am 5. April 2025 gab Andew Demetriou, Rechtsanwalt und Partner der zypriotischen Anwaltskanzlei Ioannides Demetriou LLC, ein schriftliches Rechtsgutachten ab, in dem er darauf hinwies, dass die von Herrn Grzesiak vorgeschlagene Ernennung zusätzlicher Direktoren in zypriotischen Tochtergesellschaften einen Verstoss gegen die zypriotischen Unterlassungsverfügungen darstellen würde. Ein solcher Verstoss würde eine strafbare Missachtung des Gerichts darstellen. Ich füge dieses Schreiben als Beilage 4 bei.

28    Mit E-Mail vom 7. April 2025, 22:03 Uhr, leitete Herr Schierscher dieses Rechtsgutachten an Herrn George Z. Georgiou, Partner und Rechtsanwalt in der Anwaltskanzlei George Z. Georgiou & Associates LLC, weiter, der mit der Beratung und dem Handeln im Namen der TiVi Foundation und der Solkomtel Foundation beauftragt war. Ich wurde in dieser Mail in CC gesetzt.

29    Mit E-Mail vom 8. April 2025, 9:02 Uhr, übermittelte Herr Grzesiak Herrn Schierscher und Herrn Georgiou die angekündigten Verzichtserklärungen der Sekundärbegünstigten. Auch bei dieser Korrespondenz war ich in CC gesetzt. Ich füge diese Korrespondenz als Beilage 5 bei.

30    Mit E-Mail vom 8. April 2025, 22:53 Uhr, übermittelte Herr Georgiou Herrn Schierscher und Herrn Grzesiak (mit mir in CC) seinen Rat und erklärte, dass die rechtliche Einschätzung von Andew Demetriou vom 5. April 2025 korrekt sei. Er stimmte mit Herrn Demetriou darin überein, dass die von Herrn Grzesiak vorgeschlagenen Beschlüsse im Falle ihrer Verabschiedung einen Verstoss gegen die zypriotische einstweilige Verfügung darstellen und dass die vorgeschlagenen Änderungen eine gerichtliche Abänderung der zypriotischen einstweilige Verfügung unter Benachrichtigung beider Seiten und unter klarer Darlegung der Gründe für diese Abänderung erfordern. Diese Korrespondenz ist ebenso in Beilage 5 enthalten.

31    Am 9. April 2025 teilte Herr Schierscher während der an diesem Tag durchgeführten Gerichtsverhandlung mir und meinem Anwalt Herrn Niedermüller und Berichten zufolge auch den Anwälten von Herrn Solorz mündlich mit, dass er in der für den folgenden Tag anberaumten Sitzung der Stiftungsräte gegen den Vorschlag von Herrn Grzesiak zur Ernennung weiterer Direktoren in zypriotischen Tochtergesellschaften stimmen werde.

32    Was die Tagesordnung für diese Sitzungen der Stiftungsräte der TiVi Foundation und der Solkomtel Foundation betrifft, so wurden keine zusätzlichen Punkte geplant oder von einem Mitglied der Stiftungsräte vorgeschlagen.

## V.    Stiftungsratssitzungen 10. April 2025

33    Nach Prüfung des Rechtsgutachtens von Herrn Georgiou in der Sitzung des Stiftungsrates der TiVi Foundation am 10. April 2025 haben die Mitglieder des Stiftungsrates einstimmig beschlossen, den Antrag von Herrn Grzesiak abzulehnen und keine weiteren Direktoren für die Reddev zu bestellen.

34  Herr Grzesiak warf jedoch im Verlauf der Stiftungsratssitzung ein neues Thema auf und schlug vor, dass die TiVi Foundation beim Gericht in Zypern eine Änderung der zypriotischen einstweiligen Verfügung beantragen solle, die dann die zusätzliche Bestellung von Direktoren für die Reddev ermöglichen würde. Herr Schierscher und Herr Grzesiak stimmten für eine Anweisung an die zypriotischen Anwälte der TiVi Foundation, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren im Unternehmen zu ermöglichen. Ich habe nachdrücklich protestiert und gegen diese Entschliessung und Anweisung gestimmt.

35  Nach Prüfung des Rechtsgutachtens von Herrn Georgiou in der Sitzung des Stiftungsrats der Solkomtel Foundation am 10. April 2025 beschlossen die Mitglieder des Stiftungsrats einstimmig, den Antrag von Herrn Grzesiak abzulehnen und keine zusätzlichen Direktoren von Stasalco, Karswell und WBN zu ernennen und die Satzung von WBN nicht zu ändern.

36  Herr Grzesiak warf jedoch im Verlauf der Stiftungsratssitzung ein neues Thema auf und schlug vor, dass die Solkomtel Foundation beim Gericht in Zypern eine Änderung der zypriotischen einstweiligen Verfügung beantragen solle, die dann die Ernennung weiterer Direktoren der Stasalco, Karswell und WBN ermöglichen würde, ohne die Satzung der WBN zu ändern. Herr Schierscher und Herr Grzesiak stimmten für eine Anweisung an die zypriotischen Anwälte der TiVi Foundation, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren in den genannten Unternehmen sowie die Änderung der Satzung der WBN zu ermöglichen. Ich habe gegen diesen Beschluss und diese Anweisung entschieden protestiert und dagegen gestimmt.

37  Die Tagesordnungen der Sitzungen der TiVi Foundation und der Solkomtel Foundation enthielten nicht den Punkt, den zypriotischen Rechtsanwalt zu beauftragen, einen Antrag auf Änderung der zypriotischen einstweiligen Verfügung zu stellen. Dies wurde erst in der Sitzung des Stiftungsrats angesprochen, nachdem der Antrag von Herrn Grzesiak einstimmig abgelehnt worden war. Daher hatte ich nicht die Möglichkeit, diesen Vorschlag sorgfältig zu prüfen.

38  Im Rahmen der Stiftungsratssitzung fand keine Diskussion und Bewertung der zur Bestellung vorgeschlagenen Personen statt. Es gab auch keine Diskussion über die möglichen negativen Auswirkungen und Folgen einer solchen Bewerbung für die TiVi Foundation und die Solkomtel Foundation und auch nicht, ob und inwieweit die Stiftungen auf eine spätere Zustimmung der Antragsteller und Zweitbegünstigten angewiesen wären.

39  Ausser der Entscheidung der beiden anderen Mitglieder der Stiftungsräte, die zypriotischen Anwälte zu beauftragen, wurden keine weiteren Einzelheiten besprochen, insbesondere wurde kein Zeitrahmen festgelegt. Insbesondere bin ich davon ausgegangen (wie auch bei anderen früheren Angelegenheiten/Themen), dass ich über alle Anweisungen an den zyprischen Anwalt der Stiftung und über den gesamten Prozess vor Einreichung eines Antrags informiert und in Kopie gesetzt werde. Ich füge die Protokolle der Sitzungen vom 10. April 2025 als Beilagen 6a und 67b bei.

### VI.  Massnahmen nach der Sitzung des Stiftungsrats am 10. April 2025

40  Nach dem Ende der Stiftungsratssitzungen erhielt ich keine weitere Korrespondenz von Herrn Schierscher und Herrn Grzesiak über den Stand und die Fortschritte des Antrags auf Änderung

7

498

der zypriotischen einstweiligen Verfügung. Insbesondere wurde ich, im Gegensatz zu den Tagen vor der Sitzung des Stiftungsrats vom 10. April 2025, nicht in den Schriftverkehr mit dem zypriotischen Anwalt der Stiftung einbezogen

41   Am 14. April 2025 hatte ich ein kurzes Gespräch mit Herrn Schierscher zu einem anderen Thema, und auch bei dieser Gelegenheit erwähnte er nicht, dass ein Antragsentwurf vorbereitet worden war und am nächsten Tag eingereicht werden würde. Er erwähnte, dass er am nächsten Tag in Zypern sein würde, aber da ich in Polen war, habe ich keine weiteren Fragen gestellt.

42   Ich bin also zu diesem Zeitpunkt davon ausgegangen, dass es keine Fortschritte bei der Vorbereitung des Antrags gegeben hat.

43   Am 14. und 15. April 2025 leitete Herr Schierscher mehrere EMails an Herrn Grzesiak und mich weiter, in denen er uns über den Stand der anhängigen liechtensteinischen Gerichtsverfahren informierte, an denen die TiVi Foundation und die Solkomtel Foundation derzeit beteiligt sind. Auch bei dieser Gelegenheit wurde nicht erwähnt, dass die zypriotischen Anwälte beauftragt wurden und dass die Anträge bereits vorbereitet und am 16. April 2025 eingereicht worden waren.

44   Erst am 17. April 2025 (also einen Tag vor der Osterpause), als mir die Anträge der TiVi Foundation und der Solkomtel Foundation als einer der Antragsgegner im Verfahren zugestellt wurden, erfuhr ich, dass die 245 bzw. 104 Seiten umfassenden Anträge bereits am 16. April 2025 eingereicht worden waren, ohne dass ich darüber informiert oder in den gesamten Abfassungs- und Einreichungsprozess einbezogen worden war.

45   Ausserdem erfuhr ich erst am 17. April 2025, dass Herr Schierscher und Herr Grzesiak in ihrer Eigenschaft als Mitglieder der Stiftungsräte der TiVi Foundation und der Solkomtel Foundation am oder um den 14. und 15. April 2025 nach Zypern gereist waren, um die Einreichung der Anträge vorzubereiten und auch die eidesstattlichen Erklärungen vorzulegen und zu beglaubigen, die den Anträgen auf Änderung der zypriotischen einstweilige Verfügungen beigefügt waren (siehe auch Randnummer 41).

46   Ich war völlig überrascht, als ich erfuhr, dass Herr Schierscher und Herr Grzesiak die gesamten Anträge der TiVi Foundation und Solkomtel Foundation auf Änderung der einstweiligen Verfügung, die über 245 bzw. 104 Seiten umfassen und mehrere eidesstattliche Erklärungen enthalten, innerhalb von nur drei Arbeitstagen nach der Sitzung des Stiftungsrats vom 10. April 2025 vorbereitet und eingereicht hatten, ohne dass ich über die Anweisungen, den Status und den Fortschritt dieses Antrags informiert wurde.

47   Nachdem ich von diesen Ereignissen erfahren hatte, schickte mein Anwalt, Herr Niedermüller, am 17. April 2025 eine E-Mail an Herrn Schierscher (mit Herrn Grzesiak in CC), um zu betonen, dass ein solches Verhalten nicht den Anforderungen an ein ordnungsgemässes Verhalten eines Stiftungsrates entspreche und dass ich nach der Sitzung des Stiftungsrates vom 10. April 2025 unrechtmässig von dem gesamten Prozess ausgeschlossen worden sei. Darüber hinaus forderte er förmlich die Übermittlung der gesamten Kommunikation und Dokumentation im Zusammenhang mit den Schritten, die zu den Anträgen auf Änderung der zypriotischen einstweiligen Verfügungen führten.

48 Noch am selben Tag, also am 17. April 2025, folgte eine weitere E-Mail, in der ich klarstellte, dass in der Sitzung des Stiftungsrats vom 10. April 2025 nicht besprochen worden war, wie die nächsten Schritte und der Zeitplan aussehen sollten, und dass ich erwartet hatte, in die gesamte weitere Kommunikation und die nächsten Schritte vor einer Einreichung einbezogen zu werden

49 Ich füge die E-Mails vom 17. April 2025 als Beilage 7 bei.

50 Bis heute habe ich weder von Herrn Schierscher noch von Herrn Grzesiak eine Antwort auf diese E-Mails erhalten.

**VII. Richtigkeit und Sprache der Zeugenaussage**

51 Ich bestätige hiermit, dass die in dieser Zeugenaussage enthaltenen Angaben nach meinem besten Wissen und Gewissen wahrheitsgemäss, genau und vollständig sind.

52 Diese Zeugenaussage wurde ursprünglich in englischer Sprache mit Unterstützung meines Anwalts, Dr. Matthias Niedermüller, verfasst und basiert auf meiner persönlichen Schilderung der Ereignisse.

53 Sollte ich zu einem Verhör geladen werden, beabsichtige ich, meine Zeugenaussage auf Polnisch zu machen.

54 Ich behalte mir das Recht vor, diese Zeugenaussage zu ergänzen, falls zusätzliche Informationen verfügbar werden oder weitere Fragen behandelt werden müssen.

*Unterschriftsseite folgt*

500

_____

Ort, Datum


_____

Tomasz Szelag

Exhibit - 1

## Gorton Anton Ferdinand

**Von:**           Fabian Rischka
**Gesendet:**     Dienstag, 22. April 2025 14:29
**An:**           Jakob Braun
**Betreff:**       AW: TiVi/Solkomtel - appointment of the new directors

**Von:** Peter Schierscher <peter.schierscher@ritterschierscher.li>
**Gesendet:** Freitag, 4. April 2025 15:05
**An:** Matthias Niedermüller <mn@niedermueller.law>
**Cc:** 'Tomasz Szelag' <tomasz.szelag@arcesius.com.cy>: 'jpgrzesiak@gmail.com' <jpgrzesiak@gmail.com>
**Betreff:** AW: TiVi/Solkomtel - appointment of the new directors

Dear Matthias

Yes, that is correct.

There has always been, and will continue to be, sufficient time provided to review the topics and ensure that they can be discussed thoroughly during the meeting in order to make well-informed decisions.

Kind regards,

Peter

**Von:** Matthias Niedermüller <mn@niedermueller.law>
**Gesendet:** Donnerstag, 3. April 2025 22:23
**An:** Peter Schierscher <peter.schierscher@ritterschierscher.li>
**Cc:** 'Tomasz Szelag' <tomasz.szelag@arcesius.com.cy>: 'jpgrzesiak@gmail.com' <jpgrzesiak@gmail.com>
**Betreff:** AW: TiVi/Solkomtel - appointment of the new directors

Dear Peter

I refer to the below correspondence in which Mr. Grzesiak applied to put on vote several topics mentioned in the Mail.

I understand from our call that the topics mentioned below will be put on the agenda for the next meeting of the Foundation Council of TiVi and Solkomtel together with several other items in order to ensure that the topics may be discussed comprehensively at the meeting before any decision would be taken.

To my understanding the date and time of the next meeting of the Foundation Council is yet to be defined and the meeting would be scheduled in a manner that would allow sufficient time to review and consider all proposals on the agenda.

For your confirmation of the above understanding I thank you in advance.

Kind regards

Matthias

**Dr. Matthias Niedermüller, M.B.L-HSG, TEP**
**Managing Partner | Attorney at Law | Notary Public**

i

Werdenbergerweg 11 | 9490 Vaduz, Liechtenstein | T: +423 222 0750 | F: +423 222 0751
Mail: mn@niedermueller.law







Wichtiger Hinweis:
Dieses E-Mail kann Betriebs- oder Geschäftsgeheimnisse, dem Anwaltsgeheimnis unterliegende oder sonstige vertrauliche Informationen enthalten und ist von Gesetzes
wegen geschützt. Falls Sie dieses E-Mail irrtümlich erhalten haben, ist Ihnen eine Kenntnisnahme des Inhalts, eine Vervielfältigung oder Weitergabe dieses E-Mails sowie
eventueller Anhänge ausdrücklich untersagt. Bitte benachrichtigen Sie uns unter obgenannter Adresse und löschen Sie das empfangene E-Mail sowie allfällige Anhänge
auf Ihrem Computer oder Netzwerk. Vielen Dank.

Important notice:
This e-mail may contain trade secrets or privileged, undisclosed or otherwise confidential information and is legally privileged. If you have received this e-mail by mistake,
you are hereby notified that any review, copying or distribution of the e-mail and its attachments is strictly prohibited. Please inform us at the above mentioned address
and delete the e-mail and any attachments from your system. Thank you for your co-operation.

Początek przekazywanej wiadomości:

**Od:** Jarosław Grzesiak <jpgrzesiak@gmail.com>
**Data:** 2 kwietnia 2025 o 11:50:44 CEST
**Do:** Peter Schierscher <peter.schierscher@ritterschierscher.li>, Tomasz Szelag <tomasz.szelag@arcesius.com.cy>
**Temat: PD: TiVi/Solkomtel - appointment of the new directors**

Dear Peter,
In reference to our discussion about the asset protection in Cyprus, I kindly request that we consider and
put on vote the appointment of the additional directors in Cyprus based companies which are fully owned
by either TiVi or Solkomtel.

**1. Agenda:**
I propose to add to the agenda of the next foundation board meeting of TiVi Foundation:
- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of Reddev
Investments Limited , a limited liability Company registered with the Registrar of Companies of the
Republic of Cyprus, under number HE 330471 (the "Reddev"), two additional directors of Reddev: (i)
George Sphiktos and (ii) Maria Kannava.

I propose to add to the agenda of the next foundation board meeting of Solkomtel Foundation:
- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of Stasalco Limited, a
limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under
number HE 372875 (the "Stasalco"), two additional directors of the Company: (i) George Sphiktos and (ii)
Maria Kannava;
- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of Karswell Limited ,
a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under
number HE 229808 (the "Karswell"), two additional directors of the Company(i) George Sphiktos and (ii)
Maria Kannava;
- decision on amending the Articles of Association of WBN Holdings Limited, a limited liability Company
registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 ("WBN")
regarding the Regulation 83 and the Regulation 99;
- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of WBN two
additional directors of the Company: (i) George Sphiktos and (ii) Maria Kannava.

2

**2. Directors:**
Upon consultations with the Secondary Beneficiaries, I provide for nominations: (i) George Sphiktos and (ii) Maria Kannava. Please see attached their respective CVs. Both candidates are experienced individuals and I trust they can bring professionalism and sound judgement to the board of directors.

**3. Compliance with the freezing orders issued in Cyprus:**
Given the existence of the freezing injunctions imposed by the Cyprus court, the Secondary Beneficiaries as the applicants, have agreed to grant consents for the contemplated changes and to waive the right to treat such corporate changes as in breach of the injunction orders. The waivers will be provided to our attention ahead of the board meeting.

**4. Instructions:**
- First step: taking the resolutions by the foundation boards – please see attached draft resolutions for your consideration. In all companies except for WBN there are empty vacancies in the Cyprus boards that the foundation can fill in at its discretion. In case of WBN we need to amend the AoAs to create new vacancies. With respect to the WBN first the amendment of the Articles of Association needs to be officially registered at the Companies Register. Only once the AoAs are amended Solkomtel Foundation may proceed with the appointment of the new directors.
- Second step: taking the resolutions of each respective Cyprus company. As the foundations hold 100 shares in Cyprus companies (they are sole members/sole shareholders), there is no need to call formal shareholders meeting. We can sign the resolutions during our foundation meeting (except for WBN in case of which we can only sign the resolution on changing the AoAs. Once this change is registered we will be in position to sign the resolution on appointing the new directors).
- Third step: the resolutions on the appointment of new directors, together with the acceptance letters, shall be delivered to the Secretary of each of the Cypriot companies at the registered office of the company by hand, via courier and/or by email, if available.

**5. Documents:**
Please consider the following documents. I have marked the ones which will be provided at a later stage (before our next board meeting).

1.
   a. Reddev:

         i. "1. Reddev – draft resolution of the foundation board"

         ii. "2. Reddev – acceptance letter – G Sphiktos" – to be provided

         iii. "3. Reddev – acceptance letter – M Kannava"– to be provided

         iv. "4. Reddev – draft resolution of the foundation as shareholder"

1.
   b. Stasalco:

         i. "5. Stasalco – draft resolution of the foundation board"

         ii. "6. Stasalco – acceptance letter – G Sphiktos "– to be provided

         iii. "7. Stasalco – acceptance letter – M Kannava "– to be provided

                                          iv.   "8. Stasalco – draft resolution of the foundation as
shareholder"

1.

    c.  Karswell:

                  i.   "9. Karswell – draft resolution of the foundation
board"

                  ii.   "10. Karswell – acceptance letter – G Sphiktos "– to
be provided

                  iii.   "11. Karswell – acceptance letter – M Kannava "– to
be provided

                  iv.   "12. Karswell – draft resolution of the foundation as
shareholder"

1.

    d.  WBN

                  i.   "13. WBN – draft resolution of the foundation board
– amendment of AoA"

                  ii.   "14. WBN – draft resolution of the foundation board
as shareholder – amendment of AoA"

                  iii.   "15. WBN – draft resolution of the foundation board"
                  iv.   "16. WBN – acceptance letter – G Sphiktos " – to be
provided

                  v.   "17. WBN – acceptance letter – M Kannava " – to be
provided

                  vi.   "18. WBN – draft resolution of the foundation as
shareholder"

1.

    e.  Directors:

                  i.   "19. CV - G Sphiktos"
                  ii.   "20. CV - M Kannava"

1.

    f.  Waiver letters:

                  i.   "21. Waiver letter to TiVi Foundation" – to be
provided

                  ii.   "22. Waiver letter to Solkomtel Foundation" – to be
provided

Please do let me know if you have any questions.

Best regards,
Jarek

-----------

Drogi Piotrze,

4

W nawiązaniu do naszej dyskusji na temat ochrony aktywów na Cyprze, uprzejmie proszę o rozważenie i poddanie pod głosowanie powołania dodatkowych dyrektorów w spółkach z siedzibą na Cyprze, które są w pełni własnością TiVi lub Solkomtel.

1. Porządek obrad:

Proponuję dodać do porządku obrad najbliższego posiedzenia rady fundacji TiVi Foundation:
– decyzji o powołaniu przez Fundację jako Jedynego Członka (Jedynego Udziałowca) Reddev Investments Limited , spółki z ograniczoną odpowiedzialnością zarejestrowanej w Rejestrze Spółek Republiki Cypryjskiej pod numerem HE 330471 ("Reddev"), dwóch dodatkowych dyrektorów Reddev: (i) George Sphiktos oraz (ii) Maria Kannava.

Proponuję dodać do porządku obrad następnego posiedzenia rady fundacji Solkomtel Foundation:
– podjęcie decyzji o powołaniu przez Fundację jako Jedynego Członka (Jedynego Udziałowca) Stasalco Limited, spółki z ograniczoną odpowiedzialnością zarejestrowanej w Rejestrze Spółek Republiki Cypryjskiej pod numerem HE 372875 ("Stasalco"), dwóch dodatkowych dyrektorów Spółki: (i) George'a Sphiktosa oraz (ii) Marii Kannavy;

– decyzja o powołaniu przez Fundację jako Jedynego Członka (Jedynego Udziałowca) Karswell Limited, spółki z ograniczoną odpowiedzialnością zarejestrowanej w Rejestrze Spółek Republiki Cypryjskiej pod numerem HE 229808 ("Karswell"), dwóch dodatkowych dyrektorów Spółki: (i) George Sphiktos oraz (ii) Maria Kannava;

– decyzja w sprawie zmiany statutu WBN Holdings Limited, spółki z ograniczoną odpowiedzialnością zarejestrowanej w Rejestrze Spółek Republiki Cypryjskiej pod numerem HE 336956 ("WBN") w odniesieniu do Rozporządzenia 83 i Rozporządzenia 99;

– decyzję o powołaniu przez Fundację jako Jedynego Członka (Jedynego Udziałowca) WBN dwóch dodatkowych dyrektorów Spółki: (i) George'a Sphiktosa oraz (ii) Marii Kannavy.

2. Dyrektorzy:

Po konsultacjach z Beneficjentami Wtórnymi, przedstawiam nominacje: (i) George'a Sphiktosa oraz (ii) Marii Kannavy. W załączeniu przesyłam ich życiorysy. Obaj kandydaci są doświadczonymi osobami i wierzę, że mogą wnieść do zarządu profesjonalizm i zdrowy osąd.

3. Zgodność z nakazami zabezpieczenia wydanymi na Cyprze:

Biorąc pod uwagę istnienie nakazów zamrożenia nałożonych przez sąd cypryjski, Beneficjenci Wtórni jako wnioskodawcy zgodzili się udzielić zgody na rozważane zmiany i zrzec się prawa do traktowania takich zmian korporacyjnych jako naruszenia nakazów zamrożenia. Zrzeczenia zostaną przekazane do naszej wiadomości przed posiedzeniem Rady Dyrektorów.

4. Instrukcje:

– Pierwszy krok: podjęcie uchwał przez zarządy fundacji - prosimy o zapoznanie się z załączonymi projektami uchwał. We wszystkich spółkach z wyjątkiem WBN istnieją puste miejsca w zarządach cypryjskich, które fundacja może obsadzić według własnego uznania. W przypadku WBN musimy zmienić AoA, aby utworzyć nowe wakaty. W odniesieniu do WBN najpierw należy oficjalnie zarejestrować zmianę statutu w rejestrze spółek. Dopiero po wprowadzeniu zmian do AoA Fundacja Solkomtel może przystąpić do mianowania nowych dyrektorów.

– Drugi krok: podjęcie uchwał przez każdą spółkę cypryjską. Ponieważ fundacje posiadają 100 udziałów w spółkach cypryjskich (są jedynymi członkami / jedynymi udziałowcami), nie ma potrzeby zwoływania formalnego zgromadzenia wspólników. Możemy podpisać uchwały podczas spotkania fundacji (z wyjątkiem WBN, w przypadku którego możemy podpisać tylko uchwałę o zmianie AoA. Po zarejestrowaniu tej zmiany będziemy mogli podpisać uchwałę o powołaniu nowych dyrektorów).

– Trzeci krok: uchwały o powołaniu nowych dyrektorów, wraz z listami akceptacyjnymi, należy dostarczyć sekretarzowi każdej ze spółek cypryjskich w siedzibie spółki osobiście, kurierem i/lub pocztą elektroniczną, jeśli jest dostępna.

5. Dokumenty:

Proszę o wzięcie pod uwagę następujących dokumentów. Zaznaczyłem te, które zostaną dostarczone w późniejszym terminie (przed naszym kolejnym posiedzeniem zarządu).

Reddev:

5

    i.   "1. Reddev - projekt uchwały zarządu fundacji"

    ii.   "2. Reddev - list akceptacyjny - G Sphiktos" - do dostarczenia

    iii.   "3. Reddev - list akceptacyjny - M Kannava" - do dostarczenia

    iv.   "4. Reddev - projekt uchwały fundacji jako akcjonariusza"

Stasalco:

    i.   "5. Stasalco - projekt uchwały zarządu fundacji"

    ii.   "6. Stasalco - list akceptacyjny - G Sphiktos "- do dostarczenia

    iii.   "7. Stasalco - list akceptacyjny - M Kannava "- do dostarczenia

    iv.   "8. Stasalco - projekt uchwały fundacji jako akcjonariusza"

Karswell:

    i.   "9. Karswell - projekt uchwały zarządu fundacji"

    ii.   "10. Karswell - list akceptacyjny - G Sphiktos" - do przekazania

    iii.   "11. Karswell - list akceptacyjny - M Kannava "- do dostarczenia

    iv.   "12. Karswell - projekt uchwały fundacji jako akcjonariusza"

WBN

    i.   "13. WBN - projekt uchwały zarządu fundacji - zmiana AoA"

    ii.   "14. WBN - projekt uchwały zarządu fundacji jako akcjonariusza - zmiana AoA"

    iii.   "15. WBN - projekt uchwały zarządu fundacji"

    iv.   "16. WBN - list akceptacyjny - G Sphiktos "- do przekazania

    v.   "17. WBN - list akceptacyjny - M Kannava "- do przekazania

    vi.   "18. WBN - projekt uchwały fundacji jako akcjonariusza"

Dyrektorzy:

    i.   "19. CV - G Sphiktos"

    ii.   "20. CV - M Kannava"

Listy o odstąpieniu od umowy:

    i.   "21. pismo o zrzeczeniu się do TiVi Foundation" - do dostarczenia

    ii.   "22. Pismo o zrzeczeniu się praw do Fundacji Solkomtel" - do dostarczenia

W razie jakichkolwiek pytań proszę o kontakt.
Pozdrawiam serdecznie,
Jarek

6



**Von:** Peter <peter.schierscher@ritterschierscher.li>
**Gesendet:** Freitag, 4. April 2025 15:05
**An:** Matthias <mn@niedermueller.law>
**Cc:** "Tomasz Szelag"<tomasz.szelag@arcesius.com.cy >; "<jpgrzesiak@gmail.com>
**Betreff:** AW: TiVi/Solkomtel - Ernennung der neuen Geschäftsführer

Lieber Matthias

Ja, das ist richtig.

Es wurde und wird auch weiterhin ausreichend Zeit zur Verfügung gestellt, um die Themen zu prüfen und sicherzustellen, dass sie während der Sitzung gründlich diskutiert werden können, um fundierte Entscheidungen zu treffen.

Mit

freundlichen

Grüßen, Peter

**Von:** Matthias <mn@niedermueller.law>
**Gesendet:** Donnerstag, 3. April 2025 22:23
**An:** Peter <peter.schierscher@ritterschierscher.li>
**Cc:** "Tomasz Szelag"<tomasz.szelag@arcesius.com.cy >; "<jpgrzesiak@gmail.com>
**Betreff:** AW: TiVi/Solkomtel - Ernennung der neuen Geschäftsführer

Lieber Peter

Ich beziehe mich auf den nachstehenden Schriftwechsel, in dem Herr Grzesiak beantragt hat, mehrere in der Mail genannte Themen zur Abstimmung zu stellen.

