# EXHIBIT Q

### Head Note 1c

Article 31 VfG (Constitutional Law)

According to established case law, the Constitutional Court is responsible for protecting the rights guaranteed by the Constitution or the European Convention on Human Rights. It does not, however, simply have to be available as an additional meritorious authority. The alleged incorrect application of laws or regulations does not constitute a violation of constitutionally guaranteed rights. The principle of equality is only violated if this application is so seriously wrong that it amounts to arbitrariness (StGH (Constitutional Court) 1981/4 in LES (Liechtenstein Collection of Decisions) 1982 p. 55; StGH 1983/7 in LES 1984 p. 74; StGH 1984/6 and StGH 1984/6/V in LES 1986 p. 61 f.; StGH 1984/11 and StGH 1984/11/V in LES 1986 p. 63 and 67).

### Head Note 1d

Article 32 VfG

The provision of Article 32(2) VfG generally guarantees personal freedom, freedom of movement, and the free development of personality as well as the protection of secrecy and privacy. The provision must be interpreted in connection with Article 8 ECHR. It follows from the case law developed on Article 8 ECHR, as well as from the constitutional provisions, that the protection of personality, and in particular the protection of the home and the objects contained therein, can apply to legal persons as well. On the other hand, there is no doubt that interference with protected legal rights is permissible if it is based on a law in the formal sense, is in the public interest, is proportionate, and does not completely deprive the protected legal interests of their meaning.

### Head Note 1e

Article 32 VfG
Article 3 EMAC (European Mutual Assistance Convention) (LGBl (Liechtenstein Law Gazette) 1970/30)
Section 87 StPO (Code of Criminal Procedure)

Both in accordance with Article 3(1) of the European Mutual Assistance Convention and in mutual legal assistance proceedings conducted on the basis of reciprocity, the domestic rules applicable to all other judicial proceedings must be applied. There is therefore no need to establish an entire new set of rules for mutual legal assistance procedures. Nor is it necessary for the lawmaker to declare whether or not it intends to apply domestic rules in the event of mutual legal assistance being granted. The domestic procedural provisions of Section 83 et seq. StPO are *eo ipso* also applicable to mutual legal assistance proceedings and therefore meet the requirements for a legal basis. The mandatory rule is therefore in particular Section 87 StPO, without it being necessary to additionally examine whether reciprocity under international law could form a sufficient legal basis under domestic law. The explanation for the legal situation described lies in the nature of international legal assistance. This is the assistance provided by the authorities or officials of one country to the authorities or officials of another country in order to make it possible or conduct criminal proceedings or to facilitate such proceedings. The final judgment of an accused person is always a matter for the courts of the country requesting legal assistance. In principle, the country requesting mutual legal assistance wishes to extend its criminal proceedings to other countries, since it has no jurisdiction outside its territory. In order to fulfill this request for mutual legal assistance, the country that is called upon and that extends the foreign criminal investigation to its territory can only apply its own procedural law. This also includes coercive measures, without which an effective investigation is impossible. These considerations apply regardless of whether the legal assistance granted is based on a contract or reciprocity. The basis for all coercive measures is always domestic procedural law. In this respect, the provision of Article 32(2) VfG is satisfied if the procedural provisions of Sections 83 et seq. StPO were adhered to.

**Decision: LES 1988, 49**   November 9, 1987   StGH 1987/003   StGH

### Head Note 1f

Article 3 EMAC

| The general mutual | legal criminal liability | assistance requirements and the specific nature of the request. | are | a formal | request, |

### Head Note 1g

Article 32 VfG
Article 3 EMAC

The design of a mutual legal assistance procedure in criminal matters in accordance with the provisions of the European Convention on Mutual Assistance in Criminal Matters regarding a country to which mutual legal assistance is granted only on the basis of reciprocity is legal. The increasing internationalization of modern living conditions and in particular of international crime and drug trafficking makes the provision of legal assistance, at least between countries with the same legal principles and a similar view on the need to protect human rights, appear today as an expression of a predominantly intergovernmental legal conviction and thus a necessity under international law, which must also be regarded as part of foreign relations and competences. The 1961 Single Convention on Narcotic Drugs (LGBl 1980 No. 37), which both the United States and Liechtenstein have signed, underlines the shared view that international drug trafficking must be prevented and suppressed with the help of intergovernmental cooperation. Further evidence that the provision of legal assistance in the area of drug-related crime is part of Liechtenstein's legal conviction can also be found in domestic law. The last sentence of Section 10 StPO authorizes criminal courts to enter into direct contact with authorities of foreign countries and Article 28(2) of the Narcotics Act (LGBl 1983 No. 38) also claims application to foreigners abroad.

### Head Note 1h

Articles 31, 32 VfG

Reciprocity in criminal matters between the United States and the Principality of Liechtenstein exists. Reciprocity between two countries exists when the requesting country, under the same circumstances, would grant the requested country the benefits it is now seeking. The U.S. Department of Justice's reciprocity declaration is binding. It made this declaration on behalf of the American government, which is entitled and obligated under international law to represent its country externally with binding effect. The Liechtenstein judicial assistance judge was entitled to rely on this fact in good faith (see also the decisions of StGH 1975/1, reproduced in SJIR (Swiss Yearbook of International Law) Volume XXXIIII/1978, pp. 163-166, StGH 1985/1 in LES 1986 p. 110, on the requirement of substantive reciprocity).

### Head Note 1a

Article 35 StGHG (Constitutional Court Act)
Section 87 StPO

The purpose of Article 35 StGHG is to provide the Constitutional Court with a means of preventing orders relating to or changes to the subject matter of the dispute for the duration of the appeal proceedings before the Constitutional Court. This safeguard serves to enforce the law and seeks to ensure that the final judgment of the Constitutional Court does not become obsolete as a result of the subject matter of the dispute being disposed of in the course of the proceedings, irretrievably lost, or other factual circumstances arising that would render the enforcement of the judgment meaningless. In the procedure for precautionary measures, the substance of the case may not be ruled on, because the primary objective is to safeguard legal rights. After all,

**Decision: LES 1988, 49**     November 9, 1987     StGH 1987/003     StGH

depending on the circumstances of the case, it is essential to take the substantive outcome of the main proceedings into account in order to make a provisional assessment, always subject to a different assessment in the main proceedings themselves. If, in the context of mutual legal assistance in criminal matters, the foreign authority, in this case the United States, guarantees that the documents submitted in the context of the mutual legal assistance procedure will only be used in the context of the foreign criminal proceedings that are the subject of the mutual legal assistance procedure, it is difficult for Liechtenstein to question the binding promise of a sovereign state without further reasons. Should the requesting country—in this case the United States—fail to follow through with its commitment, it would have to expect that its willingness to provide legal assistance would be called into question in future proceedings. In view of the initial situation described above, the mere abstract possibility of breaching the specific nature in the legal assistance procedure is not sufficient to generally refuse the requested legal assistance by means of precautionary measures until the final-instance decision has been rendered. Whether the danger is merely abstract or whether the danger can be concretely proven in the individual case must be assessed by the competent authorities on the basis of the applicants' statements. In such circumstances, the personal interest in the documents to be temporarily sent to the Liechtenstein bank is not legally at such a risk that an order requiring precautionary measures would have been justified.

## Head Note 1b

Article 35 StGHG

Judges responsible for mutual legal assistance should normally wait until the appeal periods have expired before handing over documents, so as not to render the possibility of applying for precautionary measures illusory.

## From the facts:

1. In a letter dated December 11, 1986, the U.S. Department of Justice, on behalf of the U.S. Attorney's Office, contacted the Court of Justice with a request for legal assistance. In its justification for its request for legal assistance, the U.S. Department of Justice stated that the Attorney General's Office for the Southern District of Florida was conducting an investigation into a drug trafficking organization. The profits from these drug deals would be converted into legitimate funds via Liechtenstein bank and trust accounts, which is why the records from these accounts would be required. Another legal assistance request was made to freeze the funds deposited in the complainant's account at a Liechtenstein bank. After A had been established, the drug ring had also arranged for the establishment of the B trust company by the complainant. B generally transferred the proceeds from the drug deals to the Liechtenstein bank via the complainant, which in turn invested them in North American businesses. The request for mutual assistance states that the total amount transferred this way amounts to USD 11.5 million. The U.S. Department of Justice relied on Section 848 of the U.S. Criminal Code to prove dual criminality.

