# EXHIBIT B

Gary S. Lincenberg, State Bar No. 123058
    glincenberg@birdmarella.com
William E. Johnston, State Bar N. 287707
    wjohnston@birdmarella.com
BIRD, MARELLA, RHOW, LINCENBERG,
DROOKS, & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Martin Weinstein (Admitted *Pro Hac Vice*)
    Martin.weinstein@cwt.com
Hyungjoo Han (Admitted *Pro Hac Vice*)
    Hyungjoo.Han@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
1919 Pennsylvania Ave NW
Washington, D.C. 20006
Telephone: (202) 862-2200

Matthew M. Karlan (Admitted *Pro Hac Vice*)
    Matthew.Karlan@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000

*Attorneys for Respondent*
ALEKSANDRA ZAK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| | Misc. Action No.: 2:25-mc-112 |
| | Honorable Jacqueline Chooljian |
| IN RE *EX PARTE* APPLICATION OF ZYGMUNT SOLORZ FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | **SUPPLEMENTAL DECLARATION OF BERNHARD MOTAL ESQ., IN SUPPORT OF OPPOSITION TO *EX PARTE* APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782** |

I, Bernhard Motal, Esq., pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge, information, and belief:

1. I am an attorney in Liechtenstein and a Partner at the law firm Gasser Partner Attorneys-at-Law ("Gasser"). I am a member in good standing of the Liechtenstein Bar Association (*Liechtensteinische Rechtsanwaltskammer*).

2. I submit this declaration in support of both, Respondent Aleksandra Żak's ("Ms. Żak") Memorandum of Points and Authorities in Opposition to Petitioner Zygmunt Solorz's ("Petitioner") *Ex Parte* Application and Petition for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 (the "Application") and Ms. Żak's concurrently filed Sur-Reply in Opposition to the Application.

3. Gasser represents Ms. Żak in connection with a series of disputes initiated by Petitioner, some of which have since been withdrawn at the request of Petitioner.

4. I have personal knowledge and familiarity with the Liechtenstein Proceedings (as defined in paragraph 9 below), including their factual background and procedural postures. I hereby affirm under oath that the statements made in this declaration concerning these matters are true and correct to the best of my knowledge, information, and belief.

-1-

5.    I submit this statement to provide a complete and accurate representation of the state of the Liechtenstein Proceedings as far as relevant to Petitioner's application and provide additional information that has not been disclosed to the court so far.

6.    In addition to that, I will comment on the Supplemental Ott Declaration (EFC No. 26-1) to the extent necessary to provide the court with a comprehensive, accurate, and complete account of the status of the Liechtenstein Proceedings and the associated implications under Liechtenstein law.

7.    For the sake of good order, I note that the cancellation of the hearings that were scheduled to take place before the Princely Court of Justice on December 3 and 4, 2025 was notified to the parties on December 2, 2025, which was not known when I submitted my first Declaration (EFC No. 22-1) on November 24, 2025.

### State of the Liechtenstein Proceedings

8.    As the Supplemental Ott Declaration correctly states, Petitioner formally withdrew his applications in the proceedings captioned under 06 HG.2025.122 (the **"Resolution Challenge Proceeding"**) on December 2, 2025 and 06 HG.2024.133 (**the "Grzesiak Removal Application"**) on December 5, 2025. Both withdrawn motions concerned matters relating to the TiVi Foundation, with regard to which Petitioner is apparently no longer seeking discovery from Ms. Żak.

9.    As a consequence, two of the three proceedings, for the use in which

Petitioner originally sought discovery from Ms. Żak, have now been voluntarily withdrawn by Petitioner. The only remaining proceeding, pertaining to which Petitioner continues to seek discovery from Ms. Żak, is now the (currently stayed) proceeding before the Princely Court of Justice (*Fürstliches Landgericht*) captioned under 06 HG.2025.22 (the **"Solkomtel Proceeding"** and together with the Resolution Challenge Proceeding, the Grzesiak Removal Application and the Solkomtel Board Removal Application, the **"Liechtenstein Proceedings"**)

10.     For the sake of completeness and although Petitioner's application did not seek discovery from Ms. Żak in respect to this proceeding, I note that Petitioner also withdrew another pending dispute before the Liechtenstein courts relating to Solkomtel Foundation. More precisely, this third withdrawal relates to Petitioner's application for dismissal of Mr. Grzesiak as member of the foundation board and Mr. Schierscher as court appointed curator for Solkomtel Foundation captioned under 06 HG.2024.149 (the **"Solkomtel Board Removal Application"**) on December 5, 2025.

