UNITED STATES  DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

IN RE EX PARTE APPLICATION
OF ZYGMUNT SOLORZ FOR AN
ORDER TO TAKE DISCOVERY
FOR USE IN FOREIGN
PROCEEDINGS PURSUANT TO
28 U.S.C. § 1782

)
)
)
)
)
)
)
)
)

Case No. 2:25-mc-00112-MEMF-JC

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE
JUDGE

This Report and Recommendation is submitted to the Honorable Maame Ewusi-Mensah Frimpong, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.  See also CPC Patent Technologies Pty Ltd. v. Apple, Inc., 34 F.4th 801 (2022).

## I.    SUMMARY

On October 29, 2025, Zygmunt Solorz ("Solorz" or "Petitioner") filed an Ex Parte Application and Petition for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 ("Petition"), a Declaration of Isaac C.H. Sommers, Esq ("Sommers Decl.") with exhibits ("Sommers Ex."), and a Declaration of Simon Ott Esq. ("Ott Decl.") with exhibits ("Ott Ex.").[1]  (Docket

---

[1]Ott Exhibits B-Q were translated into English by a certified translator.  (Ott Decl. ¶ 54; Ott Ex. R).

Nos. 1-3).  The Petition seeks an order (1) authorizing the issuance of a subpoena ("Proposed Subpoena") for the production of certain documents[2] from Petitioner's daughter, Aleksandra Zak ("Zak" or "Respondent") for use in a foreign proceeding in Liechtenstein – Case No. 06 HG.2025.22 (also referred to as "the "Solkomtel Case");[3] (2) directing Respondent to comply with the Proposed Subpoena; (3) directing Respondent to preserve all documents, electronic or otherwise, and any evidence in her possession, custody or control that contains information potentially relevant to the subject matter of the Solkomtel Case; and (4) retaining jurisdiction over this matter to hear any disputes arising out of or relating to the Proposed Subpoena.  On November 26, 2025, Respondent filed an Opposition to

---

[2]The Proposed Subpoena (see Exhibit 1 to Sommers Ex. A) would call for the production of seven primary categories (with multiple sub-categories) of documents created from June 1, 2024 (unless otherwise indicated) to the present, essentially:  (1) all documents/communications concerning (a) declarations related to the further described TiVi Foundation and Solkomtel Foundation (collectively, "Foundations") executed by Petitioner on August 2, 2024 ("2024 Declarations"); (b) the control or change of control of the Foundations; (c) changes or potential changes to the statutes, bylaws, or other governing documents of the Foundations; or (d) actions Petitioner undertook, beginning on August 3, 2024, to revoke the 2024 Declarations, restore any aspects of his control over the Foundations, and execute further amendments to the Foundations' statute, bylaws, or other governing documents; (2) all documents/communications, from July 1, 2023 to the present, concerning the further described "2023 Revoked Declaration of Death"; (3) all documents/communications concerning a specified agreement between Petitioner and his children (Respondent, Piotr Zak and Tobias Solorz) entered into on August 3, 2024 ("Standstill Agreement"); (4) all documents/communications concerning any attempt to dismiss Jaroslaw Grzesiak and/or Tomasz Szelag from the boards of the Foundations and any attempt to appoint Zofia Jedrzejewska and Piotr Zak to the boards of the Foundations on or around August 14, 2024; (5) all documents/communications concerning the appointment of Jaroslaw Grzesiak to the boards of the Foundations on or around March 4, 2025; (6) all communications from January 1, 2023 to the present concerning actual/contemplated plans to remove, eliminate, dilute, reduce, or otherwise effect in any way Petitioner's direct/indirect ownership or control over any foundations, businesses, assets, or any other things; and (7) all documents/communications concerning (a) the removal of Petitioner from any supervisory board of four specified entities; or (b) the appointment of any replacement to any supervisory board of such four specified entities.

[3]The Petition originally also sought the requested documents for use in two other Liechtenstein matters – Case No. 06 HG.2025.122 (the "Solorz Removal Case") and Case No. 06 HG.2024.133 (the "Grzesiak Case") – but Petitioner has since formally withdrawn such matters and no longer seeks documents in aid of the same.  (Ott Supp. Decl. ¶ 5).

the Petition ("Opp.") and a Declaration of Bernhard Motal, Esq ("Motal Decl.") with exhibits ("Motal Ex.").[4]  (Docket No. 22).  On December 12, 2025, Petitioner filed a Reply with an exhibit consisting of a Supplemental Declaration of Simon Ott, Esq ("Ott Supp. Decl.").  (Docket No. 26).  On December 24, 2025, in connection with an ex parte application, Respondent submitted a Surreply and a Supplemental Declaration of Bernhard Motal, Esq. ("Motal Supp. Decl."), which the Court subsequently authorized Respondent to file.  (Docket Nos. 27-1, 27-2, 34).

