Gary S. Lincenberg (SBN 123058)
    glincenberg@birdmarella.com
William E. Johnston, (SBN 287707)
    wjohnston@birdmarella.com
BIRD, MARELLA, RHOW, LINCENBERG,
DROOKS, & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Martin Weinstein (Admitted *Pro Hac Vice*)
    Martin.weinstein@cwt.com
Hyungjoo Han (Admitted *Pro Hac Vice*)
    Hyungjoo.Han@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
1919 Pennsylvania Ave NW
Washington, D.C. 20006
Telephone: (202) 862-2200

Gina M. Castellano (*Pro Hac Vice* Pending)
    Gina.Castellano@cwt.com
CADWALADER, WICKERSHAM & TAFT LLP
200 Liberty Street
New York, NY 10281
Telephone: (212) 504-6000

*Attorneys for Respondent*
ALEKSANDRA ZAK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF ZYGMUNT SOLORZ FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Misc. Action No.: 2:25-mc-112<br><br>Hon. Jacqueline Chooljian<br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**RESPONDENT'S OBJECTIONS TO REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE [DKT. 36]** |

# **TABLE OF CONTENTS**

**INTRODUCTION** ...................................................................................................... 1

**RELEVANT BACKGROUND** ................................................................................. 4

**I.**      **The Parties and Relevant Entities** ............................................................... 4

**II.**     **The Liechtenstein Proceedings** .................................................................. 5

**PROCEDURAL HISTORY** ..................................................................................... 9

**LEGAL STANDARD** ............................................................................................. 11

**ARGUMENT** ........................................................................................................... 12

**I.**      **The R&R Erroneously Found That the Application Satisfies the "For Use" Statutory Requirement under 28 U.S.C. § 1782** ............................... 12

**II.**     **The R&R's Findings Regarding the *Intel* Factors Were Erroneous.** ...... 15

       **A.**      **The First *Intel* Factor Weighs Against Granting the Application.** ....................................................................................... 15

       **B.**      **The Second *Intel* Factor Weighs Against Granting the Application.** ....................................................................................... 18

       **C.**      **The Fourth *Intel* Factor Weighs Against Granting the Application.** ....................................................................................... 20

**CONCLUSION** ........................................................................................................ 22

-i-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akimoto v. Apple Inc.*,
    No. 22-mc-800 DMR, 2022 WL 1157496 (N.D. Cal. Apr. 19,
    2022) ................................................................................................................ 21

*Baxalta Inc. v Genentech, Inc.*,
    No. 16-mc-EDL, 2016 WL 11529803 (N.D. Cal. Aug. 9, 2016) ................. 4, 22

*In re BonSens.org*,
    95 F.4th 75 (2d Cir. 2024) ............................................................................. 15

*In re China Petrochemical Dev. Corp.*,
    No. 3:17-cv-02138 (SRU), 2018 WL 1320665 (D. Conn. Mar. 14,
    2018) ............................................................................................................... 13

*Daedalus Prime LLC v. MediaTek USA Inc.*,
    No. 24-MC-80208-VKD, 2024 WL 4220000 (N.D. Cal. Sept. 16,
    2024) ............................................................................................................... 17

*financialright GmbH v. Robert Bosch LLC*,
    294 F. Supp. 3d 721 (E.D. Mich. 2018) ......................................................... 15

*In re Food Delivery Holding 12 S.A.R.L.*,
    No. 2:21-mc-0137 JFW, 2021 WL 1964486 (C.D. Cal. May 17,
    2021) ............................................................................................................... 11

*In re Hedrick House Ltd.*,
    No. SA MC 20-00005-DOC (DMF), 2020 WL 3965999 (C.D. Cal.
    Mar. 31, 2020) ................................................................................................ 12

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ................................................................................ *passim*

*Khrapunov v. Prosyankin*,
    931 F.3d 922 (9th Cir 2019) ........................................................................... 11

*In re Kivisto*,
    521 F. App'x 886 (11th Cir. 2013) ................................................................. 18

-ii-

*Med. Inc. Ass'n Smile Create*,
   547 F. Supp. 3d 894 (N.D. Cal. 2021) ................................................. 4, 15, 18, 19

*In re Application Pursuant to 28 U.S.C. §1782 of Michael Page do*
   *Brasil Ltda.*, No. CV 17-4269 (KM), 2018 WL 7018716 (D.N.J.
   Jan. 19, 2018), *report and recommendation adopted sub nom. In re*
   *Application for Discovery for Use in Foreign Proceeding Pursuant*
   *to 28 U.S.C. § 1782*, No. CV 17-4269-KM-JBC, 2019 WL 168828
   (D.N.J. Jan. 10, 2019) ........................................................................... 17

*In re Microsoft Corp.*,
   No. C 06-80038 JF (PVT), 2006 WL 825250 (N.D. Cal. Mar. 29,
   2006) ....................................................................................................... 19

*In re Oh*,
   No. 22-MC-1649-DMS-DDL, 2023 WL 2890155 (S.D. Cal. Apr.
   11, 2023), *report and recommendation adopted*, No. 22-MC-1649,
   2023 WL 4047588 (S.D. Cal. Apr. 28, 2023) ........................................ 11

*In re Pioneer for an Ord. Permitting Issuance of Subpoenas to Take*
   *Discovery in a Foreign Proceeding*,
   No. MC 18-0037 UA (SS), 2018 WL 2146412 (C.D. Cal. May 9,
   2018) ....................................................................................................... 13

*In re Ex Parte Application of Qualcomm Inc.*,
   162 F. Supp. 3d 1029 (N.D. Cal. 2016) ............................................. 21, 22

*Qualcomm, Inc.*,
   No. 18-mc-80134-NC, 2018 WL 6660068 (N.D. Cal. Dec. 19,
   2018) ....................................................................................................... 12

**Statutes**

28 U.S.C. § 636 ............................................................................................. 11

28 U.S.C. § 636(b)(1) .................................................................................... 11

28 U.S.C. § 1782 ......................................................................................... 1, 11

**Other Authorities**

Fed. R. Civ. P. 72(b) ...................................................................................... 11

-iii-

Respondent Aleksandra Żak ("Ms. Żak") respectfully submits this objection to the Report and Recommendation of United States Magistrate Judge (Dkt. 36 ("R&R")) on the *Ex Parte* Application and Petition of Zygmunt Solorz ("Petitioner") for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 ("Application"). Ms. Żak requests that the Court enter an order declining to adopt the R&R in so far as it recommends granting the Application in part and, instead, enter an order denying the Application in its entirety.