Unserem Telefonat entnehme ich, dass die nachstehend genannten Themen zusammen mit mehreren anderen Punkten auf die Tagesordnung der nächsten Sitzung des Stiftungsrats von TiVi und Solkomtel gesetzt werden, um sicherzustellen, dass die Themen auf der Sitzung umfassend erörtert werden können, bevor eine Entscheidung getroffen wird.

Soweit ich weiß, müssen Datum und Uhrzeit der nächsten Sitzung des Stiftungsrates noch festgelegt werden, und die Sitzung soll so angesetzt werden, dass genügend Zeit für die Prüfung und Berücksichtigung aller Vorschläge auf der Tagesordnung bleibt.

Für Ihre Bestätigung des obigen Verständnisses danke ich Ihnen im Voraus. Mit

freundlichen Grüßen

Matthias

1

**Dr. Matthias Niedermüller, M.B.L-HSG, TEP**
**Geschäftsführender Gesellschafter| Rechtsanwalt|**
**Notar**
Werdenbergerweg 11| 9490 Vaduz, Liechtenstein| T: +423 222 0750 | F: +423 222 0751 Mail:
mn@niedermueller.law











Wichtiger Hinweis:
Diese E-Mail kann Betriebs- oder Geschäftsgeheimnisse, dem Anwaltsgeheimnis unterliegende oder sonstige vertrauliche Informationen enthalten und ist von Gesetzes wegen geschützt. Falls Sie diese E-Mail irrtümlich erhalten haben, ist Ihnen eine Kenntnisnahme des Inhalts, eine Vervielfältigung oder Weitergabe dieser E-Mails sowie eventueller Anhänge ausdrücklich untersagt. Bitte benachrichtigen Sie uns unter obgenannter Adresse und löschen Sie die empfangene E-Mail sowie allfällige Anhänge auf Ihrem Computer oder Netzwerk. Vielen Dank.

Wichtiger Hinweis:
Diese E-Mail kann Geschäftsgeheimnisse oder privilegierte, nicht offengelegte oder anderweitig vertrauliche Informationen enthalten und ist rechtlich privilegiert. Sollten Sie diese E-Mail irrtümlich erhalten haben, werden Sie hiermit darauf hingewiesen, dass jegliche Einsichtnahme, Vervielfältigung oder Verbreitung der E-Mail und ihrer Anhänge strengstens untersagt ist. Bitte informieren Sie uns unter der oben genannten Adresse und löschen Sie die E-Mail und ihre Anhänge aus Ihrem System. Wir danken Ihnen für Ihre Mitarbeit..

Początek przekazywanej wiadomości:

**Od:** Jarosław <jpgrzesiak@gmail.com>
**Daten:** 2 kwietnia 2025 o 11:50:44 CEST
**Do:** Peter Schierscher<peter.schierscher@ritterschierscher.li >, Tomasz <tomasz.szeiag@arcesius.com.cy>
**Temat: PD:** TiVi/Solkomtel - Ernennung der neuen Direktoren

Lieber Peter,
In Bezug auf unsere Diskussion über den Vermögensschutz in Zypern bitte ich darum, dass wir die Ernennung zusätzlicher Direktoren in zypriotischen Unternehmen, die sich vollständig im Besitz von TiVi oder Solkomtel befinden, prüfen und zur Abstimmung stellen.

**1. Tagesordnung:**
Ich schlage vor, die Tagesordnung der nächsten Stiftungsratssitzung der TiVi Foundation zu ergänzen:
- Beschluss über die Ernennung von zwei zusätzlichen Direktoren von Reddev durch die Stiftung als einziges Mitglied (einziger Anteilseigner) von Reddev Investments Limited , einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter der Nummer HE 330471 (Reddev") eingetragen ist: (i) George Sphiktos und (ii) Maria Kannava.

Ich schlage vor, die Tagesordnung der nächsten Stiftungsratssitzung der Solkomtel-Stiftung zu ergänzen:
- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Stasalco Limited, einer Gesellschaft mit beschränkter Haftung, die im Republik Zypern unter der Nummer HE 372875 (die "Stasalco") eingetragen ist, durch die Stiftung als einziges Mitglied (einziger Anteilseigner): (i) George Sphiktos und (ii) Maria Kannava;

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Gesellschaft (i) George Sphiktos und (ii) Maria Kannava durch die Stiftung als einziges Mitglied (einziger Anteilseigner) der Karswell Limited, einer Gesellschaft mit beschränkter Haftung, die der Republik Zypern unter der Nummer HE 229808 (die "Karswell") eingetragen ist;

- Beschluss über die Änderung der Satzung der WBN Holdings Limited, einer im Handelsregister der Republik Zypern unter der Nummer HE 336956 eingetragenen Gesellschaft mit beschränkter Haftung ("WBN"), in Bezug auf die Verordnung 83 und die Verordnung 99;

2

- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Gesellschaft durch die Stiftung als einziges Mitglied (einziger Anteilseigner) von WBN: (i) George Sphiktos und (ii) Maria Kannava.

**2. Direktoren:**
Nach Rücksprache mit den Zweitbegünstigten schlage ich folgende Personen vor: (i) George Sphiktos und (ii) Maria Kannava. Bitte sehen Sie sich die beigefügten Lebensläufe der beiden an. Beide Kandidaten sind erfahrene Persönlichkeiten und ich bin zuversichtlich, dass sie Professionalität und gesundes Urteilsvermögen in den einbringen können.

**3. Befolgung der in Zypern erlassenen Sicherstellungsentscheidungen:**
In Anbetracht der vom zypriotischen Gericht verhängten einstweiligen Verfügungen haben die Zweitbegünstigten als Antragsteller zugestimmt, ihre Zustimmung zu den geplanten Änderungen zu erteilen und auf das Recht zu verzichten, diese Unternehmensänderungen als Verstoß gegen die einstweiligen zu behandeln. Die Verzichtserklärungen werden uns vor der Verwaltungsratssitzung zur Kenntnis gebracht.

**4. Anweisungen:**
- Erster Schritt: Beschlussfassung in den Stiftungsräten - siehe beigefügte Beschlussvorlagen zu Ihrer Kenntnisnahme. In allen Unternehmen mit Ausnahme von WBN gibt es in den zypriotischen Vorständen leere Stellen, die die Stiftung nach eigenem Ermessen besetzen kann. Im Falle der WBN müssen wir die Satzung ändern, um neue Stellen zu schaffen. Im Falle des WBN muss die Satzungsänderung zunächst offiziell im Handelsregister eingetragen werden. Erst wenn die Satzung geändert ist, kann die Solkomtel-Stiftung mit der Ernennung der neuen Direktoren fortfahren.
- Zweiter Schritt: Fassung der Beschlüsse der jeweiligen zyprischen Gesellschaft. Da die Stiftungen 100 Anteile an den zyprischen Unternehmen halten (sie sind alleinige Mitglieder/Alleinaktionäre), ist die Einberufung einer formellen Aktionärsversammlung nicht erforderlich. Wir können die Beschlüsse auf unserer Stiftungsversammlung unterzeichnen (mit Ausnahme WBN, bei dem wir nur den Beschluss über die Änderung der Satzung unterzeichnen können). Sobald diese Änderung eingetragen ist, können wir den Beschluss über die Ernennung der neuen Direktoren unterzeichnen).
- Dritter Schritt: Die Beschlüsse über die Ernennung neuer Direktoren werden zusammen mit den Annahmeschreiben dem Sekretär jeder zyprischen Gesellschaft am eingetragenen Sitz der Gesellschaft persönlich, per Kurierdienst und/oder per E-Mail, sofern verfügbar, zugestellt.

**5. Dokumente:**
Bitte beachten Sie die folgenden Dokumente. Ich habe die Dokumente markiert, die zu einem späteren Zeitpunkt (vor unserer nächsten Verwaltungsratssitzung) vorgelegt werden.

1.
   a. Reddev:

      Brett"

      Anteilseigner

      zur Verfügung

      gestellt

      werden"

        i. "1. Reddev – Resolutionsentwurf der Stiftung

        ii. "2. reddev – Annahmeschreiben - G Sphiktos" - an

        iii. "3. Reddev – Annahmeschreiben - M Kannava"- an

        iv. "4. Reddev – Resolutionsentwurf der Stiftung als

1.
   b. Stasalco:

      Brett"

        i. "5) Stasalco – Entwurf eines Beschlusses der Stiftung

3

Anteilseigner

zur Verfügung

gestellt

werden"

    ii.   "6. stasalco - Annahmeschreiben - G Sphiktos" - an

    iii.   "7. Stasalco - Annahmeschreiben - M Kannava "- an

    iv.   "8. stasalco - Entwurf eines Beschlusses der Stiftung als

1.

  c.  Karswell:

Brett"

als Aktionär zur

Verfügung zu

stellen"

    i.   "9. karswell - Entwurf einer Entschließung der Stiftung

    ii.   "10. Karswell - Annahmeschreiben - G Sphiktos "-

    iii.   "11. Karswell - Annahmeschreiben - M Kannava "-

    iv.   "12. Karswell - Resolutionsentwurf der Stiftung

1.

  d.  WBN

    i.   "13. WBN - Beschlussvorschlag des
Stiftungsrates - Änderung der Satzung"
    ii.   "14. WBN - Beschlussvorschlag des
Stiftungsrates als Gesellschafter - Änderung des Gesellschaftsvertrages"
    iii.   "15. WBN - Resolutionsentwurf der Stiftung

Brett"

Anteilseigner

zur Verfügung

gestellt

werden"

    iv.   "16. WBN - Annahmeschreiben - G Sphiktos " - an

    v.   "17. WBN - Annahmeschreiben - M Kannava " - an

    vi.   "18. WBN - Resolutionsentwurf der Stiftung als

1.

  e.  Direktoren:

    i.   "19. CV - G Sphiktos"
    ii.   "20. Lebenslauf - M Kannava"

1.

  f.  Verzichtserklärungen:

bereitgestell

t werden

    i.   "21. Verzichtserklärung an die TiVi Foundation" - zu erstellen

    ii.   "22. Verzichtserklärung an die Solkomtel-Stiftung" - an

Bitte lassen Sie mich wissen, wenn Sie irgendwelche Fragen haben.

Mit freundlichen
Grüßen, Jarek

4

511

------------

Drogi Piotrze,

W nawiązaniu do naszej dyskusji na temat ochrony aktywów na Cyprze, uprzejmie proszę o rozważenie i poddanie pod głosowanie powołania dodatkowych dyrektorów w spółkach z siedzibą na Cyprze, które są własnością TiVi lub Solkomtel.

1. Porządek obrad:

Proponuję dodać do porządku obrad najbliższego posiedzenia rady fundacji TiVi Foundation:

– decyzji o powołaniu przez Fundację jako Jedynego Członka (Jedynego Udziałowca) Reddev Investments Limited , spółki z ograniczoną odpowiedzialnością zarejestrowanej w Rejestrze Spółek Republiki Cypryjskiej pod numerem HE 330471 ("Reddev"), dwóch dodatkowych dyrektorów Reddev:

(i) George Sphiktos oraz (ii) Maria Kannava.

Proponuję dodać do porządku obrad następnego posiedzenia rady fundacji Solkomtel Foundation:

– podjęcie decyzji o powołaniu przez Fundację jako Jedynego Członka (Jedynego Udziałowca) Stasalco Limited, spółki z ograniczoną odpowiedzialnością zarejestrowanej w Rejestrze Spółek Republiki Cypryjskiej pod numerem HE 372875 ("Stasalco"), dwóch dodatkowych dyrektorów Spółki:

(i) George'a Sphiktosa oraz (ii) Marii Kannavy;

– decyzja o powołaniu przez Fundację jako Jedynego Członka (Jedynego Udziałowca) Karswell Limited, spółki z ograniczoną odpowiedzialnością zarejestrowanej w Rejestrze Spółek Republiki Cypryjskiej pod numerem HE 229808 ("Karswell"), dwóch dodatkowych dyrektorów Spółki: (i) George Sphiktos oderaz (ii) Maria Kannava;

– decyzja w sprawie zmiany statutu WBN Holdings Limited, spółki z ograniczoną odpowiedzialnością zarejestrowanej w Rejestrze Spółek Republiki Cypryjskiej pod numerem HE 336956 ("WBN") w odniesieniu do Rozporządzenia 83 i Rozporządzenia 99;

– decyzję o powołaniu przez Fundację jako Jedynego Członka (Jedynego Udziałowca) WBN dwóch dodatkowych dyrektorów Spółki: (i) George'a Sphiktosa oraz (ii) Marii Kannavy.

2. Dyrektorzy:

Po konsultacjach z Beneficjentami Wtórnymi, przedstawiam nominacje: (i) George'a Sphiktosa oraz (ii) Marii Kannavy. W załączeniu przesyłam ich życiorysy. Obaj kandydaci są doświadczonymi osobami i wierzę, że mogą wnieść do zarządu profesjonalizm i zdrowy osąd.

3. Zgodność z nakazami zabezpieczenia wydanymi na Cyprze:

Biorąc pod uwagę istnienie nakazów zamrożenia nałożonych przez sąd cypryjski, Beneficjenci Wtórni jako wnioskodawcy zgodzili się udzielić zgody na rozważane zmiany i zrzec się prawa do traktowania takich zmian korporacyjnych jako naruszenia nakazów zamrożenia. Zrzeczenia zostaną przekazane do naszej wiadomości przed posiedzeniem Rady Dyrektorów.

4. Instrukcje:

– Pierwszy krok: podjęcie uchwał przez zarządy fundacji - prosimy o zapoznanie się z załączonymi projektami uchwał. We wszystkich spółkach z wyjątkiem WBN istnieją puste miejsca w zarządach cypryjskich, które fundacja może obsadzić według własnego uznania. W przypadku WBN musimy zmienić AoA, aby utworzyć nowe wakaty. W odniesieniu do WBN najpierw należy oficjalnie zarejestrować zmianę statutu w rejestrze spółek. Dopiero po wprowadzeniu zmian do AoA Fundacja Solkomtel może przystąpić do mianowania nowych dyrektorów.

– Drugi krok: podjęcie uchwał przez każdą spółkę cypryjską. Ponieważ fundacje posiadają 100 udziałów w spółkach cypryjskich (są jedynymi członkami / jedynymi udziałowcami), nie ma potrzeby zwoływania formalnego zgromadzenia wspólników. Możemy podpisać uchwały podczas spotkania fundacji (z wyjątkiem WBN, w przypadku którego możemy podpisać tylko uchwałę o zmianie AoA. Po zarejestrowaniu tej zmiany będziemy mogli podpisać uchwałę o powołaniu nowych dyrektorów).

– Trzeci krok: uchwały o powołaniu nowych dyrektorów, wraz z listami akceptacyjnymi, należy dostarczyć sekretarzowi każdej ze spółek cypryjskich w siedzibie spółki osobiście, kurierem i/lub pocztą elektroniczną, jeśli jest dostępna.

5. Dokumenty:

Proszę o wzięcie pod uwagę następujących dokumentów. Zaznaczyłem te, które zostaną dostarczone w późniejszym terminie (przed naszym kolejnym posiedzeniem zarządu).
Reddev:

    i.    "1. Reddev - projekt uchwały zarządu fundacji"
    ii.   "2. reddev - list akceptacyjny – G Sphiktos" – do dostarczenia

    iii.  "3. Reddev - Liste akceptacyjny - M Kannava" - do dostarczenia

    iv.  "4. Reddev - projekt uchwały fundacji jako akcjonariusza"

Stasalco:

    i.    "5. stasalco - projekt uchwały zarządu fundacji"
    ii.   "6. stasalco - list akceptacyjny - G Sphiktos"- do dostarczenia

    iii.  "7. Stasalco - Liste akceptacyjny - M Kannava "- do dostarczenia

    iv.  "8. stasalco - projekt uchwały fundacji jako akcjonariusza"

Karswell:

    i.    "9. karswell - projekt uchwały zarządu fundacji"
    ii.   "10. Karswell - Liste akceptacyjny - G Sphiktos" - do przekazania

    iii.  "11. Karswell - Liste akceptacyjny - M Kannava "- tun dostarczenia WBN

    iv.  "12. Karswell - projekt uchwały fundacji jako akcjonariusza - zmiana AoA"

    i.    "13. WBN – projekt uchwały zarządu fundacji - zmiana AoA"
    ii.   "14. WBN – projekt uchwały zarządu fundacji jako

    iii.  "15. WBN - projekt uchwały zarządu fundacji"
    iv.  "16. WBN - list akceptacyjny – G Sphiktos " - do przekazania
    v.  "17. WBN - list akceptacyjny - M Kannava " - do przekazania

Dyrektorzy:

    vi.  "18. WBN - projekt uchwały fundacji jako akcjonariusza"

Listy o odstąpieniu od umowy:

    i.    "19. CV - G Sphiktos"
    ii.   "20. Lebenslauf - M Kannava"

dostarczenia

    i.    "21. pismo o zrzeczeniu się do TiVi Foundation" - do dostarczenia

    ii.   "22. Pismo o zrzeczeniu się praw do Fundacji Solkomtel" -

W razie jakichkolwiek pytań proszę o kontakt. Pozdrawiam serdecznie,
Jarek

Exhibit 2a

An den Stiftungsrat der
**TiVi Foundation**

To the Foundation Board of
**TiVi Foundation**

Vaduz, 04 April 2025

## Einladung / Invitation

zur Stiftungsratssitzung auf den 10 April 2025, um 10:00 Uhr in den Räumlichkeiten von Ritter
Schierscher Rechtsanwälte AG, Gewerbeweg 5, FL-9490 Vaduz,

to attend to the Foundation Board meeting on 10 April 2025 at 10:00 a.m. in the law office of
Ritter Schierscher Attorneys-at-law, Gewerbeweg 5, FL-9490 Vaduz,

an die Mitglieder des Stiftungsrates /
to the members of the Foundation Board:

Peter Schierscher
Tomasz Szelag
Jaroslaw Grzesiak

**Traktanden / Agenda:**

1. Begrüssung /
   Welcome;

2. Bestellung des Vorsitzenden und des Sekretärs /
   Appointment of the Chairman and the Secretary

3. Genehmigung des Protokolls der Stiftungsratssitzung vom 04.12.2024 /
   Approval of the minutes dated 4 December 2024;

4. Diskussion und Beschlussfassung über die Ernennung durch die Stiftung als Alleinge-
   sellschafter von Reddev Investments Limited, einer Gesellschaft mit beschränkter Haf-
   tung, die beim Handelsregister der Republik Zypern unter der Nummer HE 330471 ein-
   getragen ist (die "Reddev"), von zwei zusätzlichen Direktoren für Reddev:

   (i)    George Sphiktos und
   (ii)   Maria Kannava.

   Lebensläufe und Annahmeerklärungen der beiden Kandidaten sowie der Entwurf eines
   Stiftungsratsbeschlusses sind beigefügt. /

   Discussion and resolution on the appointment by the Foundation as the Sole Member of
   Reddev Investments Limited, a limited liability Company registered with the Registrar of
   Companies of the Republic of Cyprus, under number HE 330471 (the "Reddev"), of two
   additional directors of Reddev:

   (i)    George Sphiktos and
   (ii)   Maria Kannava.;

   CVs and acceptance letters from both candidates and a draft of a foundation board re-
   solution are attached.

5. Diskussion und Beschlussfassung über die geplante Infrastruktur Abspaltungstransak-
tion der Netia S.A.
Discussion and resolution on about the planned Netia S.A. infastructure spin off transac-
tion

6. Zustelladresse für Peter Schierscher in Polen /
Delivery address for Peter Schierscher in Poland

Peter Schierscher schlägt als Zustelladresse Baker McKenzie Krzyżowski i Wspólnicy
sp. k. vor.
Peter Schierscher suggests as delivery address Baker McKenzie Krzyżowski i Wspólnicy
sp. k.

7. Diskussion und Beschlussfassung über die Rechnungen AF Trustees /
Discussing and passing resolutions on the invoices from AF Trustees

8. Verschiedenes /
Varia

Im Auftrage des Stiftungsrates /
On behalf of the Foundation Board

Petra Rohrer

515



An den Stiftungsrat der
**Solkomtel Foundation**

To the Foundation Board of
**Solkomtel Foundation**

Vaduz, 04 April 2025

## Einladung / Invitation

zur Stiftungsratssitzung auf den 10 April 2025, um 11:00 Uhr in den Räumlichkeiten von Ritter Schierscher Rechtsanwälte AG, Gewerbeweg 5, FL-9490 Vaduz,

to attend to the Foundation Board meeting on 10 April 2025 at 11:00 a.m. in the law office of Ritter Schierscher Attorneys-at-law, Gewerbeweg 5, FL-9490 Vaduz,

an die Mitglieder des Stiftungsrates /
to the members of the Foundation Board:

Peter Schierscher
Tomasz Szelag
Jaroslaw Grzesiak

**Traktanden / Agenda:**

1.  Begrüssung /
    Welcome;

2.  Bestellung des Vorsitzenden und des Sekretärs /
    Appointment of the Chairman and the Secretary

3.  Genehmigung des Protokolls der Stiftungsratssitzung vom 04.12.2024 /
    Approval of the minutes dated 4 December 2024;

4.  Diskussion und Beschlussfassung über die Ernennung durch die Stiftung als Alleinge-
    sellschafter von Stasalco Limited, einer Gesellschaft mit beschränkter Haftung, die beim
    Handelsregister der Republik Zypern unter der Nummer HE 372875 (die "Stasalco"), von
    zwei zusätzlichen Direktoren für Stasalco:

    (i)     George Sphiktos und
    (ii)    Maria Kannava.

    Lebensläufe und Annahmeerklärungen der beiden Kandidaten sowie der Entwurf eines
    Stiftungsratsbeschlusses sind beigefügt. /

    Discussion and resolution on the appointment by the Foundation as the Sole Member of
    of Stasalco Limited, a limited liability Company registered with the Registrar of Compa-
    nies of the Republic of Cyprus, under number HE 372875 (the "Stasalco"), of two additi-
    onal directors of the Company:

    (i)     George Sphiktos and
    (ii)    Maria Kannava.;

    CVs and acceptance letters from both candidates and a draft of a foundation board re-
    solution are attached.

5.  Diskussion und Beschlussfassung über die Ernennung durch die Stiftung als Alleinge-
    sellschafter von Karswell Limited, einer Gesellschaft mit beschränkter Haftung, die beim
    Handelsregister der Republik Zypern unter der Nummer HE 229808 (die "Karswell"), von
    zwei zusätzlichen Direktoren für Karswell:

    (i)     George Sphiktos und
    (ii)    Maria Kannava.

    Lebensläufe und Annahmeerklärungen der beiden Kandidaten sowie der Entwurf eines
    Stiftungsratsbeschlusses sind beigefügt. /

    Discussion and resolution on the appointment by the Foundation as the Sole Member of
    of Karswell Limited, a limited liability Company registered with the Registrar of Compa-
    nies of the Republic of Cyprus, under number HE 229808 (the "Karswell"), of two additi-
    onal directors of the Company:

    (i)     George Spiktos and
    (ii)    Maria Kannava.;

    CVs and acceptance letters from both candidates and a draft of a foundation board re-
    solution are attached.

6.  Diskussion und Beschlussfassung über die Anpassung der Statuten der WBN Holdings
    Limited durch die Stiftung als Alleingesellschafter von WBN Holdings Limited, einer Ge-
    sellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern unter
    der Nummer HE 336956 (die "WBN").

    Der Entwurf eines Stiftungsratsbeschlusses für die Anpassung der Statuten der WBN ist
    beigefügt. /

    Discussion and resolution on amending the Articles of Association of WBN Holdings Li-
    mited, a limited liability Company registered with the Registrar of Companies of the Re-
    public of Cyprus, under number HE 336956 ("WBN") regarding the Regulation 83 and
    the Regulation 99.

    A draft of a foundation board resolution on amending the Articles of Association of WBN
    is attached.

7.  Diskussion und Beschlussfassung über die Ernennung durch die Stiftung als Alleinge-
    sellschafter von WBN Holdings Limited, einer Gesellschaft mit beschränkter Haftung, die
    beim Handelsregister der Republik Zypern unter der Nummer HE 336956 (die "WBN"),
    von zwei zusätzlichen Direktoren für WBN:

    (i)     George Sphiktos und
    (ii)    Maria Kannava.

    Lebensläufe und Annahmeerklärungen der beiden Kandidaten sowie der Entwurf eines
    Stiftungsratsbeschlusses sind beigefügt. /

    Discussion and resolution on the appointment by the Foundation as the Sole Member of
    of WBN Holdings Limited, a limited liability Company registered with the Registrar of
    Companies of the Republic of Cyprus, under number HE 336956 (the "WBN"), of two
    additional directors of the Company:

    (i)     George Sphiktos and
    (ii)    Maria Kannava.;

CVs and acceptance letters from both candidates and a draft of a foundation board re-
solution are attached.

8.  Zustelladresse für Peter Schierscher in Polen /
    Delivery address for Peter Schierscher in Poland

    Peter Schierscher schlägt als Zustelladresse Baker McKenzie Krzyżowski i Wspólnicy
    sp. k. vor.
    Peter Schierscher suggests as delivery address Baker McKenzie Krzyżowski i Wspólnicy
    sp. k.

9.  Diskussion und Beschlussfassung über die Rechnungen AF Trustees /
    Discussing and passing resolutions on the invoices from AF Trustees

10. Verschiedenes /
    Varia

                              Im Auftrage des Stiftungsrates /
                              On behalf of the Foundation Board


                              Petra Rohrer



An Herrn
RA Dr. Peter Schierscher
als gerichtlich bestellter Beistand der
TiVi Foundation und Solkomtel Foundation
Per E-Mail: peter.schierscher@ritterschierscher.li

**Betrifft: TiVi Foundation / Solkomtel Foundation – Versuche der potentiellen Neu- bzw. Um- und Weiterbesetzung des operativen Managements bei Tochter- und Enkelgesellschaften der Stiftungen, initiiert durch Jaroslaw Grzesiak**

Sehr geehrter Herr Dr. Schierscher, lieber Peter

Vorweg möchte ich mich bei Ihnen für das bessere Kennenlernen und Ihren Besuch in Polen herzlich bedanken. Es hat mich sehr gefreut, dass Sie sich für mich Zeit genommen haben und Sie sich einen persönlichen Eindruck von meinen Unternehmungen verschaffen konnten. Hoffentlich hat Ihnen der Aufenthalt gefallen.

Der Grund, dass ich mich diesmal an Sie wenden muss, ist jedoch – bedauerlicherweise – kein Erfreulicher: In meiner Funktion als Kurator sowohl der TiVi Foundation, als auch der Solkomtel Foundation, haben mich die jüngsten Ereignisse, die mir zur vor kurzem zugetragen wurden, in grosse Sorge und Erschütterung versetzt.

Es besteht für den Stiftungsrat unmittelbarer Handlungsbedarf, um die Stiftungen vor unwiederbringlichen Nachteilen zu bewahren und deren Interessen zu schützen:

Bekanntlich haben meine Kinder zuletzt meinen ehemaligen Vertrauten und langjährigen Berater, Jaroslaw Grzesiak als (vermeintlichen) "Nachfolger" für Katarzyna Tomczuk in den Stiftungsrat zu bestellen versucht. Herr Grzesiak hat – neben vielen anderen schweren Verfehlungen – im Rahmen der letzten mündlichen Verhandlung ganz offen und vor allem unverhohlen seine persönliche Abneigung gegen mich zum Ausdruck gebracht. Ebenso kam dabei klar hervor, dass er sich in der vorliegenden Auseinandersetzung ausschliesslich den Interessen der Kinder verpflichtet sieht, deren Charaktereigenschaften er am Ende seiner gerichtlichen Einvernahme – ohne danach gefragt zu werden – noch besonders lobend hervorhob.

Nachdem Sie, soweit ich das dem Protokoll entnehmen kann, in dieser Verhandlung aber ohnedies persönlich anwesend waren, konnten Sie sich davon (und auch von der angriffigen Tonalität seiner Einvernahme) einen eigenen Eindruck verschaffen.

Die Unwirksamkeit dieser "Nachbesetzung" und die unsachlichen persönlichen Angriffe des Herrn Grzesiak gegen mich sind jedoch nicht Gegenstand dieses Schreibens. Vielmehr sind es die damit unmittelbar einhergehenden Versuche meiner Kinder, das operative Management der Unternehmensgruppe auszutauschen oder mit ihren Vertrauensleuten zu besetzen, obwohl sich



1/4

meine Kinder wohlgemerkt bislang nie über die derzeitigen Manager beschwert haben (wofür es im Übrigen auch überhaupt keinen Grund gebe). Bei den betroffenen Tochtergesellschaften handelt es sich ausserdem um Schlüsselunternehmen, die insbesondere für das "Daily Business" meiner Unternehmensgruppe essentiell sind.