   By way of legal assistance, the Court of Justice was further asked to confiscate all records relating to B's account with the complainant and to question four of the complainant's named employees as witnesses.

2. In its decisions of January 7, 1987, the Court of Justice granted the request for legal assistance in full and ordered the seizure of the requested records from the complainant and the Liechtenstein bank. In its decisions, the Court of Justice based its decision on Section 87 StPO and on the decades-long practice of mutual legal assistance between the United States and the Principality of Liechtenstein. This practice is based on the principle of reciprocity under international law.

**Decision: LES 1988, 49**  November 9, 1987   StGH 1987/003   StGH

3. The complainant's application for a review of the files dated January 19, 1987 was rejected by order of the Court of Justice of January 20, 1987.

4. On January 22, 1987, the complainant filed an appeal against the decisions of January 7, 1987 and requested that the Court of Appeal set aside the decisions without any replacement.

5. On January 28, 1987, the Court of Appeal dismissed the appeal on all counts. It justified its decision as follows: The principle of reciprocity, which applies to the present legal assistance case, does not imply that legal assistance must be provided to the same extent, since the extent of this legal assistance is always determined on the basis of the domestic legal system. That assurances are kept is sufficient for the existence of the principle. According to the spirit and purpose of the institution of legal assistance, it is permissible and correct to conduct these proceedings in accordance with domestic procedural law. The allegation that the principle of proportionality was violated is also unfounded, because only specific records are affected. There is also an assurance from the U.S. law enforcement authorities, which is binding for the court, that the information obtained would only be used in connection with this request for mutual legal assistance. The use of information in possible tax proceedings is therefore excluded. However, the question of the seizure order does not pertain to legal assistance, because it is a domestic procedure under Article 28 (3) BMG (Narcotics Act).

6. On February 5, 1987, the complainant filed an appeal against the decision refusing access to the files. This appeal was dismissed by the Court of Appeal on February 18, 1987 as well.

7. On February 9, 1987, in the presence of a representative of the complainant, the requested files were handed over and a record of this fact was drawn up. The Liechtenstein bank, for its part, submitted the requested records on February 19, 1987; it did not file an appeal.

8. On February 23, 1987, the complainant filed a complaint with the Constitutional Court, alleging a violation of constitutionally guaranteed rights and requested that it be declared that the Court of Appeal's decision of January 28, 1987 violated the rights guaranteed by Article 32(2) of the Constitution. The decision should be set aside and the case referred back to the lower court for a new decision. At the same time, the complainant filed a request for the adoption of precautionary measures; the complainant demanded that the seized files not be transmitted to the United States until the constitutional complaint had been conclusively decided, as otherwise the purpose of the constitutional complaint would be frustrated.

9. The application for the adoption of precautionary measures was rejected by the Vice-President of the Constitutional Court by order of March 13, 1987, on the grounds, inter alia, that the adoption of precautionary measures was only justified if, after review of the facts of the case, it was apparent that the decision of the Court of Justice was obviously unlawful. This is not the case here. Nor has it been established that the confiscated records were the complainant's personal documents.

LES - Page 52

10. In a letter dated March 17, 1987, the Court of Appeal waived its right to comment on the matter.

11. On March 23, 1987, the complainant filed an appeal with the Constitutional Court against the decision of the Vice-President of the Constitutional Court of March 13, 1987, which was received on March 24, 1987, arguing that the legal assessment was incorrect.

| | | | |
|---|---|---|---|
| **Decision: LES 1988, 49** | November 9, 1987 | StGH 1987/003 | StGH |

12. On October 2, 1987, the complainant submitted an additional motion for evidence, including various legal opinions.

13. The Constitutional Court reviewed the earlier files and publicly conducted the final proceedings without negotiations between the parties.

## Reasons for the judgment:

I. Formal reasons

1. The complainant's legitimacy was affirmed in the lower courts and has never been questioned, so it must also be affirmed in these proceedings as well.

2. The complainant's constitutional complaint against the Court of Appeal's decision of January 28, 1987, which was served to the complainant on February 9, 1987, was filed on February 23, 1987 and thus in a timely manner. The same applies to the request for the adoption of precautionary measures (of the same date) and the submission against the court's decision of March 23, 1987.

3. For reasons of procedural economy and because of the connection between the statements made in connection with the submission and the complaint, a decision will be rendered for both cases as a whole, with the submission being decided first.

II. Precautionary measure

4. On March 23, 1987, the complainant filed an appeal against the decision of the Vice-President of the Constitutional Court of March 13, 1987, which rejected the application for the adoption of precautionary measures. It argued that the law had been applied incorrectly and that the adoption of precautionary measures was necessary and permissible in the present case.

   The Vice-President based her decision to reject the application essentially on the fact that the issuance of precautionary measures was only justified "if, after reviewing the facts of the case, it was apparent that the handover of the seized records to the requesting country was based on a manifestly unlawful decision by the Court of Justice regarding the seizure, thereby frustrating the purpose of the constitutional complaint." Furthermore, merely alleged actual disadvantages do not provide a legal basis for the adoption of precautionary measures, especially since the complainant's "personal" impact is questionable. It must be examined whether this legal opinion stands up to a constitutional review.

5. According to the wording of Article 35 StGHG, precautionary measures must be adopted in order to "maintain the existing situation or temporarily secure threatened legal conditions." The purpose of this provision is to provide the Constitutional Court with a means of preventing disposals of or changes to the subject matter of the dispute for the duration of the appeal proceedings before the Constitutional Court. This safeguard serves to enforce the law and seeks to ensure that the final judgment of the Constitutional Court does not become obsolete as a result of the subject matter of the dispute being disposed of in the course of the proceedings, irretrievably lost, or other factual circumstances arising that would render the enforcement of the judgment meaningless. In the procedure for precautionary measures, the substance of the case may not be ruled on, because the primary objective is to safeguard legal rights. Depending on the circumstances of the case, it is essential to take the substantive outcome of the main proceedings into account in order to make a provisional assessment, always subject to a different assessment in the main proceedings themselves.

**Decision: LES 1988, 49**  November 9, 1987  StGH 1987/003  StGH

6. The applicant requested the provisional seizure of the documents confiscated by the orders. It can be assumed that it has some ownership rights to these documents, some rights arising from a trust relationship, or that it at least has a right to demand their release by third parties. The question is therefore whether the applicant's personal interest in the documents would be so seriously jeopardized by the temporary transmission to the American criminal authorities that the imposition of precautionary measures would have been justified.

   The American authorities have promised to use the documents only in the context of the current criminal proceedings. It is true that this commitment does not constitute an absolute guarantee for the applicant. However, it should be borne in mind that it is hardly possible for Liechtenstein to question the binding promise of a sovereign country without providing specific reasons. If the United States does not keep its commitment, it would have to expect that its willingness to provide legal assistance would be called into question in future proceedings. In view of the initial situation described above, the mere abstract possibility of breaching the principle of specialty in the legal assistance procedure is not sufficient to generally refuse the requested legal assistance by means of precautionary measures until the final-instance decision has been rendered.

   Whether the danger is merely abstract or whether the danger can be concretely proven in the individual case must be assessed by the competent authorities on the basis of the applicants' statements. In the present

   | LES - Page 53 |
   |---|

   case, the complainant and applicant did not provide any concrete evidence. It was therefore justified for the Vice-President of the Constitutional Court to consider in her decision that there were no obvious elements of a legally incorrect assessment on the part of the judge rendering legal assistance that would require the Constitutional Court to intervene by means of precautionary measures. Its decision was therefore correct and the applicant's application must be rejected.