11.     Petitioner's recent submission and the Supplemental Ott Declaration in support of it do not comment on the reasons for or background of the withdrawal of the Resolution Challenge Proceeding, the Grzesiak Removal Application or the Solkomtel Board Removal Application (together the **"Withdrawn Proceedings"**). They do not draw conclusions for or address any implications on the further course

-3-

of the overall dispute in Liechtenstein or the pending application for discovery before this court. For this reason, this statement aims to contribute to a better understanding of these recent events in their overall context.

### Background on the Withdrawn Proceedings

12.     In all Withdrawn Proceedings, Petitioner argued essentially that the decision of the Foundation Council passed on July 21, 2025 to make personnel changes in key subsidiary companies of the Solkomtel Foundation and the TiVi Foundation (together the "**Foundations**") was meritless and the foundation boards' decisions to dismiss Petitioner from supervisory boards in the said key subsidiary companies due to alleged actions to dissipate foundation assets was baseless.

13.     On November 26, 2025, shortly ahead of the hearings scheduled to commence on December 3, 2025, Petitioner filed a written submission in the Grzesiak Removal Application, in which he argued at great length that there was no concrete danger whatsoever to TiVi Foundation's assets. Petitioner insisted firmly that he never planned to dispose of the assets of TiVi Foundation or its subsidiaries and sub-subsidiaries to the detriment of TiVi Foundation or to withdraw assets from TiVi Foundation. Petitioner also disputed the allegation that he had already implemented changes in the underlying companies to the detriment of TiVi Foundation, arguing he ever intended to implement any such changes.  Petitioner continued to assert that TiVi Foundation was wrong to assume that a newly set up

-4-

corporate structure in Poland for Petitioner, a vehicle tellingly named Nullum Impossibile Family Foundation ("NIFF") with twelve (12) underlying companies ("SPVs"), was intended for the transfer of assets from TiVi Foundation. Quite the contrary, Petitioner asserted that said structure established around NIFF had nothing in common or to do with TiVi Foundation and was typical for an active businessperson like Petitioner.

14.    On November 28, 2025, two days after Petitioner's submission in the Grzesiak Removal Application, TiVi Foundation filed a written submission in the Resolution Challenge Proceeding, in which the Foundation described in detail numerous hostile actions taken by Petitioner and his associates to the detriment of both TiVi Foundation *and* Solkomtel Foundation. The meticulous analysis detailed an attempt to transfer TiVi Foundation's assets under operative control of NIFF. Attached was an audit report ordered by a key subsidiary company, which conducted an independent forensic audit (the "Audit Report") accompanied by discovered e-mail correspondence from various advisors to Petitioner and his wife, Ms. Justyna Kulka (Ms. "Kulka"), who back then remained and acted in capacity as Chairman and Vice-Chairwoman of the Supervisory Boards of key subsidiary companies.

15.    According to the Audit Report and further documentary evidence accompanying it, Petitioner's and his associates' main objective was to transfer TiVi

**SUPPLEMENTAL DECLARATION OF BERNHARD MOTAL, ESQ., IN SUPPORT OF OPPOSITION TO PETITIONER'S *EX PARTE* 28 U.S.C. § 1782 APPLICATION**

Foundation's current control over the assets of several Polish companies including key subsidiary companies under the operative control of NIFF.

16.     Available data indicates that the plan was developed by a Polish law firm, which regularly updated Petitioner and Ms. Kulka on the progress of the project, forwarded draft documents, etc. Numerous legal advisors to Petitioner (including Liechtenstein and Austrian counsel to Petitioner) were also regularly informed about the state of affairs and consulted internally with Petitioner and his associates.

17.     Four days after TiVi Foundation's November 28, 2025 submission in the Resolution Challenge Proceeding, Petitioner withdrew said proceeding on December 2, 2025 and subsequently the Grzesiak Removal Application as well as the Solkomtel Board Removal Application on December 5, 2025.