Based upon the parties' submissions in connection with the Petition and for the reasons explained below, it is recommended that the Petition be granted in part and denied in part.  More specifically, the Court should (1) authorize Petitioner to issue a substantially narrowed version of the Proposed Subpoena in accordance with Rule 45 of the Federal Rules of Civil Procedure; (2) direct Respondent to comply with Rule 45 in responding to the Subpoena (which would allow Respondent to, for example, interpose any appropriate privilege/burden-related objections); (3) decline to issue a preservation order; and (4) retain jurisdiction over this case to resolve any disputes relating to the narrowed version of the Proposed Subpoena.

## II.  BACKGROUND

The Petition arises out of a legal proceeding pending in Liechtenstein (the Solkomtel Case) which concerns the governance of a foundation in Liechtenstein (the Solkomtel Foundation) which holds interests in numerous media and telecommunications businesses founded by Solorz.  (Ott Decl. ¶ 3).  As discussed in more detail below, in the Solkomtel Case, which is currently pending, but has

---

[4]The Motal Exhibits include certified English translations of certain Liechtenstein court decisions from which personally identifiable information has been redacted.  (Motal Decl. at 3 n.3).

been stayed in the Princely District Court of Vaduz, Liechtenstein – Petitioner seeks to invalidate the 2024 Declarations (see supra note 2 and below) that purported to vest his children with certain control over the Solkomtel Foundation. (Ott Decl. ¶¶ 3, 23).

Petitioner is a Polish entrepreneur who is known for establishing the first private television station in Poland – "Polsat" – and numerous other successful media and telecommunications businesses. (Ott Decl. ¶ 6; Motal Decl. ¶ 7). He is one of the wealthiest individuals in Europe. (Ott Decl. ¶ 6). Solorz contributed his core business assets, including Polsat, to the Foundations which were formed under Liechtenstein law and based in Vaduz, Liechtenstein.[5] (Ott Decl. ¶ 6; Motal Decl. ¶ 9). Solorz is the sole founder, sole primary beneficiary, and sole curator of the Foundations.[6] (Ott Decl. ¶ 6; Motal Decl. ¶ 9).

---

[5]According to Attorney Ott: A Liechtenstein foundation is a legally and economically independent entity. A foundation does not have owners, shareholders, or members, and is established by the unilateral declaration of the founding party (the "founder). The founder allocates assets to the foundation, defines its purpose, and designates its beneficiaries through the foundation's governing documents. Ownership of the foundation's assets is transferred to the foundation itself, and the foundation is governed by a board called a "council" – the foundation's main governing body – consistent with the foundation's governing documents. (Ott Decl. at 3 n.1).

According to Attorney Motal: The Foundations in issue are a type of private-benefit foundation under Liechtenstein law referred to as "family foundations." They are explicitly referred to as family foundations in the Foundations' statutes (Article 2). A family foundation is typically established for asset protection and long-term succession planning. According to applicable statutory law, a family foundation is managed and represented by its foundation council as executive body. The foundation council is also responsible for ensuring that the foundation fulfills its purpose and is comparable to a board of directions in a corporation. The terms "foundation council" and "board" are used interchangeably. (Motal Decl. ¶¶ 10, 11).

[6]According to Attorney Motal: Petitioner established the TiVi Foundation in 2012 and the Solkomtel Foundation in 2013 as part of his long-term succession plan. It has been the expressly articulated intention of Petitioner that the Foundations should primarily serve to secure the position of Petitioner's children and their descendants, as well as to ensure continued operation of the corporate group, which is held by the Foundations. It was Petitioner's express will and wish that his children gradually assume responsibility and control within the companies
(continued...)

Solorz apparently has three children, two sons and one daughter: (1) Piotr Zak, who resides in Poland; (2) Tobias Solorz, who resides in Dubai; and (3) Aleksandra Zak (Respondent), who resides in Los Angeles, California.[7] (Ott Decl. ¶ 7; Motal Decl. ¶ 8). All three children purport to be secondary beneficiaries of the Foundations and were appointed as such in the Foundations' October 29, 2018 bylaws. (Ott Decl. ¶ 7; Motal Decl. ¶ 13).[8] Petitioner's sons have sought to be involved in and have held various positions at the businesses owned indirectly by the Foundations. (Ott Decl. ¶ 7). Petitioner's daughter (Respondent), left Poland several years ago, has resided in the United States since at least 2019, and has not been involved in the day-to-day operations of the businesses owned indirectly by the Foundations. (Ott Decl. ¶ 7). She does not currently serve, and has never served, on the board of either of the Foundations and apparently is not and has not been involved in Petitioner's business or entrepreneurial ventures. (Motal Decl. ¶ 14). According to publicly available information, Respondent owns or operates an animal shelter in Los Angeles. (Ott Decl. ¶ 7). Solorz asserts that his children and Jacob Grzesiak – a former friend and confidante who previously served as a

---

[6](...continued)
held by the Foundations. Such intentions by Petitioner were found as a matter of fact by a Liechtenstein court on May 21, 2025 in Case No. 06 HG.2024.210 (the "TiVi Case"). (Motal Decl. 3, 12).