## <u>INTRODUCTION</u>

This Application presents an attempt by Petitioner to use Section 1782 to circumvent proof-gathering restrictions imposed by a foreign tribunal that stayed the relevant foreign proceeding after the decisive facts were adjudicated against Petitioner in a related case. The Application should be denied in its entirety.

On February 3, 2026, the Magistrate Judge issued the R&R granting in part and denying in part Petitioner's Application and recommending that Petitioner be permitted to issue a purportedly "substantially narrowed version of the Proposed Subpoena" for documents and communications concerning: (i) "the Solkomtel Declaration executed by Petitioner on August 2, 2024"; (ii) "Petitioner's role in connection with the Solkomtel Foundation"; and (iii) "changes or potential changes to the statutes, bylaws, or other governing documents of the Solkomtel Foundation effecting Petitioner's direct or indirect ownership/control thereof" for the period from June 1, 2024 to the present. R&R at 21. The R&R is in sharp contrast to the basic objective of Section 1782: "to assist foreign tribunals in obtaining relevant information that *the tribunals may find useful* but . . . *they cannot obtain under their own laws*." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004) (emphasis added).

-1-

The R&R erred in finding that the Application satisfies the core requirement under Section 1782 that the requested discovery is "for use" in the Solkomtel proceeding. The R&R based its findings on a determination that the Liechtenstein court's stay orders do not expressly state that it "would be unwilling to consider additional relevant evidence before rendering a final decision . . . or that it would necessarily prohibit Petitioner from attempting to introduce newly obtained relevant evidence." Dkt. 36 at 16. The R&R's reasoning fundamentally misconstrues the clear text and intent of the Liechtenstein court's stay orders.

Two courts in Liechtenstein already considered and rejected Petitioner's allegations of a "scheme" by Petitioner's children, including Ms. Żak, to "oust him from the business empire that he built" in connection with certain events that occurred on August 2, 2024, which Petitioner claims are "central" to his Application. In a 102-page decision, the trial court in Liechtenstein found that such a "scheme" as alleged by Petitioner "is not supported by the established facts." Dkt. 22-2 at 93. In connection with its decision in favor of Petitioner's children, the trial court stayed the Solkomtel proceeding "until a final decision has been made on the (decisive) facts of the case" in the related TiVi proceeding because both proceedings "are essentially the same." Dkt. 22-4 at 1, 3. On December 18, 2025, the appeal court in the TiVi proceeding issued a decision fully affirming the trial court's decision in favor of Petitioner's children, putting to bed Petitioner's allegations of a "scheme" once and for all. Accordingly, when the stay is lifted, the Liechtenstein court in the Solkomtel proceeding will apply the "evidence" and the "final decision on the (decisive) facts" from the TiVi proceeding to the Solkomtel proceeding. Dkt. 34-1 ¶ 60. Thus, the Application cannot satisfy the "for use" requirement under Section 1782.

RESPONDENT'S OBJECTIONS TO REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

The R&R also erred with respect to its findings regarding the first, second, and fourth *Intel* factors. The R&R erroneously found that the first factor is "neutral" because, even though it is undisputed that Ms. Żak is a party to the Solkomtel proceeding, the Liechtenstein court supposedly "lacks authority to order her to produce the requested documents." R&R at 18. The R&R's finding is directly refuted by evidence in the record clearly establishing that, as a party to the Solkomtel proceeding, Ms. Żak has an obligation to produce documents, and the Liechtenstein court has the ability to compel Ms. Żak to produce such documents in connection with the proceeding. Petitioner does not identify any specific and relevant evidence that he seeks from Ms. Żak pursuant to Section 1782 that he would not otherwise be able to obtain in Liechtenstein. In fact, Petitioner has not made any attempt to seek discovery from Ms. Żak in Liechtenstein in connection with any of the legal proceedings that he brought. Petitioner's attempt to utilize Section 1782 to obtain discovery from Ms. Żak while the Solkomtel proceeding is currently stayed constitutes an attempt to harass Ms. Żak and to circumvent foreign evidence-gathering restrictions.

By misconstruing the plain text and intent of the Liechtenstein court's stay orders in the Solkomtel proceeding, the R&R also erred in finding that the second factor is "neutral." As previously mentioned, the Liechtenstein court stayed the Solkomtel proceeding "until a final decision has been made on the (decisive) facts of the case." Dkt. 22-4 at 2. The R&R suggests that because Liechtenstein courts "are generally receptive to consider evidence acquired through Section 1782 requests," it would be willing "to consider new relevant evidence" when the stay is lifted in the Solkomtel proceeding. R&R at 19. But the mere fact that a foreign court is generally open to Section 1782 requests does not mean that the court will be receptive to Section 1782 discovery in the Solkomtel proceeding, particularly when the court stayed the Solkomtel proceeding in express contemplation of

-3-

applying its factual findings from the TiVi proceeding.  *See Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d 894, 898 (N.D. Cal. 2021).