Offensichtlich soll das, was meinen Kindern in Zuge der "Vergleichsgespräche" nicht gelungen ist, nunmehr auf anderen Wegen versucht werden: Die Übernahme der Kontrolle meiner Unternehmensgruppe auf operativer Managementebene und die Installation einer Blockademöglichkeit durch Vertrauenspersonen meiner Kinder. Dieses Vorhaben der Kinder muss im objektiven Interesse der Stiftungen und der gesamten Unternehmensgruppe um jeden Preis verhindert werden.

In diesem Zusammenhang ist es gewissermassen ein Treppenwitz der Geschichte, dass meine Kinder bislang bei jeder sich bietenden Gelegenheit ins Treffen geführt haben, dass die Aufrechterhaltung des "status quo" bis zum Abschluss der stiftungsrechtlichen Streitigkeiten im Interesse der Stiftung und auch in deren Interesse erforderlich sei. Wie Sie wissen, war dies auch eine der zentralen Begründungen des Fürstlichen Landgerichts in jenen Beschlüssen, die (letztlich) zu Ihrer Bestellung als Beistand geführt haben.

Flankierend zu diesem Argumentarium des "status quo" wurden von meinen Kindern in Zypern mehrere einstweilige Verfügungen gegen mich und gegen die Stiftungen erwirkt, wonach es unter anderem den Stiftungen verboten ist, irgendwelche Entscheidungen zu treffen oder Dokumente zu unterfertigen, die auch nur dazu führen könnten, dass die bestehende Management-Struktur der dort näher angeführten zahlreichen Unternehmungen geändert werden würde. Auch dort sollte nach dem damaligen Ansinnen und dem Wortlaut der Verfügungsverbote der "status quo" gewahrt bleiben, bis die Gerichtsverfahren in Liechtenstein rechtskräftig beendet sind.

Nunmehr – nach einem dreiviertel Jahr – wollen meine Kinder unter Zuhilfenahme ihres "Beraters" Jaroslaw Grzesiak eine 180-Grad-Kehrtwende "durchboxen": Der gerichtlich durch einstweilige Verfügung abgesicherte "status quo" soll über Bord geworfen werden, indem justament in jenen Tochtergesellschaften, die ausdrücklich vom zypriotischen gerichtlichen Verbot umfasst sind – und die wie bereits erwähnt enorm wichtig sind für die Unternehmensgruppe –, die Vertrauensleute der Kinder und des Herrn Grzesiak installiert werden würden. An dieser Stelle möchte ich auch hervorheben, dass die von Herrn Grzesiak vorgeschlagenen Massnahmen dazu führen würden, dass die Vertretungsbefugnisse in den betroffenen Tochtergesellschaften zugunsten meiner Kinder geändert würden.

Sofern es um das Vorhaben der Kinder geht, die Kontrolle über die Unternehmensgruppe zu übernehmen und Blockademöglichkeiten auf operativer Managementebene zu installieren, um mich und die Gruppe unter Druck zu setzen, sind diese offenkundig bereit, aufrechte gerichtliche Verfügungsverbote zu ignorieren und die Stiftung offen aufzufordern, strafbewehrte Handlungen zu setzen. Dadurch würde letztlich der Entscheidung des Fürstlichen Landgerichts vorgegriffen, Ihre Rolle als gerichtlicher Beistand unterwandert und ich als Verfahrenspartei vor vollendete Tatsachen gestellt werden.

2/4

520

Hinzu kommt, dass die von Jaroslaw Grzesiak gewählte Vorgehensweise (unter anderem) gegen zypriotisches Recht verstösst und zu massiven Strafen gegen die Beteiligten führen kann. Es wäre eben gerade nicht zulässig und für eine Exkulpierung eines Verstosses nicht ausreichend, dass die Kinder der Bestellung ihrer Vertrauensleute "zustimmen". Die in Zypern erlassene einstweilige Verfügung ist nach ihrer Erlassung verselbständigt und ein allfälliges Zuwiderhandeln wäre nur dann nicht strafbar, wenn dies im Einvernehmen aller Parteien – mich eingeschlossen – geschieht. Dass ich dem Vorhaben meiner Kinder nicht zustimme, versteht sich von selbst. Ein zypriotisches Rechtsgutachten meiner anwaltlichen Vertretung in Zypern, das die soeben geschilderten Punkte im Detail ausführt, werde ich Ihnen im Laufe der nächsten Woche zukommen lassen.

Soweit meine Kinder angeblich "sachlich" konnotierte Erwägungen für die Bestellung dieser Personen ins Treffen führen wollen, sind diese allesamt nicht wahr: Es besteht keinerlei operative Notwendigkeit, das Management der dort angeführten Gesellschaften um weitere Posten zu ergänzen oder Personen auszutauschen. Solche Gründe zeigt Herr Grzesiak konsequenterweise auch nicht auf. Der derzeit wirksam bestellte Stiftungsrat kommt seinen Aufsichts- und Managementpflichten vollumfänglich nach. Durch Tomasz Szelag ist auch der unmittelbare Informationsfluss des Stiftungsrates von und zu den unterliegenden Gesellschaften gegeben. Es gibt nicht eine einzige (geschweige denn begründete) gegenteilige Indikation, die das bestehende Vertrauen des Stiftungsrates in Tomasz Szelag in Zweifel ziehen könnte.

Im Gegenteil: würde man die Kinder gewähren lassen, droht genau das einzutreten, was sie mir und dem Stiftungsrat wiederholt unrichtig vorgeworfen haben, nämlich die evidente Gefahr, dass Vermögensbestandteile der Stiftung "abhanden" kommen oder auf Ebene der operativen Gesellschaften durch willfährige Vertrauensleute der Kinder unumkehrbare Tatsachen geschaffen werden.

Wenn es den Kindern tatsächlich um "Asset Protection" im Sinne des Aufrechterhaltens des Stammvermögens der Stiftungen gehen würde, gäbe es nicht den geringsten Anlass dafür, gegen aufrechte zypriotische Verfügungsverbote zu verstossen, vom derzeit gesicherten "status quo" abzuweichen oder gerade jetzt, kurz vor dem erwarteten Abschluss des Verfahrens erster Instanz, irgendwelche Änderung am operativen Management vorzunehmen.

Vielmehr ist das Vorhaben der Kinder demaskierend: Das, was sie zur Bedingung für die Führung von Vergleichsgesprächen gemacht (und damit nicht erreicht) haben – nämlich den Austausch des Managements – wollen die Kinder nun unzulässigerweise auf diesem Weg durchsetzen, um maximalen Druck auf mich und die Unternehmensgruppe aufbauen zu können. Dieses Vorhaben haben diese bereits einmal faktisch umzusetzen versucht, indem durch die Machenschaften meiner Kinder mit Herrn Grzesiak bestehende Finanzierungsvereinbarungen der Tochtergesellschaften zu platzen drohten. Dies konnte nur durch ausserordentliche Bemühungen gerade noch glimpflich abgewendet werden. Den Kindern nunmehr über willfährige Vertrauensleute Machtpositionen einzuräumen, um dies weiter betreiben zu können, würde bedeuten, die Stiftungen und deren Vermögen ins offene Messer laufen zu lassen.

In meiner aufrechten Funktion als Kurator und damit als beratendes Organ des Stiftungsrates ersuche ich Sie eindringlich, die Interessen der Stiftungen zu schützen, nicht auf die unwahren

3/4

521

Erzählungen meiner Kinder hineinzufallen und insbesondere keinerlei Um-, Nach- oder Ergänzungsbesetzungen auf Ebene der Tochter- und Enkelgesellschaften vorzunehmen und Ihr Stimmrecht im Gremium des Stiftungsrates in diesem Sinne auszuüben.

Mit freundlichen Grüssen

Zygmunt Solorz



**I O A N N I D E S**
**D E M E T R I O U**

The City House, 17-19 Themistocli Dervi Street, 1066 Nicosia.
P. O. Box 20106, 1601 Nicosia, Cyprus.
Tel. +357 22022999, Fax. +357 22022900
a.demetriou@idlaw.com.cy
www.idlaw.com.cy

5th April 2025

ID/S16303

Attn:

Zygmunt J. Solorz

Meierhofstrasse 8,

FL-9495 Triesen,

Liechtenstein

Dear Mr. Solorz,

**TiVi Foundation and Solkomtel Foundation – Boards of Directors of Operating Subsidiary Companies – Notice of Proposal for Agenda Item to Appoint Additional Directors made by Foundation Council Member Jaroslaw Grzesiak ("Mr. Grzesiak") on 2nd April 2025 in breach of the Express Prohibitions contained in the Cyprus Interim Orders**

This legal opinion is given without prejudice to the jurisdictional objections filed by the Respondents in Applications 31/2024 and 32/2024 filed in the District Court of Limassol Cyprus, and to any objection that may be filed against the Interim Orders issued on 11/10/2024 and 14/10/2024 - the TiVi and Solokomtel Interim Orders as described below.

This legal opinion is provided as per your request to outline the legal implications of the above Proposal by Mr. Grzesiak in the context of:







IOANNIDES DEMETRIOU LLC is a legal practice incorporated with limited liability in Cyprus under registration no. HE 250276, pursuant to the Advocates' Law.
Registered Office: The City House, 17-19 Themistocli Dervi Street, 1066 Nicosia, Cyprus.

IOANNIDES
DEMETRIOU

(i)     the Interim Order issued by the District Court of Nicosia in Application 31/2024 on
        11/10/2024 ("the TiVi Interim Order") in respect of the TiVi Foundation,

(ii)    the Interim Order issued by the District Court of Nicosia in Application 32/2024 on
        14/10/2024 ("the Solkomtel Interim Order")
        (both interim orders being collectively referred to as "Cyprus Interim Orders")

(iii)   The law relating to the issue and enforcement of Interim Orders in Cyprus

(iv)    Cypriot Corporate Law in relation to the functioning of the boards of directors of
        the companies in which the changes are sought.

**The TiVi and Solkomtel Interim Orders**

Both the TiVi and Solkomtel Interim Orders issued as stated above were issued as a result
of identical applications (save as to the Respondents) made on 8/8/2024 ("the
Applications") by Piotr Mateusz Zak, Aleksandra Jadwiga Zak and Tobias Markus Solorz
("the Applicants").

It is important to note that the Applications sought the following extremely wide ranging
orders:

The above Applicants requested from the Court the following:

*"1.    Until further order by the Court and/or until the final hearing and issue and
        execution of a final decision in the Counterclaim, which the Applicants intend to
        file in the context of the civil process with number 06.CG.2024.184 pending before
        the Princely District Court of the Principality of Liechtenstein, an interim order of
        the Court forbidding Respondents 1-6 and/or their representatives and/or
        directors and/or agents and/or employees and/or officers from:*

    *(a)    Selling, alienating, transferring, gifting, disposing of, charging, mortgaging,
            pledging, creating any right or interest on the movable and unmovable
            assets of [2 and 6 in the TiVi Interim Order] / [2 and 6-12 in the Solkomtel
            Interim Order], whether these are situated in Cyprus or abroad, whether
            such assets are directly or indirectly owned by Respondents [2 and 6 in the
            TiVi Interim Order] / [2 and 6-12 in the Solkomtel Application], including (but*

2    

I O A N N I D E S
D E M E T R I O U

not limited to), the shares that Respondent 6 owns in the companies, the names of which are included in ANNEX A which is attached hereto.

(b) Selling, alienating, transferring, gifting, disposing of, charging, mortgaging, pledging, creating any interest or right on the movable and immovable assets of the subsidiaries of Respondent [6 in the TiVi Interim Order] / [6-12 in the Solkomtel Interim Order], the names of which are included in ANNEX A which is attached hereto.

(c) Making any decision or signing any documents altering and/or amending and/or changing or affecting in any way, directly or indirectly, the share structure and/or the management structure and/or the corporate structure and/or the Memorandum and/or the Articles of Association and/or the charters and/or the constituent documents of Respondent [6 in the TiVi Interim Order] / [6-12 in the Solkomtel Interim Order] and the direct or indirect subsidiaries of Respondent [6 in the TiVi Interim Order] / [6-12 in the Solkomtel Interim Order], the names of which are included in ANNEX A attached hereto.

2. Interim Order of the Court determining that paragraph (1) above applies to all the assets of Respondents, whether or not they are registered in their own name, and whether they are held exclusively by Respondents or together with other persons and include any assets over which they have power, either directly or indirectly, to dispose and/or act in connection therewith as if they were their own, including, but not limited to, the shareholdings that Respondent [6 in the TiVi Interim Order – Reddev Investments Limited ("Reddev")] 6-12 in the Solkomtel Interim Order – 6. Stasalco Limited ("Sasalco"), 7. WBN Holdings Limited ("WBN"), 8. Karswell Limited ("Karswell") 9. Bithell Holdings Limited ("Bithell"), 10. Perspesento Limited ("Perspesento"), 11. Juvel Limited ("Juvel"), Argumenol Investment Company Limited ("Argumenol") directly or indirectly holds in the companies, whose names appear in ANNEX A attached hereto.

3

I O A N N I D E S
D E M E T R I O U

3. Interim order of the Court determining that, for the purposes of paragraph (2) above, Respondents [1-6 in the TiVi Interim Order] / [1-12 in the Solkomtel Interim Order] shall be deemed to have the power, either directly or indirectly, to dispose of and/or act in respect of any property, in the event that a third party owns or controls the property, in accordance with their instructions or indirect instructions.

4. Interim order of the Court determining that paragraph (1) above includes (but is not limited to) any shares that Respondents [2 and 6 in the TiVi Interim Order] / [2 and 6-12 in the Solkomtel Interim Order] directly or indirectly own in the companies included in ANNEX A which is attached this order.

5. Order or instructions of the Court, that the Order referred to in paragraph (1) above, shall be subject to the limitations set forth in ANNEX 1 hereto, and shall be interpreted in accordance with the provisions contained in ANNEX 2 attached hereto.

6. Interim order of the Court suspending and/or interrupting the power and the enforceability of any power of attorney or proxy that Respondent [6 in the TiVi Interim Order] / [6-12 in the Solkomtel Interim Order] has issued and/or granted to any person, including, inter alia, (but without any limitation) the powers of attorney or proxies issued or granted by Respondent [6 in the TiVi Interim Order] / [8 in the Solkomtel Interim Order] to Mr.. Jerzy Modrzejewski and/or

7. Order of the Court ordering Respondent [6 in the Tivi Interim Order] / [6-12 in the Solkomtel Interim Order] and/or its directors and/or officers and/or employees, to:

   7.1. Immediately revoke and cancel any power of attorney and/or proxy and/or proxies granted by Respondent [6 in the TiVi Interim Order] / [ 6-12 in the Solkomtel Interim Order] to any person.

   7.2. File with the Court, within five (5) days from the date of service of this order, an affidavit to be sworn by one of its directors, disclosing the powers of



4

526

I O A N N I D E S
D E M E T R I O U

*attorney or proxies granted by [6 in the TiVi Interim Order] / [ 6-12 in the Solkomtel Interim Order] to any person and attaching copies thereof, as well as confirming that all such powers of attorney or proxies have been revoked and/or annulled in compliance with this court order; and attaching copies of such revocations, together with documentary evidence of dispatch such revocations to persons holding such powers of attorney or proxies.*

*8. Any other interim order or remedy or instructions that the Honourable Court deems fair and appropriate."*

It is also very significant to note that the justification for the Application as stated by the Applicants in the Application for applying for the interim order on an ex parte basis, i.e without notice to the Respondents, was the following:

*"This Application is submitted without notice because:*

*1. There is a serious risk of dispersion of assets held and controlled directly or indirectly by the [TIVI Foundation / Solkomtel Foundation], long before a decision is issued and executed in the Counterclaims submitted by the Applicants.*

*2. The Applicants believe that the Respondents, upon being informed of this Application and its contents, will disperse further assets or take other measures to prevent the Counterclaims, as well as the enforcement of any judgment rendered in favour of the Applicants. In this case, the Applicants will suffer irreparable harm, as this will prevent their ability to execute a possible decision in their favor in their Counterclaims."*

Despite the above and despite the above quoted purported basis for the Application the Interim Order as granted by the Court **was significantly less draconian** than the Interim Order that was applied for by the Applicants.

In fact, the Court limited itself to ordering as follows:

5

I O A N N I D E S
D E M E T R I O U

"1. Until further order by the Court and/or until the final hearing and issue and
execution of a final decision in the Counterclaim, which the Applicants intend to
file in the context of the civil process with number 06.CG.2024.184 pending before
the Princely District Court of the Principality of Liechtenstein, an interim order of
the Court be issued and is hereby issued, forbidding Respondents [1-6 in the TiVi
Interim Order] / [1-12 in the Solkomtel Interim Order] and/or their representatives
and/or directors and/or agents and/or employees and/or officers from:

    (a) Selling, alienating, transferring, gifting, disposing of, charging, mortgaging
and pledging the shares Respondents [1-6 in the TiVi Interim Order] / [1-12
in the Solkomtel Interim Order] own in the companies the names of which
are included in ANNEX A attached hereto or create any interest or right on
the said shares.

    (c) Making any decision or signing any documents altering and/or amending
and/or changing or affecting in any way, directly or indirectly, the share
structure and/or the management structure and/or the corporate structure
and/or the Memorandum and/or the Articles of Association and/or the
charters and/or the constituent documents of Respondent 6 and the direct
or indirect subsidiaries of Respondent 6, the names of which are included
in ANNEX A attached on this order.

2. Be issued and is hereby issued, an interim order of the Court determining that
paragraph (1) above includes (but is not limited to) any shares that Respondents
[2 and 6 in the Tivi Interim Order] / [2 and 6-12 in the Solkomtel Interim Order]
directly or indirectly own only in the companies included in ANNEX A which is
attached this order.

3. Be issued and is hereby issued, an interim order of the Court suspending and/or
interrupting the power and the enforceability of any power of attorney or proxy
that Respondent [6 in the Tivi Interim Order] / [6-12 in the Solkomtel Interim Order]
has issued and/or granted to any person, including, inter alia, (but without any



6

I O A N N I D E S
D E M E T R I O U

*limitation) the powers of attorney or proxies issued or granted by Respondent [6
in the Tivi Interim Order] [8 in the Solkomtel Interim Order] to Mr.. Jerzy
Modrzejewski.*

*4. The issued orders are returnable on 23/10/2024 and at 9:30am. The remaining
orders are also set on the same date and time for service."*

From the above it follows that the purported basis of the ex parte Application which was
allegedly the protection of all assets including moveable and immoveable property of the
Foundation and its subsidiaries from dissipation **was not accepted by the Cyprus Court.**

The **only** "status quo" that the Cyprus court wished to maintain, albeit on an interim basis,
in relation to the subsidiary companies of the TiVi Foundation at the interim stage was the
following:

The Respondents, including the Foundations were restricted from:

(i)     transferring or mortgaging etc any shares in the Foundations subsidiary and sub-
        subsidiary companies;

(ii)    amending the share structure, management structure (boards of directors)
        Memorandum and/or the Articles of Association and/or the charters and/or the
        constituent documents of Respondent 6 in the TiVi Interim Order and
        Respondents 6-12 in the Solkomtel Interim Order and the direct or indirect
        subsidiaries of the above, the names of which are included in ANNEX A of each
        Interim Order;

(iii)   The suspension of all powers of attorney issued by Respondent 6 in the TiVi
        Interim Order and Respondent 8 in the Solkomtel Interim order.

Having in mind the above, it is our interpretation that the Cyprus court was of the
compelling and, in our view, logical opinion that the Foundations and its subsidiaries as
listed in ANNEX A of the Cyprus Interim Orders shall remain free to carry out their day to
day operations through their already appointed Boards of Directors who would not be
subject to change and in accordance with the already existing corporate statutes and

7

I O A N N I D E S
D E M E T R I O U

regulations which would also not be subject to any change pending further order of the
Court.

**The Status Quo in Respect of the Board of Directors of the Subsidiaries of the TiVi
and Solkomtel Foundations as Established by the Cyprus Interim Orders Order**

The status quo that has been established by the Cyprus Court at the time of issue of the
Cyprus Interim Orders takes account of the following:

(i)     The current relationship between the Foundations and their immediate
        subsidiaries and sub-subsidiaries as set out in ANNEX A of each Interim Order;

(ii)    The current boards of directors of the subsidiaries and sub-subsidiaries of the
        Foundations;
        and quoting from the Cyprus Interim Orders themselves – see above:

(iii)   *"the share structure and/or the management structure and/or the corporate
        structure and/or the Memorandum and/or the Articles of Association and/or the
        charters and/or the constituent documents"*.

Accordingly, the Cyprus Interim Orders both expressly prohibit any changes in the above
and binds the parties to the Cyprus proceedings to maintaining the status quo established
by the Cyprus Interim Orders.

**The Proposals of 2/4/2025 as made by Mr. Grzesiak**

The proposals made by Mr. Grzesiak in respect of the **TiVi Foundation and the
Solkomtel Foundation** is the following (quotes taken from his email to the Court appointed
Curator of the Foundations dated 2/4/2025):

**TiVi Foundation:**

*"I propose to add to the agenda of the next foundation board meeting of TiVi Foundation:*

8

530

I O A N N I D E S
D E M E T R I O U

*- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of
Reddev Investments Limited , a limited liability Company registered with the Registrar of
Companies of the Republic of Cyprus, under number HE 330471 (the "Reddev"), two
additional directors of Reddev: (i) George Sphiktos and (ii) Maria Kannava. "*

**Soklomtel Foundation:**

*"I propose to add to the agenda of the next foundation board meeting of Solkomtel
Foundation:
- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of
Stasalco Limited, a limited liability Company registered with the Registrar of Companies of
the Republic of Cyprus, under number HE 372875 (the "Stasalco"), two additional directors
of the Company: (i) George Sphiktos and (ii) Maria Kannava;
- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of
Karswell Limited , a limited liability Company registered with the Registrar of Companies of
the Republic of Cyprus, under number HE 229808 (the "Karswell"), two additional directors
of the Company(i) George Sphiktos and (ii) Maria Kannava;
- decision on amending the Articles of Association of WBN Holdings Limited, a limited
liability Company registered with the Registrar of Companies of the Republic of Cyprus,
under number HE 336956 ("WBN") regarding the Regulation 83 and the Regulation 99;
- decision on appointment by the Foundation as the Sole Member (Sole Shareholder) of
WBN two additional directors of the Company: (i) George Sphiktos and (ii) Maria Kannava.
"*

**There can be no doubt whatsoever and/or howsoever arising that the above
proposals if carried out as proposed by Mr. Grzesiak would constitute a breach of
the Cyprus Interim Orders.**

The current boards of directors of the Respondents in the TiVi and Solkomtel Interim
Orders which Mr. Grzesiak is seeking to change are comprised of the following directors:

**TiVi Interim Order**

**Reddev – Respondent 6**

9

531

I O A N N I D E S
D E M E T R I O U

Joanna Elia of Cyprus – appointed on 1/7/2029

Antonia Fella of Cyprus – appointed on 1/7/2019

and Natalia Elia of Cyprus (as alternate director for Antonia Fella) – appointed on
16/10/2023.

**Solkomtel Interim Order**

**Stasalco – Respondent 6**

Athinoulla Loizou of Cyprus – appointed on 29/8/2018

Myria Elia of Cyprus – appointed on 21/10/2022

**WBN**

Georgia Siakou of Cyprus – appointed on 24/3/2020

Natali Elia of Cyprus – appointed on 29/12/2022

**Karswell**

Natali Elia of Cyprus – appointed on 21/2/2024

All the above directors are duly appointed and the boards of all the above companies are
duly constituted.

**The Cyprus Interim Orders, as shown above, expressly prohibit any changes in the
constitution of the boards of directors of the above companies.**

**The Cyprus Interim Orders also prohibit any changes in the Memoranda and Articles
of Association of the above companies as is being proposed by Mr. Grzesiak in the
case of WBN.**

10

I O A N N I D E S
D E M E T R I O U

**The Legal Status of the Cyprus Interim Orders**

The jurisprudence of Cyprus attaches great importance and significance to any court order
that is issued. Any breach of an Order of the Court, especially an Interim Order constitutes
**a contempt of court.**

A recent Cyprus Court of Appeal decision in case E113/2023 issued on 25/2/2025 stated
the following (in translation from the Greek text of the judgment) made reference to
previous consistent case law:

The Court referred to *Mavronikola v. Xanthou* (2011) 1 A.A.D. 293, where the following
were emphasized in relation to the procedural requirements that must be observed under
Order 42A of the then-applicable Civil Procedure Rules:

*"By the very nature of the contempt of court proceedings as quasi-criminal (see Halin v.
Timur (2005) 1(A) A.A.D. 424), the need arises for a complete and effective determination
of the existence of the following prerequisites, under penalty of nullity of the proceedings
(Makridis (1991) 1 A.A.D. 401):*

*a. Existence of a court order.*

*b. Existence of the necessary endorsement.*

*c. Personal service of the court order.*

*d. Personal service of the contempt application."*

The Court of Appeal also went on to add:

*"In Michaelides v. Poliakova (No. 2) (2011) 1 A.A.D. 1007, the following were emphasized:*

*"……The case law has clearly, consistently, and exhaustively established that contempt of
court orders undermines the very foundation of the legal system and the proper and
unhindered operation and administration of justice itself. It erodes the authority of the Court,
and for that reason, the appropriate punishment, as a rule, is that of imprisonment."*

11

I O A N N I D E S
D E M E T R I O U

It is therefore evident in case law that a case of contempt is treated very seriously by the Courts of Cyprus.

**The Penal Endorsement on the Cyprus Interim Orders and Additional Endorsements made by the Court**

It should be noted that the penal endorsement on the Cyprus Interim Injunction orders states as follows: *"If you the above named Respondents [names of Defendants] and/or your representatives and/or servants and/or officers neglect to comply with the stated order, you will be immediately liable to arrest and your property [will be liable to] confiscation."*

Additionally in **ANNEX A of both Cyprus Injunctions Appendix 2** under the Title **"Interpretation of the Injunction"** the Court has stated the following:

*"The Defendants who are ordered not to do an act must not do it themselves or in any other way. They must not do it through others who act on their instructions or with their encouragement"*

Additionally, and in the same Appendix 2 under the title "**Parties Other than the Applicants and the Respondents"** the Court has stated the following:

*"It constitutes a contempt of court for any person who has been advised of this present Order to assist, or to willingly allow a breach of this Order. Any person acting as above may be imprisoned of fined or his assets may be confiscated."*

From the above it is clear that not only the Respondents but also third parties who have knowledge of the Cyprus Interim Orders may be found guilty of contempt if they act in breach of the Cyprus Interim Orders or they encourage or willingly allow a breach of the Cyprus Interim Orders.

It is our view that Foundation Council members, the proposed additional directors they accept to be appointed and indeed any Respondents existing directors who assist or willingly allow a breach of the Cyprus Injunctions will be guilty of contempt of court.

12

534

I O A N N I D E S
D E M E T R I O U

Quite apart from the above, it is well established under Common Law that an applicant and even a third party who has knowledge of the Injunction may be found guilty of contempt in the event of participation, willful allowance or encouragement of a breach of the Cyprus Interim Orders.

**The Common Law Position**

As is well known, the Common Law forms an integral part of the Cypriot Legal System. Accordingly Common Law principles are applicable and Common Law precedent is cited before and relied upon by Cyprus courts.

A person to whom a court order is addressed is guilty of a contempt of court if they breach the court order, in accordance with principles which are clearly summarised by Christopher Clarke J in *Masri v Consolidated Contractors Intl Co SAL & Ors [2011] EWHC 1024 (Comm)* at [144]-[147].

Accordingly third parties who have notice of a court order may also be guilty of contempt if they do something which is a willful interference with the administration of justice: *Seaward v Paterson [1897] 1 Ch 545*, 555-6, *Attorney-General v Times Newspapers Ltd [1992] 1 AC 191*, 218-9. The former is often described as a civil contempt and the latter, which is viewed more seriously is a criminal contempt.

Criminal contempt is committed if the third party aids and abets a breach of the court order. It provides the mechanism whereby, for example, freezing orders are made effective against foreign defendants with money in English bank accounts: notice to the bank puts the bank at risk of committing a criminal contempt if it facilitates transfer of the funds, and so the account is effectively frozen.

The principal difference between civil and criminal contempt in the present context is the mental element involved in establishing the contempt, as Lord Oliver explained in *Attorney-General v Times Newspapers* at pp. 217-218. For a civil contempt the position was

13

535

accurately summarised by Briggs J in *Sectorguard Plc v Dienne Plc [2009] EWHC 2693 (Ch)* at [32]: *"The mental element required of a contemnor is not that he either intends to breach or knows that he is breaching the court order or undertaking, but only that he intended the act or omission in question, and knew the facts which made it a breach of the order." By contrast, for a criminal contempt by a third party what is required is a wilful interference in the administration of justice, which in the case of a court order requires an intention that it be breached."*

In the same case the position of Directors and officers of a Company were considered. The Court stated that:

*"Directors and Officers of a Corporation have been treated as a special category where the order is made against the corporation. At least since 1860 and at least until 2020\* they could be treated as responsible as civil contemnors for breach of an order made against the corporation where they were culpably responsible for the corporation's failure to comply with the order in accordance with principles laid down in Attorney General of Tuvalu v Philatelic Distribution Corp Ltd [1990] 1 WLR 926 and Dar Al Arkan v Refai.*
(\* The limitation is not applicable to Cyprus as no equivalent legislation exists.)
The same principles would clearly apply to the Foundation Council members, and indeed the Foundations themselves if they cause the Foundation to act in a manner which breaches the Cyprus Injunctions.