7. With regard to the judges rendering judicial assistance, it should be added that the handover of the seized documents to the requesting country deprives the constitutional complaint before the Constitutional Court of a good part of its substance. Judges responsible for mutual legal assistance should therefore normally wait until the appeal periods have expired before handing over documents, so as not to render the possibility of applying for precautionary measures illusory.

III.  Violation of constitutionally guaranteed rights

8. First of all, reference should be made to the established case law according to which the Constitutional Court is responsible for protecting the rights guaranteed by the Constitution or the European Convention on Human Rights. It does not, however, simply have to be available as an additional meritorious authority. The alleged incorrect application of laws or regulations does not constitute a violation of constitutionally guaranteed rights. The principle of equality is only violated if this application is so seriously wrong that it amounts to arbitrariness (StGH 1981/4 in LES 1982, p. 55; 1983/7 in LES 1984, p. 74; 1984/6 and 1984/6/V in LES 1986, p. 61 f.; 1984/11 and 1984/11/V in LES 1986,
   p. 63 and 67).

   Given the prejudicial significance of the present complaint, it makes sense, despite the restrictive case law mentioned above, to address the complainant's arguments in some detail.

9. In its appeal against the decision of the Court of Appeal, the complainant argued that the decisions of the lower courts lacked a legal basis, that the requirements

**Decision: LES 1988, 49**   November 9, 1987   StGH 1987/003   StGH

---

10.     for granting legal assistance were not met, and that accordingly, the request for legal assistance lacked the necessary specificity.

10. None of the reasons stated are helpful. The provision of Article 32(2) of the Constitution generally guarantees personal freedom, freedom of movement, and free development of personality, as well as the protection of secrecy and privacy. The provision must be interpreted in connection with Article 8 ECHR. It follows from the case law developed on Article 8 ECHR, as well as from the constitutional provisions, that the protection of personality, and in particular the protection of the home and the objects contained therein, can apply to legal persons as well (see in this sense Stephan Breitenmoser, Der Schutz der Privatsphäre gemäss Article 8 EMRK (The Protection of Privacy in Accordance with Article 8 ECHR), Dissertation, Basel 1986, pp. 276-279).

11. On the other hand, there is no doubt that interference with protected legal rights is permissible if it is based on a law in the formal sense, is in the public interest, is proportionate, and does not completely deprive the protected legal interests of their meaning. The complainant rightly no longer claims that Section 87StPO, which serves as the basis here, does not meet these requirements. However, it claims that this provision only applies to domestic criminal proceedings and to those conducted on the basis of the European Convention on Mutual Assistance in Criminal Matters of 1959 (LGBl 1970 No. 30). According to the complainant, this follows from the intent of the lawmaker, which has not been further substantiated. However, this claim is incorrect.

12. Both in accordance with Article 3(1) of the European Mutual Assistance Convention and in mutual legal assistance proceedings conducted on the basis of reciprocity, the provisions applicable to all other judicial proceedings in domestic law must be applied (see Rudolf Geiger, Legal Assistance between States in Criminal Matters, in Encyclopedia of Public International Law, Volume 9 (1986), pp. 248-255). There is therefore no need to additionally establish an entire set of rules for mutual legal assistance procedures. Nor is it necessary for the lawmaker to declare whether or not it intends to apply domestic rules in the event of mutual legal assistance being granted. The domestic procedural provisions of Section 83 et seq. StPO are *eo ipso* also applicable to mutual legal assistance proceedings and therefore meet the requirements for a legal basis. The mandatory rule is therefore in particular Section 87 StPO, without it being necessary to additionally examine whether reciprocity under international law could form a sufficient legal basis under domestic law.

    The explanation for the legal situation described lies in the nature of international legal assistance. This is the assistance provided by the authorities or officials of one country to the authorities or officials of another country in order to enable the initiation or conduct of criminal proceedings, or to further such proceedings. The final judgment of an accused person is always a matter for the courts of the country requesting legal assistance.

    In principle, the country requesting mutual legal assistance wishes to extend its criminal proceedings to other countries, since it has no jurisdiction outside its territory. In order to fulfill this request for mutual legal assistance, the country that is called upon and that extends the foreign criminal investigation to its territory can only apply its own procedural law. This also includes coercive measures, without which an effective investigation is impossible. These considerations apply regardless of whether the legal assistance granted is based on a contract or reciprocity. The basis for all coercive measures is always domestic procedural law. In this respect, the provision of Article 32(2) of the Constitution is satisfied if the procedural provisions of Sections 83 et seq. StPO were adhered to, which the complainant does not dispute in the present case.

13. It is not necessary to address the argument that the present case is an administrative procedure which could result in both a reduced legal obligation to comply with official orders and an expanded scope of legal protection. Reference is made to the correct

**Decision: LES 1988, 49**     November 9, 1987     StGH 1987/003     StGH

---

refutation of these claims by the lower court. The complainant does not dispute that the general requirements for legal assistance, namely a formal request, mutual criminality, and the specific nature of the request, are met.

14. In the complainant's view, the Principality of Liechtenstein cannot grant legal assistance to the United States solely on the basis of reciprocity, apply its own Code of Criminal Procedure, and implement coercive measures.

    The judge providing judicial assistance granted legal assistance to the United States in view of the fact that the conditions of mutual criminality of the alleged offenses and reciprocity were met. The procedure complied with the provisions of the European Convention on Mutual Assistance in Criminal Matters. The complainant argues that the lawmaker has expressly only authorized mutual legal assistance in the application of this Convention. However, the course of the present procedure is entirely in line with the provisions of the Convention. At most, the express consent of the lawmaker in an individual case to provide legal assistance to the United States and thus to the specific recipient of the assistance is missing. The increasing internationalization of modern living conditions and in particular of international crime and drug trafficking makes the provision of legal assistance, at least between countries with the same legal principles and a similar view on the need to protect human rights, appear today as an expression of a predominantly intergovernmental legal conviction and thus a necessity under international law, which must also be regarded as part of foreign relations and competences.

    The 1961 Single Convention on Narcotic Drugs (Legal Gazette 1980 No. 37), which both the United States and Liechtenstein have signed, underlines the shared view that international drug trafficking must be prevented and suppressed with the help of intergovernmental cooperation. Further evidence that the provision of legal assistance in cases such as the present case is part of Liechtenstein's legal conviction can also be found in national law. The last sentence of Section 10 StPO authorizes criminal courts to enter into direct contact with authorities of foreign countries and Article 28(2) of the Narcotics Act (LGBl 1983 No. 38) also claims application to foreigners abroad.

15. Contrary to the complainant's view, reciprocity does exist.

    Reciprocity between two countries exists when the requesting country, under the same circumstances, would grant the requested country the benefits it is now seeking. In its letter attached to the files, the U.S. Department of Justice issued a reciprocal statement for cases such as the present case. The reference to Title 28, United States Code (U.S.C.) Section 1782 merely confirmed that any legal assistance granted by the United States would also be enforceable domestically. However, it has no direct impact under international law. The U.S. Department of Justice's reciprocity declaration is binding. It made this declaration on behalf of the American government, which is entitled and obligated under international law to represent its country externally with binding effect. The Liechtenstein judicial assistance judge was entitled to rely on this fact in good faith (cf. on the requirement of substantive reciprocity also the decisions of StGH 1975/1, reproduced in SJIR Volume XXXIV (1978), pp. 163-166; 1985/1 in LES 1986, p. 110).