18.     Remarkably, Petitioner's decision to no longer pursue the Withdrawn Proceedings happens to be made immediately after TiVi Foundation, as Respondent in the Resolution Challenge Proceeding, filed the Audit Report, which provides a strong indication that Petitioner was setting up a structure to dissipate assets from the Foundations to other entities.

19.     It is striking, how openly TiVi Foundation's November 28, 2025 submission in the Resolution Challenge Proceeding contradicts Petitioner's November 26, 2025 submission in the Grzesiak Removal Application.

-6-

20.     While Petitioner did not offer an explanation on his procedural actions regarding the Withdrawn Proceedings in his recent submissions in the discovery proceedings, Petitioner – without being procedurally obliged to do so – offered an explanation for the withdrawal of the Resolution Challenge Proceeding in his statement of withdrawal to the Princely Court of Justice (*Fürstliches Landgericht*) on December 2, 2025.

21.     Notably, in his said submission to the court, Petitioner did not deny the authenticity of the discovered e-mail correspondence, but tellingly maintained that he never *unlawfully* intended to transfer any assets out of TiVi Foundation's or Solkomtel Foundation's control.

22.     Petitioner continued to defend the conduct taken by himself and his associates and suggested that documents discovered were merely pointing to an "*analysis*", stating that he "*intended to assess whether relevant legal systems offer any possibilities to regain (...) control*" and that "*after receiving legal memoranda from international law firms [Petitioner] decided that (...) apparently there is no legally secure way to regain control, and he deliberately did not instruct that further steps be taken*".

23.     Petitioner's statements are difficult to reconcile with the evidence disclosed in the Audit Report.

24.     Firstly, it is evident from the Audit Report and the e-mail

-7-

correspondence – the authenticity of which has not been disputed by Petitioner – that the works on the transfer of TiVi Foundation's assets were already at an advanced stage, with draft documents being prepared and an entire corporate structure being obviously set-up for the purpose of a considerable transfer of assets.

25.    The corporate structure with NIFF and its subsidiary SPVs has already been established and execution documents to finalize the project are drafted and ready to implement. It is difficult to comprehend how such concrete and unmistakable conduct can be considered a mere analysis.

26.    Secondly, it is anything but accurate to suggest (as Petitioner did) that the legal memoranda regarding possible criminal liability prevented Petitioner and his associates from proceeding with their endeavor. Based on evidence filed in the Resolution Challenge Proceeding, the first draft of such a criminal law memorandum assessing potential liability had been sent to Petitioner and Ms. Kulka as early as June 16, 2025. On June 20, 2025, a Polish advisor to Petitioner presented Petitioner and Ms. Kulka with a "*report on the most important actions*" undertaken by Petitioner's associates to transfer TiVi Foundation's assets under full control of NIFF. On June 24, 2025 another advisor working on the project informed Petitioner and his associates that they were working on *creating* an economic justification for the endeavor.

27.    It is important for the court to be aware of such background

-8-

information, given the fact that Petitioner's recent filings and the Supplemental Ott Declaration claim to provide an update on the status of the Liechtenstein Proceedings and address several statements in my first declaration (EFC No. 22-1), but fail to mention any one of these developments.

## **Document Production in Non-Contentious Proceedings**

28.    Petitioner not only omits to disclose the abovementioned developments, but Petitioner's recent submission is also based on several misconceptions pertaining to procedural aspects of Liechtenstein law, created by the Supplemental Ott Declaration (EFC No. 26-1).

29.    According to applicable Liechtenstein law, parties are obliged to provide complete and truthful testimony on all matters known to such party. They are required to provide or offer any evidence that could be relevant for the court's decision and answer all questions by the court pertaining to such testimony or evidence truthfully and completely. A party can, however, never be *compelled* to testify.

30.    However, Ms. Żak *actually testified* in the proceedings, captioned under 06 HG.2024.210 (the **"TiVi Proceeding"**), that center around TiVi Foundation, already on February 4, 2025. In the course of her testimony, Ms. Żak was questioned by the court and cross examined by Petitioner's counsel extensively.