[7]Publicly available information and Respondent's own testimony in certain proceedings related to the Solkomtel Case, reflect that Respondent resides at an address in North Hollywood, California. (Ott Decl. 8; Ott Ex. A).

[8]The children were not identified as secondary beneficiaries in the Foundations' original governing documents. (Ott Decl. at 3 n.2). On October 29, 2018, the bylaws of the Foundations were amended to add the children as secondary beneficiaries. (Ott Decl. at 3 n.2; Motal Decl. ¶ 13). Solorz is challenging the validity of those amendments and the beneficiary status of his children in separate declaratory proceedings in Liechtenstein. (Ott Decl. at 3 n.2). As previously noted, on May 21, 2025, a Liechtenstein court in the TiVi Case, determined as a matter of fact that it has been Petitioner's intention that his children shall become the beneficiaries of the Foundations' assets upon his passing or incapacitation. (Motal Decl. ¶ 13).

legal advisor to various companies owned by the Foundations and has both previously served and is currently serving on the board of the Foundations – have made efforts to oust Petitioner from the highly successful business empire that Petitioner built.[9]  (Otto Decl. ¶¶ 10, 11).

In May 2023, Petitioner executed several legal declarations with respect to the Foundations ("2023 Declarations") which would have transferred certain control of the Foundations from Petitioner to his children.  (Ott Decl. ¶ 12).  However, in August 2023, Petitioner exercised his right to revoke the 2023 Declarations.  (Ott Decl. ¶ 12).

In late July 2024, during a family gathering, Petitioner's children – including Respondent – began having discussions with Petitioner regarding testamentary matters, including in relation to Petitioner's will.  (Ott Decl. ¶ 15).

On August 1, 2024, Petitioner and his children met with Petitioner's attorney, Jerzy Modrzejewski, to follow up on the topics discussed during the family gathering.  (Ott Decl. ¶ 16).  The children also raised the possibility of potential changes to the Foundations' governing documents.  (Ott Decl. ¶ 16).  At the end of the day's discussions, Petitioner's attorney advised Petitioner and his children that he was planning to travel on vacation the next day, and suggested that he either postpone his travel plans or that the group postpone more detailed discussions regarding changes to the governing documents until such time as he was able to participate.  (Ott Decl. ¶ 16).  Respondent encouraged Petitioner's attorney to keep his travel plans, stated that his presence for any potential further discussions was not necessary, and stated that if any further discussions regarding

///

---

[9]On May 27, 2025, in the Grzesiak Case (Case No. 06 HG.2024.133), the court found that it could not be concluded that Grzesiak was part of Petitioner's children's alleged plan to strip Petitioner of his powers.  (Motal Ex. D at 32).

changes to the governing documents occurred without him during his vacation, Petitioner and the children could update him upon his return.  (Ott Decl. ¶ 16).

On August 2, 2024, Petitioner executed multiple documents pertaining to his legal succession in the presence of a notary public, including a will and six declarations (the 2024 Declarations) concerning the Foundations, three of which pertained to the TiVi Foundation (the "TiVi Declarations"), and three of which pertained to the Solkomtel Foundation (the "Solkomtel Declarations").[10]  (Ott Decl. ¶¶ 17, 18; Motal Decl. ¶ 15).  The TiVi Declarations and the Solkomtel Declarations are assertedly analogous in all material respects.  (Motal Decl. ¶ 16; Motal Supp. Decl. at 15 n.3).  Under the terms of the 2024 Declarations, Petitioner (1) waived his right, as founder, to amend the statutes and bylaws of the Foundations; and (2) triggered the succession mechanism provided for in the statutes that authorizes Petitioner's children to appoint or dismiss members of the Foundations' boards.[11]  (Motal Decl. ¶ 16).

///

---

[10]Petitioner's counsel describes the events in more detail as follows:  On August 2, 2024, with Petitioner's attorney on vacation, the children met with Petitioner and advised him that they had drafted legal declarations intended to effect changes to the Foundations' governance.  (Ott Decl. ¶ 17).  On that date Petitioner's children (who then were named as secondary beneficiaries of the Foundations), with the assistance of Grzesiak, caused Petitioner to execute certain legal declarations with respect to the Foundations (*i.e.*, the 2024 Declarations, see supra note 2).  (Ott Decl. ¶ 18).  Petitioner's children represented to Petitioner that the 2024 Declarations were intended to protect the Foundations and their family, and further assured Petitioner that he would not lose any control over the Foundations by executing the 2024 Declarations.  (Ott Decl. ¶¶ 13, 18; Ott Exs. B, C).  Petitioner's notary called Petitioner's attorney so that Petitioner could speak with him about the 2024 Declarations, but Respondent stated that it was urgent that Petitioner execute the 2024 Declarations and that there was no time for Petitioner to consult with his counsel, so the call was terminated.  (Ott Decl. ¶ 18).  Petitioner then executed the 2024 Declarations as his children urged.  (Ott Decl. ¶ 18).