As to the fourth factor, the R&R erred in finding that based on the purported "narrowing of the Proposed Subpoena . . . this factor does not weigh against granting the [Application]."  R&R at 20.  Even under the purported "narrowed" version of the Proposed Subpoena, the breadth of documents subject to Petitioner's discovery requests remains overly broad, potentially covering any document that remotely pertains to the Solkomtel Foundation even though it is unrelated to the Solkomtel proceeding or Petitioner's allegations, and would require Ms. Żak to produce documents from well over a year *after* the "central" events that occurred on August 2, 2024.  Because the scope of discovery that Petitioner seeks to obtain from Ms. Żak, even under the modifications proposed in the R&R, is "far from narrowly tailored" and broadly seeks information unrelated to the Solkomtel proceeding, the fourth factor weighs against granting the Application.  *Baxalta Inc. v Genentech, Inc.*, No. 16-mc-EDL, 2016 WL 11529803, at *8 (N.D. Cal. Aug. 9, 2016).

For these reasons, Ms. Żak seeks a *de novo* review of the portions of the R&R granting in part Petitioner's Application, and respectfully requests that the Court enter an order denying the Application in its entirety.

## **RELEVANT BACKGROUND**

## I.    **The Parties and Relevant Entities**

Petitioner is a Polish businessman and one of the wealthiest people in Europe.  Declaration of Simon Ott Esq. (Dkt. 3 ("Ott Decl.")) ¶ 6.  Petitioner has three adult children, including Ms. Żak (the "Children").  Declaration of Bernhard Motal (Dkt. 22-1 ("Motal Decl.")) ¶ 8; Ott Decl. ¶ 7.

In 2012 and 2013, Petitioner contributed a significant portion of his businesses and other assets to two Liechtenstein foundations: the TiVi Foundation

-4-

and the Solkomtel Foundation (the "Foundations").   Motal Decl. ¶ 9; Ott Decl.
¶ 6.   Petitioner established the Foundations as part of his long-term succession
plan to secure the position of the Children and their descendants, and to ensure
continued operation of the businesses held by the Foundations.   Motal Decl. ¶ 12.
It was Petitioner's express will and wish for the Children to gradually assume
responsibility and control within the companies held by the Foundations and
become the beneficiaries of the Foundations' assets upon Petitioner's passing or
incapacitation.   *Id.* ¶¶ 12–13.   The Foundations are managed and represented by
their respective foundation council, which is the executive body responsible for
ensuring that the foundation fulfills its purpose (the "Board").   *Id.* ¶ 11.   Ms. Żak
has never served on the Board of either Foundation.   *Id.* ¶ 14.

On August 2, 2024, Petitioner executed a set of documents pertaining to his
legal succession in the presence of a notary public, including a will and six
declarations concerning the Foundations (the "Declarations").   *Id.* ¶ 15.   Three of
the Declarations pertain to the TiVi Foundation (the "TiVi Declarations") and the
other three pertain to the Solkomtel Foundation (the "Solkomtel Declarations").
By signing the Declarations, Petitioner waived his right, as founder, to amend the
statutes and bylaws of the Foundations.   *Id.* ¶ 16.   Signing the Declarations also
triggered the succession mechanism provided for in the Foundations' statutes,
which authorizes the Children to appoint or dismiss members of the Board for
each of the Foundations.   *Id.*

## II.    The Liechtenstein Proceedings

Shortly after signing the Declarations, Petitioner sought to invalidate them,
including by commencing numerous legal proceedings against the Foundations,
their Board members, and the Children.   *Id.* ¶ 19.   Four legal proceedings in
Liechtenstein brought by Petitioner are relevant to the Application: (i) a
proceeding challenging the TiVi Declarations (the "TiVi Proceeding"); (ii) a

-5-

proceeding challenging the Solkomtel Declarations (the "Solkomtel Proceeding");
(iii) an application to remove Jarosław Grzesiak from the TiVi Foundation Board
(the "Grzesiak Removal Application"); and (iv) a proceeding challenging the TiVi
Foundation Board resolutions removing Petitioner from the supervisory boards of
four companies (the "Resolution Challenge Proceeding" and, collectively, the
"Liechtenstein Proceedings"). *Id.* ¶¶ 3, 19.

The TiVi Proceeding is an action brought by Petitioner on August 26, 2024,
against the TiVi Foundation and the Children seeking to challenge the validity of
the TiVi Declarations on the alleged grounds that Petitioner was misled by the
Children regarding the terms of the TiVi Declarations and was unduly pressured to
sign them on August 2, 2024. *Id.* ¶ 21. Ms. Żak submitted a written declaration
and testified in court in the TiVi Proceeding. *Id.* ¶ 22; Ott Decl., Ex. A (Dkt. 3-1).

Three days after commencing the TiVi Proceeding, on August 29, 2024,
Petitioner initiated the Solkomtel Proceeding against the Solkomtel Foundation
and the Children, which challenges the validity and enforceability of the
Solkomtel Declarations that Petitioner signed on August 2, 2024—at the same
time and under the same circumstances as the TiVi Declarations. Petitioner
sought to invalidate the Solkomtel Declarations for the same reasons that he
sought to invalidate the TiVi Declarations: Petitioner alleges that he was deceived
and unduly pressured by the Children into signing the Solkomtel Declarations. *Id.*
¶ 30. On April 29, 2025, the court issued an order staying the Solkomtel
Proceeding "until the final conclusion" of the TiVi Proceeding because the two
Proceedings "essentially address the same legal issues." Motal Decl., Ex. B (Dkt.
22-3) at 5. Petitioner did not object to the stay order and, instead, agreed that a
stay of the Solkomtel Proceeding was appropriate. Motal Decl. ¶ 33.

On May 21, 2025, while the court's stay order was in effect in the
Solkomtel Proceeding, the court in the TiVi Proceeding issued a 102-page written

-6-

decision in favor of the Children and the TiVi Foundation, finding that there was no fraud or mistake in Petitioner's signing of the TiVi Declarations, rendering them valid and enforceable. *Id.* ¶¶ 23–24; *see* Motal Decl., Ex. A (Dkt. 22-2). The court found that Petitioner "was aware of the content of the provisions of the [TiVi Declarations], . . . was aware of the content and consequences of these statements, and the statement also corresponded to his intent," which Petitioner had set into motion long before August 2, 2024. *Id.* at 63. According to the court, Petitioner "was described by all witnesses and parties as a strong-willed and assertive person who does not allow resistance and cannot be pressured, and there is *no evidence to suggest that [Petitioner's] capacity to make judgment or act was impaired on August 2, 2024.*" *Id.* at 89 (emphasis added).