In the light of the above, and having in mind that is patently clear that there would be a breach of the Cyprus Injunctions if the "proposals" of Mr. Grzesiak are carried out the Foundations  and indeed the Foundation Council members would be exposed to both civil contempt and indeed Criminal contempt (see below).

Further, and in addition to the Foundations and the Foundation Council Members it is pertinent to note that Cyprus Respondent companies and any director of the said companies who is in any involved or facilitates a breach of the Cyprus Injunctions would face similar exposure and liability.

14

I O A N N I D E S
D E M E T R I O U

**Foundations' Position Before the Cyprus Court**

Whilst we do not presume to suggest to the Foundations or the Foundations Councils how they should act, it is pertinent to point out that any act that would result in a breach of the Cyprus Interim Orders would place the Foundations and the Foundations Council members who may take into consideration to approve the "proposals" of Mr. Grzesiak in an extremely precarious position vis a vis the Cyprus court.

The position that has been maintained by the Foundations who have appeared before the Cyprus Court is one of "neutrality" and preservation of the status quo as created by the Cyprus Interim Orders for so long as they are in place. The above position of the Foundations culminating in the decision of the Foundations not to intervene in the Cyprus Interim Order Applications has been communicated to the Court by the Foundations' Cyprus counsel and it has been noted by the Court.

Additionally it is known as a fact by both the Applicants and the Respondents that upon his appointment the Court appointed Curator visited Cyprus, inspected the administration set up for the Foundations and did not make any requests for changes and has not since felt the need to do so, presumably because not only has there not been a breach of the Interim Orders but also there has been no dissipation of assets in a manner that is prejudicial to the interests of either Foundations.

Under the above circumstances it would, in our humble opinion, be inconceivable for the Foundations to change position and to support and implement the drastic, one sided and in our view illegal "proposals" by Mr. Grzesiak.

**Contempt by Non – Parties under Common Law**
The above position is re-enforced if one takes into account the Common Law position relating to Contempt by Non – Parties which can be summarised as follows:

In the case of *Integral Petroleum SA v Petrogat FZE [2020] EWHC 558 (Comm)* the English High Court summarised the applicable legal principles so far as an application for

15

committal for breach of an order by a non – party can be found liable for contempt in
relation to a breach of a court order. It stated the following: *"This is a species of criminal
contempt, in contrast to the position of the respondent to the order (and those within the
Body Corporate Provision) which involves a civil contempt (Arlidge, Eady & Smith on
Contempt (5th), [3-130]). It is necessary in a non-party case to meet the more onerous test
in Seaward v Paterson [1897] 1 Ch 545, 551: "that a person knowingly assists another who
is restrained by an injunction in doing acts in breach of the injunction". In Z Ltd v AZ and
AA-LL [1982] 1 WLR 558, 580, Eveleigh LJ explained: "A third party with notice of the terms
of an injunction should only be liable when he knows that what he is doing is a breach of
the terms of the injunction." These cases speak in terms of the acts of the third party, and
in Seaward itself it is clear that mere presence as a spectator at a boxing match held on
premises in breach of an injunction would not have been enough, as opposed to the
positive acts of the master of ceremonies, who was "actively assisting" the breach. ... For
my part, I am unpersuaded that a mere failure to cause a respondent to comply with an
order is sufficient to amount to contempt under the Seaward principle (in contrast to the
Body Corporate Provision.) However, a purposive and functional interpretation of the
concept of "directors or other officers" in the Body Corporate Provision should ensure that
in the vast majority of cases, individuals in control of bodies corporate will fall on the right
side of the civil/criminal contempt divide." - Olympic Council of Asia v Novans Jets LLP &
Ors [2023] EWHC 276 (Comm).*

Further in the case **Create Financial Management LLP v Roger Lee, Karen Scott** Case
No: QB 2020 002046 High Court of Justice Queen's Bench Division [2020] EWHC 2046
(QB), 2020 WL 04349912, Mr. Justice Morris stated that: *"As a matter of law, a third party
can be in contempt of court in respect of an injunction in two circumstances (see Gee on
Commercial Injunctions (6th edn) at §19-003):*

> *(1) where the third party knowingly aids and abets a breach of the injunction; in that
> situation there has to have been a breach of the injunction by the defendant; or
> (2) where the third party with knowledge of the order does "something which
> disables the court from conducting the case in the intended manner" and thereby
> interferes with the due administration of justice. That can arise independently of*



16

*whether there has been any breach of the injunction. This is the principle set out
in Attorney- General v Punch Ltd [2003] 1 AC 1046 per Lord Nicholls at §§4, 39-40
and 47."*

In the above context the persons proposed as additional directors by Mr. Grzesiak clearly fit
into the category of non-parties. It is clear that by accepting their proposed appointments to
the boards of directors of the Respondent companies that they would be actively aiding and
abetting the breach of the injunctions and the resulting contempt of court. This would
expose them to contempt proceedings as described herein.

**Consent of the Applicants Does Note Cure the Contempt**

It is clear that Mr. Grzesiak believes, or has been advised, that the Applicants in the Cyprus
Interim Order Applications have the right to waive compliance with the Cyprus Interim
Orders. **This is not the case.**

It is clear from the very fact that Mr. Grzesiak has mentioned the fact that the Applicants
would be providing waivers that it is in the contemplation of all the potential participants that
if the proposals made by Mr. Grzesiak are implemented a breach of the Cyprus Injunctions
will occur. Under these circumstances procuring a waiver by the Applicant's will not cure
the contempt.

This is not the situation of an agreed "carve out" that may be agreed between an applicant
and the respondent to an interim order. In the current situation the Applicants, Mr. Grzesiak
and all potential participants in any implementation of the "proposals" of Mr. Grzesiak are
fully aware not only that the status quo that has been established by the Cyprus court as
between the Applicants and the Respondents at this interim stage in the proceedings will
be eradicated but also that the Applicants would be actively undermining the Cyprus Interim
Orders issued by the Court as a result of their Application.

We are of the firm opinion that the Cyprus Court, which under Common Law has the right
to act ex proprio motu (of its own volition) to examine a breach of its own Orders, and which
will in any event be moved by yourself and others to examine a breach of the Cyprus
Injunctions will take a very dim view of any party trying (as Mr. Grzesiak is clearly trying to

17

do) to procure a breach of the Cyprus Interim Orders in order to effectively secure for the benefit of the Applicants a position that they requested from the Court but which the Court refused to give them.

That is to say for the Applicants to have the ability to effectively curtail, via a deadlock situation, the day to day operation of the subsidiaries and sub-subsidiaries of the TiVi and Solkomtel Foundations by way of acts that the Cyprus Interim Orders expressly forbid, namely, the changing of the constitution of the board of directors of the Respondent companies and, additionally, in the case of WBN the amendment of Articles of Association of the company, another act that is expressly forbidden by the Cyprus Interim Orders.

This, in order to create an equality of voting rights on their boards between the duly appointed directors, all of whom, as can be seen above, were appointed prior to the dispute that is before the Courts of Cyprus and Liechtenstein and to add to the boards of directors of the Respondent companies appointees who have, by Mr. Grzesiak own admission, been chosen by Mr. Grzesiak following discussion with the Secondary Beneficiaries.

**Undermining / Breach of the Applicants Equitable "Clean Hands" Obligation**

Such a development would apart from constituting a contempt of court would also constitute a breach of the equitable obligations that the Applicants have towards the Court that issued the Cyprus Interim Orders.

Given that the granting of an interim injunction is an equitable remedy it is incumbent upon the Applicants to approach and always present themselves before the Court "with clean hands". The Applicants would clearly be in breach the above obligation if they were to act in any manner that would breach the Cyprus Interim Orders.

If Mr. Grzesiak believes that his proposal is a valid and justifiable one, the most appropriate steps for him to take is not the proposed one which commits a contempt of court and places the Foundations and the directors of the Respondent companies who will also breach the Cyprus Interim Orders at risk of punishment for contempt of court.

18

I O A N N I D E S
D E M E T R I O U

Instead of acting as he proposes to do Mr. Grzesiak should seek to persuade the Cyprus Court either through the Foundation Council or through his appointors, the Applicants to vary the Cyprus Interim Orders so as allow the changes to the boards of directors of the above named companies, and indeed in the case of WBN the also prohibited amendment of the Articles of Association of that company.

We are of the firm view that in the light of all that is stated above that it would be highly unlikely for the Cyprus court to grant such an application and it is not unlikely that such an application would lead to the dismissal of the Cyprus Interim Orders in total by the Court as the true motives of the Applicants would be clearly revealed.

**Public or Private Criminal Prosecution**

Having established as set out above:

(i)    The certainty that the implementation of Mr. Grzesiak's proposal will result in a breach of the Cyprus Injunctions, and that

(ii)    That a breach of the Cyprus Injunctions by the Respondents (including the Foundations and Foundation Council members voting in favour of steps that would constitute or facilitate a breach of the Cyprus Injunctions) or a third party would constitute a criminal contempt,

It is our view that a criminal offence to be tried by the criminal court will have been committed. The prosecution of such an offence may be undertaken by the Attorney General of Cyprus upon a complaint being filed to him or the police, or by private prosecution instigated by any private person negatively affected by the acts of Mr. Grzesiak.

19

541

I O A N N I D E S
D E M E T R I O U

The Defendants in any criminal prosecution would be the Applicants, Mr. Grzesiak and any member of the Foundation Council who votes in favour of or allows the proposal of Mr. Grzesiak to be implemented through or by way of any act or sufferance on the part of the Respondents to the Cyprus Interim Orders.

We are at your disposal for any clarifications.

Yours faithfully,

Andrew Demetriou

Ioannides Demetriou L.L.C

(email: a.demetriou@idlaw.com.cy)

20

542

Arbeitsübersetzung

# I O A N N I D E S
# D E M E T R I O U

Das Stadthaus, 17-19 Themistocli Dervi Street, 1066 Nikosia.
P. O. Box 20106, 1601 Nikosia, Zypern  Tel  +357
22022900, Fax. +357 22022900
a.demetriou@idlaw.com.cy www.idlaw.com.cy

5th April 2025

ID/S16303

Zu Händen:

Zygmunt J. Solorz

Meierhofstrasse 8,

FL-9495 Triesen,

Liechtenstein Sehr

geehrter Herr Solorz,

**TiVi Foundation und Solkomtel Foundation - Verwaltungsräte der operativen Tochtergesellschaften - Bekanntmachung des Vorschlags des Stiftungsratsmitglieds Jaroslaw Grzesiak ("Herr Grzesiak") vom 2. April 2025 für einen Tagesordnungspunkt zur Ernennung zusätzlicher Verwaltungsratsmitglieder unter Verstoß gegen die ausdrücklichen Verbote der zyprischen Einstweiligen Verfügungen**

Dieses Rechtsgutachten wird unbeschadet der von den Beklagten in den Anträgen 31/2024 und 32/2024 beim Bezirksgericht Limassol (Zypern) erhobenen Einsprüche gegen die Zuständigkeit sowie etwaiger Einsprüche gegen die am 11.10.2024 und 14.10.2024 erlassenen Einstweiligen Verfügungen - die TiVi- und Solokomtel-Einstweiligen Verfügungen, wie unten beschrieben - abgegeben.

Dieses Rechtsgutachten wird auf Ihr Ersuchen hin erstellt, um die rechtlichen Auswirkungen oben genannten Vorschlags von Herrn Grzesiak im Zusammenhang mit folgenden Aspekten darzulegen





   

IOANNIDES DEMETRIOU LLC ist eine in Zypern unter der Nr. HE 250276 eingetragene Rechtsanwaltskanzlei mit beschränkter Haftung gemäß dem Anwaltsgesetz. Eingetragener Sitz: The City House,
17-19 Themistocli Dervi Street, 1066 Nikosia, Zypern

I O A N N I D E S
D E M E T R I O U

(i)    die einstweilige Verfügung des Bezirksgerichts Nikosia in der Sache 31/2024 vom
11.10.2024 ("die TiVi-Einstweilige Verfügung") in Bezug auf die TiVi-Stiftung,

(ii)    die einstweilige Verfügung des Bezirksgerichts Nikosia in der Sache 32/2024 vom
14.10.2024 ("die einstweilige Verfügung von Solkomtel")
(beide einstweiligen Verfügungen werden zusammen als "zyprische einstweilige Verfügungen"
bezeichnet)

(iii)    Das Recht für den Erlass und die Vollstreckung von einstweiligen Verfügungen in Zypern

(iv)    zypriotisches Gesellschaftsrecht in Bezug auf die Arbeitsweise der Vorstände der
Unternehmen, in denen die Änderungen angestrebt werden.

**Die einstweiligen Verfügungen von TiVi und Solkomtel**

Die beiden oben genannten einstweiligen Verfügungen von TiVi und Solkomtel wurden aufgrund
identischer Anträge (mit Ausnahme der Antragsgegner) erlassen, die am 8.8.2024 von Piotr Mateusz
Zak, Aleksandra Jadwiga Zak und Tobias Markus Solorz (die Antragsteller") gestellt wurden.

Es ist wichtig, darauf hinzuweisen, dass in den Anträgen die folgenden äußerst weitreichenden
Anordnungen beantragt wurden:

Die oben genannten Antragsteller haben beim Gericht beantragt:

*"1. bis zu einer weiteren Anordnung des Gerichts und/oder bis zur endgültigen Anhörung und
dem Erlass und der Vollstreckung einer endgültigen Entscheidung in Widerklage, die die
Kläger im Rahmen des vor dem Fürstlichen Bezirksgericht des Fürstentums Liechtenstein
anhängigen Zivilprozesses mit der Nummer 06.CG.2024.184 einzureichen , eine einstweilige
Anordnung des Gerichts, die es den Beklagten 1-6 und/oder ihren Vertretern und/oder
Direktoren und/oder Bevollmächtigten und/oder Angestellten und/oder leitenden
Angestellten untersagt,:*

*(a)    den Verkauf, die , die Übertragung, die Schenkung, die Verfügung, die Belastung, die
Verpfändung, die Verpfändung, die Begründung von Rechten oder Ansprüchen an
den beweglichen und unbeweglichen Vermögenswerten von [2 und 6 in der
einstweiligen Verfügung TiVi] / [2 und 6-12 in der einstweiligen Verfügung Solkomtel],
unabhängig davon, ob sich diese in Zypern oder im Ausland befinden, unabhängig
davon, ob diese Vermögenswerte direkt oder indirekt im Eigentum der Beklagten [2
und 6 in einstweiligen Verfügung TiVi] / [2 und 6-12 in der einstweiligen Solkomtel]
stehen, einschließlich (aber*

2  

I O A N N I D E S
D E M E T R I O U

*nicht beschränkt auf) die Anteile, die der Beklagte 6 an den Gesellschaften besitzt, deren Namen in ANHANG A aufgeführt sind, der dieser Entscheidung beigefügt ist.*

(b) *den Verkauf, die , die Übertragung, die Schenkung, die , die Belastung, die Verpfändung, die Verpfändung, die Begründung von Rechten an den beweglichen und unbeweglichen Vermögenswerten der Tochtergesellschaften der Antragsgegnerin [6 in der TiVi-Zwischenverfügung] / [6-12 in der Solkomtel-Zwischenverfügung], deren Namen in der beigefügten ANLAGE A aufgeführt sind.*

(c) *Entscheidungen zu treffen oder Dokumente zu unterzeichnen, die direkt oder indirekt die Aktienstruktur und/oder die Managementstruktur und/oder die Unternehmensstruktur und/oder den Gesellschaftsvertrag und/oder die Satzung und/oder die Gründungsdokumente der Antragsgegnerin [6 in der einstweiligen Verfügung TiVi] / [6-12 in der einstweiligen Verfügung Solkomtel] und der direkten oder indirekten Tochtergesellschaften der Antragsgegnerin [6 in der einstweiligen TiVi] / [6-12 in einstweiligen Verfügung Solkomtel] , deren Namen in ANHANG A in der Anlage aufgeführt sind.*

2. *Einstweilige Verfügung des Gerichts, mit der festgestellt wird, dass Absatz (1) auf alle Vermögenswerte der Beklagten Anwendung findet, unabhängig davon, ob sie auf ihren eigenen Namen eingetragen sind oder nicht, und unabhängig davon, ob sie ausschließlich von den Beklagten oder gemeinsam mit anderen Personen gehalten werden, und alle Vermögenswerte einschließt, über die sie entweder direkt oder indirekt verfügen und/oder in Verbindung damit handeln können, als ob es ihre wären, einschließlich, aber nicht beschränkt auf die Beteiligungen, die die Beklagte [6 in der TiVi-Einstweiligen Verfügung - Reddev Investments Limited ("Reddev")] 6-12 in der Solkomtel-Einstweiligen Verfügung - 6. Stasalco Limited ("Sasalco"), 7. WBN Holdings Limited ("WBN"), 8. Karswell Limited ("Karswell") 9. Bithell Holdings Limited ("Bithell"), 10. Perspesento Limited ("Perspesento"), 11. Juvel Limited ("Juvel"), Argumenol Investment Company Limited ("Argumenol") hält direkt oder indirekt Anteile an den Gesellschaften, deren Namen in ANHANG A in der Anlage aufgeführt sind.*

3

3. *Einstweilige Verfügung des Gerichts, mit der festgestellt wird, dass für die Zwecke von Absatz (2) oben die Beklagten [1-6 in TiVi-Zwischenverfügung] / [1-12 in der Solkomtel-Zwischenverfügung] als unmittelbar oder mittelbar befugt angesehen werden, gemäß ihren Weisungen oder mittelbaren Weisungen über Eigentum zu verfügen und/oder in Bezug auf Eigentum zu handeln, wenn ein Dritter Eigentümer des Eigentums ist oder dieses kontrolliert.*

4. *Einstweilige Verfügung des Gerichts, mit der festgestellt wird, dass Absatz (1) oben alle Aktien einschließt (aber nicht sie beschränkt ist), die die Beklagten [2 und 6 in der TiVi-Zwischenverfügung] / [2 und 6-12 in der Solkomtel-Zwischenverfügung] direkt oder indirekt an den Gesellschaften besitzen, die in ANHANG A aufgeführt sind, der dieser Verfügung beigefügt ist.*

5. *Der in Absatz (1) genannte Beschluss unterliegt den in ANHANG 1 aufgeführten Beschränkungen und ist gemäß den Bestimmungen in ANHANG 2 auszulegen, der diesem Beschluss beigefügt ist.*

6. *Einstweilige Verfügung des Gerichts zur Aussetzung und/oder Unterbrechung der Befugnis und der Vollstreckbarkeit aller Vollmachten oder Vollmacht, die der Beklagte [6 in der TiVi-Einstweiligen Verfügung] / [6-12 in der Solkomtel-Einstweiligen Verfügung] einer Person erteilt und/oder gewährt hat, einschließlich unter anderem (aber ohne Einschränkung) der vom Beklagten [6 in der TiVi-Einstweiligen Verfügung] erteilten oder gewährten Vollmachten oder Vollmacht*
   */[8 in der Solkomtel-Zwischenverfügung] an Herrn Jerzy Modrzejewski und/oder*

7. *Beschluss des Gerichts, mit dem dem Antragsgegner [6 in der Tivi-Zwischenverfügung] / [6-12 in der Solkomtel-Zwischenverfügung] und/oder seinen Direktoren und/oder leitenden Angestellten und/oder Mitarbeitern aufgegeben wird,:*

   7.1. *unverzüglich alle Vollmachten und/oder Bevollmächtigungen, die der Antragsgegner [6 in der einstweiligen Verfügung TiVi] / [ 6-12 in der einstweiligen Verfügung Solkomtel] einer beliebigen Person erteilt hat, zu widerrufen und zu annullieren.*

   7.2. *dem Gericht innerhalb von fünf (5) Tagen nach Zustellung dieses Beschlusses eine eidesstattliche Erklärung eines seiner Direktoren vorzulegen, in der die Befugnisse der*



4

*6 der TiVi-Zwischenverfügung] / [ 6-12 der Solkomtel-Zwischenverfügung] erteilten Vollmachten und fügen Kopien davon bei, die Bestätigung, dass alle diese Vollmachten und Bevollmächtigungen in Übereinstimmung mit dieser gerichtlichen Entscheidung widerrufen und/oder für ungültig erklärt wurden, und fügen Kopien dieser Widerrufe zusammen mit Belegen für den Versand dieser Widerrufe an Personen, die solche Vollmachten oder Bevollmächtigungen besitzen, bei.*

*8. Jede andere einstweilige Anordnung oder Abhilfe oder Weisung, die das für gerecht und angemessen hält."*

Von großer Bedeutung ist auch, dass die Antragsteller in ihrem Antrag auf Erlass einer einstweiligen Anordnung ex parte, . h. ohne vorherige Benachrichtigung der Antragsgegner, Folgendes als Begründung für ihren Antrag anführten

*"Dieser Antrag wird ohne Vorankündigung eingereicht, weil:*

*1. Es besteht die ernste Gefahr, dass Vermögenswerte, die direkt oder indirekt von der [TIVI-Stiftung / Solkomtel-Stiftung] gehalten und kontrolliert werden, zerstreut werden, lange bevor eine Entscheidung über die von den Antragstellern eingereichten Widerklagen ergeht und vollstreckt wird.*

*2. Die Antragsteller gehen davon aus, dass die Antragsgegner, nachdem sie von diesem Antrag und seinem Inhalt erfahren haben, weitere Vermögenswerte veräußern oder andere Maßnahmen ergreifen werden, um die Widerklagen sowie die Vollstreckung eines zugunsten der Antragsteller ergangenen Urteils zu verhindern. In diesem Fall würden die Antragsteller einen nicht wiedergutzumachenden Schaden erleiden, da dies ihre Fähigkeit, eine mögliche Entscheidung zu ihren Gunsten in ihren Widerklagen zu vollstrecken, verhindern würde.*

Trotzdem und trotz der oben zitierten angeblichen Grundlage für den Antrag war die vom Gericht erlassene einstweilige Verfügung **deutlich weniger drakonisch** als die von den Antragstellern beantragte einstweilige Verfügung.

Der Gerichtshof beschränkte sich darauf, wie folgt zu entscheiden:

5

IOANNIDES
DEMETRIOU

*"(1) Bis zu einer weiteren Anordnung des Gerichts und/oder bis zur abschließenden Verhandlung und dem Erlass und der Vollstreckung einer abschließenden Entscheidung in Widerklage, die die Antragsteller im Rahmen des beim Fürstlichen Landgericht des Fürstentums Liechtenstein anhängigen Zivilprozesses mit der Nummer 06.CG.2024.184 einzureichen , wird eine einstweilige Anordnung des Gerichts erlassen, es den Antragsgegnern [1-6 in der TiVi-Zwischenverfügung] / [1-12 in der Solkomtel-Zwischenverfügung] und/oder ihren Vertretern und/oder Direktoren und/oder Bevollmächtigten und/oder Angestellten und/oder leitenden Angestellten untersagt,:*

*(a) den Verkauf, die Veräußerung, die Übertragung, die Schenkung, die Verfügung, die Belastung, die Verpfändung und die Verpfändung der Aktien, die die Beklagten [1-6 in der TiVi-Interimsverfügung] / [1-12 in der Solkomtel-Interimsverfügung] an den Gesellschaften besitzen, deren Namen in ANHANG A in der Anlage aufgeführt sind, oder die Begründung von Zinsen oder Rechten an den genannten Aktien.*

*(c) Entscheidungen zu treffen oder Dokumente zu unterzeichnen, die die Aktienstruktur und/oder die Managementstruktur und/oder die Unternehmensstruktur und/oder den Gesellschaftsvertrag und/oder die Satzung und/oder die Gründungsdokumente der Beklagten 6 und der direkten oder indirekten Tochtergesellschaften der Beklagten 6, deren Namen in ANHANG A zu dieser Anordnung aufgeführt sind, verändern und/oder ergänzen und/oder ändern oder in irgendeiner Weise direkt oder indirekt beeinflussen.*

*2. Es wird eine einstweilige Verfügung des Gerichts erlassen, in der festgestellt wird, dass Absatz (1) alle Aktien einschließt (aber nicht auf diese beschränkt ist), die die Beklagten [2 und 6 in der Tivi-Zwischenverfügung] / [2 und 6-12 in der Solkomtel-Zwischenverfügung] direkt oder indirekt nur an den in ANHANG A, der dieser Verfügung beigefügt ist, aufgeführten Unternehmen besitzen.*

*3. Es wird eine einstweilige Verfügung des Gerichts erlassen, mit der die Befugnis und die Vollstreckbarkeit aller Vollmachten oder Bevollmächtigungen, die der Antragsgegner [6 in der Tivi-Zwischenverfügung] / [6-12 in der Solkomtel-Zwischenverfügung] einer Person erteilt hat, ausgesetzt und/oder unterbrochen wird, einschließlich unter anderem (aber nicht nur)*



6

*Einschränkung) die von der Beklagten [6 in der Tivi-Zwischenverfügung] [8 in der Solkomtel-Zwischenverfügung] an Herrn Jerzy Modrzejewski erteilten Vollmachten oder Bevollmächtigungen.*

**4.** *Die erteilten Aufträge können am 23.10.2024 um 9:30 Uhr zurückgegeben werden. Die übrigen Aufträge werden ebenfalls am selben Tag und zur selben Uhrzeit zugestellt.*

Daraus ergibt sich, dass die angebliche Grundlage des Ex-parte-Antrags, nämlich der Schutz des gesamten Vermögens, einschließlich des beweglichen und unbeweglichen Vermögens der Stiftung und ihrer Tochtergesellschaften, vor Verschwendung, **vom zypriotischen Gericht nicht akzeptiert wurde.**

**Der einzige** "Status quo", den das zyprische Gericht, wenn auch nur vorläufig, in Bezug auf die Tochtergesellschaften der TiVi-Stiftung aufrechterhalten wollte, war der folgende:

Den Beklagten, einschließlich der Stiftungen, wurden Beschränkungen auferlegt:

(i) die Übertragung oder Verpfändung usw. von Anteilen an den Tochter- und Untertochtergesellschaften der Stiftung;

(ii) die Änderung der Aktienstruktur, der Managementstruktur (Vorstände), des Gesellschaftsvertrags und/oder der Satzung und/oder der Gründungsdokumente des Antragsgegners 6 der einstweiligen Verfügung TiVi und der Antragsgegner 6-12 der einstweiligen Verfügung Solkomtel sowie der direkten oder indirekten Tochtergesellschaften der oben genannten, deren Namen in ANHANG A der jeweiligen einstweiligen Verfügung aufgeführt sind;

(iii) Das Ruhen aller Vollmachten, die von der Beklagten 6 in der TiVi Zwischenverfügung und von der Beklagten 8 in der Solkomtel Zwischenverfügung erteilt wurden.

In Anbetracht der obigen Ausführungen sind wir der Auffassung, dass das zypriotische Gericht die zwingende und unserer Ansicht nach logische Meinung vertrat, dass die Stiftungen und ihre Tochtergesellschaften, wie sie in ANHANG A der zypriotischen Interimsverordnungen aufgeführt sind, weiterhin ihre Geschäfte durch ihre bereits ernannten Verwaltungsräte, die nicht geändert werden können, und in Übereinstimmung mit den bereits bestehenden Statuten und der Satzung der Gesellschaft führen können.

7

I O A N N I D E S
D E M E T R I O U

Verordnungen, die bis zu einer weiteren Entscheidung des Gerichtshofs ebenfalls nicht geändert werden können.

**Der durch die zyprische Einstweilige Verfügung festgestellte Status Quo in Bezug auf die Verwaltungsräte der Tochtergesellschaften der TiVi- und Solkomtel-Stiftungen**

Der vom zypriotischen Gericht zum Zeitpunkt des Erlasses der zypriotischen einstweiligen Verfügungen festgestellte Status quo berücksichtigt Folgendes:

(i)   Die derzeitigen Beziehungen zwischen den Stiftungen und ihren unmittelbaren Tochter- und Enkelgesellschaften, wie sie in ANHANG A der jeweiligen Zwischenverfügung dargelegt sind;

(ii)  Die derzeitigen Verwaltungsräte der Tochter- und Enkelgesellschaften der Stiftungen; und zitiert aus den zypriotischen Interimsverordnungen selbst - siehe oben:

(iii) *"die Aktienstruktur und/oder die Verwaltungsstruktur und/oder die Unternehmensstruktur und/oder den Gesellschaftsvertrag und/oder die Satzung und/oder die Gründungsurkunden".*

Dementsprechend verbieten die zypriotischen Interimsverfügungen ausdrücklich jede Änderung des Vorstehenden und verpflichten die Parteien des zypriotischen Verfahrens, den durch die zypriotischen Interimsverfügungen geschaffenen Status quo beizubehalten.