16. It cannot be the responsibility of the Liechtenstein Constitutional Court or the Government to examine in detail whether the expert opinions relied on by the complainant accurately represent domestic American law. The U.S. Department of Justice has made it bindingly clear that Title 28, U.S.C. Section 1782 is to be regarded as the domestic legal basis for legal assistance provided by the United States. This provision allows the United States to provide legal assistance to the same extent as Liechtenstein is able to provide to the United States. It was, moreover, the declared objective of the American lawmaker to extend the Section 1782 in question to requests for legal assistance in criminal matters

**Decision: LES 1988, 49**　　　　　November 9, 1987　　　　　StGH 1987/003　　　StGH

(In re Letters Rogatory From Dist., Tokyo, Japan, 539 F. 2d 1216 [CA. Cal. 1976]; also In re Letter Rogatory From Justice Court, Dist. of Montreal, Canada, 383 F. Supp. 857 [DC Mich. 1974], affirmed in 523 F. 2d 562; In re Request for Judicial Assistance from Dist. Criminal Court, Seoul, Korea, 555 F. 2d 120 [CA. Cal. 1977]). Reciprocity in criminal matters is therefore also present when U.S. domestic law is involved. The complainant's claim that Title 28, Section 1782 USC applies only to civil cases is unfounded.

17.　In view of the foregoing, there is no need to discuss further the applicant's other arguments in paragraphs 5 and 6 of the complaint. These are in any case so vague that a legal review is hardly possible (cf. StGH 1983/7 in LES 1984 p. 76).

LES - Page 55

Case 2:25-mc-00112-MEMF-JC  Document 3-17  Filed 10/29/25  Page 11 of 20  Page ID #:801

## Leitsatz 1c

Art. 31 VfG

  Nach ständiger Rechtsprechung hat der Staatsgerichtshof die Aufgabe, durch die Verfassung oder die Europäischen Menschenrechtskonvention gewährleistete Rechte zu schützen. Hingegen hat er nicht einfach als zusätzliche meritorische Instanz zur Verfügung zu stehen. In der behaupteten unrichtigen Anwendung von Gesetzen oder Verordnungen liegt noch keine Verletzung verfassungsmässig gewährleisteter Rechte. Nur wenn diese Anwendung so qualifiziert falsch ist, dass sie einer Willkür gleichkommt, liegt eine Verletzung des Gleichheitsgebotes vor (StGH 1981/4 in LES 1982 S. 55; StGH 1983/7 in LES 1984 S. 74; StGH 1984/6 und StGH 1984/6/V in LES 1986 S. 61 f; StGH 1984/11 und StGH 1984/11/V in LES 1986 S. 63 und 67).

## Leitsatz 1d

Art. 32 VfG

  Die Bestimmung des Art. 32 Abs. 2 VfG garantiert allgemein die persönliche Freiheit, die Bewegungsfreiheit und die freie Entfaltung der Persönlichkeit sowie den Schutz der Geheim- und Privatsphäre. Die Vorschrift ist im Zusammenhang mit Art. 8 EMRK zu lesen. Aus der zu Art. 8 EMRK entwickelten Rechtsprechung ergibt sich, gleich wie aus den Verfassungsbestimmungen, dass der Schutz der Persönlichkeit und namentlich der Schutz der Wohnung und der darin befindlichen Gegenstände auch juristischen Personen zukommen kann. Hingegen stellt ausser Zweifel, dass ein Eingriff in den geschützten Rechtsbereich statthaft ist, sofern er sich auf ein Gesetz im formellen Sinn stützen kann, im öffentlichen Interesse liegt, verhältnismässig ist und die geschützten Rechtsgüter nicht völlig ihres Sinngehaltes entkleidet.

## Leitsatz 1e

Art. 32 VfG
Art. 3 ERÜK (LGBl 1970/30)
§ 87 StPO

  Sowohl gemäss Art. 3 Ziff. 1 des Europäischen Rechtshilfeübereinkommens wie in Rechtshilfeverfahren, die auf Grundlage der Gegenseitigkeit durchgeführt würden, sind die inländischen, für alle anderen gerichtlichen Verfahren geltenden Vorschriften anwendbar. Es bedarf somit nicht der zusätzlichen Statuierung eines gesamten neuen Normkomplexes für Rechtshilfeverfahren. Es ist auch nicht notwendig, dass sich der Gesetzgeber darüber erkläre, ob er für den Fall der Rechtshilfegewährung die inländischen Vorschriften gelten lassen will oder nicht. Die inländischen Verfahrensbestimmungen der § 83 ff StPO sind eo ipso auch für Rechtshilfeverfahren anwendbar und genügen mithin den Anforderungen an eine gesetzliche Grundlage. Gesetzliche Eingriffsnorm ist somit insbesondere der § 87 StPO, ohne dass zusätzlich geprüft werden müsste, ob die völkerrechtliche Gegenseitigkeit eine genügende gesetzliche Grundlage im inländischen Recht zu bilden vermöchte. Die Erklärung für die dargestellte Rechtslage liegt in der Natur der zwischenstaatlichen Rechtshilfe. Dies ist diejenige Unterstützung, die von Behörden oder Beamten eines Staates den Behörden oder Beamten eines anderen Staates gewährt wird, um die Einleitung oder Durchführung eines Strafverfahrens zu ermöglichen oder ein solches Verfahren zu fördern. Die definitive Aburteilung eines Angeschuldigten ist immer erst Sache der Gerichte des um Rechtshilfe ersuchenden Staates. Grundsätzlich möchte der um Rechtshilfe ersuchende Staat sein Strafverfahren auf andere Staaten ausdehnen, da er ausserhalb seines Territoriums keine Zuständigkeit besitzt. Zur Erfüllung dieses Rechtshilfegesuches kann der ersuchte Staat, der das ausländische Strafvermittlungsverfahren auf sein Staatsgebiet ausdehnt, nur sein eigenes Verfahrensrecht anwenden. Zu diesem gehören auch die Zwangsmassnahmen, ohne die ein wirksames Ermittlungsverfahren unmöglich ist. Diese Überlegungen besitzen Geltung unabhängig davon, ob die gewährte Rechtshilfe auf Vertrag oder auf Gegenseitigkeit beruht. Basis aller Zwangsmassnahmen bildet immer das inländische Verfahrensrecht. Insofern ist der Vorschrift des Art. 32 Abs. 2 VfG dann Genüge getan, wenn die Verfahrensvorschriften der §§ 83 ff StPO beachtet worden sind.

**Entscheidung: LES 1988, 49**  09.11.1987  StGH 1987/003  StGH

### Leitsatz 1f

Art. 3 ERÜK

Die allgemeinen Voraussetzungen der Rechtshilfe sind förmliches Gesuch, beiderseitige Strafbarkeit und Spezialität des Gesuches.

### Leitsatz 1g

Art. 32 VfG
Art. 3 ERÜK

Die Ausgestaltung eines Rechtshilfeverfahrens in Strafsachen nach den Bestimmungen des Europäischen Übereinkommens über die Rechtshilfe in Strafsachen gegenüber einem Staat, welchem Rechtshilfe nur auf Grundlage der Gegenseitigkeit gewährt wird, ist rechtens. Die zunehmende Internationalisierung der modernen Lebensverhältnisse und namentlich des internationalen Verbrechens- und Drogenhandels lassen die Leistung von Rechtshilfe, jedenfalls zwischen Staaten mit gleichen rechtlichen Grundanschauungen und einer gleichartigen Beurteilung der Schutzbedürftigkeit der Menschenrechte, heute als Ausdruck überwiegender zwischenstaatlicher Rechtsüberzeugung und damit völkerrechtlicher Notwendigkeit erscheinen, die auch als Teil der auswärtigen Beziehungen und Kompetenzen anzusehen ist. Das Einheitsübereinkommen von 1961 über die Betäubungsmittel (LGBl 1980 Nr. 37), dem sowohl die USA wie Liechtenstein angehören, unterstreicht die Einigkeit, welche darüber besteht, dass der internationale Drogenhandel durch zwischenstaatliche Zusammenarbeit zu vermeiden und zu unterdrücken ist. Weitere Belege dafür, dass die Leistung von Rechtshilfe im Bereich der Drogenkriminalität zur liechtensteinischen Rechtsüberzeugung gehört, finden sich auch im Landesrecht. So ermächtigt der letzte Satz von § 1O StPO die Strafgerichte, mit Behörden fremder Staaten in unmittelbaren Verkehr zu treten und Art. 28 Abs. 2 des Betäubungsmittelgesetzes (LGBl 1983 Nr. 38) beansprucht Anwendung auch auf Fremde im Ausland.