31.    Liechtenstein law provides for different types of civil proceedings.

-9-

While some legal matters are litigated under contentious civil procedural rules (*streitiges Zivilverfahren*) pursuant to the Civil Procedural Code (*Zivilprozessordnung*), others are subject to the procedural rules of the Non-Contentious Proceedings Act (*Ausserstreitgesetz*). The assignment of a legal matter to contentious or non-contentious proceedings is determined by express statutory provision.[1]

32.    Unlike in contentious civil proceedings, where the focus is on safeguarding conflicting interests, the parties to non-contentious proceedings are obliged to cooperate in gathering evidence, as interests of third parties are often involved or affected.

33.    All Liechtenstein Proceedings, including the Solkomtel Proceeding are conducted as non-contentious proceedings. Hence, according to the procedural provisions applicable to *inter alia* the Solkomtel Proceeding, the court may actually request the disclosure of documents by the parties, including Ms. Żak, if it deems such documents indispensable for the proceedings.[2]

34.    This is an undisputed basic feature of the procedural rules applicable in the Solkomtel Proceeding. Although courts in Liechtenstein may not conduct

---

[1] See Sec. 1 Para. 2 of the Non-Contentious Proceedings Act (*Ausserstreitgesetz*).
[2] *Id*, Sec. 31 Para. 5: " *If the court considers it essential for a party to attend a hearing, submit a document, or allow an inspection of an object in its custody, it may use coercive measures [...] against the party if it fails to comply with the summons or request without good reason*."

-10-

"U.S.-style discovery", an obligation to produce documents exists in non-contentious proceedings and parties can be compelled to produce such documents, a fact that the Supplemental Ott Declaration (EFC No. 26-1 ¶ 7) wrongly disputes.

35.     A court's order to disclose documents can be enforced by coercive measures. Contrary to the characterization of the obligation to produce documents contained in the Ott Declaration (EFC No. 3 ¶ 41), the parties' obligation in this regard is not limited to "*certain, specific types of documents that bind the parties to a dispute (e.g. legal instruments signed by the parties to the dispute)*".

36.     Consequently, according to applicable procedural rules, the court may compel the parties to disclose *any* document in the possession of such party.

37.     Petitioner has not shown, why this far-reaching obligation under Liechtenstein law would be insufficient to address Petitioner's alleged procedural need for document production.

38.     Furthermore, Petitioner has failed to explain why he did not seek *any* document production by Ms. Żak in any proceedings in Liechtenstein at all. Finally, Petitioner has not even alleged – in any of the multitude of proceedings initiated by Petitioner in Liechtenstein – in any court filing that Ms. Żak would even be in the possession of any documents relevant to any of the proceedings in Liechtenstein or elsewhere.

39.     Petitioner was provided with comprehensive opportunities to gain

-11-

**SUPPLEMENTAL DECLARATION OF BERNHARD MOTAL, ESQ., IN SUPPORT OF OPPOSITION TO PETITIONER'S *EX PARTE* 28 U.S.C. § 1782 APPLICATION**

information or obtain evidence he could possibly require from Ms. Żak but left them
unused.

### **The Taking of Evidence in Liechtenstein Proceedings: Disclosure of Information and Document Production**

40.    Against the backdrop of Petitioner's pleading, which argues that the application for discovery is indispensable because he would otherwise lack the opportunity to obtain information desperately required to pursue his claims, it is important to consider how entirely disinterested Petitioner appeared in the Liechtenstein Proceedings to obtain information, documents or testimony from Ms. Żak in the Liechtenstein Proceedings.

41.    Petitioner did *not* request the examination of Ms. Żak in the TiVi Proceeding. Petitioner did neither call her to testify as a party, nor did he request Ms. Żak to produce any documents or disclose any information in her possession.

42.    Ms. Żak did, nevertheless, appear in Liechtenstein courts, every time she was called by the court to do so. I emphasize again that Ms. Żak already testified in the TiVi Proceeding and Petitioner had the chance to cross-examine her. Ms. Żak was indeed cross-examined by Petitioner's trial attorneys. Petitioner, however, did at no point in time ask Ms. Żak to produce any documents, Petitioner claims she has in her possession. Petitioner did not request the court to compel Ms. Żak to produce any documents.