[11]Petitioner's children's asserted right to appoint or dismiss Foundation board members is currently suspended pursuant to interim injunctions issued by Liechtenstein courts.  (Motal Decl. at 6 n.6).

According to Petitioner's counsel:  It later became clear to Petitioner that the 2024 Declarations were actually designed to permanently strip Petitioner of certain control over the Foundations (by removing his ability to revoke the 2024 Declarations, as he had done with the 2023 Declarations) and to instead transfer such control to his children.  (Ott Decl. ¶¶ 13, 19; Ott Exs. B, C).  Petitioner's children's foregoing efforts to induce Petitioner to give up certain control over the Foundations were closely coordinated among Petitioner's children and Grzesiak.  (Ott Decl. ¶ 13).  Petitioner learned, after executing the 2024 Declarations, that Respondent had been in communication with Grzesiak regarding potential changes of control over the Foundations.  (Ott Decl. ¶ 19).  Grzesiak has testified that Respondent and her husband sought advice from him regarding a change of control of the Foundations and that Respondent and her husband asked Grzesiak to speak with their United States counsel regarding the United States tax implications if certain rights of control concerning the Foundations were to transfer to Respondent.  (Ott Decl. ¶ 19; Ott Ex. D).

Almost immediately after signing the 2024 Declarations and through August 2024 and September 2024, Petitioner sought to invalidate/revoke the 2024 Declarations, to restore the control he had over the Foundations prior to executing the 2024 Declarations, and to remove his children as secondary beneficiaries through amendments to the Foundations' governing documents ("Subsequent Actions") and the filing of multiple legal actions, including the Solkomtel Case on which the Petition is predicated.  (Ott Decl. ¶¶ 21-23; Ott Exs. E-H; Motal Decl. ¶¶ 18, 19).  Petitioner's children have rejected the Subsequent Actions as invalid under Liechtenstein law.  (Ott Decl. ¶ 21).  On August 3, 2024, after Petitioner's commencement of the Subsequent Actions, Petitioner's children executed the Standstill Agreement in which they agreed that they would not execute any rights

///

8

transferred to them through the 2024 Declarations until August 16, 2024.  (Ott Decl. ¶ 21; Ott Ex. I).

The Solkomtel Case – the sole remaining case upon which the Petition is predicated – and the TiVi Case involving the at least arguably analogous TiVi Declarations are discussed further below.

On August 26, 2024, Petitioner commenced the TiVi Case – a declaratory judgment action against the TiVi Foundation and Petitioner's children (including Respondent) – seeking to invalidate the  TiVi Declarations.  (Motal Decl. ¶¶ 3, 20).  Petitioner asserts therein that the TiVi Declarations are invalid and unenforceable because, at the time Petitioner signed them, he was misled by his children regarding the terms of the TiVi Declarations and was unduly pressured to sign them.  (Motal Decl. ¶¶ 21).  He further argued therein that a waiver and transition of his rights effected by the TiVi Declarations were not voluntary and not given with an understanding of the implications.  (Motal Decl. ¶ 21). Respondent submitted a written declaration/affidavit in the TiVi Case and, on February 4, 2025, testified in Liechtenstein as a party during an oral hearing and was interrogated by Petitioner's counsel, among others.  (Ott Ex. A; Motal Decl. ¶ 22; Motal Supp. Decl. ¶ 30).  On May 21, 2025, the Liechtenstein court issued a 102-page decision in favor of Respondent, her siblings, and the TiVi Foundation, essentially finding that the TiVi Declarations were not executed via fraud or mistake such that they could be rendered invalid, rejecting Petitioner's allegations that there was a scheme amongst Petitioner's children and others to remove Petitioner from the TiVi Foundation, and determining that Petitioner's Subsequent Actions (*i.e.*, Petitioner's efforts to undo the TiVi Declarations) were null and

///

///

///

9

void. (Motal Decl. 2-26; Motal Ex. A).[12]  On June 19, 2025, Petitioner filed an appeal.  (Motal Decl. ¶ 27).  On December 18, 2025, the May 21, 2025 order was affirmed by the appellate court.  (Motal Supp. Decl. ¶¶ 61-63).