In so holding, the court rejected Petitioner's claim that there was a scheme by the Children to remove Petitioner from the TiVi Foundation. Motal Decl. ¶ 26. Specifically, the court found that "[i]t cannot be established that the [Children] emphasized and assured the [Petitioner] at the meetings on July 31, August 1, and/or August 2, 2024, that he would not be deprived of any rights, or that they knowingly (or unknowingly) misrepresented to the [Petitioner] that he would not be deprived of any rights." Motal Decl., Ex. A at 63. The court also found that "[i]t cannot be established that [the Children] put [Petitioner] under massive pressure at the meeting on August 2, 2024, and urgently demanded that he sign the statements immediately and without further consultation with his advisors." *Id.* at 64. Notably, the court found it was "inconceivable that [Petitioner] should not have been familiar with the (incidentally not very extensive) [Declarations] of his 'life's work' (as generally claimed), or that he should have been misled in this regard or signed something that did not correspond to his will." *Id.* at 89. Petitioner subsequently filed an appeal of the trial court's decision in the TiVi Proceeding. Motal Decl. ¶ 27.

-7-

On August 13, 2025, while the appeal of the TiVi Proceeding was pending, the court issued an amended stay order directing that the Solkomtel Proceeding "will be *stayed* until a ***final decision*** has been made on the ***(decisive) facts of the case***" in the TiVi Proceeding.  Motal Decl., Ex. C (Dkt. 22-4) at 2 (emphasis added).  As the court explained, "***the facts addressed in parallel proceedings*** 06 HG.2024.210 concerning the TiVi Foundation [*i.e.*, the TiVi Proceeding] are ***essentially the same as those in the present case***" and, therefore, a stay of the Solkomtel Proceeding "*is appropriate for the purpose of obtaining evidence or a final decision on the facts (relevant to the decision)*."  *Id.* at 3–4 (emphasis added).  While the court acknowledged that there may be certain differences between the Foundations' respective articles of association, such legal issues would not affect the "fundamental facts of the case [that] have been clarified" after a final decision in the TiVi Proceeding.  *Id.* at 3.  Pursuant to the Liechtenstein court's stay orders, the Solkomtel Proceeding presently is stayed and there is no evidence taking at this time.  *Id.* ¶ 35.

On December 18, 2025, the appeal court in the TiVi Proceeding issued a decision, fully affirming the trial court's decision in favor of the Children and the TiVi Foundation, and effectively foreclosing Petitioner's efforts to continue relitigating his allegations of a "scheme" by the Children to oust him from the Foundations.  Supplemental Declaration of Bernhard Motal Esq. (Dkt. 34-1 ("Motal Supp. Decl.")) ¶ 61.

The Application initially sought discovery in connection with two other Liechtenstein Proceedings.  The Resolution Challenge Proceeding against the TiVi Foundation and its Board members, filed on August 1, 2025, sought to invalidate the Board's July 21, 2025 resolutions removing Petitioner from the supervisory board of four companies held by the TiVi Foundation after Petitioner sought to siphon assets from those companies to other entities controlled by Petitioner.

-8-

Motal Decl. ¶¶ 46–47.  The Grzesiak Removal Application, which was filed on October 13, 2025, sought to remove Mr. Grzesiak, Petitioner's longtime friend, from the TiVi Foundation Board.  *Id.* ¶ 36.  Oral hearings for both proceedings were scheduled to be held concurrently on December 3 and 4, 2025.  *Id.* ¶¶ 45, 51. The court, however, never held the hearings because Petitioner abruptly withdrew both of the proceedings approximately one month after Petitioner filed this Application and before the parties had an opportunity to present evidence in court.

On December 2, 2025, Petitioner withdrew the Resolution Challenge Proceeding after the TiVi Foundation filed with the court an audit report (the "Audit Report") detailing evidence of Petitioner's improper attempts to siphon corporate assets and divert those assets for his personal benefit.  Motal Supp. Decl. ¶¶ 18–26.  Three days later, on December 5, 2025, Petitioner withdrew the Grzesiak Removal Application because the Audit Report contradicted certain representations that Petitioner had previously made in his November 26, 2025 submission to the court.  *Id.* ¶¶ 13, 19.  Because Petitioner has withdrawn the Resolution Challenge Proceeding and the Grzesiak Removal Application, these two proceedings cannot support Petitioner's Application for discovery.

## **PROCEDURAL HISTORY**

On October 29, 2025, Petitioner filed the Application requesting discovery for use in foreign proceedings pursuant to Section 1782.  Dkt. 1.  On November 26, 2025, Ms. Żak filed a Memorandum of Points and Authorities in Opposition to Petitioner's Application (the "Opposition").  Dkt. 22.  On December 12, 2025, Petitioner filed a Reply in Support of Petitioner's Application.  Dkt. 26.  With leave from the Court, on January 26, 2026, Ms. Żak filed a Sur-Reply in Opposition to Petitioner's Application (the "Surreply").  Dkt. 24.  On January 31, 2026, the Magistrate Judge issued the R&R, recommending that Petitioner's Application be granted in part and denied in part.  Dkt. 26.