**Die Vorschläge vom 2/4/2025 von Herrn Grzesiak**

Die Vorschläge von Herrn Grzesiak in Bezug auf die **TiVi-Stiftung und die Solkomtel-Stiftung** lauten wie folgt (Zitate aus seiner E-Mail an den gerichtlich bestellten Kurator der Stiftungen vom 2.4.2025):

**TiVi-Stiftung:**

*"Ich schlage vor, die Tagesordnung der nächsten Stiftungsratssitzung der TiVi Foundation zu ergänzen:*

8

I O A N N I D E S
D E M E T R I O U

*- Beschluss über die Ernennung von zwei zusätzlichen Direktoren von Reddev, (i) George Sphiktos*
*und (ii) Maria Kannava, durch die Stiftung als einziges Mitglied (einziger Anteilseigner) von Reddev*
*Investments Limited, einer Gesellschaft mit beschränkter Haftung, die beim der Republik Zypern*
*unter der Nummer HE 330471 (Reddev") eingetragen ist. "*

**Soklomtel-Stiftung:**

*"Ich schlage vor, die Tagesordnung der nächsten Stiftungsratssitzung der Solkomtel-Stiftung*
*zu ergänzen:*
*- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Stasalco Limited, einer*
*Gesellschaft mit beschränkter Haftung, die im Handelsregister der Republik Zypern unter der Nummer*
*HE 372875 (die "Stasalco") eingetragen ist, durch die Stiftung als einziges Mitglied (einziger*
*Anteilseigner): (i) George Sphiktos und (ii) Maria Kannava;*
*- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Gesellschaft (i) George Sphiktos*
*und (ii) Maria Kannava durch die Stiftung als einziges Mitglied (einziger Anteilseigner) der Karswell*
*Limited, einer Gesellschaft mit beschränkter Haftung, die beim Handelsregister der Republik Zypern*
*unter der Nummer HE 229808 (die "Karswell") eingetragen ist;*
*- Beschluss über die Änderung der Satzung der WBN Holdings Limited, einer im Handelsregister*
*der Republik Zypern unter der Nummer HE 336956 eingetragenen Gesellschaft mit beschränkter*
*Haftung ("WBN"), in Bezug auf Verordnung 83 und Verordnung 99;*
*- Beschluss über die Ernennung von zwei zusätzlichen Direktoren der Gesellschaft durch die Stiftung*
*als alleiniger Gesellschafter von WBN: (i) George Sphiktos und (ii) Maria Kannava. "*
**Es kann kein Zweifel daran bestehen, dass die oben genannten Vorschläge, wenn sie in der von**
**Herrn Grzesiak vorgeschlagenen Form umgesetzt werden, einen Verstoß gegen die**
**zypriotischen Interimsverordnungen darstellen würden.**

Die derzeitigen Vorstände der Antragsgegner der einstweiligen Verfügungen von TiVi und Solkomtel,
die Herr Grzesiak ändern möchte, setzen sich aus den folgenden Vorständen zusammen:

**TiVi Zwischenverfügung**

**Reddev - Beklagter 6**

9

I O A N N I D E S
D E M E T R I O U

Joanna Elia aus Zypern - ernannt am 1/7/2029 Antonia Fella

aus Zypern - ernannt am 1/7/2019

und Natalia Elia aus Zypern (als stellvertretendes Mitglied des Verwaltungsrats für Antonia
Fella) - bestellt am 16/10/2023.

**Solkomtel**

**Zwischenverfügung**

**Stasalco - Antragsgegner 6**

Athinoulla Loizou aus Zypern - bestellt am 29.8.2018 Myria

Elia aus Zypern - bestellt am 21.10.2022

**WBN**

Georgia Siakou aus Zypern - ernannt am 24/3/2020 Natali

Elia aus Zypern - ernannt am 29/12/2022

**Karswell**

Natali Elia aus Zypern - ernannt am 21/2/2024

Alle oben genannten Direktoren sind ordnungsgemäß ernannt und die Vorstände aller oben genannten
Unternehmen sind ordnungsgemäß konstituiert.

**Die zypriotischen Interimsverordnungen verbieten, wie oben dargelegt, ausdrücklich jede Änderung
in Zusammensetzung der Verwaltungsräte der oben genannten Unternehmen.**

**Die zyprischen Interimsverordnungen verbieten auch jegliche Änderung der
Gesellschaftsverträge und Satzungen der oben genannten Unternehmen, wie sie von Herrn
Grzesiak im Fall von WBN vorgeschlagen wird.**

10

I O A N N I D E S
D E M E T R I O U

**Der rechtliche Status der zyprischen Interimsverordnungen**

Die zypriotische Rechtsprechung misst jeder gerichtlichen Anordnung große Bedeutung bei. Jeder Verstoß gegen eine gerichtliche Anordnung, insbesondere gegen eine einstweilige Anordnung, **stellt eine Missachtung des Gerichts dar**.

In einer kürzlich ergangenen Entscheidung des zyprischen Berufungsgerichts in der Rechtssache E113/2023 vom 25.2.2025 heißt es (in Übersetzung aus dem griechischen Text des Urteils) unter Bezugnahme auf die frühere ständige Rechtsprechung Folgendes

Das Gericht bezog sich auf *Mavronikola gegen Xanthou* (2011) 1 A.A.D. 293, in dem in Bezug auf die verfahrensrechtlichen Anforderungen, die gemäß Order 42A der damals geltenden Zivilprozessordnung zu beachten sind, Folgendes hervorgehoben wurde

*"Da es sich bei dem Verfahren wegen Missachtung des Gerichts um ein quasi strafrechtliches Verfahren handelt (siehe Halin gegen Timur (2005) 1(A) A.A.D. 424), muss das Vorliegen der folgenden Voraussetzungen unter Androhung der Nichtigkeit des Verfahrens vollständig und wirksam festgestellt werden (Makridis (1991) 1 A.A.D. 401):*

*a. Vorliegen Gerichtsbeschlusses.*

*b. Vorhandensein des erforderlichen Vermerks.*

*c. Persönliche Zustellung des Gerichtsbeschlusses.*

*d. Persönliche Zustellung des Antrags auf Missachtung".*

Das Berufungsgericht fügte noch hinzu:

*"In der Rechtssache Michaelides gegen Poliakova (Nr. 2) (2011) 1 A.A.D. 1007 wurde Folgendes hervorgehoben:*

*"......Die Rechtsprechung hat eindeutig, einheitlich und erschöpfend festgestellt, dass die Missachtung gerichtlicher Anordnungen die Grundlagen des Rechtssystems und das ordnungsgemäße und ungehinderte Funktionieren und die Verwaltung der Justiz selbst untergräbt. Sie untergräbt die Autorität des Gerichts, und aus diesem Grund ist die angemessene Strafe in der Regel eine Freiheitsstrafe."*

11

Aus der Rechtsprechung geht daher hervor, dass ein Fall von Missachtung von den Gerichten Zyperns sehr ernst genommen wird.

**Der strafrechtliche Vermerk auf der zyprischen Einstweiligen Verfügung und die zusätzlichen Vermerke des Gerichtshofs**

Es sei darauf hingewiesen, dass der Strafvermerk auf den zyprischen einstweiligen Verfügungen wie folgt lautet: *"Wenn Sie, die oben genannten Beklagten [Namen der Beklagten] und/oder Ihre Vertreter und/oder Bediensteten und/oder Offiziere es versäumen, der genannten Anordnung nachzukommen, Sie sofort verhaftet und Ihr Eigentum [wird] beschlagnahmt."*

Außerdem ist in **ANHANG A der beiden zypriotischen Unterlassungsklagen Anhang 2** unter dem Titel **"Auslegung der Unterlassungsverfügung"** hat der Gerichtshof festgestellt:

*"Die Beklagten, denen eine Handlung untersagt wird, dürfen diese weder selbst noch auf andere vornehmen. Sie dürfen es nicht durch andere tun, die auf ihre Anweisung oder mit ihrer Ermutigung handeln.*

Darüber hinaus hat das Gericht in Anhang 2 unter dem Titel "**Andere Parteien als Antragsteller und die Antragsgegner**" Folgendes festgestellt:

*"Es stellt eine Missachtung des Gerichts dar, wenn eine Person, die von dieser Anordnung unterrichtet wurde, einen Verstoß gegen diese Anordnung unterstützt oder vorsätzlich zulässt. Jede Person, die in  Weise handelt, kann zu einer Freiheits- oder Geldstrafe verurteilt oder ihr Vermögen eingezogen werden."*

Aus den obigen Ausführungen geht hervor, dass nicht nur die Beklagten, sondern auch Dritte, die Kenntnis von den zypriotischen Einstweiligen Verfügungen haben, der Missachtung schuldig befunden werden können, wenn sie gegen die zypriotischen Einstweiligen Verfügungen verstoßen oder einen Verstoß gegen zypriotischen Einstweiligen Verfügungen fördern oder absichtlich zulassen.

Wir sind der Ansicht, dass sich die Mitglieder des Stiftungsrats, die vorgeschlagenen zusätzlichen Direktoren, deren Ernennung sie akzeptieren, und alle bestehenden Direktoren der Beklagten, die einen Verstoß gegen die zypriotischen Unterlassungsauflagen unterstützen oder absichtlich zulassen, der Missachtung des Gerichts schuldig machen.

12

I O A N N I D E S
D E M E T R I O U

Abgesehen davon ist es nach dem Common Law wohlbekannt, dass ein Antragsteller und sogar ein Dritter, der Kenntnis von der einstweiligen Verfügung hat, der Missachtung schuldig befunden werden kann, wenn er sich an einem Verstoß gegen die zypriotische einstweilige Verfügung beteiligt, ihn vorsätzlich zulässt oder dazu ermutigt.

**Der Common Law Standpunkt**

Bekanntlich ist das Common Law ein integraler Bestandteil des zyprischen Rechtssystems. Dementsprechend sind die Grundsätze des Common Law anwendbar, und die zyprischen Gerichte berufen sich auf Präzedenzfälle des Common Law.

Eine Person, an die eine gerichtliche Anordnung gerichtet ist, macht sich der Missachtung des Gerichts schuldig, wenn sie gegen die gerichtliche Anordnung verstößt. Dies entspricht den Grundsätzen, die Christopher Clarke J. in *Masri gegen Consolidated Contractors Intl Co SAL & Ors [2011] EWHC 1024 (Comm)* unter [144]-[147] klar zusammengefasst hat.

Dementsprechend können sich auch Dritte, die von einer gerichtlichen Anordnung Kenntnis haben, der Missachtung schuldig machen, wenn sie etwas tun, das einen vorsätzlichen Eingriff in die Rechtspflege darstellt: *Seaward gegen Paterson [1897] 1 Ch 545*, 555-6, *Attorney-General gegen Times Newspapers Ltd [1992] 1 AC 191*, 218-9. Erstere wird häufig als zivilrechtliche Missachtung bezeichnet, während letztere, die als ernster angesehen wird, eine strafrechtliche Missachtung darstellt.

Eine strafrechtliche Missachtung liegt vor, wenn der Dritte einen Verstoß gegen die gerichtliche Anordnung unterstützt und begünstigt. Auf diese Weise können beispielsweise Sicherstellungsanordnungen gegen ausländische Angeklagte mit Geld auf englischen Bankkonten wirksam gemacht werden: Durch die Benachrichtigung der Bank läuft diese Gefahr, eine strafrechtliche Missachtung zu begehen, wenn sie die Überweisung des Geldes erleichtert, so dass das Konto tatsächlich eingefroren wird.

Der Hauptunterschied zwischen zivilrechtlicher und strafrechtlicher Missachtung besteht im vorliegenden Zusammenhang in dem geistigen Element, das für die Feststellung der Missachtung erforderlich ist, wie Lord Oliver in der Rechtssache *Attorney General gegen Times Newspapers* auf S. 217-218 erläuterte. Bei einer zivilrechtlichen Missachtung war die Lage

13

genau zusammengefasst von Briggs J in der Rechtssache *Sectorguard Plc gegen Dienne Plc [2009] EWHC 2693 (Ch)* bei [32]: *"Das mentale Element, das von einem Contemnor verlangt wird, ist nicht, dass er entweder beabsichtigt, gegen die gerichtliche Anordnung oder Verpflichtung zu verstoßen, oder dass er weiß, dass er dagegen verstößt, sondern nur, dass er die betreffende Handlung oder Unterlassung beabsichtigt und die Tatsachen kennt, die sie zu einem Verstoß gegen Anordnung machen." Im Gegensatz dazu ist für eine strafrechtliche Missachtung durch einen Dritten ein vorsätzlicher Eingriff in die Rechtspflege erforderlich, der im Falle einer gerichtlichen Anordnung die Absicht voraussetzt, diese zu verletzen".*

In der gleichen Rechtssache ging es um die Stellung der Direktoren und leitenden Angestellten einer Gesellschaft. Der Gerichtshof stellte Folgendes fest:

*"Direktoren und leitende Angestellte einer Gesellschaft wurden als eine besondere Kategorie behandelt, wenn sich die Anordnung gegen die Gesellschaft richtete. Mindestens seit 1860 und mindestens bis 2020\* konnten sie als zivilrechtlich Verantwortliche für den Verstoß gegen eine gegen die Gesellschaft erlassene Anordnung behandelt werden, wenn sie schuldhaft für die der Anordnung durch die Gesellschaft verantwortlich waren, gemäß den Grundsätzen, die in den Urteilen Attorney General of Tuvalu gegen Philatelic Distribution Corp Ltd [1990] 1 WLR 926 und Dar Al Arkan gegen Refai festgelegt wurden.*

(\* Die Einschränkung gilt nicht für Zypern, da es keine gleichwertigen Rechtsvorschriften gibt). Dieselben Grundsätze würden eindeutig für die Mitglieder des Stiftungsrats und die Stiftungen selbst gelten, wenn sie die Stiftung dazu veranlassen, in einer Weise zu handeln, die gegen die zyprischen Unterlassungsklagen verstößt.

In Anbetracht der obigen Ausführungen und der Tatsache, dass es offensichtlich ist, dass ein Verstoß gegen die zypriotischen Unterlassungsklagen vorliegt, wenn die "Vorschläge" von Herrn Grzesiak umgesetzt werden, würden die Stiftungen und die Mitglieder des Stiftungsrats sowohl wegen zivilrechtlicher als auch strafrechtlicher Missachtung belangt werden (siehe unten).

Zusätzlich zu den Stiftungen und den Mitgliedern des Stiftungsrats ist zu beachten, dass die beklagten zypriotischen Unternehmen und jeder Direktor dieser Unternehmen, der in irgendeiner Weise an einem Verstoß gegen die zypriotischen Unterlassungsklagen beteiligt ist oder diesen erleichtert, einem ähnlichen Risiko und einer ähnlichen Haftung ausgesetzt wären.

14

I O A N N I D E S
D E M E T R I O U

**Die Position der Stiftungen vor dem zypriotischen Gerichtshof**

Wir maßen uns zwar nicht an, den Stiftungen oder den Stiftungsräten vorzuschlagen, wie sie sich
verhalten sollen, aber es ist angebracht, darauf hinzuweisen, dass jede Handlung, die zu einem Verstoß
gegen die zypriotischen Interimsverordnungen führen würde, die Stiftungen und die Mitglieder des
Stiftungsrats, die in Erwägung ziehen könnten, die "Vorschläge" von Herrn Grzesiak zu genehmigen, in
eine äußerst prekäre Lage gegenüber dem zypriotischen Gericht bringen würde.

Die Stiftungen, die vor zypriotischen Gericht auftraten, vertraten den Standpunkt der "Neutralität" und
der Aufrechterhaltung des durch die zypriotischen einstweiligen Verfügungen geschaffenen Status quo,
solange diese in Kraft sind. Die oben genannte Position der Stiftungen, die in der Entscheidung der
Stiftungen gipfelte, Anträgen auf Erlass einer einstweiligen Verfügung in Zypern nicht beizutreten,
wurde dem Gericht von den zypriotischen Anwälten der Stiftungen mitgeteilt und vom Gericht zur
Kenntnis genommen.

Darüber hinaus ist sowohl den Antragstellern als auch den Antragsgegnern bekannt, dass der vom
Gericht ernannte Kurator bei seiner Ernennung Zypern besuchte, die für die Stiftungen eingerichtete
Verwaltung inspizierte und keine Änderungswünsche äußerte und auch seither nicht für notwendig
erachtet hat, vermutlich weil nicht nur kein Verstoß gegen die einstweiligen Verfügungen vorlag,
sondern auch kein Vermögen in einer Weise verschwendet wurde, die den Interessen der beiden
Stiftungen schadet.

Unter diesen Umständen wäre es unserer bescheidenen Meinung nach undenkbar, dass die Stiftungen
ihren Standpunkt ändern und die drastischen, einseitigen und unserer Meinung nach illegalen
"Vorschläge" von Herrn Grzesiak unterstützen und umsetzen.

**Missachtung durch Nicht-Parteien nach Common Law**

Die obige Position wird noch verstärkt, wenn man die Position des Common Law in Bezug auf die
Missachtung durch Nicht-Parteien berücksichtigt, die sich wie folgt zusammenfassen lässt:

In der Rechtssache *Integral Petroleum SA gegen Petrogat FZE [2020] EWHC 558 (Comm)* hat der
englische High Court die anwendbaren Rechtsgrundsätze zusammengefasst, soweit es um einen
Antrag auf

15

I O A N N I D E S
D E M E T R I O U

Eine Nichtpartei kann wegen Missachtung einer gerichtlichen Anordnung verurteilt werden. Es wurde Folgendes festgestellt: *"Dies ist eine Art von strafrechtlicher Missachtung, im Gegensatz zur Position des Antragsgegners der Anordnung (und derjenigen innerhalb der Body Corporate Provision), die eine zivilrechtliche Missachtung beinhaltet (Arlidge, Eady & Smith on Contempt (5th), [3-130]). In einem Fall, in dem es sich nicht um eine Partei handelt, ist es notwendig, den schwierigeren Test in Seaward gegen Paterson [1897] 1 Ch 545, 551 zu erfüllen: "dass eine Person wissentlich einen anderen, der durch eine Unterlassungsverfügung zurückgehalten wird, bei Handlungen unterstützt, die gegen die Unterlassungsverfügung verstoßen". In Z Ltd gegen AZ und*

*AA-LL [1982] 1 WLR 558, 580, erklärte Eveleigh LJ: "Ein Dritter, der von den Bedingungen einer Unterlassungsverfügung Kenntnis hat, sollte nur dann haften, wenn er weiß, dass das, was er tut, einen Verstoß gegen die Bedingungen der Unterlassungsverfügung darstellt." In diesen Rechtssachen geht es um die Handlungen des Dritten, und in der Seaward ist klar, dass die bloße Anwesenheit als Zuschauer bei einem Boxkampf, der in Räumlichkeiten stattfand, die gegen eine Unterlassungsverfügung verstießen, nicht ausgereicht hätte, im Gegensatz zu den positiven Handlungen des Zeremonienmeisters, der den Verstoß "aktiv unterstützte"................................................................Für Ich für meinen Teil bin nicht davon überzeugt, dass das bloße Versäumnis, einen Beklagten zur Befolgung einer Anordnung zu veranlassen, ausreicht, um eine Missachtung nach dem Seaward-Prinzip zu begründen (im Gegensatz zur Body Corporate Provision). Eine zweckmäßige und funktionale Auslegung des Begriffs "Direktoren oder andere leitende Angestellte" in der Body Corporate Provision sollte jedoch sicherstellen, dass in den allermeisten Fällen Einzelpersonen, die die Kontrolle über juristische Personen ausüben, auf der richtigen Seite der Kluft zwischen zivil- und strafrechtlicher Missachtung liegen. - Olympic Council of Asia gegen Novans Jets LLP & Ors [2023] EWHC 276 (Comm).*

In der Rechtssache **Create Financial Management LLP gegen Roger Lee, Karen Scott** Case No: QB 2020 002046 High Court of Justice Queen's Bench Division [2020] EWHC 2046 (QB), 2020 WL 04349912, erklärte Herr Richter Morris, dass: *"Von Rechts wegen kann eine dritte Partei in Bezug auf eine einstweilige Verfügung unter zwei Umständen das Gericht missachten (siehe Gee on Commercial Injunctions (6th edn) at §19-003):*

> *(1) wenn der Dritte wissentlich einen Verstoß gegen die Unterlassungsverfügung unterstützt; in diesem Fall muss ein Verstoß gegen die Unterlassungsverfügung durch den Beklagten vorliegen; oder*
>
> *(2) wenn der Dritte, der von der Anordnung Kenntnis hat, "etwas tut, was das Gericht an der beabsichtigten Prozessführung hindert" und dadurch die ordnungsgemäße Rechtspflege beeinträchtigt. Das kann unabhängig davon entstehen*

16

I O A N N I D E S
D E M E T R I O U

> ob ein Verstoß gegen die Unterlassungsanordnung vorliegt. Dies ist der dargelegte Grundsatz
> in Attorney General gegen Punch Ltd [2003] 1 AC 1046 von Lord Nicholls in den §§ 4, 39-40
> und 47."

In diesem Zusammenhang fallen die von Herrn Grzesiak vorgeschlagenen Personen eindeutig in die Kategorie der Unbeteiligten. Es ist klar, dass sie durch die Annahme der von ihnen vorgeschlagenen Ernennungen in die Vorstände der beklagten Unternehmen aktiv Beihilfe zur Verletzung der Verfügungen und der daraus resultierenden Missachtung des Gerichts leisten würden. Dies würde sie dem hier beschriebenen Verfahren wegen Missachtung des Gerichts aussetzen.

**Zustimmung der Antragsteller heilt die Missachtung nicht**

Es ist klar, dass Herr Grzesiak glaubt, dass die Antragsteller in den Anträgen auf Erlass einer einstweiligen Verfügung in Zypern das Recht haben, auf die Befolgung der einstweiligen Verfügungen in Zypern zu verzichten, oder dass er darüber informiert wurde. **Dies ist nicht der Fall.**

Allein die Tatsache, dass Herr Grzesiak die Tatsache erwähnt hat, dass die Antragsteller Verzichtserklärungen abgeben würden, macht deutlich, dass alle potenziellen Teilnehmer davon ausgehen, dass es zu einem Verstoß gegen die zypriotischen Unterlassungsverfügungen kommen wird, wenn die Vorschläge von Herrn Grzesiak umgesetzt werden. Unter diesen Umständen wird die Beschaffung einer Verzichtserklärung durch die Antragsteller die Missachtung nicht heilen.

Dies ist nicht die Situation einer vereinbarten "Ausgliederung", die zwischen einem Antragsteller und dem Antragsgegner einer einstweiligen Verfügung vereinbart werden kann. In der gegenwärtigen Situation sind sich die Antragsteller, Herr Grzesiak und alle potenziellen Teilnehmer an der Umsetzung der "Vorschläge" von Herrn Grzesiak nicht nur darüber im Klaren, dass der vom zypriotischen Gericht zwischen den Antragstellern und den Antragsgegnern in diesem vorläufigen Stadium des Verfahrens festgestellte Status quo beseitigt wird, sondern auch darüber, dass die Antragsteller die vom Gericht aufgrund ihres Antrags erlassenen einstweiligen Verfügungen aktiv untergraben würden.

Wir sind der festen Überzeugung, dass das zypriotische Gericht, das nach dem Common Law das Recht hat, ex proprio motu (aus eigenem Antrieb) zu handeln, um einen Verstoß gegen seine eigenen Anordnungen zu prüfen, und das auf jeden Fall von Ihnen und anderen aufgefordert werden wird, einen Verstoß gegen die zypriotischen Unterlassungsklagen zu prüfen, eine sehr düstere Sichtweise auf jede Partei haben wird, die versucht (wie Herr Grzesiak offensichtlich versucht

17

I O A N N I D E S
D E M E T R I O U

einen Verstoß gegen die zypriotischen einstweiligen Anordnungen herbeizuführen, um den Klägern tatsächlich eine Position zu sichern, die sie beim Gericht beantragt hatten, die das Gericht ihnen aber verweigerte.

Das heißt, dass die Antragstellerinnen in der Lage sind, den laufenden Betrieb der Tochter- und Enkelgesellschaften der TiVi- und Solkomtel-Stiftungen durch Handlungen, die die zyprischen Einstweiligen Verfügungen ausdrücklich verbieten, nämlich die Änderung der Zusammensetzung des Verwaltungsrats der beklagten Gesellschaften und im Fall von WBN zusätzlich die Änderung der der Gesellschaft, eine weitere Handlung, die die zyprischen Einstweiligen Verfügungen ausdrücklich verbieten, wirksam zu behindern, indem sie sich in einer Sackgasse befinden.

Dies, um eine Gleichheit der Stimmrechte in den Verwaltungsräten zwischen den ordnungsgemäß ernannten Verwaltungsratsmitgliedern zu schaffen, alle, wie oben zu sehen ist, vor dem Rechtsstreit, der vor den Gerichten Zyperns und Liechtensteins anhängig ist, ernannt wurden, und um den Verwaltungsräten der beklagten Gesellschaften Personen hinzuzufügen, die, Herr Grzesiak selbst zugibt, von Herrn Grzesiak nach Absprache mit den Zweitbegünstigten ausgewählt wurden.

**Untergrabung/Verletzung der "Clean Hands"-Verpflichtung des Antragstellers aus Billigkeitsgründen**

Eine solche Entwicklung würde nicht nur eine Missachtung des Gerichts darstellen, sondern auch einen Verstoß gegen die Billigkeitsverpflichtungen der Antragsteller gegenüber dem Gericht, das die zypriotischen einstweiligen Verfügungen erlassen hat.

Da der Erlass einer einstweiligen Verfügung ein Rechtsbehelf nach billigem Ermessen ist, obliegt es den Antragstellern, sich dem Gericht "mit sauberen Händen" zu nähern und sich dort stets zu präsentieren. Die Antragsteller würden eindeutig gegen die oben genannte Verpflichtung verstoßen, wenn sie in einer Weise handeln würden, die gegen die zypriotischen einstweiligen Verfügungen verstößt.

Wenn Herr Grzesiak der Meinung ist, dass sein Vorschlag gültig und vertretbar ist, sollte er nicht die vorgeschlagenen Schritte unternehmen, die eine Missachtung des Gerichts darstellen und die Stiftungen und die Direktoren der beklagten Unternehmen, die ebenfalls gegen die zypriotischen Einstweiligen Verfügungen verstoßen werden, der Gefahr einer Bestrafung wegen Missachtung des Gerichts aussetzen.



18

I O A N N I D E S
D E M E T R I O U

Anstatt so zu handeln, wie er es vorschlägt, sollte Herr Grzesiak versuchen, das zypriotische Gericht
entweder über den Stiftungsrat oder über seine Bevollmächtigten, die Antragsteller, davon zu
überzeugen, die zypriotischen einstweiligen Verfügungen so zu ändern, dass die Änderungen in den
Vorständen der oben genannten Unternehmen und im Falle von WBN auch die verbotene Änderung
der Satzung dieses Unternehmens zulässig sind.

Wir sind der festen Überzeugung, dass es in Anbetracht der obigen Ausführungen höchst
unwahrscheinlich wäre, dass das zypriotische Gericht einem solchen Antrag stattgibt, und es ist nicht
unwahrscheinlich, dass ein solcher Antrag zur vollständigen Aufhebung der zypriotischen einstweiligen
Verfügungen durch das Gericht führen würde, da die wahren Motive der Antragsteller eindeutig
offengelegt würden.

**Öffentliche oder private Strafverfolgung**

Nach den oben dargelegten Feststellungen:

(i)     Die Gewissheit, dass die Umsetzung des Vorschlags von Herrn Grzesiak zu Verstoß
        gegen die zyprischen Unterlassungsklagen führen wird, und dass

(ii)    dass ein Verstoß gegen die zypriotischen Unterlassungsklagen durch die Beklagten
        (einschließlich der Stiftungen und der Mitglieder des Stiftungsrats, die für Maßnahmen
        stimmen, die einen Verstoß gegen die zypriotischen Unterlassungsklagen darstellen oder
        erleichtern würden) oder durch eine strafbare Missachtung darstellen würde,

Wir sind der Ansicht, dass eine Straftat begangen wurde, die vor einem Strafgericht zu verhandeln ist.
Die Verfolgung einer solchen Straftat kann durch den Generalstaatsanwalt Zyperns auf eine bei ihm
oder der Polizei eingereichte Anzeige hin oder durch eine Privatklage erfolgen, die von einer durch die
Handlungen von Herrn Grzesiak geschädigten Privatperson angestrengt wird.

19

561

I O A N N I D E S
D E M E T R I O U

Die Beklagten in einem etwaigen Strafverfahren wären die Klägerinnen, Herr Grzesiak und jedes Mitglied des Stiftungsrats, das für den Vorschlag von Herrn Grzesiak stimmt oder ihn zulässt.