### Leitsatz 1h

Art. 31, 32 VfG

Die Gegenseitigkeit in Strafsachen zwischen den USA und dem Fürstentum Liechtenstein ist gegeben. Gegenseitigkeit zwischen zwei Staaten liegt dann vor, wenn der ersuchende Staat unter denselben Umständen dem ersuchten Staat die Vorteile gewähren würde, um die er nun nachsucht. Die Gegenrechtserklärung des US-Departement of Justice ist bindend. Es gab diese im Namen der amerikanischen Regierung ab, welche völkerrechtlich berechtigt und verpflichtet ist, ihren Staat nach aussen mit bindender Wirkung zu vertreten. Der liechtensteinische Rechtshilferichter durfte sich in guten Treuen darauf verlassen und abstützen (vergleiche zum Erfordernis der materiellen Reziprozität auch die Entscheide StGH 1975/1, wiedergegeben in SJIR Band XXXIIII/1978, S. 163-166, StGH 1985/1 in LES 1986 S. 110).

### Leitsatz 1a

Art. 35 StGHG
§ 87 StPO

Sinn und Zweck der Bestimmung des Art. 35 StGHG ist es, für die Dauer des Beschwerdeverfahrens vor dem Staatsgerichtshof diesem ein Mittel in die Hand zu geben, um Verfügungen über oder Veränderungen am Streitobjekt zu verhindern. Diese Sicherstellung dient der Rechtsverwirklichung und hat zum Ziel, dass das Endurteil des Staatsgerichtshofes nicht dadurch obsolet wird, dass im Laufe des Verfahrens über den Streitgegenstand verfügt wird, dieser unwiederbringlich verlorengeht oder andere tatsächliche Verhältnisse eintreten, welche die Vollstreckung des Urteils sinnlos machen würden. Im Verfahren der vorsorglichen Massnahmen darf an sich nicht materiell über die Hauptsache entschieden werden, da der Rechtssicherungsgedanke im Vordergrund steht. Immerhin

ist es je nach Fallkonstellation unumgänglich, bereits den materiellen Ausgang der Hauptsache mitzubedenken, um provisorisch zu beurteilen, immer unter Vorbehalt einer anderslautenden Beurteilung in der Hauptsache selbst. Wenn im Rahmen der Rechtshilfe in Strafsachen die ausländische Behörde, hier jene der USA, zusichert, die im Rahmen des Rechtshilfeverfahrens übermittelten Dokumente nur im Rahmen dieses also Gegenstand des Rechtshilfeverfahrens bildenden ausländischen Strafverfahren zu verwenden, ist es für Liechtenstein schwer möglich, das bindende Versprechen eines souveränen Staates ohne nähere Gründe in Frage zu stellen. Sollte der ersuchende Staat - hier die USA - sich nicht an seine Zusage halten, so müsste er damit rechnen, dass in künftigen Verfahren die Bereitschaft zur Leistung von Rechtshilfe in Frage gestellt wäre. Die blosse abstrakte Möglichkeit einer Durchbrechung der Spezialität im Rechtshilfeverfahren genügt angesichts der geschilderten Ausgangslage nicht, um mittels vorsorglicher Massnahmen die geforderte Rechtshilfe generell bis zum Zeitpunkt des letztinstanzlichen Entscheides zu verweigern. Ob es sich um eine blosse abstrakte Gefahr handelt, oder ob die Gefahr im Einzelfall konkret belegbar ist, ist von den zuständigen Instanzen auf Grund der Darlegungen der Gesuchsteller zu beurteilen. Bei solchen Umständen ist das persönliche Interesse an den vorübergehend zu übersendenden Unterlagen der liechtensteinischen Bank rechtlich nicht derartig gefährdet, dass sich die Anordnung vorsorglicher Massnahmen gerechtfertigt hätte.

## Leitsatz 1b

Art. 35 StGHG

Rechtshilferichter sollten normalerweise abwarten mit der Übergabe von Unterlagen, bis die Rechtsmittelfristen abgelaufen sind, damit nicht die Möglichkeit eines Gesuches um vorsorgliche Massnahmen illusorisch gemacht wird.

## Aus dem Sachverhalt:

1. Mit Schreiben vom 11. Dezember 1986 ersuchte das US-Department of Justice im Auftrag der US-Bundesanwaltschaft das Landgericht, Rechtshilfe zu gewähren. Das US-Department of Justice führte in der Begründung des Rechtshilfegesuches aus, die Bundesanwaltschaft des südlichen Distrikts des Staates Florida führe eine Untersuchung gegen eine Drogenschmugglerorganisation. Die Gewinne aus diesen Drogengeschäften würden über liechtensteinische Bank- und Treuhandkonten in rechtmässige Gelder konvertiert, weshalb die Unterlagen dieser Konten benötigt würden. Auch wurde rechtshilfeweise ersucht, die auf dem Konto der Beschwerdeführerin bei einer liechtensteinischen Bank deponierten Gelder zu sperren. Der Drogenring habe nach Gründung der A auch die Errichtung der B-Treuhandgesellschaft durch die Beschwerdeführerin veranlasst. Die B überweise über die Beschwerdeführerin die Erlöse aus den Drogengeschäften auf die liechtensteinische Bank, mittels welcher wiederum in nordamerikanische Geschäfte investiert werde. Als gesamthaft auf diese Weise verschobene Summe wird im Rechtshilfeersuchen der Betrag von 11,5 Mio. US-Dollar genannt. Das US-Department of Justice stützte sich zum Nachweis der beidseitigen Strafbarkeit auf § 848 des USCriminal Code.

   Rechtshilfeweise wurde das Landgericht des weiteren ersucht, sämtliche Unterlagen des Kontos der B bei der Beschwerdeführerin zu konfiszieren und vier namentlich genannte Mitarbeiter der Beschwerdeführerin als Zeugen zu befragen.

2. Mit Beschlüssen vom 7. Januar 1987 gab das Landgericht dem Rechtshilfegesuch vollumfänglich statt und verfügte gegenüber der Beschwerdeführerin sowie gegenüber der liechtensteinischen Bank die Beschlagnahme der angeforderten Unterlagen. Das Landgericht stützte sich in seinen Beschlüssen auf § 87 StPO sowie auf die jahrzehntelange Rechtshilfepraxis zwischen den USA und dem Fürstentum Liechtenstein. Diese stützt sich auf den völkerrechtlichen Grundsatz der Gegenseitigkeit.

3.   Der Antrag der Beschwerdeführerin auf Akteneinsicht vom 19. Januar 1987 wurde mit Beschluss des Landgerichtes vom 20. Januar 1987 abgewiesen.

4.   Die Beschwerdeführerin erhob gegen die Beschlüsse vom 7. Januar 1987 am 22. Januar 1987 Beschwerde und stellte den Antrag, das Obergericht solle die Beschlüsse ersatzlos aufheben.

5.   Das Obergericht entschied am 28. Januar 1987 auf Abweisung der Beschwerde in allen Punkten. Es begründete seinen Beschluss wie folgt: Der Grundsatz der Gegenseitigkeit, der für den vorliegenden Rechtshilfefall zur Anwendung gelange, schliesse nicht ein, dass Rechtshilfe auch im gleichen Umfang geleistet werden müsse, da sich das Ausmass dieser Rechtshilfe stets nach der innerstaatlichen Rechtsordnung abwickle. Es genüge für den Bestand des Grundsatzes, dass Zusicherungen eingehalten würden. Nach Sinn und Zweck des Instituts der Rechtshilfe sei es zulässig und richtig, diese Verfahren nach inländischem Verfahrensrecht durchzuführen. Auch sei die Rüge der Verletzung des Grundsatzes der Verhältnismässigkeit nicht fundiert, da nur konkrete Aktenstücke betroffen seien. Auch bestehe die für das Gericht bindende Zusicherung der Strafverfolgungsbehörden der USA, dass die erlangten Informationen lediglich im Zusammenhang mit dem vorliegenden Rechtshilfeersuchen benützt würden. Die Benützung von Informationen in möglichen Steuerverfahren sei deshalb ausgeschlossen. Die Frage der Beschlagnahmeverfügung betreffe indessen die Rechtshilfe nicht, da es sich um ein inländisches Verfahren nach Art. 28 Abs. 3 des Betäubungsmittelgesetzes (BMG) handle.