-12-

43.     Also, in the Solkomtel Proceeding, which now remains the sole reason for Petitioner's application for discovery, Petitioner did not call Ms. Żak to testify as a witness at all. Petitioner did neither ask her to produce any documents nor did he even allege, that Ms. Żak would have any such documents in her possession. Petitioner left any and all procedural means at his disposal to obtain information, documents or testimony from Ms. Żak unutilized.

44.     In the – now terminated – Resolution Challenge Proceeding, to which Ms. Żak was not a party, Petitioner has never called Ms. Żak to testify as a witness.

45.     On October 13, 2025, Petitioner initiated the Grzesiak Removal Application, which has meanwhile also been withdrawn by Petitioner. In his Application, Petitioner – once more – did not ask for any testimony or document production by Ms. Żak.

46.     Sixteen (16) days after filing the Grzesiak Removal Application, Petitioner, on October 29, 2025, submitted his application for discovery before this court, without – immediately prior to the submission – asking for any testimony, documents or information by Ms. Żak in the (then) newly initiated Grzesiak Removal Application.

47.     As recently as November 26, 2025, Petitioner submitted another 41-page long pleading to the court in the Grzesiak Removal Application in which he argued extensively that a comprehensive taking of evidence was urgently required.

-13-

48.    In his submission, Petitioner offered a comprehensive set of evidence, including twenty-two (22) witnesses and most of the parties to be called to testify, with the *sole* exception of Ms. Żak and her siblings, Tobias Solorz und Piotr Żak.

49.    Following Petitioner's own withdrawal on December 5, 2025, the Grzesiak Removal Application was terminated only about eight (8) weeks after it was initially filed by Petitioner without any evidence being taken.

## Subjects of Evidence in the TiVi Proceeding and the Solkomtel Proceeding

50.    The Ott Declaration (EFC No. 3 ¶ 29) and the Supplemental Ott Declaration (EFC No. 26-1 ¶ 10), insist that there are *"(...) significant differences in the legal arguments and facts presented (...)"* in the TiVi Proceeding and the Solkomtel Proceeding, which would require "*an independent legal and factual assessment of any evidence that may eventually be submitted*" (Supplemental Ott Declaration (EFC No. 26-1 ¶ 10), without elaborating further on any such significant differences.

51.    This assessment is not supported by any evidence and does not stand up to scrutiny when measured against the actual facts of the case. It may be true, that the Foundations' governing documents are not identical. However, they have no significant differences with regard to the legally relevant facts.

52.    The Ott Declaration (EFC No. 3 ¶ 31) asserts, that discovery would be particularly required to obtain "*documents and information directly relevant to the*

-14-

*Solkomtel Application because [...] she has personal knowledge regarding efforts by Ms. Żak and her brothers to induce Mr Solorz into signing declarations ceding certain control of the Foundations to his children and the events that have resulted therefrom.*".

53.     Those matters referred to in the Ott Decl. are exactly the matters, that were litigated extensively in the TiVi Proceeding.

54.     All declarations pertaining to TiVi Foundation and Solkomtel Foundation (Motal Decl., EFC No. 22-1 ¶¶ 15–17) were signed – according to the pleadings by *all* parties, including Petitioner – on the same day, at the same place and in close temporal connection to finally achieve the essentially same result. As far as the establishment of the facts of the case is concerned, there is no tangible reason and Petitioner does not succeed to provide or even assert any such tangible reason, why a distinction should be made or why other evidence should be taken.

55.     Although I did not state that the TiVi Proceeding and the Solkomtel Proceeding are analogues in all material respects, as the Supp. Ott Decl. (EFC No. 22-1 ¶ 10) erroneously claims[3], I am of the opinion that the factual and legal issues in those two proceedings are essentially the same and that minor deviations between the foundation documents do not require any deviation in the taking of evidence.

56.     The subject of dispute with regard to both Foundations is a transfer of

---

[3] I stated that the TiVi *Declarations* and the Solkomtel *Declarations* are analogues in all material respects (See Motal Decl. EFC No. at margin no. 16).

-15-

rights of control from Petitioner to Ms. Żak and her siblings, Tobias Solorz und Piotr Żak (Ott Decl., EFC No. 3 ¶ 12). Petitioner does not even bother to explain, which legally relevant facts – in his opinion – will be determined and assessed in the Solkomtel Proceeding that have not already been established and assessed in the TiVi Proceeding (Ott Decl., EFC No. 3 ¶ 29; Supp. Ott Decl. EFC No. 26-1 ¶ 10).