On August 29, 2024, Petitioner commenced the Solkomtel Case – a declaratory judgment action against the Solkomtel Foundation and Petitioner's children (including Respondent) – seeking to invalidate the Solkomtel Declarations and to uphold the Subsequent Actions undertaken by Petitioner, including subsequent amendments assertedly made by Petitioner to the Solkomtel Foundation's governing documents.  (Ott Decl. ¶ 24; Ott Ex. J; Motal Decl. ¶¶ 29-30).  Petitioner alleges that the Solkomtel Declarations should be considered invalid on the grounds of deceit and error, and that in all events, he retained the right to undertake the Subsequent Actions, including superseding declarations to undo the Solkomtel Declarations.  (Ott Decl. ¶ 25; Ott Ex. J ¶¶ 122-39; Motal Decl. ¶ 30).  On April 10, 2025, the presiding judge – the same judge then

///

///

---

[12]More specifically, the Liechtenstein court found:  (1) it cannot be established that Petitioner's children emphasized and assured Petitioner at the meetings on July 31, August 1, and/or August 2, 2024, that he would not be deprived of any rights, or that they knowingly (or unknowingly) misrepresented to Petitioner that he would not be deprived of any rights; (2) it cannot be established that Petitioner's children put Petitioner under massive pressure at the meeting on August 2, 2024, and urgently demanded that he sign the statements immediately and without further consultation with his advisors; (3) as far as Petitioner's children are concerned, they appeared credible in principle, as did the witnesses, and the court had no reason to doubt their statements; (4) the view of Petitioner is not supported by the established facts; on the contrary, when signing the statements of August 2, 2024, Petitioner was aware of both the content and the consequences of these statements (amendment of the articles of association, declaration of death, and circular resolution) and they corresponded to his intent and there is therefore neither a significant fundamental error nor fraudulent intent; and (5) Petitioner was described by all witnesses and parties as a strong-willed and assertive person who does not allow resistance and cannot be pressured and there is no evidence to suggest that Petitioner's capacity to make judgments or act was impaired on August 2, 2024.  (Motal Decl. 25; Mortal Ex. A).

handling the TiVi Case[13] – notified the parties that because the Solkomtel Case involved the same legal issues as the T ¶iVi Case, the court essentially intended to stay the Solkomtel Case and afforded the parties an opportunity to address the stay issue.  (Ott Decl. ¶ 26; Ott Ex. K).  Neither Petitioner nor Respondent objected to the stay.  (Motal Decl. ¶ 33; Motal Ex. B).  Petitioner, in responding to one of his son's objection to the stay, argued that a stay was appropriate and in the interest of procedural economy given the overlapping nature of the proceedings.  (Motal Decl. ¶ 33).  On April 29, 2025, the court stayed the Solkomtel Case pending resolution of the related TiVi Case because the two proceedings "essentially address the same legal issues[.]"  (Motal Decl. ¶ 33; Motal Ex. B).  On August 13, 2025, the court issued an amended stay order which apparently remains in effect.  (Ott Decl. ¶¶ 27, 28; Ott Ex. L; Motal Decl. ¶¶ 34, 35; Motal Ex. C).[14]  No hearing is presently scheduled in this case.  (Ott Supp. Decl. ¶ 8).

Apparently Liechtenstein does not have "U.S.-style" discovery procedures.  (Ott Decl. ¶ 41; Ott Supp. Decl. ¶ 7; Molton Supp. Decl. ¶ 34).  Petitioner's counsel attests that in certain circumstances, a party to a civil proceeding in such country can request the disclosure of certain specific types of documents that bind the parties to the dispute (*e.g.*, legal instruments signed by the parties to the dispute) and that Liechtenstein courts do not have procedures available for

---

[13]Such judge has apparently been elevated to a Liechtenstein appellate court and was expected to resign from presiding over matters in the Princely District Court on December 31, 2025.  (Ott Supp. Decl. at 6 n.4).

[14]Such amended stay order essentially reflects:  "The [Solkomtel Case] [would] be stayed until a final decision has been made on the (decisive) facts of the case in [the TiVi Case]."  The main reason for the stay was that both the TiVi Case and the Solkomtel Case "essentially raised the same legal issues."  The facts addressed in the TiVi Case are essentially the same as those in the Solkomtel Case except that the articles of association of the Solkomtel dated June 15, 2023, applicable before August 2, 2024 do not allow for the revocation of the declaration of death (as is the case with the TiVi Foundation).  The stay is appropriate for the purpose of obtaining evidence or a final decision on the facts (relevant to the decision).  (Motal Ex. C).

requesting communications or documents that are believed to exist regarding particular topics or subjects. (Ott Decl. ¶ 41). Respondent's counsel represents that a party's obligation to produce documents in Liechtenstein courts is not so limited and that in "non-contentious proceedings," such as the Solkomtel Case, parties are obligated to cooperate in gathering evidence and the court may compel the disclosure of documents by the parties if it deems such documents indispensable to the proceedings. (Motal Supp. Decl. ¶¶ 32-36). He points to Petitioner's counsel's failure to explain why Petitioner did not seek any documents from Respondent in any proceedings in Liechtenstein. (Motal Supp. Decl. 38-47). However, Petitioner's counsel attests that Liechtenstein courts lack authority to compel persons who reside in the United States – such as Respondent – to produce documents in proceedings pending in Liechtenstein. (Ott Decl. 41; Ott Supp. Decl. ¶ 7). Although Respondent's counsel generally addresses the authority of Liechtenstein courts to compel parties to produce indispensable documents (Motal Supp. Decl. ¶¶ 34-35), he does not specifically address such courts' authority to compel documents (indispensable or otherwise) from parties such as Respondent who reside in the United States and instead focuses on the fact that even though Petitioner did not so request, Respondent voluntarily testified and was subject to cross-examination in at least the TiVi Case and that Petitioner has neither asked Respondent to produce any documents in the related Liechtenstein cases nor requested that the Liechtenstein courts seek documents from Respondent in the related Liechtenstein cases. (Motal Supp. Decl. ¶¶ 41-48).