-9-

RESPONDENT'S OBJECTIONS TO REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

As relevant here, the R&R recommends that the Court "authorize Petitioner to issue a substantially narrowed version of the Proposed Subpoena in accordance with Rule 45 of the Federal Rules of Civil Procedure." *Id.* at 3.    The "substantially narrowed version of the Proposed Subpoena" (the "Modified Subpoena") suggested by the R&R calls for the production of non-privileged documents and communications created between June 1, 2024 and the present concerning:

    1)    "the Solkomtel Declarations executed by Petitioner on August 2, 2024";

    2)    "Petitioner's role in connection with the Solkomtel Foundation"; and

    3)    "changes or potential changes to the statutes, bylaws, or other governing documents of the Solkomtel Foundation effecting Petitioner's direct or indirect ownership/control thereof."

*Id.* at 16.

    In recommending that the Court authorize Petitioner to issue the Modified Subpoena, the R&R found that Petitioner satisfied the three statutory factors set forth under Section 1782 and declined to exercise discretion to deny the Application based on the four *Intel* factors.  Specifically, the R&R found that the Application met the "for use" statutory factor because, even though it was "unlikely that the court in the Solkomtel Case will make factual or legal determinations inconsistent with those made in the TiVi Case, it cannot conclude that the court in such case would be unwilling to consider additional relevant evidence before rendering a final decision once the stay is lifted or that it would necessarily prohibit Petitioner from attempting to introduce newly obtained relevant evidence."  R&R at 15–16.

    As to the discretionary factors, the R&R found that the evidence in the record bearing on the first, second, and fourth discretionary factors was mixed,

-10-

1    and therefore took the view that the first and fourth factors were neutral—

2    weighing in favor of neither party—whereas the fourth factor "does not weigh

3    against granting the Petition" in consideration of the Modified Subpoena.  *Id*. at

4    17–18, 20.  With respect to the third discretionary factor, the R&R concluded that

5    the evidence was again mixed, but tended to weigh *against* granting the

6    Application.  *Id*. at 19–20.  Nonetheless, the R&R declined to deny the

7    Application under the *Intel* factors.  *Id*. at 20.

8    <u>**LEGAL STANDARD**</u>

9         The R&R is subject to *de novo* review under 28 U.S.C. § 636, Fed. R. Civ.

10   P. 72(b), and General Order 05-07 of the United States District Court for the

11   Central District of California.  *See, e.g.*, *In re Food Delivery Holding 12 S.A.R.L.*,

12   No. 2:21-mc-0137 JFW (PVCx), 2021 WL 1964486, at *1 (C.D. Cal. May 17,

13   2021).  Thus, "the court shall make a *de novo* determination of those portions of

14   the report or specified proposed findings or recommendations to which objection

15   is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b).

16        A district court is authorized to order discovery under 28 U.S.C. § 1782

17   only if three statutory requirements are satisfied: "(1) the person from whom the

18   discovery is sought 'resides or is found' in the district of the district court where

19   the application is made; (2) the discovery is 'for use in a proceeding in a foreign or

20   international tribunal'; and (3) the application is made by a foreign or international

21   tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925

22   (9th Cir. 2019).  "The party seeking the discovery bears the burden of establishing

23   that the statutory requirements are met." *In re Oh*, No. 22-MC-1649-DMS-DDL,

24   2023 WL 2890155, at *1 (S.D. Cal. Apr. 11, 2023), *report and recommendation*

25   *adopted*, No. 22-MC-1649, 2023 WL 4047588 (S.D. Cal. Apr. 28, 2023).

26        Even if the statutory requirements are met, the court can deny an application

27   for discovery under Section 1782.  *Intel Corp.*, 542 U.S. at 264.  As the Supreme

28   -11-

Court "caution[ed], . . . § 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance." *Id.* at 247. In exercising its discretion, the district court may consider a wide range of factors, including: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery request is "unduly intrusive or burdensome." *Id.* at 264–65. "A request should be denied if the court suspects that the request is a fishing expedition or a vehicle for harassment." *In re Hedrick House Ltd.*, No. SA MC 20-00005-DOC (DMF), 2020 WL 3965999, at *1 (C.D. Cal. Mar. 31, 2020).

## ARGUMENT

## I.    The R&R Erroneously Found That the Application Satisfies the "For Use" Statutory Requirement under 28 U.S.C. § 1782.

The R&R erred in finding that Petitioner satisfied the "for use" requirement (R&R at 15–16) even though the Liechtenstein court in the Solkomtel Proceeding has made it clear in its stay orders that it would rely on the factual record established in the TiVi Proceeding in rendering a decision in the Solkomtel Proceeding.

Courts interpreting Section 1782 have held that the "for use" requirement "focuses on the practical ability of an applicant to place a beneficial document . . . before a foreign tribunal." *Qualcomm, Inc.*, No. 18-mc-80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018). To satisfy this requirement, an applicant must "show that the material requested is tethered to a specific foreign proceeding and is relevant." *Id.* In other words, "[t]he applicant must be in a

-12-

position to have the [tribunal] consider that evidence or have some means of injecting the evidence into the proceeding to use the evidence." *In re Pioneer for an Ord. Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, No. MC 18-0037 UA (SS), 2018 WL 2146412, at *6 (C.D. Cal. May 9, 2018) (quotations & internal citation omitted). "A mere showing that discovery sought would be 'useful' to applicant, without an ability to introduce the information into evidence in a foreign proceeding, is not enough." *In re China Petrochemical Dev. Corp.*, No. 3:17-cv-02138 (SRU), 2018 WL 1320665, at *2 (D. Conn. Mar. 14, 2018).

The R&R fundamentally misconstrues the Liechtenstein court's stay orders on several grounds. First, the R&R overlooks the plain text and intent of the Liechtenstein court's stay orders, instead noting in a footnote that there was an "absen[ce] [of] an express statement" in the stay orders that the court in the Solkomtel Proceeding "would apply the factual findings" in the TiVi Proceeding to the Solkomtel Proceeding. R&R at 15 n.16. However, as the August 13, 2025 stay order recognized, "***the facts addressed in parallel proceedings*** 06 HG.2024.210 concerning the TiVi Foundation [*i.e.*, the TiVi Proceeding] are ***essentially the same as those in the present case***." Motal Decl., Ex. C at 3. On this basis, the Liechtenstein court ordered that the Solkomtel Proceeding "will be stayed until ***a final decision has been made on the (decisive) facts of the case***" in the TiVi Proceeding. *Id.* at 2 (emphasis added).