Grzesiak durch eine Handlung oder Duldung Antragsgegner der zypriotischen einstweiligen Anordnungen umgesetzt werden soll.

Wir stehen Ihnen gerne für weitere Auskünfte zur Verfügung.

Mit freundlichen Grüßen,

Andrew Demetriou

Ioannides Demetriou L.L.C.

(E-Mail: a.demetriou@idlaw.com.cy)

20

562



**Gorton Anton Ferdinand**

| | |
|---|---|
| **Von:** | Fabian Rischka |
| **Gesendet:** | Dienstag, 22. April 2025 14:30 |
| **An:** | Jakob Braun |
| **Betreff:** | WG: Confidential - Not for Distribution: Legal Opinion - LEGALLY PRIVILEGED AND CONFIDENTIAL COMMUNICATION |

**Od:** "George Z. Georgiou" <george@gzg.com.cy>
**Data:** 8 kwietnia 2025 o 22:53:30 CEST
**Do:** Peter Schierscher <peter.schierscher@ritterschierscher.li>, Jarosław Grzesiak <jpgrzesiak@gmail.com>
**Dw:** Tomasz Szelag <tomasz.szelag@arcesius.com.cy>, Christian Ritter <christian.ritter@ritterschierscher.li>, Romanos Loizides <romanos.loizides@gzg.com.cy>, Panayiotis Katsaprokkis <panayiotis.katsaprokkis@gzg.com.cy>
**Temat: RE: RE: Re: Confidential - Not for Distribution: Legal Opinion - LEGALLY PRIVILEGED AND CONFIDENTIAL COMMUNICATION**

Dear Peter,

1. I refer to our recent correspondence, our call today and your request to provide our high level comments on the contents of the legal opinion ("LO") of ID law dated 5th April 2025.
2. The LO of ID law was provided for the benefit of Mr. Zygmunt J. Solorz and opines on the lawfulness of the proposed appointment of two additional directors by the TIVI and Solkomtel Foundations on the Boards of Directors of the operating subsidiary companies as well as the amendment of the AoA of WBN.
3. The LO analyses why – in the opinion of ID Law – such an appointment, even with a waiver by the Applicants, would be unlawful and constitute contempt of Court. Moreover, it concludes that such an appointment could only be lawfully carried out by the Foundation, or the Applicants applying to the Cypriot Court to vary the issued orders (p.19 of the LO).
4. Having reviewed the LO carefully – focusing solely on the legal position as summarised above, and without expressing an opinion as the various other factual statements or conclusions included therein – we are off the opinion that the LO is correct. Once a Court issues an order, that order is binding on all persons affected by it, and it is not up to the Applicants to waive compliance with the order. The situation may be different where all parties consent, or for small derogations of everyday operational matters regulated by the order, but this is not the case here.
5. We also agree with ID Law that if the Foundations wish to proceed with the proposed changes the only way to do so is to apply to Court to vary the issued orders with notice to both sides, explaining clearly the rationale for doing so.

We remain at your disposal for any clarifications.

Best regards
George


**George Z. Georgiou** | Managing Partner
george@gzg.com.cy | DL. +357 22 763347 | M. +35799626186



George Z. Georgiou & Associates LLC
1 Iras Street, 1060 Nicosia
T. +357 22 763340 | F. +357 22 763343 | info@gzg.com.cy

     gzg.com.cy

The preceding e-mail message (including any attachments) contains information that may be confidential, be protected by the lawyer-client or other applicable privileges, or constitute non-public. It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from

Find out more about our regulatory information here | Location

 Please consider the environment before printing this email.

**From:** Peter Schierscher <peter.schierscher@ritterschierscher.li>
**Sent:** 08 April 2025 12:06
**To:** 'Jarosław Grzesiak' <jpgrzesiak@gmail.com>; George Z. Georgiou <george@gzg.com.cy>
**Cc:** Szelag Tomasz <tomasz.szelag@arcesius.com.cy>; Christian Ritter <christian.ritter@ritterschierscher.li>
**Subject:** AW: RE: Re: Confidential - Not for Distribution: Legal Opinion

Dear George, Jarek and Tomek

We should join the call at 4pm to discuss the LO.

Peter

**Von:** Jarosław Grzesiak <jpgrzesiak@gmail.com>
**Gesendet:** Dienstag, 8. April 2025 09:02
**An:** Peter Schierscher <peter.schierscher@ritterschierscher.li>; George Z. Georgiou <george@gzg.com.cy>
**Cc:** Szelag Tomasz <tomasz.szelag@arcesius.com.cy>; Christian Ritter <christian.ritter@ritterschierscher.li>
**Betreff:** PD: RE: Re: Confidential - Not for Distribution: Legal Opinion

Dear Peter, George,
In reference to the below matter, when proposing to add two additional directors I have made the following comment on the freezing order which has been consulted with a Cyprus lawyer:

2

564

*"Given the existence of the freezing injunctions imposed by the Cyprus court, the Secondary Beneficiaries as the applicants, have agreed to grant consents for the contemplated changes and to waive the right to treat such corporate changes as in breach of the injunction orders. The waivers will be provided to our attention ahead of the board meeting."*

I have now received the said waivers – please see them attached. Considering that we plan to vote on the appointment of two additional directors in Cyprus companies on Thursday, 10 April, I would be grateful for George's views as soon as practicable. If anything is needed from my end, I would be happy to assist and/or join the call with George.

Kind regards,
Jarosław Grzesiak

---

**Od:** george@gzg.com.cy
**Wysłano:** 7 kwietnia 2025 21:47
**Do:** peter.schierscher@ritterschierscher.li
**DW:** tomasz.szelag@arcesius.com.cy; jpgrzesiak@gmail.com; christian.ritter@ritterschierscher.li
**Temat:** Re: Confidential - Not for Distribution: Legal Opinion

Dear Peter,

Thank you for your email.

I have gone through this quickly this evening, but to be able to provide you with a considered opinion we will need to also review the various emails/documents referred to in the LO and the email chain below. Could you please forward them to us?

Best regards
George

**George Z. Georgiou** | Managing Partner
george@gzg.com.cy | DL. +357 22 763347 | M. +35799626186
George Z. Georgiou & Associates LLC
1 Iras Street, 1060 Nicosia
T. +357 22 763340 | F. +357 22 763343 | info@gzg.com.cy

—    — gzg.com.cy

The preceding e-mail message (including any attachments) contains information that may be confidential, be protected by the lawyer-client or other applicable privileges, or constitute non-public information.
It is intended to be conveyed only to the designated recipient(s). If you are not an intended recipient of this message, please notify the sender by replying to this message and then delete it from your system.

Find out more about our regulatory information here | Locations

— Please consider the environment before printing this email

On 7 Apr 2025, at 22:03, Peter Schierscher <peter.schierscher@ritterschierscher.li> wrote:

Dear George,

Today, I received the below email together with the attached LO.

Can you please advise me if the LO is correct. I'm available for a call tomorrow.

Kind regards,

Peter


Dr. Peter Schierscher LL.M.
Partner  Notar

Gewerbeweg 5
Postfach 1622
FL-9490 Vaduz
Tel 00423 265 33 44
Fax 00423 265 33 40
info@ritterschierscher.li
www.ritterschierscher.li

You can find our privacy policy at www.ritterschierscher.li.


**Von:** Ott Simon <simon.ott@schurtipartners.com>
**Gesendet:** Montag, 7. April 2025 17:03
**An:** Peter Schierscher <peter.schierscher@ritterschierscher.li>
**Cc:** 'Nikolaus Pitkowitz' <N.Pitkowitz@pitkowitz.com>; 'Peter Machherndl'
<P.Machherndl@pitkowitz.com>
**Betreff:** Confidential – Not for Distribution: Legal Opinion

Dear Peter,

I am writing further to our client's email to you and attach hereto a legal opinion requested from
Ioannides Demetriou LLC of Nicosia, Cyprus, who represent our client in Cyprus. This legal opinion is
covered by legal professional privilege which is not waived. Therefore this legal opinion should not be
distributed by you to any third party other than George Z. Georgiou law firm who advise you in
connection with the Cyprus proceedings.

Best,

Simon


Thinking Business. Knowing Law.

Simon Ott | Partner
Zollstrasse 2 | 9490 Vaduz | Liechtenstein
T: +41 44 244 2000 | M: +41 79 152 48 07
E: simon.ott@schurtipartners.com
www.schurtipartners.com

Liechtenstein Commercial Register | register number: FL-0002.490.382-4

This email and any attachments are confidential and may also be privileged. If you are not the named recipient, please do not disclose the contents
to another person, do not use this email for any purpose or store or copy the information in any medium. Instead, please notify the sender by
return email and delete this email (including any attachments) from your system. All incoming emails will automatically be scanned by us and by
our Internet provider to eliminate spam emails. This could result in deletion of a legitimate email before it is read by its intended recipient at our
firm. Emails may be intercepted, altered or read by unauthorized persons. If you send us messages by email, we take this as your acknowledgment
of the aforementioned risks and your authorization to correspond with you by email

Diese E-Mail und alle Anhänge sind vertraulich und können auch rechtlich geschützt sein. Wenn Sie nicht der namentlich genannte Empfänger

4

sind, geben Sie den Inhalt bitte nicht an eine andere Person weiter, speichern und kopieren Sie den Inhalt auf keinem Medium oder verwenden Sie diese E-Mail für keinerlei Zwecke. Stattdessen ersuchen wir Sie, den Absender zu informieren und das E-Mail (einschliesslich sämtlicher Anhänge) aus Ihrem System zu löschen. Alle eingehenden E-Mails werden von uns und unserem Internet-Provider automatisch gefiltert, um Spam E-Mails zu löschen. Dies kann dazu führen, dass auch erwünschte E-Mails gelöscht werden, bevor der beabsichtigte Empfänger sie gelesen hat. E-Mails können von Unbefugten abgefangen, verändert oder gelesen werden. Wenn Sie uns Nachrichten per E-Mail senden, betrachten wir dies als Ihre ausdrückliche Kenntnisnahme der oben genannten Risiken sowie als Ihre Einwilligung, mit Ihnen per E-Mail zu korrespondieren.



**Od:** "George Z. Georgiou<george@gzg.com.cy>
**Daten:** 8 kwietnia 2025 o 22:53:30 CEST
**Do:** Peter Schierscher<peter.schierscher@ritterschierscher.li >, Jarosław Grzesiak
<jpgrzesiak@gmail.com>
**Dw:** Tomasz Szelag<tomasz.szelag@arcesius.com.cy>, Christian Ritter
<christian.ritter@ritterschierscher.li>, Romanos Loizides
<romanos.loizides@gzg.com.cy>, Panayiotis Katsaprokkis
<panayiotis.katsaprokkis@gzg.com.cy>
**Temat: RE: RE: Re: Vertraulich - nicht zur Verbreitung: Rechtsgutachten - RECHTLICH
GESCHÜTZTE UND VERTRAULICHE KOMMUNIKATION**

Lieber Peter,

1. Ich beziehe mich auf unsere jüngste Korrespondenz, unser heutiges Telefonat und Ihr
   Ersuchen, unsere hochrangigen Kommentare zum Inhalt des Rechtsgutachtens ("LO") von
   ID law vom 5th April 2025 abzugeben.
2. Die LO des ID-Gesetzes wurde Herrn Zygmunt J. Solorz zur Verfügung gestellt und äußert
   sich zur Rechtmäßigkeit der vorgeschlagenen Ernennung von zwei zusätzlichen Direktoren
   durch die TIVI- und Solkomtel-Stiftungen in den Verwaltungsräten der operativen
   Tochtergesellschaften sowie zur Änderung des Gesellschaftsvertrags von WBN.
3. Das LO analysiert, warum - nach Ansicht von ID Law - eine solche Ernennung, selbst bei
   einem Verzicht der Antragsteller, rechtswidrig wäre und eine Missachtung des Gerichts
   darstellen würde. Darüber hinaus kommt es zu dem Schluss, dass eine solche Ernennung
   nur durch die Stiftung oder durch die Antragsteller, die beim zypriotischen Gericht eine
   Änderung der erlassenen Anordnungen beantragen, rechtmäßig durchgeführt werden
   könnte (S.19 des LO).
4. Nach sorgfältiger Prüfung der LO - wobei wir uns ausschließlich auf die oben
   zusammengefasste Rechtslage konzentrieren, ohne uns zu den verschiedenen anderen
   darin enthaltenen Tatsachenbehauptungen oder Schlussfolgerungen zu äußern - sind wir
   der Meinung, dass die LO korrekt ist. Sobald ein Gericht einen Beschluss erlässt, ist
   dieser Beschluss für alle davon betroffenen Personen verbindlich, und es steht den
   Antragstellern nicht zu, auf die Einhaltung des Beschlusses zu verzichten. Die Situation
   mag anders sein, wenn alle Parteien zustimmen, oder bei geringfügigen Ausnahmen von
   alltäglichen betrieblichen Angelegenheiten, die in der Anordnung geregelt sind, aber das
   ist hier nicht der Fall.
5. Wir stimmen auch mit ID Law darin überein, dass, wenn die Stiftungen mit den
   vorgeschlagenen Änderungen fortfahren wollen, die einzige Möglichkeit darin besteht, bei
   Gericht eine Änderung der erlassenen Anordnungen zu beantragen, wobei beide Seiten zu
   benachrichtigen sind und die Gründe für die Änderung klar darzulegen sind.

Wir stehen Ihnen für weitere Auskünfte gerne zur

Verfügung. Mit freundlichen Grüßen
George

**George Z. Georgiou|** Geschäftsführender Gesellschafter
george@gzg.com.cy|DL. +357 22 763347| M. +35799626186

1



George Z. Georgiou & Associates LLC
Iras-Straße 1, 1060 Nikosia
T. +357 22 763340| F. +357 22 763343 |info@gzg.com.cy

    

Die vorstehende E-Mail-Nachricht (einschließlich aller Anhänge) enthält Informationen, die möglicherweise vertraulich sind, durch das Anwaltsgeheimnis oder andere anwendbare Privilegien geschützt sind oder nicht-öffentliche Informationen darstellen. Sie ist nur für den/die angegebenen Empfänger bestimmt. Wenn Sie nicht der vorgesehene Empfänger dieser sind, benachrichtigen Sie bitte den Absender, indem Sie auf diese Nachricht antworten, und löschen Sie sie dann von Ihrem Computer.

 Bitte denken Sie an die Umwelt, bevor Sie diese E-Mail ausdrucken.

**Von:** Peter <peter.schierscher@ritterschierscher.li>
**Gesendet:** 08 April 2025 12:06
**An:** "Jarosław Grzesiak"<jpgrzesiak@gmail.com >; George Z. <george@gzg.com.cy>
**Cc:** Szelag Tomasz<tomasz.szelag@arcesius.com.cy >; Christian Ritter
<christian.ritter@ritterschierscher.li>
**Betreff:** AW: RE: Re: Vertraulich - nicht zur Verbreitung: Rechtsgutachten

Lieber George, Jarek und Tomek

Wir sollten uns um 16.00 Uhr der Telefonkonferenz

anschließen, um den LO zu diskutieren. Peter

**Von:** Jarosław <jpgrzesiak@gmail.com>
**Gesendet:** Dienstag, 8. April 2025 09:02
**An:** Peter Schierscher<peter.schierscher@ritterschierscher.li >; George Z. Georgiou
<george@gzg.com.cy>
**Cc:** Szelag Tomasz<tomasz.szelag@arcesius.com.cy >; Christian Ritter
<christian.ritter@ritterschierscher.li>
**Betreff:** PD: RE: Re: Vertraulich - Nicht zur Verbreitung: Rechtsgutachten

Lieber Peter, George,
In Bezug auf die nachstehende Angelegenheit habe ich, als ich vorschlug, zwei zusätzliche
Direktoren hinzuzufügen, die folgende Bemerkung zur Sicherstellungsanordnung gemacht, die
mit einem zypriotischen Anwalt abgesprochen wurde:

2

569

*"In Anbetracht der vom zypriotischen Gericht verhängten Einstweiligen Verfügungen haben die Zweitbegünstigten als Antragsteller zugestimmt, ihre Zustimmung zu den geplanten Änderungen zu erteilen und auf das Recht zu verzichten, diese Unternehmensänderungen als Verstoß gegen die Verfügungen behandeln. Die Verzichtserklärungen werden uns noch vor der Verwaltungsratssitzung zur Kenntnis gebracht.*

Ich habe nun die besagten Verzichtserklärungen erhalten - bitte sehen Sie sie im Anhang. In Anbetracht der Tatsache, dass wir am Donnerstag, den 10. April, über die Ernennung von zwei zusätzlichen Direktoren in zypriotischen Unternehmen abstimmen wollen, wäre ich dankbar für Georges Meinung, sobald dies praktikabel ist. Sollte von meiner Seite etwas benötigt werden, bin ich gerne bereit, George zu unterstützen und/oder an dem Gespräch teilzunehmen.

Mit freundlichen
Grüßen, Jarosław
Grzesiak

**Od:**george@gzg.com.cy **Wysłano:**
7 kwietnia 2025 21:47
**Machen:**peter.schierscher@ritterschierscher.li
**DW:** :tomasz.szelag@arcesius.com.cyjpgrzesiak@gmail.comchristian.ritter@ritterschierscher.li
**Temat:** Re: Vertraulich - Nicht zur Verbreitung: Rechtsgutachten

Lieber Peter,

Vielen Dank für Ihre E-Mail.

Ich das heute Abend schnell durchge, aber um Ihnen eine fundierte Stellungnahme geben zu können, müssen wir auch die verschiedenen E-Mails/Dokumente prüfen, auf die in der LO und in der E-Mail-Kette unten Bezug genommen wird. Könnten Sie diese bitte an uns weiterleiten?

Mit freundlichen
Grüßen George

**George Z. Georgiou|** Geschäftsführender Gesellschafter
george@gzg.com.cy|DL. +357 22 763347| M. +35799626186
George Z. Georgiou & Associates LLC
Iras-Straße 1, 1060 Nikosia
T. +357 22 763340| F. +357 22 763343 |info@gzg.com.cy

gzg.com.cy

Die vorstehende E-Mail-Nachricht (einschließlich aller Anhänge) enthält Informationen, die möglicherweise vertraulich sind, dem Anwaltsgeheimnis oder anderen geltenden Privilegien unterliegen oder nichtöffentliche Informationen darstellen.
Sie ist nur für den/die angegebenen Empfänger bestimmt. Wenn Sie nicht zu den vorgesehenen Empfängern dieser Nachricht gehören, benachrichtigen Sie bitte den Absender, indem Sie auf diese Nachricht antworten, und löschen Sie sie dann aus Ihrem System.
Weitere Informationen über unsere Rechtsvorschriften finden Sie hier: Standorte
Bitte denken Sie an die Umwelt, bevor Sie diese E-Mail ausdrucken.

Am 7. April 2025, um 22:03 Uhr, schrieb Peter Schierscher
<peter.schierscher@ritterschierscher.li> :

3

Lieber George,

Heute erhielt ich die nachstehende E-Mail zusammen mit dem beigefügten LO.

Können Sie mir bitte mitteilen, ob der LO korrekt ist. Ich bin morgen für einen Anruf

verfügbar. Mit freundlichen Grüßen,

Peter

Dr. Peter Schierscher LL.M. Partner
Notar

Gewerbeweg 5
Postfach 1622
FL-9490 Vaduz
Tel. 00423 265 33 44
Fax 00423 265 33 40
info@ritterschierscher.li
www.ritterschierscher.li

Sie finden unsere Datenschutzbestimmungen unter www.ritterschierscher.li.

**Von:** Ott <simon.ott@schurtipartners.com>
**Gesendet:** Montag, 7. April 2025 17:03
**An:** Peter <peter.schierscher@ritterschierscher.li>
**Cc:** "Nikolaus Pitkowitz"<N.Pitkowitz@pitkowitz.com >; "Peter Machherndl
<P.Machherndl@pitkowitz.com>
**Betreff:** Vertraulich - Nicht zur Verbreitung: Rechtsgutachten

Lieber Peter,

Ich schreibe Ihnen im Anschluss an die E-Mail unserer Mandantin und füge ein Rechtsgutachten bei, das
von Ioannides Demetriou LLC aus Nikosia, Zypern, angefordert wurde, die unsere Mandantin in Zypern
vertritt. Dieses Rechtsgutachten unterliegt dem Anwaltsgeheimnis, auf das nicht verzichtet werden kann.
Daher sollte dieses Rechtsgutachten von Ihnen nicht an Dritte weitergegeben werden, außer an die
Anwaltskanzlei George Z. Georgiou, die Sie im Zusammenhang mit dem Verfahren in Zypern berät.

Bester

,

Simon

Wirtschaftlich denken. Knowing Law.

Simon Ott| Partner
Zollstrasse 2| 9490 Vaduz| Liechtenstein T: +41
44 244 2000| M: +41 79 152 48 07
E: simon.ott@schurtipartners.com
www.schurtipartners.com

Handelsregister Liechtenstein| Registernummer: FL-0002.490.382-4

Diese E-Mail und alle Anhänge sind vertraulich und können auch vertraulich sein. Wenn Sie nicht der genannte Empfänger sind, geben Sie den Inhalt
bitte nicht an andere Personen weiter, verwenden Sie diese E-Mail nicht für andere Zwecke und speichern oder kopieren Sie die Informationen auf
keinem Medium. Bitte benachrichtigen Sie stattdessen den Absender per E-Mail und löschen Sie diese E-Mail (einschließlich aller Anhänge) von Ihrem
System. Alle eingehenden E-Mails werden von uns und unserem Internet-Provider automatisch gescannt, um Spam-E-Mails auszuschließen. Dies kann
zur Folge haben, dass eine legitime E-Mail gelöscht wird, bevor sie von Ihrem Empfänger in unserem Hause gelesen wird.

4

Firma. E-Mails können von unbefugten Personen abgefangen, verändert oder gelesen werden. Wenn Sie uns Nachrichten per E-Mail senden, betrachten wir dies als Ihre Anerkennung der oben genannten Risiken und Ihre Erlaubnis, mit Ihnen per E-Mail zu korrespondieren.

Diese E-Mail und alle Anhänge sind vertraulich und können auch rechtlich geschützt sein. Wenn Sie nicht der namentlich genannte Empfänger sind, geben Sie den Inhalt bitte nicht an eine andere Person weiter, speichern und kopieren Sie den Inhalt auf keinem Medium oder verwenden Sie diese E-Mail für keinerlei Zwecke. Stattdessen ersuchen wir Sie, den Absender zu informieren und das E-Mail (einschliesslich sämtlicher Anhänge) aus Ihrem System zu löschen. Alle eingehenden E-Mails werden von uns und unserem Internet-Provider automatisch gefiltert, um Spam E-Mails zu löschen. Dies kann dazu führen, dass auch erwünschte E-Mails gelöscht werden, bevor der beabsichtigte Empfänger sie gelesen hat. E-Mails können von Unbefugten abgefangen, verändert oder gelesen werden. Wenn Sie uns Nachrichten per E-Mail senden, betrachten wir dies als Ihre ausdrückliche Kenntnisnahme der oben genannten Risiken sowie als Ihre Einwilligung, mit Ihnen per E-Mail zu korrespondieren.



# MINUTES

of the meeting of the board of **TiVi Foundation**
on 10 April 2025 at 10.20 am at the office of
Ritter Schierscher Rechtsanwälte AG, Gewerbeweg 5, 9490 Vaduz

**Participants:**

Jaroslaw Grzesiak
Tomasz Szelag
Dr. Peter Schierscher

Zygmunt Solorz was inveted to participate via video-call. He does not join the meeting.

1)  Appointment of Chairman and Secretary

    Peter Schierscher is elected as chairman and Petra Rohrer as secretary.

2)  Approval of the minutes dated December 4, 2024

    The chairman states that the approval of the minutes from December 4, 2024, is no longer necessary, as the foundation board members unanimously resolved to approve these minutes during the last board meeting.

3)  Discussion and resolution on the appointment by the Foundation as the Sole Member of Reddev Investments Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 330471 (the "Reddev"), of two additional directors of Reddev

    Peter Schierscher points out that the appointment of two additional directors of Reddev by the Foundation would violate the Cyprus Interim Order currently in place, as confirmed by the Foundation's Cyprus legal counsel. The lawyer advised that such an appointment would only be permissible if the Interim Order was formally varied by the court.

573

2

Furthermore, Mr. Schierscher reminds the Foundation board that it had unanimously resolved on December 4, 2024, to appoint legal counsel for the ongoing proceedings in Cyprus. The appointed counsel was instructed to act in a neutral and passive capacity while remaining obligated to protect the rights of the Foundation and its subsidiaries.

Mr. Schierscher reiterates the fiduciary duty of the Foundation board to act prudently and ensure that Reddev and other underlying entities are not exposed to risk. He warns that the board could face personal liability should any damage occur because of disregarding the concerns raised by the all the beneficiaries.

Mr. Grzesiak adds that it is the board's obligation to protect the Foundation and its subsidiaries from harm, including the dispersion of assets. He notes that the existing injunction could be easily circumvented, thereby posing a risk. Consequently, he proposes instructing the Cyprus lawyer to apply for a variation of the injunction to enable the appointment of additional directors at Reddev. These directors would be tasked with monitoring the situation and preventing the dissipation of assets in circumvention of the Cyprus Interim Order.

Mr. Szelag, however, argues that neither the Foundation nor its subsidiaries have suffered any harm to date and the foundation should stay neutral in Cyprus. He opposes the proposal to instruct the Cyprus lawyer to seek a variation of the injunction. He strongly objects to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Reddev.

Mr. Schierscher adds that the Foundation remains neutral in the proceedings in Cyprus. He emphasizes that the Foundation Board is fulfilling its obligations by acting prudently and in good faith to prevent any potential harm to Reddev, especially in light of the concerns that have been raised. The board's actions are not a deviation from its neutral stance, but rather a reflection of its duty to protect the interests of Reddev and the Foundation's subsidiaries.

After deliberation, the board unanimously decides not to appoint two additional directors of Reddev at this stage, to remain in compliance with the Cyprus Interim Order.

2

574

3

To proceed in alignment with the legal framework, the members of the board resolve by majority vote—with Mr. Grzesiak and Mr. Schierscher in favor, and Mr. Szelag opposed—to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Reddev.

4)   Discussion and resolution on the planned Netia S.A. infastructure spin off transaction

Tomasz Szelag presents the Netia S.A. infastructure spin off transaction. He explains that TiVi Foundation will be the sole shareholder of Netia S.A. II. Furthermore, he explains that the economic benefits of the planned transaction. The Foundation's right in the new company will be the same as in Netia S.A. A shareholder's agreement is going to be signed between the Foundation and Cyfrowy Polsat in order that the Foundation has the same rights as it has now.

Mr. Grzesiak asks for more information and Mr. Szelag promises to give detailed information to Mr. Grzesiak.

The Foundation Board decides to postpone the resolution regarding the spin-off to the next meeting.

5)   Delivery address for Peter Schierscher in Poland

Peter Schierscher points out the there is no agreement by Mr. Solorz and the second beneficiaries as who should be acting as agent for delivering

Since there is no agreement between Mr. Solorz and the second beneficiaries Peter Schierscher decides to appoint Baker McKenzie Krzyżowski i Wspólnicy sp. k. as delivery address.

6)   Discussing and passing resolutions on the invoices from AF Trustees

Regarding the invoices of AF Trustees decided not to pay for the work they did with regards to the legal dispute as there was no board resolution for this.

3

4

The members of the board decide unanimously to postpone the resolution on this item.

7) <u>Varia</u>

    a) Mr. Szelag informs the foundation board about the economic background of the planned PAK PCE transaction.

    b) Mr. Szelag asks for the UBO statement for Netia S.A. Mr. Schierscher prepares a draft UBO statement and circulates them among the board members.

    c) Mr. Grzesiak asks for the UBO statement for TV Polsat. Mr. Schierscher prepares a draft UBO statement and circulates them among the board members.

    d) Mr. Szelag asks for a new commercial register extract of the foundation and asks for a letter explaining that Mr. Grzesiak was appointed as board member of the foundation.

    e) The foundation board resolves that all payments are prepared by the foundation board member Peter Schierscher.

    f) Mr. Szelag informs about PILLAR II.

As there are no other items on the agenda, the meeting is closed at 11.35 am.

Vaduz, 10 April 2025

Peter Schierscher
(Chairman)

Petra Rohrer
(Secretary)

4

576



# M I N U T E S

der Sitzung des Vorstands der TiVi Stiftung am 10.
April 2025 um 10.20 Uhr im Büro der
Ritter Schierscher Rechtsanwälte AG, Gewerbeweg 5, 9490 Vaduz

Teilnehmer:

**Jaroslaw Grzesiak Tomasz
Szelag
Dr. Peter Schierscher**

Zygmunt Solorz wurde zur Teilnahme per Videoanruf eingeladen. Er nimmt nicht an
der Sitzung teil.

**1)** **Ernennung des Vorsitzenden und des Sekretärs**

Peter Schierscher wird zum Vorsitzenden und Petra Rohrer zur Schriftführerin
gewählt.