6.   Am 5. Februar 1987 erhob die Beschwerdeführerin Beschwerde gegen den Beschluss betreffend Verweigerung der Akteneinsicht. Auch diese Beschwerde wurde mit Beschluss des Obergerichtes vom 18. Februar 1987 abgewiesen.

7.   Am 9. Februar 1987 wurden im Beisein eines Vertreters der Beschwerdeführerin die angeforderten Akten übergeben und hierüber ein Protokoll ausgefertigt. Die liechtensteinische Bank ihrerseits stellte am 19. Februar 1987 die verlangten Unterlagen zu; Beschwerde wurde von ihr nicht erhoben.

8.   Die Beschwerdeführerin reichte am 23. Februar 1987 beim Staatsgerichtshof Beschwerde wegen Verletzung verfassungsmässig gewährleisteter Rechte ein und stellte das Begehren, es sei festzustellen, dass der Beschluss des Obergerichtes vom 28. Januar 1987 die durch Art. 32 Abs. 2 der Verfassung garantierten Rechte verletze. Der Beschluss sei aufzuheben und die Sache zur neuen Entscheidung an die Vorinstanz zurückzuweisen. Gleichzeitig stellte die Beschwerdeführerin ein Begehren um Erlass vorsorglicher Massnahmen; sie verlangte, dass die beschlagnahmten Akten bis zur rechtskräftigen Entscheidung der Verfassungsbeschwerde nicht an die USA überstellt würden, da ansonsten der Zweck der Verfassungsbeschwerde vereitelt werde.

9.   Das Gesuch um den Erlass vorsorglicher Massnahmen wurde von der Vizepräsidentin des Staatsgerichtshofes mit Beschluss vom 13. März 1987 abgewiesen, unter anderem mit der Begründung, der Erlass vorsorglicher Massnahmen rechtfertige sich nur, wenn nach Überprüfung des vorliegenden Sachverhaltes erkennbar sei, dass eine offensichtlich unrechtmässige Beschlussfassung des Landgerichtes zugrundeliege. Dies sei vorliegendenfalls nicht der Fall. Ebensowenig sei festgestellt, dass es sich bei den beschlagnahmten Aktenunterlagen um persönliche der Beschwerdeführerin handle.

LES - Seite 52

10.   Mit Schreiben vom 17. März 1987 verzichtete das Obergericht auf Gegenäusserung in der Angelegenheit.

11.   Gegen den Beschluss der Vizepräsidentin des Staatsgerichtshofes vom 13. März 1987 erhob die Beschwerdeführerin am 23. März 1987, eingegangen am 24. März 1987, Vorstellung an den Staatsgerichtshof mit der Begründung, es liege eine unrichtige rechtliche Beurteilung vor.

| **Entscheidung: LES 1988, 49** | 09.11.1987 | StGH 1987/003 | StGH |
|---|---|---|---|

12. Am 2. Oktober 1987 reichte die Beschwerdeführerin einen zusätzlichen Beweisantrag mitsamt diversen Rechtsgutachten ein.

13. Der Staatsgerichtshof hat die Vorakten beigezogen und das Schlussverfahren öffentlich ohne Parteienverhandlung durchgeführt.

## Urteilsgründe:

I.  Formelles

1. Die Legitimation der Beschwerdeführerin ist in den Vorinstanzen bejaht und nirgendwo bezweifelt worden, so dass sie auch in diesem Verfahren zu bejahen ist.

2. Die Verfassungsbeschwerde der Beschwerdeführerin gegen den Beschluss des Obergerichtes vom 28. Januar 1987, ihr zugestellt am 9. Februar 1987, wurde am 23. Februar 1987 und somit fristgerecht eingereicht. Dasselbe gilt für den Antrag auf Erlass vorsorglicher Massnahmen (gleichen Datums) und für die Vorstellung gegen die Präsidialentscheidung vom 23. März 1987.

3. Aus Gründen der Verfahrensökonomie und wegen des inneren Zusammenhangs des durch Vorstellung und Beschwerde Vorgebrachten, wird in beiden Angelegenheiten gesamthaft entschieden, zuerst über die Vorstellung.

II. Vorsorgliche Massnahme

4. Gegen den Beschluss der Vizepräsidentin des Staatsgerichtshofes vom 13. März 1987, mit welchem das Gesuch um Erlass vorsorglicher Massnahmen abgewiesen wurde, reichte die Beschwerdeführerin am 23. März 1987 eine Vorstellung ein. Sie rügte unrichtige Gesetzesanwendung und machte geltend, der Erlass vorsorglicher Massnahmen sei für den vorliegenden Fall geboten und zulässig.

Die Vizepräsidentin stützte ihren abweisenden Entscheid im wesentlichen darauf, dass der Erlass vorsorglicher Massnahmen nur dann gerechtfertigt sei, "wenn nach Überprüfung des vorliegenden Sachverhaltes erkennbar sei, dass der Ausfolgung der beschlagnahmten Aktenunterlagen an den ersuchenden Staat eine offensichtlich unrechtmässig erfolgte Beschlussfassung des Landgerichtes über die Beschlagnahme zugrundeliegt und dadurch Sinn und Zweck der Verfassungsbeschwerde vereitelt würde". Ferner böten blosse behauptete tatsächliche Nachteile keine rechtliche Grundlage für den Erlass vorsorglicher Massnahmen, zumal eine "persönliche" Betroffenheit der Antragstellerin fraglich sei. Zu prüfen ist, ob diese Rechtsauffassung vor der Verfassung standhält.

5. Nach dem Wortlaut des Art. 35 des Gesetzes über den Staatsgerichtshof (StGHG) sind vorsorgliche Massnahmen zu erlassen, um den "bestehenden Zustand festzuhalten, oder bedrohte rechtliche Verhältnisse einstweilen sicherzustellen". Sinn und Zweck dieser Bestimmung ist es, für die Dauer des Beschwerdeverfahrens vor dem Staatsgerichtshof diesem ein Mittel in die Hand zu geben, um Verfügungen über oder Veränderungen am Streitobjekt zu verhindern. Diese Sicherstellung dient der Rechtsverwirklichung und hat zum Ziel, dass das Endurteil des Staatsgerichtshofes nicht dadurch obsolet wird, dass im Laufe des Verfahrens über den Streitgegenstand verfügt wird, dieser unwiederbringlich verloren geht, oder andere tatsächliche Verhältnisse eintreten, welche die Vollstreckung des Urteils sinnlos machen würden. Im Verfahren der vorsorglichen Massnahmen darf an sich nicht materiell über die Hauptsache entschieden werden, da der Rechtssicherungsgedanke im Vordergrund steht. Immerhin ist es je nach Fallkonstellation unumgänglich, bereits den materiellen Ausgang der Hauptsache mitzubedenken und provisorisch zu beurteilen, immer unter Vorbehalt einer anderslautenden Beurteilung in der Hauptsache selbst.

| **Entscheidung: LES 1988, 49** | 09.11.1987 | StGH 1987/003 | StGH |
|---|---|---|---|

6. Die Vorstellungswerberin hat die einstweilige Sicherstellung der durch die Beschlüsse beschlagnahmten Unterlagen verlangt. Es kann unterstellt werden, dass sie an diesen Dokumenten teils Eigentumsrechte hat, teils Rechte besitzt, die sich aus einem Treuhandverhältnis ergeben, oder dass sie zumindest einen obligatorischen Anspruch auf Herausgabe durch Drittpersonen hat. Fraglich ist somit, ob ihr persönliches Interesse an den Unterlagen durch die vorübergehende Übersendung an die amerikanischen Strafbehörden rechtlich derart schwerwiegend gefährdet wäre, dass sich die Anordnung vorsorglicher Massnahmen gerechtfertigt hätte.