57.     The Ott Declaration (EFC No. 3 ¶ 29) and the Supplemental Ott Declaration (EFC No. 26-1 ¶ 10) are insofar at odds with Petitioner's own pleading in the Solkomtel Proceeding (Docket Entry# 10 in case no. 06 HG.2025.22), where Petitioner has argued: "*Finally, I refer to the "parallel proceeding" captioned under 06 HG.2024.210 [the TiVi Proceeding] where of course (as assumed by the court) the substantially same legal issues as in the current proceeding will be litigated*".

58.     Petitioner's newly introduced allegation (Supp. Ott Decl. EFC No. 26-1 ¶ 10), arguing there would be significant differences with respect to the legal and factual details, is also contradictory to Petitioner's own pleading in the Solkomtel Proceeding.[4] Quite the opposite, the proceedings are virtually identical in all material respects and – here particularly relevant – concerning the subjects of evidence.

59.     A final issue that has not been covered sufficiently so far is the nature

_____

[4] See Docket Entry# 10 in case no. 06 HG.2025.22, p. 4-5, where Petitioner explicitly agreed with the court's stay order, affirming that essentially the same legal issues will be decided in the TiVi Proceedings and the Solkomtel Proceedings.

-16-

and context of the current stay of the Solkomtel Proceeding. In its April 29, 2025 stay order (Docket Entry# 5 in case no. 06 HG.2025.22), the court made unmistakably clear that it considers the essentially same legal questions relevant for its decision that were relevant in the TiVi Proceeding.

60.    In its modified stay order, dated August 13, 2025 (Docket Entry# 12 in case no. 06 HG.2025.22), the court (in the operative part of its decision) unambiguously clarified that the Solkomtel Proceeding will only be stayed until a final decision on the *(decisive) facts of the case* (in the TiVi Proceeding) has been made.

61.    Most recently, the Princely Higher Court (*Fürstliches Obergericht*) has issued a decision in the appeals stage of the TiVi Proceeding, dated December 18, 2025 that was served on Ms. Żak on December 23, 2025. In its decision, the Princely Higher Court (*Fürstliches Obergericht*) fully affirmed the Princely Court of Justice's (*Fürstliches Landgericht*) decision in the TiVi Proceeding and rejected Petitioner's appeal.

62.    With a detailed 77-page decision[5], the Princely Higher Court (*Fürstliches Obergericht*) thoroughly considered the parties' pleadings and, in summary, provided an outright rejection of Petitioner's legal arguments and the factual assertions attempting to challenge the first instance court's decision.

---

[5] Docket Entry# 59 in case no. 06 HG.2024.210.

**SUPPLEMENTAL DECLARATION OF BERNHARD MOTAL, ESQ., IN SUPPORT OF OPPOSITION TO PETITIONER'S *EX PARTE* 28 U.S.C. § 1782 APPLICATION**

63.     By fully affirming the first instance court's decision, the appeals court has issued a so-called conformity decision (*Konformentscheidung*). A conformity decision is a decision of an appeals court fully affirming a first instance court's decision on the merits. Following from applicable procedural law, such conformity decision is not available for further regular appeals process and a legal remedy, bringing the case before the Princely Supreme Court (*Fürstlicher Oberster Gerichtshof*) is inadmissible, as the decision explicitly states.

64.     For the sake of completeness, I note that a party claiming a violation of its constitutional rights by a final decision of last instance (which the decision in TiVi Proceeding is), may file an individual complaint (*Individualbeschwerde*) to the Constitutional Court (*Staatsgerichtshof*). An individual complaint is considered an extraordinary legal remedy with limited applicability and may only address *legal issues* pertaining to alleged violations of constitutional rights. Such individual complaint is not procedurally suitable to lead to additional evidence taking.

*        *        *        *        *

I declare under the penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

-18-

Executed on December 23, 2025, in Schaan, Principality of Liechtenstein

Bernhard Motal, Esq.

-19-

SUPPLEMENTAL DECLARATION OF BERNHARD MOTAL, ESQ., IN SUPPORT OF OPPOSITION TO PETITIONER'S *EX PARTE* 28 U.S.C. § 1782 APPLICATION

39