Liechtenstein courts assertedly are amenable to receiving evidence obtained by parties through Section 1782 petitions, including from the United States, and generally have permissible procedures concerning the introduction of such evidence in civil proceedings. (Ott Decl. ¶¶ 42, 43, 48-50; Ott Ex. Q). Liechtenstein courts generally allow factual submissions and evidence to be

presented at any time during the pendency of a proceeding of first instance in accordance with Liechtenstein procedural rules, but retain discretion to decline evidence submitted late as a result of a party's gross negligence in obtaining the evidence sooner and/or if the submission of new evidence would materially delay the conclusion of the proceeding. (Ott Decl. ¶ 43; Ott Decl. at 13 n.5; Ott Supp. Decl. ¶ 14(e)). Such courts also retain discretion to admit new evidence at any point before the case is decided or a written judgment is entered. (Ott Decl. at 13 n.5; Ott Supp. Decl. ¶¶ 8, 9). Later obtained evidence may also be admitted in support of applications for post-judgment relief (*e.g.*, a motion for retrial or modification of the judgment). (Ott Decl. at 13 n.5). However, Liechtenstein courts prohibit the introduction of certain evidence if it is obtained through unlawful means. (Ott Decl. ¶ 44). Discovery obtained through Section 1782 assertedly would be capable of being admitted for use in the Solkomtel Case. (Ott Decl. ¶¶ 44, 45).

## III.    DISCUSSION

Section 1782 "authorizes, but does not require, federal district courts to assist in the production of evidence for use in a foreign or international tribunal." Khrapunov v. Prosyankin, 931 F.3d 922, 925 (9th Cir. 2019); Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004). It provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . ."[15]  28 U.S.C. § 1782(a).

---

[15]Section 1782(a) states:

(a)  The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct

(continued...)

"Section 1782's statutory language has been distilled to permit district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" <u>Khrapunov</u>, 931 F.3d at 925 (citations omitted); <u>In re Dubey</u>, 949 F. Supp. 2d 990, 992 (C.D. Cal. 2013).

It is clear that the Petition satisfies the first and third requirements, and Respondent does not argue otherwise. It is undisputed that Respondent resides or is found in this judicial district. (<u>See</u> Ott Decl. ¶¶ 7-8). Moreover, Petitioner, who is a party to the Solkomtel Case, qualifies as an interested person. <u>See</u> <u>Intel Corp.</u>, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782[.]" (citation omitted)); <u>Akebia Therapeutics, Inc. v. FibroGen, Inc.</u>, 793 F.3d 1108, 1110-11 (9th Cir. 2015) ("Akebia is a party to the foreign proceedings underlying this case. . . . Accordingly, Akebia has a 'reasonable interest' in obtaining judicial assistance and, therefore, may apply for judicial assistance pursuant to § 1782.");

---

[15](...continued)
that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. [¶] A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

In re Application Pursuant to 28 U.S.C. § 1782 of Japan Display, Inc., 2021 WL 4391882, *3 (C.D. Cal. 2021) ("Petitioner qualifies as an 'interested party' in the foreign proceedings because it is a plaintiff in those proceedings.").

However, the parties dispute whether the Petition satisfies the second general requirement – that the requested discovery is "for use in a proceeding in a foreign or international tribunal[.]"  28 U.S.C. § 1782(a).  Petitioner contends that the requested discovery satisfies the "for use" requirement because the Proposed Subpoena calls for the production of items he intends to use/attempt to use in the Solkomtel Case once the stay is lifted.  (Petition at 22)  Respondent counters that the items sought cannot be "for use" in the stayed Solkomtel Case because the "central" issue identified by Petitioner – whether there was a "scheme" to oust him from the Foundations – already has been decided against Petitioner by the Liechtenstein court in the TiVi Case which was recently affirmed on appeal, and because the court in the Solkomtel Case assertedly informed the parties that it would apply the factual findings from the TiVi Case once the stay is lifted since both proceedings center on the alleged scheme.[16]  Petitioner disputes Respondent's assertion that the court in the Solkomtel Case indicated it would apply the factual findings in the TiVi Case and responds that the proceedings in the Solkomtel Case are in an early stage and that Petitioner retains the ability to seek to introduce evidence obtained from the Proposed Subpoena in the Solkomtel Case once the stay is lifted.  While the Court thinks it unlikely that the court in the Solkomtel Case will make factual or legal determinations inconsistent with those made in the

---

[16]Respondent appears to infer from the language of the stay order/amended stay order that the court in the Solkomtel Case would apply the factual findings in the TiVi Case but the stay order/amended stay order do not expressly so state.  See supra note 14 and accompanying text.  Respondent's inference may well be a fair one, but absent an express statement to that effect in the stay order/amended stay order, the Magistrate Judge declines to read such orders so broadly.