Second, the court in the TiVi Proceeding already considered and rejected the "central" issue advanced by Petitioner in support of his Application, finding that there was no "scheme to oust [Petitioner] from the business empire that he built" (App. at 6). *See* Motal Decl., Ex. A at 63–64, 89. The trial court in the TiVi Proceeding held that the TiVi Declarations—which were signed on the same day, at the same time, and under the same circumstances as the Solkomtel

-13-

Declarations—were valid and enforceable, and devoid of any fraud or mistake. Motal Decl. ¶ 16; Motal Decl., Ex. A at 63, 93.  Specifically, the court found that:

- "It was [Petitioner's] declared intention, as he repeatedly express to [his Children], the members of the foundation board, and other persons involved, that the [TiVi Foundation] should serve in particular to secure [his Children] and their descendants and to ensure the continuation of the group of companies," *id.* at 28; and

- "It cannot be established that [the Children] put [Petitioner] under massive pressure at the meeting on August 2, 2024, and urgently demanded that he sign the statements immediately and without further consultation with his advisors," *id.* at 64.

Now that the appeal has been decided and there is a final decision in the TiVi Proceeding, the Liechtenstein court will apply the "evidence" and "final decision on the (decisive) facts" from the TiVi Proceeding to the Solkomtel Proceeding. Motal Supp. Dec. ¶ 60.

The R&R appears to acknowledge this fact, conceding that it is "unlikely that the court in the Solkomtel Case will make factual or legal determination inconsistent with those made in the TiVi Case."  R&R at 15–16.  Yet, in the exact same sentence, the R&R erroneously finds that "it cannot conclude that the court in such case would be unwilling to consider additional relevant evidence before rendering a final decision once the stay is lifted or that it would necessarily prohibit Petitioner from attempting to introduce newly obtained relevant evidence."  R&R at 16.  It would seem inconceivable that the Liechtenstein court, after making a finding in the TiVi Proceeding that the TiVi Declarations are valid and enforceable, and that there was no "scheme" by the Children to "oust" Petitioner from the Foundations, would turn around and make a contrary finding in the Solkomtel Proceeding when the Solkomtel Declarations were signed on the

-14-

same day, at the same time, and under the same conditions as the TiVi Declarations. *See, e.g.*, *financialright GmbH v. Robert Bosch LLC*, 294 F. Supp. 3d 721, 730–32 (E.D. Mich. 2018) ("for use" requirement was not satisfied given "the German and Irish courts' prior negative rules in these lawsuits" and where one of the cases was stayed pending appeal). Moreover, such rationale is legally insufficient to satisfy the "for use" requirement when weighed against the Liechtenstein court's stated intent to rely on the factual record developed in the TiVi Proceeding. *See In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024) (The intended use must be "more than merely speculative" and "an applicant who cannot identify a 'procedural mechanism by which [to] inject the discovery . . . into foreign proceedings' will not meet the 'for use' standard.").

In any event, while the Solkomtel Proceeding is stayed, Petitioner cannot satisfy the "for use" requirement because there is no evidence taking and Petitioner has no need for the proposed discovery. *See, e.g.*, *financialright GmbH*, 294 F. Supp. 3d at 730–32 (holding that there was "no basis on which [the court] can conclude that there is a proceeding that will go forward in which it would be useful to grant this Application" because the foreign tribunal has been stayed pending judicial review of the trial court's jurisdiction to hear the case).

## II.    The R&R's Findings Regarding the *Intel* Factors Were Erroneous.

### A.    The First *Intel* Factor Weighs Against Granting the Application.

The first *Intel* factor "considers whether the person from whom discovery is sought is a party to the foreign proceeding," *Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d at 898, in which case "the need for § 1782(a) aid generally is not as apparent," *Intel*, 542 U.S. at 264. The R&R erroneously concludes that the first factor is "neutral." R&R at 17. It is undisputed that Ms. Żak is a party to the Solkomtel Proceeding. *See* App. at 18; Motal Decl. ¶ 3. It also is undisputed that,

-15-

to the extent it is necessary and as permitted by the Liechtenstein court, Petitioner can obtain evidence from Ms. Żak in the Solkomtel Proceeding when the stay is lifted.  Motal Decl. ¶ 45.

The R&R acknowledges that Ms. Żak is a party to the Solkomtel Proceeding, that she previously testified in the related TiVi Proceeding, and that she "has an obligation to provide complete and truthful testimony in all matters known to her, to provide or offer any evidence that could be relevant for the court's decision, [and] to cooperate in gathering evidence."  R&R at 17.  The R&R also acknowledges that Ms. Żak "could be compelled to produce 'indispensable' documents" by the court in the Solkomtel Proceeding.  *Id.* at 17–18.  Despite making these findings, the R&R erroneously concludes that Ms. Żak "is a United States resident and [Ms. Żak] has not rebutted Petitioner's contention that . . .  the Liechtenstein court ultimately lacks authority to order her to produce the requested documents."  *Id.* at 18.  This is factually incorrect and the R&R overlooks critical evidence in the record that directly rebuts Petitioner's contention that Ms. Żak is not subject to discovery in Liechtenstein solely because she resides in the United States.