**2)** **Genehmigung des Protokolls vom 4. Dezember 2024**

Der Vorsitzende stellt fest, dass die Genehmigung des Protokolls vom 4.
Dezember 2024 nicht mehr erforderlich ist, da die Mitglieder des Stiftungsrates
in der letzten Sitzung einstimmig beschlossen haben, dieses Protokoll zu
genehmigen.

**3)** **Diskussion und Beschlussfassung über die Ernennung von zwei
zusätzlichen Direktoren von Reddev durch die Stiftung als einziges
Mitglied von Reddev Investments Limited, einer Gesellschaft mit
beschränkter Haftung, die beim Re istrar of Companies of the Reuplcib of
Cyprus unter der Nummer HE 330471 bthe "Reddev" registriert ist.**

Peter Schierscher weist darauf hin, dass die Ernennung von zwei
zusätzlichen Direktoren von Reddev durch die Stiftung gegen die derzeit
geltende zypriotische Einstweilige Verfügung verstoßen würde, wie der
zypriotische Rechtsbeistand der Stiftung bestätigt. Der Anwalt wies darauf
hin, dass eine solche Ernennung nur zulässig wäre, wenn die einstweilige
Verfügung vom Gericht formell geändert würde.

2

Darüber hinaus erinnert Herr Schierscher den Stiftungsrat daran, dass dieser am 4. Dezember 2024 einstimmig beschlossen hat, einen Rechtsbeistand für das laufende Verfahren in Zypern zu bestellen. Der beauftragte Anwalt wurde angewiesen, sich neutral und passiv zu verhalten, ist aber verpflichtet, die Rechte der Stiftung und ihrer Tochtergesellschaften zu wahren.

*Herr* Schierscher bekräftigt die treuhänderische Pflicht des Stiftungsrats, umsichtig zu handeln und sicherzustellen, dass Reddev und andere zugrunde liegende Einrichtungen keinen Risiken ausgesetzt werden. Er warnt davor, dass der Vorstand persönlich haftbar gemacht werden könnte, wenn ein Schaden entsteht, weil er die Bedenken aller Begünstigten missachtet.

Herr Grzesiak fügt hinzu, dass es die Pflicht des Vorstands ist, die Stiftung und ihre Tochtergesellschaften vor Schaden zu bewahren, einschließlich der Streuung von As- ten. Er stellt fest, dass die bestehende Unterlassungsverfügung leicht umgangen werden könnte und somit ein Risiko darstellt. Daher schlägt er vor, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei Reddev zu ermöglichen. Diese Direktoren hätten die Aufgabe, die Situation zu überwachen und zu verhindern, dass Vermögenswerte unter Umgehung der zyprischen einstweiligen Verfügung veräußert werden.

Herr Szelag argumentiert jedoch, dass weder die Stiftung noch ihre Tochtergesellschaften bisher irgendeinen Schaden erlitten haben und die Stiftung in Zypern neutral bleiben sollte. Er spricht sich gegen den Vorschlag aus, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen. Er spricht sich nachdrücklich dagegen aus, den zypriotischen Anwalt der Stiftung zu beauftragen, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren für Reddev zu ermöglichen.

Herr Schierscher fügt hinzu, dass die Stiftung bei den Vorgängen in Zypern neutral bleibt. Er betont, dass der Stiftungsrat seinen Verpflichtungen nachkommt, indem er umsichtig und in gutem Glauben handelt, um möglichen Schaden von Reddev abzuwenden, insbesondere im Hinblick auf die geäußerten Bedenken. Das Vorgehen des Stiftungsrats ist keine Abweichung von seiner neutralen Haltung, sondern vielmehr Ausdruck seiner Pflicht, die Interessen von Reddev und den Tochtergesellschaften der Stiftung zu schützen.

Nach Beratungen beschließt der Verwaltungsrat einstimmig, zum jetzigen keine zwei zusätzlichen Direktoren von Reddev zu ernennen, um der zypriotischen Interimsverordnung zu entsprechen.

3

Um den rechtlichen gerecht zu werden, beschließen die Mitglieder des Vorstands mehrheitlich - mit den Stimmen von Pm. Grzesiak und Herr Schierscher dafür und Herr Szelag dagegen - den Anwalt der Stiftung in Zypern zu beauftragen, bei Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei Reddev zu ermöglichen.

4) <u>Diskussion und Beschlussfassung über die geplante Netia S.A. infrastrukturelle Ausgliederungstransaktion</u>

Tomasz Szelag stellt die Netia S.A.-Infrastruktur-Abspaltung vor. Er erklärt, dass die TiVi Stiftung alleinige Aktionärin von Netia S.A. II sein wird. Des Weiteren erklärt er, dass die wirtschaftlichen Vorteile der geplanten Transaktion. Die Stiftung wird in der neuen Gesellschaft die gleichen Rechte haben wie in der Netia S.A. wird ein Aktionärsvertrag zwischen der Stiftung und Cyfrowy Polsat unterzeichnet, so dass die Stiftung die gleichen Rechte hat wie jetzt.

Herr Grzesiak bittet um weitere Informationen und Herr Szelag verspricht, Plr. Grzesiak zu geben.

Der Stiftungsrat beschließt, die Beschlussfassung über die Ausgliederung auf die nächste Sitzung zu verschieben.

5) <u>Lieferadresse für Peter Schierscher in Polen</u>

Peter Schierscher weist darauf hin, dass zwischen PMr. Solorz und den Zweitbegünstigten keine Einigung darüber besteht, wer als Zustellungsbevollmächtigter fungieren soll.

Da es keine Vereinbarung zwischen Herrn Solorz und den Zweitbegünstigten gibt, beschließt Peter Schierscher, Baker McKenzie Krzyżowski i Wspólnicy sp. k. als Zustelladresse zu benennen.

6) <u>Erörterung und Beschlussfassung über die Rechnungen der AF Trustees</u>

Bezüglich der Rechnungen von AF beschlossen die Treuhänder, die Arbeit, die sie im Zusammenhang mit dem Rechtsstreit geleistet haben, nicht zu bezahlen, da es dafür keinen Vorstandsbeschluss gab.

3

4

Die Mitglieder des Verwaltungsrats beschließen einstimmig, Beschlussfassung über diesen Punkt zu vertagen.

7)  <u>Varia</u>

a) Herr Szelag informiert den Stiftungsrat über die wirtschaftlichen Hintergründe der geplanten PAK PCE Transaktion.

b) Herr Szelag bittet um die UBO-Erklärung für Netia S.A. Herr Schierscher bereitet einen Entwurf der UBO-Erklärung vor und verteilt sie unter den Vorstandsmitgliedern.

c) Herr Grzesiak fragt nach der UBO-Erklärung für TV Polsat. Herr Schierscher bereitet einen Entwurf der UBO-Erklärung vor und verteilt sie an die Vorstandsmitglieder.

d) *Herr* Szelag bittet um einen neuen Handelsregisterauszug der foun- und bittet um ein Schreiben, in dem erklärt wird, dass Herr Grzesiak als Vorstandsmitglied der Stiftung angefragt wurde.

e) Der Stiftungsrat beschließt, dass alle Zahlungen durch das Stiftungsratsmitglied Peter Schierscher vorbereitet werden.

f) Herr Szelag informiert über PILLAR II.

Da keine weiteren Punkte auf der Tagesordnung stehen, wird die Sitzung um 11.35 Uhr geschlossen.

Vaduz, 10. April 2025

Peter Schierscher
(Vorsitzender)

Petra Rohrer
(Sekretärin)

4



# MINUTES

of the meeting of the board of **Solkomtel Foundation**
on 10 April 2025 at 12.05 pm at the office of
Ritter Schierscher Rechtsanwälte AG, Gewerbeweg 5, 9490 Vaduz

**Participants:**

Jaroslaw Grzesiak
Tomasz Szelag
Dr. Peter Schierscher

Zygmunt Solorz was inveted to participate via video-call. He does not join
the meeting.

1)    Appointment of Chairman and Secretary

Peter Schierscher is elected as chairman and Petra Rohrer as secre-
tary.

2)    Approval of the minutes dated 4 December 2024

The chairman states that the approval of the minutes from Decem-
ber 4, 2024, is no longer necessary, as the foundation board mem-
bers unanimously resolved to approve these minutes during the last
board meeting.

3)    Discussion and resolution on the appointment by the Foundation as
the Sole Member of of Stasalco Limited, a limited liability Company
registered with the Registrar of Companies of the Republic of Cyprus,
under number HE 372875 (the "Stasalco"), of two additional directors
of the Company

Peter Schierscher points out that the appointment of two additional
directors of Stasalco by the Foundation would violate the Cyprus In-
terim Order currently in place, as confirmed by the Foundation's Cy-
prus legal counsel. The lawyer advised that such an appointment
would only be permissible if the Interim Order was formally varied by
the court.

581

2

Furthermore, Mr. Schierscher reminds the Foundation board that it had unanimously resolved on December 4, 2024, to appoint legal counsel for the ongoing proceedings in Cyprus. The appointed counsel was instructed to act in a neutral and passive capacity while remaining obligated to protect the rights of the Foundation and its subsidiaries.

Mr. Schierscher reiterates the fiduciary duty of the Foundation board to act prudently and ensure that Stasalco and other underlying entities are not exposed to risk. He warns that the board could face personal liability should any damage occur because of disregarding the concerns raised by all the beneficiaries.

Mr. Grzesiak adds that it is the board's obligation to protect the Foundation and its subsidiaries from harm, including the dispersion of assets. He notes that the existing injunction could be easily circumvented, thereby posing a risk. Consequently, he proposes instructing the Cyprus lawyer to apply for a variation of the injunction to enable the appointment of additional directors at Stasalco. These directors would be tasked with monitoring the situation and preventing the dissipation of assets in circumvention of the Cyprus Interim Order.

Mr. Szelag, however, argues that neither the Foundation nor its subsidiaries have suffered any harm to date and the foundation should stay neutral in Cyprus. He opposes the proposal to instruct the Cyprus lawyer to seek a variation of the injunction. He strongly objects to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Stasalco.

Mr. Schierscher adds that the Foundation remains neutral in the proceedings in Cyprus. He emphasizes that the Foundation Board is fulfilling its obligations by acting prudently and in good faith to prevent any potential harm to Stasalco, especially in light of the concerns that have been raised. The board's actions are not a deviation from its neutral stance, but rather a reflection of its duty to protect the interests of Stasalco and the Foundation's subsidiaries.

After deliberation, the board unanimously decides not to appoint two additional directors of Stasalco at this stage, in order to remain in compliance with the Cyprus Interim Order.

2

3

To proceed in alignment with the legal framework, the members of the board resolve by majority vote—with Mr. Grzesiak and Mr. Schierscher in favor, and Mr. Szelag opposed—to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Stasalco.

4) <u>Discussion and resolution on the appointment by the Foundation as the Sole Member of of Karswell Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 229808 (the "Karswell"), of two additional directors of the Company</u>

Peter Schierscher points out that the appointment of two additional directors of Karswell by the Foundation would violate the Cyprus Interim Order currently in place, as confirmed by the Foundation's Cyprus legal counsel. The lawyer advised that such an appointment would only be permissible if the Interim Order was formally varied by the court.

Furthermore, Mr. Schierscher reminds the Foundation board that it had unanimously resolved on December 4, 2024, to appoint legal counsel for the ongoing proceedings in Cyprus. The appointed counsel was instructed to act in a neutral and passive capacity while remaining obligated to protect the rights of the Foundation and its subsidiaries.

Mr. Schierscher reiterates the fiduciary duty of the Foundation board to act prudently and ensure that Karswell and other underlying entities are not exposed to risk. He warns that the board could face personal liability should any damage occur because of disregarding the concerns raised by all the beneficiaries.

Mr. Grzesiak adds that it is the board's obligation to protect the Foundation and its subsidiaries from harm, including the dispersion of assets. He notes that the existing injunction could be easily circumvented, thereby posing a risk. Consequently, he proposes instructing the Cyprus lawyer to apply for a variation of the injunction to enable the appointment of additional directors at Karswell. These directors would be tasked with monitoring the situation and preventing the dissipation of assets in circumvention of the Cyprus Interim Order.

583

4

Mr. Szelag, however, argues that neither the Foundation nor its sub-sidiaries have suffered any harm to date and the foundation should stay neutral in Cyprus. He opposes the proposal to instruct the Cyprus lawyer to seek a variation of the injunction. He strongly objects to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to Karswell.

Mr. Schierscher adds that the Foundation remains neutral in the pro-ceedings in Cyprus. He emphasizes that the Foundation Board is ful-filling its obligations by acting prudently and in good faith to prevent any potential harm to Karswell, especially in light of the concerns that have been raised. The board's actions are not a deviation from its neutral stance, but rather a reflection of its duty to protect the inter-ests of Karswell and the Foundation's subsidiaries.

After deliberation, the board unanimously decides not to appoint two additional directors of Karswell at this stage, in order to remain in compliance with the Cyprus Interim Order.

To proceed in alignment with the legal framework, the members of the board resolve by majority vote—with Mr. Grzesiak and Mr. Schierscher in favor, and Mr. Szelag opposed—to instruct the Foun-dation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional direc-tors to Karswell.

5)  Discussion and resolution on amending the Articles of Association of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 ("WBN") regarding the Regulation 83 and the Regulation 99

Peter Schierscher points out that amending the Articles of Association of WBN Holdings Limited by the Foundation would violate the Cyprus Interim Order currently in place, as confirmed by the Foundation's Cyprus legal counsel. The lawyer advised that such amendment would only be permissible if the Interim Order was formally varied by the court.

Furthermore, Mr. Schierscher reminds the Foundation board that it had unanimously resolved on December 4, 2024, to appoint legal

4

5

counsel for the ongoing proceedings in Cyprus. The appointed counsel was instructed to act in a neutral and passive capacity while remaining obligated to protect the rights of the Foundation and its subsidiaries.

Mr. Schierscher reiterates the fiduciary duty of the Foundation board to act prudently and ensure that WBN and other underlying entities are not exposed to risk. He warns that the board could face personal liability should any damage occur because of disregarding the concerns raised by the second beneficiaries.

Mr. Grzesiak adds that it is the board's obligation to protect the Foundation and its subsidiaries from harm, including the dispersion of assets. He notes that the existing injunction could be easily circumvented, thereby posing a risk. Consequently, he proposes instructing the Cyprus lawyer to apply for a variation of the injunction to enable amending the Articles of Association of WBN in order to appoint additional directors. These directors would be tasked with monitoring the situation and preventing the dissipation of assets in circumvention of the Cyprus Interim Order.

Mr. Szelag, however, argues that neither the Foundation nor its subsidiaries have suffered any harm to date and the foundation should stay neutral in Cyprus. He opposes the proposal to instruct the Cyprus lawyer to seek a variation of the injunction. He strongly objects to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to WBN.

Mr. Schierscher adds that the Foundation remains neutral in the proceedings in Cyprus. He emphasizes that the Foundation Board is fulfilling its obligations by acting prudently and in good faith to prevent any potential harm to WBN, especially in light of the concerns that have been raised. The board's actions are not a deviation from its neutral stance, but rather a reflection of its duty to protect the interests of WBN and the Foundation's subsidiaries.

After deliberation, the board unanimously decides not to amending the Articles of Association of WBN at this stage, to remain in compliance with the Cyprus Interim Order.

To proceed in alignment with the legal framework, the members of the board resolve by majority vote—with Mr. Grzesiak and Mr.

5

6

Schierscher in favor, and Mr. Szelag opposed—to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable amending the Articles of Association of WBN.

6)    Discussion and resolution on the appointment by the Foundation as the Sole Member of of WBN Holdings Limited, a limited liability Company registered with the Registrar of Companies of the Republic of Cyprus, under number HE 336956 (the "WBN"), of two additional directors of the Company

Peter Schierscher points out that the appointment of two additional directors of WBN by the Foundation would violate the Cyprus Interim Order currently in place, as confirmed by the Foundation's Cyprus legal counsel. The lawyer advised that such an appointment would only be permissible if the Interim Order was formally varied by the court.

Furthermore, Mr. Schierscher reminds the Foundation board that it had unanimously resolved on December 4, 2024, to appoint legal counsel for the ongoing proceedings in Cyprus. The appointed counsel was instructed to act in a neutral and passive capacity while remaining obligated to protect the rights of the Foundation and its subsidiaries.

Mr. Schierscher reiterates the fiduciary duty of the Foundation board to act prudently and ensure that WBN and other underlying entities are not exposed to risk. He warns that the board could face personal liability should any damage occur because of disregarding the concerns raised by all the beneficiaries.

Mr. Grzesiak adds that it is the board's obligation to protect the Foundation and its subsidiaries from harm, including the dispersion of assets. He notes that the existing injunction could be easily circumvented, thereby posing a risk. Consequently, he proposes instructing the Cyprus lawyer to apply for a variation of the injunction to enable the appointment of additional directors at WBN. These directors would be tasked with monitoring the situation and preventing the dissipation of assets in circumvention of the Cyprus Interim Order.

Mr. Szelag, however, argues that neither the Foundation nor its subsidiaries have suffered any harm to date and the foundation should stay neutral in Cyprus. He opposes the proposal to instruct the Cyprus

7

lawyer to seek a variation of the injunction. He strongly objects to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to WBN.

Mr. Schierscher adds that the Foundation remains neutral in the proceedings in Cyprus. He emphasizes that the Foundation Board is fulfilling its obligations by acting prudently and in good faith to prevent any potential harm to WBN, especially in light of the concerns that have been raised. The board's actions are not a deviation from its neutral stance, but rather a reflection of its duty to protect the interests of WBN and the Foundation's subsidiaries.

After deliberation, the board unanimously decides not to appoint two additional directors of WBN at this stage, to remain in compliance with the Cyprus Interim Order.

To proceed in alignment with the legal framework, the members of the board resolve by majority vote—with Mr. Grzesiak and Mr. Schierscher in favor, and Mr. Szelag opposed—to instruct the Foundation's Cyprus lawyer to apply to the court for a variation of the Cyprus Interim Order to enable the appointment of additional directors to WBN.

7)  Delivery address for Peter Schierscher in Poland

Peter Schierscher points out the there is no agreement by Mr. Solorz and the second beneficiaries as who should be acting as agent for delivering

Since there is no agreement between Mr. Solorz and the second beneficiaries Peter Schierscher decides to appoint Baker McKenzie Krzyżowski i Wspólnicy sp. k. as delivery address.

8)  Discussing and passing resolutions on the invoices from AF Trustees

Regarding the invoices of AF Trustees decided not to pay for the work they did with regards to the legal dispute as there was no board resolution for this.

7

T. Sch

587

8

The members of the board decide unanimously to postpone the reso-
lution on this item.

9)   Varia

   a)   Mr. Szelag asks for a support letter for Stasalco as attached to
        these minutes. The foundation board decides to execute the at-
        tached letter.
   b)   Mr. Szelag asks for a new commercial register extract of the
        foundation and asks for a letter explaining that Mr. Grzesiak was
        appointed as board member of the foundation.
   c)   The foundation board resolves that all payments are prepared
        by the foundation board member Peter Schierscher.
   d)   Mr. Szelag informs about PILLAR II.

As there are no other items on the agenda, the meeting is closed at 12.45
pm.

Vaduz, 10 April 2025

Peter Schierscher
(Chairman)

Petra Rohrer
(Secretary)

8



MINUTES

der Sitzung des Vorstands der Soikomtel-Stiftung am 10.
April 2025 um 12.05 Uhr im Büro der
Ritter Schierscher Rechtsanwälte AG, Gewerbeweg 5, 9490 Vaduz

Teilnehmer

Jaroslaw Grzesiak Tomasz
Szelag
Dr. Peter Schierscher

Zygmunt Solorz wurde zur Teilnahme per Videoanruf eingeladen. Er nimmt nicht an
der Sitzung teil.

1)    Ernennung des Vorsitzenden und des Sekretärs

Peter Schierscher wird zum Vorsitzenden und Petra Rohrer zur
Schriftführerin gewählt.

2)    Billigung des Protokolls vom 4. Dezember 2024

Der Vorsitzende stellt fest, dass die Genehmigung des Protokolls vom 4.
Dezember 2024 nicht mehr notwendig ist, da die Stiftungsratsmitglieder in der
letzten Sitzung einstimmig beschlossen haben, dieses Protokoll zu
genehmigen.

3)    Diskussion und Beschlussfassung über die Bestellung von zwei zusätzlichen
Direktoren der Stasalco Limited, einer Gesellschaft mit beschränkter Haftung, die
beim Registrar of Companies der Republik Cyorus unter der Nummer HE 372875
als "Stasalco" eingetragen ist, durch den Vorstand.

Peter Schierscher weist darauf hin, dass die Ernennung von zwei zusätzlichen
Direktoren von Stasalco durch die Stiftung gegen die derzeit geltende
zypriotische Einstweilige Verfügung verstoßen würde, was vom zypriotischen
Rechtsbeistand der Stiftung bestätigt wurde. Der Anwalt wies darauf hin, dass
eine solche Ernennung nur zulässig wäre, wenn die einstweilige Verfügung
vom Gericht formell geändert würde.

y varied by

T.

Darüber hinaus erinnert Herr Schierscher den Stiftungsrat daran, dass dieser am 4. Dezember 2024 einstimmig beschlossen hat, einen Rechtsbeistand für das laufende Verfahren in Zypern zu bestellen. Der beauftragte Anwalt wurde angewiesen, sich neutral und passiv zu verhalten, ist aber verpflichtet, die Rechte der Stiftung und ihrer Tochtergesellschaften zu wahren.

Herr Schierscher bekräftigt die treuhänderische Pflicht des Stiftungsrats, umsichtig zu handeln und sicherzustellen, dass Stasalco und andere zugrunde liegende Anlagen keinem Risiko ausgesetzt werden. Er warnt davor, dass der Stiftungsrat persönlich haftbar gemacht werden könnte, wenn ein Schaden eintritt, weil er die von allen Begünstigten geäußerten Bedenken nicht beachtet hat.

Herr Grzesiak fügt hinzu, dass es die Pflicht des Vorstands ist, die Stiftung und ihre Tochtergesellschaften vor Schaden zu bewahren, einschließlich der Streuung von As- ten. Er stellt fest, dass die bestehende Unterlassungsverfügung leicht umgangen werden könnte und somit ein Risiko darstellt. Daher schlägt er vor, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei Stasalco zu ermöglichen. Diese Direktoren hätten die Aufgabe, die Situation zu überwachen und zu verhindern, dass Vermögenswerte unter Umgehung der zyprischen einstweiligen Verfügung veräußert werden.

Herr Szelag argumentiert jedoch, dass weder die Stiftung noch ihre Tochtergesellschaften bisher irgendeinen Schaden erlitten haben und die Stiftung in Zypern neutral bleiben sollte. Er spricht sich gegen den Vorschlag aus, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen. Er spricht nachdrücklich dagegen aus, den zypriotischen Anwalt der Stiftung anzuweisen, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren für Stasalco zu ermöglichen.

Herr Schierscher fügt hinzu, dass die Stiftung bei den Vorgängen in Zypern neutral bleibt. Er betont, dass der Stiftungsrat seinen Verpflichtungen nachkommt, indem er umsichtig und in gutem Glauben handelt, um jeglichen potenziellen Schaden für Stasalco zu verhindern, insbesondere im Hinblick auf die geäußerten Bedenken. Das Vorgehen des Stiftungsrates ist keine Abweichung von seiner neutralen Haltung, sondern vielmehr Ausdruck seiner Pflicht, die Interessen von Stasalco und den Tochtergesellschaften der Stiftung zu schützen.

Nach Beratungen beschließt der Verwaltungsrat einstimmig, zum jetzigen Zeitpunkt keine zwei zusätzlichen Direktoren von Stasalco zu ernennen, um der zypriotischen Interimsverordnung zu entsprechen.

2

Um den rechtlichen Rahmenbedingungen gerecht zu werden, beschließen die Vorstandsmitglieder mehrheitlich - Herr Grzesiak und Herr Schierscher dafür, Herr Szelag dagegen - den Anwalt der Stiftung auf Zypern zu beauftragen, eine Änderung der zypriotischen Einstweiligen Verfügung zu beantragen. Schierscher dafür und Herr Szelag dagegen - den zypriotischen Anwalt der Stiftung zu beauftragen, bei Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Bestellung zusätzlicher Direktoren bei Stasalco zu ermöglichen.

4) Erörterung und Stellungnahme zur Ernennung von zwei zusätzlichen Direktoren der durch die Stiftung als einziges Mitglied der Karswell Limited, einer Gesellschaft mit beschränkter Haftung, die beim Registrar of Companies of the Republic of Cyprus unter der Nummer HE 229808 (die "Karswell") eingetragen ist.

Peter Schierscher weist darauf hin, dass die Ernennung zweier zusätzlicher Direktoren von Karswell durch die Stiftung gegen die derzeit zypriotische Einstweilige Verfügung verstoßen würde, wie der zypriotische Rechtsbeistand der Stiftung bestätigt. Der Anwalt wies darauf hin, dass eine solche Ernennung nur zulässig wäre, wenn die einstweilige Verfügung vom Gericht formell geändert würde.

Außerdem erinnert Pir. Schierscher erinnert den Stiftungsrat daran, dass er am 4. Dezember 2024 einstimmig beschlossen hatte, einen Rechtsbeistand für das laufende Verfahren in Zypern zu bestellen. Der bestellte Rechtsbeistand wurde angewiesen, neutral und passiv zu agieren, wobei er verpflichtet bleibt, die Rechte der Stiftung und ihrer Tochtergesellschaften zu wahren.

Herr Schierscher bekräftigt die treuhänderische Pflicht des Stiftungsrats, umsichtig zu handeln und sicherzustellen, dass Karswell und andere zugrunde liegende keinem Risiko ausgesetzt werden. Er warnt davor, dass der Vorstand per- sonal haftbar gemacht werden könnte, falls ein Schaden eintritt, weil er die von allen Begünstigten geäußerten Bedenken außer Acht lässt.

Herr Grzesiak fügt hinzu, dass es die Pflicht des Vorstands ist, die Stiftung und ihre Tochtergesellschaften vor Schaden zu bewahren, einschließlich der Streuung von As- ten. Er stellt fest, dass die bestehende Unterlassungsverfügung leicht umgangen werden könnte und somit ein Risiko darstellt. Daher schlägt er vor, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei Karswell zu ermöglichen. Diese Direktoren hätten die Aufgabe, die Situation zu überwachen und zu verhindern, dass Vermögenswerte unter Umgehung der zyprischen einstweiligen Verfügung veräußert werden.

3

591

4

Herr Szelag argumentiert jedoch, dass weder die Stiftung noch ihre
Tochtergesellschaften bisher irgendeinen Schaden erlitten haben und die Stiftung
in Zypern neutral bleiben sollte. Er spricht sich gegen den Vorschlag aus, den
zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen
Verfügung zu beantragen. Er spricht sich nachdrücklich dagegen aus, den
zypriotischen Anwalt der Stiftung anzuweisen, beim Gericht eine Änderung der
zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung
zusätzlicher Direktoren für Karswell zu ermöglichen.

Plr. Schierscher fügt hinzu, dass die Stiftung bei den Vorgängen in Zypern
neutral bleibt. Er betont, dass der Stiftungsrat seinen Verpflichtungen
nachkommt, indem er umsichtig und in gutem Glauben handelt, um
jeglichen potenziellen Schaden von Karswell abzuwenden, insbesondere
im Hinblick auf die geäußerten Bedenken. Das Vorgehen des Stiftungsrates
ist keine Abweichung von seiner neutralen Haltung, sondern vielmehr
Ausdruck seiner Pflicht, die Interessen von Karswell und den
Tochtergesellschaften der Stiftung zu schützen.

Nach eingehender Beratung beschließt der Verwaltungsrat einstimmig, zum
jetzigen Zeitpunkt keine zwei zusätzlichen Direktoren von Karswell zu
ernennen, um der zyprischen Interimsverordnung zu entsprechen.

Um den rechtlichen Rahmenbedingungen gerecht zu werden, beschließen die
Mitglieder Vorstands mehrheitlich - mit den Stimmen von Herrn Grzesiak und
Herrn Qtr. Schierscher dafür und Herr Szelag dagegen - den zypriotischen
Anwalt der Stiftung zu beauftragen, bei Gericht eine Änderung der
zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung
zusätzlicher Direktoren bei Karswell zu ermöglichen.

5)    Erörterung und Lösung der         mend in    die Artikel  f Ass
WBN Holdin s Limited eine Gesellschaft mit beschränkter Haftung    ociation of
mit dem Registrar f C    anies der Re    lic y Company    oder n et HE 33695
"WBN" re in Re Ulation         pub  of Cyprus, die Re    umb
    6 (    )  q      q       83 and    qulation 99
Peter Schierscher weist darauf hin, dass eine Änderung der Satzung der WBN
Holdings Limited durch die Stiftung gegen die derzeit geltende zypriotische
Einstweilige Verfügung verstoßen würde, was vom zypriotischen Rechtsbeistand
der Stiftung bestätigt wurde. Der Anwalt wies darauf hin, dass eine solche
Änderung nur zulässig wäre, wenn die einstweilige Verfügung vom Gericht
förmlich geändert würde.