Die amerikanischen Behörden haben zugesagt, die Dokumente nur im Rahmen des vorliegenden Strafverfahrens verwenden zu wollen. Es ist an sich richtig, dass diese Zusage für die Vorstellungswerberin keine absolute Garantie darstellt. Immerhin ist zu bedenken, dass es Liechtenstein schwerlich möglich ist, das bindende Versprechen eines souveränen Staates ohne nähere Gründe in Frage zu stellen. Sollten die USA sich nicht an ihre Zusage halten, so müssten sie damit rechnen, dass in künftigen Verfahren die Bereitschaft zur Leistung von Rechtshilfe in Frage gestellt wäre. Die blosse abstrakte Möglichkeit einer Durchbrechung der Spezialität im Rechtshilfeverfahren genügt angesichts der geschilderten Ausgangslage nicht, um mittels vorsorglicher Massnahmen die geforderte Rechtshilfe generell bis zum Zeitpunkt des letztinstanzlichen Endentscheides zu verweigern.

Ob es sich um eine blosse abstrakte Gefahr handelt, oder ob die Gefahr im Einzelfall konkret belegbar ist, ist von den zuständigen Instanzen aufgrund der Darlegungen der Gesuchsteller zu beurteilen. Im vorliegen

| LES - Seite 53 |
|---|

den Fall hat die Beschwerdeführerin und Vorstellungswerberin keinerlei konkrete Anhaltspunkte vorgetragen. Deshalb war es gerechtfertigt, dass die Vizepräsidentin des Staatsgerichtshofes in ihrem Beschluss erwog, es gebe keine offensichtlichen Elemente einer rechtlich unzutreffenden Beurteilung seitens des Rechtshilferichters, welche ein Eingreifen des Staatsgerichtshofes mittels vorsorglicher Massnahmen erforderlich machten. Ihr Beschluss ist daher zu Recht erfolgt, und die Vorstellung der Vorstellungswerberin ist abzuweisen.

7. Zuhanden der Rechtshilferichter sei freilich beigefügt, dass die Übergabe der beschlagnahmten Dokumente an den ersuchenden Staat die Verfassungsbeschwerde an den Staatsgerichtshof zu einem guten Teil ihres Gehaltes beraubt. Rechtshilferichter sollten daher normalerweise abwarten mit der Übergabe von Unterlagen, bis die Rechtsmittelfristen abgelaufen sind, damit nicht die Möglichkeit eines Gesuches um vorsorgliche Massnahmen illusorisch gemacht wird.

III. Verletzung verfassungsmässig gewährleisteter Rechte

8. Vorweg sei auf die ständige Rechtsprechung verwiesen, wonach der Staatsgerichtshof die Aufgabe hat, durch die Verfassung oder die Europäische Menschenrechtskonvention gewährleistete Rechte zu schützen. Hingegen hat er nicht einfach als zusätzliche meritorische Instanz zur Verfügung zu stehen. In der behaupteten unrichtigen Anwendung von Gesetzen oder Verordnungen liegt noch keine Verletzung verfassungsmässig gewährleisteter Rechte. Nur wenn diese Anwendung so qualifiziert falsch ist, dass sie einer Willkür gleichkommt, liegt eine Verletzung des Gleichheitsgebotes vor (StGH 1981/4 in LES 1982, S. 55; 1983/7 in LES 1984, S. 74; 1984/6 und 1984/6/V in LES 1986, S. 61 f; 1984/11 und 1984/11/V in LES 1986, S. 63 und 67).

Infolge der präjudiziellen Bedeutung der vorliegenden Beschwerde rechtfertigt es sich nun freilich, trotz der erwähnten, restriktiven Rechtsprechung die Argumente der Beschwerdeführerin mit einer gewissen Ausführlichkeit zu behandeln.

9. In ihrer gegen den Beschluss des Obergerichtes gerichteten Beschwerde machte die Beschwerdeführerin geltend, es ermangle den Beschlüssen der Vorinstanzen an der gesetzlichen Grundlage; die Voraussetzungen

für die Gewährung von Rechtshilfe seien nicht gegeben; es fehle sinngemäss an der notwendigen Bestimmtheit des Rechtshilfeersuchens.

10. Die angeführten Gründe sind allesamt unbehelflich. Die Bestimmung des Art. 32 Abs. 2 der Verfassung garantiert allgemein die persönliche Freiheit, die Bewegungsfreiheit und die freie Entfaltung der Persönlichkeit, sowie den Schutz der Geheim- und Privatsphäre. Die Vorschrift ist im Zusammenhang mit Art. 8 EMRK zu lesen. Aus der zu Art. 8 EMRK entwickelten Rechtsprechung ergibt sich, gleich wie aus den Verfassungsbestimmungen, dass der Schutz der Persönlichkeit und namentlich der Schutz der Wohnung und der darin befindlichen Gegenstände auch juristischen Personen zukommen kann (in diesem Sinne Stephan Breitenmoser, Der Schutz der Privatsphäre gemäss Art. 8 EMRK, Diss. Basel 1986, S. 276-279).

11. Hingegen steht ausser Zweifel, dass ein Eingriff in den geschützten Rechtsbereich statthaft ist, sofern er sich auf ein Gesetz im formellen Sinn stützen kann, im öffentlichen Interesse liegt, verhältnismässig ist und die geschützten Rechtsgüter nicht völlig ihres Sinngehaltes entkleidet. Die Beschwerdeführerin macht zu Recht nicht mehr geltend, der hier als Grundlage dienende § 87 der Strafprozessordnung (StPO) erfülle diese Voraussetzungen nicht. Sie behauptet hingegen, diese Bestimmung sei nur für inländische Strafverfahren und für solche, welche aufgrund des Europäischen Übereinkommens über die Rechtshilfe in Strafsachen von 1959 (LGBl 1970 Nr. 30) durchgeführt werden, anwendbar. Dies ergebe sich aus einem - nicht näher nachgewiesenen - Willen des Gesetzgebers. Diese Behauptung ist jedoch unzutreffend.

12. Sowohl gemäss Art. 3 Ziff. 1 des Europäischen Rechtshilfeübereinkommens wie in Rechtshilfeverfahren, die auf der Grundlage der Gegenseitigkeit durchgeführt werden, sind in inländischen, für alle anderen gerichtlichen Verfahren geltenden Vorschriften anwendbar (vgl. Rudolf Geiger, Legal Assistance between States in Criminal Matters, in Encyclopedia of Public International Law, Band 9 (1986), S. 248-255). Es bedarf somit nicht der zusätzlichen Statuierung eines gesamten Normkomplexes für Rechtshilfeverfahren. Es ist auch nicht notwendig, dass sich der Gesetzgeber darüber erkläre, ob er für den Fall der Rechtshilfegewährung die inländischen Vorschriften gelten lassen will oder nicht. Die inländischen Verfahrensbestimmungen der §§ 83 ff StPO sind eo ipso auch für Rechtshilfeverfahren anwendbar und genügen mithin den Anforderungen an eine gesetzliche Grundlage. Gesetzliche Eingriffsnorm ist somit insbesondere der § 87 StPO, ohne dass zusätzlich geprüft werden müsste, ob die völkerrechtliche Gegenseitigkeit eine genügende gesetzliche Grundlage im inländischen Recht zu bilden vermöchte.

Die Erklärung für die dargestellte Rechtslage liegt in der Natur der zwischenstaatlichen Rechtshilfe. Diese ist diejenige Unterstützung, die von Behörden oder Beamten eines Staates den Behörden oder Beamten eines anderen Staates gewährt wird, um die Einteilung oder Durchführung eines Strafverfahrens zu ermöglichen oder ein solches Verfahren zu fördern. Die definitive Aburteilung eines Angeschuldigten ist immer erst Sache der Gerichte des um Rechtshilfe ersuchenden Staates.