TiVi Case, it cannot conclude that the court in such case would be unwilling to consider additional relevant evidence before rendering a final decision once the stay is lifted or that it would necessarily prohibit Petitioner from attempting to introduce newly obtained relevant evidence.[17]

Having said that, the Court is not persuaded that all of the documents called for by the Proposed Subpoena are relevant to and properly "for use" in the Solkomtel Case.  See Mees v. Buiter, 793 F.3d 291, 299 (2d Cir. 2015) (A "request that fails to show that the materials sought will be of any use in the foreign proceeding would not satisfy the 'for use' requirement.").  As indicated above, the Petition was originally predicated on three Liechtenstein cases – not just the Solkomtel Case.  While the relevance of some of the items sought is apparent, Petitioner does little to nothing to explain his theory of relevance for other items so as to establish they are properly "for use" in the Solkomtel Case. Accordingly, at least for that reason, it would be appropriate to significantly narrow the Proposed Subpoena to call for the following documents created between June 1, 2024 and the present:  Non-privileged documents/ communications concerning (a) the Solkomtel Declarations executed by Petitioner on August 2, 2024; (b) Petitioner's role in connection with the Solkomtel Foundation; and (c) changes or potential changes to the statutes, bylaws, or other governing documents of the Solkomtel Foundation effecting Petitioner's direct or indirect ownership/control thereof.

Petitioner thus appears to have satisfied the three general requirements for a Section 1782 Order authorizing the issuance of a significantly narrowed subpoena calling for the production of the foregoing items with respect to the narrowed

---

[17]See In re Multiflora Int'l Ltd., 2021 WL 2662122, *3 (N.D. Cal. 2021) ("In reviewing section 1782 applications, courts should 'generally refrain' from determining whether the requested discovery will be admissible in the foreign proceeding.") (citations omitted).

categories above.  But "even where an applicant satisfies § 1782's statutory prerequisites, the district court still retains substantial discretion to permit or deny the requested discovery."  Khrapunov, 931 F.3d at 926.

> The § 1782 discretionary factors include, primarily, [1] whether "the person from whom discovery is sought is a participant in the foreign proceeding"; [2] "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; [3] whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and [4] whether the request is "unduly intrusive or burdensome."

In re Premises Located at 840 140th Ave. NE, Bellevue, Wash., 634 F.3d 557, 571 (9th Cir. 2011) (quoting Intel Corp., 542 U.S. at 264-65).  The Court's "discretion is guided by the twin aims of section 1782:  providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts."  In re Medical Inc. Ass'n Smile Create, 547 F. Supp. 3d 894, 897 (N.D. Cal. 2021); Sampedro v. Silver Point Cap., L.P., 958 F.3d 140, 143 (2d Cir. 2020).

The evidence in the record bearing on the first discretionary factor is mixed, and the Court views it to be neutral.  Respondent is a party to the Solkomtel Case – something that generally weighs against granting the Petition.  Indeed, as indicated above, Respondent already testified in the related TiVi Case and, given the "non-contentious" nature of the Solkomtel Case, apparently has an obligation to provide complete and truthful testimony in all matters known to her, to provide or offer any evidence that could be relevant for the court's decision, to cooperate in gathering evidence, and – perhaps but for her status as a United States resident –

17

could be compelled to produce "indispensable" documents. Petitioner has not sought to obtain any of the requested documents through the Liechtenstein courts which, again, apparently have the authority to compel parties to produce at least indispensable documents, albeit not necessarily from parties who reside in the United States. See Intel Corp., 542 U.S. at 264 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding. . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." (citations omitted)). However, as Petitioner notes, Respondent is a United States resident and Respondent has not rebutted Petitioner's contention that, notwithstanding Petitioner's lack of effort and Respondent's cooperation to date, the Liechtenstein court ultimately lacks authority to order her to produce the requested documents.

The evidence in the record on the second discretionary factor is also mixed and again neutral. The second factor "focuses on whether the foreign tribunal is willing to consider the information sought." In re Medical Inc. Ass'n Smile Create, 547 F. Supp. 3d at 898 (citation and internal quotation marks omitted); see also Pott v. Icicle Seafoods, Inc., 945 F. Supp. 2d 1197, 1200 (W.D. Wash. 2013) ("Intel factor two directs courts to consider the nature of the foreign proceeding and the receptivity of the foreign tribunal to the evidence sought."). As Respondent argues there is significant overlap between the legal and factual issues involved in the TiVi Case and the Solkomtel Case and the substance of the stay/amended stay order in the Solkomtel case suggest that the court in the Solkomtel case may well be predisposed against considering new evidence on