The Supplemental Declaration of Bernhard Motal, which accompanied Ms. Żak's Surreply, expressly states that "***an obligation to produce documents exists in non-contentious proceedings and parties can be compelled to produce such documents, a fact that the Supplemental Ott Declaration . . . wrongly disputes.***"  Motal Supp. Decl. ¶ 34 (emphasis added).  As Mr. Motal notes, the Solkomtel Proceeding is a type of proceeding in Liechtenstein known as a "non-contentious" proceeding, which requires parties, like Ms. Żak, to "cooperate in gathering evidence."  *Id.* ¶¶ 32–33.  More specifically, "according to the procedural provisions applicable to . . . the Solkomtel Proceeding, *the court may actually request the disclosure of documents by the parties, including Ms. Żak, if it deems*

-16-

*such documents indispensable for the proceedings*." *Id.* ¶ 33 (emphasis added) (citing Sec. 31 Para. 5 of the Non-Contentious Proceedings Act (*Ausserstreitgesetz*) which provides that "[i]f the court considers it essential for a party to attend a hearing, submit a document, or allow an inspection of an object in its custody, it may use coercive measures . . . against the party if it fails to comply with the summons or request without good reason."). Likewise, "[a] court's order to disclose documents **can be enforced by coercive measures**" and a party's obligation to produce documents is not limited to "*certain, specific types of documents that bind the parties to a dispute*," as Petitioner incorrectly contends. *Id.* ¶ 35 (emphasis added).

Petitioner does not—and cannot—identify any specific and relevant evidence that he seeks from Ms. Żak under Section 1782 that he would not otherwise be able to obtain through discovery procedures in Liechtenstein. *See Daedalus Prime LLC v. MediaTek USA Inc.*, No. 24-MC-80208-VKD, 2024 WL 4220000, at *5 (N.D. Cal. Sept. 16, 2024) (holding that the first factor weighed against granting the application where the petitioner failed to address whether the key information it requires is available using the rules and procedures available in foreign proceeding); *In re Application Pursuant to 28 U.S.C. §1782 of Michael Page do Brasil Ltda*., No. CV 17-4269 (KM), 2018 WL 7018716, at *8 (D.N.J. Jan. 19, 2018), *report and recommendation adopted sub nom. In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. § 1782*, No. CV 17-4269-KM-JBC, 2019 WL 168828 (D.N.J. Jan. 10, 2019) ("Petitioner commenced the Underlying Action naming Respondent and has failed to demonstrate that the evidence necessary to pursue its claims is unavailable to the Brazilian court should it choose to permit such evidence"). In fact, Petitioner has made no effort to seek discovery from Ms. Żak in Liechtenstein using the discovery procedures that are already available to him. Motal Decl. ¶ 51; Motal

-17-

Supp. Decl. ¶ 41–44, 48.   Petitioner's failure to attempt to seek any discovery from Ms. Żak in Liechtenstein suggests that this is not a legitimate request for discovery, but rather a fishing expedition that is intended to harass Ms. Żak and circumvent foreign evidence-gathering restrictions.  *See, e.g.*, *In re Kivisto*, 521 F. App'x 886, 888 (11th Cir. 2013) (affirming denial of Section 1782 petition where the district court properly found that the application was made in bad faith and as a means to harass following petitioner's previously unsuccessful legal challenges in the foreign tribunal).

Since Ms. Żak is a party to the Solkomtel Proceeding and the Liechtenstein court has jurisdiction over Ms. Żak and "can itself order [Ms. Żak] to produce evidence," *Intel*, 542 U.S. at 264, the first *Intel* factor weighs against granting the Application.

## B.     The Second *Intel* Factor Weighs Against Granting the Application.

Similarly, the R&R erroneously concludes that the second *Intel* factor is neutral.   R&R at 18.   The second factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."   *Intel*, 542 U.S. at 264.   This factor "focuses on whether the foreign tribunal is willing to consider the information sought."   *Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d at 898.   The Liechtenstein court already answered this question by staying the Solkomtel Proceeding "until a final decision has been made on the (decisive) facts of the case" in the TiVi Proceeding because "the facts addressed in parallel proceedings 06 HG.2024.210 concerning the TiVi Foundation [*i.e.*, the TiVi Proceeding] are essentially the same as those in the present case."  Motal Decl., Ex. C at 2–4.

-18-

Notwithstanding the clear text and intent of the stay orders, the R&R concludes that the Liechtenstein court may be receptive to considering new relevant evidence because Liechtenstein courts "are generally receptive to consider evidence acquired through Section 1782 requests." R&R at 18–19.[1] But the mere fact that a foreign court is "generally receptive" to Section 1782 requests does not mean that the court will be receptive to discovery obtained through Section 1782 in all instances, particularly when there is a specific directive to the contrary from the foreign court. *See, e.g.*, *Med. Inc. Ass'n Smile Create*, 547 F. Supp. 3d at 898 ("If there is reliable evidence that the foreign tribunal would not make any use of the requested material, it may be irresponsible for the district court to order discovery, especially where it involves substantial costs to the parties involved."); *In re Microsoft Corp.*, No. C 06-80038 JF (PVT), 2006 WL 825250, at *3 n.5 (N.D. Cal. Mar. 29, 2006) (finding foreign tribunal appeared to not be receptive to U.S. discovery where tribunal stated that subpoenas were "not objectively necessary").

Here, the Liechtenstein court already made clear in its stay orders that it will apply the "evidence" and "final decision" on the facts, which includes Petitioner's challenge to the August 2, 2024 Declarations, from the TiVi Proceeding to the Solkomtel Proceeding because both proceedings "are essentially the same." Motal Decl., Ex. C at 3. The R&R's speculation as to what Liechtenstein courts could

---

[1] The R&R suggests that "the record does not reflect that [the Liechtenstein] court would necessarily wholly adopt the factual findings in the TiVi Case or be entirely unwilling to consider new relevant evidence in assessing the matter before it" (R&R at 19), but this ignores the stay orders, which make clear that the Solkomtel Proceeding "will be stayed until a final decision has been made on the (decisive) facts of the case," at which time the court will apply the "evidence" and "final decision on the facts" from the TiVi Proceeding to the Solkomtel Proceeding. Motal Decl., Ex. C at 2, 4.