Darüber hinaus erinnert Herr Schierscher den Stiftungsrat daran, dass er am 4.
Dezember 2024 einstimmig beschlossen hat, einen Rechtsanwalt zu bestellen.

4

T. ful

5

Rechtsbeistand für das laufende Verfahren in Zypern. Der beauftragte Anwalt wurde angewiesen, neutral und passiv zu handeln und gleichzeitig die Rechte der Stiftung und ihrer Tochtergesellschaften zu wahren.

Herr Schierscher bekräftigt die treuhänderische Pflicht des Stiftungsrates, umsichtig zu handeln und sicherzustellen, dass WBN und andere zugrunde liegende Einrichtungen keinem Risiko ausgesetzt werden. Er warnt davor, dass der Stiftungsrat persönlich haftbar gemacht werden könnte, wenn aufgrund der Missachtung der von den Zweitbegünstigten vorgebrachten Bedenken ein Schaden entsteht.

Herr Grzesiak fügt hinzu, dass es die Pflicht des Vorstands ist, die Stiftung und ihre Tochtergesellschaften vor Schaden zu bewahren, einschließlich der Streuung von As- ten. Er stellt fest, dass die bestehende Unterlassungsverfügung leicht umgangen werden könnte und somit ein Risiko darstellt. Daher schlägt er vor, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen, um die von WBN zu ändern und zusätzliche Direktoren zu bestellen. Diese Direktoren hätten die Aufgabe, die Situation zu überwachen und zu verhindern, dass Vermögenswerte unter Umgehung der zypriotischen einstweiligen Verfügung veruntreut werden.

Herr Szelag argumentiert jedoch, dass weder die Stiftung noch ihre Tochtergesellschaften bisher irgendeinen Schaden erlitten haben und die Stiftung in Zypern neutral bleiben sollte. Er spricht sich gegen den Vorschlag aus, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen. Er spricht sich nachdrücklich dagegen aus, den zypriotischen Anwalt der Stiftung zu beauftragen, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren für WBN zu ermöglichen.

Herr Schierscher fügt hinzu, dass die Stiftung bei den Vorgängen in Zypern neutral bleibt. Er betont, dass der Stiftungsrat seinen Verpflichtungen nachkommt, indem er umsichtig und nach Treu und Glauben handelt, um jeglichen potenziellen Schaden für WBN zu verhindern, insbesondere im Hinblick auf die geäußerten Bedenken. Das Vorgehen des Stiftungsrats ist keine Abweichung von seiner neutralen Haltung, sondern vielmehr Ausdruck seiner Pflicht, die Interessen von WBN und der Tochtergesellschaften der Stiftung zu schützen.

Nach eingehender Beratung beschließt der Verwaltungsrat einstimmig, die Satzung von WBN zum jetzigen Zeitpunkt nicht zu ändern, um der zypriotischen Interimsverordnung zu genügen.

Um den rechtlichen gerecht zu werden, beschließen die Mitglieder des Verwaltungsrats mehrheitlich - mit Herrn Grzesiak und Herrn Plr.

6

Schierscher dafür und Herr Szelag dagegen, den zypriotischen Anwalt der Stiftung zu beauftragen, bei Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Änderung der Satzung von WBN zu ermöglichen.

6)  Erörterung und Beschlussfassung über die Ernennung von zwei zusätzlichen der WBN Holdings Limited, einer im Handelsregister der Republik Zypern unter der Nummer HE 336956 eingetragenen mit beschränkter Haftung (die "WBN"), durch die Stiftung als einziges Mitglied der Gesellschaft

Peter Schierscher weist darauf hin, dass die Ernennung von zwei zusätzlichen Direktoren von WBN durch die Stiftung gegen die derzeit zypriotische Einstweilige Verfügung verstoßen würde, was vom zypriotischen der Stiftung bestätigt wurde. Der Anwalt wies darauf hin, dass eine solche Ernennung nur zulässig wäre, wenn die einstweilige Verfügung vom formell geändert würde.

Darüber hinaus erinnert Herr Schierscher den Stiftungsrat daran, dass dieser am 4. Dezember 2024 einstimmig beschlossen hat, einen Rechtsbeistand für das laufende Verfahren in Zypern zu bestellen. Der beauftragte Anwalt wurde angewiesen, sich neutral und passiv zu verhalten, ist aber verpflichtet, die Rechte der Stiftung und ihrer Tochtergesellschaften zu wahren.

Herr Schierscher bekräftigt die treuhänderische Pflicht des Stiftungsrates, umsichtig zu handeln und sicherzustellen, dass der WBN und andere zugrunde liegende Einrichtungen keinem Risiko ausgesetzt werden. Er warnt davor, dass der Vorstand persönlich haftbar gemacht werden könnte, wenn ein Schaden entsteht, weil er die von allen Begünstigten geäußerten Bedenken missachtet.

Herr Grzesiak fügt hinzu, dass es die Pflicht des Vorstands ist, die Stiftung und ihre Tochtergesellschaften vor Schaden zu bewahren, einschließlich der Streuung von As- ten. Er stellt fest, dass die bestehende Unterlassungsverfügung leicht umgangen werden könnte und somit ein Risiko darstellt. Daher schlägt er vor, den zypriotischen Anwalt zu beauftragen, eine Änderung der einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren bei WBN zu ermöglichen. Diese Direktoren hätten die Aufgabe, die Situation zu überwachen und zu verhindern, dass Vermögenswerte unter Umgehung der zypriotischen einstweiligen Verfügung veruntreut werden.

Qtr. Szelag argumentiert jedoch, dass weder die Stiftung noch ihre Tochtergesellschaften bisher einen Schaden erlitten haben und die Stiftung should in Zypern neutral zu bleiben. Er lehnt den Vorschlag ab, die Kommission zu Cyprus

6

594

7

Anwalt, eine Änderung der einstweiligen Verfügung zu beantragen. Er spricht sich nachdrücklich dagegen aus, den zypriotischen Anwalt der Stiftung anzuweisen, beim Gericht eine Änderung der zypriotischen einstweiligen Verfügung zu beantragen, um die Ernennung zusätzlicher Direktoren für WBN zu ermöglichen.

Herr Schierscher fügt hinzu, dass die Stiftung bei den Vorgängen in Zypern neutral bleibt. Er betont, dass der Stiftungsrat seinen Verpflichtungen nachkommt, indem er umsichtig und nach Treu und Glauben handelt, um jeglichen potenziellen Schaden für WBN zu verhindern, insbesondere im Hinblick auf die geäußerten Bedenken. Das Vorgehen des Stiftungsrats ist keine Abweichung von seiner neutralen Haltung, sondern vielmehr Ausdruck seiner Pflicht, die Interessen von WBN und den Tochtergesellschaften der Stiftung zu schützen.

Nach Beratungen beschließt der Verwaltungsrat einstimmig, zum jetzigen Zeitpunkt keine zwei zusätzlichen Direktoren von WBN zu ernennen, um der zypriotischen Interimsverordnung zu entsprechen.

Um rechtlichen Rahmenbedingungen gerecht zu werden, beschließen die Vorstandsmitglieder mehrheitlich - mit den Stimmen von Herrn Grzesiak und Herrn Schierscher und der Gegenstimme von Herrn Szelag - den zypriotischen Anwalt der Stiftung zu beauftragen, bei Gericht eine Änderung der zypriotischen Einstweiligen Verfügung zu beantragen, um die Bestellung zusätzlicher Direktoren für WBN zu ermöglichen.

7)     Lieferadresse für Peter Schierscher in Polen

Peter Schierscher weist darauf hin, dass es keine Einigung zwischen Herrn Solorz und den Zweitbegünstigten darüber gibt, wer als Zustellungsbevollmächtigter fungieren soll.

Da es keine Vereinbarung zwischen Herrn Solorz und den Zweitbegünstigten gibt, beschließt Peter Schierscher, Baker McKenzie Krzyżowski i Wspólnicy sp. k. als Zustelladresse zu benennen.

8)     Erörterung und Beschlussfassung über die Rechnungen der AF Trustees

Bezüglich der Rechnungen von AF beschlossen die Treuhänder, die Arbeit, die sie im Zusammenhang mit dem Rechtsstreit geleistet haben, nicht zu bezahlen, da es dafür keinen Vorstandsbeschluss gab.

7

8

Die Mitglieder des Verwaltungsrats beschließen einstimmig, die Beschlussfassung über diesen Punkt zu vertagen.

9) Varia

    a)    Herr Szelag bittet um ein Unterstützungsschreiben für Stasalco, das diesem Protokoll beigefügt ist. Der Stiftungsrat beschließt, das beigefügte Schreiben zu unterzeichnen.

    b)    Herr Szelag bittet um einen neuen Handelsregisterauszug der Stiftung und bittet um ein Schreiben, in dem erklärt wird, dass Herr Grzesiak zum Vorstandsmitglied der Stiftung ernannt wurde.

    c)    Der Stiftungsrat beschließt, dass alle Zahlungen durch das Stiftungsratsmitglied Peter Schierscher vorbereitet werden.

    d)    Herr Szelag informiert über PILLAR II.

Da keine weiteren Punkte auf der Tagesordnung stehen, wird die Sitzung um 12.45 Uhr geschlossen.
p

Vaduz, 10. April 2025

Peter Schierscher
(Vorsitzender)

Peta Roher
(Sekretärin)



## Gorton Anton Ferdinand

| | |
|---|---|
| **Von:** | Tomasz Szelag <tomasz.szelag@arcesius.com.cy> |
| **Gesendet:** | Donnerstag, 17. April 2025 21:42 |
| **An:** | Matthias Niedermüller |
| **Cc:** | Peter Schierscher; Jarosław Grzesiak; Christian Ritter; Fabian Rischka |
| **Betreff:** | Re: TiVi Foundation; Solkomtel Foundation; Cyprus Proceeding |
| | |
| **Priorität:** | Hoch |

Dear All,

Sorry for late reply. Today my parents came to Cyprus for Easter Holiday and I was taking care of them.

I was in touch with Matthias today and we discussed his below email while I was driving with my parents from the airport.

To be 100% precise in this sensitive matter, I've read Matthias's email carefully and please find my thoughts / comments below:

1. During the Foundation Council Meeting on 10th of April it was a resolution for filling application in Cypriot court. I was strongly against but resolution was made (2 votes against 1).

2. We haven't discussed any details what will be the next steps. As I remember Matthias was in touch with Peter on it and I also assumed that as in previous projects (for instance: memos prepared on Asseco, Modivo and Netia spin off) I'll participate in all next steps of such court filling.

3. I saw CVs of the proposed 2 additional directors but I've never met them.

4. I spoke to Peter on Monday evening and we discussed different operational issues (Netia spin-off, UBO statements, Foundation Council Meeting etc.). Peter also mentioned he will be in Cyprus next day (Tuesday). I planned to be in Poland on Tuesday so I dind't asked additional questions.

5. I don't know who prepared all docs that were filled in Cyprus court and I haven't received any correspondence in this matter (I checked also my spam messages).

6. I haven't read docs that were filled (received from my Cypriot lawyer) but will try to do it asap (taking into consideration that I have my parents visiting me at the moment please give me more time).

7. I would be grateful for sending me as much info as possible about steps that were taken after 10th of April (after the resolution) to understand the whole process.

Please let me know if you require more info in connection with above points.

Looking forward to hearing from you.

Happy Easter Holiday.

Tomasz

Wiadomość napisana przez Matthias Niedermüller <mn@niedermueller.law> w dniu 17.04.2025, o godz. 15:10:

Dear Peter

I already tried to call you in person but received no response or callback.

I make reference to the meeting of the Foundation Council of TIVI and Solkomtel (Foundations) of last Thursday 10 April 2025.

I received the minutes of the meetings from Tomek in which a majority resolution was passed that an application to the Cyprus Court shall be prepared by George (GZG) in which an amendment/alteration of the Cyprus injunction shall be applied for by the Foundations. This resolution was passed against the strong opposition and vote of Tomek.

To date neither Tomek nor I have received any update from you or Mr. Grzesiak on the next steps or further action on this point and it thus was our clear understanding that there has been no further development on this item since the Council Meetings of 10 April.

It was clearly understood from the previous interactions I had with you and also from the discussions you had with Tomek at the Foundation Council meeting of 10 April that the next steps should be as follows to ensure a proper involvement of all members of the Foundation Council and due process:

1. The Cyprus Counsel of TiVi and Solkomtel (George Georgiou) would draft an application.
2. The draft application would be circulated to all members of the Foundation Council for commenting and discussion. This in particular as there was no discussion in the Foundation council on 1) what exactly should be applied for 2) what the actual reasons for the application are, what necessity there is for the application, how the application should be reasoned, 3) what possible relations the persons proposed have to the Children or other members of the Foundation council (in particular there was no conflict check or interview conducted on the proposed persons), 4) what the consequences and possible risk of damage and harm such application could cause to the foundation assets, etc.
3. The Foundation Council would pass a resolution in which a decision would be taken on what instructions shall be given to the Cyprus Counsel (GZG) on how to proceed with the draft (file or not file). This resolution in particular also would have to include all the above considerations as to why the application shall be made and what consequences the successful application would have on the subsidiaries and the Foundation assets.

It therefore came as an extreme surprise to us, when we were informed today by the Cyprus Counsel of Tomek, that the Cyprus Counsel of the Foundations (GZG) already filed the application for amendment/alteration with the Cyprus court on Wednesday 16 April and that application already was served to Tomek and also the other parties of the Cyprus proceeding.

I have to emphasize that neither I nor Tomek have ever seen a draft of the application filed and also were in no way involved or copied in into any instructions given by the Foundation (represented by you or Mr. Gzresiak) to the Cyprus Counsel (GZG) or any further communication after 10 April 2025 on this item. Thus the entire instructions given to the Cyprus Counsel (GZG), drafting and commenting of affidavits and application drafts and approval and instruction for filing was done without the involvement or information of Tomek. Rather Tomek was entirely circumvented in this process.

The fact that you and Mr. Grzesiak conducted the entire drafting process and approval for filing of an application in the Cyprus proceeding including the swearing of Affidavits containing statements which are to an important extent inaccurate, to say the least, including also a trip to Cyprus, without ever involving or informing Tomek as third member of the Foundation Council and without any resolution or approval of the Foundation Council in relation to the instructions and the filing is highly concerning and constitutes a severe violation of the rules for a proper conduct and decisionmaking in the Foundation Council and representing the Foundation. The same also holds true in relation to the selection and proposal for appointment for two persons as directors as stated in the application in Cyprus. It was in particular also never discussed or resolved in the Foundation Council to appoint these two individuals, but merely to prepare a draft application which was to be discussed among the Council Members.

Also the actions entirely contradict your previous repeated promises and assurances that all matters and actions of the Foundation Council are going to be played completely transparent and by the book and no member of the

2

598

Foundation Council would be excluded in any way from any communication or decision. Before the meeting of 10 April even the most basic communication was circulated among all members.

The information received today rather now shows the opposite. You and Mr. Grzesiak excluded Tomek from the entire decision making and drafting process that lead to this application and thus circumvented him in major items relating to the Foundations.

We therefore ask you to immediately disclose <u>all</u> communication and documentation relating to the application filed in Cyprus, in particular all and any communication between you and Mr. Grzesiak and the Cyprus Counsel (GZG) and provide full and transparent disclosure of all activities taken. This not only regarding the time after the meeting of the Foundation Council of 10 April but in particular also for the time before that meeting.

We expect your response until 22 April, 17:00 at the latest.

Kind regards

Matthias

**Dr. Matthias Niedermüller, M.B.L-HSG, TEP**
**Managing Partner | Attorney at Law | Notary Public**
Werdenbergerweg 11 | 9490 Vaduz, Liechtenstein | T: +423 222 0750 | F: +423 222 0751
Mail: mn@niedermueller.law

<image001.png>

<image002.jpg><image003.jpg><image004.jpg><image005.jpg><image006.jpg><image007.png><image008.pn

Wichtiger Hinweis:
Dieses E-Mail kann Betriebs- oder Geschäftsgeheimnisse, dem Anwaltsgeheimnis unterliegende oder sonstige vertrauliche Informationen enthalten und ist von Gese wegen geschützt. Falls Sie dieses E-Mail irrtümlich erhalten haben, ist Ihnen eine Kenntnisnahme des Inhalts, eine Vervielfältigung oder Weitergabe dieses E-Mails so eventueller Anhänge ausdrücklich untersagt. Bitte benachrichtigen Sie uns unter obgenannter Adresse und löschen Sie das empfangene E-Mail sowie allfällige Anhänge Ihrem Computer oder Netzwerk. Vielen Dank.

Important notice:
This e-mail may contain trade secrets or privileged, undisclosed or otherwise confidential information and is legally privileged. If you have received this e-mail by mist you are hereby notified that any review, copying or distribution of the e-mail and its attachments is strictly prohibited. Please inform us at the above mentioned address delete the e-mail and any attachments from your system. Thank you for your co-operation.

599

*Arbeitsweise*

| | |
|---|---|
| **Von:** | Tomasz <tomasz.szelag@arcesius.com.cy> |
| **Gesendet:** | Donnerstag, 17. April 2025 21:42 |
| **An:** | Matthias Niedermüller |
| **Cc:** | Peter Schierscher; Jarosław Grzesiak; Christian Ritter; Fabian Rischka |
| **Betreff:** | Re: TiVi-Stiftung; Solkomtel-Stiftung; Zypern-Verfahren |
| **Priorität:** | Hoch |

Sehr geehrte Damen und Herren,

Entschuldigung für die späte Antwort. Heute kamen meine Eltern in den Osterferien nach Zypern und ich habe mich um sie gekümmert.

Ich habe heute mit Matthias gesprochen und wir haben seine unten stehende E-Mail besprochen, während ich mit Eltern vom Flughafen gefahren bin.

Um in dieser heiklen Angelegenheit 100%ig präzise zu sein, habe ich die E-Mail von Matthias sorgfältig gelesen, und Sie finden meine Gedanken/Kommentare unten:

1. Auf der Sitzung des Stiftungsrats am 10. April wurde ein Beschluss über die Einreichung eines Antrags bei einem zypriotischen Gericht gefasst. Ich war strikt dagegen, aber der Beschluss wurde gefasst (2 Stimmen gegen 1).

2. Wir haben noch keine Einzelheiten über die nächsten Schritte besprochen. Soweit ich mich erinnere, stand Matthias mit Peter in Kontakt, und ich bin auch davon ausgegangen, dass ich wie bei früheren Projekten (z. B. bei den Memos zu Asseco, Modivo und der Abspaltung von Netia) an allen weiteren Schritten einer solchen Gerichtsbesetzung beteiligt sein werde.

3. Ich habe die Lebensläufe der vorgeschlagenen 2 zusätzlichen Direktoren gesehen, aber ich habe sie nie getroffen.

4. Ich habe am Montagabend mit Peter gesprochen, und wir haben verschiedene operative Fragen besprochen (Ausgliederung von Netia, Erklärungen der UBO, Sitzung des Stiftungsrats usw.). Peter erwähnte auch, dass er am nächsten Tag (Dienstag) in Zypern sein wird. Da ich am Dienstag in Polen sein wollte, habe ich keine weiteren Fragen gestellt.

5. Ich weiß nicht, wer die Unterlagen für das zyprische Gericht vorbereitet hat, und ich habe in dieser Angelegenheit Korrespondenz erhalten (ich habe auch meine Spam-Nachrichten überprüft).

6. Ich habe die ausgefüllten Dokumente (die ich von meinem zypriotischen Anwalt erhalten habe) noch nicht gelesen, werde aber versuchen, dies so schnell wie möglich nachzuholen (da ich derzeit Besuch von meinen Eltern habe, bitte ich um mehr Zeit).

7. Ich wäre Ihnen dankbar, wenn Sie mir so viele Informationen wie möglich über die nach dem 10. April (nach der Entschließung) unternommenen Schritte zukommen lassen würden, um den gesamten Prozess zu verstehen.

Bitte lassen Sie mich wissen, wenn Sie weitere Informationen zu den oben genannten

Punkten benötigen. Ich freue mich darauf, von Ihnen zu hören.

Frohe Osterfeiertage.

1

600

Tomasz

Wiadomość napisana przez Matthias Niedermüller <mn@niedermueller.law> w dniu 17.04.2025, o godz. 15:10:

Lieber Peter

Ich habe bereits versucht, Sie persönlich anzurufen, habe aber keine Antwort oder einen Rückruf erhalten.

Ich beziehe mich auf die Sitzung des Stiftungsrates von TiVi und Solkomtel (Stiftungen) vom vergangenen Donnerstag, 10. April 2025.

Ich habe von Tomek das Sitzungsprotokoll erhalten, in dem mehrheitlich beschlossen wurde, dass George (GZG) einen Antrag an das zypriotische Gericht vorbereiten soll, in dem eine Änderung der zypriotischen Unterlassungsverfügung durch die Stiftungen beantragt werden soll. Dieser Beschluss wurde gegen den starken Widerstand und die Stimme von Tomek gefasst.

Bis heute haben weder Tomek noch ich von Ihnen oder Herrn Grzesiak ein Update über die nächsten Schritte oder das weitere Vorgehen in dieser Angelegenheit erhalten, so dass wir davon ausgingen, dass es seit der Ratstagung vom 10. April keine weiteren Entwicklungen in dieser Angelegenheit gegeben hat.

Aus den vorangegangenen Gesprächen, die ich mit Ihnen geführt habe, und auch aus den Diskussionen, die Sie mit Tomek auf der Sitzung des Stiftungsrats am 10. April geführt haben, ging klar hervor, dass die nächsten Schritte wie folgt aussehen sollten, um eine angemessene Beteiligung aller Mitglieder des Stiftungsrats und ein ordnungsgemäßes Verfahren zu gewährleisten:

1. Der zypriotische Rechtsberater von TiVi und Solkomtel (George Georgiou) würde einen Antrag verfassen.
2. Der Antragsentwurf wird an alle Mitglieder des Stiftungsrates zur Kommentierung und Diskussion weitergeleitet. Dies insbesondere, da im Stiftungsrat keine Diskussion darüber gab, 1) was genau beantragt werden sollte, 2) was die tatsächlichen Gründe für Antrag sind, welche Notwendigkeit für Antrag besteht, wie der Antrag begründet werden sollte, 3) welche möglichen Beziehungen die vorgeschlagenen Personen zu den Kindern oder anderen Mitgliedern des Stiftungsrats haben (insbesondere wurde keine Konfliktprüfung oder Befragung der vorgeschlagenen Personen durchgeführt), 4) welche Folgen und welches mögliche Risiko von Schäden und Nachteilen ein solcher Antrag für das Stiftungsvermögen haben könnte, usw.
3. Der Stiftungsrat würde einen Beschluss fassen, in dem entschieden wird, welche Weisung an den zypriotischen Anwalt (GZG) gegeben werden soll, wie mit Entwurf zu verfahren ist (einreichen oder nicht einreichen). Dieser Beschluss müsste insbesondere auch alle oben genannten Überlegungen enthalten, warum der Antrag gestellt werden soll und welche Folgen ein erfolgreicher Antrag für die Tochtergesellschaften und das Stiftungsvermögen haben würde.

Wir waren daher sehr überrascht, als uns der zypriotische Anwalt von Tomek heute mitteilte, dass der zypriotische Anwalt der Stiftungen (GZG) bereits am Mittwoch, den 16. April, den Antrag auf Änderung beim zypriotischen Gericht eingereicht hat und dass dieser Antrag Tomek und den anderen Parteien des zypriotischen Verfahrens bereits zugestellt wurde.

Ich muss betonen, dass weder ich noch Tomek jemals einen Entwurf des eingereichten Antrags gesehen haben und auch in keiner Weise an Anweisungen beteiligt waren, die die Stiftung (vertreten durch Sie oder Herrn Grzesiak) dem zypriotischen Anwalt (GZG) erteilt hat, oder an einer weiteren Mitteilung nach dem 10. April 2025 zu diesem Thema. Die gesamten Anweisungen an den zyprischen Anwalt (GZG), die Abfassung und Kommentierung der eidesstattlichen Erklärungen und Antragsentwürfe sowie die Genehmigung und Anweisung zur Einreichung erfolgten also ohne Beteiligung oder Information von Tomek. Vielmehr wurde Tomek in diesem Prozess vollständig umgangen.

Die Tatsache, dass Sie und Herr Grzesiak den gesamten Prozess der Ausarbeitung und Genehmigung der Einreichung eines Antrags in dem Verfahren in Zypern durchgeführt haben, einschließlich der Vereidigung von eidesstattlichen Erklärungen, die Aussagen enthalten, die in erheblichem Maße unrichtig sind, um es vorsichtig auszudrücken, einschließlich einer Reise nach Zypern, ohne jemals Tomek als drittes Mitglied des Stiftungsrats einzubeziehen oder zu informieren und ohne irgendeinen Beschluss oder eine Genehmigung des Stiftungsrats in Bezug auf

2

601

die Anweisungen und die Einreichung ist höchst bedenklich und stellt einen schwerwiegenden Verstoß gegen die Regeln für eine ordnungsgemäße Führung und Entscheidungsfindung im Stiftungsrat und die Vertretung der Stiftung dar. Das Gleiche gilt für die Auswahl und den Vorschlag zur Ernennung von zwei Personen als Direktoren, wie im Antrag in Zypern angegeben. Insbesondere wurde im Stiftungsrat auch nie die Ernennung dieser beiden Personen diskutiert oder beschlossen, sondern lediglich ein Antragsentwurf erstellt, der unter den Ratsmitgliedern diskutiert werden sollte.

Auch widersprechen die Maßnahmen völlig Ihren früheren wiederholten Versprechungen und Zusicherungen, dass alle Angelegenheiten und Handlungen des Stiftungsrats völlig transparent und nach den Regeln ablaufen und kein Mitglied des Stiftungsrats in irgendeiner Weise von einer Mitteilung oder Entscheidung ausgeschlossen würde. Vor der Sitzung vom 10. April wurde sogar die grundlegendste Mitteilung an alle Mitglieder verteilt.

Die heute erhaltenen Informationen zeigen eher das Gegenteil. Sie und Herr Grzesiak haben Tomek von dem gesamten Entscheidungs- und Erarbeitungsprozess, der zu diesem Antrag geführt hat, ausgeschlossen und ihn somit in wichtigen Punkten, die die Stiftungen betreffen, umgangen.

Wir fordern Sie daher auf, unverzüglich <u>sämtliche</u> Kommunikation und Unterlagen im Zusammenhang mit dem in Zypern eingereichten Antrag offenzulegen, insbesondere die gesamte Kommunikation zwischen Ihnen und Herrn Grzesiak und dem zypriotischen Anwalt (GZG), und alle Aktivitäten vollständig und transparent offenzulegen. Dies gilt nicht nur für die Zeit nach der Sitzung des Stiftungsrats vom 10. April, sondern insbesondere auch für die Zeit vor dieser Sitzung.

Wir erwarten Ihre Antwort bis spätestens 22. April, 17:00 Uhr. Mit

freundlichen Grüßen

Matthias

**Dr. Matthias Niedermüller, M.B.L-HSG, TEP**
**Geschäftsführender Gesellschafter| Rechtsanwalt| Notar**
Werdenbergerweg 11| 9490 Vaduz, Liechtenstein| T: +423 222 0750 | F: +423 222 0751 Mail:
mn@niedermueller.law

<image001.png>

<Bild002.jpg><Bild003.jpg><Bild004.jpg><Bild005.jpg><Bild006.jpg><Bild007.png><Bild008.png>

Wichtiger Hinweis:
Diese E-Mail kann Betriebs- oder Geschäftsgeheimnisse, dem Anwaltsgeheimnis unterliegende oder sonstige vertrauliche Informationen enthalten und ist von Gesetzes wegen geschützt. Falls Sie diese E-Mail irrtümlich erhalten haben, ist Ihnen eine Kenntnisnahme des Inhalts, eine Vervielfältigung oder Weitergabe dieser E-Mails sowie eventueller Anhänge ausdrücklich untersagt. Bitte benachrichtigen Sie uns unter obgenannter Adresse und löschen Sie die empfangene E-Mail sowie allfällige Anhänge au Ihrem Computer oder Netzwerk. Vielen Dank.

Wichtiger Hinweis:
Diese E-Mail kann Geschäftsgeheimnisse oder privilegierte, nicht offengelegte oder anderweitig vertrauliche Informationen enthalten und ist rechtlich privilegiert. Sollten Sie diese E-Mail irrtümlich erhalten haben, werden Sie hiermit darauf hingewiesen, dass jegliche Einsichtnahme, Vervielfältigung oder Verbreitung der E-Mail und ihrer Anhänge strengstens untersagt ist. Bitte informieren Sie uns unter der oben genannten Adresse und löschen Sie die E-Mail und alle Anhänge von ihrem System. Wir danken Ihnen für Ihre Mitarbeit.