Grundsätzlich möchte der um Rechtshilfe ersuchende Staat sein Strafverfahren auf andere Staaten ausdehnen, da er ausserhalb seines Territoriums keine Zuständigkeit besitzt. Zur Erfüllung dieses Rechtshilfegesuches kann der ersuchte Staat, der das ausländische Strafermittlungsverfahren auf sein Staatsgebiet ausdehnt, nur sein eigenes Verfahrensrecht anwenden. Zu diesem gehören auch die Zwangsmassnahmen, ohne die ein wirksames Ermittlungsverfahren unmöglich ist. Diese Überlegungen besitzen Geltung unabhängig davon, ob die gewährte Rechtshilfe auf Vertrag oder auf Gegenseitigkeit beruht. Basis aller Zwangsmassnahmen bildet immer das inländische Verfahrensrecht. Insofern ist der Vorschrift von Art. 32 Abs. 2 der Verfassung dann Genüge getan, wenn die Verfahrensvorschriften der §§ 83 ff StPO beachtet worden sind, was die Beschwerdeführerin für den vorliegenden Fall nicht bestreitet.

13. Nicht näher eingegangen werden muss auf das Vorbringen, es handle sich im vorliegenden Fall um ein Verwaltungsverfahren, das sowohl eine verminderte Rechtspflicht zur Befolgung der amtlichen Anordnungen als auch einen erweiterten Rechtsschutzbereich zur Folge haben könnte. Es kann auf die zutreffende Wider-

**Entscheidung: LES 1988, 49**　　　　　09.11.1987　　StGH 1987/003　　StGH

legung dieser Behauptungen durch die Vorinstanz verwiesen werden. Dass die allgemeinen Voraussetzungen der Rechtshilfe, nämlich ein förmliches Gesuch, beidseitige Strafbarkeit und Spezialität des Gesuches gegeben sind, wird von der Beschwerdeführerin nicht bestritten.

14. Nach der Ansicht der Beschwerdeführerin könne das Fürstentum Liechtenstein den USA nicht allein aufgrund der Gegenseitigkeit Rechtshilfe gewähren, die eigene StPO anwenden und damit Zwangsmassnahmen vollziehen.

Nun hat der Rechtshilferichter den USA Rechtshilfe gewährt angesichts der Tatsache, dass die Voraussetzungen der beidseitigen Strafbarkeit der vorgeworfenen Vergehen und die Gegenseitigkeit gegeben waren. Das Verfahren entsprach in seiner Ausgestaltung den Vorschriften des Europäischen Übereinkommens über die Rechtshilfe in Strafsachen. Die Beschwerdeführerin führt an, der Gesetzgeber habe ausdrücklich nur der Rechtshilfe in Anwendung dieses Übereinkommens zugestimmt. Der Ablauf des vorliegenden Verfahrens entspricht indessen durchaus den Vorschriften des Übereinkommens. Es fehlt höchstens die ausdrückliche Zustimmung des Gesetzgebers im Einzelfall zur Leistung von Rechtshilfe gegenüber den USA und damit zum spezifischen Rechtshilfeadressaten. Die zunehmende Internationalisierung der modernen Lebensverhältnisse und namentlich des internationalen Verbrechens und Drogenhandels lassen indessen die Leistung von Rechtshilfe, jedenfalls zwischen Staaten mit gleichen rechtlichen Grundanschauungen und einer gleichartigen Beurteilung der Schutzbedürftigkeit der Menschenrechte, heute als Ausdruck überwiegender zwischenstaatlicher Rechtsüberzeugung und damit völkerrechtlicher Notwendigkeit erscheinen, die auch als Teil der auswärtigen Beziehungen und Kompetenzen anzusehen ist.

Das Einheits-Übereinkommen von 1961 über die Betäubungsmittel (LGBl 1980 Nr. 37), dem sowohl die USA wie Liechtenstein angehören, unterstreicht die Einigkeit, welche darüber besteht, dass der internationale Drogenhandel durch zwischenstaatliche Zusammenarbeit zu vermeiden und zu unterdrücken ist. Weitere Belege dafür, dass die Leistung von Rechtshilfe in Fällen wie dem vorliegenden zur liechtensteinischen Rechtsüberzeugung gehört, finden sich auch im Landesrecht. So ermächtigt der letzte Satz von § 10 StPO die Strafgerichte, mit Behörden fremder Staaten in unmittelbaren Verkehr zu treten, und Art. 28 Abs. 2 des Betäubungsmittelgesetzes (LGBl 1983 Nr. 38) beansprucht Anwendung auch auf Fremde im Ausland.

15. Entgegen der Ansicht der Beschwerdeführerin ist die Gegenseitigkeit gegeben.

Gegenseitigkeit zwischen zwei Staaten liegt dann vor, wenn der ersuchende Staat unter denselben Umständen dem ersuchten Staat die Vorteile gewähren würde, um die er nun nachsucht. Das Justizdepartement der USA gab in seinem bei den Akten liegenden Schreiben eine Gegenrechtserklärung für Fälle wie den vorliegenden ab. Der Verweis auf Title 28, United States Code (U.S.C.) § 1782 bestätigte lediglich, dass eine allfällige Rechtshilfegewährung seitens der USA innerstaatlich auch durchsetzbar wäre. Er hat aber keine unmittelbare völkerrechtliche Tragweite. Die Gegenrechtserklärung des US Department of Justice ist bindend. Es gab diese im Namen der amerikanischen Regierung ab, welche völkerrechtlich berechtigt und verpflichtet ist, ihren Staat nach aussen mit bindender Wirkung zu vertreten. Der liechtensteinische Rechtshilferichter durfte sich in guten Treuen darauf verlassen und abstützen (vgl. zum Erfordernis der materiellen Reziprozität auch die Entscheide StGH 1975/1, wiedergegeben in SJIR Band XXXIV (1978), S. 163-166; 1985/1 in LES 1986, S. 110).

16. Es kann nicht die Aufgabe des liechtensteinischen Staatsgerichtshofes oder der Regierung sein, in allen Einzelheiten zu überprüfen, ob die von der Beschwerdeführerin ins Recht gelegten Gutachten das inneramerikanische Recht zutreffend darstellen. Das amerikanische Justizdepartement hat verbindlich klargestellt, dass als innerstaatliche rechtliche Grundlage für die Rechtshilfe der USA Title 28, U.S.C. § 1782 anzusehen ist. Diese Bestimmung ermöglicht es den USA, Rechtshilfe im gleichen Ausmass zu erbringen, wie es Liechtenstein gegenüber den USA zu erbringen vermag. Es war im übrigen das erklärte Ziel des amerikanischen Gesetzgebers, den in Frage stehenden § 1782 auch auf strafrechtliche Rechtshilfeersuchen

auszudehnen (In re Letters Rogatory From Dist., Tokyo, Japan, 539 F. 2d 1216 [CA. Cal. 1976]; ebenso In re Letter Rogatory From Justice Court, Dist. of Montreal, Canada, 383 F. Supp. 857 [D.C. Mich. 1974], affirmed in 523 F. 2d 562; In re Request for Judical Assistance from Dist. Criminal Court, Seoul, Korea, 555 F. 2d 120 [CA. Cal. 1977]). Die Gegenseitigkeit in Strafsachen ist somit auch gegeben, sofern inländisches Recht der USA im Spiele steht. Die Behauptung der Beschwerdeführerin, Title 28, § 1782 U.S.C. gelte nur für Zivilsachen, entbehrt der Begründung.

17. In Anbetracht des Vorhergehenden brauchen die weiteren Vorbringen der Beschwerdeführerin unter den Ziffern 5 und 6 ihrer Beschwerde nicht weiter erörtert zu werden. Diese sind ohnehin so unbestimmt, dass eine rechtliche Überprüfung kaum möglich ist (vgl. StGH 1983/7 in LES 1984 S. 76).

LES - Seite 55