such overlapping issues that have already had the benefit of evidentiary proceedings. Having said that, the record does not reflect that such court would necessarily wholly adopt the factual findings in the TiVi Case or be entirely unwilling to consider new relevant evidence in assessing the matter before it and, as Petitioner's counsel attests, such courts are generally receptive to consider evidence acquired through Section 1782 requests. <u>See</u> <u>In re Medical Inc. Ass'n Smile Create</u>, 547 F. Supp. 3d at 898-99 ("In the absence of evidence that Japanese courts would object to Applicant's discovery of the information sought in the subpoena, or that Japanese courts object more generally to the judicial assistance of U.S. federal courts, the Court finds that [the second] factor weighs in favor of authorizing service of the subpoena"); <u>In re Tagami</u>, 2021 WL 5322711, *3 (N.D. Cal. 2021) ("Where there is no evidence suggesting that foreign courts would be unreceptive to the requested discovery, the second discretionary factor weighs in favor of the application."); <u>In re Pioneer Corp. v. Technicolor, Inc.</u>, 2018 WL 4961911, *5 (C.D. Cal. 2018) ("'When the parties do not produce evidence showing that a foreign court would reject evidence obtained under Section 1782, courts tend to allow discovery.'" (citation omitted)).

The evidence in the record on the third factor is also mixed but tends to weigh against granting the Petition. The third factor focuses on whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Here, Respondent essentially argues that given the stayed status of the Solkomtel Case, it is inappropriate to seek discovery by way of the Petition and that doing so, is effectively circumventing the stay order. <u>See</u> <u>In re King.com Ltd.</u>, 2016 WL 4364286, at *8 (N.D. Cal. 2016) (finding Section 1782 application constituted effort to circumvent foreign court stay order). This argument is persuasive and Petitioner's response – <u>see</u> Reply at 10 n.6 (pointing to the fact that the stay in this

case is not indefinite unlike that in the <u>In re King.com.Ltd</u>. case) – does little to rebut it.  Respondent further argues that the Petition is effectively side-stepping the Liechtenstein discovery procedures that do exist, pointing to Petitioner's failure to make any efforts to seek discovery from Respondent in such country in the related Liechtenstein proceedings.  While somewhat persuasive, Petitioner correctly notes that Section 1782 does not require that an applicant seek discovery from the foreign court before invoking its provisions.

The evidence in the record on the fourth factor – which considers whether the requested discovery is "unduly intrusive or burdensome" – is also mixed, but given this Court's narrowing of the Proposed Subpoena described above, the absence of a declaration from Respondent herself attesting to any burden, and the retained ability of Respondent to raise undue burden concerns at a later juncture, this factor does not weigh against granting the Petition.  <u>See</u> <u>Mees v. Buiter,</u> 793 F.3d 291, 302 (2d Cir. 2015) (A "district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure.").  "[U]nduly intrusive or burdensome requests may be rejected or trimmed."  <u>Intel</u>, 542 U.S. at 265.

After considering all of the foregoing factors, and in light of the record in this case, this Court concludes that the Petition should be granted to the extent consistent with the above, and otherwise denied.

## IV.    RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge issue an Order approving and accepting this Report and Recommendation and granting the Petition in part and denying the Petition in part as detailed below:

1.    The Court should grant the Petition to the extent it (a) seeks authorization for Petitioner to issue a substantially narrowed version of the

Proposed Subpoena in accordance with Rule 45 of the Federal Rules of Civil Procedure that calls for the production of the following documents created between June 1, 2024 and the present:  Non-privileged documents/ communications concerning (i) the Solkomtel Declaration executed by Petitioner on August 2, 2024; (ii) Petitioner's role in connection with the Solkomtel Foundation; and (iii) changes or potential changes to the statutes, bylaws, or other governing documents of the Solkomtel Foundation effecting Petitioner's direct or indirect ownership/control thereof; (b) seeks an order directing Respondent to comply with Rule 45 in responding to the Subpoena (which would allow Respondent to, for example, interpose any appropriate privilege/burden-related objections); and (c) seeks an order retaining jurisdiction over this case to resolve any disputes relating to the narrowed version of the Proposed Subpoena that has been authorized.

    2.    The Court should otherwise deny the Petition.[18]

DATED:   January 31, 2026

_____
                /s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

_____

[18]As indicated above, the Petition seeks a preservation order, though the parties do not really focus/present arguments regarding the same.  For purposes of analysis, the Court assumes without deciding that courts have authority to issue preservation orders under Section 1782.  In determining whether to issue a preservation order, courts undertake to balance at least three factors:  (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in the absence of an order directing preservation; (2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation; and (3) the capability of the party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.  Capricorn Power Co. v. Siemens Westinghouse Power Corp., 220 F.R.D. 429, 432-33 (W.D. Pa. 2004).  Here, after balancing the factors referenced above to the extent there is evidence in the record regarding the same, the Court is not persuaded that Petitioner has made a sufficient showing to merit the entry of a preservation order.