RESPONDENT'S OBJECTIONS TO REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

do is insufficient to overcome the clear intent by the court in the Solkomtel Proceeding to rely on the factual record established in the TiVi Proceeding in rendering a final decision.  It would seem nonsensical to presume that a court would reach a contrary result in two related cases where the underlying facts "are essentially the same."  Accordingly, the second factor weighs against granting the Application.

## C.    The Fourth *Intel* Factor Weighs Against Granting the Application.

The fourth *Intel* factor considers whether the discovery requested is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  The R&R's findings as to the fourth factor are also erroneous.  At the outset, the R&R notes that the evidence in the record is "mixed," but then concludes that "given this Court's narrowing of the Proposed Subpoena . . . , the absence of a declaration from [Ms. Żak] herself attesting to any burden, and the retained ability of [Ms. Żak] to raise undue burden concerns at a later juncture, this factor does not weigh against granting the [Application]."  R&R at 20.

Despite the R&R's effort, to some degree, to limit the vast swaths of documents sought by Petitioner, the breadth of documents potentially covered by the Modified Subpoena remains overly broad and requiring Ms. Żak's compliance would impose significant and undue burden on a private individual.  First, the Modified Subpoena covers the period from June 1, 2024 to the present, which far exceeds the period in which the alleged events occurred.  According to Petitioner, he allegedly was misled and unduly pressured by the Children to sign the Declarations on August 2, 2024 (a fact that both the trial and appellate courts in the TiVi Proceeding have now squarely rejected).  Motal Decl. ¶ 25.  At most, any evidence of an alleged "scheme" by the Children—according to Petitioner, himself—occurred in the days leading up to and at the time of Petitioner's signing

-20-

of the Declarations on August 2, 2024.  Thus, August 2, 2024 should be the *end date* for any document request potentially relevant to Petitioner's allegations in the Solkomtel Proceeding.  The Modified Subpoena would require Ms. Żak to search for, review, and potentially produce documents and communications from approximately *a year and a half after* the events in question that are wholly irrelevant to Petitioner's allegations.  More concerning, the Modified Subpoena would require Ms. Żak to produce documents for the entire period that the parties have been in litigation in Liechtenstein and across Europe.  This is precisely the type of "broad 'fishing expedition' for irrelevant information" that courts have held warrants denial of a request for discovery under Section 1782.  *See, e.g.*, *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1044–45 (N.D. Cal. 2016) (finding proposed document requests unduly burdensome and intrusive because the requests were not narrowly tailored temporally or in their subject matter, were not limited to documents or information connected to the legal proceedings at issue, and include requests for confidential information).

Second, the topics proposed in the Modified Subpoena are equally broad and unduly burdensome.  The categories of documents covered by the Modified Subpoena include: (i) "the Solkomtel Declarations executed by Petitioner on August 2, 2024"; (ii) "Petitioner's role in connection with the Solkomtel Foundation"; and (iii) "changes or potential changes to the statutes, bylaws, or other governing documents of the Solkomtel Foundation effecting Petitioner's direct or indirect ownership/control thereof."  R&R at 21.  These topics arguably cover every possible document that remotely pertains to the Solkomtel Foundation and has a significant risk of pulling in irrelevant, personal, and private documents that have no bearing on the Solkomtel Proceeding or Petitioner's claims whatsoever.  *See, e.g.*, *Akimoto v. Apple Inc.*, No. 22-mc-80056-DMR, 2022 WL 1157496, at *4 (N.D. Cal. Apr. 19, 2022) (striking document request in its entirety

-21-

where petitioner failed to explain the relevance of the request); *Qualcomm Inc.*, 162 F. Supp. 3d at 1045 (denying Section 1782 application because the requests were "overbroad" when "weighed against the relevance of the information sought"). The burden placed on Ms. Żak, who is a private citizen, would be insurmountable. Not to mention, subjecting Ms. Żak to comply with the Modified Subpoena would result in a significant infringement upon Ms. Żak's privacy. *See, e.g.*, *Baxalta Inc.*, 2016 WL 11529803, at *8 (quashing Section 1782 subpoena where requests were "far from narrowly tailored" and sought confidential information); *Qualcomm Inc.*, 162 F. Supp. 3d at 1045 (same). In contrast, Petitioner has the ability to obtain most, if not all, of the Foundation-related documents that he seeks directly from the Solkomtel Foundation and there would be far less burden associated with such request.

For these reasons, both the Proposed Subpoena and the Modified Subpoena are extremely burdensome to Ms. Żak, and the final factor weighs against granting the Application.

## **CONCLUSION**

For the foregoing reasons and those set forth in the Opposition and Surreply, Ms. Żak respectfully requests that the Court decline to adopt the R&R in so far as it recommends granting the Application in part and, instead, enter an order denying the Application in its entirety.

Dated: February 17, 2026

BIRD, MARELLA, RHOW, LINCENBERG, DROOKS, & NESSIM, LLP

By: */s/ Gary S. Lincenberg*
Gary S. Lincenberg (SBN 123058)
William E. Johnston (SBN 287707)
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561
glincenberg@birdmarella.com
wjohnston@birdmarella.com

-22-

1     CADWALADER, WICKERSHAM & TAFT LLP

2     Martin Weinstein (Admitted *Pro Hac Vice*)
      Hyungjoo Han (Admitted *Pro Hac Vice*)
3     1919 Pennsylvania Ave NW
      Washington, D.C. 20006
4     Martin.Weinstein@cwt.com
      Hyungjoo.Han@cwt.com
5
      Gina M. Castellano (*Pro Hac Vice* Pending)
6     200 Liberty Street
      New York, NY 10281
7     Gina Castellano

8
      *Attorneys for Respondent*
9     ALEKSANDRA ZAK

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              -23-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Respondent Aleksandra Żak, certifies that this brief contains 6,876 words, which complies with the word limit of L.R. 11-6.1.

Dated:  February 17, 2026          Respectfully submitted,


                                         */s/ Gary S. Lincenberg*
                                         Gary S. Lincenberg